Day v. Boudreau, et al.,
19 CV 7286

# GROUP EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.3.1
Eastern Division

Anthony Jakes
                      Plaintiff,

v.                                             Case No.: 1:19−cv−02204
                                                          Honorable Manish S. Shah

Kenneth Boudreau, et al.
                      Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, July 31, 2019:

      MINUTE entry before the Honorable Manish S. Shah: Status hearing held. For the reasons stated in open court, the motion to appoint a special representative [35] is granted. An appropriate representative must be identified, and proper notice to heirs or legatees must be given, before appointment. Defendants must respond to the complaint by 8/5/19. All fact discovery must be noticed in time to be completed by 6/30/20. Discovery and settlement are referred to Magistrate Judge Finnegan, with full authority over the discovery schedule. Any motion to bifurcate Monell theories shall be brought before this court. Continued status hearing is set for 9/26/19 at 9:30 a.m. Notices mailed. (psm, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

1

```
                   UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

ANTHONY JAKES,                      )
                                    )
             Plaintiff,             )
                                    )
    vs.                             )  No. 19 C 2204
                                    )
KENNETH BOUDREAU, et al.,           )  Chicago, Illinois
                                    )  July 31, 2019
             Defendants.            )  10:00 o'clock a.m.


                    TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE MANISH S. SHAH


APPEARANCES:

For the Plaintiff:        LOEVY & LOEVY
                          BY:  MS. ALISON R. LEFF
                          311 North Aberdeen, 3rd Floor
                          Chicago, Illinois  60607
                          (312) 243-5900

For Defendant City:       THE SOTOS LAW FIRM, P.C.
                          BY:  MR. JEFFREY N. GIVEN
                          141 West Jackson Boulevard, #1240A
                          Chicago, Illinois  60604
                          (630) 735-3315

For Defendant Officers:   ROCK FUSCO CONNELLY, L.L.C.
                          BY:  MR. PATRICK R. MORAN
                          321 North Clark Street, Suite 2200
                          Chicago, Illinois  60654
                          (312) 494-1000




              COLLEEN M. CONWAY, CSR, RMR, CRR
                     Official Court Reporter
              219 South Dearborn Street, Room 1918
                     Chicago, Illinois  60604
                          (312) 435-5594
                colleen_conway@ilnd.uscourts.gov
```

1  (Whereupon, proceedings heard in open court:)
2  THE CLERK: 19 C 2204, Jakes versus Boudreau.
3  MS. LEFF: Good morning, Your Honor. Alison Leff on
4  behalf of plaintiff.
5  MR. GIVEN: Good morning, Your Honor. Jeff Given on
6  behalf of the City.
7  MR. MORAN: Good morning, Judge. Pat Moran on behalf
8  of the police officer defendants.
9  THE COURT: Good morning. Thanks for waiting.
10  On the Estate of Kill issue, I had forgotten, I have
11  another case involving Michael Kill. And the City and
12  plaintiff's counsel in that case reached an understanding or an
13  agreement as to how to handle his role in the case. And
14  ultimately, it's -- the agreement was that this -- either the
15  City or it might have been counsel for the individual officers
16  would represent the interests of Kill at trial. The jury would
17  be given a verdict form that addresses him, but he -- but there
18  would not be -- and the City would agree to indemnify for any
19  verdict that was awarded as a result of Kill's conduct. And
20  that then -- that defendant was just dismissed from the
21  complaint with that agreement in place, and that's how the case
22  has been litigating.
23  So I am wondering if that's an issue that the City
24  addressed in another case involving Mr. Kill, whether that's
25  been something that's come up in this case.

1  MR. GIVEN: Well, Judge, what's the case? Because
2  I'm not aware of it.
3  THE COURT: *Bolden versus City of Chicago*, 17 CV 417.
4  MR. GIVEN: I'm sorry. 17 C --
5  THE COURT: 417.
6  MR. GIVEN: -- 417. I was not aware of that.
7  I don't know if your office is involved in that case.
8  THE COURT: They're not.
9  MR. GIVEN: I don't think either one of us knew that.
10  THE COURT: No.
11  MR. MORAN: No.
12  MR. GIVEN: So maybe --
13  THE COURT: It's different plaintiff's counsel.
14  MR. GIVEN: -- what makes sense is I'd like to
15  obviously look at the pleadings and talk to the city lawyers
16  who were on that case. It may -- I don't want to commit one
17  way or the other. The issues may be the same; they may be
18  different. I don't know how they played out. If it's
19  something that makes sense as a resolution in this case, then I
20  would certainly not oppose that.
21  THE COURT: Well, I'll --
22  MR. GIVEN: I just don't know what --
23  THE COURT: I'll leave you to look at that.
24  With respect to the insurance limitation in the
25  statute, I just want to make sure I understand the City's

1  position.

2  Is it the City's position that the City will not
3  indemnify except up to the limits of any liability insurance?
4  MR. GIVEN:  Well, there is no -- the City's position
5  is that liability insurance, the phrase "liability insurance"
6  that the statute uses -- and there's no legislative history;
7  it's plain and ordinary language, "liability insurance" -- is
8  not the same thing as indemnification.  And the statute, if it
9  wanted to include indemnification, would have.
10  So the City is not taking the position at all with
11  regard to indemnification.  If Mr. -- if the Estate was a party
12  or if there was some liability on behalf of Mr. Kill, then I
13  think the City would indemnify, assuming he was within the
14  scope, which I'm assuming he was.
15  But indemnification -- our point in this specific
16  context is that indemnification is not liability insurance.
17  And --
18  THE COURT:  I understand that.
19  MR. GIVEN:  -- it's an important distinction.
20  THE COURT:  Hold on.  I get that.  But what I am
21  asking is -- let's say that there is a liability insurance
22  policy that's out there for the Estate, and its limits are
23  fairly small.  Would the City nevertheless indemnify for the
24  full scope of compensatory damages that might be awarded, or
25  would the City take the position that, "In light of this

1  Illinois statute, damages are limited to the limits of the
2  liability insurance, so we are not going to indemnify beyond
3  that"? That's my question.
4              MR. GIVEN: It's an interesting question. I haven't
5  thought of it. I can tell you my gut reaction, based on
6  conversations that I've had with the law department and looking
7  into the issue, I don't -- I think the answer is the City would
8  not take that position with regard to indemnification.
9              And the one thing I would say very quickly is the
10 issue of liability insurance, quote-unquote, which is different
11 than indemnification, actually goes to whether Kill would be a
12 party or not.
13             And indemnification -- so there's a number of
14 instances. So, for instance, on a state law claim, the City
15 has to indemnify a police officer, alive or dead, even if
16 they're not a party, through *respondeat superior*, but whether
17 that police officer is a party or not is -- can make a
18 difference in a number of ways, including, for instance,
19 evidentiary questions like: Is it an admission of a party
20 opponent versus hearsay?
21             So we think it's an important issue with regard to
22 whether the Estate of Kill is a party or not, and we don't
23 think that it can be given -- unless they have liability
24 insurance, which I don't even know what that would look like.
25 But maybe they do. I don't know.

1    So I hope that answers your question.

2    THE COURT: It does. I am satisfied with plaintiff's
3    counsel's representation that no petition has been filed for
4    letters of office.

5    I take it, although you didn't quite use those words,
6    that is what you are representing as an officer of the court,
7    that no petition has been filed for letters of office?

8    MS. LEFF: Yes, Your Honor.

9    THE COURT: And I agree that no special
10   representative can come in as a party until notice has been
11   given to heirs. And in that process, we may find out if there
12   is liability insurance or not.

13   But as a predicate to doing that, I am granting the
14   motion to appoint a special representative, but I don't know
15   who that special representative will be, and the plaintiff
16   needs to give notice to the heirs or legatees and then identify
17   someone suitable to be a special representative before I will
18   formally appoint that particular person.

19   But what I think the plaintiff is doing is seeking
20   direction from the Court to start the predicates for the formal
21   appointment of a special representative to be named later, and
22   I am satisfied that those predicates have been established.

23   So what I'd like to do is put you down for a status
24   in late September so I can get an update on the progress with
25   respect to identifying a special representative.

1   THE CLERK: Everyone, how does Thursday, September
2   26th at 9:30 work for you?
3   MR. GIVEN: Sure.
4   (Plaintiff's counsel nods.)
5   THE COURT: The status report that you submitted had
6   a proposal for a discovery schedule. What I am going to do is
7   for now, I'll give you a schedule of all fact discovery has to
8   be noticed in time to be completed by June 30th, 2020.
9   I am not going to give you any other dates in the
10  schedule.
11  I am going to refer discovery to the magistrate
12  judge. I think it's Judge Finnegan. She can have full control
13  over the schedule, if that needs to be adjusted or if you need
14  additional dates.
15  But if the City is going to move to bifurcate *Monell*
16  issues, I want the City to make that decision sooner rather
17  than later. And that motion should come to me, and we'll deal
18  with that when that motion comes.
19  MR. GIVEN: In fact, Judge, I wanted to ask you about
20  that very briefly.
21  I have read your opinion in the *Serrano/Montanez* case
22  of where the issue of when the City raised its motion to
23  bifurcate, and you had expressed a preference, all things being
24  equal, sooner rather than later, which I think makes all the
25  sense in the world.

In that case, you may recall that the plaintiff didn't issue *Monell*-based discovery until very late in the game.

Here, there's been no *Monell* discovery issued at all. Nonetheless, in talking with my colleague, who will probably be writing the brief, he believed that we could file it regardless.

We all know at this point what the discovery tends to entail generally, if not in specific detail. So we can be prepared to file a motion to bifurcate in the next 30, 45 days.

Does that make sense from the Court's perspective?

THE COURT: I'll leave it to you to decide when you want to do it. I am just saying, I don't want a repeat of it coming at the tail end of discovery.

MR. GIVEN: Right.

THE COURT: It might make sense for you to wait and see whether the *Monell* discovery that they request is burdensome or not. And you may decide, "It's not burdensome, and it's not burdensome for us to defend the *Monell* claim," and maybe you'll change your mind about whether to bifurcate once you see what their strategy is.

So I am not saying you need to do it right now. I am just encouraging you to make that decision as early as possible so that we haven't spent resources on something --

MR. GIVEN: Right.

1     THE COURT: -- that could have been avoided.
2     MR. GIVEN: We'll absolutely do that, Judge.
3     Can I go back very quickly? I have one point of
4 clarification on the liability insurance/special
5 representative. I understand the process that we'll go
6 through. I am just not clear.
7     So if -- once they get a hold of the heirs and
8 legatees -- and, by the way, I'm confident we can work out who
9 will ultimately be the special representative. That should not
10 be a problem, finding somebody.
11     But let's say they get a hold of the heirs and
12 legatees and they confirm that there is no estate, which I
13 don't know if there is or isn't, and they confirm that there's
14 no liability insurance. It's kind of an issue of first
15 impression in a lot of ways. And I am curious whether your
16 order of today provisionally granting this is subject to
17 revisiting if we -- once we find out what exactly the liability
18 insurance status is.
19     THE COURT: If you have an argument as a matter of
20 law that no special representative can be appointed because
21 there was no liability insurance, I'll give you the opportunity
22 to make that argument.
23     MR. GIVEN: Okay.
24     THE COURT: But that doesn't prevent me from saying,
25 at this point, enough has been shown to me that a special

10

representative ought to be identified, and notice ought to be given, and then we'll cross the next issue when we come to it.

MR. GIVEN: Okay.

THE COURT: Is there anything else we should cover this morning?

(Defense counsel conferring.)

MS. LEFF: Not from plaintiff, Your Honor.

MR. GIVEN: Oh, thank you.

There is. Our answer, the City's answer, is due today. We need another week or so. The officers' answer is due, I believe, August 5th, and we were aiming to file the City's answer also on August 5th, if that's okay with the Court.

I did e-mail the plaintiffs yesterday and asked if they had any objection to that. I haven't heard back. I'm assuming they don't, but --

MS. LEFF: No objection.

THE COURT: That's fine. August 5th for the answers.

MR. GIVEN: Thank you.

THE COURT: Thank you.

MR. MORAN: Thanks, Judge.

(Proceedings concluded.)

Colleen M. Conway, Official Court Reporter

C E R T I F I C A T E

I, Colleen M. Conway, do hereby certify that the foregoing is a complete, true, and accurate transcript of the proceedings had in the above-entitled case before the HONORABLE MANISH S. SHAH, one of the Judges of said Court, at Chicago, Illinois, on July 31, 2019.

*/s/ Colleen M. Conway, CSR, RMR, CRR*   *08/02/19*
Official Court Reporter   Date
United States District Court
Northern District of Illinois
Eastern Division

Colleen M. Conway, Official Court Reporter