**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARNOLD DAY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7286 |
| | ) | |
| v. | ) | Hon. Sara L. Ellis |
| | ) | District Judge |
| KENNETH BOUDREAU, *et al.*, | ) | |
| | ) | Magistrate Judge Jeffrey Cummings |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER TO
PREVENT DUPLICATIVE DEPOSITIONS OF PLAINTIFF'S 404(b) WITNESSES**

Plaintiff Arnold Day, through his undersigned attorneys, respectfully moves this Court

for a protective order prohibiting Defendants from repeatedly deposing Terrill Swift, Derrick

Flewellen, Jerry Gillespie, Harold Hill, Tyrone Reyna, and Clayborn Smith – individuals who

have been disclosed as Federal Rule of Evidence 404(b) witnesses in Plaintiff's case. In support

of this motion, Plaintiff states the following:

## INTRODUCTION

For more than two decades, Plaintiff was wrongfully convicted and incarcerated for a

crime he did not commit. Specifically, Plaintiff alleges that the Officer Defendants fabricated

false witness statements and used coercive methods to force Plaintiff to falsely confess.

Unfortunately, Plaintiff alleges that the Officer Defendants' misconduct in Plaintiff's case was

not a standalone event, but rather part of a pattern of conduct involving the procurement of false

and fabricated confessions and witness statements.

In support of Plaintiff's claims, Plaintiff has disclosed twelve witnesses under Federal

Rule of Evidence 404(b), who have personal knowledge of Defendant Boudreau's other

instances of procuring false confessions and fabricated witness statements to solve murders. Six

of these witnesses: Terrill Swift, Derrick Flewellen, Jerry Gillespie, Harold Hill, Tyrone Reyna, and Clayborn Smith ("the Deposed Six") have all testified in numerous depositions about the events that led to their false confessions.

These depositions were conducted by the same counsel who represent Defendants in this matter. Nevertheless, Defendants' counsel seeks to needlessly rehash and retraumatize individuals by repeatedly deposing them about the same incidents. These witnesses have no knowledge of the facts of Plaintiff's case but are being repeatedly deposed about their interactions with the Defendants, all of which has been covered by previous depositions. The depositions are not being used for a proper purpose—Defendants already have obtained discovery and sworn testimony on the subject matter for which these witnesses have been disclosed. Rather, Defendants' repeat depositions discourage these witnesses from participating in Plaintiff's civil proceedings, thereby depriving Plaintiff of critical evidence to support his claims. This Court should prevent Defendants from harassing these individual and abusing discovery tools to effectively suppress evidence of Defendant Boudreau's misconduct. Accordingly, this Court should enter a protective order preventing Defendants from re-deposing the above-listed witnesses.

## RELEVANT FACTS

In February 1992, Plaintiff was arrested and interrogated about the murders of Jerrod Irving and Rafael Garcia, two crimes with which Plaintiff had no involvement. Dkt. 1 at ¶¶ 36-43. During his interrogation, Plaintiff truthfully stated that he was innocent, but Officer Defendants used coercive methods, including threats and physical violence, to force Plaintiff to falsely confess to killing Irving and Garcia. *Id.* at ¶¶ 44-54. In addition to using unconstitutional method to obtain Plaintiff's false confession, Defendant Boudreau used similar coercive methods

to fabricate evidence against Plaintiff, including a false and fabricated witness statement from Ralph Watson, and a false and fabricated confession from Anthony Jakes (Plaintiff's co-accused in Garcia investigation). *Id.* at ¶¶ 15-35.

Although Plaintiff, Watson, and Jakes recanted their false statements prior to Plaintiff's trials for the Irving and Garcia homicide, prosecutors still relied on the fabricated evidence during Plaintiff's prosecution. *Id.* at ¶¶ 56-64. Fortunately, during the trial for the Garcia murder, Plaintiff was able to present credible alibi evidence and was acquitted. *Id.* at ¶ 56. Unfortunately, Plaintiff was wrongfully convicted of Irving's murder and sentenced to 60 years in prison for first-degree murder, and 15 years for armed robbery. *Id.* at ¶ 64.

Plaintiff never stopped fighting to prove his innocence which included filing a claim of torture with the Illinois Torture Inquire and Relief Commission ("TIRC") stating that he had been abused by Officer Defendants during his interrogation. *Id.* at ¶¶ 65-66. In 2017, more than two decades after Plaintiff was wrongfully convicted, the TIRC found Plaintiff's claim of torture credible. *Id.* In 2018, Plaintiff's conviction was vacated and about a year later, Plaintiff's petition for a certificate of innocence was granted. *Id.* at ¶¶ 67-69.

In Plaintiff's civil suit, Plaintiff has disclosed twelve witnesses under Federal Rule of Evidence 404(b) who were suspects in cases investigated by Defendant Boudreau in or around the 1990s. Ex. A (Letter to Counsel disclosing Plaintiff's 404(b) Witnesses, Dec. 3, 2020).[1] Each of these witnesses were convicted based on false and fabricated confessions and/or fabricated witness statements that were obtained by Defendant Boudreau utilizing similar tactics. Dkt. 1 at ¶¶ 117(a)-(z). On May 18, 2022, Officer Defendants' counsel notified Plaintiff's

---

[1] Anthony Jakes was Plaintiff's co-accused during their prosecution for the murder of Rafael Garcia. Although Plaintiff was acquitted at the Garcia trial, Plaintiff's claims are supported, in part, by the allegations of the Officer Defendants' misconduct during the Garcia investigation. Dkt. 1 at ¶¶ 24-56. As a result, the parties have agreed that the Federal Rule of Evidence 404(b) witnesses disclosed in *Jakes* will also be applied in this matter.

counsel of their intent to re-depose Terrill Swift, an individual Defendants' counsel has already deposed two times about his allegations against Defendant Boudreau.[2] Ex. B (Emails between the parties) at 1. The parties conferred telephonically on May 31, 2020 and through email about this issue and reached impasse. *Id. at* 2-7. At the conclusion of the parties' conference, Defendants confirmed an intent to depose all of Plaintiff's Rule 404(b) witnesses regardless of whether the individuals have been previously deposed. *Id.* at 5.

Aside from Swift, the previously deposed 404(b) witnesses are:

- Harold Hill who was deposed in 2007 in his own case, *Hill v. City of Chicago et al.*, No. 06-c-6772 by one of Defendants' counsel, and again more recently in 2020 in *Fulton v. Foley et al.*, No. 17-cv-8696 and *Coleman v. City of Chicago et al.*, No. 18-cv-998 ("*Fulton/Coleman*") by Defendants' counsel. Ex. G (Dep. Tr. of Harold Hill, July 24, 2007).

- Derrick Flewellen who was deposed as recently as 2020 in *Fulton/Coleman* by Defendants' counsel and was deposed in his civil case, *Flewellen v. City of Chicago*, *et al.*, No. 00-c-02709 by one of Defendant's counsel. Ex. H (Dep. Tr. of Derrick Flewellen, Nov. 6, 2020) (also noting that Mr. Polick deposed Mr. Flewellen in Mr. Flewellen's civil suit); Ex. I (Flewellen Complaint).

- Jerry Gillespie who was deposed in 2020 in *Fulton/Coleman* by Defendants' counsel. Ex. J (Dep. Tr. of Jerry Gillespie, Nov. 17, 2020).

---

[2] Swift was deposed in 2014 in his civil case, *Swift v. City of Chicago et al.*, No. 12-L-12995 (N.D. Ill.) by Defendants' counsel over three days, and was deposed again more recently in 2020, in *Fulton v. Foley et al.*, No. 17-cv-8696 (N.D. Ill.) and *Coleman v. City of Chicago et al.*, No. 18-cv-998 (N.D. Ill.) by Defendants' counsel. Ex. C (Dep. Tr. of Terrill Swift, Sept. 15, 2014); Ex. D (Dep. Tr. of Terrill Swift, Sept. 16, 2014); Ex. E (Dep. Tr. of Terrill Swift, Dec. 1, 2014); Ex. F (Dep. Tr. of Terrill Swift, Nov. 30, 2020).

- Clayborn Smith who was deposed in 2021 in *Fulton/Coleman* by Defendants' counsel, and in 2008 in *Hill v. City of Chicago et al.*, No. 06-c-6772 by one of Defendants' counsel. Ex. K (Dep. Tr. of Clayborn Smith, Mar. 8, 2021); Ex. L (Dep. Tr. of Clayborn Smith, Mar.7, 2008); Ex. M (Dep. Tr. of Clayborn Smith, May 1, 2008) .

- Tyrone Reyna who was deposed in 2008 in *Hill v. City of Chicago et al.*, No. 06-c-6772 by one of Defendants' counsel. Ex. N (Dep. Tr. of Tyrone Reyna, Feb. 29. 2008).

There is no good reason for Defendants to re-depose the Deposed Six for a second and third time about one of the most traumatic moments in their lives. Defendants' efforts amount to harassment, unduly burdens Plaintiff and the deponents, results in duplicative information, and serve as a backdoor way to deprive Plaintiff of critical evidence in his civil case.

## LEGAL STANDARD

The court enjoys discretion to monitor the scope of discovery. *YCB Int'l, Inc. v. UCF Trading Co.*, No. 09 C 7221, 2014 WL 117353, at *2 (N.D. Ill. Jan. 13, 2014). There are several procedural rules that foreclose Defendants' plan to repeatedly depose Swift, Hill, Flewellen, Gillespie, Smith, and Reyna. First, the Court and the parties have an obligation to apply the Federal Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.; *see also* Committee Note to the 2015 Amendments (noting that "the parties share the responsibility to employ the rules…to discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay."). Second, the court is compelled to limit the frequency and extent of otherwise permissible discovery when the discovery sought is "unreasonably cumulative or duplicative" or "the seeking party has had sufficient opportunity to obtain the information sought by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). Similarly, the Rule excludes from the scope of discovery information that imposes a "burden or

expense" that is outweighed by its likely benefit. Fed. R. Civ. P. 26(b)(1). These limitations apply to non-party subpoenas issued under Rule 45. *Buonavolanto v. LG Chem., Ltd*., 2019 WL 8301068, at *2-3 (N.D. Ill. Mar. 8, 2019).

When a party seeks discovery that exceeds the bounds of Rule 26, the court may, upon a finding of good cause, issue a protective order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense." *Learning Res., Inc. v. Playgo Toys Enterprises Ltd.*, 335 F.R.D. 536, 537 (N.D. Ill. 2020); *see also* Fed. R. Civ. P. 26(c). When the conduct of a deposition is at issue, "[t]he number of times a witness has already been deposed is a relevant factor in determining good cause to grant a protective order." *Am. Nat'l Prop. & Cas. Co. v. Felix*, No. 3:16-CV-147, 2018 WL 10247020, at *3 (W.D. Pa. Nov. 16, 2018). In fact, the courts disfavor repeated depositions of an individual. *See, e.g.*, *Blount v. Stanley Eng'g Fastening*, 5:19CV109, 2021 WL 932033, at *4 (W.D. Ky. Mar. 11, 2021); *Franklin v. Smith*, Civ. 15-12995, 2016 WL 6652744, at *2-3 (E.D. Mich. July 7, 2016); *Blackwell v. City & County of San Francisco*, Civ. 07-4629, 2010 WL 2608330, at *1 (N.D. Cal. June 25, 2010); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 08CV335, 2009 WL 861733, at *4 (S.D. Cal. Mar. 25, 2009); *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 235 (E.D. Pa. 2008); *Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 690 (D. Kan. 1996). Not only because repeat depositions are costly and burdensome, but they also confer an unfair advantage to the deposing party. *See State Farm.*, 254 F.R.D. at 235 ("[A]llowing for serial depositions . . . provides the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the last.").

**ARGUMENT**

Defendants' intent to repeatedly depose the Deposed Six should be prohibited because it amounts to an abuse of discovery tools and is not aligned with the purpose of Rule 26. The primary purpose of Rule 26 is to "narrow the issues for trial and prevent unfair surprise." *Kim v. Hopfauf*, No. 1:15-CV-9127, 2017 WL 85441, at *2 (N.D. Ill. Jan. 10, 2017). It is not, as Defendants attempt to do here, an opportunity to create cumulative and duplicative discovery, harass the witnesses, needlessly delay the case, and unduly burden the Plaintiff and the deponents.

  *a. Re-depositions of the Deposed Six will result in cumulative and duplicative discovery*

Rule 404(b) witnesses, by definition, have limited knowledge about issues related to a case. The Rule 404(b) witnesses disclosed here were not involved in any of the underlying homicide investigations and thus, their testimony is restricted to their knowledge of Defendant Boudreau's other instances of fabricating false witness statements and extracting false confessions. This is a narrow area of inquiry that Defendants have had ample opportunity to explore with the Deposed Six. In fact, Defendants' depositions of the Deposed Six spans hundreds of pages that address the witnesses' interrogations, the circumstances leading to and following their interrogations, their false confessions, and efforts to prove their innocence. *See* Ex. C-F (Swift Dep. Transcripts) (totaling over 600 pages and spanning over 15 hours of questioning);  Ex. G (Hill Dep. Tr.) (spanning over 400 pages)[3]; Ex. K-M (Smith Transcripts) (covering over 300 pages of testimony specifically about Smith's interrogation and the circumstances leading to and following the interrogation); Ex. N (Reyna Tr.) (totaling over 150 pages of questioning about Reyna's

---

[3] Plaintiff's counsel was unable to obtain the transcript of Hill's deposition in the *Fulton/Coleman* matter before this motion was filed but Hill was deposed in *Fulton/Coleman* for two hours about his allegations against Boudreau.

interrogation, and the circumstances leading to and following the interrogation); Ex. J (Gillespie Tr.) (questioning Gillespie about his interrogation and the circumstances leading to and following the interrogation for over 120 pages); Ex. I (Flewellen Tr.) (spanning over 80 pages of questions about Flewellen's interrogation and the circumstances leading to and following the interrogation). There is no good reason for Defendants to have another bite apple. If a party were to engage in this type of repetitive questioning in a single deposition, this action would easily qualify harassing. The principle holds with even more force in the situation presented here: where the deponent is hauled into an office multiple times and is forced to endure hours of repetitive questioning. There is no legitimate purpose to justify this tactic.

During the meet and confers, defense counsel claimed that another deposition of Swift was necessary because during Swift's 2014 deposition, Swift admitted to lying under oath in his criminal case. Ex. B (Emails between the Parties) at 3. Defense counsel claims that this admission requires re-deposition so that Defendants can discover whether Swift is disavowing any other previous statements. *Id.* This argument is wrong and disingenuous. Defense counsel was aware of Swift's inconsistent statements prior to Swift's deposition in 2020 and had the opportunity to question Swift about it. To the extent Defendants claim their examination was hampered because the 2020 deposition was time limited, this was a self-imposed restriction. Defendants, knowing the areas of inquiry, agreed to the time limits. Ex O (Email between Defendants and Swift's Counsel, Oct 22, 2020). If they genuinely needed more time, Defendants could have litigated the matter, but chose not. Defendants' belated argument and vague statements about additional subject areas should be rejected.

b. *Defendants' repeat depositions are unduly burdensome*

These serial depositions also impose on undue burden on Plaintiff because it increases the cost of litigation, delays the case, forces Plaintiff's counsel to take on the time-consuming task of preparing for depositions for which hundreds of pages of prior testimony must be reviewed, and offers little benefit. This tactic also has the practical effect of discouraging these witnesses from continuing to come forward or participating in the civil process thereby, preventing Plaintiff from being able to present this critical evidence to a jury. The limits set by Rule 26 were designed to prevent a party from imposing precisely this sort of burden on their adversary. *See* Committee Note on the 1983 Amendment ("The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons... All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.").

It also cannot be overstated how emotionally taxing this repetitive process is for the Deposed Six. As a threshold matter, evaluation of the burden imposed on these witnesses should considered in the full context of both the underlying events as well as the civil matters. These six men of color are being asked to repeatedly recount events that took place during an era when Chicago police engaged in the systematic targeting and torture of poor minority men. *See* Flint Taylor, *The Torture Machine – Racism and Police Violence in Chicago*, 2019. When these men sounded the alarm their pre-trial and trial testimony about their torture was minimized, disbelieved, and dismissed. Now decades later, the Deposed Six are asked to undergo a similar procedure – they have been summoned to give detailed description about these traumatic events

in rooms where they are often the only people of color and required to tolerate questions that openly challenge their veracity. *See* Ex. M (Smith Dep. Tr., May 1, 2008) at 189:10-190:7 (noting that any inconsistency in his testimony would be cast as a lie); Ex. F (Swift Dep. Tr., Nov. 30, 2020) at 104:12-25 (noting that Defendants were not interested in hearing the truth). Expectedly these depositions are re-traumatizing and emotionally draining. *See* Ex. P (Video 2 of 2 of Gillespie's Dep.) at 17:58-24:10 (depicting Gillespie crying for multiple minutes when he was asked to recall the physical abuse that occurred during his interrogation); Ex. I (Flewellen Dep. Tr., Nov. 6, 2020) at 81:15-83:15, 92:19-23, 98:1-10; 101:1-16 (explaining that the deposition was difficult to bear, exhausting, and made his brain feel like it was going to explode); Ex. M (Smith Dep. Tr., May 1, 2008) at 313:4-10 (admitting that he did not read his false confession because it was "extremely depressing"). While Defendants may seek to rely on a rote right to depose all witnesses, this Court should not underestimate the heavy costs Defendants' tactics incur. Forcing the Deposed Six to repeatedly reopen the wounds created by Defendant Boudreau would be contrary to Rule 45(1)'s direction to "avoid imposing undue burden or expense" on a third party.

   c.   *Defendants' reliance on rulings in other cases is misplaced*

During the parties' conferrals, Defendants indicated that their position relied on the courts' decisions in *Hood/Washington, Fulton/Coleman, Prince,* and *Jakes.* Ex. B (Emails between the Parties) at 3. But these rulings are inapplicable because in each of these cases no motion for a protective order was filed to prevent the re-deposition of 404(b) witnesses and the courts did not have a full opportunity to evaluate the facts against the factors for a protective order.  Group Ex. Q (Briefing in *Washington v. City of Chicago et al.*, No. 16-cv-1893 (N.D. Ill.) and *Hood v. City of Chicago et al.*, No. 16-cv-1970 (N.D. Ill.)) (focusing on the number of

404(b) witnesses and the timing of the depositions rather than on the issue of whether it was proper to re-depose the witnesses); Ex. R (Opinion in *Hood/Washington*) at 3-4 (issuing a cursory finding that the witnesses could be re-deposed with no analysis); Ex. S (Order in *Jakes v. Boudreau et al.*, No. 19-cv-02204 (N.D. Ill.)) at 2 (same); Ex. T (Hrg. Tr. in *Prince v. Kato*, No. 18-c-2952) at 9:22-10:7 (issuing a cursory ruling after an impromptu oral argument on the re-deposition of 404(b) witnesses); Ex. U (Hrg. Tr. in *Fulton/Coleman* on Defendants' Emergency Motion to Prevent Non-Parties from Questioning 404(b) Witnesses) at 21:16-23:14 (primarily focusing on preventing non-parties from questioning the 404(b) witnesses and the procedural posture of the depositions).

By contrast, when this Court has been presented with briefing on a similar issue, this Court granted plaintiff's motion for a protective order to prevent the serial depositions of plaintiff's Rule 404(b) witness. In *Johnson v. Guevara et al.*, No. 20-cv-04156 (N.D. Ill.), the plaintiff moved for a protective order preventing the duplicative deposition a third-party Rule 404(b) witnesses. *Johnson* Dkt. 54. At issue was the prospect of a Rule 404(b) witness being deposed multiple times about by the same defense counsel about his knowledge of one of the defendant's prior acts of misconduct. There, this Court found that the factors weighed in favor of a protective order preventing repeated depositions of this witness. *Johnson* Dkt. 150. For the reasons explained above, the same principle applies here.

## CONCLUSION

Plaintiff acknowledges that Defendants have a right to investigate his claims and their defenses, which is why Plaintiff is not moving for a protective order to prevent Defendants from deposing the Rule 404(b) witnesses who have not already been deposed. But at it relates to the Deposed Six, Defendants have had multiple opportunities to narrow and identify the issues.

When this Court weighs the minimal benefit any repeat deposition is likely to yield against the costs and delay serial depositions create, the undue burden imposed on Plaintiff and the deponents, and the cumulative and duplicative information obtained, the balance supports the imposition of a protective order. To the extent this Court is inclined to permit Defendants to re-depose these witnesses, the depositions should be strictly limited by time and to subject matters not previously covered, and this Court should require Defendants to specifically proffer the justification for each repeat deposition and area of inquiry. *See Mendez v. City of Chicago*, No. 18 CV 5560, 2020 WL 3510692, at *4 (N.D. Ill. June 29, 2020) (setting limitations on a deposition where there was a showing that limits were necessary to protect the deponent's well-being); *Learning Res., Inc.*, 335 F.R.D. 536, 537 (N.D. Ill. 2020) (acknowledging that the court has discretion to decide when a protective order is appropriate and what degree of protection is required).

Wherefore, for the foregoing reasons, Plaintiff respectfully moves this Court to enter a protective order barring Defendants from re-deposing Terrill Swift, Derrick Flewellen, Jerry Gillespie, Harold Hill, Tyrone Reyna, and Clayborn Smith, or in the alternative, strictly limit any re-depositions by time and subject matter, and require Defendants to specifically proffer the reason for each repeat deposition and areas of inquiry.

**PROPOSED BRIEFING SCHEDULE**

During the parties' 37.2 conferences, the parties agreed to a proposed briefing schedule on this matter and accordingly, submit this schedule for the Court's approval:

- Defendants' response due on or before: July 6, 2022.

- Plaintiff's reply due on or before: July 13, 2022.

Respectfully submitted,

ARNOLD DAY


By: *s/ Renee Spence*
    *One of His Attorneys*


Arthur Loevy
Jon Loevy
Gayle Horn
Heather Lewis Donnell
Renee Spence
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900 (phone)
spence@loevy.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2022, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ *Renee Spence*