IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARNOLD DAY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7286 |
| | ) | |
| v. | ) | Hon. Sara L. Ellis |
| | ) | District Judge |
| KENNETH BOUDREAU, *et al.*, | ) | |
| | ) | Magistrate Judge Jeffrey Cummings |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER TO
PREVENT DUPLICATIVE DEPOSITIONS OF PLAINTIFF'S RETAINED EXPERTS**

Plaintiff Arnold Day, through his undersigned attorneys, respectfully moves this Court for a protective order prohibiting Defendants from re-deposing two of Plaintiff's experts, Craig Miller and Dr. Richard Leo—who the Defendants deposed last year, for seven hours each, about the exact same opinions that have been disclosed in Plaintiff's case. In support of this motion, Plaintiff states the following:

**INTRODUCTION**

Plaintiff has alleged that his wrongful conviction was caused by Defendants' unconstitutional conduct. To that end, Plaintiff alleges that Defendant Boudreau coerced a 15-year-old boy named Anthony Jakes into falsely implicating Jakes and Plaintiff in the murder of Rafael Garcia, a murder neither Jakes nor Plaintiff committed. As a result of Jakes' false confession, Plaintiff was arrested and Defendant Boudreau coerced Plaintiff into falsely confessing not only to Garcia's murder, but also to a second murder—that of Jerrod Erving. At the respective trials, Plaintiff was acquitted of the Garcia murder, but convicted of the Erving murder.

1

Decades later, both Jakes and Day were granted Certificates of Innocence ("COI")—Jakes for the Garcia murder and Day for the Erving murder. Jakes filed a civil suit against a number of Defendants, including Defendant Boudreau, alleging that Boudreau (and other Chicago police detectives) caused his wrongful conviction, *Jakes v. City of Chicago*, No. 19 CV 2204. During expert discovery in *Jakes*, Jakes disclosed two experts—Craig Miller (police practices) and Dr. Richard Leo (false confession)—and their attendant reports. Those experts were deposed for seven hours each by the same counsel involved in defending Boudreau (and others) in this litigation.

Notwithstanding Plaintiff's acquittal and COI, the Defendants in this litigation have taken the position that Plaintiff committed both the Garcia and Erving murders. Plaintiff therefore not only disclosed two experts to discuss the Erving homicide—Richard Clark (police practices) and Dr. Melissa Russano (false confession)—but also disclosed the Miller and Leo reports from the *Jakes* litigation that analyze Jakes' confession and the Garcia homicide. Despite the fact that Dr. Leo's and Mr. Miller's opinions and deposition testimony remain unchanged, Defendants are seeking to re-depose them in order to rehash well-traversed ground. Their re-depositions should not be allowed. To permit it would directly contravene Federal Rules of Civil Procedure ("Rule") 1 and 26 as it would result in the harassment of Mr. Miller and Dr. Leo, a waste of time, money, and resources, and would produce duplicative testimony.

**RELEVANT FACTUAL BACKGROUND**

In February 1992, Plaintiff was arrested for the murder of Rafael Garcia—a murder he did not commit. Dkt. 1 at ¶¶ 36-43. At the time of Plaintiff's arrest, the only evidence linking Plaintiff to Garcia's murder was the false and coerced confession of 15-year-old Anthony Jakes. *Id.* at ¶¶ 15-35. While Plaintiff was held in custody, Defendants interrogated Plaintiff about the

2

Garcia murder and about the unrelated and unsolved murder of Jerrod Erving. *Id.* at ¶¶30; 42. Throughout the interrogation, Plaintiff maintained his innocence and denied any knowledge or participation in either the Erving or Garcia homicides. *Id.* at ¶¶42-43. Defendants, however, rejected Plaintiff's statements of innocence and coerced Plaintiff into falsely confessing to killing Erving and Garcia in two separate "confessions" that were taken at the same time. *Id.* at ¶¶42-54.

Plaintiff was prosecuted and tried for both murders. Dkt. 1 at ¶¶56-57. At trial for the Garcia murder, Plaintiff and Jakes were tried together. Plaintiff presented an alibi defense and testified about his coerced confession for the Garcia homicide. The jury believed Plaintiff and acquitted him, but a separate jury convicted Jakes. *Id.* at ¶56. Plaintiff next went to trial for the Erving homicide, where his coerced and false confession for the Erving murder was introduced against him. *Id.* at ¶62. Unable to overcome the impact of this fabricated evidence, Plaintiff was convicted. *Id.* at ¶¶63-64. Fortunately, after decades of asserting their innocence and steadfastly asserting that Chicago Police officers—and in particular, Defendant Kenneth Boudreau—coerced them in falsely confessing, both Jakes and Plaintiff were exonerated. *Id.* at ¶¶67-68. Their convictions were vacated, and both were granted COIs. *Id.* at ¶¶67-69.

Both Plaintiff and Jakes have brought civil suits against certain Chicago Police officers and the City of Chicago for causing their wrongful convictions. Defendant Boudreau is named in both cases. Boudreau investigated both the Garcia and Erving homicides, separately interrogated Plaintiff and Jakes, coerced Jakes into falsely implicating himself and Plaintiff in the Garcia murder, and coerced Plaintiff into falsely confessing to killing Garcia and Erving. Dkt. 1 at ¶¶15-54. Defendant Boudreau also fabricated evidence in the Garcia and Erving homicide investigations. *Id.* Given the overlapping allegations in Plaintiff's and Jakes' suit, the parties agreed to global document production for both cases, to disclose one list of Rule 404(b)

witnesses for both cases, and to conducting one deposition for certain third-party witnesses who had knowledge of both the Garcia and Erving homicides.

In support of his claims, Plaintiff has disclosed two new experts: Dr. Melissa Russano, a false confession expert who opined about Plaintiff's false confessions and Roger Clark, a police practices expert who opined about the conduct of the Erving and Garcia homicide investigations. Ex. 1 (Plaintiff's Rule 26(a)(2) Disclosures). Plaintiff also disclosed Dr. Richard Leo, a false confession expert who opined about Jakes' false confession in the Garcia investigation; and Craig Miller, a police practices expert who opined about the conduct of the Garcia homicide investigation, including opinions about the relevant generally accepted practice for handling juvenile witnesses and suspects.

Mr. Miller and Dr. Leo were both previously disclosed in *Jakes* as retained experts, and pursuant to Federal Rule of Civil Procedure 26(a)(2), their respective reports were also disclosed. Ex. 2 (*Jakes* Rule 26(a)(2) Disclosures). In 2022, during expert discovery in *Jakes*, Defendants deposed Mr. Miller and Dr. Leo on the opinions disclosed in their reports by the same counsel representing the individual defendants here. Each deposition lasted seven hours and the transcripts span hundreds of pages. Ex. 3 (Miller Dep.) (412 page deposition, spanning 7 hours, 11 minutes, and 15 seconds); Ex. 4 (Leo Dep.) (324 page deposition). When Plaintiff disclosed Dr. Leo and Mr. Miller in this case, Plaintiff informed Defendants that Dr. Leo and Mr. Miller would testify consistent with their reports and deposition testimony in the *Jakes* litigation. Ex. 1 (Plaintiff's Rule 26(a)(2) Disclosures). Plaintiff also specifically noted that Dr. Leo's and Mr. Miller's opinions remain unchanged since Defendants deposed them and that neither expert has reviewed any additional documents since their respective depositions.

To be clear, Plaintiff does intend to have cumulative expert testimony for the trial in this case, but, only to the limited extent necessary, will call Dr. Leo and Mr. Miller regarding the opinions pertaining to the Jake's coerced confession obtained by Defendant Boudreau in the Garcia investigation and the pertinent details from Mr. Miller's report, most notably regarding the treatment of juvenile witnesses and suspects. For example, Dr. Russano referred to Dr. Leo's opinion regarding Jake's confession instead of re-analyzing it again. Ex. 5 (Russano Report) at n. 173.

Despite having a full and fair opportunity to depose Dr. Leo and Mr. Miller, Defendants now seek to re-depose these experts. Plaintiff's counsel and counsel for the Officer Defendants conferred telephonically about this issue on May 30, 2023, and by email, but were unable to reach any resolution. Ex. 6 (Emails among counsel).

## LEGAL STANDARD

The court enjoys discretion to monitor the scope of discovery. *YCB Int'l, Inc. v. UCF Trading Co.*, No. 09 C 7221, 2014 WL 117353, at *2 (N.D. Ill. Jan. 13, 2014). There are several procedural rules that foreclose Defendants' plan to re-depose Dr. Leo and Mr. Miller. First, the Court and the parties have an obligation to apply the Federal Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also* Committee Note to the 2015 Amendments (noting that "the parties share the responsibility to employ the rules…to discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay."). Second, the court is compelled to limit the frequency and extent of otherwise permissible discovery when the discovery sought is "unreasonably cumulative or duplicative" or "the seeking party has had sufficient opportunity to obtain the information sought by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). Similarly, the Rule excludes from the

scope of discovery information that imposes a "burden or expense" that is outweighed by its likely benefit. Fed. R. Civ. P. 26(b)(1). These limitations apply to non-party subpoenas issued under Rule 45. *Buonavolanto v. LG Chem., Ltd.*, 2019 WL 8301068, at *2-3 (N.D. Ill. Mar. 8, 2019).

When a party seeks discovery that exceeds the bounds of Rule 26, the court may, upon a finding of good cause, issue a protective order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense." *Learning Res., Inc. v. Playgo Toys Enterprises Ltd.*, 335 F.R.D. 536, 537 (N.D. Ill. 2020); *see also* Fed. R. Civ. P. 26(c). When the conduct of a deposition is at issue, "[t]he number of times a witness has already been deposed is a relevant factor in determining good cause to grant a protective order." *Am. Nat'l Prop. & Cas. Co. v. Felix*, No. 3:16-CV-147, 2018 WL 10247020, at *3 (W.D. Pa. Nov. 16, 2018). In fact, the courts disfavor repeated depositions of an individual. *See, e.g.*, *Blount v. Stanley Eng'g Fastening*, 5:19CV109, 2021 WL 932033, at *4 (W.D. Ky. Mar. 11, 2021); *Franklin v. Smith*, Civ. 15-12995, 2016 WL 6652744, at *2-3 (E.D. Mich. July 7, 2016); *Blackwell v. City & County of San Francisco*, Civ. 07-4629, 2010 WL 2608330, at *1 (N.D. Cal. June 25, 2010); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 08CV335, 2009 WL 861733, at *4 (S.D. Cal. Mar. 25, 2009); *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 235 (E.D. Pa. 2008); *Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 690 (D. Kan. 1996). That is not only because repeat depositions are costly and burdensome, but also because they confer an unfair advantage to the deposing party. *See State Farm.*, 254 F.R.D. at 235 ("[A]llowing for serial depositions . . . provides the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the last.").

**ARGUMENT**

There is no legitimate reason to justify re-deposing Mr. Miller and Dr. Leo. Nothing has changed since Defendants conducted seven-hour depositions of them last year. The opinions are the same. The testimony is the same. The list of materials reviewed is the same. Even defense counsel is the same. There is no new information to glean. Yet undeterred by this reality, during the parties' meet and confer, Defendants lodged three baseless justifications for re-deposing Dr. Leo and Mr. Miller: (1) Defendants do not have sufficient notice of Dr. Leo's and Mr. Miller's opinions; (2) that the disclosure of Dr. Leo and Mr. Miller is duplicative of Plaintiff's other experts; and (3) depositions are necessary to determine why the experts believe their opinions are relevant to the Erving homicide investigation. None of these objections has merit.

*A. Defendants Have Adequate Notice of Dr. Leo's and Mr. Miller's Opinions*

In the *Jakes* litigation, consistent with the requirements set by Federal Rule of Civil Procedure 26(a)(2)(B), Jakes disclosed Mr. Miller's and Dr. Leo's opinions, their reports, their rate of compensation, a list of the material they reviewed, their qualifications and publications, and previous testimony. Ex. 2 (*Jakes* Rule 26(a)(2) Disclosures), Ex. 7 (Miller's Report), Ex. 8 (Leo's Report). Consequently, Defendants did not object to Jakes' disclosure. Prior to Mr. Miller's and Dr. Leo's depositions, Defendants served subpoenas on both experts, which comprised 31 requests for additional information. Ex. 9 (*Jakes* subpoenas for Miller and Leo). In response, Jakes produced non-privileged responsive documents. Dr. Leo's response spanned almost two thousand pages, and Miller's response consisted of more than 900 pages. Defendants then deposed both experts for seven hours each.

Under these circumstances, Defendants cannot credibly claim they do not have sufficient notice of Dr. Leo's and Mr. Miller's opinions. Defendants have used multiple discovery tools to

probe their opinions and have left no stone unturned. Re-deposing these experts on the same opinions would not yield any additional information. Rather it would result in significant waste, amounting to harassment. Plaintiff's counsel would have to devote, and pay for, hours of time to re-prep Dr. Leo and Mr. Miller for their depositions, in addition to the hours the experts themselves will have to spend refreshing themselves on the material and sitting for deposition. Their re-depositions will also cause delay in the progress of the case as the parties attempt to find mutually agreeable dates for their depositions. All for Defendants to elicit duplicative testimony. This is precisely the type of conduct the Federal Rules were crafted to avoid. *See* Fed. R. Civ. P. 1, 26(b)(2)(C). Defendants' thorough examinations of Dr. Leo and Mr. Miller and comprehensive discovery into their opinions have given Defendants sufficient notice of and opportunity to explore Dr. Leo's and Mr. Miller's opinions.

   B. *Objections about Cumulative or Duplicative Expert Testimony are Premature and Unrelated to the Conduct of a Second Deposition*

Plaintiff has disclosed four retained experts: Dr. Melissa Russano, a false confession expert who opined about Plaintiff's false confession; Roger Clark, a police practices expert who opined about the conduct of the Erving and Garcia homicide investigations; Dr. Richard Leo, a false confession expert who opined about Jakes' false confession; and Craig Miller, a police practices expert who opined about the conduct of the Garcia homicide investigation, including opinions about the relevant generally accepted practice for handling juvenile witnesses and suspects. Contrary to Defendants' belief, nothing in the Federal Rules prohibits Plaintiff from disclosing experts who have similar backgrounds or even overlapping opinions. Further, even if such a rule existed, it is wholly unrelated to the matter of whether Defendants can re-depose an expert.

Defendants have argued that Plaintiff's disclosure of Dr. Leo and Mr. Miller is duplicative and cumulative. To the extent Defendants are concerned that Plaintiff will elicit duplicative or cumulative testimony, this is not an issue for expert discovery, nor can it be resolved through deposition. The appropriate time to litigate objections pertaining to redundant testimony is in motions *in limine* where Defendants can seek an order from the Court excluding or limiting Plaintiff's experts' testimony. *See Lawrence v. United States*, No. 18 C 1570, 2022 WL 2208851, at *2 (N.D. Ill. June 21, 2022) (stating that exclusion of an expert based on redundancy is an issue resolved by the judge at trial); *Stanfield v. Dart*, No. 10 C 6569, 2013 WL 589222, at n.3 (N.D. Ill. Feb. 14, 2013) (noting that defendant's argument that the expert report be stricken because it was cumulative was a matter did "not pertain to the discovery or motion practice stage of the case but rather the trial stage of the case"); *Hall v. Home Depot USA, Inc.*, No. 07-350-WDS-DGW, 2008 WL 11380000, at *4 (S.D. Ill. Nov. 17, 2008) (resolving discovery motion pertaining to expert discovery but deferring decisions about the "whether and to what extent" expert witness would testify to the trial judge). Defendants' argument does not entitle them to a re-deposition and should be rejected.

C. *Defendants Should Not Be Permitted to Use Depositions to Elicit Legal Conclusions from Plaintiff's Experts*

Finally, Defendants claim they need to re-depose Dr. Leo and Mr. Miller to ask these experts to explain why their opinions are relevant to Plaintiff's legal claims. This is inappropriate. Neither Dr. Leo nor Mr. Miller is an attorney or versed in the law governing Plaintiff's claims. Questions requiring them to put forth legal arguments necessarily fall outside the scope of their expertise. As with Defendants' concerns with cumulative or duplicative testimony, issues related to relevancy are rightly relegated to motion practice and not foisted upon police practices and false and coerced confessions experts. Requiring Dr. Leo and Mr.

Miller to sit for a second deposition for improper questioning would be harassing and unproductive.

## CONCLUSION

Defendants have all the information they need. They obtained it last year when they comprehensively tested Dr. Leo's and Mr. Miller's disclosed opinions. Defendants should not be permitted to use discovery tools to gain an unfair advantage by re-deposing Plaintiff's experts, or force Plaintiff (and taxpayers) to bear the cost of this inefficient and wasteful strategy.

Wherefore, Plaintiff respectfully requests that the Court issue a protective order barring Defendants from re-deposing Plaintiff's retained experts Dr. Richard Leo and Mr. Craig Miller.

Respectfully submitted,

**ARNOLD DAY**

By: */s/ Renee Spence*
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Gayle Horn
Heather Lewis Donnell
Renee Spence
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900 (phone)
gayle@loevy.com

# CERTIFICATE OF SERVICE

  I, Renee Spence, an attorney, hereby certify that on June 22, 2023, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

*/s/ Renee Spence*
*One of Plaintiff's Attorneys*
