# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ARNOLD DAY,                                    )
                                               )
      Plaintiff,                            )          Case No. 19-cv-7286
                                               )
      v.                                    )          Hon. Sara L. Ellis
                                               )          District Judge
KENNETH BOUDREAU, *et al.*,                    )
                                               )          Magistrate Judge Jeffrey Cummings
      Defendants.                           )

---

# EXHIBIT 3



Transcript of the Deposition of
**Craig Miller**

**Case:** Anthony Jakes v. Kenneth Boudreau; et al.
**Taken On:** May 24, 2022

Royal Reporting Services, Inc.
Phone:312.361.8851
Email:info@royalreportingservices.com
Website: www.royalreportingservices.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY JAKES,                          )
                                        )
            Plaintiff,                  )
                                        )
      vs.                               ) No. 19-CV-02204
                                        )
KENNETH BOUDREAU, et al.,               )
                                        )
            Defendants.                 )


            The REMOTE VIDEOTAPED DEPOSITION of CRAIG

MILLER, pursuant to notice and pursuant to the Rules

of Civil Procedure for the United States District

Courts pertaining to the taking of depositions, taken

before Barbara Perkovich, CSR, Certified Shorthand

Reporter within and for the County of Cook and State

of Illinois, on the 24th day of May 2022 at 10:00

a.m.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 2

```
 1                    REMOTE APPEARANCES

 2     LOEVY & LOEVY
       BY:  MS. RENEE SPENCE
 3     311 North Aberdeen Street
       3rd Floor
 4     Chicago, Illinois 60607
       (312) 243-5900
 5     spence@loevy.com
            Appearing on behalf of plaintiff;
 6
       ROCK FUSCO & CONNELLY, LLC
 7     BY:  MR. ANDREW J. GRILL
            MS. BRITTANY D. JOHNSON
 8     333 West Wacker Drive
       19th Floor
 9     Chicago, Illinois 60606
       (312) 494-1000
10     agrill@rfclaw.com
       bjohnson@rfclaw.com
11          Appearing on behalf of defendants Kenneth
            Boudreau, Louis Caesar, Michael DeLacy, Ken
12          Burke and Fred Bonke;

13     THE SOTOS LAW FIRM, P.C.
       BY:  MR. GEORGE J. YAMIN, JR.
14     141 West Jackson Boulevard
       Suite 1240A
15     Chicago, Illinois 60604
       (630) 735-3300
16     gyamin@jsotoslaw.com
            Appearing on behalf of  defendant City of
17          Chicago.

18

19
       ALSO PRESENT:  Mr. Joseph Beile, Videographer
20

21

22

23

24
```

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 3

1                        I N D E X
WITNESS:                          PAGE

2

CRAIG MILLER

3

        Examination by:

4

            Mr. Grill                 6

5

6

7

8

9
                E X H I B I T S
10   NUMBER                    FOR IDENTIFICATION

11   No. 1                          8

12   No. 2                          10

13   No. 3                          11

14   No. 4                          136

15   No. 5                          167

16   No. 6                          172

17   No. 7                          284

18   No. 8                          351

19   No. 9                          354

20   No. 10                         368

21   No. 11                         405

22

23          (Exhibit No. 9 was not
            provided to the court
            reporter.)

24

1              THE VIDEOGRAPHER:  For the record, my

2      name is Joe Beile.  I'm also with Michael

3      Kema of Video Instanter.  We are the video

4      recording device operators for this

5      deposition.

6                      Our business address is 134 North

7      LaSalle Street, Suite 1400, Chicago, Illinois

8      60602.  This remote deposition is being video

9      recorded pursuant to the Federal Rules of

10     Civil Procedure and all other applicable

11     rules.

12                     This is the deposition of Craig

13     Miller being taken in the matter of Anthony

14     Jakes versus Kenneth Boudreau, et al.,

15     Case No. 19-CV-2204 in the United States

16     District Court for the Northern District of

17     Illinois, Eastern Division.

18                     Today's date is May 24th, 2022,

19     and the time is 10:01 a.m.

20                     Will the witness please identify

21     yourself for the record by stating your name

22     and location, please?

23             THE WITNESS:  Craig Miller.  I am in

24     Heath, H-e-a-t-h, Texas.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 5

1          THE VIDEOGRAPHER:  This deposition is

2     being video recorded at the instance of the

3     defendant and it is being taken on behalf of

4     the defendant.  Will the participants of this

5     videoconference please introduce themselves

6     for the record by stating your name,

7     location, and who you represent, please?

8          MR. GRILL:  Andrew Grill.  I'm in

9     Chicago, Illinois.  And I represent the

10    individual police officer defendants in this

11    case.

12         MS. JOHNSON:  Brittany Johnson,

13    Chicago, Illinois, and I represent the

14    individual defendant police officers.

15         MR. YAMIN:  George Yamin, I represent

16    the defendant City of Chicago.

17         MS. SPENCE:  Renee Spence on behalf of

18    plaintiff, Anthony Jakes.  Washington, DC.

19         THE VIDEOGRAPHER:  Will the court

20    reporter please introduce herself and swear

21    in the witness?

22         THE COURT REPORTER:  Barbara Perkovich

23    on behalf of Royal Reporting Company.

24              (Witness sworn.)

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 6

1                    CRAIG MILLER,

2    called as a witness, and having been first duly

3    sworn, was examined and testified as follows:

4                    EXAMINATION

5    BY MR. GRILL:

6         Q.    All right.  Mr. Miller, as you just

7    heard me say, I'm one of the attorneys

8    representing the police officers.  I'm going to be

9    the one asking you questions primarily today, and

10   then I'm sure from past experience in depositions

11   you give, you understand that other attorneys

12   might have some questions for you when I'm done.

13   Okay?

14        A.    Okay.

15        Q.    Can you hear me okay?

16        A.    Yes, sir.  Gotcha.

17        Q.    All right.  Certainly if you don't hear

18   me, or the question is confusing, or something

19   happens with the audio here, just let me know.

20   I'll repeat the question or we'll fix the audio if

21   that's what needs to happen.  All right?

22        A.    Will do.

23        Q.    You've given depositions a few times in

24   the past, right?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 7

1      A.      I have.

2      Q.      And, in particular, in your capacity as

3  a police practices expert, right?

4      A.      Yes, sir.

5      Q.      And, in fact, you've been hired by the

6  Loevy law firm, which represents Mr. Jakes in this

7  case, a few times in the last four years, right?

8      A.      Correct.

9      Q.      And there was some financial

10  information that was exchanged between the parties

11  regarding the number of times that you've

12  testified for them.  Have you seen that

13  information?

14      A.      I supplied information regarding -- I

15  was asked a question about my income as an expert

16  witness --

17          MS. SPENCE:  One second.  Objection to

18      the extent that this calls for work product

19      and communications between the attorney and

20      the expert.

21              I believe -- can you just repeat

22      the question, Andrew?  And, Mr. Miller, can

23      you just respond to the question that

24      Mr. Grill is asking?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 8

 1  BY MR. GRILL:

 2       Q.    Let me just ask it this way:  So,

 3  Mr. Miller, just as a -- hang on this isn't

 4  working right.  Okay.

 5            So, Mr. Miller, I'll just show this to

 6  you.  This will kind of just short-circuit the

 7  question.  Can you see the document?

 8       A.    I can.

 9       Q.    It's titled, Loevy and Loevy, Attorneys

10  at Law, Find Report All Transactions.  Can you see

11  this?

12       A.    Yes, I can, sir.

13       Q.    I'm going to mark it as Exhibit 1 or

14  Miller Dep Exhibit 1.  This document was provided

15  to us in the last few days, and it purports to

16  summarize the total amount of money that the Loevy

17  law firm has paid you since April 30th, 2019, for

18  your expert services as a police practices expert.

19            Have you seen this document before just

20  now?

21       A.    No.

22       Q.    If you would just kind of look at it

23  and let me know if you believe the total amount of

24  $129,062.50, from your point of view, is accurate

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 9

1    as the total amount of money that the Loevy law

2    firm has paid you since April of 2019?

3         A.     Yes, sir.  I believe that's accurate.

4         Q.     And have you provided a curriculum

5    vitae, I guess -- that's a fancy word for

6    résumé -- in this case?

7         A.     Yes, sir.

8         Q.     I want to show it to you so we can get

9    these things marked.  See, if we were in person I

10   could just hand it to you and it would go faster,

11   but we're not.  You see this?

12        A.     I do.

13        Q.     All right.  And I'm just going to scan

14   through it.  It has your name, Craig R. Miller at

15   the top, right?

16        A.     Yes, sir.

17        Q.     And we just kind of scan down.  I'm

18   sure you've seen this a bunch of times.  That's, I

19   guess, on the second page, it's the end of your

20   professional experience and educational

21   background.  And then the last three pages, it's a

22   list of cases, it looks like, that you've been an

23   expert in?

24        A.     In the last several years, yes, sir.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 10

1      Q.      So this is your CV, correct?

2      A.      Yes.

3      Q.      And I'll just mark this as Exhibit 2,

4  Miller Exhibit 2, for this deposition.  What I

5  want to ask you is any updates to this CV since

6  you provided it to Mr. Jakes's attorneys?

7      A.      Not to my résumé.  No, sir.

8      Q.      Any other updates that relate to this

9  CV or the case list at the end, since you provided

10 it?

11     A.      I'm doing a number of cases for the

12 city of Austin right now.  And --

13          MS. SPENCE:  I'm going to object to the

14          extent it calls for Mr. Miller to disclose

15          whether or not he's been retained as an

16          expert in other cases where those attorneys

17          have not disclosed him to opposing counsel.

18              So, Mr. Miller, I would instruct

19          you to only disclose cases where you know

20          that opposing counsel -- that the attorney

21          who has hired you has disclosed you as an

22          expert in the case.  You can go ahead and

23          answer if you can.

24          THE WITNESS:  No.  The cases that are

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 11

1          on there, then, would be the answer.

2    BY MR. GRILL:

3          Q.      And let's just go ahead and mark this.

4    I think you probably know what the next document

5    is.  I'm going to show you.  We'll mark this as

6    Exhibit 3.  You see this?

7          A.      I do.  Yes, sir.

8          Q.      And this is a 37-page document, which

9    is the report that you provided to Mr. Jakes's

10   attorneys in this case, right?

11         A.      Correct.

12         Q.      And would you agree that -- let me ask

13   you this:  You have an understanding of what the

14   allegations are that Mr. Jakes has made against my

15   clients in this case because you've reviewed the

16   complaint, the federal civil rights lawsuit

17   complaint, that he filed, right?

18         A.      Correct.

19         Q.      And you understand, then, what the

20   factual basis is, as alleged in the complaint,

21   that underpins the various claims that he has

22   brought against my clients, right?

23              MS. SPENCE:  Objection to form.  Go

24        ahead.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 12

 1            THE WITNESS:  Yes, sir.

 2   BY MR. GRILL:

 3        Q.     And you would agree that the report

 4   that you filed -- that's probably the wrong word

 5   to say filed, but at least the report that you

 6   submitted, that I just showed you as Exhibit 3, is

 7   a report that is favorable to Mr. Jakes, inasmuch

 8   as it sports the allegations that he's brought

 9   against my client, correct?

10            MS. SPENCE:  Objection to form.

11            THE WITNESS:  I would answer that by

12        saying I believe my report is just my

13        objective opinion about -- from what I read

14        and investigated.

15   BY MR. GRILL:

16        Q.     Are you -- in your report, you -- well,

17   let me ask it this way:  You were hired by

18   Mr. Jakes's attorneys to provide a report and to

19   testify about your opinions as a police practices

20   expert in his case, right?

21        A.     Yes, sir.

22        Q.     In your report you, at least towards

23   the end, you have portions that discuss Arnold

24   Day.  Do you recall that?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 13

1       A.      Yes.

2       **Q.      Were you hired by Mr. Day's attorneys**

3  **to provide an expert opinion, as a police**

4  **practices expert, as far as -- yeah, that's my**

5  **question.**

6               MS. SPENCE:  Objection, form.

7          Foundation, as to this witness's knowledge as

8          to who Mr. Day's attorneys may be.

9  BY MR. GRILL:

10      **Q.      Do you understand my question?**

11      A.      No.  I was not.

12      **Q.      Okay.  Do you intend to offer any**

13  **opinions at trial regarding the way the police**

14  **investigated the -- Mr. Day's involvement in the**

15  **Garcia homicide?**

16              MS. SPENCE:  Objection.  Form.

17              THE WITNESS:  I only plan to testify at

18          trial about what's inside my report.

19  BY MR. GRILL:

20      **Q.      Do you intend to provide any opinion**

21  **regarding the -- regarding how Mr. Day was**

22  **interviewed or interrogated by the police?**

23      A.      If it's in my report, yes, sir.

24      **Q.      Do you intend to provide any opinion**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 14

1    regarding the truthfulness of Mr. Day's statement?

2        A.    Only what's in my report, sir.

3        Q.    Do you believe that it is appropriate

4    for an expert witness in police practices to

5    provide an opinion regarding whether any suspect's

6    confession is truthful or not?

7        A.    I believe that's the jury's decision,

8    sir.

9        Q.    Okay.  I would agree.  Okay.  Have you

10   ever published any articles, published anything

11   for that matter, regarding homicide

12   investigations?

13       A.    No, sir.

14       Q.    What about interrogations of suspects

15   or witnesses in homicide investigations?  Have you

16   published anything on that topic?

17       A.    No, sir.

18       Q.    What about juvenile interrogations

19   within the context of a criminal investigation?

20   Have you published anything in that regard?

21       A.    No, sir.

22       Q.    Do you hold any degrees in psychology?

23       A.    No, sir.

24       Q.    Psychiatry?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 15

1     A.     No, sir.

2     Q.     Okay.  Do you hold yourself out as an

3  expert in any capacity in the field of false

4  confessions?

5     A.     I do not.

6     Q.     Do you hold yourself out as an expert

7  in human behavior?

8     A.     I do not.

9          MS. SPENCE:  Objection.  Form.

10          THE WITNESS:  I do not.

11 BY MR. GRILL:

12     Q.     What about expertise in how the human

13 brain works?  Do you hold yourself out as an

14 expert in any regard, on any topic, in that broad

15 category?

16          MS. SPENCE:  Objection.  Form.

17          THE WITNESS:  No, sir.

18 BY MR. GRILL:

19     Q.     Let's put your CV up here.  You can see

20 that?

21     A.     Yes, sir.

22     Q.     So it says here that you went -- I just

23 want to kind of run through your background here,

24 kind of try to speed through it.  You went to

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 16

1  Memphis State University for college, got a

2  Bachelor of Arts degree.  That was completed in

3  1981, right?

4       A.    Correct.

5       Q.    And then straight away from there,

6  pretty much, starting in 1982, you joined the

7  police academy, right?

8       A.    A few months later.

9       Q.    Any particular reason why you wanted to

10 become a law enforcement officer?

11      A.    I had a degree in criminal justice and

12 that was the best option.

13      Q.    Okay.  And you retired, I believe,

14 what, in 2019?

15      A.    The second time.  Yes, sir.

16      Q.    Yeah.  Right.  Okay.  So you started at

17 the police academy in 1982, right?

18      A.    Correct.

19      Q.    And then to Dallas PD from '82 to '91?

20            MS. SPENCE:  Sorry, Andrew, can you

21      scroll to the parts -- I haven't been able to

22      access the exhibits.  So the parts you're

23      referencing I can't see and it's hard for me

24      to have it up at the same time you're sharing

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 17

1        the screen.

2                MR. GRILL:  You don't have a copy of

3        his CV with you?

4                MS. SPENCE:  It's hard for me to have

5        it up as you're sharing -- at the same time

6        you're sharing the screen.

7                MR. GRILL:  Right.  You don't have a

8        physical copy of the CV is what you're

9        saying.

10               MS. SPENCE:  Correct.  I don't have a

11       physical copy in front of me.

12    BY MR. GRILL:

13       Q.      Okay.  All right.  So, you made

14    sergeant in 1986 while you were with the Dallas

15    PD, right?

16       A.      Yes, sir.

17       Q.      And what division were you sergeant

18    for?

19       A.      Central patrol.

20       Q.      And then you made lieutenant in 1991,

21    correct?

22       A.      Correct.

23       Q.      It's true that you did not conduct any

24    homicide investigations between 1982 and 1991 when

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 18

1    you were with the Dallas Police Department, right?

2              MS. SPENCE:  Objection.  Form.

3              THE WITNESS:  I was not an investigator

4         in homicide as a patrol officer and as a

5         sergeant in patrol.  I was at the scene of

6         and a participant in a number of homicide

7         investigations.

8    BY MR. GRILL:

9         Q.    Okay.  So, do you remember being

10   deposed in the McIntosh case, maybe like last

11   year?

12        A.    I remember it taking place.  Yes, sir.

13        Q.    Okay.  I want to show you something

14   that you said in that case, and maybe you can

15   square the circle for me then.  Yeah, I think

16   that's the phrase.

17             MR. GRILL:  Can the court reporter just

18        read back his answer?  Maybe I misunderstood

19        something that was said.

20                  (Record read as requested.)

21   BY MR. GRILL:

22        Q.    When you say you were a participant in

23   a homicide investigation between '82 and '91, tell

24   me what you mean by that.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 19

1       A.      Well, as a patrol officer, when you

2   receive a 911 call you are the first responding

3   element.  And so when you get there and there is a

4   deceased person, you immediately start containing

5   the scene and looking for witnesses that you will

6   talk to.  But in addition, you will get

7   information for the investigators to talk to.

8              Then, that was from '82 to '86.  And

9   then in '86 when I was a sergeant at central

10  patrol, obviously the officers would receive 911

11  call and the sergeants were in the field and we

12  would respond as well to something as significant

13  as a homicide.

14             And so then I would assist the officers

15  in coordinating the scene and interviewing

16  witnesses and then in passing that information, I

17  would be contacting the homicide unit to give them

18  information about what we had.  Because many times

19  they weren't on duty or weren't present where we

20  were, so I would relay that information to them.

21      **Q.      And this was work that you did once you**

22  **responded to the scene, right, as a patrol**

23  **officer?**

24      A.      And patrol sergeant.  Yes, sir.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 20

1      Q.      And you would not, though -- well, let

2  me ask you this:  Do you draw a distinction

3  between an interview of a witness and an

4  interrogation of a suspect?

5      A.      Oh, yeah.  Sure.

6      Q.      What distinction do you draw?

7      A.      In this case, if I had a witness to the

8  scene and I was a patrol officer, they would say,

9  I saw this, or I would try to get them to stay at

10  the scene.  I wouldn't put them in a room and

11  interview them.  I would just be getting

12  in-the-field information real time from them that

13  many times I could relay to the homicide people

14  who were in route to the scene.

15      Q.      So -- but my question is, what

16  distinguishes, in your mind, an interview from an

17  interrogation?

18      A.      In the field or in the office?

19      Q.      Generally speaking.  You tell me what's

20  in your mind, and then maybe we go from there.

21              MS. SPENCE:  Objection.  Form.

22              THE WITNESS:  For an interview, I'm

23          just trying to get information that -- in a

24          first response to a homicide scene, I'm just

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 21

1    trying to get information.  I'm going to

2    interview people about just, what did you

3    see?  When did it happen?  What occurred?

4              If it's an interrogation it's

5    going to be much more direct, the questions.

6    As a patrol officer, I really wasn't involved

7    in the interrogations I would say.

8  BY MR. GRILL:

9      **Q.    Right.  And why would the questions be**

10  **more direct in an interrogation, as opposed to an**

11  **interview?**

12     A.    Because then that would be really a

13  part of the investigation, the actual criminal

14  investigation going that direction, as opposed to

15  just trying to gain initial response information.

16     **Q.    Would you read someone their Miranda**

17  **warnings if it was just an interview that you were**

18  **conducting?**

19     A.    No, sir.  Not in the field, certainly.

20  Not to someone -- if someone did tell me that

21  information, I would stop the interview and wait

22  for the detectives to get there when I was a

23  sergeant.

24     **Q.    But if you were conducting an**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 22

1    **interrogation, would you read someone their**

2    **Miranda warnings before you continued questioning**

3    **them?**

4        A.    Certainly if I thought something they

5    said made them culpable in the crime, for sure.

6        **Q.    As a patrol officer, would your**

7    **involvement in a homicide -- in a homicide**

8    **investigation, would it typically be limited to**

9    **your response and whatever activities or**

10   **investigatory steps you undertook while at the**

11   **scene?**

12            MS. SPENCE:  Objection.  Form.

13            THE WITNESS:  Yes, sir.  That's true.

14        I mean obviously if a person told me -- if I

15        was the first responding officer and a man

16        was standing with a gun and he said, I just

17        killed my wife, here's the gun.  Certainly,

18        that's going to be a res gestae statement

19        that he's made to me, I'm going to relay

20        information.

21            So that would make me a bigger

22        part of the investigation than normally would

23        be the case.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 23

1   BY MR. GRILL:

2       Q.      **That happen often; that type of**

3   **scenario that you just described?**

4               MS. SPENCE:  Objection.  Form.

5               THE WITNESS:  I wish it did, but no.

6   BY MR. GRILL:

7       Q.      **So I guess, in sum, what I understand**

8   **you to be saying is that as a patrol officer**

9   **between 1982, or even as a patrol sergeant, during**

10  **that period, 1982 to 1991, if there was a homicide**

11  **investigation that was going on, your role,**

12  **typically, was limited to whatever needed --**

13  **responding to the scene, talking to witnesses**

14  **there, and then that would be the end of your**

15  **involvement in that investigation, correct?**

16      A.      Yes, sir.  And just to clarify, 1988 I

17  went to the vice division and --

18      Q.      **Right.  And I'm only talking -- I'm**

19  **sorry.  Go ahead.  I shouldn't have cut you off.**

20  **Go ahead.**

21      A.      You said as a patrol sergeant from '86

22  to '91, but I was only a patrol sergeant from '86

23  to '88, then I went to vice.

24      Q.      **Right.  Got it.  Right.  So my**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 24

1    question, though, is between '82 and '91 your

2    involvement in patrol in homicide investigations

3    was limited to your activities at whatever needed

4    to be done once you responded to the scene, and

5    then that would be it?

6         A.    Correct.

7         Q.    Between 1982 and 1991, while you were

8    with the Dallas PD, did you ever conduct

9    interviews of juvenile witnesses?

10        A.    In patrol?  No, sir.  In vice?  Yes.

11        Q.    And vice you said started in '88 to

12   '86?

13        A.    '88 to '91.

14        Q.    To '91.  Okay.  And that was more

15   enforcing like liquor violations, underage

16   drinking, things like that, correct?

17        A.    Right.

18        Q.    Did you ever interview a juvenile

19   witness to a homicide during that, at any point

20   between 1982 and 1991?

21        A.    Not that I recall.

22        Q.    I presume, then, that you didn't

23   interrogate any suspect, juvenile suspects, in

24   homicide investigations during that time period,

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 25

1  **right?**

2       MS. SPENCE:  Objection.  Form.

3       THE WITNESS:  Not that I recall.  No,

4   sir.

5  BY MR. GRILL:

6       **Q.    Did you receive any training during**

7  **that time period, '82, so when you joined the**

8  **police department, up through '91, regarding**

9  **juvenile witness interviews?**

10      A.    I'm certain in the police academy we

11  did.  From February of '82 until June 1st of '82 I

12  was in the police academy, the Dallas police

13  academy.  And I'm sure we talked about juvenile

14  interrogations and the length of time they can be

15  interviewed.  And what the process for us as

16  patrol officers would be.

17      **Q.    Do you remember what that was?**

18      A.    I don't.  I don't right now.  No, sir.

19      **Q.    Same question, but minor change.  Did**

20  **you receive any training between 1982 and 1991,**

21  **about how to conduct interrogations of juvenile**

22  **suspects, as opposed to interviews?**

23      A.    Once again, what we learned in the

24  academy, and I don't remember -- obviously in

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 26

1    Texas we're required to undergo a minimum of 40

2    hours training every two years.  And it's very

3    possible that from '82 until '91, during that

4    period, there was some instruction on juveniles

5    with regards to interviews and interrogations.  I

6    just don't recall what those were, so I can't

7    specifically say that.

8         **Q.    Do you recall whether you were trained**

9    **in any way that left you with the impression or**

10   **understanding that you needed to -- that there**

11   **were differences between how you should interview**

12   **a juvenile versus interrogate a juvenile suspect?**

13        A.    I knew there was -- as a patrol officer

14   I knew there was a distinction between juveniles

15   and adults.  And specifically the amount of time

16   that they could be detained.

17             And for us is to get them to the youth

18   division, in our case for the Dallas Police

19   Department as soon as practical because there was

20   a limitation on the number of hours that they

21   could be detained.

22        **Q.    Okay.  So when you say you'd get them**

23   **to the youth department, why did you want to get**

24   **them over to the youth department?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 27

1      A.      If we had a juvenile who was a suspect

2   in the crime, in a patrol capacity we would be

3   transporting them to the youth division.  And then

4   the youth division, in turn, would be the ones

5   that would be conducting the criminal

6   investigation.

7      **Q.      So if they were going to be interviewed**

8   **or interrogated, that was left up to the youth**

9   **division and not you, right?**

10          MS. SPENCE:  Objection.

11      Mischaracterizes the testimony.  Go ahead,

12      Mr. Miller.

13          THE WITNESS:  That's correct.

14   BY MR. GRILL:

15      **Q.      When you said that the limit on the**

16   **number of hours that a juvenile could be detained,**

17   **that that was something that was in your mind when**

18   **you were dealing with the juvenile, what was the**

19   **number of hours that was the limit?**

20      A.      If I recall, it was six.

21      **Q.      Six hours.  And what should happen**

22   **after the six hours?**

23      A.      That that was as long as the police

24   could detain or have a juvenile there during the

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 28

1    course of interrogation or investigation, or

2    interview, as you said.

3         **Q.    Before they were charged?**

4         A.    Or they were released.

5         **Q.    Right.  So, like, I think what you're**

6    **saying, and you tell me if I got this wrong, that**

7    **it's your belief that in Texas the police could**

8    **detain a juvenile for up to six hours, after which**

9    **they had to make a decision as to whether they**

10   **were going to charge the juvenile with a crime.**

11   **And if they weren't, they had to let them go.  Is**

12   **that right?**

13             MS. SPENCE:  Objection.

14        Mischaracterizes his testimony.

15             THE WITNESS:  It's either four hours or

16        six hours, I don't recall at that time --

17        exactly when that changed or if it did change

18        from the four to six hours.

19                  That was the time that that youth

20        could be detained within the police

21        department without being charged.

22   BY MR. GRILL:

23        **Q.    Okay.  What was the age of a juvenile**

24   **in Texas?  Like, what was the cut-off legally, if**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 29

1  **you remember?  Between -- let's just say in 1991.**

2      A.    I'm sure -- 17 makes an adult in Texas.

3      **Q.    When you talk or think back to that**

4  **four- or six-hour time limit, whatever it might**

5  **have been, do you know if the Chicago Police**

6  **Department had a similar limitation in 1991?**

7      A.    I think from what I read, it's noted in

8  my report, there is a mention or a notation about

9  six hours.  We would have to go look in my report

10  and see what I said on that.

11     **Q.    Okay.  We'll look in a second.  Do you**

12  **know if, in 1991, whether there was a national**

13  **standard that all police departments were**

14  **recommended to follow when it came to a four or**

15  **six hour, or some sort of hourly time limit that**

16  **the police could detain a juvenile before**

17  **charging?**

18     A.    Not a specific number of hours, but

19  there was a belief that the longer -- in law

20  enforcement, the longer the interview went, the

21  more stressful it became for the juvenile.

22           I think we were all aware of that.

23  That juveniles didn't handle stress the same as an

24  adult.  We know many adults don't handle stress

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 30

1    well.

2         Q.    So I think -- here, we'll just put your

3    report up that we're talking about.  All right.

4    Here's the thing that I think you were talking

5    about.  So this is Exhibit 3, this is Page 11.

6              Can you see this?

7         A.    Yes, sir.

8         Q.    All right.  So this is in your section,

9    it's titled Automatic Transfers.  And the

10   paragraph here, it says paragraph C, and it has a

11   footnote at the end for No. 7.  It looks like this

12   is information that you got out of the CPD

13   investigative manual, okay?

14             And here it says in this, I guess,

15   second-to-last sentence it starts, "As soon as the

16   juvenile is handcuffed in any building that houses

17   a municipal jail, is handcuffed to a stationary

18   object or is locked in a room" -- I guess maybe

19   there shouldn't be a period there, I don't think.

20   It goes on to say, "there is a six-hour time

21   limit.

22             Also, a log is kept detailing the time

23   spent detaining the juvenile with the charge.  A

24   negative report is also made out."

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 31

1          Do you see that?

2     A.     Yes, sir.

3     Q.     Is this the part that you're talking

4  about in your report where you believe that CPD

5  had a six-hour time limit of some sort regarding

6  juveniles?

7     A.     That's the part I'm referencing, yes,

8  sir.

9     Q.     Okay.  So do you recall whether -- or

10 is it your opinion that this part of the CPD

11 investigative manual just concerns juveniles that

12 are detained versus arrested?

13          MS. SPENCE:  Objection.  Form.

14          THE WITNESS:  I'm sorry, I don't quite

15     understand your question.  Do I think -- I'm

16     sorry.  Just go ahead and ask it again,

17     please.

18 BY MR. GRILL:

19    Q.     Yes.  Is this -- well, let me ask you

20 this, maybe this will help:  Do you see a

21 distinction between someone who is detained versus

22 somebody who's under arrest?

23    A.     Sure.  Handcuffed.  I think that's what

24 it says here.  For persons just in a building and

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 32

 1   they're sitting there for, you know, a number of

 2   time, but they're not in a locked room, or they're

 3   not locked to a stationary object, you know, then

 4   this might not apply to them.  It might apply to

 5   someone else.

 6       **Q.    So -- well, what is the difference, in**

 7   **your mind, between someone who is detained versus**

 8   **somebody who is under arrest?  If you could just**

 9   **be specific to that in your answer.**

10       A.    Well, if you're under arrest you're not

11   going anywhere, you're handcuffed.  You know,

12   you're going to be charged with a crime.  If

13   you're detained, we're just talking to you to try

14   to get information to find out what you know and

15   possibly you might be charged with a crime.  Or

16   you're a person of interest.

17       **Q.    So when we're talking about somebody**

18   **here that is a juvenile in the police department**

19   **and you have this six-hour time clock running, as**

20   **you say in this paragraph, is this, in your**

21   **opinion, this six-hour time limit, is it your**

22   **understanding that applies to somebody who is**

23   **detained or somebody who is under arrest?**

24       A.    Well, I think in law enforcement if

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 33

1    it's a juvenile, it really doesn't matter whether

2    they're detained or arrested.  I don't think you

3    should keep a juvenile more than six hours.  I

4    agree with this.

5         Q.    **Keep them where?**

6         A.    In the police facility, without

7    leaving.

8         Q.    **What is that opinion based on?  Give me**

9    **your factual basis for that opinion.**

10        A.    That's my opinion based upon my

11   experience and what I was taught when I went to

12   homicide.  When I became detective in narcotics,

13   you know, that was the instruction we got from the

14   youth division detectives who would teach us

15   in-service training courses.  That's my experience

16   with dealing with juveniles.

17        Q.    **So in short you're just relying on the**

18   **totality of your training, education, and**

19   **experience for that opinion?**

20        A.    I would say yeah.  That's true.

21        Q.    **All right.  In this case, just since we**

22   **just kind of jumped ahead here, but since we're on**

23   **it here on this part of your report.  Do you know**

24   **if this six-hour time period standard that we're**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 34

1    talking about here was applied nationally in 1991?

2         A.    I'm certain it was in Dallas.  I know

3    that Dallas -- Dallas is not as large a department

4    as Chicago.  Dallas was, at that time, probably

5    the 8th largest police department, where Chicago

6    is probably the 3rd largest.

7              I would say that based upon that, that

8    large agencies in America use that as a standard.

9         Q.    Okay.  So my question was a little

10   different, I think.  Do you know if this standard,

11   this six-hour time period standard that we're

12   talking about here, was applied nationally?

13             I understand that it's applied in

14   Dallas, based on your training, education, and

15   experience, but do you know if it was applied

16   nationally?

17        A.    Based on this I believe it was applied

18   in Chicago.

19        Q.    That's still not my question, though.

20   Do you know if it was applied nationally?  This

21   was like a national standard.

22        A.    No, sir.  I don't know what other

23   departments' stance was.  No, sir.

24        Q.    That's all I wanted to know.  All

Page 35

1   right.  Have you seen any evidence in any of the
2   materials that you reviewed in this case, in order
3   to prepare the report that is up here as Exhibit
4   3, that Mr. Jakes was in handcuffs during any of
5   his interviews or interrogations at the police
6   department in September 1991?
7        A.    Yes.  When Mr. Jakes was taken from his
8   residence, according to Mr. Jakes, he was in
9   handcuffs.  According to Ms. Jones, he was in
10  handcuffs.  There were times when he was at the
11  facility where he was in handcuffs as well.
12       Q.    So my question was not about what
13  happened at the scene, my question was specific to
14  when he was interviewed or interrogated at the
15  police station.
16             So with that to redirect you as to what
17  my question is, what evidence in the materials did
18  you review or see or recall that Mr. Jakes was
19  handcuffed during his interviews or interrogations
20  at the police station?
21       A.    There is a lot of documents.  I believe
22  that there were times when he was handcuffed.  I
23  know there were times that he was not handcuffed.
24  But I just don't recall that exactly.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 36

1      Q.      Do you recall reviewing any material

2  evidence that Mr. Jakes was handcuffed to a

3  stationary object while at the police station?

4      A.      No, sir.  I recall that Mr. Jakes said

5  he was locked in a room.

6      Q.      Did you include in your report here

7  this line, it reads, "As soon as the juvenile is

8  handcuffed in any building that houses a municipal

9  jail, is handcuffed to a stationary object," did

10  you include those details in this report because

11  you believed that Mr. Jakes was handcuffed inside

12  the police department or handcuffed to a

13  stationary object while inside the police

14  department?

15          MS. SPENCE:  Objection.  Form.

16          THE WITNESS:  I put this in here

17      because it came from the Chicago

18      investigative file.  The detectives' training

19      references six hours, and I felt it was

20      important to include in the report.

21  BY MR. GRILL:

22      Q.      Why did you feel it was important to

23  include in the report if you don't know that

24  that's what applied to Mr. Jakes?

Page 37

1            MS. SPENCE:  Objection, form.
2        Mischaracterizes the testimony.
3            THE WITNESS:  Because I agree with the
4        stance that a juvenile who is housed or
5        handcuffed shouldn't be kept for longer than
6        six hours.  And I would say the same thing
7        about a juvenile who is locked in a room by
8        themselves for six hours or more than six
9        hours I feel would be applicable as well.
10   BY MR. GRILL:
11       **Q.    Did you review any materials that told**
12   **you that Mr. Jakes indeed was locked in a room for**
13   **however long while he was at the police station?**
14           MS. SPENCE:  Objection.  Asked and
15       answered.
16           THE WITNESS:  I believe in total
17       Mr. Jakes was actually from noon on the 16th
18       until nearly 4:00 in the morning, I think it
19       was nearly 16 hours Mr. Jakes was in police
20       custody.
21   BY MR. GRILL:
22       **Q.    Right.  No, but my question is locked**
23   **in a room.  Because that is what's in your report**
24   **here.  Do you recall reviewing any materials that**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 38

1    said Mr. Jakes was locked inside a room?

2         A.    I believe -- yeah, I believe I did.  I

3    don't have it in front of me.  If I referenced it

4    in my report, then that's what I would testify to.

5    But I believe my recollection is that he was

6    locked in a room for a combination of at least

7    that many hours.

8         Q.    Did you review Mr. Jakes's deposition

9    transcript in this case?

10        A.    I did.

11        Q.    Do you remember what it was that

12   Mr. Jakes said in regards to whether he was

13   handcuffed while he was in the interview room at

14   the police department?

15        A.    I remember he said he was not

16   handcuffed.

17        Q.    I'm sorry, what?

18        A.    I remember he said he was not

19   handcuffed.

20        Q.    Okay.  So does that refresh your

21   recollection that Mr. Jakes was not handcuffed

22   while he was at the police station in the

23   interview rooms, and when he was being spoken to

24   by the police?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 39

1          MS. SPENCE:  Objection, form.

2      Foundation.

3          THE WITNESS:  I don't remember if after

4      Pack found -- allegedly found the drugs on

5      him that Danaher had him handcuffed.  I think

6      the statement that you're referencing about

7      the deposition has to do with when he was put

8      into the room by the detectives, where he

9      said he wasn't handcuffed, but that he was

10      locked inside the room.

11  BY MR. GRILL:

12      **Q.      Okay.  What room?  An interview room?**

13      A.      Where he was kept, yes.

14      **Q.      Is it your testimony that you recall**

15  **Mr. Jakes gave testimony that he was handcuffed**

16  **when Officer Danaher or, excuse me, Duckhorn or**

17  **O'Riley or Pack or anybody, for that matter, was**

18  **interacting with him before Detectives Kill and**

19  **Boudreau spoke with him?**

20          MS. SPENCE:  Objection.  Asked and

21      answered.

22          THE WITNESS:  You know, I'm only going

23      to testify to what's in the report.  So if I

24      don't note that in the report, then I

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 40

1      probably wouldn't have a great recollection

2      of that.

3    BY MR. GRILL:

4      Q.    Okay.  All right, so let's go back.

5    This is easier.  Can you see this?

6      A.    Yes, I can.

7      Q.    That's not helpful to say "this".  For

8    the record, I'm showing you your CV again.  I

9    switched the tabs.  Is the CV up on your end right

10   now, again?

11     A.    Yes, sir.

12     Q.    Good.  So between 1991 -- so I'm down

13   here.  I guess this is near the bottom of the

14   second page of your CV.  It kind of lists lots of

15   positions you held between 1991 and 1997.  All

16   right?

17           It says that you were commander of the

18   computer criminal analysis, I guess, section of

19   the Dallas PD.

20     A.    Yes, sir.

21     Q.    And southwest patrol watch commander,

22   right?

23     A.    Yes, sir.

24     Q.    Traffic division unit commander, right?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 41

1      A.     Yes, sir.

2      **Q.     Legal services unit commander?**

3      A.     Yes, sir.

4      **Q.     Abatement commander?**

5      A.     Yes, sir.

6      **Q.     What is the legal services unit**

7   **commander?  What is that position?**

8      A.     It would have had to have done with

9   court subpoenas for officers, trials that officers

10   would be attending and getting the subpoenas to

11   the officers.

12      **Q.     What about the abatement commander?**

13   **What do you do in that role?**

14      A.     We would -- we worked with the

15   narcotics division.  And our role was to try and

16   use civil injunction to target property owners.

17   They may not be the person -- you get a drug

18   location, we would go after the person -- they

19   might live in California -- who owned the

20   property, as opposed to going after the drug

21   dealer.  So we were trying to get the person above

22   everyone else.

23      **Q.     So suffice to say between 1991 and**

24   **1997, none of the positions that you held during**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 42

1    **that time period involved conducting homicide**

2    **investigations.  Is that fair?**

3              MS. SPENCE:  Objection.  Form.

4              THE WITNESS:  Well, once again,

5         southwest patrol, that's a very active patrol

6         division and we had a number of homicides.

7         And, once again, you had the patrol officers

8         responding, then you had the sergeants that

9         were responding, and as the watch commander I

10        was in charge of the entire watch.

11                  So we responded to a number of

12        homicide investigations.  But I wasn't the

13        homicide investigator in those cases.

14   BY MR. GRILL:

15        **Q.      You did not personally investigate**

16   **homicides during 1991 to 1997, right?**

17        A.      That is correct.

18        **Q.      Between 1991 and 1997 did you conduct**

19   **any juvenile witness interviews during that time**

20   **period?**

21        A.      I did not personally during that time.

22   At southwest patrol obviously we had a burglary

23   and theft unit that dealt a lot with making

24   property crime arrests.  And I'm sure that patrol

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 43

1    officers that worked with under -- patrol officers

2    and sergeants that worked under me brought in

3    juvenile suspects to talk to the property theft

4    people, but I wouldn't have been involved in that.

5        Q.    And I presume, then, that you would not

6    have been involved in interrogating juvenile

7    suspects in criminal investigations during --

8    between 1991 and 1997, right?

9        A.    Yes, sir.

10       Q.    In 1997 you moved to, it looks like, to

11   the narcotics division, right?

12       A.    That's correct.

13       Q.    And you were the commander of that

14   division until 2004?

15       A.    Well, I was one of the commanders.  We

16   had 130 people in our narcotics unit, and we had a

17   number -- I think we had four or five lieutenants

18   and I was commander over one of the sections of

19   narcotics.

20       Q.    Okay.  I'm sorry, did you just say --

21   how many commanders were there?  You said there

22   were more than one, but how many total?

23       A.    There were four or five lieutenants

24   that would have been there.  And we would have had

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 44

1    a deputy chief who would have ultimately been over

2    the entire narcotics division.

3         Q.    And you didn't conduct any homicide

4    investigations between 1997 and 2004, either,

5    right?

6              MS. SPENCE:  Objection.  Form.

7              THE WITNESS:  Other than the police

8         officers that were shot and killed while I

9         was in the narcotics division, and I

10        didn't -- other than the officers and

11        responding to the scenes, I didn't do any

12        part of that, no, sir.

13   BY MR. GRILL:

14        Q.    When you say the police officers that

15   were shot and killed, what did you do, as far as

16   those investigations were concerned?

17        A.    Well, I was a watch commander -- I was

18   a commander of the different units and we worked

19   days and nights.  And so we had two officers that

20   were shot.  And so in those investigations there's

21   obviously suspects that are going -- hopefully

22   there are suspects that are going to be detained.

23             I think in one of them the actual

24   suspect was shot and killed.  And so then we are

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 45

1 only there merely to cover -- to assist our

2 narcotics officers that were present.

3     **Q.    Okay.  So you were -- when you say you**

4 **were there to assist the narcotics officers that**

5 **were present, do you mean that the narcotics**

6 **officers were the ones that were investigating the**

7 **murder of these two officers?**

8     A.    No, sir, that's not correct.  We had

9 just been there assisting in the investigation.

10 Homicide unit would have been in charge of the

11 investigation.  We wouldn't have been conducting

12 the homicide investigation.

13     **Q.    Okay.  Thank you.  That's where I**

14 **was -- that's what I was working up to.  All**

15 **right.  I appreciate that.  So there was two**

16 **officers during '97 and 2004 that were murdered;**

17 **is that right?**

18     A.    As I recall, yes, sir.

19     **Q.    Did you conduct any witness interviews**

20 **or interrogations regarding the murder of either**

21 **of those police officers?**

22     A.    I don't believe.  No, sir.

23     **Q.    And were the suspects or perpetrators**

24 **in either of those homicide investigations**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 46

1  **juveniles?**

2      A.     No, sir.  They were not.

3      **Q.     All right.  In 2004 to 2006 you were**

4  **the tactical services commander in the explosive**

5  **ordinance unit?**

6      A.     That is correct.

7      **Q.     So is that, for lack of a better word,**

8  **is that like the bomb squad?**

9      A.     I was over the bomb squad, the mounted

10  patrol, and the dogs.  The dogs, the horses, and I

11  was housed at Fair Park, the state fairgrounds.

12  And so we had all three of those units that worked

13  out of there.

14      **Q.     Got it.  And I presume, then, as the**

15  **tactical services commander in that unit, you**

16  **didn't conduct homicide investigations during**

17  **those two years, right?**

18              MS. SPENCE:  Objection.  Form.

19              THE WITNESS:  That is correct.

20  BY MR. GRILL:

21      **Q.     Did you conduct any juvenile**

22  **interrogations between 2004 and 2006 when you were**

23  **the tactical services commander in the explosives**

24  **ordinance unit?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 47

 1      A.      No, sir.

 2      Q.      So after that you moved over in 2007 to

 3   become the homicide unit commander, right?

 4      A.      Correct.

 5      Q.      And your tenure there lasted until

 6   2010, right?

 7      A.      As the homicide commander.  When I

 8   became deputy chief, then I was over -- homicide

 9   was one of the units I was over.

10      Q.      Okay.  Did you participate in the

11   homicide investigations as the commander of the

12   homicide unit?

13              MS. SPENCE:  Objection.  Form.

14              THE WITNESS:  Yes, sir, I did.

15   BY MR. GRILL:

16      Q.      Okay.  And how would you participate?

17      A.      Well, when I was in the homicide unit,

18   the way we did it, patrol called us and said there

19   was a homicide, or we got notified that there was

20   a deceased person, which could have been a suicide

21   and we deployed there.

22              And so you would have a detective who

23   would be the lead detective, and then their

24   sergeant would go.  And then as the commander of

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 48

1   homicide, initially I went out on all homicides

2   when I first went to the homicide unit.  And then

3   after a period of time, I changed it to where I

4   would only go out in the middle of the night on

5   multiple homicides.

6            And so when the detective would bring

7   the people down to the office, the potential

8   suspects, or witnesses, and they would be

9   interviewed, it wasn't unusual for me to be

10  involved in those interviews at all.

11       **Q.     And when you say being involved, you**

12  **were observing or you were actually asking the**

13  **questions?**

14       A.     Well, kind of -- very rarely would I be

15  asking questions.  But there were times when I

16  thought the murder was of such a magnitude that I

17  wanted to personally have involvement in it.

18            Generally, once you interject yourself

19  into the investigation you start being required to

20  write notes.  And those are things that, as the

21  lieutenant, it probably wasn't the best thing for

22  me to do, but it did happen.

23            In our situation, if you had the

24  detective who might have been in the room and was

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 49

1    being recorded, we were all in another room

2    listening to the interview.  And so we were

3    listening to what was being said.  And so then we

4    would, when the detective took a break, come and

5    he or she would talk to us.  And then we would

6    talk about additional questions that we wanted to

7    ask.  So that they then could go back in and ask

8    those questions.

9              And then if there was a situation

10   where, let's just say, that there was an active,

11   ongoing investigation, someone was deceased and we

12   had a suspect that was at-large, we would have all

13   the detectives that would be there.  And we would

14   have dry erase boards where I would stand at the

15   front of the dry erase board, and I would make

16   assignments on this detective, I want you to go to

17   this location, here is a witness I want you to

18   talk to, this sergeant I need you to go to this

19   location.

20             So in that respect I would have been

21   very involved in the investigations, making

22   assignments on who the witnesses were, and which

23   detectives I specifically wanted to talk to them.

24        Q.        So as the unit commander to the

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 50

1    homicide unit, during that time period, it sounds

2    to me like when it came to interviews or

3    interrogations, particular suspects, or witnesses

4    that you took an interest in, most of the time you

5    were observing, and then during breaks and whatnot

6    strategizing with the detectives who were actually

7    asking the questions in the room to the witness or

8    suspect, right?

9              MS. SPENCE:  Objection.  Form.

10             THE WITNESS:  For the most part, yes,

11        sir.  Other than those rare instances where I

12        would interject myself and I would actually

13        go into the interview room and conduct an

14        interview.

15    BY MR. GRILL:

16        Q.    Right.  So that's my next question.

17    Those times when you would actually go in and ask

18    a question or so yourself, it sounds, at a

19    minimum, that was pretty rare when you did that,

20    right?

21        A.    Correct.

22        Q.    And in those instances, it sounds to me

23    like every time on those rare instances where you

24    did actually go in the room and ask a question, it

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 51

1    was a situation where another detective had

2    already been asking that witness or suspect

3    questions and you were then interjecting as an

4    additional questioner, right?

5            MS. SPENCE:  Objection.  Form.

6            THE WITNESS:  Yes.  That's correct.

7    BY MR. GRILL:

8        Q.      There was never a situation between

9    2007 and 2010 where you were the only person

10   asking a witness or a suspect in a homicide

11   investigation the questions, right?

12       A.      I would disagree with that.  There were

13   a number of times when I was the only one in a

14   room asking the person questions.

15       Q.      And this would be -- sorry, go ahead.

16   I thought you were done.

17       A.      No, sir.  But it was very rare when

18   that happened.  But I didn't have to have another

19   detective in the room with me in order for me to

20   go in and interject or ask a question.

21       Q.      Why?

22       A.      I'm sorry.  What?

23       Q.      Why did you not have to have somebody

24   else in there?

Page 52

1     A.    Well, same, they were watching me, what

2  I was saying outside the interview room as well.

3     **Q.    Was it like one-way glass, or was it on**

4  **video, or what was the setup?**

5     A.    On video.

6     **Q.    Did you tape record or video record**

7  **witness interviews in homicide investigations**

8  **during this time period?**

9     A.    Yes, sir.

10     **Q.    Witnesses?**

11     A.    Yes.

12     **Q.    Okay.  And what about -- I presume,**

13  **then, you also recorded suspect interrogations?**

14     A.    If they came up to our office and they

15  were in one of our rooms, all our rooms were

16  recorded.  So if it was an officer witness on an

17  officer-involved shooting it would be the same

18  thing.

19     **Q.    When did that start at Dallas PD?**

20     A.    Well, remember I went to homicide in

21  '07.  So, you know, when it came to video

22  recording, you know, we were kind of, I think, at

23  the forefront of video recording.  But we had a

24  television show, The First 48 from A&E, that was

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 53

1    actually, you know, there following us and what we

2    were doing every day.  So I think we were kind of

3    on the cutting edge of video.

4        **Q.      So my question is, is when did Dallas**

5    **PD begin video recording all interviews and**

6    **suspect interrogations in homicide investigations?**

7              MS. SPENCE:  Objection.  Form.

8              THE WITNESS:  I would say that's

9         probably in -- I came in '07, so maybe a

10        couple years before that.  2004, 2006, 2005.

11   BY MR. GRILL:

12       **Q.      In any event, they were not recording**

13   **suspect interrogations or witness interviews in**

14   **1991, right?**

15       A.      Well, no, sir.  When we're talking

16   about video recording, you're correct.  I believe

17   that we were -- homicide was involved in

18   interviewing, audibly interviews, in '91.  But we

19   had our highest number in the history of the

20   department -- the highest number of homicides in

21   1990 and '91, so that's when the homicide unit

22   kind of changed a little bit.  And there was a

23   great increase in the number of people that came

24   to the unit because of the increase in homicides.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 54

1      Q.      And what does that have to do with

2   recording?

3      A.      I think that because we brought so many

4   more people up there, that it showed the import of

5   what we were doing.  But we were not video

6   recording anything in 1991.  But -- and I wasn't

7   in homicide in 1991, but I believe that there were

8   interviews that were audio recorded.

9      Q.      When you say you believe, that's just

10   another way of saying you're not sure.  You

11   believe it's the case, but at the end of the day

12   you're guessing as to whether or not that was

13   actually happening in 1991, right?

14           MS. SPENCE:  Objection.  Form.

15           Argumentative.

16           THE WITNESS:  When I came to the

17           homicide unit there were plenty of detectives

18           who were there in 1991 when this took place.

19           And I'm recalling that my conversations with

20           them said that they were audio recording

21           interviews, then.  But other than that, I

22           don't have any factual basis.

23   BY MR. GRILL:

24      Q.      Okay.  Is it your testimony that Dallas

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 55

1    PD had a policy to at least audio record witness

2    interviews or suspect interrogations in homicide

3    investigations in 1991?

4           MS. SPENCE:  Objection.

5       Mischaracterizes the testimony.

6           THE WITNESS:  Yes, sir.  I don't know

7       if we had a policy to do that or not, I'm

8       sorry.  I just believe it was taking place,

9       but I don't know what the policy was.  I

10      wasn't there at that time.

11   BY MR. GRILL:

12      Q.    Got it.  Okay.  You mentioned a moment

13   ago that, you know, when you would ask a witness

14   or a suspect in a homicide investigation that you

15   took interest in questions, you noted also,

16   though, that it was probably, I think what you

17   said, not the best idea for you to do that because

18   you were -- you had to take notes if you did that.

19   Why -- go ahead.  My question is why was that?

20   Why do you say that?  Why was that the case?

21      A.    For me, as a lieutenant, I had five

22   sergeants that worked for me.  And so -- and we

23   had, not dissimilar to Chicago, we had a lot of

24   homicides.

Page 56

1           And so I could be in talking to someone

2   and there could be another homicide that another

3   unit was responding to.  So it was -- for me to

4   not be available to all the supervisors and squads

5   that worked under me, was probably not the best

6   way for me to do things.

7           In other words, take so much interest

8   in this case and not be available.  Because I was

9   the unit commander, and as such, we've got

10  detectives that are doing the day-to-day

11  operations and doing the interviews.  And my job

12  was to do something else in the unit.

13      **Q.      Right.  So what I understood you to be**

14  **testifying about a few minutes ago was that it was**

15  **not the best idea for you to be taking notes or**

16  **writing stuff down.  Was that the case?**

17          MS. SPENCE:  Objection.

18      Mischaracterizes the testimony.

19          THE WITNESS:  No, sir.  But what

20      happened would be, if I was going to be

21      interviewing someone I would be required to

22      take notes, to document those conversations

23      so that it could go into the homicide file.

24              And so it took time to write the

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 57

1          notes.  And as the unit commander, that

2          wasn't the best use of my time would be to

3          interject myself into that.

4                    And so, you know, that happened

5          quite often with chiefs, when they would want

6          to come down on a high profile murder and

7          they would want to involve themselves in a

8          case.  And I would have to remind them that

9          even though they were a chief, they were

10         going to have to write a note that would go

11         into the homicide file, and they didn't want

12         to take the time necessary to be put in a

13         position to do that.

14                   So the note-taking was shown to

15         me early on in my homicide career the import

16         of taking notes and why they were required,

17         and, you know, so that prompted, to go back

18         to what you said, it would -- the longer I

19         was interviewing people, the more notes I was

20         taking took me away from what my primary job

21         as the unit commander was.

22    BY MR. GRILL:

23         Q.    **Well, were there any national standards**

24    **that applied in regards to note-taking that you**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 58

1  **were aware of at that time?**

2      A.    I think I documented some things in my

3  report about books that I had read.  And, I mean,

4  we can certainly go through that, but I'm not

5  going to testify on, you know, on note-taking,

6  other than to say it's the best practice for

7  officer memory to recall what was said and what

8  took place.

9            Because things are happening really

10  fast.  There is a lot of information that's going

11  on in a homicide investigation.  And so the way --

12  the best way to recall is to take notes on that.

13      **Q.    Right.  So -- and we're talking like**

14  **handwritten notes, right?**

15      A.    Well, handwritten notes.  But when I

16  got in in '07, we would actually convert those to

17  type.  The detectives, in my case, when I was a

18  homicide commander, I would have had to sit down

19  at the computer and typed a note.  And I would

20  have to put that into the homicide file.

21      **Q.    Okay.  You would convert the**

22  **handwritten notes into a typed report; is that**

23  **what you're saying?**

24            MS. SPENCE:  Objection.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 59

1        Mischaracterizes his testimony.

2             THE WITNESS:  I would actually just

3        type them, rather than handwriting them, when

4        they took place.  So if I interviewed

5        somebody at 5:00 p.m., between 5:00 p.m. and

6        5:30 p.m., before I left to go home that

7        night I would go to the computer and I would

8        document what had transpired in that

9        conversation between me and the suspect or

10       the person I was interviewing.

11  BY MR. GRILL:

12       **Q.    Right.  So you weren't taking notes**

13  **contemporaneously with your conversation with the**

14  **person.  You would sit down at some point**

15  **afterwards and type out what you remember having**

16  **happened or discussed, right?**

17            MS. SPENCE:  Objection.

18       Mischaracterizes his testimony.

19            THE WITNESS:  But detectives in the

20       field, because they didn't have a computer,

21       though would write themselves notes so then

22       when they got back to the office, they would

23       reduce that to typed -- to the computer.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 60

 1  BY MR. GRILL:

 2      Q.    Right.  No, I'm just asking about what

 3  your practice was.  So your practice at times was

 4  to not take contemporaneous notes.  Instead, you

 5  would just type out what you remembered was the

 6  conversation you had, for example, with the

 7  witness at some point after, right?

 8      A.    Well, I've done both.  But my intent

 9  was just to document the incident and the

10  conversations.

11      Q.    I get you.  But still my question is

12  that there were times when you would not take

13  contemporaneous notes, and instead would just type

14  out what you remembered was the conversation that

15  you had with a witness, for example, at some later

16  point, right?

17      A.    Yes, sir.  That was easier for me

18  because of the time.

19      Q.    Okay.  Did you have any concerns if you

20  wrote a report that you would be called as a

21  witness at trial or at a hearing?

22      A.    I didn't have concerns.  You know, I

23  kind of expected, if I was interjecting myself

24  into the investigation, that I would be in a

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 61

1  position where they would call me.

2       Q.     Well, let me ask it this way:  What

3  takes longer in your experience, typing up a

4  report, or getting called to testify at a hearing

5  or a trial in a criminal case?  Which of those

6  things eats up more of your time in your

7  experience?

8       A.     Well, I mean, if you went to a

9  week-long trial and you had to sit there for a

10  whole week, that would take a lot of time out of

11  your day.  As a unit commander, if I was going to

12  be subpoenaed to a trial, the trial went for a

13  week or two weeks, I wouldn't be able to do my job

14  necessarily back at the office.  So that would

15  take a great deal of time.

16       Q.     It's your understanding -- well, let me

17  ask it this way:  Relative to writing -- the time

18  it takes to write a report, getting called to

19  testify at a trial takes a lot more of your time

20  up if you get called to testify, right?

21            MS. SPENCE:  Objection.  Form.

22            THE WITNESS:  Yeah.  I would agree.  It

23       takes -- to make a note it shouldn't take you

24       that long to document your conversation or

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 62

1          incident that you're trying to recall.

2     BY MR. GRILL:

3          Q.     **And was it your understanding that**

4     **the -- and I guess this is between -- at any point**

5     **in your career as a police officer, that the**

6     **state's attorney's office, when putting a witness**

7     **list together, typically, when it came to police**

8     **officer witnesses, made those lists of witnesses**

9     **that they would call at a hearing or trial, based**

10    **off of the names in the police records, and, in**

11    **particular, who wrote the police reports, right?**

12    **That's your understanding?**

13              MS. SPENCE:  Objection.  Form.

14         Foundation.

15              THE WITNESS:  Yes, sir.

16    BY MR. GRILL:

17         Q.     **And so if you wrote a report about an**

18    **interview of a homicide suspect, you would expect**

19    **that there was a reasonable likelihood that you**

20    **would get called as a witness at a hearing or a**

21    **trial if that person pled not guilty to the**

22    **charges, right?**

23         A.     I would certainly be included on

24    witness lists.  Yes, sir.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 63

1      Q.      Yeah.  When you would be, I guess,

2   directing the course of these investigations by

3   making assignments, having these meetings with the

4   detectives, when you would write stuff up,

5   strategy-wise on a whiteboard, and have these

6   discussions, did you document, for example, how it

7   was -- in a police report, how it was that you

8   would decide to assign somebody to do a particular

9   task in an investigation?

10        A.      I would document --

11              MS. SPENCE:  Objection.  Form.

12              THE WITNESS:  I would document in a

13        note, not necessarily the police report, but

14        in a note.  Yes, sir.

15   BY MR. GRILL:

16        Q.      Okay.  And you would document your

17   thought process for how it was that you decided to

18   assign a particular detective to execute a

19   particular part of your strategy?

20              MS. SPENCE:  Objection.  Form.

21              THE WITNESS:  Not so much the thought

22        process, just that this is what -- I asked

23        Officer Johnson to speak to Witness Smith.  I

24        asked this.  And so then I would document

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 64

1         that so later on if it came back, who told

2         this officer to go out there, I could go back

3         and recall it myself.

4    BY MR. GRILL:

5         **Q.      Would you document the conversations or**

6    **the strategy meetings that you had with the**

7    **detectives about how the investigation was going**

8    **to proceed?**

9         A.      I'm sure we had a lot of conversations

10   just amongst ourselves that there wouldn't be

11   documentation on.  The documentation really was,

12   for me, was for dealing with the people that were

13   involved, the witnesses, things that would have an

14   impact on the potential trial.

15              You know, a good example would be when

16   a police officer is shot and killed, and I was

17   involved in a number of those investigations.  And

18   I know that there's a lot of moving parts.  And

19   I'm focused on trying to -- you know, we know

20   we're going to have in Texas a death penalty case

21   and it's really important how I make assignments

22   to the officers and what's said.  So I'm very

23   precise and articulate on how I approach those and

24   documented them.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 65

1      Q.      My question was, would you document in

2   a police report the details and discussions that

3   you and the other detectives had in these strategy

4   meetings about a particular homicide investigation

5   that you were overseeing as the unit commander

6   between 2007 and 2010?

7      A.      If it was an assignment, I would be

8   more likely to do that than just an off-the-cuff

9   conversation in a hallway.  I walk by somebody and

10  say, Hey, did you do this?  I'm probably not going

11  to write a note on that.  No, sir.

12     Q.      I'm not asking about off-the-cuff

13  conversations.  I'm specifically asking you, sir,

14  about these strategy meetings that you said that

15  you had as part of your, I guess, job as the unit

16  commander between 2007 and 2010.  Did you document

17  what was discussed in those strategy meetings with

18  your detectives --

19     A.      Yes, sir.

20     Q.      -- in a police report?  You did?

21     A.      Yes, sir.

22     Q.      You would write down in a police report

23  the strategy that you were directing -- let me ask

24  it this way:  Would you put down in a police

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 66

1  **report why -- the reasons why you were focusing on**

2  **a particular witness?**

3       A.     If I can ask a question, please?  Are

4  you calling a note the same thing as a police

5  report?

6       **Q.     Well, you already testified that the**

7  **notes are then translated into typed report,**

8  **right?**

9            MS. SPENCE:  Objection.

10           Mischaracterizes his testimony.

11           THE WITNESS:  That report is not the

12           same as the offense report or the arrest

13           report.  That's a part of what we would call

14           the homicide file.  And it would be comprised

15           of many notes, could be hundreds of notes,

16           from individuals who were involved in a case.

17                But those written recollections

18           of what was said weren't necessarily a part

19           of the offense report or the arrest report or

20           the prosecution report or the arrest warrant.

21           Those were files for information for the

22           detectives to have so that they could go back

23           when they did all those things and recall.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 67

1    BY MR. GRILL:

2        Q.    Right.  So, in any event, the notes,

3    and the typewritten reports, those were all part

4    of the homicide file, the investigative file,

5    whatever you want to call it, right?

6        A.    I guess the notes were -- when you say

7    the typed report.  The typed report were the notes

8    typed out.

9        Q.    Right.  That's why I said at the

10   beginning, I thought you had said earlier that the

11   notes are then typed out and become a typed-up

12   police report, right?

13            MS. SPENCE:  Objection.

14       Mischaracterizes his testimony.

15            THE WITNESS:  The notes become a part

16       of the overall investigation.  That's then

17       available to the detective when they -- when

18       they get to the point where they're making

19       the offense and/or arrest report or

20       prosecution report.

21            MS. SPENCE:  Sorry, Andrew, can we

22       pause for three seconds just so I can grab a

23       cardigan?

24            MR. GRILL:  Sure.  Let's go off the

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 68

1       record for a second.

2               MS. SPENCE:  All right, thank you.

3   BY MR. GRILL:

4       Q.      All right.  So what did you do -- let

5   me ask you this:  Did the notes get turned over to

6   the prosecutor's office, the handwritten notes?

7       A.      They were part of the homicide file and

8   the homicide file all went down to the prosecutor.

9   Yes, sir.

10      Q.      Whether we're talking about handwritten

11  notes, or we're talking about the typed-up

12  reports, I'm going to refer, just for the sake our

13  conversation here today to those things

14  collectively as the police reports, okay?

15              And the reason why I'm saying the notes

16  are included in that description is because, as

17  you've testified here, the handwritten notes are

18  written by the officers or detectives that are

19  investigating the homicide, okay?

20      A.      Yes, sir.

21              MS. SPENCE:  Objection.

22  BY MR. GRILL:

23      Q.      Okay.  So police reports, whether we're

24  talking handwritten notes or the typed-up reports,

Page 69

1    do those reports document, in detail, the strategy

2    discussions that you had with your detectives

3    during a homicide investigation -- yeah, we'll

4    start there.  Do they document that?

5         A.    Yes, sir.

6         Q.    Do they document the thought process

7    that was being employed that led to the decisions

8    to choose particular investigative avenues, as

9    opposed to others?

10        A.    If they're memorialized to writing,

11   then yes.

12        Q.    Were these verbatim reports?

13              MS. SPENCE:  Objection.  Form.

14              THE WITNESS:  No, sir, I don't believe

15        they were.

16   BY MR. GRILL:

17        Q.    And the homicide investigations that

18   you oversaw between 2007 and 2010, do you recall

19   there being times when there was evidence that was

20   collected in an investigation that could not be

21   followed up on?

22        A.    I guess I don't understand.  Were there

23   leads that we didn't follow up on?

24        Q.    Well, my question was not didn't you,

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 70

1  **that you could not follow up on.**

2  A.    I mean, yes, certainly.  If a suspect

3  or a witness left the country and we weren't able

4  to talk to them, then, yeah, we couldn't follow up

5  on it that way.  So I guess that answers your

6  question.

7  **Q.    Were there leads that you didn't --**

8  **that you're aware that were not followed up on?**

9  A.    Leads?  I would say no.  You know, our

10  objective was to not -- this is one of the things,

11  the very first thing I learned when I went to

12  homicide, the chief that put me there told me

13  that, you know, we don't want to make an arrest

14  and then build the case around the arrest.  We

15  want to conduct an investigation and have evidence

16  lead us to a potential suspect.  That was one of

17  the very first things that was taught to me.

18  **Q.    What -- do you have a personal**

19  **definition or one otherwise that you were taught**

20  **about what constitutes a lead?  As opposed to just**

21  **evidence?  What is the difference between the two?**

22  A.    A lead, my definition would be someone

23  supplies you with information that can be of

24  assistance to you in an investigation and you

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 71

1    follow up on that lead.

2        Q.    And something that is of assistance is

3    something that you can actually, I guess for lack

4    of a better way to describe it, something that an

5    investigator can actually go out and track down

6    and follow up on.  Do you agree with that?

7                MS. SPENCE:  Objection.  Form.

8                THE WITNESS:  You can certainly check

9            on it.  If someone supplies you with

10           information that there was a guy in a red

11           shirt on the third floor that I saw drop a

12           vase on someone's head, you know, I'm going

13           to try to find out if there is anybody on the

14           third floor at that apartment that was

15           wearing a red shirt.  So I'm going to follow

16           up on that lead.

17   BY MR. GRILL:

18       Q.    And is your experience that I would say

19   in most, if not all, homicide investigations -- I

20   shouldn't say -- let's rephrase it this way:  You

21   would agree that it's not unusual in the context

22   of a homicide investigation for detectives or

23   investigators to obtain evidence, for example,

24   statements from witnesses that just aren't

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 72

1    actionable.  There isn't enough information in the

2    statement for the police to effectively do

3    anything with.  You would agree that is something

4    that happens, right?

5              MS. SPENCE:  Objection, form.

6              THE WITNESS:  Yeah.  I believe there

7         are times when people give partial

8         information.  If someone says I saw a yellow

9         Ford pickup truck that drove away from the

10        scene real fast, I don't have a license tag,

11        I don't know who the yellow Ford pickup truck

12        belongs to.  But I'll do everything I can to

13        try to determine, but if I can't, there's

14        nothing I can act on.

15   BY MR. GRILL:

16        Q.    Right.  Because it's not reasonable for

17   you -- for an investigator in a homicide to try to

18   track down every yellow truck in a 10-mile radius

19   hoping that something turns up, right?

20        A.    That's correct.  But if someone tells

21   me that the yellow truck belongs to a guy named

22   Javier Johnson, I'm going to try to find Javier

23   Johnson.

24        Q.    I would agree.  Probably should try to

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 73

1    find Mr. Johnson if you got a name and a

2    description of a car, for sure.

3              All right.  Did you -- how many

4    interrogations, I guess, between 2007 and 2010, if

5    you could give me -- quantify it actually for me,

6    do you think that you actually watched?

7         A.    Watched?

8         Q.    Yeah.  Because you said that you would,

9    from time to time, for ones that you took an

10   interest in, you would actually watch these

11   interrogations or witness interviews.  How many,

12   if you know, how many do you think you actually

13   watched?

14        A.    4 or 500.

15        Q.    Okay.  And would you document or would

16   it be documented in the police reports that you

17   were watching these interrogations?

18        A.    I wouldn't document it.  It wouldn't be

19   unusual for -- many times you had multiple

20   detectives and only one detective was doing the

21   interview.  And so the other detective would be

22   watching the room.  So it wouldn't be unusual for

23   the other detective to note who was present when

24   the interview was taking place.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 74

1          But many times interviews take place

2     over several days.  We'll have three hours today,

3     four hours tomorrow.  We're going to bring you

4     back two weeks from now.  And so, you know, that

5     part we probably wouldn't document every single

6     person who was in there every single time who was

7     watching the video.

8          **Q.     Did you review these reports?  Like did**

9     **you have to sign off on them?**

10         A.     Oh, the books?  Yeah, when the case was

11    closed the sergeant would sign it and then I would

12    sign it, yes.  We had a person from the district

13    attorney's office who also was assigned to us, to

14    the homicide unit, and I talked quite frequently

15    with them on a number of cases.

16         **Q.     So on these interviews, hundreds of**

17    **interviews, or interrogations that you would**

18    **observe, do you know how often it was that it was**

19    **noted that you were actually observing your**

20    **detectives conduct the interview or interrogation?**

21         A.     I don't because it wouldn't be unusual

22    for me to stop by for 10 seconds to see who was in

23    there conducting the interview, who the person was

24    and then walk out.  In other words, I wasn't an

1  active participant in the interview with a line of

2  questioning.

3         Q.     Right.  Now -- so let's unpack these a

4  little bit.  So of these hundreds of interviews

5  that you would observe, or interrogations that you

6  would observe, it seems that it was not case that

7  you did not watch or observe the entirety of

8  hundreds of witness interviews or interrogations

9  between 2007 and 2010, right?

10            MS. SPENCE:  Objection.  Form.

11            THE WITNESS:  Yes, that's correct.  And

12         as I noted it could be that a potential

13         suspect could be interviewed three or four or

14         five times over the span of weeks, and I

15         wouldn't have been present for all of them.

16  BY MR. GRILL:

17         Q.     When you would have a meeting with a

18  detective that was conducting an interrogation or

19  an interview, like during a break in that

20  interview or interrogation, and you would discuss

21  strategy with that detective based on your

22  observations or questions that detective is asking

23  you, would it be documented in a police report

24  that the detective talked to you in the midst of

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 76

1    that interview or interrogation?

2         A.    No.

3         Q.    Why?  Don't you think that was

4    something that would be -- a state's attorney or a

5    defense attorney would want to know, that you

6    talked to the detectives during that interrogation

7    or interview, about what was going on in that

8    interrogation or interview?

9         A.    Well, I think you might have answered

10   your question there.  If it's about what's going

11   on in the interview, it's different than me

12   talking, how you doing?  You been in there six

13   hours with this guy, how are you feeling?  Do you

14   feel like you're accomplishing what you need to

15   accomplish?  Really more global in nature

16   questions, as opposed to specific questions about

17   the actual investigation.

18        Q.    Any of the detectives working under

19   your command, between 2007 and 2010, to your

20   knowledge, any of them ever accused of committing

21   any misconduct of any sort during the course of

22   one of those homicide investigations?

23        A.    Not that I recall.  No, sir.

24        Q.    Did you ever receive any information

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 77

1    **from any source between 2007 and 2010, that a**

2    **detective under your command lied to a suspect?**

3         A.    I know that it's happened, but I don't

4    recall that it happened during my time there.  I

5    know since I've left Dallas Police Department,

6    I've seen and read that it's happened to

7    detectives, but I don't recall it happening to

8    anyone while I was there.

9         **Q.    Did you ever observe a detective lie to**

10   **a suspect in an interrogation that you are**

11   **watching, or watched at a later date if it was**

12   **video recorded?**

13        A.    Now, when you say lied, are you talking

14   about trickery?  Trying to -- if someone says,

15   Hey, a guy is in the military, and he's a

16   potential suspect in a crime and the detective

17   says, Hey, I was in the military, even though I

18   know that the detective wasn't in the military?

19   Are you talking about a lie like that?  Or where a

20   detective tries to sway a person?  Or what are you

21   referring to when you say lie?

22        **Q.    Just a lie.  An untruth.**

23        A.    Yes.

24        **Q.    Okay.  So you would agree that how that**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 78

1  **lie is perceived, it's subjective.  Like how the**

2  **person on the receiving end of the untruth**

3  **interprets that lie.  You would agree with, right?**

4       A.     Sure.  Even though I've never been in

5  the military, if I'm trying to bond with a suspect

6  and he says I worked the infantry over here, I

7  would say, I worked in the infantry, too.  I know

8  exactly what you're talking about.

9            I'm trying to establish a relationship

10  between he and I even though I know I've never

11  worked in the military.

12       **Q.     So you would lie to a suspect in order**

13  **to make them feel more comfortable with you, is**

14  **what you're saying, in order to build that**

15  **rapport?**

16       A.     I've seen that happen, yes, sir.

17       **Q.     So they can be put ideally more at ease**

18  **and, therefore, more likely to open up and tell**

19  **you whatever you might want to hear from them,**

20  **correct?**

21            MS. SPENCE:  Objection.  Form.

22            THE WITNESS:  I've certainly seen that

23       tactic with adults, yes, sir.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 79

1  BY MR. GRILL:

2      Q.    And it sounds like you endorse that

3  tactic, right?

4            MS. SPENCE:  Objection.  Form.

5      Mischaracterizes his testimony.

6            THE WITNESS:  I have seen us try to

7      sway people by whatever means we can to get

8      them to say -- to come forward and be honest

9      with us.

10  BY MR. GRILL:

11      Q.    Did you ever observe a detective or an

12  investigator under your command misrepresent the

13  facts of the case in order -- to a suspect in a

14  homicide investigation in order to test that

15  suspect's knowledge or story about what he or she

16  might have been doing at the time of the murder?

17      A.    Yes.

18      Q.    And you endorse that as an appropriate

19  strategy for an investigator to employ during an

20  interrogation of a homicide suspect?

21            MS. SPENCE:  Objection.  Form.

22      Mischaracterizes testimony.

23            THE WITNESS:  With adults for sure.

24      Yes, sir.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 80

1  BY MR. GRILL:

2      Q.      And adults you mean somebody 17 or

3  older, right?

4      A.      Yes, sir.

5      Q.      What about a 17-year-old in Chicago,

6  because the cutoff is 18 in Chicago.  Would you

7  endorse that strategy in Chicago?

8      A.      I would go -- if I was in Chicago, I

9  mean, if he was -- 18 is an adult, then I would

10  feel that, yes, sir.

11      Q.      Well, do you think if it works -- if

12  it's okay to do that to a 17-year-old in Texas, do

13  you think that it's okay to do it to 17-year-old

14  in Chicago?

15      A.      Well, Chicago is different than Texas.

16  I would have to go with what you believe -- I mean

17  the mindset, I think it's been developed that

18  where the timeline between what I've read and the

19  development of a juvenile's brain, sometimes they

20  are around the 10th grade age level is different

21  than say a 17-year-old or nearly 18-year-old three

22  years later who has got more experience.

23      Q.      You don't know if that's true though

24  because you're not a psychologist, right?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 81

1      A.     I am not a psychologist.

2             MS. SPENCE:  Objection, form.

3    BY MR. GRILL:

4      **Q.     And you're not an expert in human**

5    **behavior, right?**

6      A.     That is correct.

7      **Q.     Or the juvenile brain and how it works,**

8    **right?**

9      A.     That is correct.

10     **Q.     And you are not holding yourself out**

11   **here in any of those areas, right?**

12     A.     No.  When I site those references in my

13   book, it's from people who I'm assuming have those

14   degrees and have those letters after their names

15   and I'm just referencing them.

16     **Q.     Right.  But a police practices expert**

17   **is an expert in how the police conduct an**

18   **investigation, whether the way they conducted the**

19   **investigation comports with accepted police**

20   **standards.  You agree with that, right?**

21     A.     Yes, sir.

22     **Q.     A police practices expert is not an**

23   **expert on the psychological impacts of particular**

24   **investigative techniques on a juvenile's brain,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 82

1  for example, right?

2      A.    Yes, sir.

3      Q.    Or on an adult person's brain, right?

4      A.    On any brain.  No, sir.

5      Q.    Did you ever watch or become aware that

6  any of your detectives under your command in 2007

7  to 2010 made any false promises of leniency to any

8  suspect in a homicide investigation?

9      A.    As far as -- as I said we had a

10 prosecutor from the DA's office assigned to us.

11 And so for the detective to be working with the

12 prosecutor, if they had a pending case, and say

13 that, we're going to, you know -- I'll talk to the

14 prosecutor about this if you supply us with

15 information, I've certainly seen that happen.

16     Q.    And the point there is to convey to the

17 suspect that, you know, I'll go to bat for you,

18 I'll try to, you know, make this as easy as

19 possible on you if you talk to me.  Right?

20     A.    It's not a promise, it's just, you

21 know, you're letting them know that there is an

22 impetus desire for them to come -- it would be

23 helpful to them if they come forward with

24 information.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 83

1      Q.      You would also agree that if something

2   is perceived as a promise is subjective.  Like,

3   that might be your intention, but a suspect being

4   questioned about the homicide very well could

5   interpret a statement like that as a promise to

6   help them out with the criminal charges --

7              MS. SPENCE:  Objection.  Form.

8       Foundation.

9   BY MR. GRILL:

10     Q.      Hang on.  If they tell the police or

11  answer the police officer's questions, the

12  detective's questions, right?  That that's

13  possible.

14             MS. SPENCE:  Objection.  Form.  Calls

15      for speculation.  Foundation as well.

16             THE WITNESS:  In my report, I think I

17      reference where Mr. Jakes was promised he

18      could go home.  That's a promise that I think

19      impacts a juvenile differently than it does

20      an adult.  Even though I think an adult might

21      perceive that that way.

22                  So to promise someone some form

23      of, Hey, you're going to go home if you just

24      go ahead and sign this is different than,

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 84

1    hey, do you want to work your case off

2    because you've burglarized a coin-operated

3    machine.  And we can have that moved down

4    from a Class B misdemeanor to a Class C

5    misdemeanor if you'll agree to give us

6    information in this, those are two different

7    animals.

8    BY MR. GRILL:

9    **Q.    Is it your understanding that Mr. Jakes**

10   **did -- let me strike that question.**

11   **What is your understanding, based on**

12   **the materials you reviewed, that Mr. Jakes was**

13   **told he needed to do in order to be able to go**

14   **home?**

15   A.    I would have to look at my report

16   specifically to see if I wrote it that way.  And

17   so if you want to look at that, sir, I'm glad to

18   see how I said it.

19   As we're sitting here talking, I know

20   there was a point in time with Boudreau and Kill

21   where he was -- where he was told, You can go home

22   if you just go ahead and sign this report, which I

23   believe is his statement.  And I think I reference

24   that in my report, so I would have to go to that.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 85

1  Because that's all I would testify on is what's in

2  my report.

3      Q.      Was it your recollection that

4  Mr. Boudreau was present when Mr. Jakes signed the

5  statement with the assistant state's attorney?

6          MS. SPENCE:  Objection.

7      Mischaracterizes the testimony.

8  BY MR. GRILL:

9      Q.      I'm asking if that's your recollection?

10     A.      No, I think it was Detective Caesar was

11  with Grossman and Burke when that took place so I

12  don't think Boudreau was there.  I know Kill was

13  going in and out of the room, but I don't

14  specifically think Boudreau was there.

15     Q.      Is it your understanding from the

16  materials that you reviewed, that Mr. Jakes was

17  told either by Detective Kill or Detective

18  Boudreau what to say to the ASA?

19     A.      I would have to look at my report to

20  see how I say that.  But I believe that Mr. Jakes

21  felt that Detective Kill, based upon some of the

22  things that Mr. Jakes believed took place, felt it

23  was in his best interest to go ahead and -- with

24  those statements.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 86

1          Q.      Okay.  So you don't remember, is that
2    fair, right now?
3          A.      Yeah.  Like I say, when we go through
4    my report, I'll be glad to talk about what I wrote
5    and what I did.  Yes, sir.
6          Q.      Did you ever -- are there any other
7    types of false promises of leniency that you can
8    recall that your detectives would employ when
9    interrogating suspects in a homicide investigation
10   when you were the unit commander?
11                MS. SPENCE:  Objection.
12         Mischaracterizes testimony.  Form.
13                THE WITNESS:  I'm sure that they said a
14         number of things in order to get a possible
15         suspect to come forward with information.  I
16         just don't remember what those are as we sit
17         here.
18   BY MR. GRILL:
19         Q.      Did you ever file -- let me ask you
20   this:  So in Chicago we have this thing, the
21   Chicago Police Department has these complaint
22   registers, which is the system that Chicago Police
23   Department uses to keep track of complaints of all
24   sorts brought against police officers.  Do you

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 87

1    understand that that system exists in the CPD?

2        A.    I understand what it is.  Yes, sir.

3        Q.    Okay.  And Dallas has a similar system,

4    some system to keep track of --

5        A.    Internal Affairs acknowledges guys

6    who've had a history -- they have X number of

7    complaints, they fall under this category.  Yes,

8    sir.

9        Q.    Did you ever file a complaint against

10   any of your detectives between 2007 and 2010 that

11   were under your command?

12       A.    No, sir.

13       Q.    What other types of lies, do you think,

14   that you can recall, other than a lie about maybe

15   being in the military because someone else says

16   they're in the military and you're trying to build

17   a rapport, what other types of lies do you

18   remember your detectives employing in homicide

19   suspect interrogations?

20       A.    I think as you're trying to establish

21   relationships with people to develop trust, I

22   think that you can say a number of things, but as

23   we sit here today, I don't recall specific things.

24       Q.    Do you ever recall your detectives

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 88

1  telling a suspect somebody saw them commit a crime

2  when that wasn't the truth?

3      A.      Yes.

4      Q.      And did you file a report about

5  misconduct when you became aware or observed that

6  occur?

7      A.      Not when I saw it used in the context

8  of trying to get the person to come forward with

9  information.

10     Q.      Did any of the confessions your

11 detectives obtained when you were the unit

12 commander ever get suppressed, to your knowledge,

13 in a court of law?

14     A.      No, sir.

15     Q.      No, they didn't or no, you don't

16 recall?

17     A.      I don't recall any ever being

18 suppressed.

19     Q.      Okay.  Do you know if any of the

20 detectives under your command ever were the

21 subject of a civil rights lawsuit, a defendant in

22 a civil rights lawsuit, arising out of any of the

23 homicide investigations that occurred between 2007

24 and 2010 when you were the unit commander?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 89

1       A.      No, sir.

2       Q.      **Have you ever been sued in a civil**

3  **rights lawsuit?**

4       A.      Civil rights, I don't think so.  No, as

5  a chief of police you get included in lawsuits all

6  the time, but I don't recall a civil rights

7  lawsuit.  No, sir.

8       Q.      **Have you ever observed or become aware**

9  **that any of your detectives ever threatened a**

10 **homicide suspect in an interrogation?**

11      A.      Threatened him by physically striking

12 him or getting close to their face?  When you say

13 threatened him?

14      Q.      **We can take it in pieces.  Physically**

15 **hit him.**

16      A.      No, I've never seen that.

17      Q.      **Threatened physical violence?**

18      A.      Never seen that.

19      Q.      **To use your other example, close that**

20 **personal space between somebody -- between the**

21 **detective and the suspect in a threatening way?**

22 **You ever observe anything like that?**

23      A.      Not in a threatening way.  I think that

24 part of narcotics investigation, they'll talk to

Page 90

1    you about -- you see people start off a distance

2    from one another, but as the investigation goes on

3    they get closer to one another, and that is they

4    are starting to develop that relationship.

5         And when you invade a person's space, I

6    think it makes them feel more that you're a part

7    of them, and it helps during the course of the

8    investigation --

9         Q.    Sorry, go ahead.

10        A.    Or the interrogation.  Sorry.

11        Q.    No, it was my fault.  I interrupted

12   you.  Did you ever observe or become aware of your

13   detectives, during that time period, yelling,

14   raising their voice at suspects during a homicide

15   interrogation?

16        A.    Yes.

17        Q.    What about using graphic language,

18   swear words, things like that?  You ever see them

19   or hear them do that?

20        A.    Yes.

21        Q.    You ever see or observe or become aware

22   of any of your detectives making statements to

23   suspects during an interrogation that -- along the

24   lines of, If you don't tell me the truth, this is

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 91

1    **going to be worse for you.  You're going to get**

2    **more time in jail.  You know, basically pointing**

3    **out the criminal consequences of the situation?**

4              MS. SPENCE:  Objection.  Form.

5              THE WITNESS:  Yeah.  I've heard

6         detectives that will tell people, If you're

7         not helpful here, this will hurt you down the

8         road.  I've never heard a detective threaten

9         someone's family or threaten them personally

10        if you don't tell the truth.  I've never

11        heard anything like that.

12   BY MR. GRILL:

13        **Q.    Did you ever file any complaints**

14   **against any of those detectives or officers that**

15   **employed interrogation tactics like that?**

16             MS. SPENCE:  Objection.  Form.

17             THE WITNESS:  Who raised their voice or

18        cursed at someone?

19   BY MR. GRILL:

20        **Q.    Or threatened, you know, more dire**

21   **criminal consequences if they don't cooperate like**

22   **we were just talking about.**

23             MS. SPENCE:  Objection.  Form.

24        Mischaracterizes testimony.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 92

1              THE WITNESS:  No, I've never made a

2      complaint on those.

3    BY MR. GRILL:

4        Q.      You ever observe your -- I may have

5    asked you this before, but I don't remember your

6    answer, so I apologize.  How many juvenile

7    interrogations occurred -- strike that.  Let me

8    rephrase that.

9              How many juvenile interrogations were

10   conducted by your detectives who were under you in

11   the homicide unit between 2007 and 2010?

12       A.      Very few.  Most of the crimes were

13   handled -- juvenile crimes were handled by the

14   youth division.  We would certainly have juvenile

15   witnesses that we would interview and interrogate.

16              And there were times when juveniles

17   were killed as a part of an adult -- maybe a

18   father and son, maybe the 6-year-old son was

19   killed and the father was killed, and we would

20   take both cases.  But it would be a situation like

21   that for us to get involved in a juvenile

22   homicide.

23       Q.      Did you observe any -- of those few

24   interrogations that were conducted by detectives

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 93

1    under your command, did you observe any of them?

2         A.    Yes, sir.

3         Q.    How many do you think happened?  When

4    you said there was a few, can you quantify it?

5         A.    I can't.  I don't know the exact

6    number.  I can tell you it was less than 20, it

7    probably was, I just don't recall.  They were

8    under the time constraint.  I know that was a big

9    part of what we all were working with.

10        Q.    Did you observe the entirety of those

11   less than 20 juvenile interrogations?

12        A.    Probably not.

13        Q.    And when you were there, were you the

14   only one observing the interrogation or were there

15   other people present?

16        A.    I'm sure there would have been other

17   people present.

18        Q.    Who else would have been present?

19        A.    Other detectives in that particular

20   squad, or maybe the other detective assigned to

21   the case.  Or more than likely the sergeant who

22   worked under me who was over that unit.

23        Q.    Were there youth officers or some type

24   of equivalent in Dallas present for those juvenile

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 94

1  interrogations?

2       A.    Yes, they would have been.

3       Q.    Would they have been in the room with

4  the juvenile?

5       A.    Yes.

6       Q.    What about the juvenile's parents?

7  Were they always present for the interrogation?

8       A.    In the ones that we did, I just don't

9  recall.  The youth division would have dealt more

10  specifically with them.  As I said, normally it

11  would have been -- for us to have been involved,

12  it would have been, say, an adult and a juvenile

13  that were killed.  Or juvenile suspect that might

14  have known information.

15            And we also have the advocacy center,

16  which is something that we have here that is

17  specific to interviewing really young kids about

18  being at crimes and what did they see.

19       Q.    So you don't remember if a parent was

20  present for each one of these juvenile

21  interrogations; is that fair?

22       A.    I don't recall, no.

23       Q.    But in any event, when you had a --

24  between 2007 and 2010, when you had a suspect who

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 95

1    **was a juvenile in a homicide investigation, most**

2    **of the time those interrogations were handled by a**

3    **different set of investigators that were not under**

4    **your command, correct?**

5        A.    That's correct.

6        **Q.    If you could quantify it, you know, you**

7    **said that there were, between 2007 and 2010,**

8    **hundreds of homicide -- interrogations of homicide**

9    **suspects that occurred when you were the unit**

10   **commander.**

11              **Of those hundreds of interrogations, in**

12   **how many cases were confessions actually obtained,**

13   **in your experience?**

14       A.    Well, I think nationally statistics

15   show that only about 60 percent would be a high

16   number of homicides in general are solved.  And so

17   just using that number, I would have to say 40

18   percent; 30, 40 percent.  That's just -- I don't

19   know that for sure.

20       **Q.    Is that a guess?  You don't know?**

21       A.    Yes, sir.  That's a guess.  And I just

22   wanted to also note that when I left homicide in

23   2010, I was promoted to deputy chief.  And I was a

24   deputy chief over something called crimes against

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 96

1    persons, which I was over -- I was still over

2    homicides and over robberies, assaults, sex

3    assaults, and in the CSI function for the Dallas

4    Police Department.

5            So even though I left in 2010 as the

6    actual homicide unit commander, I stayed and

7    oversaw homicide and the other crimes against

8    persons units for that next 14 months until I

9    retired.  So I wasn't just involved in homicide

10   investigations through '10, I guess.

11   **Q.      Okay.  Did you ever, between 2007 and**

12   **2010, ever become aware or observe that one of**

13   **your detectives disclosed facts, maybe facts not**

14   **known to the general public, about a homicide or**

15   **about what the police knew about a homicide to a**

16   **suspect, in order to test that suspect's story?**

17           MS. SPENCE:  Objection.  Form.

18           THE WITNESS:  Like have two different

19       suspects in the office and say, Hey, this

20       suspect over here is telling us this is what

21       happened and, you know, so you better tell us

22       your side of the story?  That sort of thing?

23   BY MR. GRILL:

24   **Q.      Sure.  That's an example of it, yeah.**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 97

1   **Let's go with that one.  That ever happen?**

2        A.     I've certainly seen that happen.

3        **Q.     What about a detective telling a**

4   **suspect, you know, No, I know X about the crime.**

5   **And, you know, for example, where the murder**

6   **weapon, for example, might have been found,**

7   **hypothetically?**

8             **And that's in order to -- that's in**

9   **response to the suspect telling the detective that**

10  **the weapon was -- you didn't have it or it was**

11  **over somewhere else.  Did you ever see something**

12  **like that happen?**

13       A.     Yes.

14       **Q.     And then did you ever see then or**

15  **become aware that that suspect, then, agrees with**

16  **the detective and says, yeah, that's what**

17  **happened?**

18       A.     Well, always you want to corroborate

19  anything where someone says, I found the gun here

20  or I found the gun there, you want to corroborate

21  that with physical evidence.  I mean, we don't

22  want to just go on indicators, if you will.

23            And so, I mean, I've heard guys,

24  detectives, try to say things to adult suspects or

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 98

1   adult witnesses that would lead them to think they

2   knew more than they knew, or lead them to think

3   something.  I've certainly seen that.

4         **Q.      Over the last 20 minutes or so we've**

5   **gone through a series of things that you've**

6   **observed or are aware of that your detectives -- a**

7   **series of tactics that your detectives would**

8   **employ during homicide suspect interrogations that**

9   **include telling mistruths to the suspects.**

10  **Suggesting that they can help them out with their**

11  **charges as they talk.  They've yelled at them.**

12  **They've threatened more dire consequences.  You**

13  **know the list.**

14              **Do any of those things, when employed**

15  **during the interrogations, have any of them ever**

16  **caused you to doubt the truthfulness of the**

17  **suspect's confession when they do confess?**

18              MS. SPENCE:  Objection, form.

19              THE WITNESS:  Whenever you get to the

20         point where a person actually confesses and

21         you look at the totality of what has gone on

22         during the course of the interview, or the

23         interrogation, if it's been going on for four

24         or five hours.  And you certainly factor

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 99

1          things in, like you suggested.

2                    But really I look at it -- that

3          confession as the totality, and what

4          corroborating information is there aside from

5          the confession.  If there is actually the

6          person says, I put a gun under the front

7          steps or the porch at X house, and you go to

8          X house and that corroborates that they

9          actually did have a gun.

10                   But in the confessions, generally

11         speaking, they're corroborated by some sort

12         of physical evidence or something that proves

13         what they're saying.  And so the tactics in

14         that case would be -- the ends -- getting the

15         person to do the confession, and once again,

16         I want to stress that these were adults that

17         we're talking about, that are giving us this

18         information that these detectives are dealing

19         with.  Yeah, I've absolutely seen that

20         happen.

21                   But it's that corroborating

22         evidence I think that is so important in the

23         cases that I've seen where the person has

24         confessed.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 100

1  BY MR. GRILL:

2      **Q.    So is it your testimony today that**

3  **every confession that your detectives took between**

4  **'07 and 2010 was able to be corroborated, in all**

5  **cases, by physical evidence?**

6              MS. SPENCE:  Objection.  Form.

7          Mischaracterizes the testimony.

8              THE WITNESS:  I don't know in all

9          instances.  But as I said, the prosecutor's

10         office wanted more than just a statement.

11         They wanted some corroborating evidence.

12              So I can't name the percentage,

13         but it's going to be nearly 100 percent where

14         there is something to corroborate what the

15         person is saying that proves that that

16         actually did happen that way.

17  BY MR. GRILL:

18     **Q.    Can you think of any instances that**

19  **you're aware of, when you're the unit commander,**

20  **where the only evidence against a suspect that was**

21  **charged with a homicide, for example, was that**

22  **suspect's statement?**

23     A.    We had a homicide one time where we

24  didn't have a body.  And we charged a person with

1   murder without having a physical body because the

2   body, we believe had been taken to a dump -- a

3   city dump, and we never found the body.

4           And so, you know, it's a lot harder to

5   corroborate that, but there was a lot of

6   extenuating information, some videos, and things

7   that we found after the fact, that helped to

8   corroborate the fact that we went ahead and still

9   charged this person with murder.

10      Q.      **Are there any other instances that you**

11  **can recall, when you were the unit commander,**

12  **where confessions -- where a suspect's confession**

13  **was the only evidence against that person?**

14          MS. SPENCE:  Objection.  Form.

15          THE WITNESS:  As I sit here, I just

16      don't recall, sir.  I left Dallas PD in 2011,

17      so it's been 11 years since I was the chief

18      there, a deputy chief there.  So I just don't

19      recall that.

20  BY MR. GRILL:

21      Q.      **You mentioned a moment ago that you**

22  **look at totality of the circumstances to decide**

23  **for yourself whether you believe the confession, I**

24  **guess, was given knowingly and voluntarily; is**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 102

1    **that fair?**

2         A.    Yes, sir.

3         Q.    **You would agree that the same standard**

4    **applies when it comes to juvenile -- well,**

5    **confessions given by juveniles.  Would you agree**

6    **with that?**

7              MS. SPENCE:  Objection.  Form.

8              THE WITNESS:  I think in my report I

9         talk about, nationally, statistics when it

10        comes to confessions from juveniles and what

11        percentage of them -- there is a higher

12        percentage of people that give false

13        confessions are juveniles, for a lot of

14        reasons, which I discuss in my report.

15                  So I don't really know how to

16        answer that, other than to say we can look at

17        my report and see how I said that.

18   BY MR. GRILL:

19        Q.    **Do you cite those statistics in**

20   **order -- in support of any opinion that you**

21   **believe that Mr. Jakes's confession, the**

22   **information contained in it, is false?**

23        A.    Are you asking me do I think the

24   information in Mr. Jakes's confession is false?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 103

1  Is that what you're asking me?

2      Q.      Yeah.

3      A.      Based upon -- when I read the case,

4  depending on -- the jury is going to be the one

5  that makes that decision, whether the truthfulness

6  of Mr. Jakes or the truthfulness of the

7  detectives, that's not my decision.

8              If you were to look at it from the

9  perspective of Mr. Jakes, then I think you would

10  say the information was not accurate, and that it

11  was not proven and that he did it under duress.

12              If you take the opinion of the

13  detectives and what they said, if that's what the

14  Court says, then the Court would look at how they

15  said it took place.  So that's not my decision to

16  make -- to make that call.

17      Q.      Do you intend to offer an opinion at

18  trial about the truthfulness of Mr. Jakes's

19  confession?

20      A.      I believe that that's the jury's

21  decision to make that determination.  If I'm

22  asked, if these set of circumstances were true,

23  what would your opinion be, then I would answer

24  that from Mr. Jakes's perspective.  And if they

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 104

1  asked me if these opinions were said to be true

2  from the perspective of the officers, how would

3  you see that?

4      **Q.    When you say Mr. Jakes's perspective,**

5  **are you referring to his account of the events?**

6      A.    Yes, sir.

7      **Q.    Just backing up a couple questions or**

8  **like a minute ago.  You mentioned that there are**

9  **statistics or information in your report regarding**

10  **the incidents of false confessions, in particular**

11  **as they pertain to juveniles nationally.  Do you**

12  **remember talking about that just a second ago?**

13      A.    Yes, sir.

14      **Q.    So what is the point of including that**

15  **information in a police practices expert's report,**

16  **if your opinion -- if you are taking no position**

17  **or offering no opinion about the truthfulness of**

18  **Mr. Jakes's confession?**

19      A.    I think the purpose of having a police

20  expert is to help the jury to understand why

21  certain things happened the way that they did.  If

22  statistically, nationally, a percentage -- a

23  higher percentage of false confessions are

24  juveniles, that's not something the general public

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 105

1   may understand.

2             That's something that I learned in the

3   course of my research in reviewing this case.  I

4   think to share that information is appropriate.

5   If it was the other way, that would be appropriate

6   as well.

7        **Q.    But you would agree that the incidents**

8   **of false confessions nationally has nothing to do**

9   **with whether the police -- the way the police**

10  **investigated this case conformed with accepted**

11  **police practices.  You would agree with that,**

12  **right?**

13            MS. SPENCE:  Objection.  Form.

14            THE WITNESS:  What I would agree with

15        is that nationally, a higher percentage of

16        false confessions come from juvenile suspects

17        and there is a reason, and those reasons are

18        listed in my report.

19                 And so I include that for the

20        jury, because as a police practices expert

21        that is not something that necessarily a jury

22        would know about, and that's why hiring

23        someone like me to come in to explain that is

24        appropriate.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 106

1    BY MR. GRILL:

2        **Q.      But all you're doing is telling the**

3    **jury that it's more likely or this is the**

4    **likelihood that the confession is false, right?**

5    **That's the point of that information, correct?**

6                MS. SPENCE:  Objection.  Form.  Asked

7           and answered.

8                THE WITNESS:  That nationally this is

9           what the statistics show.  And Mr. Jakes fits

10          into this criteria of this age of kids that

11          would be impacted in a way a lot of people

12          were.

13   BY MR. GRILL:

14       **Q.      So you're suggesting, then, by**

15   **including that information, what the conclusion is**

16   **or the impact of the failure of the detectives, in**

17   **your opinion, to comport with accepted police**

18   **practices, in particular as they relate to the**

19   **interrogation, right?  That's the point?**

20               MS. SPENCE:  Objection.

21          Mischaracterizes his testimony.  Asked and

22          answered.  Form.

23               THE WITNESS:  I'm just trying, as a

24          police practice expert, trying to do what I'm

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 107

1      hired to do.  Which is explain to the jury

2      why certain things happened the way that they

3      did, based upon my experience, in this case,

4      from having worked in homicide.

5  BY MR. GRILL:

6      **Q.     Right.  And so you're trying to**

7  **suggest, by including those statistics, you're**

8  **trying to tell the jury or suggest to the jury**

9  **what the result of the detectives' failure to**

10 **comply with accepted police practices is in your**

11 **opinion, right?**

12          MS. SPENCE:  Objection.  Form.  Asked

13      and answered.  Argumentative.

14          THE WITNESS:  No, sir.  I just believe

15      that's -- the jury is going to make that

16      decision, based upon my testimony.

17 BY MR. GRILL:

18     **Q.     Right.  But you're telling them --**

19 **you're giving them the information that you**

20 **believe they need regarding the effect of the**

21 **officers' behavior on the truthfulness of**

22 **Mr. Jakes's statement, right?**

23          MS. SPENCE:  Andrew, you've asked this

24      question a number of times.  Objection.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 108

1     Asked and answered.  Form.

2  BY MR. GRILL:

3     **Q.     Go ahead and answer the question,**

4  **please.**

5     A.     I wrote a report, and we all have that

6  as Exhibit 3.  And I mention those statistics in

7  that report.  And I'm going to testify at trial,

8  if called upon, to discuss what's in my report.

9  And I'm not slanting it one way or the other.

10          As I said, that's going to be the

11  jury's decision to understand.  I'm just supplying

12  them with as much information as I can about this

13  type of incident nationally.

14     **Q.     Um-hmm.  So as a police practices**

15  **expert, you already told me that your purpose is**

16  **to tell the jury whether the officers' actions in**

17  **this case complied with accepted police practices,**

18  **right?**

19     A.     Yes, sir.

20     **Q.     That's your role in this case, right?**

21     A.     To be objective.  Yes, sir.

22     **Q.     But by including that information,**

23  **also, that additional information about the**

24  **statistical incidents of false confessions,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 109

1  putting aside whether that information is accurate

2  or not, by including that information you agree

3  that you are suggesting to the jury, if you're

4  allowed to say that, what the impact is --

5          MS. SPENCE:  Objection.  Form.

6          MR. GRILL:  Hang on.  I'm not done.

7          MS. SPENCE:  Sorry.

8  BY MR. GRILL:

9      Q.    That's okay.  What the impact is of the

10  officers' ostensible failure, in your opinion, to

11  comply with accepted police practices, right?

12          MS. SPENCE:  Objection.  Form.  Asked

13      and answered.

14          THE WITNESS:  I just don't think I can

15      answer that question.

16  BY MR. GRILL:

17      Q.    Okay.  So you can't -- you're taking no

18  position, as you already said, as to whether or

19  not -- I should say this, you intend -- you're not

20  going to offer any opinion at trial regarding

21  whether you think Mr. Jakes's confession is

22  truthful or not, right?

23      A.    That's correct.

24      Q.    You have no idea and will offer no

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 110

1    **opinion about whether Mr. Jakes's account of what**

2    **happened between September 15th and September**

3    **16th, 1991, is actually true, right?**

4         A.    If -- the jury will be the trier of the

5    facts in this case, not me.  And if the jury feels

6    one way, then they'll feel that way.  If they feel

7    this way about the officers, they'll feel that

8    way.

9              I'm just merely here to discuss, you

10   know, if there is a question about how that should

11   be, why I feel that way.

12        **Q.    Um-hmm.  Right.  So you are not going**

13   **to offer any opinion at trial whether Mr. Jakes's**

14   **account of what happened between September 15th**

15   **and September 16th, 1991, is actually true,**

16   **correct?**

17        A.    Yes, sir.  You're correct.

18        **Q.    And because you're not offering any**

19   **opinion like that, you have no idea if Mr. Jakes's**

20   **confession falls within the statistical parameters**

21   **of whatever study you read that indicates or**

22   **suggests that there is a national incidence of**

23   **juvenile false confessions, right?**

24             MS. SPENCE:  Objection.  Form.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 111

1          THE WITNESS:  Other than the fact that
2      he's a juvenile and he would fit into that
3      category, but it's -- and I would have to go
4      back to my report, and I don't know what the
5      number is, if it's 43 percent or some number,
6      but I don't know that he would be -- that
7      would be the jury's decision to make that
8      determination.
9  BY MR. GRILL:
10      Q.     **You agree that one of your -- one of**
11  **the hurdles that must be met in order for you to**
12  **be able to offer an opinion as a police practices**
13  **expert at trial includes your testimony actually**
14  **being helpful to the jury, right?**
15      A.     Yes, sir.
16      Q.     **How do you think it helps the jury if**
17  **you tell them that 43 percent of juveniles, for**
18  **example, give false confessions?  How do you think**
19  **that helps them?**
20      A.     That's to know that 57 percent of the
21  juveniles don't and I'm not saying -- I think it's
22  important for the jury to know that, statistically
23  speaking, on a national basis, there is a higher
24  incidence of false confessions from juveniles.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 112

1               I'm not suggesting that Mr. Jakes fits

2    into that category or not.  I think it's important

3    for the jury to know that information is

4    available, and can be impactful to this case.

5         **Q.    Well, if you can't say whether**

6    **Mr. Jakes fits into that category, how does that**

7    **help the jury decide anything in this case?**

8         A.    My job is to supply the jury with

9    information that is contained within my report.

10   And that's all I'm going to testify is to the

11   things that are within my report.

12               And I do have a mention in my report

13   about statistics nationally, and a higher

14   incidence of false confessions within juveniles.

15   That's all I'm going to talk about.

16        **Q.    Right.  So my question is, if you can't**

17   **say that this applies to Mr. Jakes, this analysis**

18   **applies to Mr. Jakes at all, in any way, how do**

19   **you think this statistic can help the jury?**

20               MS. SPENCE:  Objection.  Asked and

21       answered.

22   BY MR. GRILL:

23        **Q.    I haven't gotten an answer to it.**

24   **That's why I'm asking the question again.**

Page 113

1            MS. SPENCE:  I stand on my objection.

2            THE WITNESS:  Because of Mr. Jakes's

3        age and what constitutes a juvenile.  And if

4        we go through the information that's in my

5        report and we talk about the mindset, and I'm

6        not a psychologist, but I read the report,

7        and I cite the report, not Craig Miller

8        saying this, and I talk about the mindset of

9        the juvenile and their ability to understand

10       things like Miranda; their ability to

11       understand long, lengthy questions, being

12       incarcerated or being contained for 16 hours,

13       not having food, not having drink.

14                There is just a myriad of things

15       that I believe impact the mindset of anyone,

16       but particularly a juvenile.  And the

17       juveniles fall in this statistical range, and

18       Mr. Jakes is in that range.

19   BY MR. GRILL:

20       Q.    Well, you've already told me today that

21   you are not an expert in the human brain at all

22   and how it works, right?  You've already agreed to

23   that?

24       A.    Yes, sir.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 114

1      Q.      So you agree that you cannot offer any

2  opinions about Mr. Jakes's mindset or -- right?

3  Let's start with that.

4           MS. SPENCE:  Sorry.  Objection.  Form.

5           Mischaracterizes the testimony.

6           THE WITNESS:  In my report I cite a

7           study that was written by psychologists.  I

8           am not a psychologist.  All I do is reference

9           that document, and how I see it correlates

10          back to this case.

11  BY MR. GRILL:

12     Q.      Right.  But you don't have any idea

13  about the science that underpins that document,

14  right?

15     A.      No, sir.

16     Q.      And in police practices -- let me ask

17  you this:  Is that the type of document that

18  police practices experts typically rely on in

19  offering opinions about how police officers

20  investigate a case and whether their actions

21  comport with reasonable nationally accepted

22  standards?

23     A.      I think when you look at documents from

24  the International Association of Chiefs of Police

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 115

1  and the Department of Justice, I absolutely think

2  that law enforcement conforms or believes in --

3  because they set the parameters for all law

4  enforcement when it comes to arrests and

5  investigations, and the Constitution, and how we

6  perform our jobs.

7           So, yeah, I think that to say the

8  Department of Justice or the International

9  Association of Chiefs of Police, which is relied

10  upon for this information, I think that's

11  valuable.

12      **Q.    Right, but those are -- you'd agree,**

13  **the DOJ and the IACP are massive organizations,**

14  **right?**

15      A.    They are.

16           MS. SPENCE:  They are or aren't?

17  BY MR. GRILL:

18      **Q.    They are.  And they cover all areas of**

19  **law enforcement, right?**

20      A.    Yes.

21      **Q.    That might -- that includes behavioral**

22  **analyses, for example, from psychology, right?**

23           MS. SPENCE:  Objection.  Form.

24           THE WITNESS:  Yes, sir.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 116

1    BY MR. GRILL:

2         Q.    And those are areas totally separate

3    from another discrete area, like it is that you

4    work in, which is police practices.  You would

5    agree with that, right?

6         A.    No.

7         Q.    So are you saying that just because you

8    are a member of law enforce -- a member of the

9    Department of Justice, like you are an FBI agent,

10   that that then qualifies you to also offer

11   opinions about -- that might be germane to a

12   behavioral analysis psychologist, that that would

13   be appropriate?

14             MS. SPENCE:  Objection.  Form.

15        Mischaracterizes his testimony.

16             THE WITNESS:  When you read an article

17        by the International Association of Chiefs of

18        Police or the Department of Justice, the

19        people that are writing those articles or

20        noted in those studies, are people that are

21        experts in those fields, which might be

22        psychology.  Which I am not an expert in

23        psychology.

24                  And so in my report I cite to

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 117

1          references from these national -- DOJ and the

2          International Association of Chiefs of

3          Police, where people that do have all those

4          letters after their names are the ones that

5          prepared the information, and I rely upon

6          that information.

7                    And I think that law enforcement,

8          in general, across the country, should rely

9          upon information from these sources.  Because

10         I think they set the foundation for what we

11         do in policing.

12    BY MR. GRILL:

13         **Q.     Because, in your opinion, the failure**

14    **to comply with the standards, as you've explained**

15    **in your report, causes, for example in the case of**

16    **juveniles, a 43 percent chance that the confession**

17    **is false; is that fair?**

18              MS. SPENCE:  Objection.

19         Mischaracterizes --

20    BY MR. GRILL:

21         **Q.     Statistically.**

22              MS. SPENCE:  Objection.

23         Mischaracterizes the testimony and the

24         record.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 118

1           THE WITNESS:  I'm just referencing what

2       I consider to be a national standard with the

3       DOJ or the IACP that is foundational that we

4       in law enforcement can rely upon, or the

5       information wouldn't be distributed and made

6       available to us.

7   BY MR. GRILL:

8       **Q.      You mentioned a moment ago that you**

9   **were including the, I think you said 43 percent, I**

10  **don't have the number in front of me.**

11      A.      Yeah, I don't either.

12      **Q.      But whatever, I think we agree that**

13  **we're talking about whatever that percentage is,**

14  **whatever it is that you cited in your report.**

15          **You said that you're including that**

16  **statistic because -- because Mr. Jakes confessed**

17  **and because he was a juvenile, right?  That's why**

18  **you're including that in there?**

19          MS. SPENCE:  Objection.

20      Mischaracterizes the testimony.

21          THE WITNESS:  I'm including that

22      because, yes, the basis of this -- of the

23      testimony I'd be involved with includes the

24      fact that Mr. Jakes was a juvenile when this

Page 119

1       took place.  But I'm just making information

2       available to the jury for them to have.

3  BY MR. GRILL:

4       Q.     So it's your opinion that because

5  **Mr. Jakes is a juvenile and he confessed,**

6  **according to national statistics there is a 43**

7  **percent chance, if that's the number --**

8            MS. SPENCE:  Objection.

9  BY MR. GRILL:

10      Q.     -- that his confession is false?

11           MS. SPENCE:  Objection.

12  BY MR. GRILL:

13      Q.     That's the point, right?

14           MS. SPENCE:  Objection.  Form.

15      Mischaracterizes the testimony and the

16      opinions in the report.

17           THE WITNESS:  No, sir, I don't believe

18      that.  All I'm doing is supplying the

19      information to people that there has been --

20      of the people that have been found in false

21      confessions, there's a higher percentage of

22      juveniles.  And it just so happens that

23      Mr. Jakes is a juvenile.  But I'm not saying

24      that Mr. Jakes is in this category or that

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 120

 1      category.  That's for the jury to decide.

 2   BY MR. GRILL:

 3      **Q.     And you're giving this information to**

 4   **the jury because you believe that since he's a**

 5   **juvenile and he confessed, nationally, there is a**

 6   **43 percent chance that it was false?**

 7            MS. SPENCE:  Objection.  Asked and

 8         answered, multiple times.  Form and

 9         mischaracterizes the testimony, as well as

10         the opinions in the report.

11            THE WITNESS:  I believe it's relevant

12         information for them to know about.

13            MR. GRILL:  All right.  Let's take a

14         quick break, like 5 minutes.  I've got to

15         refill my coffee, and use the bathroom and

16         then we'll come right back.

17            MS. SPENCE:  Let's go off the record.

18            THE VIDEOGRAPHER:  We are now going off

19         the record.  12:15 p.m.

20                    (Lunch break taken.)

21            THE VIDEOGRAPHER:  The time is 12:31

22         p.m.  We are back on the record.

23   BY MR. GRILL:

24      **Q.     Mr. Miller, you can still hear me, I**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 121

 1    presume?

 2         A.    Yes, sir.

 3         Q.    All right.  Just circling back to the

 4    43-or-so-odd percentage rate of juvenile false

 5    confessions that you mentioned in your report.

 6    Did you -- do you know whether -- what the age

 7    range of the juveniles were that compromised that

 8    43 percent in the study?

 9         A.    I'm sorry, I don't as we sit here.  Do

10    you know where it is in the report?  Maybe we can

11    just go look at it and it will show in there.

12    Maybe we can get the right percentage, too.

13    Because I don't know what the right percentage is.

14         Q.    Well, let's look.  Well, what we'll do,

15    because I'm going to move on here, I just want to

16    ask you a couple questions and then when we get to

17    it, if we get to it in the report, and regardless

18    of whether it's in the report, I mean the point is

19    it's something that you've mentioned here in your

20    deposition.

21              So going with that, for now, do you,

22    when you think of that statistic or that study

23    that you're talking about, do you believe that --

24    or do you have any information about what the age

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 122

1    **range was of the juveniles in that study?**

2         A.    No.

3              MS. SPENCE:  Objection.  Asked and

4         answered.

5    BY MR. GRILL:

6         **Q.    Do you have --**

7              MS. SPENCE:  And also to the extent the

8         witness asked to see the source at one point

9         during the questioning.

10             MR. GRILL:  That's not an objection.

11   BY MR. GRILL:

12        **Q.    Do you have any information about what**

13   **the -- whether there were allegations in those**

14   **alleged juvenile false confessions of police**

15   **misconduct of any sort?**

16        A.    I don't.  But just for the record, it's

17   on Page 15 of the report.

18        **Q.    Okay.**

19        A.    And it's a study of 340 wrongfully

20   convicted of people found that 42 percent of the

21   juveniles falsely confessed, compared to 13

22   percent of adults.  And it found 32 percent of

23   individuals under the age of 18.  So what I'm

24   going to say, then, for your answer is, it's going

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 123

1  to be juveniles somewhat under the age of 18.

2      Q.    Got it.  Yeah.  Thanks for pointing

3  that out, that saved me some time.  And I'm on it

4  on my draft of your report.  Thanks.

5          So of those 340 wrongfully convicted

6  people, do you have any idea what the selection

7  process was to pick those 340 people?

8      A.    I do not.  No, sir.

9      Q.    Do you know how the sample size of 340

10  people was determined?

11     A.    I'm trying to reference the article.  I

12  don't want to guess, but as I sit here, I don't

13  know that.  You know, if I may, on Page 15 it

14  says, "Over four decades the Supreme Court has

15  stated twice that pressures of custodial

16  interrogations can cause a frighteningly high

17  percentage of people to falsely confess.

18          While also noting that the risk of

19  false confessions is particularly great when the

20  person being interrogated is a juvenile."

21     Q.    That's a legal conclusion from the

22  Supreme Court, right?

23     A.    Yeah.

24          MS. SPENCE:  Objection.  Form.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 124

1  BY MR. GRILL:

2      Q.    And that's clearly something that

3  you're not supposed to be offering an opinion on

4  in your capacity as a police practices expert,

5  right?  That being legal opinions, correct?

6              MS. SPENCE:  Objection.

7              THE WITNESS:  Correct.

8  BY MR. GRILL:

9      Q.    Or legal conclusions, I should say,

10  right?

11     A.    Right.

12     Q.    So do you know who picked -- how they

13  picked the 340 people in that sample size?  What

14  the criteria were?

15     A.    I do not.

16     Q.    Do you know who picked the 340 people

17  in that sample?

18     A.    I do not.

19     Q.    Do you know why they picked 340,

20  instead of a thousand or 10,000?

21              MS. SPENCE:  Objection to this line of

22          questioning, to the extent that the witness

23          has asked to see the document and is being

24          asked questions about the document and not

Page 125

1      being shown.

2           MR. GRILL:  I'll correct you, actually,

3      because he was just reading from the study a

4      second ago, that I don't even have in front

5      of me.

6           MS. SPENCE:  I wasn't talking about the

7      report, I was talking about the footnote.

8           MR. GRILL:  I'm not referring to a

9      footnote.  I'm actually referring to the part

10     of his report that he just directed me to

11     himself.

12          MS. SPENCE:  That part of the report

13     has a footnote, Andrew, Footnote 11.  And

14     it's in quotation marks.

15          MR. GRILL:  Oh, so you're trying to

16     coach the witness, got it.

17          MS. SPENCE:  No, I'm responding to you,

18     Andrew.  That's what I'm trying to do.  I'm

19     trying to respond to what you're saying.

20     You're saying something to me, I'm

21     responding.

22 BY MR. GRILL:

23     **Q.     So let's stop and let me ask my**

24 **questions.  So, sir, do you know how it was that**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 126

 1   **they settled on a 340-person sample size and not**

 2   **some other number?**

 3           MS. SPENCE:  Objection, again, to the

 4       extent that this witness is being asked about

 5       a document that is not being shown to him.

 6   BY MR. GRILL:

 7       **Q.    Do you know how it was -- or do you**

 8   **know what the criminal background of any of the**

 9   **people in the sample size?**

10           MS. SPENCE:  Objection.  Same

11       objection.

12           THE WITNESS:  I do not.

13   BY MR. GRILL:

14       **Q.    Do you know if in any of these alleged**

15   **false confessions there were allegations that the**

16   **witness had been made -- given false promises of**

17   **leniency?**

18           MS. SPENCE:  Same objection.

19           THE WITNESS:  I do not.

20   BY MR. GRILL:

21       **Q.    If they had been told they could go**

22   **home?**

23           MS. SPENCE:  Same objection.

24           THE WITNESS:  I do not.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 127

1    BY MR. GRILL:

2         Q.    **If they were physically abused in any**

3    **way?**

4              MS. SPENCE:  Same objection.

5              THE WITNESS:  I do not.

6    BY MR. GRILL:

7         Q.    **If they were threatened with physical**

8    **violence?  Do you know if any of these allegedly**

9    **false confessing juveniles were physically**

10   **threatened?  Threatened with physical violence,**

11   **excuse me.**

12             MS. SPENCE:  Same objection.

13             THE WITNESS:  I do not.

14   BY MR. GRILL:

15        Q.    **What constitutes a wrongfully convicted**

16   **person, as you used that phrase here in Page 15 in**

17   **the section that you just drew my attention to?**

18        A.    I'm going to assume that means people

19   that were exonerated.

20        Q.    **So you don't know?**

21             MS. SPENCE:  Objection.

22        Mischaracterizes his testimony.

23             THE WITNESS:  I don't know.  No, sir.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 128

1   BY MR. GRILL:

2       Q.    **Do you have any understanding as to**

3   **what the factors were that -- other than being**

4   **exonerated, what the factors might have been to --**

5   **that went into determining that the conviction was**

6   **actually wrong?**

7           MS. SPENCE:  Objection, again, to the

8       extent that this witness is being asked about

9       a document that is not being shown to him.

10          THE WITNESS:  I do not.

11  BY MR. GRILL:

12      Q.    **Do you agree that it is possible for**

13  **people to have their convictions reversed who**

14  **actually did commit the crime that they were**

15  **originally charged with?**

16          MS. SPENCE:  Objection, form.

17          THE WITNESS:  I do not know.

18  BY MR. GRILL:

19      Q.    **Do you agree with the principle that**

20  **you can have your conviction reversed for reasons**

21  **other than innocence?**

22          MS. SPENCE:  Objection.  Form.  Calls

23      for speculation.

24          THE WITNESS:  I don't know.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 129

 1   BY MR. GRILL:

 2        Q.    **What constitutes -- what is a proven**

 3   **false confession?  You use that phrase in your**

 4   **report.  What is a proven false confession?**

 5             MS. SPENCE:  Where in the report are

 6        you referring to, Andrew?

 7             MR. GRILL:  It's in the paragraph that

 8        contains the statistic on Page 15 that he

 9        just drew my attention to.

10             MS. SPENCE:  Thanks.

11             THE WITNESS:  It's the paragraph above

12        it?  I'm sorry, sir.

13   BY MR. GRILL:

14        Q.    **So in the first little indentation, the**

15   **paragraph that starts with, "A study of 340."**

16   **Actually it's the second one, A study of 125**

17   **proven false confessions found that 32 percent**

18   **involved individuals under the age of 18.  So a**

19   **proven false confession.  What is that?**

20             MS. SPENCE:  Objection to the extent

21        that this witness is being asked to discuss a

22        document that is not being shown to him.

23             THE WITNESS:  I really, honestly, don't

24        know the answer to that, sir.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 130

1    BY MR. GRILL:

2        **Q.    You -- the statistics, according to**

3    **Footnote 11, as Spence pointed out to you,**

4    **apparently come from the International Association**

5    **of Chiefs of Police, this article that was**

6    **disclosed titled Reducing Risks, An Executive's**

7    **Guide to Effective Juvenile Interview and**

8    **Interrogation dated 2012, right?**

9        A.    Correct.

10        **Q.    I presume you reviewed that document**

11    **when you cited it to it and quoted from it here in**

12    **your report, right?**

13        A.    I would had to have.  Yes, sir.

14        **Q.    Do you recall understanding at the time**

15    **you put this information in your report what it**

16    **was that you understood the article to mean by the**

17    **phrase "proven false confession"?**

18        A.    It's a very long article.  When someone

19    says proven false confession, proven, in my mind,

20    being something that was corroborated by some

21    other evidence.

22        **Q.    Such as?**

23            MS. SPENCE:  Objection.  Form.

24            THE WITNESS:  Perhaps another person

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 131

1          comes forward and confesses to the crime and

2          says, I did it.  And then they have

3          information, they have the murder weapon and

4          says this is when I shot them.

5     BY MR. GRILL:

6          **Q.     But that's just your speculation?  You**

7     **don't know what the authors necessarily meant by**

8     **that?**

9               MS. SPENCE:  Objection.

10          Mischaracterizes the testimony.  And also,

11          again, to the extent this witness is being

12          asked to testify about a document that is not

13          being shown to him.

14               THE WITNESS:  No, sir.  You asked me

15          what I believed proven was, and then I think

16          you gave another answer.  So I can only

17          answer to what I think proven might be.

18     BY MR. GRILL:

19          **Q.     Do you believe that this statistic, 42**

20     **percent of juveniles studied had falsely**

21     **confessed, is a statistic that could be applied**

22     **nationally?  Meaning that, across the board, 42**

23     **percent of juveniles nationally that have**

24     **confessed falsely?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 132

1          MS. SPENCE:  Objection, form.  You can

2     answer if you understand the question.

3          THE WITNESS:  I believe that the study

4     in which these 340 people were wrongfully

5     convicted, it found 42 percent of juveniles

6     studied had falsely confessed.

7               But of this study -- so if you're

8     asking me nationally across America of all

9     the false confessions, I can only cite to

10    what I referenced in my report, which is this

11    study.

12 BY MR. GRILL:

13    Q.     Okay.  Did you look at any other

14 studies that maybe had an opinion different than

15 this?

16    A.     Not that I recall.

17    Q.     Where did you get this study from?

18         MS. SPENCE:  Objection to the extent --

19    don't answer that question, Mr. Miller.

20         MR. GRILL:  What's the basis of your

21    objection?

22         MS. SPENCE:  Just give me a second.

23         MR. GRILL:  Let's go off the record,

24    then.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 133

1          MS. SPENCE:  That's fine, I'm not

2     arguing.

3          MR. GRILL:  Well, because you

4     haven't --

5          MS. SPENCE:  I'm not arguing with you

6     about going off the record is what I'm

7     saying.

8          MR. GRILL:  Okay, we are off the

9     record.

10          THE VIDEOGRAPHER:  We are now going off

11     the record at 12:43 p.m.

12               (Break taken.)

13          THE VIDEOGRAPHER:  We are now going

14     back on the record at 12:43 p.m.

15          MS. SPENCE:  Objection.  The answer to

16     this question falls outside the scope of Rule

17     26.

18          MR. GRILL:  Well, that's not a basis to

19     not answer the question.

20          MS. SPENCE:  That is a basis because

21     it's privileged.  So I'm going to instruct

22     you not to answer that question.

23  BY MR. GRILL:

24     **Q.    Let me ask you directly, Mr. Miller.**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 134

1  **Did you get this report, this IACP article, from**

2  **Mr. Jakes's attorneys?**

3          MS. SPENCE:  Again, I'm going to

4      instruct you not to answer that question,

5      Mr. Miller.  It's privileged.

6          MR. GRILL:  Are you taking the advice

7      of Ms. Spence and not answering this

8      question?

9          THE WITNESS:  That's correct.

10  BY MR. GRILL:

11      **Q.    Had you ever seen this article before**

12  **you reviewed it, regardless of where you got it**

13  **from, had you ever seen this article before you**

14  **reviewed it, as part of your work to write the**

15  **report that was marked as Exhibit 3 in this case?**

16          MS. SPENCE:  I'm sorry.  Are you asking

17      has he ever seen the article --

18          MR. GRILL:  Yeah, before now.

19          MS. SPENCE:  As part of his work

20      writing the report?

21          MR. GRILL:  No, before he started

22      writing, you know, doing the work to write

23      this report.  Before he was retained.

24  BY MR. GRILL:

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 135

1      Q.      Before you were retained in this case,

2    by Plaintiff's counsel, to write the report and

3    provide expert testimony in this case, had you

4    ever seen this article that is in Footnote 11

5    before?

6      A.      100 percent absolutely.

7      Q.      Oh, okay.  So where did you see this

8    report before?

9      A.      In the International Association of

10   Chiefs of Police.

11     Q.      Yeah, I know, like think of a time

12   before you were retained in this case where you

13   saw this report.

14     A.      There have been a number of cases I've

15   worked on.  And I referenced articles all the time

16   on cases.  And in the course of being progressive

17   in law enforcement, I teach a class as well on law

18   enforcement, officer-involved shootings.  And I

19   want to be as up to date as I can be on

20   information in the course of teaching my class and

21   talking to the law enforcement people across

22   America.

23     Q.      Okay.  Was this a report that -- well,

24   here, I'm just going to do this, so then we can

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 136

 1    mark it.  This is going to be 4, I guess?  Or are

 2    we on 5?

 3              MS. SPENCE:  4.

 4    BY MR. GRILL:

 5        Q.    This is the report, it's titled,

 6    Reducing Risks, An Executive's Guide to Affective

 7    Juvenile Interview and Interrogation.  This is the

 8    IACP report that you cite in Footnote 11 of your

 9    report, right?

10        A.    Yes.

11        Q.    And was this report something that you

12    already had available to you -- or let me strike

13    that question.

14              Was this report something you already

15    had in your possession before you were retained in

16    this case?

17              MS. SPENCE:  Objection.  I'm going to

18         object to that, because I believe that it's a

19         backdoor way to get into privileged

20         information.  So I'm going to instruct you,

21         Mr. Miller, not to answer that question.

22    BY MR. GRILL:

23        Q.    Did you ever rely on this report in any

24    of your other reports that you wrote as a police

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 137

1    practices expert in any case prior to this case?

2        A.    Yes.

3        Q.    When was the last time that you cited

4    to this report?  Do you remember the case that you

5    cited to it in your report in?

6            MS. SPENCE:  Mr. Miller, I advise you

7        not to disclose any reports that you have

8        written that have not been disclosed in cases

9        to opposing counsel.

10            THE WITNESS:  I do not recall.

11   BY MR. GRILL:

12       Q.    Let's go to -- there are some

13   acknowledgments in this report.  Are you familiar

14   with this page?  Have you seen it?

15       A.    Yes, sir.

16       Q.    Right here it says, Subject Matter

17   Expertise and has the contributing authors.  And

18   it lists the subject matter experts that were

19   contributing authors and it identifies Steve

20   Drizin of the Center on Wrongful Convictions of

21   Youth at Northwestern University of School of Law

22   in Chicago, Illinois.  Do you know who Steve

23   Drizin is?

24       A.    No.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 138

1         Q.      Did you ask Plaintiff's counsel who

2    Steve Drizin is?

3              MS. SPENCE:  Objection.  I instruct you

4         not to answer.  It calls for privileged

5         information.

6    BY MR. GRILL:

7         Q.      Have you ever heard of Steve Drizin's

8    name before, until I just mentioned it to you

9    right now?

10             MS. SPENCE:  Objection to the extent

11        that it calls for privileged information.  So

12        if you can answer that question without

13        referencing any conversations that you had

14        with Plaintiff's counsel, you can go ahead

15        and answer.

16             THE WITNESS:  Never.

17   BY MR. GRILL:

18        Q.      Do you know Laura Nirider listed as

19   attorney, also at the Center for Wrongful

20   Convictions of Youth at the Northwestern

21   University School of law in Chicago, Illinois?  Do

22   you know who Laura Nirider is?

23             MS. SPENCE:  Objection, to the extent

24        it calls for you to testify about privileged

Page 139

 1      conversations.  If you can answer that

 2      question without referring to any

 3      conversations with counsel, you can go ahead

 4      and answer.

 5              THE WITNESS:  No.

 6  BY MR. GRILL:

 7      **Q.      Joshua Tepfer, Center of Wrongful**

 8  **Convictions of Youth at Northwestern University**

 9  **School of Law.  There is a pattern here.  Do you**

10  **know who Joshua Tepfer is?**

11              MS. SPENCE:  Objection, to the extent

12      it calls for privileged conversations with

13      any attorney you've worked with.  And so if

14      you can answer that question without

15      disclosing the contents of those

16      conversations you can answer.

17              THE WITNESS:  No.

18  BY MR. GRILL:

19      **Q.      And then you have this James Nawoichyk,**

20  **retired detective from Orangetown Police**

21  **Department in New York.  Do you know who that is?**

22              MS. SPENCE:  Same advice, Mr. Miller.

23      If it calls for you to disclose conversations

24      you've had with any of the attorneys that

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 140

1          have retained you, I advise you not to answer

2          that question.

3                    THE WITNESS:  No.

4    BY MR. GRILL:

5          **Q.     So, as I've just pointed out here,**

6    **three of the contributing authors to this article**

7    **that you rely on are all from the Center for**

8    **Wrongful Convictions of Youth at Northwestern,**

9    **right?  That's what the document says?**

10         A.     Yes.

11         **Q.     Did you ever have any concerns at**

12   **the -- when you were writing reports and relying**

13   **on this document, that the contributing authors**

14   **for this article all came from the same place?**

15   **Did that ever raise any concerns for you?**

16                   MS. SPENCE:  Objection.

17         Mischaracterizes the evidence -- or the

18         exhibit.

19                   THE WITNESS:  No, I reference this

20         article because I'm a member of the

21         International Association of Chiefs of Police

22         and that's where I got the information from.

23   BY MR. GRILL:

24         **Q.     Do you have any idea of what it is that**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 141

1    **Mr. Drizin, Ms. Nirider, or Mr. Tepfer do at the**

2    **Center for Wrongful Convictions of Youth at**

3    **Northwestern?**

4              MS. SPENCE:  Mr. Miller, don't answer

5         that question if it causes you to disclose

6         any conversations you've had with any

7         attorneys who have retained you.

8              THE WITNESS:  I don't.

9    BY MR. GRILL:

10        **Q.      Do you have any understanding about**

11   **whether they represent defendants in civil rights**

12   **lawsuits?**

13             MS. SPENCE:  Mr. Miller, again, do not

14        answer this question if it causes you to

15        disclose conversations you've had with any

16        attorneys who have retained you.

17             THE WITNESS:  I don't.

18   BY MR. GRILL:

19        **Q.      Do you have any understanding as to**

20   **what sorts of individuals they work on behalf of?**

21             MS. SPENCE:  Objection.  Form.  Also,

22        do not answer the question, Mr. Miller, if it

23        requires you to disclose information that

24        you've received from any attorney who has

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 142

1      retained you.

2           THE WITNESS:  I don't.

3  BY MR. GRILL:

4      Q.    Do you have any understanding about the

5  connections or working relationship between the

6  Northwestern Center on Wrongful Convictions of

7  Youth and Mr. Jakes's law firm?

8           MS. SPENCE:  I'm sorry, can you reask

9       the question, Andrew?

10  BY MR. GRILL:

11      Q.    Do you know or are you aware of whether

12  there are any connections professionally between

13  the Center on Wrongful Convictions of Youth at

14  Northwestern and the Loevy law firm that

15  represents Mr. Jakes, that Ms. Spence works for?

16           MS. SPENCE:  Objection, form.  And

17       again, Mr. Miller, do not answer the question

18       if it causes you to disclose conversations

19       you've had with any attorneys who have

20       retained you.

21           THE WITNESS:  I don't.

22  BY MR. GRILL:

23      Q.    If there were connections

24  professionally between Mr. Jakes's law firm and

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 143

1  **The Center for Wrongful Convictions of Youth,**

2  **would that be something you would want to know in**

3  **deciding whether to rely on this particular**

4  **article for purposes of your report in this case?**

5         MS. SPENCE:  Objection, form.

6         THE WITNESS:  I relied on this report

7      because the International Association of

8      Chiefs of Police put it out.

9  BY MR. GRILL:

10     **Q.    Well, do you want to look at it**

11 **critically yourself, or are you just relying on**

12 **the IACP?**

13        MS. SPENCE:  Objection.  Form.

14     Argumentative.

15        THE WITNESS:  I'm going to rely on the

16     IACP, because I think if you continue on

17     there are several other people that are

18     acknowledged in this report as well.

19 BY MR. GRILL:

20     **Q.    I'm just talking about the subject**

21 **matter expertise of the contributing authors,**

22 **these three contributing authors.**

23     A.    Once again, my research found this

24 article, not really the authors of the article,

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 144

1  but the article itself.

2      Q.     All right.  Do you have any -- if that

3  statistic that's in your report regarding the

4  study of 340 wrongfully convicted people found

5  that 42 percent of the juveniles in the study

6  falsely confessed, when you came across that

7  statistic, did that raise any concerns with you

8  that juveniles who confessed when you were in the

9  homicide unit commander, that a significant

10 percentage of them, according to this statistic

11 may have falsely confessed?

12         MS. SPENCE:  Objection.  Form.

13      Mischaracterizes the exhibit.

14         THE WITNESS:  I never experienced a

15      juvenile who I believe provided a false

16      confession.

17 BY MR. GRILL:

18      Q.     How would you decide for yourself if a

19 juvenile confessed falsely?  I'm not talking about

20 later court decisions, I'm talking about during

21 the criminal investigation, how would you decide

22 that?

23      A.     I wouldn't know that.

24      Q.     Why not?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 145

 1      A.      If a parent was present with the

 2  juvenile and/or his lawyer was present with the

 3  juvenile, and he had had a sufficient amount of

 4  sleep, and he had eaten and everything was

 5  perfect, and a juvenile came in and wanted to make

 6  a confession with all those I's dotted, I wouldn't

 7  have any reason to think that it was a false

 8  confession.

 9      **Q.      Was that the way every confession went**

10  **down in your experience, when you were the**

11  **homicide unit commander?  That they were all**

12  **perfect interviews or interrogations?**

13          MS. SPENCE:  Objection.  Form.

14          THE WITNESS:  I don't recall ever being

15      involved with something that's in the after

16      announced.  It's 10 years or 11 years removed

17      since my time at Dallas PD, and I don't

18      remember ever being involved in a false

19      confession.

20  BY MR. GRILL:

21      **Q.      Because you don't know how to tell if a**

22  **confession is actually false, right?  When you're**

23  **in the middle of the homicide investigation,**

24  **right?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 146

1          MS. SPENCE:  Objection.

2      Mischaracterizes testimony.

3          THE WITNESS:  I don't think I can

4      answer that question, sir.

5  BY MR. GRILL:

6      **Q.     Well, what other criteria do you apply,**

7  **other than to make sure that the interrogation is**

8  **perfect, to use your word, to determine whether**

9  **the confession is false or not?**

10         MS. SPENCE:  Objection.

11     Mischaracterizes his testimony.  Form.

12         THE WITNESS:  In law enforcement -- in

13     my time with the homicide unit, I'm unaware

14     of any false confessions that one of our

15     officers received.

16              And so the confessions that I

17     heard that were corroborated by additional

18     information proved to be accurate, based on

19     our conversations with the prosecutors who

20     were present.  And I just haven't experienced

21     that where someone gave what I believe was a

22     false confession, because we would have had

23     it corroborated.  And that wasn't the case.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 147

1  BY MR. GRILL:

2      Q.     **What about those confessions where**

3  **there wasn't corroboration and you're just going**

4  **on the confession itself?  There were instances,**

5  **as you told me earlier today, of that happening.**

6  **Were those false?**

7              MS. SPENCE:  Objection.

8          Mischaracterizes the testimony.  That's not

9          what he testified to.  Form.

10             THE WITNESS:  I'm sorry, sir, I'd have

11         to go back -- I'm sorry, sir, but I would

12         have to know, which did I say were not --

13         confessions did we receive that weren't

14         corroborated?  I apologize.  I'm not trying

15         to be difficult, I just don't remember that.

16  BY MR. GRILL:

17     Q.     **Okay.  You told me earlier today that**

18  **there were times where the only evidence you had**

19  **against a suspect was their confession.**

20             MS. SPENCE:  Objection.

21         Mischaracterizes the testimony.

22  BY MR. GRILL:

23     Q.     **You said that it was not the norm, but**

24  **that it did happen.**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 148

 1            MS. SPENCE:  Objection.

 2       Mischaracterizes the testimony.

 3    BY MR. GRILL:

 4       **Q.    Do you remember offering testimony like**

 5    **that earlier today?**

 6            MS. SPENCE:  Objection.

 7       Mischaracterizes testimony.

 8            THE WITNESS:  Yeah, I'm sorry.  I just

 9       don't recall what I said.

10    BY MR. GRILL:

11       **Q.    I'll ask the question again.  Sir,**

12    **Mr. Miller, did -- in your recollection, were**

13    **there any cases that you can think of when you**

14    **were working for the Dallas PD, where the only**

15    **evidence against a homicide suspect was a**

16    **confession, that's it?**

17       A.    I just don't remember any.  I feel like

18    all our confessions were corroborated by some

19    other witness account or some sort of physical

20    evidence.

21       **Q.    So is it your opinion, then, that if a**

22    **suspect's confession is not corroborated by**

23    **physical evidence, that that confession is then**

24    **false?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 149

1        MS. SPENCE:  Objection.  Form.

2     Mischaracterizes the testimony.

3        THE WITNESS:  No.

4  BY MR. GRILL:

5     **Q.    No, that is not your opinion?**

6     A.    No, I don't believe that that's the

7  case.  I believe that, obviously, I think any

8  detective in New York or Chicago or Dallas wants

9  to have some sort of corroborating evidence that

10  can confirm the confession that a person gives.

11  And then we do our due diligence to find that.

12        And I just -- I don't -- to have a

13  confession with no physical evidence or, in

14  today's world, with no videos, or no other

15  witnesses or no cell phone or anything of that

16  nature, would be difficult for me to believe that

17  we would have.

18        So a confession, I mean, obviously if

19  you have a crime, someone confesses to it, and you

20  don't have anything else, I still believe that the

21  prosecutor in our case would have wanted you to

22  get some sort of corroborating information for

23  them to go to trial on that.

24     **Q.    Would some sort of corroborating**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 150

1  information include another eyewitness's statement

2  pointing the finger at that suspect?

3       A.      It certainly could, yeah.

4       Q.      And you understand that sort of

5  evidence existed in Mr. Jakes's case in the form

6  of Gus Robinson's statement?

7            MS. SPENCE:  Objection.  Form.

8  BY MR. GRILL:

9       Q.      Right?

10      A.      Yeah, I realize a lot of things about

11 Mr. Robinson, "Snake," and the information that he

12 supplied, and that the officers relied upon.  And

13 so I think if we go through my report, I think

14 we'll talk about that.

15      Q.      We will.  But you also, since we're on

16 the topic right now, you understand that

17 Mr. Robinson has never backed off of that

18 statement?

19            MS. SPENCE:  Objection.

20 BY MR. GRILL:

21      Q.      Against Mr. Jakes.  You understand

22 that, right?

23            MS. SPENCE:  Objection.  Form.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 151

1    BY MR. GRILL:

2        Q.    **Well, let me ask you this:  Were you**

3    **provided materials that demonstrate that Mr. Gus**

4    **Robinson, also known as "Snake," has never backed**

5    **off of his identification that Mr. Jakes was one**

6    **of the people involved in killing Mr. Rafael**

7    **Garcia in September 1991?  Do you understand that?**

8            MS. SPENCE:  Objection.  Form.

9            THE WITNESS:  I think I would have to

10           go and look at his deposition.  I think there

11           is different language in his deposition to

12           that.

13   BY MR. GRILL:

14       Q.    **I'm going to represent to you, we can**

15   **show it to you later, but I'm going to represent**

16   **to you that Mr. Robinson in his deposition took 5.**

17       A.    Took what?  I'm sorry.

18       Q.    **Asserted his Fifth Amendment rights.**

19       A.    Okay.

20       Q.    **So before then, Mr. Robinson testified,**

21   **gave statements, and signed affidavits, never did**

22   **he change his story that Mr. Jakes was one of the**

23   **people involved in killing Mr. Garcia.  Were you**

24   **provided that information as part of your**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 152

1    **documents to review for this case?**

2         A.    Can we go to that page on the documents

3    and see if it's in there?

4              MS. SPENCE:  I'm also objecting to the

5         question, the form, and the representation

6         there --

7    BY MR. GRILL:

8         **Q.    I'm just asking you, do you know right**

9    **now, we'll get to it, but do you know -- if you**

10   **don't know, that's fine, but I'm asking you do you**

11   **recall reading information and realizing that**

12   **Mr. Robinson had never changed his story?**

13        A.    I don't recall that.

14             MS. SPENCE:  Objection.  Asked and

15        answered, and also form.

16   BY MR. GRILL:

17        **Q.    Did you ever -- did you have any**

18   **concerns that any of the confessions that the**

19   **Dallas PD took of juveniles during your tenure as**

20   **the unit homicide commander, that they were --**

21   **they obtained false confessions?  Was that or has**

22   **that ever been a concern of yours?**

23        A.    No, sir.

24        **Q.    So, it's your belief that all of the**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 153

1   confessions that juveniles gave to Dallas PD law

2   enforcement, detectives, investigators, between

3   2007 and 2010, were truthful confessions?  That's

4   your belief?

5           MS. SPENCE:  Objection.

6       Mischaracterizes his testimony.  Form.

7           THE WITNESS:  It is.

8   BY MR. GRILL:

9       Q.      And so therefore, you would agree,

10  then, according to your report, that the Dallas PD

11  falls clearly outside of this statistic that you

12  cite on Page 15 of your report?  They would be the

13  exception to it, right?

14          MS. SPENCE:  Objection.  Form.

15          THE WITNESS:  I can't answer that.  I'm

16      not aware of any false confessions.  If I was

17      and they were included in that range, I would

18      cite that.  I would tell you that.

19  BY MR. GRILL:

20      Q.      Were you given Gus Robinson's statement

21  to the ASA?

22      A.      Is it one of the documents that is

23  listed that I reviewed?

24      Q.      Yeah.  Let me get it for you.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 154

1      A.      Okay.

2      Q.      Can you see this?  Is it up on your

3   screen?

4      A.      I do.  Yes, sir.

5      Q.      This is the list -- this is on Page 3

6   of your report.  This is the list of documents

7   that says, paragraph 11, the document I have

8   reviewed to date are listed below.

9              If you go down to Augustus Robinson,

10  paragraph 23, deposition, and exhibits.  So you

11  got his dep and the exhibits to his dep included,

12  his statements and past testimony, the affidavits

13  and whatnot.

14             So you did review all of those

15  materials and, therefore, you would have known

16  that Mr. Robinson, up to the point of his

17  deposition, had never changed his story --

18             MS. SPENCE:  Objection, form --

19  BY MR. GRILL:

20     Q.      Pointing his finger at Mr. Jakes as

21  being involved?

22             MS. SPENCE:  Objection, form.  Asked

23        and answered --

24  BY MR. GRILL:

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 155

1    **Q.    Would you agree with that?**

2         MS. SPENCE:  Objection -- oh, my gosh.

3         MR. GRILL:  I'm sorry, I thought you

4    were done.

5         MS. SPENCE:  Objection.  Form.  Asked

6    and answered.  Especially since this witness

7    has said that he doesn't remember.

8         MR. GRILL:  Well, I'm showing it to him

9    now to refresh his recollection.

10         MS. SPENCE:  You're not showing him the

11    actual statement, you're showing him a list

12    of materials.  He is talking about the actual

13    documents.

14         THE WITNESS:  Okay.

15    BY MR. GRILL:

16    **Q.    So, when we talk about corroborating**

17    **evidence, and in this case Mr. Robinson's**

18    **statement pointing the finger at Mr. Jakes, and**

19    **then a deposition wherein Mr. Robinson asserts his**

20    **Fifth Amendment rights against self-incrimination**

21    **about what it was that he saw and possibly did in**

22    **relation to the Garcia homicide, the actual**

23    **shooting, does this, in your mind, then,**

24    **constitute evidence corroborating Mr. Jakes's**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 156

1  **statement?**

2           MS. SPENCE:  Objection.  Form.

3  BY MR. GRILL:

4      **Q.     His statement, in particular the part**

5  **where he says, I was involved.**

6      A.     I think you have to look at everything

7  in totality, sir.  And like if you look at

8  Mr. Day's statement --

9      **Q.     That's not my question.**

10          MS. SPENCE:  Let him finish.

11          THE WITNESS:  But you look at Mr. Day's

12          statements and what he says, and who he said

13          was involved.  And you look at Mr. Singh, the

14          initial witness that the patrol officer

15          responded to, and you see what they said.

16                  And when I formed my opinions in

17          this case, I looked at all the evidence.  I

18          didn't just look at one single part of it.

19          And so, as I form my opinions, I form my

20          opinions based upon all the evidence that I

21          reviewed, not just one single issue which, in

22          this case, what you are suggesting

23          Mr. Robinson said.  Because what he said

24          contradicts many things that other people

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 157

1          said.

2     BY MR. GRILL:

3          Q.     So my question was, does this

4     constitute -- Mr. Gus's statement, does that the

5     constitute or fit the definition of corroborating

6     evidence, yes or no?

7          A.     It could.

8          Q.     And does the fact that Mr. Robinson did

9     not change his story over the years, over the

10    decades, about Mr. Jakes's involvement, does that,

11    in your experience as a police officer and

12    executive within the Dallas Police Department for

13    so many years, suggest to you that Mr. -- that

14    this is maybe strong corroborative evidence of

15    Mr. Jakes's involvement?

16               MS. SPENCE:  Objection.  Form.

17               THE WITNESS:  No, I don't.  I think if

18          you look at Denise, you look at Tyrone Pitts,

19          you look at Arnold Day, you look at Quarter

20          Pounder, Cleotha, and you look at his sister

21          Tweety, I think you have to look at

22          everything in totality.

23               You have to look at the

24          independent witnesses that said it was a man

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 158

1      named Thomas, Troy who drives an IROC-Z.

2      There are a lot of people, and a lot of

3      information that you're looking at, you're

4      talking about.

5              Certainly, Gus Robinson's

6      opinion, what he said is relevant.  I'm not

7      discounting his opinion and his statements at

8      all.  I'm just looking at it in its totality.

9      He was the alleged target at one point.

10   BY MR. GRILL:

11     **Q.      So my question again is simply, does**

12   **Mr. Gus Robinson's statement constitute**

13   **corroborating evidence, yes or no?**

14             MS. SPENCE:  Objection.  Asked and

15       answered.  And he doesn't have to answer it

16       yes or no he gave you the answer.  You can

17       answer again, Mr. Miller.

18   BY MR. GRILL:

19     **Q.      I know she wants you to answer a**

20   **particular way, but I'm asking you to give --**

21             MS. SPENCE:  That's not true, I'm not

22       saying that.  I'm just saying that you

23       received an answer.  You are instructing him

24       to answer in a particular way which is

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 159

1      improper.

2   BY MR. GRILL:

3      Q.      No, it's not.

4              Yes or no, sir.  Does Mr. Gus

5   Robinson's statement -- statements, but statement

6   then, to the ASA, constitute corroborating

7   evidence?  Yes or no?

8              MS. SPENCE:  Objection.  Asked and

9         answered.  You may answer again, Mr. Miller.

10             THE WITNESS:  It constitutes -- it

11        certainly constitutes a part of the overall

12        investigation.  His statements are weighed

13        the same as the statements of Arnold Day or

14        of Denise or of Tyrone Pitts.

15                  Everyone's statements, you have

16        to weigh them all when you're conducting an

17        investigation.  Certainly they all give

18        corroborating information, you know, at the

19        time and then afterwards.  So I honestly

20        can't answer that.

21   BY MR. GRILL:

22      Q.      When you say that you got to look at

23   the totality of the circumstances, are you saying

24   that some people's statements should be believed

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 160

1  as -- more than others?

2          MS. SPENCE:  Objection.

3      Mischaracterizes his testimony.

4          THE WITNESS:  No, sir, that's not what

5      I'm saying at all.

6  BY MR. GRILL:

7      Q.      So you're saying that they all should

8  be weighed the same, right?

9      A.      It's all a part of the whole

10  investigation.  They're all equal in that, you

11  know, his statement about what he said with

12  regards to Jakes asking him to participate, you

13  certainly weigh that in what took place.

14          But then you also look at Arnold Day

15  saying that Snake was the shooter, that Gus

16  Robinson was the actual shooter in one of his

17  statements to the police.  So I think it goes back

18  and forth on all of it.

19      Q.      Right.  So, again, you would agree,

20  regardless of what you think about all this other

21  information, Mr. Gus Robinson's statement to the

22  police and to the ASA about Mr. Jakes's

23  involvement, fits the definition, regardless of

24  what you think of it, it fits the definition of

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 161

1  **corroborating evidence, right?**

2  MS. SPENCE:  Objection.  As noted by

3  your preface, you asked this question

4  multiple times and it's been answered.

5  MR. GRILL:  No, it hasn't.

6  MS. SPENCE:  You said --

7  MR. GRILL:  Stop.

8  MS. SPENCE:  Don't yell at me.  Lower

9  your voice.

10 BY MR. GRILL:

11 **Q.    It fits the definition of corroborating**

12 **evidence.  Yes or no, sir?**

13 MS. SPENCE:  Objection.  Asked and

14 answered.  You can answer the question.

15 THE WITNESS:  Yes, it does meet the

16 definition of corroborating evidence, along

17 with the statements of many other

18 witnesses --

19 BY MR. GRILL:

20 **Q.    Right.**

21 A.    -- whose information also constitutes

22 corroborating evidence.

23 **Q.    Yes.  And I'm glad you mentioned those**

24 **other witnesses.  So let's talk about a couple of**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 162

1    them.  One of them was a person named Quarter

2    Pound, which we know his real name right now is

3    Cleotha Chairse, right?

4        A.    Yes, sir.

5        Q.    Did you reviews Mr. Chairse's

6    deposition?

7        A.    I did.

8        Q.    And did you review Mr. Jakes's

9    deposition?

10       A.    I did.

11       Q.    Did you review Mr. Jakes's testimony

12   from the suppression hearings?

13       A.    I did.

14       Q.    Did you review Mr. Jakes's trial

15   testimony?

16       A.    I did.

17       Q.    Did you review Mr. Jakes's

18   post-conviction testimony?

19       A.    I did.

20       Q.    Do you recognize that Mr. Chairse does

21   is not support Mr. Jakes's version of events?  In

22   particular, as it pertains to Mr. Jakes going

23   inside and cleaning up the glass, the broken

24   glass, in Mr. Chairse's apartment?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 163

1          MS. SPENCE:  Objection.

2      Mischaracterizes the testimony and the

3      evidence.

4          THE WITNESS:  I do see that.  And more

5      importantly, I see that Mr. Chairse was never

6      spoken to as a critical witness in an

7      investigation.

8  BY MR. GRILL:

9      **Q.     And how do you believe that police --**

10 **what do you think the police should have done to**

11 **find Mr. Chairse?**

12     A.     He just lived right next to him.  It

13 wasn't hard to find him.  He -- you know, the

14 issue about the window and the window being

15 knocked out or the window being broken is in one

16 of the photographs that I saw.

17     **Q.     Yeah.  And you know that Tweety, also**

18 **known as Claudette Chairse, likewise, doesn't**

19 **support Mr. Jakes's version of events about where**

20 **he was that night, right?**

21     A.     Right --

22          MS. SPENCE:  Objection.  One second,

23      you have to pause.  Objection.  Form.

24          THE WITNESS:  And I also -- Tweety

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 164

1       wasn't talked to.

2  BY MR. GRILL:

3       Q.      **What information did you review that**

4  **suggests at all that the police had Mr. Chairse's**

5  **real name?  That they had a name other than**

6  **Quarter Pound?**

7       A.      Nothing.

8       Q.      **They didn't, right?**

9       A.      No.

10      Q.      **And, in fact, you read the trial**

11 **transcripts, right?**

12      A.      Yes.  And I find that nearly every

13 person that I read about had a nickname.

14      Q.      **Yep.**

15      A.      And I don't find that unusual at all.

16      Q.      **And so then you know that when**

17 **Detectives Kill and Boudreau went out to the scene**

18 **after talking to Mr. Jakes briefly at the police**

19 **station, they asked people if they knew who**

20 **Quarter Pound was, right?**

21              MS. SPENCE:  Objection.  Form.

22 BY MR. GRILL:

23      Q.      **Right?**

24      A.      Yes.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 165

1          Q.      And nobody knew who he was, right?

2                  MS. SPENCE:  Objection.  Form.

3      BY MR. GRILL:

4          Q.      Right?

5          A.      I don't recall that no one knew who he

6      was.  I know they talked to Denise Harris and

7      Nikita and Annette, at least they say they did.

8      Now those witnesses, depending on your account,

9      say that they were never spoken to by the police

10     and those were the three people that Jakes asked

11     for them to speak to.

12                 And so everyone has a nickname that's

13     out there.  But, you know, Jakes said that there

14     was a window that had been broken by the person

15     that they had thrown the bottles at.  And it seems

16     pretty simple, just from looking at the evidence I

17     saw, that you could see the window that is broken

18     in the photographs.

19         Q.      And Mr. Jakes didn't know Quarter

20     Pound's real name, right?

21         A.      I believe that's what he said, yes.

22         Q.      And Mr. Jakes wouldn't help the

23     officers come out and find him, even though they

24     asked him, right?  You remember that from the

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 166

1    **testimony?**

2              MS. SPENCE:  Objection, form.

3              THE WITNESS:  I know that Detective

4         Boudreau said that Jakes stayed at the

5         headquarters when they went out and did the

6         canvassing or search.  And Detective Kill

7         said that he put Jakes in the car, which

8         would seem highly unusual to me to take a

9         witness into the field with you to conduct

10        interviews.  That would be highly unusual to

11        me.

12   BY MR. GRILL:

13        **Q.     Where are you getting that part about**

14   **Detective Kill from?**

15        A.     I think if you go through my report,

16   it's listed in there.

17        **Q.     Yeah, um, right.  So do you remember**

18   **where you got that information?**

19        A.     I just would have to go back -- I mean,

20   I have a lot -- like you said, thousands of pages

21   to look at.  I don't have that right here in front

22   of me, but I'll testify to what's in my report.

23        **Q.     Okay.  Well, is it possible your**

24   **report's wrong?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 167

1            MS. SPENCE:  Objection.  Calls for

2       speculation.

3   BY MR. GRILL:

4       Q.    Is it possible that you got that fact

5   wrong?

6            MS. SPENCE:  Objection.  Calls for

7       speculation.

8            THE WITNESS:  I don't think so.

9   BY MR. GRILL:

10      Q.    You said you read the trial testimony,

11  right?

12      A.    I did.

13      Q.    Okay.  This is Detective Kill's

14  testimony, and it's from September 9th, 1993.  And

15  we are going to be on Page 190.  We're going to

16  start --

17           MS. SPENCE:  Are you marking it as an

18      exhibit?

19           MR. GRILL:  Yeah.  So this will be --

20           MS. SPENCE:  Exhibit 5.

21           MR. GRILL:  Exhibit 5.

22  BY MR. GRILL:

23      Q.    So we're going to start on Line 9, and

24  then we're going to go down to Line 19 on 191.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 168

1  And this is Detective Kill's under oath testimony

2  and this is what he testified to at the criminal

3  trial.

4           Question: "Now, after the defendant

5  related this information to you, did he have any

6  suggestions?"

7           So just to put it this into context,

8  this is when Kill and Boudreau, basically, first

9  got to the police station, talked to Duckhorn and

10 O'Riley and talked to Jakes about what Jakes told

11 Duckhorn and O'Riley.

12          And the answer is -- that Detective

13 Kill gives is, "Yes, he suggested that we go and

14 talk to Quarter Pounder.  He said that Quarter

15 Pounder was with him earlier in the day when he

16 had the fight with the three individuals and that

17 Quarter Pounder might have some knowledge of who

18 the three individuals who chased them from the

19 vicinity in the rear of his house."

20          Question:  "Now, did you ask the

21 defendant if he could go out with you and find

22 Quarter Pounder?"

23          Answer:  "Right.  We had no idea who --

24 who Quarter Pounder was or what he looked like.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 169

1    And he -- it was just a nickname.  And we wanted

2    Mr. Jakes to come with us.  And if he was out on

3    the street for Mr. Jakes to point him out because

4    he felt that between the two of them maybe they

5    could give us some information as to who the

6    offenders who shot Mr. Garcia might be.

7              He told us that he didn't want to go

8    with us because he didn't want to be seen driving

9    around in the neighborhood in a police car.

10             What did you do then," was the

11   question?

12             Answer:  "Well, at that time we said,

13   Well, would you stay here?"

14             Question:  "What did the defendant

15   say?"

16             Answer:  "He said that he would, and he

17   told us, you know, to go to 1212.  The people

18   there would know Quarter Pounder and be able to

19   tell us where we could find him."

20             So do you think the part in your report

21   that says that there is this discrepancy between

22   Kill and Boudreau's account of whether they took

23   Jakes to the scene or not, do you think that might

24   be wrong?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 170

1          MS. SPENCE:  Objection to the extent

2     that this question mischaracterizes the

3     evidence and the materials, as well as it is

4     misleading and presenting only one piece of

5     the evidence.

6          MR. GRILL:  Well, that's -- I gotta

7     say --

8          MS. SPENCE:  If you don't want me to

9     respond, don't editorialize, don't respond to

10    me.  Just ask your question.  If you don't

11    want me to respond to you, then don't do

12    that.

13         MR. GRILL:  Time out.  I'm going to be

14    calm about this, Spence.  It's not a one-way

15    street.  You don't get to do a speaking

16    objection and then threaten me and say, Hey,

17    Andrew, if you push back, then I'm going

18    to --

19         MS. SPENCE:  What's the threat?

20         MR. GRILL:  -- I'm going to keep this

21    going.

22         MS. SPENCE:  How are you being

23    threatened, Andrew?  I'm just saying you

24    complain about the dynamic --

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 171

1          MR. GRILL:  Spence, it doesn't work

2     that way.

3          MS. SPENCE:  I know, but you complain

4     about my responsive dynamic.  And I'm saying

5     if you don't want me to respond to you, then

6     you can just let me object and keep going.

7     It's not a threat, Andrew.

8          MR. GRILL:  Well, then, you need --

9          MS. SPENCE:  You use such inflammatory

10    terms.

11         MR. GRILL:  You need to be mindful of

12    the way you're objecting, Spence.  They are

13    speaking objections and they're coaching,

14    okay?

15         MS. SPENCE:  I disagree with that

16    characterization --

17         MR. GRILL:  Keep it above the belt.

18         MS. SPENCE:  -- but I understand what

19    you're saying.  I've heard you.

20         MR. GRILL:  Keep it above the belt,

21    follow the rules, and you're not going to

22    have any problem from me.  Okay?

23    BY MR. GRILL:

24         **Q.     So, again, Mr. Miller, in light of this**

Page 172

1    transcript that you said you reviewed in writing

2    your report, this makes it perfectly clear that

3    Detective Kill did not say that Mr. Jakes came out

4    to the scene, in fact, right?  You agree with

5    that?

6         MS. SPENCE:  Objection.  Form.

7      Mischaracterizes the evidence.

8    BY MR. GRILL:

9         Q.    According to this transcript.

10        A.    According to this transcript that's

11   correct, sir.  I have not, obviously, gone back to

12   my report.  I would have to go back and see where

13   I did get that information from.

14        Q.    Yeah, well, let's look at the

15   supplemental report where this comes up, too.  So,

16   we'll mark this as Exhibit 6.  And this is

17   Bates-stamped Jakes City 14.  That's the page that

18   I'm on.

19             So this document, supplemental

20   typewritten report, this second interview of sorts

21   with Mr. Jakes.  Here it is, it says -- hang on

22   here.

23             So it says -- I'm starting right here,

24   right by my hand.  It says, "He further stated

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 173

1    that Quarter Pounder might know who the people

2    were in the alley and that they, the people in the

3    alley who chased Jakes, might be the offenders.

4              The RDs then told Jakes" -- and the RDs

5    are Kill and Boudreau -- "they would like to get

6    him and Quarter Pounder together and between the

7    two of them they might be able to recall who the

8    people who chased them might be and where they

9    lived.  Jakes agreed and the RDs went to the

10   vicinity of the incident in an attempt to find

11   Quarter Pounder to assist Jakes."

12             Did I read that right?

13   A.     Yes, sir.

14   Q.     Nowhere in there does it say that they

15   brought Jakes with them, does it?

16             MS. SPENCE:  Objection, form.

17             THE WITNESS:  No, it doesn't.

18   BY MR. GRILL:

19   Q.     Okay.  So does that help you remember

20   where it was that you -- what it was that you saw

21   or read that caused you to conclude that Boudreau

22   and Kill were not telling the same story about

23   what they did with Jakes after they talked to him

24   the first time?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 174

1      A.      You know, sir, what you just read me

2   doesn't show that.  And I would just have to go

3   back to when I wrote the report, and where I got

4   the information from.  But what you just read me

5   doesn't show that.  I would agree with that.

6      **Q.      Do you -- after seeing now two**

7   **documents, sworn testimony and the supplemental**

8   **report that testimony comes from, do you think**

9   **that that statement in your report about that**

10  **discrepancy is just -- it's incorrect?  It's a**

11  **mistake?**

12          MS. SPENCE:  Objection.  Form.

13      Mischaracterizes the evidence and the record.

14          THE WITNESS:  Yes, I just -- I don't

15      know that, sir.  I just would have to go back

16      and see if there is any other information

17      that I had.

18  BY MR. GRILL:

19      **Q.      The IACP article that we've talked**

20  **about here a bit, it was written in 2012, right?**

21      A.      That is correct.

22      **Q.      Correct?**

23      A.      Correct.

24      **Q.      And going down to this first page --**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 175

1    **it's, I guess, Miller subpoena response,**

2    **Bates-stamped 913, so this is Exhibit 4.**

3              **It says right here at the top, "Why**

4    **does this issue matter to police chiefs?"  And it**

5    **says, "The juvenile interview and interrogation**

6    **landscape is undergoing an unprecedented**

7    **upheaval."**

8              **Do you have any knowledge that any of**

9    **the things cited in this report were generally**

10   **accepted practices back in 1991?**

11        A.    I believe that in 1991 -- I was a

12   lieutenant in January of 1991 in a large police

13   agency.  And I think we all knew certain facets in

14   1991 that were relevant to this article.

15             I think we all knew that keeping a

16   child, a juvenile, you know, in police custody for

17   an extended period of time was wrong.  We all knew

18   not giving a juvenile something to eat or drink

19   was wrong.  We knew that browbeating kids was

20   different than browbeating adults.

21             There were a number of things we knew

22   in 1991 that this article supports.  That's my

23   opinion of what was going on in 1991.

24        **Q.    Um-hmm, right.  So, you know, this**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 176

1  **article, right at the outset, recognizes that the**

2  **whole area of juvenile interrogations as of 2012**

3  **was changing, right?**

4     A.    Yes.

5     **Q.    So you can't then say, since it was**

6  **changing, that these were reasonably accepted**

7  **police practices that were applicable necessarily**

8  **in 1991.**

9           MS. SPENCE:  Objection.  Argumentative.

10     Form.

11  BY MR. GRILL:

12     **Q.    Right?**

13     A.    There are facets, like the data about

14  the 42 percent we talked about that would be from

15  this time period.  But the basics of doing an

16  investigation where a juvenile was involved in

17  1991 are just, once again, they're proven in this

18  article that we were doing those back then, when

19  we knew to do those.

20     **Q.    I'm talking about accepted practices**

21  **that were applicable in 1991, not what people said**

22  **20 years plus later, in hindsight.  I'm talking**

23  **about what were accepted police practices then,**

24  **right?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 177

1      A.     Yes.

2      **Q.     So this article is talking about what**

3   **the standards might or should be, according to the**

4   **Northwestern Center of Wrongful Convictions, in**

5   **2012.  So you can't tell me, right, that these**

6   **things, in this article written in 2012, were**

7   **standards that were generally -- that were**

8   **applicable to police officers, necessarily, 20**

9   **years earlier.**

10          MS. SPENCE:  Objection.  Asked and

11       answered.  Form.  Argumentative.

12          THE WITNESS:  Mr. Grill, I would have

13       no problem testifying before a jury that

14       there are certain aspects of this article

15       that were in effect in 1991, based upon my

16       experience as a commander in a major police

17       department in America.  I wouldn't have any

18       problem saying that to a jury.

19   BY MR. GRILL:

20      **Q.     When did the IACP get formed?**

21      A.     I don't know the year of its inception.

22   I think maybe it's on its masthead up there.  I'm

23   not 100 percent sure.

24      **Q.     Did it exist in 1991?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 178

1          A.     I'm going to assume that it did, but I

2     honestly couldn't tell you, sir.

3          Q.     **Why not cite something from 1991 from**

4     **the IACP about the standards that should be --**

5     **that police officers and detectives interrogating**

6     **juveniles should be following?**

7          A.     I cited a number of articles in my

8     report that were prior to 1991.

9          Q.     **I know, but I'm talking about -- I'm**

10    **asking you why didn't you cite something from the**

11    **IACP on this topic from 1991?**

12         A.     I think I can cite whatever reference

13    that I think that is a credible and reasonable

14    reference and the time period that I like to.

15         Q.     **You can.**

16         A.     And so -- and if you go through my

17    report, which I hope we get a chance to do, that

18    when we go through you'll see that I cite a number

19    of references from that time period.  This was

20    just one of many that I cited in my report.

21         Q.     **You cite this article vastly more than**

22    **anything else in your report, okay?**

23         A.     Okay.

24         Q.     **And so I'm asking, why this, from 2012,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 179

1   as opposed to something else from the IACP,

2   specifically, that was making recommendations

3   about reasonable interrogation techniques and

4   standards to be applied to juvenile interrogations

5   from 1991 or closer in time then?

6              MS. SPENCE:  Objection.  Asked and

7         answered.

8   BY MR. GRILL:

9        Q.    Did you look?

10             MS. SPENCE:  Objection.  Asked and

11        answered.  Also, I'm going to instruct you

12        not to -- not to answer the question as to

13        what resources you looked at in drafting this

14        report.

15  BY MR. GRILL:

16       Q.    I'm not asking for what you looked --

17  did you bother to look to see if the IACP had

18  something from 1991?

19             MS. SPENCE:  That's exactly what I'm

20        objecting to.  I'm instructing you not to

21        answer the question as to what resources you

22        looked at or looked for when drafting this

23        report.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 180

1    BY MR. GRILL:

2        **Q.    Let me ask it this way:  Is it fair to**

3    **say that you did not cite anything from the IACP**

4    **from 1991?  Or review anything from the IACP**

5    **written in 1991 or closer in time regarding**

6    **juvenile interviews or interrogations?**

7            MS. SPENCE:  Again, I'm going to object

8        to the part of your question when you're

9        asking about what was your view when drafting

10       this report.  I am not objecting to the part

11       of your question about what was cited.

12   BY MR. GRILL:

13       **Q.    You didn't cite anything from that time**

14   **period, right?**

15           MS. SPENCE:  Objection.  Document

16       speaks for itself.  You can answer.

17           THE WITNESS:  I did cite other articles

18       prior to 1991.  I just -- I'm sorry.  I don't

19       recall if I looked at any IACP article from

20       then.  I just honestly don't recall that.

21               I know that when I write my

22       reports I understand the relevance of the

23       time.  And I know exactly what you're trying

24       to suggest, sir, and I appreciate that.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 181

1              But I cite a number of things in

2        here, and the things that I reference in this

3        article from 2012 I believe were generally

4        accepted practices in 1991, even though the

5        article wasn't written until 2012.

6   BY MR. GRILL:

7        Q.    You don't offer that opinion, that

8   these were generally accepted police practices in

9   1991 in your report, right?

10             MS. SPENCE:  Objection.

11        Mischaracterizes the exhibit.

12  BY MR. GRILL:

13       Q.    You don't.  I'm going to represent that

14  to you, okay?

15       A.    Yeah.

16             MS. SPENCE:  Objection.

17        Mischaracterizes the exhibit.

18  BY MR. GRILL:

19       Q.    All right.  You agree that homicide

20  detectives are responsible for collecting facts

21  and evidence pertaining to a homicide case, right?

22       A.    Absolutely.

23       Q.    And you agree that homicide detectives

24  conduct interviews with potential witnesses and

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 182

1   suspects, right?

2       A.      Yes, sir.

3       Q.      Homicide detectives review records,

4   right?

5       A.      Yes, sir.

6       Q.      They participate in arresting suspects,

7   right?

8       A.      Yes.

9       Q.      You agree that homicide detectives in

10  Chicago, for example, everywhere really, are

11  tasked with submitting the evidence that they

12  collect in a homicide investigation to the state's

13  attorney's office to be reviewed, right?

14      A.      Yes, sir.

15      Q.      And if the state's attorney's office

16  then reviews that evidence and decides whether

17  there's enough to bring a charge, for whatever the

18  felony crime is in Chicago, against that suspect,

19  right?

20      A.      Yes, sir.

21      Q.      So you recognize that the detectives

22  are not the ones, at least in Chicago, who make

23  the determination about whether there is probable

24  cause to charge a person with a felony, right?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 183

1          MS. SPENCE:  Objection.  Form.

2          THE WITNESS:  I know Mr. Grossman was

3     involved in this one.

4  BY MR. GRILL:

5     Q.     **You understand that that's how it's**

6  **done, at least in Cook County, with the Chicago**

7  **Police Department and Cook County State's**

8  **Attorney's Office, right?**

9     A.     Yes, sir.

10         MS. SPENCE:  Objection.  Form.

11    Foundation.

12  BY MR. GRILL:

13    Q.     **And you agree, then, that the standard**

14  **of probable cause that needs to be met in order to**

15  **bring a charge like a homicide charge, a murder**

16  **charge, against the suspect is a standard that is**

17  **much lower than beyond a reasonable doubt, right?**

18    A.     I'm sorry.  You would have to explain

19  that to me, sir.

20    Q.     **The probable cause standard that the**

21  **state's attorney's office needs to believe exists**

22  **in order to bring a homicide charge, is a legal**

23  **burden, a standard of proof that is less than**

24  **beyond a reasonable doubt, which is a standard**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 184

1   that a jury needs to believe is met in order to

2   convict somebody in a court of law, correct?

3              MS. SPENCE:  Objection.  Foundation.

4              THE WITNESS:  Yes.

5   BY MR. GRILL:

6        Q.    Right.  And in either case, beyond a

7   reasonable doubt does not mean 100 percent

8   certainty, right?

9              MS. SPENCE:  In which case?

10  BY MR. GRILL:

11       Q.    In a trial.  The standard, beyond a

12  reasonable doubt, is not equivalent with 100

13  percent certainty.  That is not the standard that

14  a jury needs to reach or believe has been

15  established by the evidence in order to convict

16  somebody, right?

17       A.    Yes, sir.

18       Q.    Yeah.  And so the probable cause

19  standard, it follows then, is even lower.  That

20  the state of the evidence does not need to prove,

21  at that point, to any -- to a hundred degree level

22  of certainty that the person that is getting

23  charged with, in this case a homicide, actually

24  did it, right?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 185

1          MS. SPENCE:  Objection.  Form.

2          THE WITNESS:  Okay.

3    BY MR. GRILL:

4       Q.     You agree with that?

5       A.     Yes, sir.

6       Q.     And if something -- would you agree

7    that if something was true, that means that you

8    can say that with 100 percent certainty that's the

9    case.  That's true, versus something that's not

10   true, right?

11         MS. SPENCE:  Objection, form.

12         THE WITNESS:  If you believe something

13      is factually true and you can prove that it's

14      true, yeah, then it's true.

15   BY MR. GRILL:

16      Q.     So police, given that they're not even

17   the ones making the determination as to whether

18   there is probable cause to charge somebody --

19      A.     I do think police make a determination

20   whether there's probable cause --

21      Q.     I'm not finished with my question.

22      A.     Okay.  I'm sorry.

23      Q.     Since you agree that police do not make

24   the decision, the probable cause decision, when it

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 186

1     **comes to deciding whether to charge somebody with**

2     **a homicide, because that's left up to the state's**

3     **attorney's office, you agree, then, that police**

4     **are not tasked with the responsibility for making**

5     **the determination during their investigation about**

6     **what is true and what is not, right?**

7                    MS. SPENCE:  Objection.  Form.

8          Foundation.  Mischaracterizes the testimony.

9     BY MR. GRILL:

10         **Q.     That is not the responsibility of a**

11    **homicide detective.**

12                   MS. SPENCE:  Objection.  Form.

13         Foundation.  Mischaracterizes testimony.

14                   THE WITNESS:  Is it fair to say that

15         it's the responsibility of the homicide

16         detective to conduct a thorough investigation

17         and consider all the evidence before they

18         make a charge against someone?

19                        In this case, we know ASA

20         Grossman was involved in the 4:00 o'clock

21         confession statement that he took, which I

22         think fulfills the requirement that you're

23         suggesting and I understand that.  I think in

24         my report what I talk about is the things

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 187

1       that took place to 4:00 a.m. in that morning,

2       from when he was first taken in at about noon

3       on the 16th, until then.

4              There's more information than

5       just that.  So -- but I do think that police

6       have a responsibility to meet a probable

7       cause threshold.  So I'm not sure if I'm

8       agreeing with you or disagreeing with you.

9              I mean, the police are not going

10      to submit a case against a person, unless

11      they think that person has committed that

12      crime.  So I think that establishes probable

13      cause.

14  BY MR. GRILL:

15      Q.    **Right.  That's not my question, though.**

16  **That's okay.  Let's try it again.  So you**

17  **mentioned a minute ago -- I'll just kind of back**

18  **it up just a teeny bit here.  You mentioned at the**

19  **beginning of your answer here, that the police**

20  **make the decision to bring a charge against**

21  **somebody.  Well, that's incorrect, the state's**

22  **attorney, as you already recognized, is the one**

23  **who makes that decision, at least in Cook County,**

24  **right?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 188

1           A.      Okay.

2                   MS. SPENCE:  Objection.

3           Mischaracterizes the testimony.

4      BY MR. GRILL:

5           Q.      **And regardless of what the officer's**

6      **belief about the evidence might be or needs to be**

7      **in your opinion, before they submit that evidence**

8      **to the state's attorney's office, you do agree**

9      **that during the investigation it is not the**

10     **detective's responsibility to start calling balls**

11     **and strikes about who is telling the truth and who**

12     **is not.  That's for a jury to decide, right?**

13          A.      That is correct.

14                  MS. SPENCE:  Objection, form.

15     BY MR. GRILL:

16          Q.      **Yeah.  And so that is why the**

17     **detective's responsibility in a homicide**

18     **investigation is, as you already said, to collect**

19     **the evidence and report that evidence back to the**

20     **state's attorney and let the state's attorney**

21     **decide whether or not there is enough to charge**

22     **somebody, correct?**

23                  MS. SPENCE:  Objection.  Form.

24          Foundation.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 189

 1              THE WITNESS:  Yes.  Correct.

 2  BY MR. GRILL:

 3       Q.     And, in fact, you've pointed that out

 4  several times here today in your answers about how

 5  in Dallas sometimes the state's attorney's office

 6  would tell you, No, we need more.  Go back.  I

 7  need more evidence before I can bring the charge.

 8  Right?

 9       A.     Correct.

10       Q.     Okay.  You understand that the law does

11  not require the police to perform a perfect

12  investigation, right?

13              MS. SPENCE:  Objection, form.

14              THE WITNESS:  Correct.

15  BY MR. GRILL:

16       Q.     So when you say that the police are

17  required to conduct a thorough investigation, that

18  is not equivalent with a perfect investigation,

19  right?

20       A.     Yes.  If there's rocks that need to be

21  turned over, it's the police department's -- those

22  homicide detective's responsibility to turn over

23  the rocks.

24       Q.     Well.  When you say need to be turned

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 190

1      over, I would suggest that the more accurate way

2      to say that is rocks that can be turned over,

3      right?

4              A.      Yeah.

5                      MS. SPENCE:  Objection, form.

6                      THE WITNESS:  If there is -- a perfect

7              example in this case would be Darren.  This

8              person named Darren, this third person

9              referred to as Darren; referred to as Homies.

10             He's an essential part of this.  He's

11             allegedly standing 5 feet or less away from

12             the shooting when it takes place.

13                      But I don't see any effort at all

14             made to determine who Darren is.  But yet

15             he's a critical part of this.  That's a rock

16             that needs to be turned over.  We need to

17             find Darren.  It can't be that difficult.

18     BY MR. GRILL:

19             Q.      Well, what evidence did you review that

20     suggests that the police had any more identifying

21     information for Darren, other than the first name

22     of Darren?

23                     MS. SPENCE:  Objection.  Form.

24             Mischaracterizes testimony.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 191

1          THE WITNESS:  I believe in witness

2      accounts there are people called Darren, I

3      don't know his last name, that were there.

4      But, I mean, this is the sort of thing where,

5      you know, Mr. Singh, who wasn't talked to,

6      could have been shown a photo array of

7      people -- if you narrowed down the Darren,

8      who it could be.

9              Because to find Darren is really

10      essential to this because everyone said

11      there's a third person.  So we need to find

12      out who this person is and I don't believe,

13      with the information they had, and the number

14      of witnesses that were available, that they

15      couldn't have found that.

16  BY MR. GRILL:

17      Q.    Okay.  A couple things.  Mr. Singh was

18  talked to.  You understand that, right?

19      A.    Yes.  But he wasn't shown a lineup, a

20  photo array of anybody.

21      Q.    Okay, but how are you supposed to

22  show --

23      A.    Those were officers that talked to

24  Singh.  I don't believe the detectives talked to

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 192

1    Singh.

2        Q.    Let me back up here.  Is it your

3    opinion that the police, in any homicide -- strike

4    that.

5            Is it your opinion that it is the

6    expected police practice, reasonable police

7    practice, would be -- would include a

8    responsibility on the part of the homicide

9    detective to run every Darren within a certain

10   mile radius that they can find, or track down

11   every Darren within a certain mile radius of a

12   homicide scene, in order to find that person?

13           MS. SPENCE:  Objection.  Form.

14       Argumentative.

15           THE WITNESS:  I think this goes back to

16       the example with the yellow car we talked

17       about earlier --

18   BY MR. GRILL:

19       Q.    Yeah, I think it does.

20       A.    -- every yellow car in Dallas.  But I

21   think we've got to do some due diligence to try

22   and determine who Darren is.  And I just didn't

23   see, in my review of these detectives, Detective

24   Kill's and Boudreau's investigation, that they put

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 193

1   a whole lot of effort into trying to determine.

2          It appears to me that once

3   Mr. Robinson -- we've got this person, Thomas,

4   we've got the I-ROC Z, we've got other options.

5   We've got different things going on.  We're not

6   talking to people.  But once Gus Robinson

7   establishes that Mr. Jakes was the lookout or the

8   good eye on this, now we're turning our turrets

9   towards Mr. Jakes.  And that's reasonable.  That's

10  a reasonable part of the investigation.

11         But there is still an ongoing

12  investigation that has got to take place because

13  there are other parts of this.  When you start

14  talking to Mr. Day and you start finding out, you

15  know, the versions that he tells of the story and

16  ultimately his final version is that no one was

17  there, he was the only one that was involved in

18  the murder.

19         Now, you've got other things you've got

20  to consider.  And all this plays into this because

21  a homicide is, like I said, a burglary of a

22  coin-operated machine.  We're talking about

23  someone's life that you're taking away here.  And

24  this is real important to make sure that it's done

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 194

1    the right way.  So why not just take a step back

2    and do it the right way?

3            To me it seemed like everybody was in

4    too big a hurry.  We don't have to get to this

5    point.  We wheel to get the deal done, but we

6    didn't do some things we needed to do.  Let's just

7    back up and do the things we need to do.

8        **Q.    Yeah.  So whether they were in too big**

9    **of a hurry, that's a conclusion that is for the**

10    **jury to decide, right?**

11        A.    Yes, sir.

12            MS. SPENCE:  Objection to form.

13    BY MR. GRILL:

14        **Q.    Yeah, you don't have any basis to say**

15    **that, right?**

16            MS. SPENCE:  Objection.

17            THE WITNESS:  I do.

18    BY MR. GRILL:

19        **Q.    You don't intend to offer that**

20    **testimony at trial, right?**

21            MS. SPENCE:  Objection.  Form.

22            THE WITNESS:  I intend to offer the

23        testimony that's in my report at trial.

24    BY MR. GRILL:

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 195

1      Q.      Did you believe -- do you believe that
2  Darren was going to offer exculpatory evidence for
3  Mr. Jakes?
4      A.      I don't know what Darren was going to
5  say.  He was just a person that needed to be
6  spoken with.
7      Q.      You said that he's central to all of
8  this.  Do you think he had something to say that
9  was exculpatory to Mr. Jakes?
10              MS. SPENCE:  Objection.  Form.
11 BY MR. GRILL:
12     Q.      You know what I mean by exculpatory?
13 Do you know what exculpatory evidence is?
14     A.      I don't think that he was going to
15 exclude something or add something that -- I don't
16 know that.
17     Q.      Okay.
18     A.      But I know he is an essential part of
19 this, because he was supposedly, based upon Gus
20 Robinson's perspective, or Gus Robinson's
21 statement, he was right there.  He's in the middle
22 of this thing.  So he could have proven one way or
23 another whether Mr. Jakes was there or not.
24     Q.      So I want to keep this focused on

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 196

1    police practices and what the reasonably accepted

2    standards are that police are supposed to follow

3    in 1991, in particular.

4           A.    Okay.

5           Q.    And so you would agree that the first

6    time Darren's name comes up is in Mr. Jakes's

7    statement, right?

8           A.    Doesn't Gus -- I think when they talked

9    to Snake, Snake -- Mr. Robinson -- is the one that

10   says that Darren -- that Little A and Jakes and

11   this third person who I don't know if he referred

12   to him as Darren or he referred to him as Homie,

13   but there is a third person there.

14                And so I think that Robinson is the one

15   that supplies that first information.  Then they

16   go back with that information at that 10:30

17   interview when they talk to Jakes at that time,

18   for the second time, and ask him, Hey, what about

19   this guy?

20          Q.    Do you have an understanding as to what

21   the responsibility, according to the United States

22   Supreme Court, what the responsibilities of the

23   police to continue investigating a homicide, in

24   this case, are once there is probable cause to

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 197

1    **arrest somebody for that homicide?**

2              MS. SPENCE:  Objection.  Form.

3         Foundation.

4              THE WITNESS:  Again, I'm not supposed

5         to cite case law as an expert.

6    BY MR. GRILL:

7         **Q.    I'm just asking if you understand what**

8    **the Supreme Court says are the standards that**

9    **apply that the U.S. Supreme Court recognizes are**

10   **regarding an officer or homicide detective's**

11   **responsibility to continue to investigate a**

12   **homicide once there is probable cause to charge**

13   **somebody with that murder.  Do you know what they**

14   **are?**

15             MS. SPENCE:  Objection.  Form.

16        Foundation.

17             THE WITNESS:  I'm sure that I do, but I

18        couldn't cite them to you right now.

19   BY MR. GRILL:

20        **Q.    So we, at the beginning of this**

21   **deposition, started kind of talking about what,**

22   **like, the scope of police practices expert**

23   **testimony should be.  And, in fact, these would be**

24   **the standards I would say would apply to all**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 198

1  experts and you agreed that your testimony is

2  supposed to be helpful to the jury, right?

3       A.    Yes, sir.

4       Q.    And that you're not supposed to

5  speculate right?

6       A.    Correct.

7       Q.    And that you're not supposed to draw

8  conclusions on ultimate issues in this case,

9  that's for the jury to decide, right?

10       A.    Yes, sir.

11            MS. SPENCE:  Objection, misstates the

12       standard.

13  BY MR. GRILL:

14       Q.    And you are not supposed to make

15  credibility determinations in this case, right?

16  You are not supposed to offer opinions like that?

17       A.    No, sir.

18       Q.    And so, an example of a credibility

19  determination you agree would be, for example,

20  suggesting to the trier of fact that a particular

21  account of events offered by a witness should be

22  credited or believed over a different witness's

23  account.  You would agree that is an example of a

24  credibility determination, right?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 199

1      A.      Yes.  I believe that the jury's

2   responsibility is that if during the course of my

3   questioning, I can -- I can talk about if this

4   were to happen this way, this is why this is right

5   or wrong.  Or if this is to happen this way, this

6   is why this is right or wrong.

7      **Q.      Examples of ultimate issues in this**

8   **case that is for the jury to decide, that you're**

9   **not supposed to, therefore, offer opinions on.**

10  **Those examples of that would include whether**

11  **Jakes's confession was truthful.  We already**

12  **covered that one.  You agreed with that, right?**

13     A.      Yes, sir.

14     **Q.      You're not supposed to offer opinions**

15  **about whether Jakes's account of his interactions**

16  **with the police was truthful, right?**

17     A.      That's correct.

18     **Q.      And what I mean by truthful also is**

19  **that it should be believed over somebody else's**

20  **account, right?**

21           MS. SPENCE:  Objection, form.

22           THE WITNESS:  I am merely there that if

23        the jury -- if it goes one way or the other,

24        I can talk about, if it was to have happened

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 200

1   the way Mr. Jakes said, this is what would

2   have been right or wrong.

3       Or if it were to have happened

4   the way the detective would have said, I can

5   say this is why it would have been right or

6   wrong to go that direction.

7 BY MR. GRILL:

8   **Q.  You're not supposed to offer any**

9 **opinions about whether Gus Robinson's statement to**

10 **the police or the ASA was truthful, right?**

11   A.  No, sir.

12   **Q.  You're not supposed to offer any**

13 **opinions whether Day's statement to the police or**

14 **the ASA was truthful, right?**

15   A.  No, sir.

16   **Q.  You're not supposed to offer any**

17 **opinion about whether any witness's statement to**

18 **the police was truthful or not, right?**

19   A.  That's correct.

20   **Q.  You're not going to offer, nor should**

21 **you offer any opinions about whether the police**

22 **officers' account of their investigation set forth**

23 **in their reports is, indeed, accurate, right?**

24   A.  Only if it comes up again that if they

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 201

1  believe this side or this direction, this is why

2  what they did was right or wrong, or this is why

3  what they did was right or wrong.

4      **Q.    Right.  That's a comment on, like,**

5  **whether it conformed with accepted police**

6  **practices.  I'm saying that you are not -- you**

7  **agree you are not allowed to offer any opinions**

8  **about whether the actual facts, the actual**

9  **information that they put in their reports,**

10 **whether handwritten or typed, is truthful or not,**

11 **right?**

12     A.    Yes, sir.

13     **Q.    Okay.  You're not going to, nor should**

14 **you, offer any opinions about whether the police**

15 **actually conducted a thorough investigation,**

16 **right?**

17         MS. SPENCE:  Objection.  Form.  And

18     mischaracterizes the standard.

19         THE WITNESS:  I apologize.  I wrote

20     some opinions in here, and I guess I'm kind

21     of getting a little bit confused, because I

22     don't want to -- I want to opine about the

23     things that I gave opinions on.  And I'm not

24     sure if some of the stuff that you're

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 202

1          mentioning is not areas that I gave opinions

2          on.  So I'm not trying to be contradictory.

3     BY MR. GRILL:

4          **Q.     Well, you've already, just a moment**

5     **ago, talked about or mentioned that you believe**

6     **that the police had a -- it's your opinion that**

7     **the police had an obligation to conduct a thorough**

8     **investigation.  I understand that statement.**

9          A.     Yes, sir.

10         **Q.     To a point.  I'm not necessarily**

11    **agreeing with how you said it, but using your**

12    **phraseology, I'm asking, whether -- or I'm asking**

13    **that you would agree with me that you are not**

14    **supposed to offer any opinions to the jury about**

15    **whether the police did indeed or did not actually**

16    **conduct a thorough investigation.  You would agree**

17    **with that, right?**

18              MS. SPENCE:  Objection.

19         Mischaracterizes the standard.  Form.

20              THE WITNESS:  Yep.

21    BY MR. GRILL:

22         **Q.     Is that a yes?**

23         A.     Yes.

24         **Q.     You are not supposed to, nor will you,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 203

1   offer any opinions about whether the police

2   coerced Mr. Jakes to confess, right?  That's for

3   the jury to decide?

4           MS. SPENCE:  Form.  Mischaracterizes

5       the standard.

6           THE WITNESS:  Yes, sir.  That's

7       correct.

8   BY MR. GRILL:

9       Q.    You are not going to, nor are you

10  supposed to, offer any opinions whether the police

11  actually physically abused Mr. Jakes, right?

12      A.    Yes, sir.

13      Q.    You're not going to offer any opinions,

14  nor should you, offer any opinions about whether

15  the police actually threatened Mr. Jakes, right?

16          MS. SPENCE:  When you say actually, I'm

17      clarifying for my objection.  When you say

18      actually --

19          MR. GRILL:  That it actually happened.

20          MS. SPENCE:  -- as in that it actually

21      happened.

22          MR. GRILL:  Yeah.

23          THE WITNESS:  That is correct.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 204

1  BY MR. GRILL:

2      Q.    Yep.  And you're not going to offer any

3  opinions, nor should you, that the police actually

4  promised Mr. Jakes that he could go home?

5      A.    That was -- correct.  Correct.

6      Q.    You are not going to offer, you'd

7  agree, nor should you, offer any opinions about

8  whether any detective or investigator in this case

9  had tunnel vision?

10          MS. SPENCE:  Objection.

11          Mischaracterizes the standard.  Form.

12          THE WITNESS:  I think, if I can, sir,

13          in my report on Page 16 is my first opinion.

14          And my opinion is, Mr. Jakes's seizure and

15          search were not reasonable on September 16th,

16          1991.  And I expound on that.

17                And then if you go to Page 18, my

18          opinion two, "Detectives used procedures that

19          increased the risk of reliability of

20          involuntary confession of juveniles."  And

21          then if you go to Page 26, opinion three.

22          "Detectives failed to conduct a complete and

23          thorough criminal investigation."

24                Those are going to be the things

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 205

1        that, in my report, that I'm going to opine

2        to the jury about in this case.  And during

3        the course of my report I write certain

4        things in there that I have opinions about.

5                        And I will testify to the things

6        that I opine about.  I understand the

7        questions that you're asking, so I'm trying

8        not to be contradictory.  And I'm not trying

9        to be argumentative.  I want to be fair to my

10       report and fair to the answers that you're

11       asking me.

12   BY MR. GRILL:

13       Q.      **Right.  And I want to be fair to what**

14   **the scope of what an expert's testimony under the**

15   **federal rules allow it to be.**

16       A.      Yes, sir.

17       Q.      **So I'm asking you whether you agree, so**

18   **far you have, about where some of these boundaries**

19   **are.  Okay?**

20               **And the last one that I asked you that**

21   **I need you to still answer for me, is whether you**

22   **agree that you are not permitted, under the rules,**

23   **to offer an opinion that any detective had tunnel**

24   **vision in this case.  That is a jury question,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 206

1    **right?**

2                MS. SPENCE:  Objection.

3          Mischaracterizes the standard.  Form.

4                THE WITNESS:  In my report I talk, I

5          think extensively, about the concept of

6          tunnel vision and how the information was

7          focused, once Mr. Robinson supplied Jakes's

8          name as having been the lookout, the good

9          eye, for this, that the investigation turned

10         to him in respect, away from any other

11         possible suspects.

12                      But when you say as far as what

13         the rules are, I mean, I'm going to agree

14         with you on the rules that you're reading,

15         because they're the law.  Yes, sir.

16   BY MR. GRILL:

17       **Q.    I'm asking if you agree that you are**

18   **not allowed to offer an opinion that any officer**

19   **in this case had tunnel vision.**

20                MS. SPENCE:  Objection.

21          Mischaracterizes the standard.  Asked and

22          answered.  Form.

23                THE WITNESS:  Yes, sir.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 207

1  BY MR. GRILL:

2       **Q.     Because that is something about the**

3  **officer's state of mind, which you, nor would**

4  **anybody for that matter, know anything about,**

5  **right?**

6            MS. SPENCE:  Objection.  Foundation.

7            THE WITNESS:  Yes, sir.  You're

8       correct.  I think if during my testimony the

9       concept of tunnel vision comes out, it will

10       be tunnel vision in a general context about

11       focusing attention on one person, as opposed

12       to another person.  But as you suggest, it's

13       not these detectives that did this.

14  BY MR. GRILL:

15       **Q.     You have no idea whether any of the**

16  **detectives in this case had tunnel vision, right?**

17       A.     Correct.

18       **Q.     Yeah.  You will not, nor should you,**

19  **offer any opinions about whether any detective in**

20  **this case targeted Mr. Jakes, right?  That's a**

21  **conclusion for the jury or an inference for the**

22  **jury to draw, right?**

23            MS. SPENCE:  Objection.  Misstates the

24       standard.  Form.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 208

1          THE WITNESS:  Yes, sir.

2  BY MR. GRILL:

3     **Q.    You're not going to offer any opinion**

4  **or testimony about whether the police had**

5  **preconceived notions of who was involved in the**

6  **homicide, right?**

7          MS. SPENCE:  Objection, form.

8  BY MR. GRILL:

9     **Q.    Again, that goes to the officer's state**

10  **of mind, which you, nor I, or anybody would know**

11  **anything about, right?**

12     A.    Correct.

13     **Q.    And there is no evidence in the record**

14  **that you reviewed that says the detectives had a**

15  **preconceived notion that Mr. Jakes was the one**

16  **that killed Mr. Garcia or participated in killing**

17  **him, right?**

18     A.    Yes, sir.

19     **Q.    You are not going to, nor should you,**

20  **offer any opinion at trial about whether the**

21  **investigation that was conducted into Mr. Garcia's**

22  **murder was designed to learn the truth or about**

23  **who killed him?**

24          MS. SPENCE:  Objection.  Form.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 209

1      Misstates the standard.

2            THE WITNESS:  No, sir.  I will not.

3  BY MR. GRILL:

4      **Q.    Okay.  Regarding speculation, examples**

5  **of that that you're not supposed to do as an**

6  **expert include offering opinions about what a**

7  **witness's motivation might have been to say**

8  **something, for example, to the police, right?**

9            MS. SPENCE:  Objection.  Form.

10 BY MR. GRILL:

11     **Q.    Again, it goes to that witness's state**

12 **of mind, right?**

13     A.    Sure.

14           MS. SPENCE:  Andrew, can we take break

15     for a minute?

16           MR. GRILL:  Yeah, I got one more

17     question and then we can take a break.

18 BY MR. GRILL:

19     **Q.    Another example of speculation that you**

20 **are required to avoid is offering opinions about**

21 **any witness's state of mind, right?  You agree,**

22 **you're not supposed to do that, nor would you?**

23           MS. SPENCE:  Objection.  Form.

24     Misstates the standard.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 210

1                THE WITNESS:  Correct.

2    BY MR. GRILL:

3        Q.     **Actually, I lied.  One more question.**

4    **When it comes to testimony that's helpful to a**

5    **jury, you would agree that testimony about topics**

6    **that are within the common sense of a juror are**

7    **things that you don't need an expert to explain.**

8    **It's not going to be helpful.  You would agree**

9    **with that?**

10                MS. SPENCE:  Objection, form.

11                THE WITNESS:  Yeah.  You don't need an

12           expert if it's common sense.  The stuff I'm

13           going to be discussing in my testimony won't

14           be common sense.

15    BY MR. GRILL:

16        Q.     **Would you agree that it's common sense**

17    **that --**

18                MS. SPENCE:  Is this it, Andrew?

19    BY MR. GRILL:

20        Q.     **Hang on.  -- that beating a suspect in**

21    **a homicide investigation into confessing is**

22    **something that is within the common sense of the**

23    **jury to know that it is totally not appropriate?**

24                MS. SPENCE:  Objection.  Form.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 211

1      Foundation.  Calls for speculation.

2    BY MR. GRILL:

3      **Q.     You agree that that's pretty common**

4    **sense, right?**

5           MS. SPENCE:  Misstates the standard.

6           THE WITNESS:  I think that the jury

7      needs an expert to explain to them certain

8      aspects of law enforcement.  And I believe

9      that that's what I'm going -- that's what I'm

10     hired to do.

11             And in doing that, you know, when

12     it comes to physical abuse, or I forget how

13     you explained it, beating someone, there is a

14     reason why things happen.  And I don't think

15     it's just common sense.  I think that it's

16     out of the norm.  And I think it's important

17     for someone like myself to be able to explain

18     that to the jurors.

19           MS. SPENCE:  Can we take a break,

20     Andrew?

21           MR. GRILL:  Yeah, but I'm going to

22     finish this line.  I'm almost done.

23    BY MR. GRILL:

24     **Q.     So let me just rephrase it like this,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 212

1    Mr. Miller:  Your job, as we've noted a couple

2    times here today, is to talk about whether in

3    testifying offer opinions about whether what the

4    police did in this case conformed with accepted

5    police standards of practices, right?  We agreed

6    with that?

7         A.    Correct.

8         Q.    So don't you agree that it is common

9    sense that beating a witness into confession,

10   physically beating them into confessing to a

11   crime, whether they did it or not, is within the

12   common sense of a jury, inasmuch as that does

13   not -- let me rephrase.

14              That it is common sense that that type

15   of behavior by a police officer does not comport

16   with any conceivable police standard anywhere in

17   this country.  You'd agree with that, right?

18              MS. SPENCE:  Objection.  Form.

19              Foundation.  Calls for speculation.

20              Misstates the standard.

21              THE WITNESS:  I don't want to use the

22              word common sense, sir, but I will say that

23              it's not responsible and I think the jury

24              needs to understand that it's not reasonable

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 213

1        that somebody would be beaten into

2        submission --

3    BY MR. GRILL:

4        **Q.      Do you think a jury needs an expert's**

5    **assistance to determine or to understand that it**

6    **is not an accepted police practice to beat**

7    **suspects in homicide investigations into**

8    **confessing?  You think a jury needs an expert's**

9    **assistance to understand that concept?**

10             MS. SPENCE:  Objection.  Asked and

11        answered.  This is the third time you've

12        asked that question.  Form.  Foundation.

13        Calls for speculation.  Misstates the

14        standard.  Go ahead, Mr. Miller.

15             THE WITNESS:  Once again, I don't want

16        to use common sense.  I think it's reasonable

17        for a jury to believe that a suspect

18        shouldn't be beaten by the police, that seems

19        reasonable.

20                  But what led up to that and how

21        they get to this point are things that the

22        jury needs to understand, that might not be

23        common sense.  How we got to this point, and

24        how it was even possible for this to occur.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 214

1    BY MR. GRILL:

2        Q.    **If those things that led up --**

3            MS. SPENCE:  Andrew.

4    BY MR. GRILL:

5        Q.    **Hang on.  If those things -- I think**

6    **what you're saying is assuming those things that**

7    **led up to it are things that had to do with how**

8    **the police investigated the case, right?**

9        A.    Okay.

10           MS. SPENCE: Objection.

11   BY MR. GRILL:

12       Q.    **Right?  Not about, like, what they**

13   **might have been thinking, or what you think they**

14   **might have been thinking, right?**

15           MS. SPENCE: Objection.  Form.

16           THE WITNESS:  I can't testify about

17       mindset.

18   BY MR. GRILL:

19       Q.    **Right.  Yeah.  I just want to make sure**

20   **we're on the same page.**

21           MR. GRILL:  Yeah, let's take a break.

22       How long do you want, Spence?

23           MS. SPENCE:  Let's do 10 minutes,

24       please.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 215

1          MR. GRILL:  Sure.  See you at 10 after

2      2:00 or 3:00, I guess, for you.

3          THE VIDEOGRAPHER:  We are now going off

4      the record at 2:01 p.m.

5              (Break taken.)

6          THE VIDEOGRAPHER:  The time is 2:13

7      p.m.  We are now back on the record.

8  BY MR. GRILL:

9      **Q.    Mr. Miller, am I coming through?**

10     A.    Yes, sir.

11     **Q.    All right.  Is it important to you that**

12 **the facts on which you base your opinion or the**

13 **opinions in this case, that those facts are**

14 **accurate?**

15         MS. SPENCE:  Objection.  Form.

16         THE WITNESS:  I mean, I have to look at

17     what's in the reports, you know?  And I

18     believe that the information -- it's

19     important that it's accurate for sure.  Yes,

20     sir.

21 BY MR. GRILL:

22     **Q.    Do you -- is it important to you in the**

23 **opinions that you offer that the facts that those**

24 **opinions are based on are, at least in your**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 216

1    **estimation, truthful?**

2              MS. SPENCE:  Objection.  Form.

3         Foundation.  Calls for the witness to make a

4         credibility determination.

5              THE WITNESS:  Yes, sir.  Based on those

6         people's -- there are different people,

7         obviously, in this incident.  And I've got to

8         hope and believe that everyone's being

9         truthful.

10                  But I know that there's different

11        versions of the story.  So that's what I'm

12        looking at as I do this as an expert.

13   BY MR. GRILL:

14        **Q.    Right.  So I'm, though, talking about**

15   **something a little bit more specific.  I'm talking**

16   **about the facts that you base your opinion on.  Is**

17   **it important that those facts are truthful facts?**

18              MS. SPENCE:  Objection.  Form.

19        Foundation.

20   BY MR. GRILL:

21        **Q.    At least in your opinion that they are**

22   **truthful facts.**

23              MS. SPENCE:  One second, let me finish.

24        Let my object.  Form.  Foundation.  Calls for

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 217

1 speculation.  And also calls for the witness

2 to make a credibility determination.  Go

3 ahead, Mr. Miller.

4    THE WITNESS:  Yeah, I just look at the

5 facts that I rely upon.  Yeah, I want them to

6 be truthful.  And, you know, each side has a

7 truth on it.  And so everyone's version is

8 not the same.  So when I am writing my

9 report, I am basing it on the fact that each

10 side thinks that their information is

11 truthful.

12 BY MR. GRILL:

13   **Q.**  **Well, when you're hired to provide an**

14 **opinion regarding police practices, and I'm**

15 **talking about, you know, generally, okay?**

16   A.  Yes.

17   **Q.**  **How do you decide what facts to rely on**

18 **when you form your opinion?**

19   A.  I get the information that I get, and I

20 read that information.  And I understand sometimes

21 there are different sides of the story.  And as a

22 police officer, certainly, I like to rely upon the

23 facts because that's what I grew up on.

24    And, you know, many instances, as a

Page 218

1    police expert, if there's body-worn cameras, or

2    there's video or there are statements that I can

3    look at, that certainly helps.  If it's not there,

4    then I have to rely on the witness accounts of

5    what took place and I weigh that as I write my

6    report.

7         **Q.    But you agree that every fact and piece**

8    **of information that you reviewed is not in your**

9    **report, right?**

10             MS. SPENCE:  Objection.  Form.

11             THE WITNESS:  Absolutely.

12    BY MR. GRILL:

13        **Q.    I know I'm kind of pointing out the**

14   **obvious here.  And I would imagine that that is**

15   **also the case for every other expert report you've**

16   **ever provided, right?**

17        A.    Correct.

18             MS. SPENCE:  Objection.  Form.

19    BY MR. GRILL:

20        **Q.    Meaning, like, the whole world of stuff**

21   **that you review and you list out in your reports**

22   **as having reviewed, it's -- you don't rely on**

23   **every single thing in your opinion -- in your**

24   **opinions that is contained within those documents**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 219

1    **that you reviewed, right?**

2           MS. SPENCE:  Objection.  Form.

3           THE WITNESS:  Yes.  I don't necessarily

4        believe that I rely on it all, but it's all

5        stuff that I review and I look at.  If

6        there's 30,000 pages of documents to see and

7        my report is 30 pages long, obviously I'm not

8        incorporating all 30,000 pages in there.  But

9        I have to weigh all the things that I review.

10   BY MR. GRILL:

11       **Q.    Right.  And -- and that's what I'm**

12   **going for.  So, like, the facts that are actually**

13   **included in the written report, those are the**

14   **facts that your opinion is relying on.  Or at**

15   **least that are central to the opinion; is that**

16   **fair?**

17       A.    Yes, sir.

18           MS. SPENCE:  Objection.  Form.

19   BY MR. GRILL:

20       **Q.    And that would be the case for every**

21   **report that you've provided as a police practices**

22   **expert in the past, right?**

23       A.    That's correct.

24       **Q.    So when you're hired to provide an**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 220

1    **opinion regarding police practices, tell me**

2    **what -- how it is that you decide what facts**

3    **you're going to rely on in forming your opinion.**

4         A.    Well, initially I had to take a cursory

5    review of the information that I'm supplied by

6    that attorney.  And then I make a determination

7    whether or not I think I can be helpful.

8               There are many cases that I turn down.

9    There's many cases that I accept.  I think when

10   you look through my history, you can note that I

11   do a lot of work for cities.  I do a lot of

12   defense work.  And since my retirement in 2019,

13   I've really started to take on more plaintiff's

14   work.

15              But I try to be honest in everything I

16   look at to try and determine whether or not I feel

17   like I can help them.  If I don't feel like I'm a

18   helpful expert, then I tell the people, I'm not

19   the guy for you.

20        Q.    **Right.  So that's not my -- I'm sorry,**

21   **I don't mean this disrespectfully.  That's not**

22   **what I'm asking.**

23              **I'm asking you, when you write a**

24   **report, okay, you've already told me that you**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 221

1    weigh out some stuff, because you're not going to

2    cite or rely on every little bit that you're

3    given, of so there is a weighing process that you

4    go through.  That's what I want to know about.

5              Like how do you weigh out the bits or

6    separate out the pieces that you're going to rely

7    on, for example, in this case the stuff that you

8    actually decided to include in the written report,

9    versus -- and then not include other stuff.  Like,

10   how do you make that determination?

11             MS. SPENCE:  Objection.  Form.

12   BY MR. GRILL:

13       Q.    And I'm going to start generally.  I

14   want to know is there a process that you employ

15   generally, and then I'll just tell you where I'm

16   going with next, and then I want to know how did

17   you do that or did you use that process here?

18       A.    Yeah.  Being a police -- having been a

19   police officer for 38 years and involved in

20   criminal investigations for a large part of my

21   career, I can look at police information, so I

22   want to see police reports.  I want to see

23   information, and then -- and read what the

24   officers say in those reports.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 222

1          And then I want to look at depositions.

2   And then I'm going to look at court testimony.  I

3   really want to look at all of it and I weigh it

4   all.  But I think the first thing I do as a police

5   practices expert, is my experience is in police,

6   so I would go to the police file, I go to the

7   police research, I go to the police -- I think the

8   homicide investigation is 173 pages in this case.

9   And I go to that, and I look at that.

10          And then I start -- after I've looked

11   at the complaint, and then I look at the complaint

12   to see, you know, what is alleged.  And I see that

13   through the lens, where I see it through both

14   sides.  And then I look through the police report

15   to see how that correlates to it.  And then I

16   start looking at the depositions and any of the

17   other ancillary information that becomes available

18   to me.

19      Q.     Right.  So, Mr. Jakes has a version,

20   for example, about what he said happened when Kill

21   and Boudreau were interrogating him.  And one of

22   those things that he says is that they beat him

23   up, physically abused him.  And, of course, Kill

24   and Boudreau say nothing like that happened.  Yet,

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 223

1   your report doesn't, for example, account for Kill

2   and Boudreau's denial that it happened -- that

3   nothing like that happened.

4           And you have nothing about whether

5   their interrogation complied or comported with

6   acceptable police practices had things went down

7   the way Kill and Boudreau said they did.  Instead,

8   your report focuses on Mr. Jakes's version of

9   events, in particular, about how things went down

10  at the police station.

11          I want to know how it was that you

12  decided to focus on Mr. Jakes's version of events,

13  as opposed to what the police testified repeatedly

14  about how things occurred in conjunction with how

15  it was reported in police reports.

16          MS. SPENCE:  One second, Mr. Miller.

17      Objection.  To the extent this question calls

18      for you to disclose discussions with the

19      attorney in the process of drafting your

20      attorney, I am instructing you not to answer

21      that question, if that's what it relies on.

22              You can testify to the facts that

23      you relied on in order to form the basis of

24      your opinion.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 224

1      BY MR. GRILL:

2      **Q.      Go ahead.**

3      A.      There's a lot of information.  And I

4  try to look at the police officer's side of the

5  story because I was a police officer.  And then I

6  think the value that I have is is I understand the

7  inner workings of a large police department and I

8  know how the officers think and how they do their

9  job.  And I know how they were doing it in 1991.

10          And so I look at that.  And then,

11  obviously, I look at the case from my perspective,

12  it's my report.  And I wrote my report in this

13  manner.  You're going to have an expert on the

14  other side, if we were doing this deposition,

15  they'd say I'm writing it from the police

16  perspective.  And I can certainly appreciate that

17  because I do that as well.

18          In this case I looked at it from the

19  plaintiff's perspective, because I saw there were

20  some things here that aren't consistent with what

21  I believe are the national standards.  So when I

22  start looking at my report, and start preparing my

23  witness, I do that based on the things that I see

24  and I read and I discover during the course of

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 225

1  this whole process.

2      Q.    Okay.  So you were hired -- well, let

3  me ask you this:  Can you tell me one place in

4  this report where you offer an opinion that comes

5  down on the side of the police?

6          MS. SPENCE:  Objection.  Form.

7          THE WITNESS:  I mean, I guess it would

8      depend on how you read the report.  But, I

9      mean, certainly when the first officers

10     respond and they arrive at the scene, and

11     they're talking to Mr. Singh, and they're

12     talking to other witnesses, that's good

13     police work.

14              I think that when they get down

15     and Mr. Jakes is brought to the police

16     station and Duckhorn and his partner are

17     talking to Jakes, you know, they're trying to

18     find out what happened; is he beneficial to

19     the case?  I think when Kill and Boudreau go

20     out into the field, back out to the area of

21     51st and Racine, and they're trying to round

22     up witnesses, I think that's good police

23     work.

24              I think that's their job as

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 226

1      homicide detectives to do that.  I don't

2      think we get a gold star for doing our jobs,

3      but they're doing their job.  And so I find

4      that they started the ball rolling.

5  BY MR. GRILL:

6      **Q.     Um-hmm.  Well, you don't offer any of**

7  **those opinions in your report that you just went**

8  **through about the police, right?**

9      A.     No, I don't.

10     **Q.     Because -- well, I shouldn't say**

11  **because, but in this case, just to put a point on**

12  **it, you were hired by the plaintiff's law firm to**

13  **offer an opinion on police practices, to use your**

14  **words from just a moment ago, that is told from,**

15  **quote, the plaintiff's perspective, right?**

16      MS. SPENCE:  Objection.  Form.

17      Mischaracterizes the testimony.

18      THE WITNESS:  I look at the report in

19      its totality.  I wouldn't have taken the case

20      if I didn't think that from the plaintiff's

21      perspective Mr. Jakes had a case.  I mean,

22      so, I had the option to take the case or not

23      take the case.  But I did it based upon what

24      I felt was right.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 227

1    BY MR. GRILL:

2         **Q.     That's not my question, though.  What**

3    **I'm asking you is that you chose to write a report**

4    **that looks at these events and this homicide**

5    **investigation from the point of view of the**

6    **plaintiff, right?**

7              **That's what I thought you just told me**

8    **was the perspective that you approached your**

9    **report from.**

10             MS. SPENCE:  Objection.  Form.

11         Mischaracterizes the testimony and the

12         report.

13             THE WITNESS:  I felt like I offered a

14         perspective on the report that's objective.

15         That I looked at what the police did.  And I

16         looked at Kill and Boudreau.  And I looked at

17         Pack and DeLacy.  And I looked at all the

18         detectives that were involved in this,

19         Caesar.  And I looked at how they responded

20         and the things that they did, and what rocks

21         they looked under.

22                  And then I looked at Mr. Jakes.

23         And I understand parts of what are in

24         Mr. Jakes's statements, witness statements, I

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 228

1          understand the depositions several years

2          later and how they differ from some of the

3          initial accounts.  And I understand that.

4          And I knew that when I took this case.

5                    But in the end, I feel that there

6          are certain facets of this case that weren't

7          investigated the way a police department

8          should investigate a homicide in 1991.  Just

9          like we get back to Darren.  I mean, I think

10         there are people here that are integral parts

11         of this investigation and things that weren't

12         done.

13                   I don't think that it makes sense

14         in 1991 to take a 15-year-old kid and have

15         him in a jail, in your possession from noon,

16         basically 12:30 that day, until 4:00 o'clock

17         in the morning the next day and not give him

18         anything to eat or anything to drink.

19                   I read where the officers said,

20         We offered him, but no one ever corroborated.

21         You're going to need to know whether or not

22         that kid has had anything to eat or drink.

23         We know he's sleep deprived.  We know there's

24         the stress of what's going on.  We don't have

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 229

1      any confirmation that people were calling

2      Ms. Jones and trying to get Ms. Jones to come

3      up there.

4                    We know that Boudreau and Kill in

5      the 10:30 or 10:45 interview, by their own

6      admission, they don't ask for Ms. Jones, they

7      don't ask for anybody to come up there to be

8      an aide for the kid, they don't get anybody

9      from the youth division to be an advocate,

10     and that's just not consistent with the way

11     police did their job in 1991.

12                    So when I paint my report, I

13     write my reports how I view these things.

14     You're going to have an expert that's going

15     to write a report and in his deposition

16     they're going to say, Well, you're writing

17     this from the perspective of the law

18     enforcement because they're hired by the law

19     enforcement to do this.  I'm writing this as

20     a neutral person looking at this going, this

21     isn't how cops did their job in 1991.

22     BY MR. GRILL:

23         Q.    **Well, you've already told me today that**

24     **you have no idea or opinion about whether either**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 230

1    side's version of events is truthful, right?

2        A.    That's correct.

3        Q.    So all those things that you just

4    listed out, you have no idea if any of those

5    things happened, right?

6            MS. SPENCE:  Objection.  Form.

7    BY MR. GRILL:

8        Q.    Whether they're true or not, correct?

9        A.    Whether he ate or not, or he drank?

10       Q.    Yeah, you don't know.  You have no

11   idea.

12       A.    Just what I read.

13           MS. SPENCE:  Andrew, one second.  Let

14       him finish responding.

15   BY MR. GRILL:

16       Q.    But in this report, you have chosen, as

17   you told me earlier, to write it from the

18   perspective of the plaintiff.  And my question is,

19   why did you choose to write it from the

20   plaintiff's perspective, rather than from the

21   police's perspective, if it is true that you

22   really don't think one side or the other or have

23   an opinion about whether one side or the other is

24   telling the truth?

Page 231

1          MS. SPENCE:  Objection.  Form.

2     Mischaracterizes the testimony as well as

3     Exhibit No. 3.

4          THE WITNESS:  I consider myself to be a

5     very objective person.  I'm not biased.  Like

6     I said, I represent cities all across the

7     country in incidents for the police.  I

8     represent some people with regards to

9     plaintiffs' cases.  That is true.  I've

10    looked at this case objectively.

11              If the opinions that I presented

12    you feel are slanted towards the plaintiff, I

13    certainly respect that, and I appreciate that

14    and your job and what you're trying to do

15    helping the officers.

16              I just wrote it the way that I

17    saw it, based upon the way I perceived police

18    officers did their job in 1991.  If it's

19    slanted towards the plaintiffs, then I'm

20    sorry for that.

21    BY MR. GRILL:

22    **Q.    Well, you just described yourself as a**

23    **very objective person.  But you also told me about**

24    **30 seconds ago that you took this case because you**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 232

 1  thought Mr. Jakes had a case.

 2      A.      Yeah, I believe --

 3      Q.      So explain to me how that is an

 4  objective point of view.

 5              MS. SPENCE:  Objection.  Form.

 6              THE WITNESS:  When I take a case --

 7          there are a lot of documents in this case,

 8          when you look at trial testimony, and you

 9          look at depositions and you read the police

10          reports, thousands of pages, I'm sure.

11              And until I really unravel

12          everything, it wasn't until I did that that I

13          made a determination, based upon my objective

14          opinion that certain parts of this

15          investigation weren't completed the way that

16          they should have been done in 1991.

17  BY MR. GRILL:

18      Q.      Okay.  Um, I want to share Exhibit 3

19  with you again.  Can you see this, the part that

20  says Summary of the Incident?

21      A.      Yes, sir.

22      Q.      Right above that there is a paragraph

23  and I want to -- I've got to go up to it.  There

24  it is.  I want to read this to you.  This is right

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 233

1    at the beginning of your report, and you tell me

2    if I read this wrong.  "Note:  The material

3    reveals" -- and I think the material that you're

4    referring to is the list of 38 items that you

5    reviewed, that your opinions are based on, right?

6         A.    Yes, sir.

7         Q.    "The material reveals that there is

8    conflicting information that was relied upon by

9    Chicago police investigators.  Resolving such

10   conflicts involves assessing witness credibility

11   and assigning weight to the given testimony.  And

12   is the responsibility of the trier of fact.

13              Accordingly, the opinions offered in

14   this case related to facts in dispute are based on

15   assumptions that are identified in the basis for

16   my opinion and the totality of my knowledge,

17   training, and experience.  Did I read that right?

18        A.    Yes, sir.

19        Q.    So this -- this paragraph, at the

20   outset of your opinion, recognizes that there are

21   factual disputes in the materials provided, right?

22        A.    Yes.

23        Q.    Recognizes that your opinions are based

24   on certain assumptions about those factual

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 234

1 **disputes, right?**

2     A.    Yes.

3     **Q.    And you resolved those factual**

4 **disputes, as you noted, against the defendants.**

5 **Because you don't offer any opinions in your**

6 **report in favor of the police, right?**

7         MS. SPENCE:  Objection.  Form.

8         Mischaracterizes the testimony, as well as

9         the report.

10         THE WITNESS:  I don't offer any

11         opinions unnecessarily about the Chicago

12         Police Department, Detective Kill, or

13         Detective Boudreau.

14 BY MR. GRILL

15     **Q.    And you resolve those factual disputes**

16 **against defendants because your opinions, by and**

17 **large, rely on Plaintiff's versions of the facts,**

18 **rather than the police version, right?**

19         MS. SPENCE:  Objection -- objection.

20         Mischaracterizes the testimony, as well as

21         the report -- the opinions in the report.

22         Form.

23         THE WITNESS:  I think that the

24         statement kind of addresses that, sir.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 235

1          Resolving such conflicts involving assessing

2          witness credibility, assigning weight to

3          given testimony, and is the responsibility of

4          the trier of fact.

5                    I mean, I present my expert

6          report, and I'll testify to the things that I

7          believe based upon my totality of what I

8          read, and the things that I've seen, and my

9          experience.  And it's the jury's

10         responsibility to assign weight to these

11         things.

12    BY MR. GRILL:

13         **Q.     Right, I know.  I know you have that**

14    **disclaimer in here.  My point is, though, that the**

15    **opinions, as you recognize that you offer in this**

16    **case, related to those factual disputes, assume a**

17    **particular version of events, right?**

18              MS. SPENCE:  Objection.

19         Mischaracterizes the testimony, as well as

20         the opinions offered in Exhibit 3.

21    BY MR. GRILL:

22         **Q.     Right?**

23         A.     Yes, sir.  It's my responsibility that

24    if the jury has an issue on either side of the

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 236

1  facts, for me to be able to testify that if it

2  were to have happened this way, then this would

3  have been right, or this would have been wrong.

4         If you believe it happened this way,

5  then this would have been right, or this would

6  have been wrong.  I mean, that's the way that I'm

7  approaching it.

8      **Q.     Right.  Okay.  So right here it says,**

9  **in, "Mr. Chairse's deposition."  Mr. Chairse is**

10 **Quarter Pounder?**

11     A.     Yes, sir.

12     **Q.     He stated the following regarding what**

13 **he and Anthony were doing prior to the shootings,**

14 **okay?  And the question, "What do you recall**

15 **happening the night of September 15th, 1991?  And**

16 **he goes on to describe that they were throwing**

17 **stuff at cars.  And then about 10 minutes later a**

18 **bottle comes through the window.**

19         **And then in paragraph 16, you point**

20 **out, that -- and right here it says, "After**

21 **cleaning up the glass with Quarter Pounder, Shawn**

22 **ran from the scene and eventually made his way**

23 **back home to where he stayed with his guardian,**

24 **Jessie Mae Jones, in the rear lot of West 51st**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 237

 1    Street.  Do you see that?

 2        A.     I do.  Yes, sir.

 3        Q.     **Now, that statement does not come from**

 4    **Mr. Chairse's deposition, correct?**

 5        A.     I would have to read his whole

 6    deposition.  That's not cited in his deposition.

 7        Q.     **No.  In fact, paragraph 16 has no cite**

 8    **to it, right?**

 9        A.     Yeah.  That would have been my

10    statement.

11        Q.     **Because like in 15 you start talking**

12    **about how in Mr. Chairse's deposition he says X,**

13    **and then you don't indicate in paragraph 16 that**

14    **we're not talking about Mr. Chairse's deposition**

15    **anymore.**

16            MS. SPENCE:  Objection.  You can answer

17        the question.

18    BY MR. GRILL:

19        Q.     **There is no indication in paragraph 16**

20    **that now we've moved outside or past whatever was**

21    **in Mr. Chairse's deposition, right?**

22            MS. SPENCE:  Objection.

23        Mischaracterizes the report.  It's in

24        quotation marks.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 238

1              THE WITNESS:  I think in the report

2         what you'll see, I can't just cite -- my

3         whole report just cite documents.  I have to

4         give opinions.  So that's what this is.

5    BY MR. GRILL:

6         **Q.       And so in paragraph 15, you know, you**

7    **cite through footnotes, right?**

8         A.     Yes.

9         **Q.       And you don't make that effort in**

10   **paragraph 16 because there is no footnote, right?**

11        A.     That's what I was saying, though,

12   Mr. Grill.  I'm not going to write a whole report

13   that's 30 pages of footnotes.  I'm going to give

14   you my opinions.  I'm going to give you my

15   thoughts on things.

16        **Q.       So I'm going to represent to you that**

17   **Mr. Chairse, and I kind of pointed this out**

18   **earlier already today, Mr. Chairse, in his**

19   **deposition, as did Tweety, his sister, both**

20   **testified that Shawn, Mr. Jakes, was not with**

21   **Quarter Pound when he's cleaning that glass up up**

22   **in his apartment, okay?**

23             **So my question to you is, why doesn't**

24   **your report account for that discrepancy in**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 239

1    **Mr. Jakes's testimony?**

2              MS. SPENCE:  Objection.

3         Mischaracterizes the testimony, as well as

4         the statements in Exhibit 3.

5              THE WITNESS:  I think this goes back to

6         the trier of the facts issue.  Mr. Jakes says

7         this happened.  Chairse and his sister say

8         that it didn't happen.  This is his version

9         of it.  I'm not saying which way that it

10        happened.  This is how I elected to write my

11        report.

12   BY MR. GRILL:

13        **Q.     Well -- so in paragraph 15, this is not**

14   **Mr. Jakes's version, this is Quarter Pound's**

15   **version.  You're citing from his deposition.**

16             **So how is it that you decided --**

17   **because this goes back to my questions about how**

18   **you decide what goes into this report.  Is it a**

19   **fact you rely on for your opinion, and how do you**

20   **decide to keep other things out?**

21             **So how is it that you decided to not**

22   **mention or why is it that you decided to not**

23   **mention in your report here, that this piece, this**

24   **testimony that Cleotha gave in his deposition,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 240

1    **that Mr. Jakes was not there with him when he**

2    **cleaned up the glass, how did you decide or why**

3    **did you decide to keep that out of this report,**

4    **and only focus on what, I guess, is what Mr. Jakes**

5    **said happened with this particular point?**

6         A.    That's just a determination in how I

7    write my report.  I don't necessarily scheme it

8    one way or the other.  I'm tasked with writing a

9    report and, you know, as I said, I'm not going to

10   cite everything.

11             And so Mr. Jakes says it happened this

12   way.  Quarter Pounder said it happened this way.

13   The detectives say certain things happened this

14   way.  That goes back to the trier of the facts to

15   make that determination.  If at trial someone were

16   to say, Well, isn't it true, Chief Miller -- Craig

17   Miller, that they elected -- that you didn't

18   include this in there?  I'd say, yeah, that was in

19   there -- that was in their deposition, but in his

20   statement he said this is what happened.

21             I mean, I've got to put something in

22   there and this is the way I elected to write it.

23        Q.    **Do you believe that a jury is likely to**

24   **give more weight to an expert's testimony about**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 241

1  **what he or she believes the facts to be as opposed**

2  **to someone else?**

3          MS. SPENCE:  Objection.  Objection.

4      Calls for speculation.  Form.  Foundation.

5      It calls for this witness to make a

6      determination about a legal conclusion in the

7      scope of testimony.

8          THE WITNESS:  I don't know that answer,

9      sir.

10 BY MR. GRILL:

11     **Q.    Does it change your opinion at all**

12 **knowing that Cleotha does not -- Jakes's own**

13 **cousin does not back up his story about where or**

14 **who was with him at the time he cleaned the glass**

15 **up?**

16     A.    I think there is a lot more important

17 stuff that Cleotha says as this thing goes on that

18 the police didn't address way more important than

19 this.

20     **Q.    Well, are you talking about when**

21 **Cleotha is outside and somebody also came up to**

22 **him asking him to participate in the homicide?**

23     A.    Yes.

24     **Q.    How do you think the police were**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 242

1    supposed to investigate that particular fact,

2    since -- if Cleotha never mentioned it until his

3    deposition is 2021?

4           MS. SPENCE:  Objection.  Form.

5       Argumentative.

6  BY MR. GRILL:

7       Q.    I would like to know how the police

8  were supposed to follow up on that fact.

9           MS. SPENCE:  Hey, I don't know why

10          you're raising your voice.  I'm just

11          objecting.  Form.  Foundation.

12  BY MR. GRILL:

13      Q.    I'm restating my question.  How are the

14  police supposed to follow up on that fact when it

15  didn't exist in 1991?

16          MS. SPENCE:  Objection.  Form.

17          Foundation.  Argumentative.  Go ahead.

18          THE WITNESS:  In what I'm reading, I

19          don't believe it was hard at all for the

20          police to find Cleotha.  I don't.  I don't

21          think he was hiding under a rock.  I think he

22          lived right next door to Jakes.  And I think

23          the window that everyone, both Cleotha, both

24          Jakes and Tweety all say was broken, was

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 243

1    broken.  That fact is not in dispute here.

2              And the police could have seen

3    this if they would have talked to Cleotha

4    which could have corroborated some of the

5    story that they were initially together.  But

6    the police didn't make any effort at all,

7    other than well, where does he live?  And

8    they never went back.  And he's an integral

9    part of this investigation.

10   BY MR. GRILL:

11       Q.    Did you review the witness list from

12   the criminal trial?

13       A.    I'm sure that I did, but I honestly

14   couldn't tell you as I'm sitting here.

15       Q.    Did you see Cleotha or Quarter

16   Pounder's name on any witness list?

17       A.    He told me -- I read in here that he

18   never testified.

19       Q.    Yeah.  Do you know if Mr. Jakes ever

20   told his attorney, Hey, you should get Cleotha to

21   testify because he could help me out?

22       A.    I did not see that.

23       Q.    Do you know if his criminal defense

24   attorney ever tried to find Cleotha since he was

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 244

1  so easy to find, according to you, in your

2  opinion?

3       A.    I do not know that.

4       Q.    Yeah.  Okay.  So if his attorney didn't

5  try to do it -- I'll just leave it at that.  I

6  think the point is obvious.

7            So do you know if Cleotha or do you

8  remember what Cleotha said in his deposition about

9  knowing what happened to Jakes and whether he

10  tried to make himself known or available or let

11  people know where to find him?

12           MS. SPENCE:  Objection to the extent

13       that this witness is being asked about a

14       document that is not being presented to him.

15  BY MR. GRILL:

16       Q.    I'm asking if you remember what he

17  said.

18           MS. SPENCE:  I'm objecting to the

19       question to the extent that this witness is

20       being asked about a document that is not

21       being presented to him.

22           THE WITNESS:  Are we going to look at

23       the document, or are you asking me to answer,

24       sir?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 245

 1   BY MR. GRILL:

 2        Q.    **I'm asking if you remember what Cleotha**

 3   **said about his decision about whether to make**

 4   **himself available to Jakes's criminal defense**

 5   **team.**

 6             MS. SPENCE:  Same objection.

 7             THE WITNESS:  I think I remember more

 8        about Tweety saying that they were kids and

 9        their parents didn't want them talking to

10        people.  Something to that effect, but I

11        don't remember the exact language.

12   BY MR. GRILL:

13        Q.    **Why not mention that fact in your**

14   **report as a way to explain why the police maybe**

15   **weren't able to find them?**

16        A.    I think because I'm trying to keep my

17   report functional, useful, helpful, and not make

18   it 150 pages long.

19        Q.    **Well, that's an important point, that**

20   **is a counterpoint to your opinion that it was very**

21   **easy and important for the police to find Quarter**

22   **Pound.  Yet you're aware of testimony from Quarter**

23   **Pound's sister that would offer an explanation as**

24   **to why the police didn't find him.  So why not**

Page 246

1  **include that?  What's the decision-making process**

2  **behind that, to keep that fact out of your report?**

3          MS. SPENCE:  Objection.  I'm going to

4      object to this line of questioning, because

5      it gets into the drafting of this report, and

6      what decisions were made as to how the report

7      would be drafted.

8              He can answer questions about the

9      facts that he relied upon and the opinions

10      that were offered.

11  BY MR. GRILL:

12      **Q.     Go ahead.**

13          MS. SPENCE:  No, don't go ahead.

14      That's -- my objection is that it's

15      privileged.

16  BY MR. GRILL:

17      **Q.     All right.  Well, then this begs the**

18  **question, and maybe we'll have to take this up**

19  **later.  Sir, did you write this report yourself?**

20          MS. SPENCE:  Objection.  Objection.

21      Again, this gets into the drafting of the

22      report.  And the process by which the report

23      was drafted.  It's protected by Rule 26.  So

24      I instruct you not to answer that question.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 247

 1   BY MR. GRILL:

 2       Q.    **Are you refusing to tell me whether you**

 3   **actually drafted this report, as opposed to**

 4   **Mr. Jakes's attorneys?**

 5            MS. SPENCE:  I am instructing you not

 6            to answer that question on the basis that

 7            that is work product and protected from

 8            disclosure by Rule 26.

 9   BY MR. GRILL:

10       Q.    **You mentioned a moment ago that there**

11   **is no dispute that the window was broken.  And I**

12   **agree, there is a photograph that there is a**

13   **window in one of the houses on 51st Street that**

14   **was broken on the second floor.**

15            **Is it your opinion that that window was**

16   **broken that night, just like Mr. Jakes and others**

17   **said it happened?**

18       A.    Yes, sir.

19       Q.    **Did you take into consideration Annette**

20   **Harris's testimony?  It was either Annette or**

21   **Denise, it was one of the Harris sisters, what**

22   **they said about being outside the whole time?**

23            MS. SPENCE:  Objection.  Form.  Vague.

24            THE WITNESS:  I considered a lot of

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 248

1      Annette Harris's testimony because it varied

2      and bounced all over.  You know, Annette

3      Harris told -- allegedly told the detectives

4      that, you know, she wasn't there and didn't

5      see anything.

6                   And then we know that the next

7      day she allegedly tells Tyrone Pitts, yeah, I

8      saw the whole thing.  I was sitting there and

9      this is what happened.  And so that's really

10     important information, because Tyrone

11     Pitts -- if what she told Tyrone Pitts is

12     true and she did see it, then she is a fact

13     witness to the murder and she could identify,

14     in a lineup, the people who were present.

15                  But Annette Harris then says

16     later on she wasn't even talked to by the

17     police.  But we have statements by the police

18     saying, yeah, they talked to her and this is

19     what she said.  So there are different

20     stories there.  But I think the police should

21     have, after they spoke to -- after they

22     learned about Annette from Tyrone, that next

23     day that Annette was actually there, they

24     should have gone back to Annette and said,

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 249

1          Hey, this is a different story than you told

2          us.  But that just didn't take place.

3   BY MR. GRILL:

4          **Q.     You don't dispute that the police did**

5   **talk to Annette Harris?**

6               MS. SPENCE:  Objection.

7          Mischaracterizes the testimony.

8               THE WITNESS:  They say they did, and

9          it's in the police report that they did.

10  BY MR. GRILL:

11         **Q.     Do you believe that that's credible?**

12              MS. SPENCE:  Objection.

13         Mischaracterizes the testimony and asks this

14         witness to make a credibility finding.

15              THE WITNESS:  I think that's a

16         determination -- once again, these are so

17         parallel to one another.  I think that's a

18         question for the jury.

19  BY MR. GRILL:

20         **Q.     Do you recall that one of the Harris**

21  **sisters testified that she was outside the entire**

22  **time and no one threw a bottle through the window**

23  **that night?**

24              MS. SPENCE:  Objection to the extent

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 250

1          that this witness is being asked about a

2          document that he's not being shown.

3     BY MR. GRILL:

4          **Q.      Do you recall, in any of the materials**

5     **that you reviewed, reading that?**

6          A.      I don't.  No, sir.  I just don't recall

7     that.

8          **Q.      Is that a piece of information that --**

9     **I'm going to represent to you that one of the**

10    **Harris sisters did indeed testify that way.**

11              **And is that a piece of information you**

12    **think you should have included in your report?**

13              MS. SPENCE:  Objection.

14    BY MR. GRILL:

15         **Q.      That one of the Harris sisters disputes**

16    **Mr. Jakes's story and Quarter Pound's story, that**

17    **somebody threw a bottle through the window in the**

18    **hours right before the murder happened?**

19              MS. SPENCE:  I'm going to object and

20              instruct you not to answer, Mr. Miller, about

21              what facts are included or not included in

22              your report as part of your drafting process.

23              You can testify about the facts that you

24              relied upon in order to form the conclusions

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 251

1          or the opinions that are disclosed in your

2          report.

3                    So you can testify about the

4          facts that are disclosed in your report that

5          you relied upon.

6     BY MR. GRILL:

7          **Q.      Why didn't you include -- is that a**

8     **fact that you believe that should be included in**

9     **the report about what the Harris sisters said**

10    **about whether the bottle was thrown through the**

11    **window?**

12                   MS. SPENCE:  Objection.  This is the

13         same objection because I believe it's the

14         same question that you're asking.  I am going

15         to instruct you not to answer that question.

16         You can answer questions about what facts you

17         relied upon to form the opinions that have

18         been disclosed in your report.

19                   MR. GRILL:  So I want to be clear here.

20         I want him to answer these questions from his

21         own decision-making process.  So if the only

22         reason why a fact did or did not make it in

23         this report is because of some conversation

24         that you had with the plaintiff's attorneys,

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 252

1          I guess we can deal with that on a

2     case-by-case basis.

3               But if there is a -- if you are

4     making these decisions, if you are employing

5     some thought process here of your own about

6     why facts did or did not make it into your

7     report that formed the basis of your opinion,

8     I'm entitled to know that.

9          MS. SPENCE:  Right.  But the problem is

10    that that question -- I believe it is

11    difficult to extricate -- in the process of

12    writing this report -- if you want to excuse

13    Mr. Miller so we can talk about it, that's

14    fine.  That's up to you.

15         MR. GRILL:  Hang on one second.  Let's

16    take five.

17         MS. SPENCE:  Well, I want to talk about

18    it off the record.

19         MR. GRILL:  We are going to -- that's

20    why Mr. Miller can take a break.  But I'm

21    going to take 5 and come back.  So we will be

22    able to come back in a couple of minutes and

23    chat about it.

24         MS. SPENCE:  Got it.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 253

1          THE VIDEOGRAPHER:  We are now going off

2     the record at 2:52 p.m.

3                    (Break taken.)

4          THE VIDEOGRAPHER:  The time is 3:05

5     p.m.  We are now back on the record.

6          MS. SPENCE:  Andrew, I'm going to amend

7     my objection.  I don't know if you'll have an

8     issue after I amend it.  It may not

9     necessitate --

10          MR. GRILL:  Do we need to do it outside

11     of Mr. Miller's presence?

12          MS. SPENCE:  I don't think so.  Let me

13     amend it and you can decide whether or not

14     you want to excuse Mr. Miller.

15               So I'm just going to say, I

16     objected to the line of questioning on the

17     basis that I thought it invaded the work

18     product privilege.  But if Mr. Miller can

19     answer your question without disclosing

20     conversations that you had with any of the

21     attorneys in this case, then you may answer

22     the questions as to the facts you relied on.

23          MR. GRILL:  I agree, I think that's --

24     I thought that's what I was proposing, but

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 254

1    if -- I don't disagree with that.

2               So with that, I guess, can we

3    just have the last question read back and

4    then we'll get back on track?

5               (Record read as requested.)

6    BY MR. GRILL:

7    **Q.    With Ms. Spence's objection in mind,**

8    **can you answer that question?**

9    A.    Is it what the Harris sister said --

10   **Q.    Yeah.  I don't remember offhand which**

11   **one said it, but one of them testified that she**

12   **was outside the entire time in front of the 1210**

13   **or 1212 house and that no bottle was thrown by**

14   **anybody through any window on 51st Street before**

15   **the shooting happened.**

16   A.    Right.  And I weighed that, I think,

17   when I looked at this.  I looked at what Tweety

18   and Quarter Pound and Jakes and then the

19   photograph that I saw.  And so it's not that I

20   discounted what she said, but I had to weigh the

21   two, it's their house, that Tweety and Quarter

22   Pounder said it was in.

23   **Q.    You recognize that the Harris sisters**

24   **lived right next to Quarter Pound and Tweety,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 255

1    right?

2        A.      Absolutely.

3        **Q.      So what was the methodology that you**

4    **employed to decide that Quarter Pound and Tweety's**

5    **testimony should be relied on in your report, as**

6    **opposed to what the Harris sisters said that was**

7    **contrary to or that disputed that this bottle was**

8    **thrown through the window that night?**

9        A.      Well, there was already some issue with

10   the Harris sisters' testimony, like with Denise,

11   whether she was actually home and whether she saw

12   the incident happen or didn't see the incident

13   happen.

14            So I weighed, just looked at the

15   totality of the whole thing.  And here is the

16   person, Tweety, who are both saying this about

17   cleaning up the glass.  Here is Quarter Pounder,

18   it's their house.  I don't have any reason to

19   dispute what they're saying more than I would

20   Harris, because it's not her house, and she

21   doesn't know whether it hit the window or it

22   didn't hit the window.

23       **Q.      So you decided, in light of the earlier**

24   **testimony that you gave me, that Quarter Pound and**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 256

1  **Tweety's testimony on this point was more truthful**

2  **or reliable for your opinion than maybe the Harris**

3  **sisters' testimony was on that point?**

4         MS. SPENCE:  Objection.

5      Mischaracterizes the testimony.

6         THE WITNESS:  I don't think I was

7      saying anyone is more truthful.  I don't

8      really think that's my job to say someone is

9      more truthful.  My job is to look at the

10     facts and then document the facts.

11             There is tit for tat on every

12     issue in this and I could have given both

13     sides of it, but I elected to write my report

14     that I did based upon the facts that I felt

15     comfortable putting in there.

16  BY MR. GRILL:

17     Q.     And so that is the piece that I'm

18  **trying to figure out by my questioning is how it**

19  **was -- what was the methodology that you employed**

20  **to determine or decide which facts you were going**

21  **to rely on.  Because as you just pointed out,**

22  **there are facts that literally run exactly the**

23  **opposite direction, but you are relying on a**

24  **particular set of facts.**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 257

1            And so with that as a prologue, how did

2     you decide, when it comes to this issue about the

3     bottle going through the window, to not include

4     evidence that contradicted Jakes's testimony?

5            MS. SPENCE:  Objection.  Form.

6       Mischaracterizes the testimony.

7     BY MR. GRILL:

8       Q.      What was the methodology you employed

9     to make that decision?  That's what I want to

10    know.  And that decision, we'll just stick with

11    this point on the bottle through the window.

12            What was the methodology that you used

13    to decide to not mention at all what other

14    witnesses in this case said that contradicted

15    Jakes's version of events on this?

16      A.      I think the easiest way to answer that,

17    Mr. Grill, is that you're citing something about

18    one of the Harris sisters, I don't know whether

19    it's Annette or it's Denise, but I don't recall

20    that statement.  I do recall the statement that

21    Tweety and Quarter Pounder said.

22            I'm not saying that what you're saying

23    didn't happen, I just don't recall it as I sit

24    here.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 258

1      Q.    Okay.  Well, since you recall that

2   Quarter Pounder gave testimony that was

3   inconsistent with where Jakes said he was right

4   before the shooting, that is up in his apartment

5   cleaning the glass up, what was the methodology

6   you employed to -- that caused you to decide to

7   not mention Quarter Pound's testimony on that

8   point whatsoever in your report?

9           MS. SPENCE:  Objection.  Form.

10          THE WITNESS:  Once again, I could go

11       through my whole report and there's going to

12       be a counter to every single thing.  And so

13       I'm not trying to avoid your question, glad

14       to answer it, but I just -- when I write my

15       reports, I have to decide what I'm going to

16       put in there.  And I have to weigh -- weigh

17       things as I'm going through there,

18       understanding that there are counterpoints to

19       what I'm saying.

20               But in writing my report, I write

21       it based on the way that I feel in my

22       methodology, in my experience, in what I'm

23       reading through the texts and through the

24       police reports as I write my report.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 259

1    BY MR. GRILL:

2        Q.    Right, so -- but I'm still not hearing

3    like what the decision -- what the methodology --

4    what the decision tree looks like for you when

5    deciding which facts to include and not exclude.

6             And, you know, I get that there's

7    competing evidence, but you're relying on specific

8    facts, and you recognize that there is evidence

9    that contradicts, directly contradicts, many of

10   these facts that your opinion relies on.  And yet

11   you don't mention these facts, that they even

12   exist.

13            And that's fine, but I want to know,

14   like, what is the decision-making process?  You

15   say you weigh the facts.  Are you deciding, by

16   weighing them, which ones are more important to

17   the point that you're trying to make?

18            MS. SPENCE:  Objection.  Form.

19            THE WITNESS:  Because I can make

20       opinions on the things that I want to make

21       opinions on.  So I'm going to weight that on

22       the things I'm considering more heavily than

23       other things that I'm not considering.

24            I think it goes back to the

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 260

1          paragraph that you talked about earlier, up

2          there just above the documents that I've

3          reviewed that talks about there is

4          conflicting testimony that the trier of the

5          facts will have to decide.

6                    I acknowledge that there is

7          conflicting testimony.  But in writing my

8          report, I'm forming my opinions, I think I

9          wrote three opinions in this case, and I'm

10         trying to balance my opinions around the

11         things that I feel as an expert are what I

12         want to testify to.

13    BY MR. GRILL:

14         **Q.    Did you have an assumption, going into**

15    **this case, before you -- once you got done with**

16    **your review, but before you wrote your report, did**

17    **you have an assumption that the police mistreated**

18    **Mr. Jakes, that this investigation was flawed,**

19    **that Mr. Jakes falsely confessed?  Was that your**

20    **assumption?**

21              MS. SPENCE:  Before what point?  What

22         was the timeline?

23              MR. GRILL:  Before he started writing

24         the report, I guess.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 261

1          MS. SPENCE:  Objection to the extent

2      that this calls for you to disclose your

3      conversations with counsel because that's

4      protected by work product.  If you cannot

5      answer that question without that disclosure,

6      I would instruct you not to answer it.

7          MR. GRILL:  What is the basis for your

8      work product objection on that particular

9      point, Spence?  I am asking for what the

10     assumption is his opinion was founded on.

11         MS. SPENCE:  Sorry.  Okay.  Sorry.  If

12     you were provided with an assumption, you can

13     answer.

14  BY MR. GRILL:

15     Q.     **Yeah, specifically provided with an**

16  **assumption from Plaintiff's counsel.  So were you**

17  **provided an assumption on these opinions that you**

18  **offered from Plaintiff's counsel?**

19     A.     No, sir.

20     Q.     **When you reviewed these materials, you**

21  **already told me that you believed that Mr. Jakes**

22  **had a case.  So did you mean that you believed**

23  **that Mr. Jakes's allegations set forth in his**

24  **complaints were more likely true than not?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 262

1      A.      If you look at my report, when I

2   referenced someone having -- Mr. Jakes having a

3   case, I formulated my opinions upon the things

4   that I saw in here that I thought were flawed as

5   part of the investigation.

6              There were certainly things that

7   Mr. Jakes said that I weighed whether or not that

8   could be true, having been a police officer.

9   Things that seemed like, wow, that's a little bit

10  unusual.  But I could have written a thousand

11  opinions, but I boiled down my opinions to three

12  things.  And I opined on the three things that I

13  felt most passionate about.  That I felt were most

14  egregious in this incident, how it was handled by

15  the police and that's what I elected to do my

16  opinions on.

17             My methodology was based on reducing

18  these many, many points that I could have given

19  opinion on down to three primary points and

20  focusing on those three points.

21      **Q.      And that methodology that you employed**

22  **involved weighing the evidence and materials that**

23  **you were given and deciding which pieces of that**

24  **evidence and those materials you were going to**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 263

1  base your opinion on, right?  That was part of the

2  methodology you used, right?

3      A.    Sure.

4      Q.    Okay.  And so there had to, therefore,

5  be a decision process that you employed to decide

6  which of those facts were going to make it in this

7  report.  And as I've pointed out, there are

8  incidences, for example with this bottle throwing

9  incident, where you decided to omit the evidence

10 that contradicts the pieces that you actually rely

11 on in your report.  And you did the same thing

12 when it came to Cleotha's testimony as to who was

13 with him when he cleaned up the glass.

14          And I still have not heard from you how

15 it was that you decided what the methodology was

16 that you employed to decide to omit those

17 contradictory facts.  What was it?  What was the

18 methodology you used?

19          MS. SPENCE:  Objection.  Form.

20      Mischaracterizes the testimony, as well as

21      the opinions disclosed and the facts stated

22      in Exhibit 3.

23          THE WITNESS:  Mr. Grill, when I'm

24      writing a report and there's differing

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 264

1      opinions, it's not possible -- it's

2      impossible for me to say, and he said this,

3      and she said that.  That's what the trier of

4      the fact statement is about.

5                    I look at this thing in its

6      totality.  You know, you look at that -- if

7      you go to Page 16 and you look at that first

8      opinion, Mr. Jakes's seizure and search were

9      not reasonable.  I talk about the seizure and

10     the search.  That's what my opinion's on in

11     this case.  And I focus my attention on that

12     opinion and what that entails.

13                   And so when I'm talking -- if

14     there are things -- when we get to Page 16

15     and we start talking about my opinions, you

16     know, and I'm weighing things, I'm weighing

17     them based upon how I'm writing my opinion.

18                   My methodology is to try and be

19     objective.  But as we've said many times, if

20     there's different diverging opinions about

21     how this happened, if Jakes says he was

22     struck by Kill and he was kicked by Kill and

23     he was threatened to be thrown out a window

24     by Kill and Kill says, I never did any of

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 265

1        that, that's each side's opinion.  That's not

2        my decision to make that call.

3                        My opinion is to look at this

4        thing and say, Hey, look, it's reasonable

5        that a police officer in 1991, a detective,

6        who arrested a juvenile, would have had a

7        juvenile's parent, guardian, or a youth

8        officer present when they conducted the

9        interview.  That's reasonable.

10                       Whether or not he kicked him, he

11       tried to light a cigarette on his face, I

12       don't know that.  But the things that I opine

13       on are the things that talk about it's

14       reasonable that, you know, if you're going to

15       pat someone -- if you're going to pat

16       someone -- like when they allegedly find

17       these drugs on him when they first brought

18       him into the police station.

19                       Okay.  He's at his house.  You've

20       got different opinions.  He says he was

21       slammed against the wall.  They say, No, we

22       just walked him out of the house.  I get

23       that.  I certainly see there's two sides of

24       the story.  The grandmother says they

1    searched the house afterwards.  I don't see a

2    consent to search form.  The police say, We

3    never searched the house.  We could go

4    through this thing all day where the police

5    said we did this and the other side -- and

6    Jakes's side says that we did this.  I

7    respect that.

8            But I have to weigh this thing,

9    what I'm looking at, so when I give my

10   opinions if someone says, Well, would it be

11   reasonable for them to slam Jakes up against

12   the wall?  No, that wouldn't really be, if

13   he's a witness.  Would it have been

14   reasonable that if you're going to pat Jakes

15   down for drugs or weapons that you would have

16   done that at his house?  Yeah, absolutely.

17           Why would you put someone in your

18   squad car and drive them somewhere and then

19   decide you're going to pat them down and

20   search them?  Which is what they did when

21   they found the drugs.  That is not reasonable

22   to me.  That is not reasonable in 1982, '92,

23   2002.  If you feel like someone might have a

24   weapon or something that could harm you, pat

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 267

1        them down right then.  Why wait until you get

2        to the jail?

3                    Those are the things when you see

4        in my opinions that I'm talking about.  Those

5        are things that I know from my experience,

6        this is not right.

7   BY MR. GRILL:

8        Q.    **I appreciate all that, but I would also**

9   **appreciate that if you try to listen to the**

10  **question that I'm asking you and answer that.**

11       A.    Okay.

12       Q.    **Because you just gave me, you know,**

13  **quite a bit about your opinion on all sorts of**

14  **other things, when all I'm asking you to do**

15  **repeatedly here is tell me the methodology that**

16  **you employed in deciding which facts to include in**

17  **your report, and which ones to not include in your**

18  **report.  Okay?**

19                    **And instead what I got was basically a**

20  **summation of your thoughts on all sorts of other**

21  **parts of this investigation, which is not what my**

22  **question at all was asking for.**

23                    **So with that, I just would respectfully**

24  **request, just listen to the question I'm asking,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 268

1    and answer that.  Okay?  I would appreciate it.

2              So you told me already today that your

3    opinion -- that it is important to your opinion

4    that it be based on accurate and truthful facts.

5    So maybe I can help you here.  The methodology

6    that you employed when deciding what to include in

7    your report, did it include an assessment by you

8    that the facts that you were going to rely on were

9    ones that you felt were more accurate and

10   truthful?

11             MS. SPENCE:  Objection.  Form, to the

12        extent that it calls for this witness to make

13        a credibility determination.

14             THE WITNESS:  Mr. Grill, I'm sorry, I

15        just have to ask a question because I don't

16        understand this.

17                  I've been doing expert witness

18        work now for the better part of 10 years and

19        I talk about methodology.  But I am unaware

20        that there is a specific language of

21        methodology that says -- that's like here is

22        three or five things that I need to have done

23        to be an expert to say that this is the

24        methodology that I employed.

Page 269

1                    My methodology is to look at all

2          the information that I got, determine from

3          that information what opinions I'm going to

4          render, and then write my report based upon

5          the rendering of those decisions upon the

6          facts, as you said.

7                    I'm not trying to be

8          argumentative at all.  But if there is a

9          standard that I'm missing that experts across

10         America are supposed to follow with regard to

11         their methodology, then I'm sorry, because

12         that methodology is not one that -- every

13         expert that I've worked against has a

14         different philosophy -- and gone with has a

15         different philosophy about how they approach

16         things.

17                   And so my methodology is to look

18         at my experience as a police officer, and

19         weigh everything that I read and make my

20         report based upon the things that I feel were

21         the most appropriate or inappropriate,

22         depending on the situation.

23    BY MR. GRILL:

24         Q.    Okay.  So did you focus on the --

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 270

1      A.      I want to get an answer to my question,

2  though, first, sir.  Is there something that I'm

3  missing?  That there is national standard for

4  experts that your methodology must be X, Y and Z

5  and this is the way you must follow it?

6      **Q.      No.  Personally, I have no idea about**

7  **national standards.  To me this is, frankly, to**

8  **answer your question, something that is common**

9  **sense.**

10          **You made a decision about which facts**

11  **to include in your report and which ones to not**

12  **include in your report.  And I still can't figure**

13  **out how you arrived at that decision.  So let me**

14  **ask it this way, okay?**

15          **Did you choose to include -- the facts**

16  **that are in your report, did you pick those facts,**

17  **as opposed to contradictory facts, or facts that**

18  **contradict the facts that are actually in your**

19  **report, did you pick the ones that are in your**

20  **report because you believe that those are the**

21  **facts that most well supported the opinions that**

22  **you reached in this report?**

23          MS. SPENCE:  Objection, asked and

24          answered.  Form.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 271

1           THE WITNESS:  If we look at my first

2      opinion there on Page 16, I focus my

3      attention on writing my opinions based upon

4      the facts that I feel meet the Opinion No. 1,

5      Jakes's seizure and search are not

6      reasonable.

7                I focused on the facts that I

8      learned during the course of my investigation

9      about that opinion.  And then as we go

10     through the report, you'll see the second and

11     third opinions.  And I base my opinions on

12     those, based upon the facts that were present

13     and I weighed those facts with everything

14     included.

15 BY MR. GRILL:

16     **Q.    Right.  So it sounds to me like then**

17 **you picked the facts that best fit and supported**

18 **the opinions set forth in your report, right?**

19           MS. SPENCE:  Objection.

20     Mischaracterizes the testimony.

21           THE WITNESS:  I read the entire -- all

22     the information that was supplied to me.  As

23     I said, I could have written opinions on a

24     lot of things.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 272

1    BY MR. GRILL:

2        Q.    Let's go down to paragraph 17, which

3    is, I believe on your screen.  Do you see it?

4        A.    Oh, yes, sir.

5        Q.    So it reads, "Once Anthony Jakes

6    arrived home, he had an argument with Ms. Jones,

7    who slapped him in the face and sent him inside."

8    Okay.  So what do you mean by home?

9        A.    To Ms. Jones's home.  He lived with

10   Ms. Jones in the building around in the rear.

11       Q.    And you're basing this fact on what?

12   Because it's not cited.

13       A.    I believe everything I read, Jakes said

14   he lived in that apartment.  Denise and Annette

15   said he lived in the back with Annie D., or

16   Ms. Jones, she had several different names.

17            The police went to the location where

18   he was designated to have lived, and that's where

19   he was actually staying when he went there.  So I

20   would assume that's his home because that's where

21   the police found him and that's where they were

22   instructed to go.

23       Q.    Right.  But that's not what's in

24   paragraph 17.  You're talking about, in this

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 273

1    **paragraph, where Jakes was when he was slapped,**

2    **right?**

3         A.    It's the same place as where the police

4    got him.  Yes, sir.

5         **Q.    Oh, okay.  So that's your understanding**

6    **of the evidence and materials that you were given,**

7    **that Mr. Jakes was at home when he was slapped; is**

8    **that right?**

9         A.    That's correct.

10             MS. SPENCE:  Objection.

11        Mischaracterizes his testimony.

12             MR. GRILL:  Okay.  Well, I thought he

13        just agreed with me.

14   BY MR. GRILL:

15        **Q.    Okay.  Does -- if that is not the case,**

16   **that he was not at home, at his Aunt Bea's house**

17   **when he was slapped, does that impact your**

18   **opinions at all in this case that you offered?**

19             MS. SPENCE:  Objection.  Form.  And to

20        the extent the witness is being asked about

21        documents that are not being shown to him.

22             THE WITNESS:  No, sir.

23   BY MR. GRILL:

24        **Q.    Is it important to you that your**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 274

1    opinions are founded at least on an accurate

2    recitation of the facts that you are relying on?

3    Is that important?

4              MS. SPENCE:  Objection.  Form, to the

5         extent you're asking the witness to make a

6         credibility determination.

7    BY MR. GRILL:

8         Q.    I'm not asking for a credibility

9    determination.  I'm asking whether it's important

10   to you that the facts that you have decided to

11   rely on in your report, that you are actually

12   accounting for them accurately.

13             MS. SPENCE:  Objection.  Form.

14             THE WITNESS:  Yes.  That's important.

15        Yes, sir.

16   BY MR. GRILL:

17        Q.    Okay.  Because if you're not accounting

18   for the facts that your opinion -- that you

19   decided that your opinion is going to be based on,

20   if you're not accounting for those facts

21   accurately you would agree that that might impact

22   the basis for the opinions that you offer, right?

23             MS. SPENCE:  Objection.  Form.

24             THE WITNESS:  I want my report to be

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 275

1      based on facts.  That is correct.

2    BY MR. GRILL:

3        Q.      Because if you're not right about the

4    facts that your opinion is based on, that calls

5    into question whether your opinion has got a

6    sufficient basis in the facts, right?

7        A.      Yes, sir.

8        Q.      Okay.  In paragraph 18, this is kind of

9    buried in here, but you see my cursor?

10       A.      Yes, sir.

11       Q.      So this is a fact that you mentioned

12   already it says, "According to Anthony, the

13   officers threw him up against the wall and

14   handcuffed him."  So you know that there is

15   evidence from the police officers' account that

16   says this never happened, right?

17       A.      Absolutely.

18       Q.      Yet you don't include any mention of

19   that fact here, right?

20       A.      Well, I believe that I kind of couch

21   that when I say "according to Anthony" and

22   "according to Ms. Jones."  I'm giving that this is

23   their version of what took place.

24       Q.      Um-hmm.  Do you offer any opinion in

Page 276

1   here that would state that -- well, actually, let

2   me just rephrase it more affirmatively.

3            You don't offer any opinion in your

4   report that opines that if the officers' version

5   of events about how they -- what they did at

6   Ms. Jones's house indeed occurred the way they

7   described it in their reports, that that would

8   comport with accepted police practices.  You don't

9   offer any opinion like that, right?

10            MS. SPENCE:  Objection.  Form.

11            THE WITNESS:  If that's in my report --

12      I don't know that that's in my report, sir.

13   BY MR. GRILL:

14      Q.    It's not.  Yeah, so if -- you would

15   agree that the police -- it would be an accepted

16   police practice for the police to receive an

17   anonymous tip about somebody with knowledge about

18   a homicide.  That that's something that is a

19   source -- an accepted source of information or

20   leads that police officers, you know, use, and

21   rely on across the country.  You would agree with

22   that, right?

23      A.    That is critical information, you are

24   exactly right.  And I would expect that to be

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 277

1  memorialized with a note from the officer in the

2  homicide file that, Hey, I got a call at this

3  time, this is what the person told me, but I

4  didn't see any of that.

5      Q.      Well, hang on.  Since we're talking

6  about that, let's do this.  Well, actually before

7  I ask you this question, let me ask you this

8  first:  When you're talking about your expectation

9  that that would be memorialized, did you see any

10 documentation that that was memorialized in this

11 case?

12     A.      I saw in the police -- in the homicide

13 file where they said that -- they talk about Pack

14 and DeLacy being out there with the two SWAT guys.

15 And they went there based upon a tip that they

16 got, I certainly saw that.

17             I didn't see that expounded on anywhere

18 from Pack or DeLacy where they said, Hey, we got a

19 call from this person.  We didn't know who they

20 were.  We didn't know, you know, what their

21 relationship was.  I didn't see anything like that

22 from those guys.

23     Q.      Is it your opinion that that call was

24 made up?  That it never happened, the anonymous

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 278

1    call?

2        A.    I don't have any reason to believe

3    that.  They showed up at the house and they had to

4    have a reason for being there.

5        Q.    And if none of that was made up, then

6    the fact that the exact time of the call, or, I

7    think in your report, whether it was a female

8    voice or not, at least as far as what was

9    documented in the police reports, it's kind of all

10   beside the point, right?  The point is that an

11   anonymous call came in, right?

12       A.    Yeah.  And that was the impetus for

13   them to be at the house.

14            MS. SPENCE: Objection.  Sorry.  Form.

15   BY MR. GRILL:

16       Q.    Did you ever see this arrest report of

17   Mr. Jakes that was authored by Pack and DeLacy?

18   Did you ever see this?

19       A.    Yeah.  I did.

20       Q.    So right here it says, "The ROs

21   received information that a male, black subject by

22   the name of Anthony Jakes, male, black, 15 years

23   old of 1212 West 51st Street, rear house, was

24   wanted for questioning."

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 279

1          **So they did document that they received**
2     **information that Jakes was wanted for questioning.**
3               MS. SPENCE:  Objection.  I guess this
4          is misleading because I don't believe that
5          that was the initial question that you asked
6          when you showed this document.
7     BY MR. GRILL:
8          **Q.     The fact that an anonymous call -- that**
9     **they received information, excuse me, that Jakes**
10    **had information, it was documented, right?**
11              MS. SPENCE:  You're showing this
12         document --
13              MR. GRILL:  Don't talk.
14              MS. SPENCE:  Objection.  Form.  This is
15         confusing and misleading.
16              THE WITNESS:  I'm sorry.  This is a
17         document that refers to that.  This is not
18         what I call a note that describes, Okay, we
19         talked to this female.  Because this female
20         might have been a person who could have given
21         us additional information later on.  If she
22         had enough information to know that Anthony
23         Jakes might have had some knowledge of the
24         crime that happened the night before, we want

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 280

1       to follow back up with her if you can.

2                     So you want to know exactly what

3       happened in that conversation.  Did it come

4       into dispatch, and then dispatch relayed the

5       call to Pack?  Or how did Pack get the call?

6       You're absolutely right in that they

7       documented it in this report.  But as a

8       homicide investigator, I want to know a lot

9       more than just that that got us to this

10      point.  Because that is a person who has some

11      really good intelligence that I want to be

12      able to follow back up with.

13   BY MR. GRILL:

14      **Q.     Do you have any information from any**

15   **source, whatsoever, in this case, that the police**

16   **officers ever had more information than what they**

17   **claimed to have had about that anonymous call?**

18      A.     No, I didn't.  But that's one of the

19   things that I thought the detectives would want to

20   know about.

21      **Q.     That assumes, you would agree, that**

22   **there was additional information that they knew**

23   **and didn't write down, right?**

24      A.     Yes.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 281

1              MS. SPENCE:  Objection.  Form.

2       Foundation.

3  BY MR. GRILL:

4       Q.    And no one knows if that's indeed the

5  case, that there was more information that was

6  available that they could have recorded that would

7  have helped them track this anonymous witness

8  down, like you proposed, correct?

9              MS. SPENCE:  Objection.  Misstates the

10      evidence.  Misstates the record.  Misleading.

11      Form.

12  BY MR. GRILL:

13      Q.    Right?

14      A.    That -- I'm sorry.  That -- what's the

15  question again?

16      Q.    There is no evidence in the record,

17  anywhere, that would suggest that the police had

18  any more information than they claimed to have had

19  that would have allowed them to follow up on this

20  anonymous lead in the manner that you've proposed,

21  right?

22      A.    I did not see any other information.

23  No, sir.

24      Q.    Right.  So you are speculating that

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 282

1  **it's even something that they could have done.**

2          MS. SPENCE:  Objection.

3      Mischaracterizes the testimony.  Form.

4      Argumentative.

5  BY MR. GRILL:

6      **Q.      Right?**

7      A.      I think as an expert witness who dealt

8  with homicides, to ask of myself that question,

9  was there more -- was this something the

10 detectives could have done?  This is literally a

11 30-second deal.  Hey, guys, did you-all get more

12 information from this person?  No, we didn't.  Did

13 she give you -- but there's none of that in the

14 notes.  But it is documented in the arrest report.

15 Yes, sir, I'll acknowledge that.

16     **Q.      What difference does it make if it's**

17 **written in a note, like a handwritten note, versus**

18 **documented in an arrest report like I just showed**

19 **you?**

20         MS. SPENCE:  Objection.

21     Mischaracterizes the document that was shown

22     to this witness.  Misleading.  Form.

23         THE WITNESS:  I just want the

24     detectives to know this information, which

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 283

1          they do.  And to ask the questions, is there

2          anything else to it?  If there is not

3          anything else to it, then that's nothing.

4                    But if they said, yeah, and this

5          is what she said.  And how did she find out

6          about the information?  Who did she get the

7          information from?  Was she a witness to the

8          crime?  Who relayed her the information?  And

9          if she doesn't know any of that, and she

10         didn't relay that information, then fine.

11         But if she did, that's information that would

12         be valuable to the detectives.

13    BY MR. GRILL:

14         Q.    **This was an anonymous call, right?**

15         A.    Right.

16         Q.    **So you are challenging, then, the**

17    **credibility of the officers who claim that it was**

18    **anonymous, right?**

19              MS. SPENCE:  Objection.  Form.

20         Argumentative.  Mischaracterizes the

21         testimony.

22    BY MR. GRILL:

23         Q.    **Right?**

24         A.    No, sir.  I don't believe that I'm

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 284

1  challenging.  I absolutely agree that the call

2  came in as anonymous to dispatch.  Now, we've got

3  a relay here.  If the call came in the dispatch or

4  did the call come in directly to Pack?

5      **Q.    It came into the 9th District.**

6      A.    So if it comes into the --

7           MS. SPENCE:  Objection to the

8      representation.

9  BY MR. GRILL:

10     **Q.    Here.  It came in to Pack.**

11     A.    From dispatch.

12          MS. SPENCE:  Sorry.  One second.  Let's

13     just look at the -- can you mark it as an

14     exhibit, please?

15 BY MR. GRILL:

16     **Q.    Yes, it is.  Pack testified about it,**

17 **but it is in here too.  This will be exhibit -- so**

18 **this will be, I guess, Exhibit 6 [sic].  Right**

19 **here.**

20          MS. SPENCE:  Sorry, what's the Bates

21     stamp number?

22 BY MR. GRILL:

23     **Q.    9th District Tactical Incident.  What?**

24          MS. SPENCE:  The Bates stamp?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 285

1          MR. GRILL:  Jakes 18586.

2          MS. SPENCE:  Thank you.

3    BY MR. GRILL:

4     Q.     This is a 9th District report, okay?

5    And the responding officers, who are 9th District

6    officers, Pack and DeLacy, were the ones who took

7    this report.  And they also testified that the

8    call came in to the 9th District.

9               So with that, I need -- I forgot where

10   we left off because I just got distracted or

11   sidetracked.  Here's what I want to point out.

12   What I want to ask you.  The point here, sir, is

13   that you have no evidence, first of all, that

14   those questions that you say the police should

15   have asked were not asked, right?  That's a guess

16   that they weren't?

17        A.     Correct.

18               MS. SPENCE:  Objection.  Misstates the

19        testimony.

20   BY MR. GRILL:

21        Q.     And, in addition to that, you agree

22   that the call -- you do not dispute that the call

23   that came in was anonymous, right?

24        A.     No.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 286

1     **Q.    Okay.  No meaning you agree with me it**

2  **was anonymous.**

3     A.    Yeah, I don't dispute that.  Do we

4  know, did dispatch relay that via the dispatch

5  system?  Or did dispatch call them on the phone

6  and give them the information.

7     **Q.    Hang on.  Let me just ask my question.**

8  **And you agree when someone or something is**

9  **anonymous, the whole point of it is you don't know**

10  **who it is, right?**

11     A.    Sure.

12     **Q.    Right.  So if it's anonymous, it kind**

13  **of makes it difficult, if not impossible, then,**

14  **for the officers to follow up on who that**

15  **anonymous person was.  Because if they knew who it**

16  **was, they wouldn't be anonymous.  You agree with**

17  **that, right?**

18     A.    Well, yes, sir.  Certainly.  But once

19  again, did the dispatch relay the information to

20  Pack via the 9-1-1 of the radio channel or did

21  dispatch relay the information to Pack via cell

22  phone?

23     **Q.    We'll get to that in a minute, okay?**

24  **I've asked my questions on that point.  So here,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 287

1  **let's go back to this.**

2        MS. SPENCE:  I'm going to again renew

3     my objection about misstating what the

4     document Exhibit 6 says, and using that as a

5     basis to make a representation to the

6     witness.

7        MR. GRILL:  I'm not following you, but

8     I guess --

9        MS. SPENCE:  Well, you are talking

10    about the document says that they received a

11    call.  You've showed the document multiple

12    times and it's not there.

13       MR. GRILL:  I've also said that the

14    detectives, I did not show him the testimony,

15    but Pack, I believe, testified that he was --

16       MS. SPENCE:  Right.  I was referring to

17    Exhibit 6.

18 BY MR. GRILL:

19    **Q.    All right.  So -- all right.  So in**

20 **paragraph 18, you also point out that according to**

21 **Anthony the officers threw him up against the wall**

22 **and handcuffed him.  As Anthony arrived at the**

23 **police car, Ms. Jones brought out his shoes to the**

24 **car for him.**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 288

1            And while Anthony was inside the police

2    car, the officers, without a search warrant,

3    searched through the house looking for a possible

4    murder weapon involved in the Garcia shooting and

5    no weapon was found.  You agree that that is not

6    what the police officers say occurred, right?

7        A.     Yes.

8        Q.     You would agree that it is an accepted

9    police practice for the officers to then follow up

10   on that anonymous tip that Mr. Jakes had

11   information about the case, right?

12       A.     By going to the house?

13       Q.     Yes.  In fact, that's what you would

14   expect them to do, right?

15       A.     Yes, sir.

16       Q.     And you agree that it's an accepted

17   police practice for the police to ask permission

18   of people to enter their home, right?

19       A.     Correct.

20       Q.     And that it is reasonable, if people

21   choose to agree and allow them in, that the police

22   can then come in somebody's home, right?

23       A.     Yeah.  Generally, in a situation like

24   that, I would think that because we're going to

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 289

1  talk to someone who might possibly have

2  information about a murder, we just go ahead and

3  get a consent to search form and have them sign

4  it.

5      Q.    Sure.  But either way, you don't need a

6  consent to search.  It's possible for somebody,

7  and completely appropriate for a person to just

8  verbally give their consent for the police to

9  enter.  That's acceptable, right?

10          MS. SPENCE:  Objection to form.

11          THE WITNESS:  I'm sorry, Mr. Grill, you

12      cut out there for a minute.

13  BY MR. GRILL:

14      Q.    That's okay, I'll ask the question

15  again.  It's an acceptable police practice for

16  people to simply verbally agree to allow the

17  police to come in their home without a warrant,

18  right?

19      A.    Yes.

20      Q.    And it is also an acceptable police

21  practice for the police to ask a person inside

22  that home if they would agree to come with them to

23  the police station to talk to them about, in this

24  case, a homicide.  That that is an acceptable

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 290

1    thing for the police to ask somebody to do, right?

2        A.    Yes.

3        Q.    And if it's a minor, it's acceptable

4    for that minor's guardian to give the police

5    permission to take that minor with them to ask

6    them questions at the police station about that

7    homicide, right?

8        A.    Yes.

9        Q.    And if that person agreed to go with

10   the police, it's acceptable for the police to take

11   them with them, right?

12       A.    Yes, sir.

13       Q.    And take him down --

14           MS. SPENCE:  Wait one second, Andrew.

15       He's still answering the question.

16           THE WITNESS:  But remember, if I think

17       that this person who's a witness is a threat,

18       or I feel that I need to search them for

19       weapons and/or drugs, I am going to do it

20       now.

21               I don't need to get -- because if

22       they're not a threat to me when I put them in

23       my car, then why are they a threat to me when

24       I get to police headquarters?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 291

1  BY MR. GRILL:

2      **Q.     Sir, I appreciate you wanting to insert**

3  **that information here, but I'm not asking that**

4  **question.  So I would appreciate, so we can finish**

5  **this deposition, I would appreciate if you just**

6  **answer the questions that I'm asking.**

7      A.     Mr. Grill, it's my deposition.

8      **Q.     It's actually mine.**

9      A.     I think it's mine.  I think I'm the

10  one.

11      **Q.     You're the deponent, but I'm the one**

12  **that gets to ask the questions.**

13      A.     I understand that, but I'm just trying

14  to be fair.

15      **Q.     Right.  And so fair is, at least as far**

16  **as I'm concerned, is you answering the question**

17  **that I'm actually answering [sic], okay?**

18          MS. SPENCE:  Object to the extent that

19      you're telling this witness he's not

20      answering the question, when he is.  He is

21      actually answering your questions, Andrew.

22  BY MR. GRILL:

23      **Q.     Well, giving a responsive answer.  So**

24  **you would agree that it is an acceptable police**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 292

1    practice for the police to then transport that

2    juvenile who agreed to go with them to the police

3    station, right?

4         A.    Yes.

5         Q.    And you would agree that there is no

6    standard that, at least according to CPD in 1991,

7    that required the police to search Mr. Jakes

8    before putting him in the car?

9         A.    I would completely disagree with that.

10   I think the standard of law enforcement across

11   America is, at any time in history, if you're

12   going to put a witness or a person in your car

13   that you feel threatened by, then you pat them

14   down.  And you pat them down before you put them

15   in the car where they could pull a gun out and

16   shoot you in the back of the head.

17        Q.    Sure.  So have you seen -- if you

18   accept the police version of events.  Have you

19   seen any evidence in any police report or in any

20   officer's testimony you reviewed, that the police

21   looked at Mr. Jakes as a threat when they went and

22   met with him and Ms. Jessie Mae Jakes at her home

23   on September 16th?

24        A.    No.  When they got to the police

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 293

1  headquarters they did, or they wouldn't have

2  patted him down there.  If you're going to pat him

3  down, pat him down at his house, don't pat him

4  down at the police station.

5       **Q.    So, again, let's go back to the**

6  **question that I actually asked you.  Are you aware**

7  **of any order or requirement or standard that was**

8  **in effect in 1991, that the CPD was subject to,**

9  **that required police officers to pat down a**

10 **non-violent, non-threatening witness before they**

11 **transport that person to the police station?**

12          **And that person was being transported**

13 **there because they agreed to go and talk to the**

14 **police about something they knew about a crime.**

15 **Do you know about any standard like that that was**

16 **in effect in 1991?**

17          MS. SPENCE:  Objection.  Form.

18          THE WITNESS:  I do not.

19 BY MR. GRILL:

20      **Q.    Right.  And did you see any -- is it**

21 **acceptable, then, when police get a person -- an**

22 **acceptable police practice that when the police**

23 **take a civilian witness, a non-threatening**

24 **civilian witness into the police station, and**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 294

1   **bring them to a secured area, that it is a**

2   **reasonable practice at that point to pat the**

3   **person down to be sure that they don't have**

4   **anything that they're not supposed to have on**

5   **them?**

6       A.    It is no more reasonable to pat them

7   down then than when you put them in the car.

8       **Q.    So the answer is is that it would be an**

9   **accepted police practice to pat them down at that**

10  **point, once they're in a secured area within the**

11  **police department, right?**

12          MS. SPENCE:  Objection.

13      Mischaracterizes the testimony.

14          THE WITNESS:  I would have had an

15      expectation they would have patted him down

16      before they put him in the car to take them

17      to the police headquarters.  If they want to

18      do it secondarily, that's fine, but you have

19      to do both of them.

20              If you think he's a threat or you

21      think -- nothing is more secure than the back

22      seat of a police car if you're putting him in

23      there.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 295

 1   BY MR. GRILL:

 2       Q.     And that expectation is just based on

 3   the totality of your training, education, and

 4   experience; is that right?

 5             MS. SPENCE:  Objection.

 6             THE WITNESS:  That's law enforcement

 7        101.  A police officer is not going to put

 8        somebody in their car that they think they

 9        are going to need to search without searching

10        them.  You don't search them at the police

11        headquarters, why don't you search them

12        before you put them in the car?

13   BY MR. GRILL:

14       Q.     Right, but -- well, you already told me

15   what I needed to know on that.  Okay.  So it seems

16   to me that if you accept the police version of

17   events, that by and large -- the police version of

18   events about going to pick up Mr. Jakes at his

19   home, bring him down to the police station, up and

20   to the point where he gets searched at the police

21   station, that by and large, the way the police

22   tell it, it complied and comported with accepted

23   police standards and practices in 1991, right?

24       A.     Correct.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 296

1      Q.      And yet you offer no opinion like that

2   anywhere that, Hey, if the police did what they

3   said they did here -- you don't offer that

4   opinion?

5      A.      Mr. Grill, how can I offer that opinion

6   if my opinion is that he should have been patted

7   down before he ever got in the car?  I'm not

8   disagreeing that he was patted down when he got to

9   the building.  So you're asking me to contradict

10  what it is that I'm saying.

11     Q.      Your opinion that he should have been

12  patted down in the car is based upon the

13  presumption that he was a threat.  And you have

14  already acknowledged that there is no evidence

15  that he was?

16     A.      He is no more a threat then than he is

17  when he gets to police headquarters.

18     Q.      So, again, the question that I asked

19  that you didn't answer is nowhere in your report

20  do you acknowledge that the police account of

21  picking up Mr. Jakes and bringing him to the

22  police station comports with accepted police

23  practices, to your knowledge, in 1991.  You don't

24  offer that opinion, right?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 297

1      A.      No, sir.

2      Q.      Instead, what you offer here is an

3  analysis of what Mr. Jakes claims -- analysis of

4  the police officers' conduct in light of how

5  Mr. Jakes described what occurred, right?

6      A.      And I preface that by saying,

7  "According to Mr. Jakes" and "according to

8  Ms. Jones."

9      Q.      Right, that's all I'm saying.  I'm just

10  asking if you agree.  So why not acknowledge in

11  your report that the police, according to their

12  account, acted entirely within accepted police

13  practices, as you understood them to exist in

14  1991?  Why not just say that at some point?

15          MS. SPENCE:  Objection.

16          THE WITNESS:  I suppose I could have.

17          MS. SPENCE:  Let me object to the

18      extent that it calls for you to disclose any

19      conversations that you've had with attorneys

20      in preparation for your report.  You've

21      testified to the fact --

22          MR. GRILL:  I'm sorry, were you -- your

23      hand, I think, was over your mouth.

24          MS. SPENCE:  Sorry.  I said objection

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 298

1          to the extent it calls for you to testify or

2          disclose conversations you've had with

3          attorneys in the drafting of your report.

4          You can testify to the fact that you relied

5          on in the formation of your opinions that

6          have been disclosed.

7                  MR. GRILL:  So you're saying that

8          the -- you're objecting because the answer to

9          this question might impinge on

10         attorney/client communications?  Is that your

11         objection?

12                 MS. SPENCE:  No, the work product.

13         It's not an attorney/client communication.

14         I'm saying to the extent that he can answer

15         without doing it, then he can answer.

16                 MR. GRILL:  So let's back up, then.

17         What is the basis for your work product

18         objection?  You're asserting it, I want to

19         know.

20                 MS. SPENCE:  About the drafting of the

21         report?  Why something is not included?  I

22         mean, this is what we did before, right?  To

23         the extent that you choose not to include,

24         and that's a fact that you choose not to rely

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 299

1      on.

2              MR. GRILL:  You modified that

3      objection, though, we moved past it.

4              MS. SPENCE:  Right.  So I'm restating

5      the objection to the question that you're

6      asking, right?  It's not a different

7      objection, but I have to object at the time

8      that you are asking that question.

9              MR. GRILL:  I get it.  So let's just go

10     through it here.  Tell me the basis for your

11     work product objection.

12             MS. SPENCE:  I'm saying that you are

13     asking a question that I believe asks

14     Mr. Miller to possibly disclose conversations

15     that he had about what he chose to include in

16     a report, and what facts he chose to rely on

17     in the drafting process, right?

18                     And if that's going to disclose

19     those conversations, I believe, that that is

20     protected as work product.  He can testify as

21     to the facts that he relied on in the

22     opinions that he disclosed.

23     BY MR. GRILL:

24         Q.      **Are the reasons that this information**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 300

1    **was excluded from this report, do they touch on or**

2    **do they concern attorney/client communications?**

3            MS. SPENCE:  Attorney/client

4        communications?  As my communications with

5        Mr. Jakes.

6    BY MR. GRILL:

7        **Q.    Do they concern privileged**

8    **communications?  Because work product is**

9    **different.**

10           MS. SPENCE:  I'm telling Mr. Miller if

11       he can answer that without disclosing that,

12       then he can answer that question.  So that's

13       what I'm saying.  I'm not telling him not to

14       answer your question.  I don't understand the

15       argument that we're having.  He can answer

16       your question.  If he can answer that

17       question, then he can.

18   BY MR. GRILL:

19       **Q.    Mr. Miller, can you answer the question**

20   **without touching on any of the discussions you had**

21   **with Plaintiff's counsel when you were writing**

22   **this -- when this report was being drafted?**

23       A.    Yeah.  I'm sorry.  It's been a minute

24   now.  Could you ask me the question again?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 301

1      Q.     Yeah.  Why didn't you include, in your

2   report, any mention that the police officers'

3   conduct as it concerns picking up Jakes and

4   bringing him down to the police station and

5   searching him there, all of that comported with

6   accepted police practices as you understood them

7   in 1991?  Why didn't you include that in your

8   report?

9             Counsel objected and so now the

10  question to you is, can you answer that question

11  without touching on any of the conversations that

12  you had with Plaintiff's counsel when this report

13  was being put together?

14     A.     I can.  I just elected not to include

15  that.

16     Q.     And so why did you elect not to include

17  it?

18     A.     I'm referencing in the statement that

19  we've been going over, I'm talking about,

20  "According to Anthony," "according to Ms. Jones."

21  I'm giving credit to them.  As I said, I could go

22  through this whole thing and talk about the

23  officers said this and they said this.  I just

24  elected to go at it from this direction that

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 302

1    according to them.  I didn't say, factually, this

2    is what happened.  I said according to them this

3    is what happened.  Absolutely the officers have a

4    different version of what took place and I

5    certainly respect that.

6         Q.     Right.  But you recognize it's a

7    different version that you don't recognize or

8    account for in this report, right?

9         A.     No, sir.  But once again, if every time

10   I say, According to Anthony or according to

11   Ms. Jones," then I conversely say, but according

12   to the police and according to Kill this, then I

13   would never get my opinions accomplished.

14             So I elect to write my report in the

15   manner that I feel is most effective for the

16   opinions that I'm giving.  The part that we're

17   talking about here is, in essence, a summary

18   before we even get to the opinions.

19        Q.     Why not just write the report from the

20   perspective of the police officers if what they're

21   saying comported with accepted police practices?

22        A.     I certainly -- that was an option that

23   I could have had.  My intent here was to look at

24   the opinions.  My opinions are based upon what I

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 303

1    feel that police did right or the police did

2    wrong.

3        Q.    Right.  So why not just write it

4    from -- why write it from Jakes's perspective and

5    not the officer's perspective?

6        A.    I'm writing it according to the

7    methodology that you talked about earlier that I

8    felt was appropriate for the report to summarize

9    in this section what took place.

10            I'm not giving any more credit to

11   Mr. Jakes or to Ms. Jones.  I'm saying according

12   to them.  I'm not prefacing this by saying, This

13   is what happened.  I just said according to them.

14       Q.    Well, you are giving preference because

15   you're not accounting for the officers.

16       A.    And it's my report --

17            MS. SPENCE:  Objection.  Form.

18       Argumentative.  Now you're just arguing with

19       the witness, Andrew.

20   BY MR. GRILL:

21       Q.    Correct?

22            MS. SPENCE:  Objection.  Same

23       objection.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 304

1  BY MR. GRILL:

2      Q.      Let's go down to paragraph 21.  Okay.

3  So you have this statement in here, "I did not

4  observe any documentation that Officer Danaher

5  informed Mr. Jakes that he could leave after he

6  was charged, put in a cage, and processed for

7  possessing alleged narcotics."  Do you see that?

8      A.      Yes, sir.

9      Q.      Why is this information in your report?

10  Why do you have this fact in here?

11      A.      I think that a part of what I read in

12  this case is the inference that Mr. Jakes at any

13  point could just get up at police headquarters and

14  leave, based on the things that I have read.

15      Q.      And it is your opinion that proof that

16  he was never -- or some of the proof that he

17  couldn't just get up and leave was because nobody

18  told him that he could, right?

19          MS. SPENCE:  Objection.  Form.

20      Particularly to the term "proved."

21          THE WITNESS:  I certainly don't think

22      that if you're a juvenile, or an adult, and

23      you're in police headquarters and they

24      brought you down there, that you go, I'm out

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 305

1        of here.  I just don't think it works that

2        way.

3    BY MR. GRILL:

4        Q.     And the fact that nobody told him that

5    he could go, that's part of the pressure that was

6    applied to Mr. Jakes in order to break his will

7    down to where he would falsely confess, right?

8            MS. SPENCE:  Objection to the form.

9        Argumentative.

10           THE WITNESS:  I don't think I say that

11       in my report, sir.

12   BY MR. GRILL:

13       Q.     No, I'm asking if that's your belief,

14   though.

15       A.     I would really rather stick to what my

16   report talks about, sir.

17       Q.     Okay.  Okay.  Well, does -- if this --

18   so I'm showing you what was marked as -- this is 6

19   I think.

20           MS. SPENCE:  No, this is 7.

21   BY MR. GRILL:

22       Q.     Well, does -- is this -- I'll show you

23   this.  So you read the supp report, right?

24       A.     Yes, sir.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 306

1    Q.    And your report says there was no

2    evidence anywhere that Officer Danaher informed

3    Mr. Jakes that he could leave.

4         I want you to look, though -- so up

5    here it talks about how Jakes got there, they

6    patted him down, found the drugs -- the suspected

7    drugs on him and processed him.

8         I want you to start here with my hand

9    and the report goes on to say, "The subject Jakes

10   was placed under arrest for this offense, drug

11   offense, and taken down the third floor hallway to

12   Area 3 Youth.  At Area 3 Youth he was processed

13   for this offense and referred to juvenile court.

14        Now, upon completion of this

15   processing, the subject Jakes was told he could be

16   returned home and be interviewed by the violent

17   crimes detectives later.  Or he could go down the

18   hall to the violent crimes office and tell the

19   sergeant that he wished to be interviewed before

20   going home.  Jakes related that he did not know

21   how to get to the violent crimes office, but

22   wished to be interviewed before going home.

23        The youth officer summoned Detectives

24   Duckhorn and O'Riley from the violent crimes

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 307

1  **office, and Jakes went to the waiting area,**

2  **pending his interview regarding the above RD**

3  **number."**

4          **So in light of that, this statement**

5  **that you did not observe any documentation, I**

6  **mean, I guess it's possible that you missed it,**

7  **but you would agree that this is documented in the**

8  **supp report that you relied on and reviewed in**

9  **writing your report, right?**

10      A.      Once again, I'm not trying to be

11  argumentative, but I don't see a note from Officer

12  Danaher that says that.  I see the police version

13  that that's what they did, but I didn't see any

14  note in there saying, Well, we can take you to the

15  house, if you just want to go home, we've got a

16  squad car that will drive you.  Or you can go out

17  front and wait on your grandmother to get here.  I

18  didn't see any of that.

19      **Q.      So because there wasn't a handwritten**

20  **note, that's why you're saying you didn't observe**

21  **any documentation?**

22          MS. SPENCE:  Objection.  Form.

23  BY MR. GRILL:

24      **Q.      Is that your testimony?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 308

1      A.     Yes, sir.  But --

2      **Q.     So is it your opinion --**

3             MS. SPENCE:  He's still answering,

4      Andrew.

5  BY MR. GRILL:

6      **Q.     I thought he was done.  Are you done?**

7      A.     No.  But I do acknowledge the report

8  that you just showed me documents that the police

9  said that that's what took place.

10     **Q.     And you agree --**

11            MS. SPENCE:  Andrew, he's still

12     talking.

13  BY MR. GRILL:

14     **Q.     And you agree that that supp report is**

15  **a form of documentation, right?**

16     A.     That this is, yes, sir.

17     **Q.     Yeah.  And so to say that you didn't**

18  **observe any documentation, assuming that you**

19  **didn't miss this, that is not an accurate**

20  **statement, right?**

21            MS. SPENCE:  Objection.  Form.  And

22     asked and answered.

23            THE WITNESS:  I did read that document

24     you're talking about.

1  BY MR. GRILL:

2      Q.      Yeah.  And it is -- contrary to your

3  report, it is inaccurate to say that there is no

4  documentation that Mr. Jakes was told he could

5  leave, right?

6      A.      Well, we're going to split hairs here

7  because I don't think it's documentation because

8  it's in a police report that this is what the

9  detective says.  I mean, if Danaher tells me, this

10  is what took place, but I don't see anything from

11  Danaher.

12          And if I'm reading the depositions of

13  Danaher and Burke, they both say, in their own

14  words, yeah, it would have been good if we went

15  ahead and documented that sort of stuff, but we

16  just didn't.

17      Q.      So I guess the splitting hairs is over

18  how it's documented.  Where it's written down in a

19  handwritten note versus a typed police report.

20  That's what you mean by splitting hairs?

21      A.      Yes.

22          MS. SPENCE:  Objection.

23      Mischaracterizing testimony.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 310

1   BY MR. GRILL:

2       **Q.    If you read this, why did you not make**

3   **it clear in your report that what you meant by**

4   **documentation was that there was no handwritten**

5   **note from Danaher describing this?**

6           MS. SPENCE:  Objection.  Form.

7       Foundation.  Mischaracterizes their report.

8           THE WITNESS:  It's just the way I wrote

9       my report, sir.

10  BY MR. GRILL:

11      **Q.    Do you think it's possible people could**

12  **misunderstand what you mean by documentation.**

13  **Meaning documentation, to other people, might**

14  **reasonably include the actual supplemental police**

15  **reports?**

16      A.    Sure.

17          MS. SPENCE:  Objection.  Calls for

18      speculation.  Mr. Miller, if you can just

19      pause so I can object, I would appreciate it.

20  BY MR. GRILL:

21      **Q.    Did you believe that this supplemental**

22  **police report is not credible?  That it's**

23  **inaccurate on this point?  That Mr. Jakes was told**

24  **that he could go home, for example?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 311

1          MS. SPENCE:  Objection to the extent it

2      calls for this witness to make a credibility

3      determination -- where you're asking the

4      witness to make a credibility determination.

5  BY MR. GRILL:

6      **Q.    I am asking you this in light of your**

7  **testimony that there was not a handwritten note**

8  **that corresponds, or at least one that you saw,**

9  **that corresponds to the information in this supp**

10 **report.**

11          **So in light of that testimony, is it**

12 **your belief or your opinion that the supplemental**

13 **police report, the typed report, is inaccurate or**

14 **untruthful on that point?**

15          MS. SPENCE:  Same objection.  You're

16      asking the witness -- objection because

17      you're asking the witness to make a

18      credibility determination.

19          THE WITNESS:  I would only testify in

20      court if called, about this issue, about what

21      I wrote.

22  BY MR. GRILL:

23      **Q.    Okay, let's go down to 21.  You say**

24  **here, "However, in a desire to be helpful he**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 312

1    suggested that" -- and he being Jakes -- "that the

2    three girls from the neighborhood might have

3    information about the murder, as he had seen them

4    on the front porch near the time the murder

5    occurred."

6            So you have already testified here

7    today that you have no basis or expertise to offer

8    any opinion about someone's mindset.  You already

9    gave that testimony today, right?

10        A.    Yes.

11            MS. SPENCE:  Objection, again, to --

12        objection because it calls for this witness

13        to give a legal conclusion.

14    BY MR. GRILL:

15        Q.    So you should not be offering opinions

16    about whether, if Mr. Jakes said these things,

17    that it was his desire to be helpful.  You would

18    agree that that is outside the scope of what you

19    should be -- what you are here to testify as an

20    expert about, right?

21            MS. SPENCE:  Objection.  Again, asking

22        the witness to make a legal conclusion as to

23        what the scope of the testimony will be, or

24        what the law is as to what expert testimony

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 313

1      will include.

2   BY MR. GRILL:

3          **Q.      Do you agree?**

4              MS. SPENCE:  Also form.

5              THE WITNESS:  I feel when the

6          detectives asked him about people who had

7          information that he wanted to be helpful to

8          the police officers.

9                   Was he of a mindset to be

10         helpful?  You're correct, sir, I don't know

11         what his mindset was.  I think he was brought

12         down there to see if he could supply any

13         information about this that he might know

14         around what was taking place during that time

15         and that's what he did.

16   BY MR. GRILL:

17         **Q.      Um-hmm.  And so it's your opinion that**

18  **he wanted to help these officers that came to his**

19  **house -- or that were connected to a group of**

20  **police officers that came to his house, threw him**

21  **up against a wall, handcuffed him, and took him**

22  **down to the police station against his will?**

23  **That's your belief, that he wanted to help those**

24  **people?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 314

1          MS. SPENCE:  Objection.

2       Mischaracterizes the record.

3       Mischaracterizes the statements in this

4       exhibit.  Form.  Argumentative.

5    BY MR. GRILL:

6       Q.     I'll just withdraw the question.  Let

7    me ask it this way:  Here you say that he

8    suggested that three girls from the neighborhood

9    might have information about the murder, as he had

10   seen them on the front porch near the time the

11   murder occurred.

12          You recognize that the supplemental

13   reports say that what Mr. Jakes actually told them

14   was that he was with these people at the time of

15   the murder.  Do you understand that?

16          MS. SPENCE:  Objection.  The attorney

17       is asking questions about a document the

18       witness is not being shown.

19   BY MR. GRILL:

20       Q.     So this is the supp report, this is

21   Jakes's -- City Jakes 13.  And it says, "In

22   summary, but not verbatim, he," Jakes, "related

23   the following account of events:  Related that at

24   about 2330 hours he was in front of his home with

1  a number of persons.  These included Harris,

2  Denise; Little, Nikia, and Harris, Annette Harris.

3  He was also with a cousin on his father's side

4  nicknamed Quarter Pounder, no further description.

5  And another cousin named Tweety, no further

6  description.

7           Along with Jakes, he related that these

8  were the only persons on the street at this time."

9           Now, these people that Jakes is saying

10  he was with did not corroborate Jakes's account,

11  which was that he was with these people.  They

12  said that they hadn't seen him.  Right?  You

13  understand that that's what's in the record and

14  the documents that you reviewed?

15           MS. SPENCE:  Again, objection.  The

16       attorney is asking the witness about

17       statements in a document that the witness has

18       not been shown.

19           THE WITNESS:  I'm sorry, I think what

20       you just read me that he says he was with

21       these people, these three girls and then his

22       two cousins.  But I don't know see anywhere

23       in there where it mentions that they said

24       they didn't see him.  So, I'm sorry, is that

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 316

1      mentioned somewhere and I missed it?

2   BY MR. GRILL:

3      Q.    Right.  No, my point is here, what

4   Jakes is saying, according to the police, is that

5   at some point before the shooting he was with

6   these people.  You understand that that's what's

7   documented here, right?

8      A.    Yes, sir.

9      Q.    Okay.  And Jakes is telling the police,

10  according to him, in your report, that these

11  people might have information about the murder,

12  because he had seen them on the front porch near

13  the time of the murder, right?

14     A.    Yes.

15     Q.    Okay.  You know, I think you've already

16  acknowledged this earlier today, that when the

17  police went out and talked to, well, the Harris

18  sisters, at least, they denied seeing Jakes, that

19  they weren't with him at all that night.  You

20  understand that, right?

21          MS. SPENCE:  Objection.  Form.

22     Mischaracterizes the testimony.

23          THE WITNESS:  I do remember -- I do

24     recall there was some -- in some document I

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 317

1       read about the bottle being thrown and was

2       he -- from one of the Harrises, was he there

3       or not there when the bottle is being thrown.

4               I certainly known that Quarter

5       Pounder and Tweety both say they were with

6       Jakes, so they're going to be good witnesses.

7       Ms. Harris, Denise Harris, is the one that

8       changed her story saying I wasn't even there.

9       And the next day telling people that she

10      actually watched the murder.

11              So I looked at all their

12      information and all their reports.  It wasn't

13      that I discounted any of that, but I don't

14      think it's fair to say that none of these

15      people say he was there, because both Quarter

16      Pounder and Tweety both said he was there.

17  BY MR. GRILL:

18      Q.      Okay.  So let's back up.  So Denise

19  told the police that she was not with Mr. Jakes,

20  she was at somebody else's house when this all

21  happened, right?

22      A.      That's correct.

23      Q.      According to her she's not with Jakes,

24  she never saw Jakes, despite Jakes saying that he

Page 318

1    **was with her at some point that night before the**

2    **shooting, right?**

3            MS. SPENCE:  Objection.

4        Mischaracterizes the evidence and the record.

5    BY MR. GRILL:

6        **Q.    Right?**

7        A.    I think that she -- I can't remember

8    the exact time she left, whether it was 10:30 or

9    10:00 o'clock.  And I don't know if Jakes believed

10   that he saw her earlier in the evening.  I don't

11   know if that's preferenced on here whether he saw

12   them earlier in the evening, and that's why he

13   thought they might have been out there.  I don't

14   know that.

15       **Q.    And it's also inaccurate to say that**

16   **Quarter Pound said that he was with Jakes,**

17   **because, as I've already pointed out to you,**

18   **Quarter Pound was not interviewed by the police.**

19           **And when he was deposed he said that**

20   **Jakes was not with him when he was cleaning up the**

21   **glass, right?  And that was after they threw --**

22   **after the bottle got thrown, Quarter Pound**

23   **testified that Jakes ran off.  That's the last**

24   **time he saw him.**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 319

1           MS. SPENCE:  Objection.  Form.

2           THE WITNESS:  Right.  But Quarter Pound

3      and Tweety both put him there.

4  BY MR. GRILL:

5      **Q.     So my question is is why not account**

6  **for Denise's statement to the police and Quarter**

7  **Pound's testimony that the last time he saw Jakes**

8  **was after they threw the bottle; after the bottle**

9  **went through the window?**

10      A.     I certainly could have.

11      **Q.     What was the methodology or decision**

12  **tree that you employed to decide to not include**

13  **that information that was contrary to what Jakes**

14  **told the police about his whereabouts, as set**

15  **forth in you report?**

16      A.     Once again this is in the summary

17  section.  I don't think we've gotten to my

18  opinions yet.

19      **Q.     Well, these are the facts that your**

20  **opinions are based on, right?**

21      A.     It's a part of.  But I don't think when

22  I talk about, like, when you get to Page 16 in my

23  opinion, I don't think that that really represents

24  whether Denise and Annette said they saw him out

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 320

1   there, but I respect where you're going.

2       Q.    Okay.  So they're part of the facts

3   that your opinions are based on, right?

4       A.    Yes.

5       Q.    Okay.  So you say here, after speaking

6   with Detectives Duckhorn and O'Riley,

7   approximately 30 minutes later, Mr. Jakes spoke

8   with Detectives Kill and Boudreau.  Okay.  Where

9   are you getting the 30 minutes from?

10      A.    It would have been some document that I

11  read.  I can't tell you which one it was.

12      Q.    Do you have any understanding as to how

13  much time actually was spent interviewing

14  Mr. Jakes that evening?

15          MS. SPENCE:  Objection.  Form.

16          THE WITNESS:  Actually --

17  BY MR. GRILL:

18      Q.    I'm not talking about the time he was

19  at the police department, I'm talking about actual

20  time spent interviewing him, total, across all the

21  officers.  Do you have any understanding of what

22  that time might be?

23      A.    I haven't added those hours up.  No,

24  sir.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 321

1      Q.      You have an opinion in here later on
2   that suggests that the questioning shouldn't last
3   longer than a total of four hours?
4      A.      Yes, sir.  Or maybe it's six hours.  I
5   don't recall.
6      Q.      Yeah, it actually may be six.  Is it
7   your opinion that Mr. Jakes is questioned for a
8   length of time that did not comport with that
9   standard?
10          MS. SPENCE:  Objection.  Form.
11          THE WITNESS:  I don't think it's like a
12      deposition where the seven hours is the whole
13      seven hours.  I think when you get there, at
14      1:15, or when they first start talking to him
15      at 4:15 or 4:30, I think the clock starts
16      then.
17              I think when he's in a place
18      where he's not allowed to leave from, I think
19      that's when the clock starts running.
20   BY MR. GRILL:
21      Q.      Okay.  So that clock, that six hours,
22   is time spent before, I believe your opinion is,
23   before they have to make a decision as to whether
24   to charge him?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 322

1      A.      Real time.  Yes, sir.

2      **Q.      So do you know if that was the standard**

3  **in 1991?**

4      A.      I'm certain that it was.  I don't know

5  the national standard on that, but I know in a

6  document that we read with Chicago PD earlier, I

7  think it references the six hours.

8      **Q.      Okay.  Other than that, is that just**

9  **something you're saying based on your experience**

10  **and training?**

11      A.      Yes, sir.  I think it was pretty

12  well-known in 1991 that you didn't want to keep a

13  juvenile person, suspect, witness, you know, in

14  custody or at the police facility over a period of

15  time.

16              Why would you want to?  Why wouldn't

17  you just want to -- why would we not want to

18  minimize our risk and just back off?  Send him

19  home.  Let him talk to his grandmother.  Let him

20  get his lawyer.  Why wouldn't we want to do that?

21  What's the hurry here?

22      **Q.      Well, according to the police Mr. Jakes**

23  **agreed to say there.  And that would be**

24  **appropriate, then.  If he wanted to say there, he**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 323

1    can stay there as long as he wants, right?

2              MS. SPENCE:  What would be appropriate?

3         Sorry.  Objection to form.

4    BY MR. GRILL:

5         Q.      There is no standard that says a

6    witness who agrees to stay in the police station

7    has to be forcefully sent home after six hours, if

8    that person is agreeing to be there, right?

9              MS. SPENCE:  Objection.  Form.

10             THE WITNESS:  Yes, sir.

11   BY MR. GRILL:

12        Q.      All right.  So, in 22 you say, "At this

13   point, according to Mr. Jakes, Detectives Kill and

14   Boudreau locked Mr. Jakes in a room, third floor,

15   by himself and went out into the field to

16   interview witnesses."  What's that based on?

17   Where are you getting that fact?

18        A.      I'm pretty certain I got that from

19   Mr. Jakes.  I don't recall if the detectives said

20   that he had room to just roam the whole detective

21   office, which wouldn't really make sense to me

22   that he would.

23             But they had him put into a room, as we

24   talked earlier, he wasn't handcuffed and he was in

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 324

1    there.  So I honestly don't recall where I got

2    that from, but I don't reference it from a cite.

3          **Q.      Did you consider Detective Boudreau's**

4    **testimony at the motion to suppress where he said**

5    **that Mr. Jakes was -- when they spoke with him,**

6    **before they went out on the street looking for the**

7    **Harrises and Quarter Pound and everybody, that**

8    **when he spoke with him that he was on a bench**

9    **outside of an office on the 3rd floor, that he**

10   **wasn't even in an interview room.  Did you**

11   **consider that testimony?**

12         A.      I did.

13         **Q.      You didn't put it in here.  Is there a**

14   **reason why you excluded that testimony?**

15         A.      It wasn't that I excluded it, I just

16   didn't include it.

17         **Q.      Are we supposed to credit -- is the**

18   **reader of your report here supposed to credit**

19   **Mr. Jakes's account over Detective Boudreau's**

20   **account on this point?**

21               MS. SPENCE:  Objection.

22         Mischaracterizes the testimony, as well as

23         the report, Exhibit 3.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 325

1  BY MR. GRILL:

2      Q.    Well, let me ask it this way:  Are you

3  crediting Mr. Jakes's account over Detective

4  Boudreau's account about where Mr. Jakes was when

5  Detective Kill and Detective Boudreau spoke to him

6  before they went out to look for Denise and

7  Annette and so on?

8      A.    I am writing my report based on what I

9  was reading and what I was including in my report.

10     Q.    Okay.  You say that Jakes was locked in

11  a room.  Did you review Mr. Jakes's deposition

12  testimony?

13     A.    I absolutely did.

14     Q.    Okay.  Then you'll know, then, that

15  Mr. Jakes doesn't say that in this deposition

16  anywhere.

17         MS. SPENCE:  Objection.  Is that a

18     question?

19  BY MR. GRILL:

20     Q.    Well, let me ask it this way:  Why

21  don't -- why didn't you recognize in your report

22  that Mr. Jakes never said that that's what

23  happened in his deposition?

24     A.    I honestly couldn't tell you, sir.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 326

1    Q.    Okay.  Do you think that was an

2    important thing to point out that even

3    Mr. Jakes -- I mean, you're saying here that

4    according to Mr. Jakes, Kill and Boudreau locked

5    him in an interview room.  But Mr. Jakes doesn't

6    say that in his deposition.  So I'm asking you why

7    you didn't include that fact in your report?

8    A.    It's one of the things I could have

9    included or not included.

10    Q.    Well, you're saying this is according

11    to Mr. Jakes.  Don't you think that would be an

12    important thing to point out, that even according

13    to him he actually didn't say that in his

14    deposition?

15         MS. SPENCE:  Objection.

16         Mischaracterizes the evidence and the record.

17         MR. GRILL:  I encourage everybody to do

18         a word search for the word locked in his dep.

19         MS. SPENCE:  I think the way you

20         phrased the question is misleading and so

21         that's my objection.

22    BY MR. GRILL:

23    Q.    So if you read his deposition, as you

24    said, absolutely, before you wrote this report,

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 327

1  **why not mention or account for the fact that**

2  **that's not what Mr. Jakes says occurred in his**

3  **deposition.  He never says that he was locked in**

4  **an interview room.**

5      A.    Okay.

6            MS. SPENCE:  Objection.

7      Mischaracterizes the evidence in the record

8      and to form.

9            THE WITNESS:  Okay.

10  BY MR. GRILL:

11     **Q.    Do you think that's an important thing**

12  **to point out?**

13           MS. SPENCE:  Objection.  Form.

14           THE WITNESS:  In the summary section,

15     do I think I give this as much weight as I do

16     the opinions?  Is that your question, sir?

17  BY MR. GRILL:

18     **Q.    Yes.  Do you think it was -- that's an**

19  **important thing to include?**

20     A.    Once again, it gets back to what I

21  elected to include into my report.  And there are

22  certainly many things I could have included, and

23  certain things that I didn't include and I

24  certainly respect that.

1      **Q.**    **Here, and I guess this is paragraph 23,**

2  **you point out a list of things that -- a list of**

3  **leads that the detectives had to follow up on.**

4  **And the first one here is, and you mentioned this**

5  **a little bit earlier today, that the Arab store**

6  **owner or his son Jay told patrol officers that a**

7  **person named Snake was the intended target.  And**

8  **that comes from Officer White and Officer**

9  **Hargrove's report, right?**

10     A.    Correct.

11     **Q.**    **Okay.  So -- were you -- and you**

12  **already told me today that you know that other**

13  **detectives talked to the Arab store owner, Gurgid**

14  **Singh, about what he saw that night or what**

15  **happened, right?**

16         MS. SPENCE:  Objection.  Form.

17     Mischaracterizes testimony.

18         THE WITNESS:  I think I reference that

19     the two patrol officers talked to him.

20  BY MR. GRILL:

21     **Q.**    **Right.  And they wrote a report about**

22  **it, too, right?**

23     A.    I believe it's documented.  I don't

24  recall.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 329

1      Q.      And do you remember reviewing White and

2  Hargrove's report?

3      A.      Absolutely.

4      Q.      So in light of that, do you recall

5  reviewing any information that suggested, at all,

6  that Gurgid Singh, actually saw anyone that was

7  involved in killing Mr. Garcia?

8      A.      I don't believe so, but I certainly

9  believe that Mr. Garcia that came inside

10 supposedly, I think, Little A came in there with

11 him.  So I think it would have been appropriate to

12 do some sort of lineup, photo array for him, to be

13 able to confirm.

14         He also would have been able to

15 confirm, possibly, if they had developed more

16 leads, who Darren might have been.

17     Q.      Did you review any information that

18 told you at that time, when Detectives Boudreau

19 and Kill left the station to go find Denise and

20 Annette and Quarter Pound and so on, that they

21 even knew the name Little A from any source at

22 that point?

23     A.      No.  I think they discovered that as

24 they were out there talking to people that night.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 330

1      Q.      Right.  So that wouldn't have been

2   something that they could have even followed up on

3   at that point because they didn't even know the

4   name Little A at that point, right?

5      A.      Yeah.  I'm sorry.  I'm talking about

6   the Arab store owner could have identified

7   people -- that he could have been shown a lineup

8   at some point.  Because he actually saw Mr. Garcia

9   come in, make the order, and then Little A or

10  whoever the person was that came inside.  At 11:55

11  at night there is not going to be that many people

12  inside this restaurant.

13     Q.      Right.  But your point here in this

14  report is that Detectives Kill and Boudreau had

15  leads that they could have followed up on when

16  they left the area.

17             And my point, that I thought you just

18  agreed with was -- and one of the things you're

19  saying that they should have talked to the Arab

20  store owner about, is because, you know, maybe

21  somebody said Little A was with him.  But they

22  didn't even know who Little A was at that time.

23  So how can you say that this is a lead that the

24  detectives, when they left the area after

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 331

1    speaking --

2         A.    Are you talking about 4:30 in the

3    afternoon, or are you talking about 10:30 at

4    night?

5         Q.    I'm talking about when they went out --

6         A.    At 4:30.

7         Q.    The only time they left the area, sir,

8    is after they got on and talked to White and

9    Hargrove and then talked to Jakes, and then they

10   left.

11              And according to the police officers

12   they left Mr. Jakes on a bench in the area on the

13   3rd floor.  And then they came back way later that

14   night and talked to him again, 10:30, 10:45 at

15   night.

16        A.    Yes, sir.

17              MS. SPENCE:  Objection --

18   BY MR. GRILL:

19        Q.    So at the time the detectives left the

20   area, they didn't even know who --

21        A.    At 10:30.

22        Q.    They didn't leave the area at 10:30.

23        A.    No, I'm just trying to make sure I

24   understand, sir.  Are you talking about when they

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 332

1 left the area of the building at 4:30 in the

2 afternoon?  Or are you talking about when they

3 left the scene at 10:30 at night?

4     Q.     **Sir, let me do it this way.**

5     A.     Okay.

6     Q.     **You agree that the police did not even**

7 **know Little A's name until after they started**

8 **talking to Jakes?**

9     A.     I can't recall if they learned who

10 Little A was when they were meeting with people in

11 the field that night.  I'm sorry.  I don't recall

12 it.

13     Q.     **Say they learned it from somebody in**

14 **the field.  They would have to go back to the**

15 **police department and get pictures, right?**

16     A.     Yes.

17     Q.     **And the detectives, therefore -- and as**

18 **you know, the detectives got back and started**

19 **talking to Mr. Jakes at 10:30, 10:45 at night,**

20 **they didn't leave the area again until after Jakes**

21 **had confessed, right?**

22     A.     Yeah.  Kill was --

23            MS. SPENCE:  Objection, form.

24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 333

 1  BY MR. GRILL:

 2      Q.    Yeah.  Okay.  So when they left the

 3  area at 4:30 or 5:00 o'clock or whatever, after

 4  talking to Mr. Jakes, there was not an

 5  opportunity, reasonably, for them to present a --

 6  to go reinterview the Arab store owner, Gurgid

 7  Singh, and present him with a photo lineup.

 8           MS. SPENCE:  Objection.  Form.

 9  BY MR. GRILL:

10      Q.    Until they want back to the police

11  station, right?

12      A.    Yes.  Correct.

13      Q.    So this is not a lead, then, that the

14  detectives could have followed up on when they

15  left the -- it was not even a lead that they

16  had -- they even knew about at the time they left

17  the police station, right?

18           MS. SPENCE:  Objection.

19           Mischaracterizes the opinion that you're -- I

20           guess the paragraph 2 that you are currently

21           discussing.  Your question is misleading.

22           Form.

23  BY MR. GRILL:

24      Q.    You said in this paragraph that at the

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 334

1   **time they left the area they had already had these**

2   **leads to follow up on.  And my point to you is, as**

3   **far as number one is concerned, this wasn't a**

4   **lead -- there was no new information that they**

5   **had.  There is no lead for them to follow up on,**

6   **for example, to show Gurgid Singh a photo lineup**

7   **that would include a picture of Little A at that**

8   **time, right?**

9           MS. SPENCE:  Objection.

10      Mischaracterizes the evidence.

11      Mischaracterizes the opinions.  Form.

12          THE WITNESS:  I think when he left at

13      4:30, or when Kill and Boudreau left at 4:30,

14      they had information about Quarter Pound,

15      Tweety, the Annette [sic] sisters and the

16      other female.  That's really all they had.

17      Then they go back out there and they start

18      developing information, which is what they

19      should have been doing.

20              I don't know the time that the

21      two patrol officers made that offense report.

22      But before you go ahead and charge this kid

23      at 4:00 in the morning, don't you need to

24      have this information to either corroborate

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 335

1  what he is saying is true or not?  And I

2  guess that's what I'm saying.  It's like

3  there's a hurry to get this done, and there's

4  not a hurry.

5  BY MR. GRILL:

6      **Q.      Well, you already testified that you**

7  **can't offer an opinion about whether they hurried,**

8  **right?**

9          MS. SPENCE:  Objection.  Again --

10  BY MR. GRILL:

11      **Q.      And --**

12          MS. SPENCE:  Hey, what are you doing?

13      Objection.  Mischaracterizes the testimony.

14      Calls for a legal conclusion as to the scope

15      and the gatekeeping function of the court as

16      it relates to expert testimony.

17  BY MR. GRILL:

18      **Q.      And you also recognize that the**

19  **detectives aren't the ones that charged Mr. Jakes,**

20  **right?**

21          MS. SPENCE:  Objection.

22      Mischaracterizes the testimony.

23          THE WITNESS:  I know that Detective

24      Kill was still there and he was going in and

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 336

1       out of the office with Grossman and Caesar

2       and Burke.  I know that he was still in the

3       office.

4                    Hey, guys, if it's possible to

5       get to a point, I need 5 minutes.  Whenever

6       you get to a point.

7            MR. GRILL:  We can take 5 minutes right

8       now.  Let's go off the record.

9            THE VIDEOGRAPHER:  It is 4:29.  We are

10      off the record.

11                   (Break taken.)

12           THE VIDEOGRAPHER:  The time is 4:43.

13      And we are back on the record.

14  BY MR. GRILL:

15      **Q.     Paragraph 26 it says, After speaking**

16  **with Mr. Robinson, Detectives Kill and Boudreau**

17  **focused all their attention on a 15-year-old**

18  **Anthony Jakes who is now no longer considered a**

19  **witness, but a suspect in the murder.**

20               **One again, all their attention went to**

21  **Mr. Jakes, and all the other information supplied**

22  **by the witnesses regarding the target of the**

23  **murder, alternative suspects, and potential**

24  **witnesses was cast aside to focus on Anthony**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 337

1    Jakes."

2              So, sir, what expertise do you have to

3    tell us anything about Detective Kill or Detective

4    Boudreau's state of mind regarding what they were

5    choosing or choosing not to focus on after

6    speaking with Mr. Robinson?

7              MS. SPENCE:  Objection.  Foundation.

8         Form.

9              THE WITNESS:  At that point, in my

10        reading of the documents, Kill and Boudreau

11        started to talk to Jakes as though he was a

12        suspect.  We still knew that we had

13        information about a guy, Troy in an IROC-Z.

14        We still had information about a guy named

15        Thomas that did the shooting.  We still had

16        information that Snake, Mr. Robinson, was

17        actually the intended target.

18                   All that was still relevant to

19        the investigation.  But when Mr. Robinson

20        said no, I gave the information that he was

21        contacted by Jakes there in front of the

22        store and asked if he wanted to participate,

23        that their impetus went towards him.  And

24        that's -- so when you're asking me about

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 338

1      their mindset, I don't know their mindset,

2      Mr. Grill.  I'm sorry.

3  BY MR. GRILL:

4      **Q.     Right.  So my only question was, is**

5  **what expertise do you have to offer any opinion**

6  **Detective Boudreau sought in their minds about**

7  **what evidence they were or were not going to focus**

8  **on.**

9          **And it sounds to me like your answer**

10  **is, you don't have any expertise to offer an**

11  **opinion about what's in their minds.  Correct?**

12          MS. SPENCE:  Objection.

13      Mischaracterizes the testimony.  Form.

14      Foundation.  Mischaracterizes the statements

15      in Exhibit 3.

16  BY MR. GRILL:

17      **Q.     Right.**

18      A.     I don't have an expertise about what

19  was in their minds.  No, sir.

20      **Q.     Okay.  And you go on to say that, "As**

21  **an example of this tunnel vision, the detectives**

22  **interviewed Denise Harris, who denied having been**

23  **in front of 1212 West 51st Street, contrary to**

24  **Jakes's information."**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 339

1          So you already told me at the beginning

2    of your deposition that you don't intend to offer,

3    nor should you offer any opinions about whether

4    the police actually had or were suffering from

5    tunnel vision.  Do you remember giving that

6    testimony?

7               MS. SPENCE:  Objection.  Again,

8         objection.  Form.  Misstates the standards.

9         And asking the witness to provide you with a

10        legal conclusion as to the scope and the

11        gatekeeping question of the court as it

12        relates to expert testimony.

13   BY MR. GRILL:

14        Q.    Right.  In fact, Ms. Spence has just,

15   in her objection, highlighted my point.  This is a

16   legal conclusion about whether --

17               MS. SPENCE:  No.  Your question --

18   BY MR. GRILL:

19        Q.    Hang on.  Hang on.  It is a conclusion,

20   right, sir, about whether -- that is for the jury

21   to determine whether they were actually suffering

22   from tunnel vision.  You would agree with that,

23   right?

24               MS. SPENCE:  So let me object to the

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 340

1      question that you were asking.  That was not

2      my objection as to whether or not tunnel

3      vision is a legal conclusion.  It's the

4      question that you asked where he is making an

5      agreement about whether or not tunnel vision

6      qualifies as a legal conclusion, such that he

7      would not be able to testify to it.

8                  You're asking this witness to

9      determine what a court would find would be

10     the permissible scope of expert testimony.

11     And this witness is not qualified to make the

12     decision about what a court would do.  That

13     is my objection.

14  BY MR. GRILL:

15     Q.     You are not qualified to tell me or

16  anybody, for that matter, to tell me whether

17  anybody is, indeed, suffering from tunnel vision.

18  You would agree with that, sir, right?

19          MS. SPENCE:  Objection.

20     Mischaracterizes the testimony.  Form.

21     Foundation.

22          THE WITNESS:  Yes, sir.

23  BY MR. GRILL:

24     Q.     Okay.  Yet you have that opinion that

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 341

1    **you're not qualified -- admittedly not qualified**

2    **to give, you include it in your report right here.**

3    **Why?**

4         A.    It is my opinion that the emphasis of

5    this case, after they talked to Gus Robinson,

6    turned to Mr. Jakes.

7              That Jakes was the person that at this

8    point they started to read Miranda to.  This is

9    the person that they started to ask about his

10   involvement in the case.  This is the time that no

11   one has called his grandmother.  No one called the

12   youth division.  This is the time that all these

13   things are going on.

14             And all these other elements of these

15   potential suspects that are out there, in my

16   estimation, in my opinion, are being eliminated.

17        Q.    **You go on to say here that, Boudreau**

18   **and Kill -- right here by my cursor, "Boudreau and**

19   **Kill credited Harris's statement as evidence that**

20   **Jakes was untruthful."**

21             **Again, you don't have any expertise to**

22   **opine about what was in -- or what Boudreau and**

23   **Kill thought about Ms. Harris's statement, right?**

24             MS. SPENCE:  Objection.  Form.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 342

1      Foundation.  Misstates the statements in

2      Exhibit 3 and the record.

3              THE WITNESS:  I cannot read Kill and

4      Boudreau's minds.  No, sir.

5  BY MR. GRILL:

6      **Q.     So you have no idea if they were,**

7  **indeed, crediting Harris's statement as evidence**

8  **that Jakes was untruthful.  You don't know what**

9  **they thought about it, right?**

10     A.     Well, you just told me earlier that

11 Harris said that he wasn't out there and you told

12 me to give credence to that.  And now it kind of

13 sounds like you're telling me not to give credence

14 to that because the police didn't give credence to

15 that.

16     **Q.     No, that's not what I'm saying, nor is**

17 **it what I said.  I'm going off of what you wrote**

18 **in your report.  You have a conclusion here about**

19 **what it was -- the weight that you believe**

20 **Boudreau and Kill were giving to Harris's**

21 **statement, relative to what Jakes was saying.**

22             **And my point is is that the truth is**

23 **you don't know what Boudreau and Kill -- what**

24 **weight they were giving to Harris's statement,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 343

1 | **right?**

2 | MS. SPENCE: Objection.

3 | Mischaracterizes the testimony as well as the

4 | statement in Exhibit 3. Form and foundation.

5 | And misstates the record.

6 | BY MR. GRILL:

7 | **Q. Correct?**

8 | A. Correct.

9 | **Q. Okay. You go on to say in the same**

10 | **paragraph in the last sentence, "Inexplicably,**

11 | **Boudreau and Kill ignored Harris's statement to**

12 | **Mr. Pitts and never spoke to her again to see if**

13 | **she could identify the perpetrator or describe**

14 | **what occurred during the murder."**

15 | **Again, you don't have any expertise to**

16 | **opine about what it was that Boudreau and Kill**

17 | **thought or intended to do with Ms. Harris's**

18 | **statement, right?**

19 | A. I don't know what their minds were.

20 | No, sir. But it's important, I think, to the

21 | criminal investigation that Pitts identifies

22 | Harris as having informed him that she's a fact

23 | witness to the murder and saw it take place. And

24 | I think that's relevant to the criminal

Page 344

1  investigation.

2      **Q.      So on City Jakes 15, which is the**

3  **September 1991 supp report, it documents the**

4  **conversation with Tyrone Pitts, with Michael**

5  **Sloan, with Ronnie Sloan, with Andre Green, and**

6  **with Gus Robinson.  In light of the fact the**

7  **report written by Boudreau and Kill documents what**

8  **they discussed with them, you can't say that they**

9  **ignored what Mr. Pitts told them, right?**

10          MS. SPENCE:  Objection.

11      Mischaracterizes the testimony and the

12      statements in Exhibit 3.  Form.

13      Argumentative.

14  BY MR. GRILL:

15      **Q.      Right?**

16      A.      If Ms. Harris actually saw the murder,

17  she would have information that was important.

18  And I don't see the notation that we went back out

19  and talked to Ms. Harris again.

20      **Q.      Well, because according to the police**

21  **Ms. Harris said she didn't see anything, right?**

22      A.      Right.  And according to the police now

23  they had statements saying that Jakes was

24  involved.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 345

1      Q.      Right.  And if the police -- if she had

2   already told the police that, that that would

3   offer some explanation as to maybe why they were

4   done with that particular lead.  Right?

5      A.      But when Pitts says, just a short time

6   later, No, that's not what happened.  She told me

7   she saw what happened.  That's important

8   evidence -- important information for the police

9   to consider.

10      Q.      Well, Mr. Jakes, somewhere around

11   10:30, 10:45 at night began confessing to Boudreau

12   and Kill, right?

13      A.      Yes.

14      Q.      And so if that is true -- if the

15   police's account of that is true, you would agree

16   that it wouldn't matter very much in the context

17   of the broader homicide investigation, whether

18   Ms. Harris was telling the truth or not about

19   whether she was, indeed, outside?

20          MS. SPENCE:  Objection.  Form.

21          THE WITNESS:  I would disagree with

22      that.  I think Ms. Harris -- I think that

23      they're talking to Jakes, and there is a lot

24      of things, according to Jakes, and then

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 346

1          according to the detectives that don't mirror

2          up with one another about that conversation

3          that took place.

4                    The one thing we do know is that

5          police procedure in 1991 mandated that

6          someone from the Youth Division Chicago PD be

7          there as an advocate for Jakes.  Or that his

8          grandmother be present.  And we know that

9          that didn't take place.

10    BY MR. GRILL:

11         **Q.      So that has nothing to do with the**

12    **question I was asking, okay?  My question to you**

13    **was that Mr. Jakes began confessing to Kill and**

14    **Boudreau somewhere around 10:45 p.m. on the 16th**

15    **of September.  Okay?**

16              **You would agree that if that confession**

17    **was given voluntarily, and free of coercion and**

18    **everything else, that that confession would form**

19    **the basis of probable cause to charge Mr. Jakes,**

20    **right?**

21         A.      What I believe is is that when

22    Mr. Robinson came in and supplied the information

23    that he did, that that gave the detectives, in

24    their minds, the impetus to say, Okay, this guy

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 347

1  knows more than what he's telling us.  And that's

2  when they started talking to him at that 10:30,

3  10:45 time.

4         I don't think that means that you

5  disregard now we know we've got a witness that

6  lied to us about saying she wasn't there.  I think

7  that this is still an ongoing investigation.  But

8  instead it's like we're ramping this thing up now

9  to get going faster so we can get Anthony Jakes to

10  say something.

11     **Q.     Okay.  So you would agree that**

12  **Mr. Jakes's confession, in conjunction with what**

13  **Mr. Robinson said to the police, if you're**

14  **crediting the police's accounts, would provide**

15  **enough evidence for the police to present that to**

16  **the state's attorney's office.  Or that it would**

17  **comply with reasonable accepted police practices**

18  **to then present the case to the state's attorney's**

19  **office at that point and, you know, to be charged.**

20  **That would be acceptable?**

21     A.     The statement that he gave at 4:00

22  o'clock?

23     **Q.     No.  No.  The statement that he gave at**

24  **10:45 -- like, once the police had**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 348

1    Mr. Robinson's statement, in conjunction with

2    Mr. Jakes's statement to Kill and Boudreau saying,

3    I did it, in sum, that at that point, regardless,

4    there was enough evidence for the police at that

5    point to -- well, let me rephrase.

6                It would be reasonable and consistent

7    with accepted police practices for the police,

8    then, to present their case, at that point, to the

9    state's attorney's office and see if they wanted

10   to charge Mr. Jakes with homicide, right?

11               MS. SPENCE:  Objection.  Form.

12   BY MR. GRILL:

13        Q.    Assuming you're crediting the police's

14   version of events, right?

15        A.    I'm agreeing with you with everything

16   except, if Jakes's grandmother is sitting there in

17   the room with him, or a youth officer from Chicago

18   PD is there acting as an advocate with him, and

19   he's not a 15-year-old kid with two detectives who

20   are talking to him about now being a murder

21   suspect, if it had happened that way, and his

22   grandmother is sitting there and he says, Grandma,

23   this is what I did.  And he tells the detectives,

24   absolutely.  That's your probable cause.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 349

1      Q.      Okay.  So let's talk about that part

2   about whether his grandmother was there.  You

3   agree it was permissible in 1991 for a 15-year-old

4   to waive his Miranda rights.  It had to be knowing

5   and voluntary, and it would be determined based on

6   the totality of the circumstances, but my point is

7   is that it was the rule, in 1991, for the CPD,

8   that a 15-year-old could waive his Miranda rights,

9   right?

10              MS. SPENCE:  Objection.  Form.

11              THE WITNESS:  Yes, that's correct.  In

12        Boudreau's deposition he said that he didn't

13        treat juveniles any different than he treated

14        adults.

15   BY MR. GRILL:

16      Q.      Okay.  That's still, not --

17      A.      That's important.

18      Q.      -- my question.  No, my question only

19   was, do you agree that a 15-year-old could waive

20   Miranda rights in 1991, right?

21              MS. SPENCE:  Objection to form.

22              THE WITNESS:  They absolutely could.

23   BY MR. GRILL:

24      Q.      Right?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 350

1      A.      They could.  It's not as simple as

2   that, but yes.

3      **Q.      And a 15-year-old could also, in 1991,**

4   **say, yeah, you know what, I don't need or want a**

5   **guardian, parent, friend or anybody else here with**

6   **me.  That was also something that was permitted in**

7   **1991, right?**

8      A.      Did the document -- I apologize, but

9   did Kill and Boudreau document that they asked him

10  his Miranda and he waived it and they got a

11  statement from him or did he sign the Miranda

12  there at that time?

13     **Q.      I'm just asking you -- that is**

14  **something separate.  I'm just asking you if it is**

15  **your understanding that in 1991 a 15-year-old**

16  **suspect in a homicide investigation could also, in**

17  **addition to waiving Miranda, say to the police,**

18  **I'm waiving my right or desire or want to have a**

19  **parent, guardian, or youth officer present here**

20  **during my interrogation as well?  That was**

21  **something a 15-year-old could do, right?**

22     A.      Yes.

23             MS. SPENCE:  Objection.  Form.

24             THE WITNESS:  They could do that.  And

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 351

1      you, as a detective, would want to ensure

2      that the person you're reading the Miranda

3      rights to actually understood their Miranda

4      rights and the implications of those.

5  BY MR. GRILL:

6      **Q.      Right.  And in this case Mr. Jakes, he**

7  **understood his Miranda rights when he was being**

8  **interrogated, right?**

9      A.      In the deposition that I've read he

10  said he didn't.  And I think in court testimony I

11  read he said he had no idea what Miranda rights

12  were.

13     **Q.      Did you read his motion to suppression**

14  **testimony?**

15     A.      I'm sure I did.

16     **Q.      Did you read -- I'll withdraw the**

17  **question.  Let me just show you what he said in**

18  **his motion to suppress.  So here we go.  So this**

19  **is Mr. Jakes's testimony from December 2nd, 1992.**

20  **Hang on.**

21          **Okay.  Miller 8.  This is Mr. Jakes's**

22  **motion to suppress testimony from December 2nd,**

23  **1992.  And I am going to show you what he said,**

24  **starting on Page 74, Line 18.  So Mr. Jakes**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 352

1    testified in his motion to suppress -- he's asked

2    these questions and gave these answers.  We're

3    going from 74, 18 to 75, 7.

4                So here he goes -- he's asked, "Would

5    it be fair to say that you had contact with

6    Chicago police officers, prior to this date,

7    approximately 13 times?"

8                Answer:  "Yeah."

9                Question:  "During those 13 times that

10   you had contact with the police officers, did they

11   provide Miranda warnings?"

12               Answer:  "Not every time."

13               Question:  "How many times would you

14   estimate?

15               About three times."

16               Question:  "You understood those

17   warnings each and every time?"

18               Answer:  "Yeah."

19               Now let's go up to Page 50, all the way

20   up here where he testifies also on this topic.  I

21   probably should have read this part first, but

22   let's go.

23               So at Line 50 -- Page 50, Line --

24   starting at Line 18, he is asked this question:

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 353

1    "Are you indicating to the Court that the first

2    person that provided you with any form of Miranda

3    warnings was the assistant state's attorney?"

4                    Answer:  "Yes."

5                    Question:  "Did you understand those

6    warnings?"

7                    Answer:  "Uh-huh."

8                    Question:  "Did you agree to talk to

9    the state's attorney?"

10                   Answer:  "Yeah."

11                   Question:  "You heard those warnings

12   before."

13                   Answer:  "Yeah."

14                   Question:  "I'm sorry?"

15                   Answer:  "I heard them before."

16                   I want to go to Line 22.

17                   Question:  "When Detective Kill and

18   Detective Boudreau were talking with you, you were

19   aware of what your rights were at that time?"

20                   Answer:  "No."

21                   Question:  "I'm sorry?"

22                   Answer:  "No."

23                   Question:  "You were not aware of what

24   your rights were?"

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 354

1          Answer:  "No."

2          Question:  "Prior to that date had you

3     ever heard your rights before?"

4          Answer:  "Yeah."

5          Question:  "Did you understand those

6     rights on a prior date?"

7          Answer:  "Yeah."

8          Now, in his deposition Mr. Jakes

9     testified at Page 180 -- let me ask you, while I'm

10    pulling this up, do you remember reading that in

11    Mr. Jakes's motion to suppress?

12        A.    I do.

13        Q.    And in his deposition he testified --

14              MS. SPENCE:  Is this Exhibit 9?

15    BY MR. GRILL:

16        Q.    Yeah.  I guess we'll do this as 9,

17    yeah.  Starting at Line 1, going down through --

18    we'll just go Line 1 on Page 180, down to Line 5

19    on 184.

20              Mr. Jakes testified here that he

21    understood that he had a right to remain silent

22    and that he had a right to speak with an attorney.

23    And this is what he was saying he understood at

24    the time he was being interrogated at Area 3, in

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 355

1  **1991?**

2          MS. SPENCE:  Are you showing that part?

3          MR. GRILL:  Yeah, I'm just going to

4      save time.  Here's the Lines 181, 1 through

5      184, 5.

6          MS. SPENCE:  Those don't say anything

7      that you just said.  That it's not shown.

8  BY MR. GRILL:

9      **Q.    It's there.  So I'm asking you, sir,**

10 **did you consider that in his deposition, that part**

11 **of his deposition where he acknowledged that he**

12 **understood he had a right to remain silent and a**

13 **right to speak with an attorney?**

14          MS. SPENCE:  I'm going to object that

15      the part that's being shown to the witness is

16      not the part that counsel is representing

17      exists.

18  BY MR. GRILL:

19      **Q.    Do you remember reading those parts in**

20 **this deposition?**

21      A.    I do remember --

22          MS. SPENCE:  I would object to the

23      witness being asked questions about a

24      document that they can't review.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 356

 1  BY MR. GRILL:

 2      Q.    He said he remembers reviewing this.

 3          MS. SPENCE:  Same objection.

 4  BY MR. GRILL:

 5      Q.    And that he said this.  On Page 222,

 6  Line 18 to 225, 22 -- well, here, before we get to

 7  that.  So in your report you don't account for

 8  Jakes's testimony at his motion to suppress, or in

 9  his deposition where he said that he understood

10  those rights.  And why did you not account for

11  that in your report?

12          MS. SPENCE:  Objection.  Form.

13      Mischaracterizes the evidence in the record.

14          THE WITNESS:  Is it in here, sir, where

15      I'm saying that he doesn't -- where are we

16      now?

17  BY MR. GRILL:

18      Q.    You told me before I started showing

19  you those parts of this transcript, that Mr. Jakes

20  didn't understand his Miranda rights.

21      A.    And I think you showed me a document

22  where he says, Do you understand your Miranda

23  rights?  And he says, Somewhat.

24      Q.    No.  My question to you was, in his

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 357

1    motion to suppress statement, he told the court

2    that he had been arrested 13 times and that he had

3    been read Miranda about three times and he

4    understood those warnings, quote, each and every

5    time.  So just taking that piece.  Maybe we should

6    have taken this in pieces.

7            Did you account -- is there a reason

8    why you didn't account for that testimony in your

9    report?

10           MS. SPENCE:  Objection.  Misstates the

11        evidence of the document shown in Exhibit 8.

12        Form.

13           THE WITNESS:  No.

14   BY MR. GRILL:

15       Q.    You think it was important to point out

16   in your report that Mr. Jakes had given testimony

17   in the past, actually very close -- much closer in

18   time to when the homicide actually occurred --

19   when the criminal case was still pending, wherein

20   he testified under oath that he did, indeed,

21   understand his Miranda rights.

22           MS. SPENCE:  Objection.

23        Mischaracterizes the evidence.  Form.

24           THE WITNESS:  I would go back to the

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 358

1        deposition where he said, Did you understand

2        Miranda rights?  And he said, Did you?  And

3        he said, Somewhat.

4    BY MR. GRILL:

5        Q.     So you would credit that over what he

6    said in his motion to suppress?

7            MS. SPENCE:  Objection.

8        Mischaracterizes the testimony.

9            THE WITNESS:  I honestly can't tell you

10       whether he understood his Miranda rights.  I

11       don't believe that he did.

12   BY MR. GRILL:

13       Q.     Okay.  And you don't believe -- well,

14   whatever.  When Mr. Jakes testified that he had

15   been arrested or had contact with the police 13

16   times prior to this, was that a fact that you were

17   aware of when you were putting this report

18   together?

19       A.     Absolutely.

20       Q.     And is that something that was

21   important to your analysis about whether

22   Mr. Jakes, I guess, in your opinion, understood

23   his Miranda rights?

24       A.     I certainly considered it.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 359

1     Q.     Do you think that it is an appropriate

2  opinion for you, as a police practices expert to

3  offer an opinion -- let me ask you this, let me

4  rephrase it.

5           What expertise do you have to testify

6  about whether Mr. Jakes did or did not understand

7  his Miranda rights?

8           MS. SPENCE:  Objection.  Form.

9           THE WITNESS:  Only what I've read.

10 BY MR. GRILL:

11    Q.     Other than that -- what you've read

12 being his deposition?

13           MS. SPENCE:  Objection.

14      Mischaracterizes his testimony.

15           THE WITNESS:  Yes, sir.  And I don't

16      know -- I guess when we get into the opinions

17      we'll talk about that.  But I don't know here

18      in the summary if I say it that way.

19 BY MR. GRILL:

20    Q.     So here on this line, this is on, I

21 guess, Page 11 of your report.  You say, "Officer

22 Burke met Anthony Jakes at 3:45 a.m. on September

23 17th, 1991.  Spoke with him for approximately 5

24 minutes.  During those 5 minutes Officer Burke

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 360

1    testified that he asked Mr. Jakes if Mr. Jakes

2    wanted his aunt to be present.  According to

3    Officer Burke, Mr. Jakes said no.  But this

4    conversation purposefully was not documented."

5              What is the factual basis for you to

6    say that this conversation was purposefully not

7    documented?

8        A.     That's an important fact and it wasn't

9    included in anything that I read.

10       Q.     Well, purposefulness implies a state of

11   mind.  You'd agree with that, right?

12       A.     That would be a Webster's question.  I

13   don't know the state of mind as far as

14   purposefulness.

15       Q.     So you have no idea if there was some

16   other reason why this was not documented that

17   would be something other than that Officer Burke,

18   on purpose, didn't write it down?

19       A.     There is no hurry.  Why didn't Burke

20   just say, Hold it guys.  Let's take a break.

21   Let's get his grandma down here and let's do this

22   right.  Let's take a step back.  Let's let him get

23   his -- as a matter of fact, let's let him go home,

24   go to bed, get something to eat and come back

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 361

1   tomorrow with his lawyer and let's talk to him.

2           If he's got a confession on the table,

3   then he'll still have a confession on the table.

4       **Q.      So my question is is that you're**

5   **offering an opinion here about Officer Burke's**

6   **state of mind.  And I'm asking you what expertise,**

7   **as far as why, I guess, according to you he didn't**

8   **document this appropriately.  And I'm saying what**

9   **expertise do you have to offer that part of your**

10  **opinion about what he purposely did or didn't do?**

11          MS. SPENCE:  Objection.

12      Mischaracterizes the -- mischaracterizes the

13      statements in Exhibit 3.  Form.

14  BY MR. GRILL:

15      **Q.      Maybe the easy way to say it, sir, is**

16  **you agree you don't have any expertise to opine**

17  **about whether Officer Burke did something on**

18  **purpose or not, right?**

19          MS. SPENCE:  Objection.  Form.

20          THE WITNESS:  I don't -- I can't read

21      Officer Burke's mind.

22  BY MR. GRILL:

23      **Q.      Yeah.  Okay.  Is it your opinion that**

24  **Officer Burke was intending to cover up some type**

Page 362

1   of misconduct by the police by not documenting,

2   according to you, what it was that Mr. Jakes --

3   what he said Mr. Jakes told him?

4       A.    It's my experience from having been

5   involved in 750 murder investigations that it

6   would have been reasonable to go ahead and for

7   Burke to have written a note that said, yeah, I

8   offered him this.  Because, I mean, the kid had

9   been there, at this point, nearly 16 hours, and

10  I'm sure he could see that in his eyes.

11      Q.    Well, that's a guess, right?

12      A.    Yes, sir.

13          MS. SPENCE:  Objection.  Form.  Sorry.

14      Also mischaracterizes the testimony.

15  BY MR. GRILL:

16      Q.    You say here, and this is on Page 12,

17  "In 1991 it was well-documented by police

18  investigators that the longer an interrogation

19  went, the more coercive they became."  Where is

20  this well-documented?

21      A.    In police -- we had knowledge of people

22  that were involved in incidents like murder

23  investigations.  That -- and I think we all knew

24  from having dealt with -- that's why this six-hour

Page 363

1    issue was put on here in Dallas and I believe, as

2    well, in Chicago, where, you know, the longer it

3    went that you were jeopardizing the case.  And why

4    do we want to maximize the risk?  Let's minimize

5    the amount of risk that we have involving a case.

6            If he's been there more than six hours,

7    send him home.  We know where he lives.  He's not

8    going to flee the country.  Let's talk to him

9    tomorrow.  Let him get his grandmother, let him

10   get sleep.  And if you don't do that, then I

11   believe it is coercive.  But this still isn't one

12   of my opinions.  This is still the summary.

13       Q.     **Right.  But it's the summary of the**

14   **facts that your opinions are based on, right?**

15       A.     Yes, sir.

16       Q.     **And we've already talked about how if**

17   **your facts aren't right, then your opinions aren't**

18   **right either, right?**

19       A.     That's right.

20              MS. SPENCE:  Objection.  Form.

21       Mischaracterizes the testimony.

22   BY MR. GRILL:

23       Q.     **Okay.  So my question, though, is where**

24   **is this documented, this fact?  Because that's**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 364

1    what you say.  In 1991 it was well-documented.  So

2    where is it well-documented?

3         A.    I may have used documentation -- the

4    annals of law enforcement and basic functional

5    police work.  It was documented to us in my

6    department, which Chicago is larger than Dallas,

7    that you didn't want to keep the kid longer than

8    six hours and this is why.  And it was said that

9    it was coercive in nature when it went past that

10   time.

11        Q.    Okay.  So when did you -- in any of the

12   materials that you relied on or you disclosed in

13   response to our subpoena, is this

14   well-documentation that you're referring to here

15   contained in any of those materials?

16        A.    No, sir.  It's not.

17        Q.    Can you recall the source material that

18   well-documented this point that you make here

19   about the length of an interrogation is --

20   causes -- the longer it goes on causes the

21   interrogation to be more coercive?

22        A.    I think we may get back to that 2012

23   article, even though I know we're in 1991 on this

24   case.  Because I think I referenced that many of

Page 365

1  the things in the 2012 article were well-known and

2  established in 1991.  And this is a part of that

3  that I think was well-established and well-known.

4  But that would be my response to that.

5      Q.    Okay.  When you say that the longer the

6  interrogation went on, the more coercive it

7  became, are you referring to just the actual

8  length of questioning?

9      A.    I'm talking about with juveniles --

10     Q.    Right, are you talking about --

11     A.    -- that's why --

12     Q.    When you talk about --

13         MS. SPENCE:  Sorry.  Can you just let

14     him finish?

15         THE WITNESS:  That's why we have

16     limitations on the number of hours that we

17     wanted to keep a juvenile; Chicago and

18     Dallas.

19 BY MR. GRILL:

20     Q.    So when you say interrogation, you are

21 including the time just spent at the police

22 station, right?

23     A.    Sure.  That's stressful for a kid.

24     Q.    And you're making no distinction about

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 366

1    whether the juvenile actually wants to or has

2    agreed to be there, right?

3              MS. SPENCE:  Objection.  Form.

4    BY MR. GRILL:

5         Q.    You don't make that distinction here,

6    do you?  Or anywhere, actually, in your report.

7         A.    No, sir.

8         Q.    Yeah.  Okay.  And do you think that

9    would be an important distinction to make?

10        A.    I didn't make it in my report.

11        Q.    Okay.  All right.  So in 35 -- so here

12   you say that, "Mr. Jakes's confession includes a

13   detail that is contradicted by the physical

14   evidence.  Mr. Jakes could see the crime scene

15   from the window of his residence.  In his

16   handwritten statement, Mr. Jakes stated that, 'And

17   after Anthony had been home for a few minutes, he

18   looked out 51st Street toward the sub shop, and

19   saw the Mexican dude moving around on the ground

20   for a minute.'"

21             Did you receive or review any documents

22   at all that the police had in 1991, during the

23   investigation, that established that Mr. Jakes

24   actually was in Aunt Bea's house at the time he

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 367

1   was, I guess, looking out the window?

2       A.      This is when we get back to what we

3   talked about early, when she slapped him as he was

4   coming home.  Home is going to be where they got

5   him that next day at noon, where Pack and DeLacy

6   went, is going to be his home.  Which I think is

7   well-documented was in the rear of this branch of

8   apartments.

9              So when I say home, she hit him,

10  slapped him when he came home.  And home is the

11  same location where they retrieved him from.

12      Q.      And you're drawing that conclusion

13  based on what?

14      A.      Where they went and picked him up on

15  the 16th.

16      Q.      Okay.  And did you review any documents

17  that would tell you whether Mr. Jakes ever, at any

18  point, lived in any of the houses or apartments

19  that were actually on 51st Street in front of Aunt

20  Bea's house?

21      A.      I think I do.  But I believe he was

22  staying with Aunt Bea when this happened.

23      Q.      Right.  I know.  But did you review any

24  documents that would suggest to you that Mr. Jakes

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 368

1    ever lived in some place other, on 51st Street,

2    other than Aunt Bea's house?

3         A.    I believe I recall that, but I don't

4    know any specifics.

5         Q.    Were you provided any property records

6    for any of the houses on 51st Street in order to

7    determine for yourself who owned the houses on

8    51st Street, like 1210, 1212 51st Street?

9         A.    I think his family owned all the

10   apartments, to be honest.

11        Q.    And you reviewed Mr. Jakes's statement,

12   which I have up in front of you, I guess this will

13   be Exhibit 10.  And it says here, right, "After

14   Anthony had been home for a few minutes, he looked

15   out onto 51st Street toward the sub shop and saw

16   the Mexican dude moving around on the ground for a

17   minute."  That's what it says, right?

18        A.    Correct.

19        Q.    Nowhere does it say he was in the rear

20   house, right?

21        A.    No.  Aunt Bea says when she slapped

22   him, he went home and didn't go back out.  That

23   was in the rear house.

24        Q.    And nowhere in this confession does it

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 369

1    say that he was in the rear house, right?

2         A.    In the statement, no, sir.

3         Q.    Was that a fact that you thought was --

4    would be important to include in your report, that

5    Mr. Jakes was family members with the people that

6    owned the houses on 51st Street, whether it's 1210

7    or 1212 West 51st Street?

8         A.    I think when Pack and DeLacy get

9    information from an anonymous source that Jakes

10   has information, he lives at this location, and

11   they go to that location, and it's in the rear

12   house, that's it.  I mean, he's where they said he

13   would be, where this anonymous witness said where

14   he lives, and that's where they found him.  I

15   think that speaks for itself.

16        Q.    Did you review any testimony from any

17   witness in this case that said if Mr. Jakes, or if

18   they had been in one of the front houses on 51st

19   Street, that it would be possible to see exactly

20   what Mr. Jakes told the police he said he saw?

21        A.    I don't recall that.

22        Q.    Do you think Mr. Jakes's criminal

23   history with police, in your experience, would

24   be -- that it would be reasonable for a police

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 370

1  officer, detective interrogating him in 1991 to

2  expect that Mr. Jakes had more familiarity with

3  police interrogations, with his Miranda rights,

4  than somebody who hadn't had 13 contacts with the

5  police?

6          MS. SPENCE:  Objection.  Form.  Calls

7      for speculation.

8          THE WITNESS:  I can't answer that.  No,

9      sir.

10 BY MR. GRILL:

11     Q.    Well, what would be your practice or

12 expectation?  You think back to your time as a

13 police officer, and as a commander of a homicide

14 unit.  If you had a suspect, juvenile suspect in

15 an interrogation room, and you knew that that

16 suspect had over a dozen contacts, some of which

17 being for serious crimes, like multiple rapes and

18 armed robberies, that he had been convicted of, or

19 found guilty, or sentenced to some type of

20 juvenile adjustment for, would you expect that

21 that person that you are walking in to interrogate

22 would understand what an interrogation was and

23 what the rights were?

24          MS. SPENCE:  Objection.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 371

1      Mischaracterizes the evidence in the record.

2      Form.

3              THE WITNESS:  I couldn't answer that

4      opinion.  I couldn't answer that because I

5      wasn't asked to opine on that.

6  BY MR. GRILL:

7      **Q.     Were you provided any information about**

8  **the underlying facts, arrest reports, whatnot, of**

9  **any of Mr. Jakes's 13 prior contacts with the**

10 **police?**

11     A.      I was.

12     **Q.     Were you provided the police reports**

13 **regarding the criminal sexual assaults that he --**

14 **well, one of them which he was given a sentence**

15 **for, were you provided those reports?**

16     A.      I believe I was, but I can't recall

17 exactly, but I believe I was.  I mean, I was aware

18 of his record and there were serious offenses

19 involved.

20     **Q.     Do you think that criminal record has**

21 **any bearing on your opinion that Mr. Jakes was**

22 **coerced?**

23     A.      I can't answer that.

24     **Q.     Paragraph 39 here you talk about a**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 372

1  number of cases that detailed allegations of

2  physical abuse and coerced confessions involving

3  Detective Kill, and 16 cases involving Detective

4  Boudreau.  Did you investigate any of these cases

5  yourself?

6       A.    I did not.

7       Q.    Did you review any of the materials --

8  any materials, whatsoever, involving allegations

9  in any of these 13 or 16 cases against Kill and

10 Boudreau, respectively?

11      A.    I do not recall that.

12      Q.    This is just information that you

13 gleaned from the Chicago Tribune article?

14      A.    Yes, sir.

15      Q.    Who provided you that Chicago Tribune

16 article?

17           MS. SPENCE:  Objection.  Objection to

18      the extent it may disclose your conversations

19      with the attorneys in this case.  If you can

20      answer that question without...

21           THE WITNESS:  I found it on my own.

22 BY MR. GRILL:

23      Q.    Okay.  Did you have -- do you have any

24 belief as to whether the allegations detailed in

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 373

1    that article against Kill and Boudreau are true?

2         A.    I don't have an opinion on that.

3         Q.    Do you know if Detective Kill or

4    Detective Boudreau were found liable for violating

5    anybody's constitutional rights in any of those 13

6    or 16 cases respectively?

7         A.    I do not know, sir.

8         Q.    All right.  Page 41, so this is in your

9    opinion section here -- or paragraph 41.  You say

10   that, "It is well-settled in the field of policing

11   that the goal of every criminal investigation is

12   to determine the truth."

13              However, earlier today you already told

14   me that a police officer, detective, or homicide

15   investigators determine -- well, strike that.

16              You told me earlier today that it is

17   the jury's responsibility to determine the truth,

18   right?

19              MS. SPENCE:  Objection.

20         Mischaracterizes the testimony.

21              THE WITNESS:  Yes, it is.

22   BY MR. GRILL:

23         Q.    Yeah.  So it is not well-settled in the

24   field of policing that the goal of every criminal

1  **investigation is to determine the truth, right?**

2          MS. SPENCE:  Objection.  Form.

3          THE WITNESS:  I'm sorry, sir.  I could

4      not agree with that.  I believe that the goal

5      of every police criminal investigation is to

6      find the truth.  I think that's our goal.

7  BY MR. GRILL:

8      **Q.      The goal is -- the responsibilities of**

9  **a homicide detective are to -- well, strike that**

10 **question.**

11          **What is that based on?  What is your**

12 **factual basis for that statement?**

13     A.      You remember I told you the chief who

14 appointed me to homicide said, Never develop a

15 suspect and build a case around them.  Build a

16 case and let it lead to a suspect?  That was my

17 mantra the whole time I was in homicide.

18          It's not about numbers, it's not about

19 clearing offenses.  It's about arresting a person

20 who's the right person.  If it's not the right

21 person, then don't arrest them.

22     **Q.      It is your belief that the police -- it**

23 **is your opinion that the police arrested the wrong**

24 **person in this case?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 375

1      A.      I believe so, yes.

2      **Q.      Do you believe that that's something**

3   **that the police should have known?**

4      A.      I think if the police had conducted a

5   thorough investigation, they would have determined

6   there were other possible suspects that they

7   didn't consider.

8      **Q.      But if you accept the police version of**

9   **events, they had enough probable cause to present**

10  **this case to a state's attorney to be reviewed for**

11  **felony charges.  You agree with that?**

12     A.      Yes.

13             MS. SPENCE:  Objection.  Form.

14  BY MR. GRILL:

15     **Q.      You say in the next sentence, "And**

16  **investigators can never know the truth about what**

17  **happened during a particular event, unless they**

18  **fully develop the evidence and test all the**

19  **possible hypotheses against that evidence."**

20             **So under what standard are police**

21  **required to test all the possible hypotheses in a**

22  **criminal -- that might possibly conceivably come**

23  **up in a criminal investigation?**

24             MS. SPENCE:  I'm sorry.  Objection.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 376

1    Form.

2            THE WITNESS:  Under the standard of

3        common sense.  I think what we want to do is

4        we want to find the person that committed the

5        crime.  This isn't a trick deal, this isn't a

6        show.  Someone is deceased, and if we have

7        information that leads us to other possible

8        suspects, we've got a person here named

9        Thomas who was told by a guy named Troy, who

10        was driving an IROC-Z that were never talked

11        to.

12            We got a guy named Darren who was

13        at the scene that was never talked to.  We've

14        got people that say that they didn't see

15        anything, but then say they saw the whole

16        murder.  There are a lot of pieces here that

17        could be put together by the detectives, but

18        they're not.  That's why we have to test this

19        against all the evidence.

20    BY MR. GRILL:

21        Q.    **Well, your example that you just gave**

22    **presumes that the police could actually locate**

23    **these people whose first names or nicknames was**

24    **all they had, right?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 377

1      A.      I absolutely believe they could.

2      **Q.      Well, that's your opinion, but you're**

3   **guessing whether that was actually something that**

4   **the police could have done or actually**

5   **accomplished, right?**

6      A.      Chicago PD has people that can find

7   people.

8      **Q.      Well, what's that based on?**

9      A.      They're a large law enforcement agency

10  with a lot of folks on their department who know

11  their job.

12     **Q.      Again, you're guessing whether those**

13  **leads that you just described were ones that were**

14  **actually capable of being acted upon, right?**

15     A.      I know we could have taken a step back

16  at 4:00 in the morning, instead of making this boy

17  write a -- sign a confession.  And said, Hey,

18  let's stop.  Let's get him something to eat, send

19  him home, let him be with his grandma.  Let's let

20  him come back up here with an attorney and let's

21  take his confession then.  We absolutely could

22  have done that.

23     **Q.      Well, again, that presupposes a**

24  **particular set of facts that exclude the**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 378

1    possibility that Mr. Jakes had agreed to be there,

2    right?

3         A.    I'm just talking about common sense for

4    police officers.  What's the hurry?

5         Q.    Paragraph 45, so this is your opinion

6    that Mr. Jakes's seizure and search was not

7    reasonable in 1991.  You say, "It is my opinion

8    that it was not reasonable for Mr. Jakes to be

9    seized at all, let alone be seized in the manner

10   he describes."

11               But this opinion is dependent upon, you

12   would agree, that Mr. Jakes's account of events is

13   the true one, right?

14        A.    It's based upon the information that I

15   reviewed.

16        Q.    Yeah.  So, again, this opinion is based

17   upon Mr. Jakes's account, not the police officers'

18   account, right?

19        A.    Mr. Jakes was a witness.  They went to

20   his house because he was allegedly a witness from

21   an anonymous source.  That's why they were there.

22        Q.    Um-hmm.  Right.  So my question still

23   is, this opinion is dependent and founded upon

24   Mr. Jakes's version of events, right?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 379

1        MS. SPENCE:  Objection.

2     Mischaracterizes the statements in the

3     report.

4        THE WITNESS:  It's based upon the facts

5     and the documents that I reviewed.

6  BY MR. GRILL:

7     **Q.    It's based upon -- and those facts and**

8  **documents include the officers' account, right?**

9     A.    That is absolutely true.

10    **Q.    And what was unreasonable about the**

11 **search and seizure was because Mr. Jakes says the**

12 **police showed up, threw him up against the wall,**

13 **handcuffed him, and took him away against his**

14 **will, right?**

15    A.    Well, that's what it says, but let's

16 read -- the documents I've reviewed do not include

17 any signed consent form, which that's going to be

18 an opinion there from Ms. Jones stating that

19 that's her side of the story.

20        Neither does Pack or DeLacy's report

21 reflect any consent, if that were to have

22 occurred.  This search, if it occurred, was not

23 unreasonable, because there is a basis for

24 searching the house, but not without a consent.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 380

1    All that makes sense in law enforcement in 1991.

2        Q.    Um-hmm.  Okay.  In paragraph 46 of this

3    opinion you say, "Once Mr. Jakes arrived at the

4    police station, he was only considered a possible

5    witness to a crime.  What is that based on?

6        A.    DeLacy and Pack, and the anonymous

7    witness that said, This kid might have some

8    information about this crime.

9        Q.    Okay.  So it's your opinion, then, that

10   Mr. Jakes wasn't a suspect when the police took

11   him to the police station, he was only a witness?

12       A.    That's what I believe.

13            MS. SPENCE:  Objection.

14       Mischaracterizes the statements in the

15       report.  Mr. Miller, can you just pause a

16       little bit so I can make an objection?

17       Sorry.

18            THE WITNESS:  Mr. Grill is so riveting

19       I want to answer him quick.

20   BY MR. GRILL:

21       Q.    All right, so you said here on the

22   bottom of Page 17, "Once Mr. Jakes was processed

23   for the drugs, he was allegedly advised that he

24   had the option to leave and go home."

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 381

1              You already testified today that it is

2    documented in the police reports that Mr. Jakes

3    was advised that he could go home, right?

4         A.    Mr. Danaher -- Officer Danaher said in

5    that statement you showed me that he had told him

6    that.

7         Q.    Right.  So when you say allegedly

8    advised, why do you use the word "allegedly"?

9         A.    Because I don't see the note from

10   Danaher referencing this; that he did it.

11        Q.    So because there is no note, it's your

12   opinion that what is documented in the typewritten

13   reports is not reliable.  Is that right?

14             MS. SPENCE:  Objection.

15        Mischaracterizes the statements in the

16        report.

17   BY MR. GRILL:

18        Q.    Right?

19        A.    I don't believe that's what I'm saying.

20        Q.    Why do you use the word "allegedly,"

21   then?

22        A.    Because allegedly he was provided this

23   information he could go home.  Jakes says that he

24   wasn't.  Danaher says that he was.  It's alleged

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 382

1  that he was.

2      **Q.      Okay.**

3      A.      I'm not here to say that.

4      **Q.      You are making a -- you are then -- you**

5  **agree, then, that here you are making an --**

6  **offering an opinion that calls into question the**

7  **credibility and reliability of what is documented**

8  **in the Chicago supplemental typewritten police**

9  **report, right?**

10          MS. SPENCE:  Objection.

11      Mischaracterizes the testimony and the

12      statements in the report.

13  BY MR. GRILL:

14      **Q.      Because it, allegedly, according to**

15  **you, might not be true, right?**

16          MS. SPENCE:  Objection.

17      Mischaracterizes statements -- sorry, the

18      testimony and the statements in Exhibit 3 of

19      the report.

20  BY MR. GRILL:

21      **Q.      Right?**

22      A.      Danaher made it in a police report, but

23  didn't document it in a note.  That Danaher

24  allegedly did it because it's documented in that

Page 383

1    report, but it's not documented anywhere else

2    that -- in a note that, yeah, this is what I told

3    this kid, and this is when I said it.  This is a

4    guy that's going to be charged with murder.

5         Q.    **Are you aware of any police practice,**

6    **standard, whatnot, that was in effect in 1991 that**

7    **required police to take notes on everything that**

8    **they did in a homicide investigation?**

9              MS. SPENCE:  Objection.  Form.

10             THE WITNESS:  I think in Burke's

11        deposition he says, Was it required?  He

12        said, No.  But do you think it should have

13        been and he said, Yes, it should have been.

14   BY MR. GRILL:

15        Q.    **That's not my question.  Are you aware**

16   **of any standard, order, procedure that required**

17   **Chicago police officers in 1991 to take notes at**

18   **all times in the context of a homicide**

19   **investigation?**

20        A.    Chicago police officers, I'm just not

21   sure on that, sir.

22        Q.    **Did you review Detective Pack's or**

23   **Officer Pack's criminal trial testimony?**

24        A.    I did.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 384

1     Q.     Are you -- do you recall that he

2  testified that the voice on the call -- the

3  anonymous call was a female voice?  Do you

4  remember that?

5     A.     I was thinking that you said dispatch

6  gave him that information.  Did Pack actually

7  speak to the female?

8     Q.     Yes.  That was his testimony.  Did you

9  recall that now from --

10    A.     No, but he would have had real

11 opportunity, if that was the case, to actually ask

12 this person questions, not necessarily about their

13 name but more specifics about where they got that

14 information to confirm how reliable it was.

15    Q.     Did you have any information or did you

16 review any materials, whatsoever, that Pack did

17 not ask those questions, or try to elicit that

18 information?

19    A.     I never saw any notation of him trying

20 to find those answers.

21    Q.     You have here, right here at the bottom

22 of this paragraph, we're on Page 18, "Police

23 officers are especially trained to document the

24 circumstances under which a murder suspect first

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 385

1  came to the police attention," right?

2      A.    Yes, sir.

3      Q.    And I presume, then, that is something

4  that you believe or your opinion is that the

5  police did not do in this case, right?

6      A.    I mean, that goes back to Danaher not

7  documenting it in the note, yes, sir.

8      Q.    Well, you recognize that a suspect is

9  different than a witness, right?

10     A.    Yes.

11     Q.    And the call -- there is no dispute

12 that the call, the anonymous call, said that Jakes

13 knew something about it, not that he participated

14 in the killing, right?

15     A.    We don't really know what the anonymous

16 call said because Officer Pack didn't really

17 document that call, other than the fact that he

18 received a call.  So we don't know what was said

19 on that call.

20     Q.    But he definitely documented, and you

21 recognize this, that that caller said that Jakes

22 knew something about it, not that he participated

23 in it, right?

24            MS. SPENCE:  Objection.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 386

1       Mischaracterizes the record.

2   BY MR. GRILL:

3       Q.      Or had information about it, right?

4           MS. SPENCE:  Objection.

5       Mischaracterizes the record.

6   BY MR. GRILL:

7       Q.      Right?

8       A.      I believe it was, might know something

9   about the crime.

10      Q.      And up here, you even say in the

11  preceding paragraph that, "Once Mr. Jakes arrived

12  at the police station, he was only considered a

13  possible witness to a crime," right?

14      A.      Correct.

15      Q.      Okay.  So if this is the standard, that

16  police officers are especially trained to document

17  the circumstances under which a murder suspect

18  first came into the police station, Mr. Jakes,

19  according to you, was not a suspect when he came

20  into the police station, right?

21          MS. SPENCE:  Objection.  Form.

22          THE WITNESS:  A few hours later, before

23      the officer, Danaher, got off his shift, he

24      would have known that he was, at that point,

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 387

1      a murder suspect.  And you want to be careful

2      and document as much as you can to help the

3      detectives.

4  BY MR. GRILL:

5      **Q.      Okay.  That's not my question.  You**

6  **acknowledge in your report that Mr. Jakes, when he**

7  **came to the police station, was not a suspect,**

8  **correct?**

9      A.     That's correct.

10         MS. SPENCE:  Objection.  Asked and

11     answered.

12  BY MR. GRILL:

13     **Q.      So, therefore, then, to say that the**

14  **police did not adequately document the**

15  **circumstances under which he first came to their**

16  **attention, that's not accurate to say here because**

17  **he wasn't a suspect at the time, right?**

18         MS. SPENCE:  Objection.  Form.

19     Mischaracterizes the testimony.

20  BY MR. GRILL:

21     **Q.      Right?**

22     A.     Well, once again it goes to what side

23  you are believing.  Jakes and Ms. Jones said this

24  is how he was taken out of his home, the house is

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 388

1    the rear.  This is how Pack and DeLacy said it

2    went down, and then they get there.

3                But once again, if he is only a

4    witness, as you're suggesting, why is he patted

5    down?  And why are they going into his pockets to

6    find something they believe to be drugs?  You

7    wouldn't do that with a witness.

8        **Q.    According to who?**

9        A.    Why are they patting Jakes down if he's

10   only a witness?

11       **Q.    Well, you already told me today that it**

12   **is an acceptable police practice to pat down a**

13   **witness that's in a secured area of the police**

14   **department.**

15       A.    No, sir, I did not.

16               MS. SPENCE:  Objection.

17   Mischaracterizes the testimony.

18               THE WITNESS:  No, sir, I did not.  I

19       said if you think that there is -- you're

20       patting someone down for weapons, you're

21       going to do that before you put them in the

22       police car.

23               We've been over this.  If I'm

24       fearful that you've got a weapon, I'm not

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 389

1      going to put you in the back seat of the car

2      and drive you to the police station.  So

3      you're not -- I'm not going to pat you down,

4      but that's not what took place here.

5  BY MR. GRILL:

6      **Q.      That's if, as you said, if you believe**

7  **the person is a threat, right?**

8      A.      You're patting anybody down for your

9  own protection and a protection of your officer.

10 That's why you do a pat-down.

11     **Q.      So, is it not true now that you would**

12 **do that pat-down, protective pat-down search for**

13 **weapons for anybody?  Or just people that you**

14 **thought were a threat?**

15     A.      If I didn't feel it was essential or

16 necessary to do the pat down at his house, when I

17 put him in the car, then why am I doing the

18 pat-down at the security.

19           So I disagree with your comment that

20 I've already agreed that you need to pat him down

21 at security.  I think they should have done a

22 pat-down in the field.

23     **Q.      And that's just based on the totality**

24 **of your training, education, and experience,**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 390

1  **right?**

2       A.    That's Cop 101.

3       **Q.    It's common sense, I guess, right?**

4  **That's another way of saying that?**

5            MS. SPENCE:  Objection.

6       Mischaracterizes his testimony.

7            THE WITNESS:  I don't want to use the

8       word common sense, but it's reasonable for a

9       police officer, if they're going to put

10      someone in their car that they're suspicious

11      of, that they would pat them down.

12               That's very reasonable, and

13      almost an expectation.  But at the same time

14      I would expect when you drug them down to

15      headquarters, you wouldn't search them there

16      if you didn't search them in the field.

17  BY MR. GRILL:

18      **Q.    Are you aware of any standard that**

19  **existed in 1991 that required CPD to pat-down**

20  **non-violent, non-threatening witnesses that agreed**

21  **to come to the police station and talk with them**

22  **about what they may know about the crime?**

23            MS. SPENCE:  Objection.  Form.

24  BY MR. GRILL:

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 391

1      Q.      **Are you aware of any standard like**
2  **that?**
3      A.      Not the standard, but that's kind of
4  confusing.  If I didn't have a standard to do it
5  in a field, why would I have a standard to do it
6  at the police station?
7      Q.      **I'm asking you if you're aware of any**
8  **standard that applied to CPD in 1991, that would**
9  **have required a police officer to do that before**
10 **putting Anthony Jakes, if you credit the police**
11 **officers' account, into a police car?**
12     A.      I wasn't provided a patrol standard
13 operating procedure, but I would wager a patrol
14 standard operating procedure in 1991, it dictated
15 if you put someone in a car, that you pat them
16 down for weapons; witness or suspect.
17     Q.      **And paragraph 47, this is part of your**
18 **second opinion that says, "Detectives used**
19 **procedures that increased risk of unreliable or**
20 **involuntary confession by a juvenile."**
21             **Again, just to put a point on it, you**
22 **are not an expert, nor do you hold yourself out as**
23 **an expert in juvenile false confessions, right?**
24     A.      Correct.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 392

1      Q.     Now, here you opine, in the last

2   sentence of this first paragraph, "As a result of

3   being told this by detectives, his guardian,

4   Ms. Jones, had no way of knowing that he would be

5   interrogated about a murder."  Do you see that?

6      A.     I do.

7      Q.     But you agree that when the police,

8   regardless of whose account you credit, whether

9   Mr. Jakes or the police, you agree that the police

10  did tell Ms. Jakes [sic] that they were there

11  because they believed Mr. Jakes knew something or

12  had information about the murder that took place

13  the night before, right?

14     A.     Officer Danaher's statement says that

15  he called Ms. Jones.  I'm not seeing anything that

16  I recall that at 10:30 or 10:45 at night, once it

17  was determined at that Mr. Robinson had identified

18  Jakes's involvement in the homicide that anyone,

19  Detective Kill or Detective Boudreau made any

20  attempt.  As a matter of fact, I think, in their

21  statements, they say that they didn't make an

22  attempt to call her.

23     Q.     So I realize my question wasn't precise

24  enough.  I'm talking about when the police

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 393

1  officers, Pack and DeLacy came to Mr. Jakes's

2  house.

3       A.    Oh, okay.  I'm sorry.

4       Q.    That was my fault for how I asked that

5  question.  You agree they told Ms. Jakes [sic]

6  that they were there to talk to Anthony about what

7  he knew about the murder.  That he had information

8  about it, or that's what they believed he had,

9  right?

10      A.    Correct.

11      Q.    So you agree that Ms. Jakes [sic]

12 regardless of whether the police took him out of

13 her house against his will, or he agreed,

14 according to the police, to come with them, you

15 agreed that Ms. Jakes [sic] knew that, because the

16 police told her, that when they left with him that

17 they were going to be asking him questions, at

18 least about what it was that he knew, what

19 information he had about that murder that happened

20 the night before, right?

21      A.    Well, that depends on whose account

22 that you believe.  Because --

23      Q.    I'm talking Mr. Jakes or the police.

24            MS. SPENCE:  Let him finish, Andrew.

Page 394

1     Go ahead and finish.

2          THE WITNESS:  Ms. Jones said that she

3     wasn't told what he was going downtown for.

4     The officers, in their report, document very

5     thoroughly that they talked to Ms. Jones and

6     they told her they're going to bring him down

7     and talk to him about this other crime.

8          But in Ms. Jones's deposition, I

9     believe it is, she says, I was never told

10    anything about why he was going -- why they

11    were taking him out of the house.  So there's

12    a little bit of conflicting there.

13 BY MR. GRILL:

14    **Q.     Here on Page 19 of your report, under**

15 **the heading that says Care With Miranda Warnings,**

16 **you have, in quotes, Even intelligent children and**

17 **teenagers often do not fully understand their**

18 **Miranda rights, which can require a 10th grade**

19 **level of comprehension.**

20          **This reality has been reflected around**

21 **the country as courts have been increasingly**

22 **willing to throw out a child's confession, even**

23 **after they appear to validly waive their Miranda**

24 **rights.  So do you see that piece?**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 395

1      A.      Yes, sir.

2      **Q.      Is it your opinion that Mr. Jakes did**

3   **not comprehend his Miranda rights?**

4           MS. SPENCE:  Objection.  Asked and

5       answered.

6           THE WITNESS:  I believe that -- I'm

7       citing a source here.  I think this is the

8       IAC -- the 2012 IACP document.

9   BY MR. GRILL:

10     **Q.      It is.**

11     A.      Where they say this.

12     **Q.      It is.**

13     A.      I'm meaning that Mr. Jakes at his age

14  of 15, and just starting his freshman year in high

15  school, might have fallen into this area.  Because

16  this isn't something Craig Miller is saying, this

17  is something that I'm citing from another source.

18     **Q.      So my question simply was, is it your**

19  **opinion that Mr. Jakes did not comprehend his**

20  **Miranda rights?**

21          MS. SPENCE:  Objection.  Asked and

22      answered.

23          THE WITNESS:  I believe that's

24      possible.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 396

1    BY MR. GRILL:

2        Q.    Is it your opinion that he didn't?

3             MS. SPENCE:  Objection.  Asked and

4        answered for the third time.

5             THE WITNESS:  I believe it's possible.

6    BY MR. GRILL:

7        Q.    Okay.  And you agree, though, that you

8    have no opinion or expertise, I should say, to

9    tell us whether it's possible that he did or did

10   not understand his rights, correct?

11            MS. SPENCE:  Objection.

12       Mischaracterizes the testimony, the previous

13       testimony, as well as the statements in

14       Exhibit 3.

15            THE WITNESS:  No, sir.  I'm just citing

16       this article.

17   BY MR. GRILL:

18       Q.    Well, I'm asking you if you have any

19   expertise to tell us whether it was possible or

20   not that Mr. Jakes understood his Miranda rights.

21   If you could look inside his head and say, yep, he

22   did or did not understand his Miranda rights, you

23   don't have any expertise to offer an opinion like

24   that, right?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 397

1        A.      I do not.

2                MS. SPENCE:  Objection --

3    BY MR. GRILL:

4        **Q.      So the point of this information is to**

5    **suggest, then, to the jury that it's possible that**

6    **Mr. Jakes, from your point of view as a police**

7    **practices expert, did not understand his Miranda**

8    **rights, right?**

9                MS. SPENCE:  Objection.

10           Mischaracterizes -- sorry.  Objection.  Form.

11               THE WITNESS:  I'm trying to share with

12           the jury that there have been situations that

13           are documented through the International

14           Association of Chiefs of Police that describe

15           that psychologists have said this about

16           juveniles who have been arrested.

17   BY MR. GRILL:

18       **Q.      This information is in there because**

19   **you are suggesting what conclusion should be drawn**

20   **from these missteps, discrepancies, what have you,**

21   **that exist in the investigation.  That is the**

22   **point, correct?**

23               MS. SPENCE:  Objection.  Form.

24           Mischaracterizes the testimony.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 398

1          THE WITNESS:  I feel as a police

2      practices expert it's my responsibility to

3      provide as much information as I can to a

4      jury to help them make their decisions.

5  BY MR. GRILL:

6      **Q.    Including the effect that these**

7  **missteps that you've described in your report that**

8  **exist, in your opinion, within the investigation,**

9  **caused, right?**

10          MS. SPENCE:  Objection.  Form.  Also

11      mischaracterizes the testimony.

12          THE WITNESS:  I can't answer that.

13  BY MR. GRILL:

14      **Q.    Because you don't know?**

15          MS. SPENCE:  Objection.

16      Mischaracterizes the testimony.

17          THE WITNESS:  I can't answer it the way

18      it was asked.

19  BY MR. GRILL:

20      **Q.    Okay.  Do you think this would have**

21  **been a good place for you to point out in your**

22  **report that Mr. Jakes had testified in the**

23  **criminal proceedings and also, in part, in his**

24  **deposition, that he did understand his Miranda**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 399

1    **rights?**

2              MS. SPENCE:  Objection.

3         Mischaracterizes the evidence in the record,

4         form.

5              THE WITNESS:  I elected not to put that

6         in.

7    BY MR. GRILL:

8         **Q.     Because you think it might water down**

9    **the opinion?**

10             MS. SPENCE:  Objection.  Argumentative.

11             THE WITNESS:  No.  Because that's the

12        way I wrote my report.

13   BY MR. GRILL:

14        **Q.     And the way you wrote your report was**

15   **to credit the portions of Mr. Jakes's deposition**

16   **testimony because that's, I think, the only place**

17   **this exists, where he suggests that he didn't**

18   **understand his Miranda rights, simply because they**

19   **weren't read to him by Kill and Boudreau,**

20   **according to him, right?**

21             MS. SPENCE:  Objection.  Form.

22        Foundation.

23             THE WITNESS:  I'm not the trier of the

24        facts.  That information -- the jury will

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 400

1       make this decision.

2   BY MR. GRILL:

3       Q.      I agree.  But my point is is in your

4   report you fault -- or opine that it's possible,

5   or at least today you're opining that it's

6   possible that Jakes did not understand his Miranda

7   rights.

8               Yet you don't -- yet you ignore all of

9   the testimony that he's given over the years where

10  he says the opposite.  So if you're going to offer

11  an opinion about what juveniles, you know, or how

12  they experience or understand their Miranda

13  warnings, don't you think it would be worthwhile

14  and helpful to a jury for you to also explain, so

15  they have the full picture, that Mr. Jakes has,

16  however, testified repeatedly that he does

17  understand those rights?

18              And part of the reason is because he

19  has had multiple run-ins with the police where he

20  has been read those rights in the past.

21              MS. SPENCE:  Objection.  Form.

22          Mischaracterizes the testimony.

23          Mischaracterizes the evidence in the record.

24          Argumentative.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 401

1           THE WITNESS:  Sir, I've said several

2       times today, that if I'm testifying and the

3       jury -- the trier of facts is needing

4       information, I'm going to be -- talk about,

5       well, if it had happened this way, this is

6       what the result could have been.  Or this is

7       how it could have been done differently.

8                 And if they ask me on the other

9       hand, well, if it would have been done this

10      way, I would answer the question the same

11      way.  Or I would answer that question the way

12      I felt was most appropriate.

13  BY MR. GRILL:

14      **Q.      You say down here, "Further, in**

15  **Mr. Jakes's handwritten statement from September**

16  **17, 1991 written at 4:30 a.m. at the Area 3**

17  **violent crimes building, he was provided the**

18  **standard CPD Miranda warning that adults were**

19  **provided.  And you're saying that because it's**

20  **your opinion that Mr. Jakes was not read the**

21  **additional warnings that juveniles need to be**

22  **provided with, right?**

23                MS. SPENCE:  Objection.  Form.

24          Mischaracterizes the statements in Exhibit 3.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 402

1          THE WITNESS:  What I'm saying is

2      minimize the risk, as a detective.  If you

3      know that this case is going to go to trial,

4      err on the side of doing more than doing

5      less.

6              Make sure that the juvenile who

7      has been incarcerated -- or not incarcerated,

8      he's been in-house for 16 hours, understands

9      everything that they are going through.

10             There is no hurry here.  Just

11     minimize your efforts and step back and say,

12     Can we do it this way?  And so, Are you sure

13     you understand Miranda?  Okay this is what

14     Miranda means, and just walk them through it.

15             It's just another few minutes of

16     explanation.

17     **Q.     Right.  So, that's not my question.**

18 **That doesn't respond to my question at all.  My**

19 **question was, you have this information in here,**

20 **because it's your opinion that Mr. Jakes was not**

21 **read the additional Miranda warnings that are**

22 **required to be read to juvenile suspects, right?**

23         MS. SPENCE:  Objection.

24     Mischaracterizes the testimony, as well as

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 403

1        the statements in Exhibit 3 -- 4, I mean.

2   BY MR. GRILL:

3        Q.      Well, let me ask you this:  Is it your

4   opinion that Mr. Jakes was read the proper

5   juvenile warnings, in addition to the standard

6   Miranda warnings that are read to adults?

7        A.      No.  He was not.

8        Q.      Okay.  That's my point.  So, let's talk

9   about a couple things, then.  Did you read

10  Mr. Boudreau's -- Detective Boudreau's deposition

11  transcript?

12       A.      I did.

13       Q.      Did you consider the statements in the

14  September 19th, 1991 supplement report that we've

15  looked at several times in regards to questions

16  today, about what it says about these juvenile

17  warnings?

18       A.      About juvenile warnings?

19       Q.      Um-hmm.

20       A.      I'm sorry, I don't think so, sir.  I

21  don't remember us talking about that.

22       Q.      Okay.  So let's point out a couple

23  things here.  So it's your opinion that he wasn't

24  read the proper Miranda warnings.  So let me show

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 404

1    **you this.**

2              MS. SPENCE:  What is this?

3              MR. GRILL:  This is exhibit -- whatever

4        the September 1991 supp report is.

5    BY MR. GRILL:

6        **Q.      So we're going to go to City Jakes**

7    **16 --**

8              MS. SPENCE:  No.  No.  No.  This is

9        really poor -- is this Exhibit 7 where you

10       had City Jakes 13?

11             MR. GRILL:  Yeah, it's the whole supp

12       report, not just the page that is the

13       exhibit.

14             MS. SPENCE:  I know.  This is the

15       problem that I've been having that you don't

16       have the range on there and I'm worried that

17       we're not going to be able to find this.

18             MR. GRILL:  I've said it.  It's City

19       Jakes 16.

20             MS. SPENCE:  What is the range?  That's

21       what I'm saying, there are multiple pages.

22       You just corrected me that it's not just one

23       page.

24             MR. GRILL:  I'll give them to you at

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 405

1           the end.  I'm happy to give them to you at

2           the end.  Okay?

3    BY MR. GRILL:

4        **Q.     Okay.  Oh, sorry, no, this is what I**

5    **want to look at.  So this is Boudreau's dep.  I**

6    **guess -- I can't remember if we marked this.**

7                MS. SPENCE:  We haven't.  Exhibit 11.

8    BY MR. GRILL:

9        **Q.     Sure.  Exhibit 11.  Mr. Boudreau's**

10   **deposition, and we're going to Page 208, Line 21,**

11   **to 209, Line 13.  Boudreau is asked this question**

12   **in his dep:  "Okay.  All right.  Let's take a look**

13   **back at Exhibit No. 2.  Your clear open supp**

14   **report.  It says at the bottom Page 5.**

15              **At this time, the reporting detectives**

16   **evaluated what had been learned during the**

17   **investigation.  Subject Jakes was re-interviewed**

18   **by reporting detectives.  This time the subject**

19   **was advised of his rights from the 1991 FOP**

20   **handbook, Page No. 79.**

21              **He was also advised that if charged, he**

22   **would be charged as an adult.  And if prosecuted,**

23   **he would be prosecuted and receive the sentence as**

24   **an adult.**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 406

1          **The subject Jakes stated that he**
2   **understood each of his rights and what the**
3   **reporting detectives had said to him.  He agreed**
4   **to speak with the reporting detectives about the**
5   **incident.  The reporting detectives then informed**
6   **him of their conversations with Robinson.  The**
7   **reporting detectives further related that they**
8   **would like to know the truth about what had**
9   **occurred."**
10         **Okay.  So, did you consider this**
11  **testimony in this exhibit in Mr. Boudreau's**
12  **deposition when you included or put the piece in**
13  **your report on Page 19, in support of your opinion**
14  **that Mr. Jakes was not read the proper Miranda**
15  **warnings that should be read to a juvenile?**
16      A.     Mr. Jakes was read the FOP, I think,
17  version, which is the exact language that was --
18  that's on the card that police officers carry.
19  I'm not disputing that.
20              I'm just merely saying, if you go back
21  into some of my other reports you'll see where
22  there is an opportunity to expound upon the adult
23  or the normal Miranda form so that a juvenile
24  might be able to have more understanding of what

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 407

1    exactly took place.

2              And in a murder case when you're trying

3    to present the best case that you can, why would

4    you not want to minimize your risk and step back

5    and say, Hold it.  Do you really understand

6    Miranda?  And walk him through it.

7         **Q.     Right.  So, a couple things.  First of**

8    **all, my question was, did you consider this**

9    **testimony when offering your opinion that**

10   **Mr. Jakes was not read, just simply read, the**

11   **proper Miranda warnings that a juvenile should be**

12   **read?  Did you consider this testimony?**

13        A.     I was aware of this testimony.

14        **Q.     Okay.  But you didn't make any note of**

15   **it, that according to Detective Boudreau's**

16   **testimony in Exhibit 5, which is the supp report,**

17   **that it was documented that he was read the proper**

18   **Miranda warnings, including the warnings that**

19   **juveniles must be read.**

20             MS. SPENCE:  Objection,

21        mischaracterizes -- sorry.  Objection.  Form.

22        Mischaracterizes the record.  Argumentative.

23             THE WITNESS:  I did not put this in my

24        report.

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 408

 1    BY MR. GRILL:

 2        Q.    Okay.  Was there any reason why you

 3    were crediting Mr. Jakes's account -- or shouldn't

 4    even say Mr. Jakes's account.  Is there any reason

 5    why your report took the position that Mr. Jakes

 6    was not read the proper warnings, when there is

 7    this evidence in the record to the contrary, that

 8    you were aware of?

 9        A.    No.

10             MS. SPENCE:  Objection.  Form.

11    BY MR. GRILL:

12        Q.    Is it your opinion that Mr. Jakes's

13    confession is not credible or reliable because of

14    the Miranda violations that you describe in your

15    report?

16             MS. SPENCE:  Objection.

17        Mischaracterizes the testimony.  Form.

18             THE WITNESS:  I think it would have

19        been more appropriate at 2:30 in the morning

20        or 1:30 in the morning, when Burke got there,

21        and Burke had a brief conversation with Jakes

22        that Burke would have said, Hey, look, I'm

23        going to get your grandma down here.  You

24        know, we're going to get everybody down here

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 409

1       so we can get this done right.

2                   And I think Caesar -- that Caesar

3       should have done it if he wasn't going to do

4       it.  And so there's more to this than not

5       understanding Miranda.  This is a kid that

6       has been there 16 hours.  He hasn't had

7       anything to eat or drink.

8                   And here he is -- and he's asked

9       to give a confession, according to him, and

10      if he does, he'll go home.  And I understand

11      that.  But the fact is is that there is just

12      no hurry.  We can step back from this and

13      just wait.  We don't have to do this at 4:00

14      in the morning.  He's not going to get on an

15      airplane and fly out of the town.  We can

16      talk to him tomorrow.

17  BY MR. GRILL:

18      **Q.      Are you aware of any rule, regulation,**

19  **standard that prohibits juveniles -- a**

20  **15-year-old, to be more specific, from being**

21  **interrogated about a homicide, you know, after**

22  **midnight or even at 4:00 in the morning?**

23      A.      He should have an advocate, a youth

24  officer, or a parent, or a legal counsel that's

Page 410

1  there with him.

2      Q.    Well, he did when the state's attorney

3  was there, right?

4      A.    Yeah.  But when he gave the first --

5  when Boudreau and Kill are talking to him at

6  10:30, there's nobody there.  And that's when

7  they're getting the story from him.  That's the

8  story that they end up giving to Caesar that goes

9  to Grossman.

10     Q.    Is it your opinion that the statement

11 that Mr. Jakes, according to the police, gave to

12 them implicating himself, gave to Boudreau and

13 Kill, that that was not a credible or reliable or

14 truthful confession?

15         MS. SPENCE:  I'm sorry.  Can you reask

16     the question, Andrew?  I had difficulty

17     hearing you.

18 BY MR. GRILL:

19     Q.    Is it your opinion that the statement,

20 the confession that Jakes gave to Kill and

21 Boudreau, putting all of the issues with the --

22 with no parent or juvenile officer, I guess,

23 according to Jakes, that was present there, is it

24 your opinion that that statement that Jakes gave

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 411

1    **them was false?**

2         A.    I don't think it was false.  I just

3    don't think it should have been allowed or

4    considered.  I think Boudreau and Kill should have

5    said, Stop.  Let's get somebody down here to be

6    with this kid.  Let's get somebody from the

7    Chicago PD Youth Division to be down there and be

8    an advocate.  Let's follow our own procedures and

9    do what we're supposed to do.

10                THE WITNESS:  Guys, it's 5 after 6:00.

11           I need to take 3 minutes.

12                THE VIDEOGRAPHER:  We are now going off

13           the record at 6:04 p.m.

14                     (Break taken.)

15                THE VIDEOGRAPHER:  The time is 6:13

16           p.m.  We are now back on the record.

17                MR. GRILL:  Mr. Miller, I'm done with

18           my questioning.  I don't know if Ms. Spence

19           has any questions for you, but I'm done.

20           Thanks.  It's been a long day and I

21           appreciate your time today.

22                MS. SPENCE:  I am not going to ask any

23           follow-up questions.

24                MR. GRILL:  Waive or no?

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 412

1          MS. SPENCE:  No.

2          MR. GRILL:  I didn't think so.

3     Signature reserved.

4          THE VIDEOGRAPHER:  This is the end of

5     the deposition.  This is the end of today's

6     testimony.  The time is 6:13 p.m.  And the

7     running length of this deposition is 7 hours,

8     11 minutes, and 15 seconds.  We are now off

9     the record.

10

11          (Ending Time:  6:13 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 413

1                REPORTER'S CERTIFICATE

2                I, BARBARA PERKOVICH, CSR No.

3       84-004070, Certified Shorthand Reporter,

4       certify:

5                That the foregoing proceedings

6       were taken before me at the time and place

7       therein set forth.  At which time the witness

8       was put under oath by me;

9                That the testimony of the

10      witness, the questions propounded, and all

11      objections and statements made at the time of

12      the examination were recorded

13      stenographically by me and were thereafter

14      transcribed;.

15                That the foregoing is a true and

16      correct transcript of my shorthand notes so

17      taken.

18                I further certify that I am not a

19      relative or employee of any attorney of the

20      parties, nor financially interested in the

21      action.

22                I declare under penalty of

23      perjury under the laws of Illinois that the

24      foregoing is true and correct.

Page 414

1      Dated this 6th day of June, 2022.

2

3

4      _____
       BARBARA PERKOVICH, C.S.R. No. 084-004070

5      161 North Clark Street
       Suite 3050

6      Chicago, Illinois 60601

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 415

<pre>
1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
2                        EASTERN DIVISION

3

4              I, the undersigned, declare under

5    penalty of perjury that I have read the foregoing

6    transcript, and I have made any corrections,

7    additions, or deletions that I was desirous of

8    making; that the foregoing is a true and correct

9    transcript of my testimony contained therein

10              EXECUTED this _____ day of

11   _____, _____, at _____,

12   _____.

13        (City)                    (State)

14

15            _____

16                    CRAIG MILLER

17

18   Subscribed and sworn to before me this _____ day of

19   _____, _____.

20

21

22   Notary Public in and for said

23        County and State

24
</pre>

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 416

**A**

**A's** 332:7
**A&E** 52:24
**a.m** 1:16 4:19
187:1 359:22
401:16
**abatement** 41:4
41:12
**Aberdeen** 2:3
**ability** 113:9,10
**able** 16:21 61:13
70:3 84:13
100:4 111:12
169:18 173:7
211:17 236:1
245:15 252:22
280:12 329:13
329:14 340:7
404:17 406:24
**absolutely** 99:19
115:1 135:6
181:22 218:11
255:2 266:16
275:17 280:6
284:1 302:3
325:13 326:24
329:3 348:24
349:22 358:19
377:1,21 379:9
**abuse** 211:12
372:2
**abused** 127:2
203:11 222:23
**academy** 16:7
16:17 25:10,12
25:13,24
**accept** 220:9
292:18 295:16
375:8
**acceptable**
223:6 289:9,15
289:20,24
290:3,10
291:24 293:21

293:22 347:20
388:12
**accepted** 81:19
105:10 106:17
107:10 108:17
109:11 114:21
175:10 176:6
176:20,23
181:4,8 196:1
201:5 212:4
213:6 276:8,15
276:19 288:8
288:16 294:9
295:22 296:22
297:12 301:6
302:21 347:17
348:7
**access** 16:22
**accomplish**
76:15
**accomplished**
302:13 377:5
**accomplishing**
76:14
**account** 104:5
110:1,14
148:19 165:8
169:22 198:21
198:23 199:15
199:20 200:22
223:1 238:24
275:15 296:20
297:12 302:8
314:23 315:10
319:5 324:19
324:20 325:3,4
327:1 345:15
356:7,10 357:7
357:8 378:12
378:17,18
379:8 391:11
392:8 393:21
408:3,4
**accounting**
274:12,17,20

303:15
**accounts** 191:2
218:4 228:3
347:14
**accurate** 8:24
9:3 103:10
109:1 146:18
190:1 200:23
215:14,19
268:4,9 274:1
308:19 387:16
**accurately**
274:12,21
**accused** 76:20
**acknowledge**
260:6 282:15
296:20 297:10
308:7 387:6
**acknowledged**
143:18 296:14
316:16 355:11
**acknowledges**
87:5
**acknowledgm...**
137:13
**act** 72:14
**acted** 297:12
377:14
**acting** 348:18
**action** 413:21
**actionable** 72:1
**actions** 108:16
114:20
**active** 42:5
49:10 75:1
**activities** 22:9
24:3
**actual** 21:13
44:23 76:17
96:6 155:11,12
155:22 160:16
201:8,8 310:14
320:19 365:7
**add** 195:15
**added** 320:23

**addition** 19:6
285:21 350:17
403:5
**additional** 49:6
51:4 108:23
146:17 279:21
280:22 401:21
402:21
**additions** 415:7
**address** 4:6
241:18
**addresses**
234:24
**adequately**
387:14
**adjustment**
370:20
**admission** 229:6
**admittedly**
341:1
**adult** 29:2,24
80:9 82:3
83:20,20 92:17
94:12 97:24
98:1 304:22
405:22,24
406:22
**adults** 26:15
29:24 78:23
79:23 80:2
99:16 122:22
175:20 349:14
401:18 403:6
**advice** 134:6
139:22
**advise** 137:6
140:1
**advised** 380:23
381:3,8 405:19
405:21
**advocacy** 94:15
**advocate** 229:9
346:7 348:18
409:23 411:8
**Affairs** 87:5

**Affective** 136:6
**affidavits**
151:21 154:12
**affirmatively**
276:2
**afternoon** 331:3
332:2
**age** 28:23 80:20
106:10 113:3
121:6,24
122:23 123:1
129:18 395:13
**agencies** 34:8
**agency** 175:13
377:9
**agent** 116:9
**ago** 55:13 56:14
101:21 104:8
104:12 118:8
125:4 187:17
202:5 226:14
231:24 247:10
**agree** 11:12 12:3
14:9 33:4 37:3
61:22 71:6,21
72:3,24 77:24
78:3 81:20
83:1 84:5
102:3,5 105:7
105:11,14
109:2 111:10
114:1 115:12
116:5 118:12
128:12,19
153:9 155:1
160:19 172:4
174:5 181:19
181:23 182:9
183:13 185:4,6
185:23 186:3
188:8 196:5
198:19,23
201:7 202:13
202:16 204:7
205:17,22

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 417

206:13,17
209:21 210:5,8
210:16 211:3
212:8,17 218:7
247:12 253:23
274:21 276:15
276:21 280:21
284:1 285:21
286:1,8,16
288:5,8,16,21
289:16,22
291:24 292:5
297:10 307:7
308:10,14
312:18 313:3
332:6 339:22
340:18 345:15
346:16 347:11
349:3,19 353:8
360:11 361:16
374:4 375:11
378:12 382:5
392:7,9 393:5
393:11 396:7
400:3
**agreed** 113:22
173:9 198:1
199:12 212:5
273:13 290:9
292:2 293:13
322:23 330:18
366:2 378:1
389:20 390:20
393:13,15
406:3
**agreeing** 187:8
202:11 323:8
348:15
**agreement**
340:5
**agrees** 97:15
323:6
**agrill@rfclaw...**
2:10
**ahead** 10:22

11:3,24 23:19
23:20 27:11
31:16 33:22
51:15 55:19
83:24 84:22
85:23 90:9
101:8 108:3
138:14 139:3
213:14 217:3
224:2 242:17
246:12,13
289:2 309:15
334:22 362:6
394:1
**aide** 229:8
**airplane** 409:15
**al** 1:6 4:14
**allegations**
11:14 12:8
122:13 126:15
261:23 372:1,8
372:24
**alleged** 11:20
122:14 126:14
158:9 222:12
304:7 381:24
**allegedly** 39:4
127:8 190:11
248:3,7 265:16
378:20 380:23
381:7,8,20,22
382:14,24
**alley** 173:2,3
**allow** 205:15
288:21 289:16
**allowed** 109:4
201:7 206:18
281:19 321:18
411:3
**alternative**
336:23
**amend** 253:6,8
253:13
**Amendment**
151:18 155:20

**America** 34:8
132:8 135:22
177:17 269:10
292:11
**amount** 8:16,23
9:1 26:15
145:3 363:5
**analyses** 115:22
**analysis** 40:18
112:17 116:12
297:3,3 358:21
**ancillary** 222:17
**and/or** 67:19
145:2 290:19
**Andre** 344:5
**Andrew** 2:7 5:8
7:22 16:20
67:21 107:23
125:13,18
129:6 142:9
170:17,23
171:7 209:14
210:18 211:20
214:3 230:13
253:6 290:14
291:21 303:19
308:4,11
393:24 410:16
**animals** 84:7
**annals** 364:4
**Annette** 165:7
247:19,20
248:1,2,15,22
248:23,24
249:5 257:19
272:14 315:2
319:24 325:7
329:20 334:15
**Annie** 272:15
**announced**
145:16
**anonymous**
276:17 277:24
278:11 279:8
280:17 281:7

281:20 283:14
283:18 284:2
285:23 286:2,9
286:12,15,16
288:10 369:9
369:13 378:21
380:6 384:3
385:12,15
**answer** 10:23
11:1 12:11
18:18 32:9
83:11 92:6
102:16 103:23
108:3 109:15
112:23 122:24
129:24 131:16
131:17 132:2
132:19 133:15
133:19,22
134:4 136:21
138:4,12,15
139:1,4,14,16
140:1 141:4,14
141:22 142:17
146:4 153:15
158:15,16,17
158:19,23,24
159:9,20
161:14 168:12
168:23 169:12
169:16 179:12
179:21 180:16
187:19 205:21
223:20 237:16
241:8 244:23
246:8,24 247:6
250:20 251:15
251:16,20
253:19,21
254:8 257:16
258:14 261:5,6
261:13 267:10
268:1 270:1,8
291:6,23 294:8
296:19 298:8

298:14,15
300:11,12,14
300:15,16,19
301:10 338:9
352:8,12,18
353:4,7,10,13
353:15,20,22
354:1,4,7
370:8 371:3,4
371:23 372:20
380:19 398:12
398:17 401:10
401:11
**answered** 37:15
39:21 76:9
106:7,22
107:13 108:1
109:13 112:21
120:8 122:4
152:15 154:23
155:6 158:15
159:9 161:4,14
177:11 179:7
179:11 206:22
213:11 270:24
308:22 387:11
395:5,22 396:4
**answering** 134:7
290:15 291:16
291:17,20,21
308:3
**answers** 70:5
189:4 205:10
352:2 384:20
**Anthony** 1:3
4:13 5:18
236:13 272:5
275:12,21
278:22 279:22
287:21,22
288:1 301:20
302:10 336:18
336:24 347:9
359:22 366:17
368:14 391:10

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 418

393:6
**anybody** 39:17
71:13 191:20
207:4 208:10
229:7,8 254:14
340:16,17
350:5 389:8,13
**anybody's** 373:5
**anymore** 237:15
**apartment**
71:14 162:24
238:22 258:4
272:14
**apartments**
367:8,18
368:10
**apologize** 92:6
147:14 201:19
350:8
**apparently**
130:4
**appear** 394:23
**APPEARAN...**
2:1
**Appearing** 2:5
2:11,16
**appears** 193:2
**applicable** 4:10
37:9 176:7,21
177:8
**applied** 34:1,12
34:13,15,17,20
36:24 57:24
131:21 179:4
305:6 391:8
**applies** 32:22
102:4 112:17
112:18
**apply** 32:4,4
146:6 197:9,24
**appointed**
374:14
**appreciate**
45:15 180:24
224:16 231:13

267:8,9 268:1
291:2,4,5
310:19 411:21
**approach** 64:23
269:15
**approached**
227:8
**approaching**
236:7
**appropriate**
14:3 79:18
105:4,5,24
116:13 210:23
269:21 289:7
303:8 322:24
323:2 329:11
359:1 401:12
408:19
**appropriately**
361:8
**approximately**
320:7 352:7
359:23
**April** 8:17 9:2
**Arab** 328:5,13
330:6,19 333:6
**area** 116:3 176:2
225:20 294:1
294:10 306:12
306:12 307:1
330:16,24
331:7,12,20,22
332:1,20 333:3
334:1 354:24
388:13 395:15
401:16
**areas** 81:11
115:18 116:2
202:1
**arguing** 133:2,5
303:18
**argument** 272:6
300:15
**argumentative**
54:15 107:13

143:14 176:9
177:11 192:14
205:9 242:5,17
269:8 282:4
283:20 303:18
305:9 307:11
314:4 344:13
399:10 400:24
407:22
**arising** 88:22
**armed** 370:18
**Arnold** 12:23
157:19 159:13
160:14
**array** 191:6,20
329:12
**arrest** 31:22
32:8,10,23
66:12,19,20
67:19 70:13,14
197:1 278:16
282:14,18
306:10 371:8
374:21
**arrested** 31:12
33:2 265:6
357:2 358:15
374:23 397:16
**arresting** 182:6
374:19
**arrests** 42:24
115:4
**arrive** 225:10
**arrived** 270:13
272:6 287:22
380:3 386:11
**article** 116:16
123:11 130:5
130:16,18
134:1,11,13,17
135:4 140:6,14
140:20 143:4
143:24,24
144:1 174:19
175:14,22

176:1,18 177:2
177:6,14
178:21 180:19
181:3,5 364:23
365:1 372:13
372:16 373:1
396:16
**articles** 14:10
116:19 135:15
178:7 180:17
**articulate** 64:23
**Arts** 16:2
**ASA** 85:18
153:21 159:6
160:22 186:19
200:10,14
**aside** 99:4 109:1
336:24
**asked** 7:15
37:14 39:20
63:22,24 92:5
103:22 104:1
106:6,21
107:12,23
108:1 109:12
112:20 120:7
122:3,8 124:23
124:24 126:4
128:8 129:21
131:12,14
152:14 154:22
155:5 158:14
159:8 161:3,13
164:19 165:10
165:24 177:10
179:6,10
205:20 206:21
213:10,12
244:13,20
250:1 270:23
273:20 279:5
285:15,15
286:24 293:6
296:18 308:22
313:6 337:22

340:4 350:9
352:1,4,24
355:23 360:1
371:5 387:10
393:4 395:4,21
396:3 398:18
405:11 409:8
**asking** 6:9 7:24
48:12,15 50:7
51:2,10,14
60:2 65:12,13
75:22 85:9
102:23 103:1
112:24 132:8
134:16 152:8
152:10 158:20
160:12 178:10
178:24 179:16
180:9 197:7
202:12,12
205:7,11,17
206:17 220:22
220:23 227:3
241:22 244:16
244:23 245:2
251:14 261:9
267:10,14,22
267:24 274:5,8
274:9 291:3,6
296:9 297:10
299:6,8,13
305:13 311:3,6
311:16,17
312:21 314:17
315:16 326:6
337:24 339:9
340:1,8 346:12
350:13,14
355:9 361:6
391:7 393:17
396:18
**asks** 249:13
299:13
**aspects** 177:14
211:8

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 419

| | | | | |
|---|---|---|---|---|
| **assaults** 96:2,3 | **at-large** 49:12 | **Augustus** 154:9 | 121:3 133:14 | **Barbara** 1:13 |
| 371:13 | **ate** 230:9 | **aunt** 273:16 | 147:11 160:17 | 5:22 413:2 |
| **Asserted** 151:18 | **attempt** 173:10 | 360:2 366:24 | 166:19 170:17 | 414:4 |
| **asserting** 298:18 | 392:20,22 | 367:19,22 | 172:11,12 | **base** 215:12 |
| **asserts** 155:19 | **attending** 41:10 | 368:2,21 | 174:3,15 | 216:16 263:1 |
| **assessing** 233:10 | **attention** 127:17 | **Austin** 10:12 | 175:10 176:18 | 271:11 |
| 235:1 | 129:9 207:11 | **authored** 278:17 | 187:17 188:19 | **based** 33:8,10 |
| **assessment** | 264:11 271:3 | **authors** 131:7 | 189:6 192:2,15 | 34:7,14,17 |
| 268:7 | 336:17,20 | 137:17,19 | 194:1,7 196:16 | 62:9 75:21 |
| **assign** 63:8,18 | 385:1 387:16 | 140:6,13 | 215:7 225:20 | 84:11 85:21 |
| 235:10 | **attorney** 7:19 | 143:21,22,24 | 228:9 236:23 | 103:3 107:3,16 |
| **assigned** 74:13 | 10:20 76:4,5 | **Automatic** 30:9 | 239:5,17 | 146:18 156:20 |
| 82:10 93:20 | 85:5 138:19 | **available** 56:4,8 | 240:14 241:13 | 177:15 195:19 |
| **assigning** | 139:13 141:24 | 67:17 112:4 | 243:8 248:24 | 215:24 216:5 |
| 233:11 235:2 | 187:22 188:20 | 118:6 119:2 | 252:21,22 | 224:23 226:23 |
| **assignment** 65:7 | 188:20 220:6 | 136:12 191:14 | 253:5 254:3,4 | 231:17 232:13 |
| **assignments** | 223:19,20 | 222:17 244:10 | 259:24 272:15 | 233:5,14,23 |
| 49:16,22 63:3 | 243:20,24 | 245:4 281:6 | 280:1,12 287:1 | 235:7 256:14 |
| 64:21 | 244:4 314:16 | **avenues** 69:8 | 292:16 293:5 | 258:21 262:17 |
| **assist** 19:14 45:1 | 315:16 353:3,9 | **avoid** 209:20 | 294:21 298:16 | 264:17 268:4 |
| 45:4 173:11 | 354:22 355:13 | 258:13 | 317:18 322:18 | 269:4,20 271:3 |
| **assistance** 70:24 | 375:10 377:20 | **aware** 29:22 | 327:20 331:13 | 271:12 274:19 |
| 71:2 213:5,9 | 410:2 413:19 | 58:1 70:8 82:5 | 332:14,18 | 275:1,4 277:15 |
| **assistant** 85:5 | **attorney's** 62:6 | 88:5 89:8 | 333:10 334:17 | 295:2 296:12 |
| 353:3 | 74:13 182:13 | 90:12,21 96:12 | 336:13 344:18 | 302:24 304:14 |
| **assisting** 45:9 | 182:15 183:8 | 97:15 98:6 | 357:24 360:22 | 319:20 320:3 |
| **Association** | 183:21 186:3 | 100:19 142:11 | 360:24 364:22 | 322:9 323:16 |
| 114:24 115:9 | 188:8 189:5 | 153:16 245:22 | 367:2 368:22 | 325:8 349:5 |
| 116:17 117:2 | 347:16,18 | 293:6 353:19 | 370:12 377:15 | 363:14 367:13 |
| 130:4 135:9 | 348:9 | 353:23 358:17 | 377:20 385:6 | 374:11 377:8 |
| 140:21 143:7 | **attorney/client** | 371:17 383:5 | 389:1 402:11 | 378:14,16 |
| 397:14 | 298:10,13 | 383:15 390:18 | 405:13 406:20 | 379:4,7 380:5 |
| **assume** 127:18 | 300:2,3 | 391:1,7 407:13 | 407:4 409:12 | 389:23 |
| 178:1 235:16 | **attorneys** 6:7,11 | 408:8 409:18 | 411:16 | **basic** 364:4 |
| 272:20 | 8:9 10:6,16 | | **backdoor** | **basically** 91:2 |
| **assumes** 280:21 | 11:10 12:18 | **B** | 136:19 | 168:8 228:16 |
| **assuming** 81:13 | 13:2,8 134:2 | **B** 3:9 84:4 | **backed** 150:17 | 267:19 |
| 214:6 308:18 | 139:24 141:7 | **Bachelor** 16:2 | 151:4 | **basics** 176:15 |
| 348:13 | 141:16 142:19 | **back** 18:18 29:3 | **background** | **basing** 217:9 |
| **assumption** | 247:4 251:24 | 40:4 49:7 | 9:21 15:23 | 272:11 |
| 260:14,17,20 | 253:21 297:19 | 57:17 59:22 | 126:8 | **basis** 11:20 33:9 |
| 261:10,12,16 | 298:3 372:19 | 61:14 64:1,2 | **backing** 104:7 | 54:22 111:23 |
| 261:17 | **audibly** 53:18 | 66:22 74:4 | **balance** 260:10 | 118:22 132:20 |
| **assumptions** | **audio** 6:19,20 | 111:4 114:10 | **ball** 226:4 | 133:18,20 |
| 233:15,24 | 54:8,20 55:1 | 120:16,22 | **balls** 188:10 | 194:14 223:23 |

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 420

233:15 247:6
252:2,7 253:17
261:7 274:22
275:6 287:5
298:17 299:10
312:7 346:19
360:5 374:12
379:23
**bat** 82:17
**Bates** 284:20,24
**Bates-stamped**
172:17 175:2
**bathroom**
120:15
**Bea** 367:22
368:21
**Bea's** 273:16
366:24 367:20
368:2
**bearing** 371:21
**beat** 213:6
222:22
**beaten** 213:1,18
**beating** 210:20
211:13 212:9
212:10
**bed** 360:24
**began** 345:11
346:13
**beginning** 67:10
187:19 197:20
233:1 339:1
**begs** 246:17
**behalf** 2:5,11,16
5:3,17,23
141:20
**behavior** 15:7
81:5 107:21
212:15
**behavioral**
115:21 116:12
**Beile** 2:19 4:2
**belief** 28:7 29:19
152:24 153:4
188:6 305:13

311:12 313:23
372:24 374:22
**believe** 7:21
8:23 9:3 12:12
14:3,7 16:13
31:4 34:17
35:21 37:16
38:2,2,5 45:22
53:16 54:7,9
54:11 55:8
69:14 72:6
80:16 84:23
85:20 101:2,23
102:21 103:20
107:14,20
113:15 119:17
120:4,11
121:23 131:19
132:3 136:18
144:15 146:21
149:6,7,16,20
163:9 165:21
175:11 181:3
183:21 184:1
184:14 185:12
191:1,12,24
195:1,1 199:1
201:1 202:5
211:8 213:17
215:18 216:8
219:4 224:21
232:2 235:7
236:4 240:23
242:19 249:11
251:8,13
252:10 270:20
272:3,13
275:20 278:2
279:4 283:24
287:15 299:13
299:19 310:21
321:22 328:23
329:8,9 342:19
346:21 358:11
358:13 363:1

363:11 367:21
368:3 371:16
371:17 374:4
375:1,2 377:1
380:12 381:19
385:4 386:8
388:6 389:6
393:22 394:9
395:6,23 396:5
**believed** 36:11
85:22 131:15
159:24 198:22
199:19 261:21
261:22 318:9
392:11 393:8
**believes** 115:2
241:1
**believing** 387:23
**belongs** 72:12
72:21
**belt** 171:17,20
**bench** 324:8
331:12
**beneficial**
225:18
**best** 16:12 48:21
55:17 56:5,15
57:2 58:6,12
85:23 271:17
407:3
**better** 46:7 71:4
96:21 268:18
**beyond** 183:17
183:24 184:6
184:11
**biased** 231:5
**big** 93:8 194:4,8
**bigger** 22:21
**bit** 53:22 75:4
174:20 187:18
201:21 216:15
221:2 262:9
267:13 328:5
380:16 394:12
**bits** 221:5

**bjohnson@rfc...**
2:10
**black** 278:21,22
**board** 49:15
131:22
**boards** 49:14
**body** 100:24
101:1,2,3
**body-worn**
218:1
**boiled** 262:11
**bomb** 46:8,9
**bond** 78:5
**Bonke** 2:12
**book** 81:13
**books** 58:3
74:10
**bother** 179:17
**bottle** 236:18
249:22 250:17
251:10 254:13
255:7 257:3,11
263:8 317:1,3
318:22 319:8,8
**bottles** 165:15
**bottom** 40:13
380:22 384:21
405:14
**Boudreau** 1:6
2:11 4:14
39:19 84:20
85:4,12,14,18
164:17 166:4
168:8 173:5,21
222:21,24
223:7 225:19
227:16 229:4
234:13 320:8
323:14 325:5
326:4 329:18
330:14 334:13
336:16 337:10
338:6 341:17
341:18,22
342:20,23

343:11,16
344:7 345:11
346:14 348:2
350:9 353:18
372:4,10 373:1
373:4 392:19
399:19 405:11
410:5,12,21
411:4
**Boudreau's**
169:22 192:24
223:2 324:3,19
325:4 337:4
342:4 349:12
403:10,10
405:5,9 406:11
407:15
**Boulevard** 2:14
**bounced** 248:2
**boundaries**
205:18
**boy** 377:16
**brain** 5:13
80:19 81:7,24
82:3,4 113:21
**branch** 367:7
**break** 49:4
75:19 120:14
120:20 133:12
209:14,17
211:19 214:21
215:5 252:20
253:3 305:6
336:11 360:20
411:14
**breaks** 50:5
**brief** 408:21
**briefly** 164:18
**bring** 48:6 74:3
182:17 183:15
183:22 187:20
189:7 294:1
295:19 394:6
**bringing** 296:21
301:4

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 421

**Brittany** 2:7
5:12
**broad** 15:14
**broader** 345:17
**broken** 162:23
163:15 165:14
165:17 242:24
243:1 247:11
247:14,16
**brought** 11:22
12:8 43:2 54:3
86:24 173:15
225:15 265:17
287:23 304:24
313:11
**browbeating**
175:19,20
**build** 70:14
78:14 87:16
374:15,15
**building** 30:16
31:24 36:8
272:10 296:9
332:1 401:17
**bunch** 9:18
**burden** 183:23
**burglarized**
84:2
**burglary** 42:22
193:21
**buried** 275:9
**Burke** 2:12
85:11 309:13
336:2 359:22
359:24 360:3
360:17,19
361:17,24
362:7 408:20
408:21,22
**Burke's** 361:5
361:21 383:10
**business** 4:6

———————
**C**
———————
**C** 30:10 84:4

**C.S.R** 414:4
**Caesar** 2:11
85:10 227:19
336:1 409:2,2
410:8
**cage** 304:6
**California** 41:19
**call** 19:2,11 61:1
62:9 66:13
67:5 103:16
265:2 277:2,19
277:23 278:1,6
278:11 279:8
279:18 280:5,5
280:17 283:14
284:1,3,4
285:8,22,22
286:5 287:11
384:2,3 385:11
385:12,16,16
385:17,18,19
392:22
**called** 6:2 47:18
60:20 61:4,18
61:20 62:20
95:24 108:8
191:2 311:20
341:11,11
392:15
**caller** 385:21
**calling** 66:4
188:10 229:1
**calls** 7:18 10:14
83:14 128:22
138:4,11,24
139:12,23
167:1,6 211:1
212:19 213:13
216:3,24 217:1
223:17 241:4,5
261:2 268:12
275:4 297:18
298:1 310:17
311:2 312:12
335:14 370:6

382:6
**calm** 170:14
**cameras** 218:1
**canvassing**
166:6
**capable** 377:14
**capacity** 7:2
15:3 27:2
124:4
**car** 73:2 166:7
169:9 192:16
192:20 266:18
287:23,24
288:2 290:23
292:8,12,15
294:7,16,22
295:8,12 296:7
296:12 307:16
388:22 389:1
389:17 390:10
391:11,15
**card** 406:18
**cardigan** 67:23
**Care** 394:15
**career** 57:15
62:5 221:21
**careful** 387:1
**carry** 406:18
**cars** 236:17
**case** 4:15 5:11
7:7 9:6 10:9,22
11:10,15 12:20
18:10,14 20:7
22:23 26:18
33:21 35:2
38:9 54:11
55:20 56:8,16
57:8 58:17
61:5 64:20
66:16 70:14
74:10 75:6
79:13 82:12
84:1 93:21
99:14 103:3
105:3,10 107:3

108:17,20
110:5 112:4,7
114:10,20
117:15 134:15
135:1,3,12
136:16 137:1,1
137:4 143:4
146:23 149:7
149:21 150:5
152:1 155:17
156:17,22
181:21 184:6,9
184:23 185:9
186:19 187:10
190:7 196:24
197:5 198:8,15
199:8 204:8
205:2,24
206:19 207:16
207:20 212:4
214:8 215:13
218:15 219:20
221:7 222:8
224:11,18
225:19 226:11
226:19,21,22
226:23 228:4,6
231:10,24
232:1,6,7
233:14 235:16
253:21 257:14
260:9,15
261:22 262:3
264:11 273:15
273:18 277:11
280:15 281:5
288:11 289:24
304:12 341:5
341:10 347:18
348:8 351:6
357:19 363:3,5
364:24 369:17
372:19 374:15
374:16,24
375:10 384:11

385:5 402:3
407:2,3
**case-by-case**
252:2
**cases** 9:22 10:11
10:16,19,24
42:13 74:15
92:20 95:12
99:23 100:5
135:14,16
137:8 148:13
220:8,9 231:9
372:1,3,4,9
373:6
**cast** 336:24
**category** 15:15
87:7 111:3
112:2,6 119:24
120:1
**cause** 123:16
182:24 183:14
183:20 184:18
185:18,20,24
187:7,13
196:24 197:12
346:19 348:24
375:9
**caused** 98:16
173:21 258:6
398:9
**causes** 117:15
141:5,14
142:18 364:20
364:20
**cell** 149:15
286:21
**center** 94:15
137:20 138:19
139:7 140:7
141:2 142:6,13
143:1 177:4
**central** 17:19
19:9 195:7
219:15
**certain** 25:10

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 422

34:2 104:21
107:2 175:13
177:14 192:9
192:11 205:3
211:7 228:6
232:14 233:24
240:13 322:4
323:18 327:23
**certainly** 6:17
21:19 22:4,17
58:4 62:23
70:2 71:8
78:22 82:15
92:14 97:2
98:3,24 150:3
158:5 159:11
159:17 160:13
217:22 218:3
224:16 225:9
231:13 262:6
265:23 277:16
286:18 302:5
302:22 304:21
317:4 319:10
327:22,24
329:8 358:24
**certainty** 184:8
184:13,22
185:8
**CERTIFICA...**
413:1
**Certified** 1:13
413:3
**certify** 413:4,18
**Chairse** 162:3
162:20 163:5
163:11,18
236:9 238:17
238:18 239:7
**Chairse's** 162:5
162:24 164:4
236:9 237:4,12
237:14,21
**challenging**
283:16 284:1

**chance** 117:16
119:7 120:6
178:17
**change** 25:19
28:17 151:22
157:9 241:11
**changed** 28:17
48:3 53:22
152:12 154:17
317:8
**changing** 176:3
176:6
**channel** 286:20
**characterizati...**
171:16
**charge** 28:10
30:23 42:10
45:10 182:17
182:24 183:15
183:15,16,22
185:18 186:1
186:18 187:20
188:21 189:7
197:12 321:24
334:22 346:19
348:10
**charged** 28:3,21
32:12,15
100:21,24
101:9 128:15
184:23 304:6
335:19 347:19
383:4 405:21
405:22
**charges** 62:22
83:6 98:11
375:11
**charging** 29:17
**chased** 168:18
173:3,8
**chat** 252:23
**check** 71:8
**Chicago** 2:4,9
2:15,17 4:7 5:9
5:13,16 29:5

34:4,5,18
36:17 55:23
80:5,6,7,8,14
80:15 86:20,21
86:22 137:22
138:21 149:8
182:10,18,22
183:6 233:9
234:11 322:6
346:6 348:17
352:6 363:2
364:6 365:17
372:13,15
377:6 382:8
383:17,20
411:7 414:6
**chief** 44:1 47:8
57:9 70:12
89:5 95:23,24
101:17,18
240:16 374:13
**chiefs** 57:5
114:24 115:9
116:17 117:2
130:5 135:10
140:21 143:8
175:4 397:14
**child** 175:16
**child's** 394:22
**children** 394:16
**choose** 69:8
230:19 270:15
288:21 298:23
298:24
**choosing** 337:5
337:5
**chose** 227:3
299:15,16
**chosen** 230:16
**cigarette** 265:11
**circle** 18:15
**circling** 121:3
**circumstances**
101:22 103:22
159:23 349:6

384:24 386:17
387:15
**cite** 102:19
113:7 114:6
116:24 132:9
136:8 153:12
153:18 178:3
178:10,12,18
178:21 180:3
180:13,17
181:1 197:5,18
221:2 237:7
238:2,3,7
240:10 324:2
**cited** 118:14
130:11 137:3,5
175:9 178:7,20
180:11 237:6
272:12
**cities** 220:11
231:6
**citing** 239:15
257:17 395:7
395:17 396:15
**city** 2:16 5:16
10:12 101:3
172:17 314:21
344:2 404:6,10
404:18 415:13
**civil** 1:11 4:10
11:16 41:16
88:21,22 89:2
89:4,6 141:11
**civilian** 293:23
293:24
**claim** 283:17
**claimed** 280:17
281:18
**claims** 11:21
297:3
**clarify** 23:16
**clarifying**
203:17
**Clark** 414:5
**class** 84:4,4

135:17,20
**Claudette**
163:18
**cleaned** 240:2
241:14 263:13
**cleaning** 162:23
236:21 238:21
255:17 258:5
318:20
**clear** 172:2
251:19 310:3
405:13
**clearing** 374:19
**clearly** 124:2
153:11
**Cleotha** 157:20
162:3 239:24
241:12,17,21
242:2,20,23
243:3,15,20,24
244:7,8 245:2
**Cleotha's**
263:12
**client** 12:9
**clients** 11:15,22
**clock** 32:19
321:15,19,21
**close** 89:12,19
357:17
**closed** 74:11
**closer** 90:3
179:5 180:5
357:17
**coach** 125:16
**coaching** 171:13
**coerced** 203:2
371:22 372:2
**coercion** 346:17
**coercive** 362:19
363:11 364:9
364:21 365:6
**coffee** 120:15
**coin-operated**
84:2 193:22
**collect** 182:12

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 423

188:18
collected 69:20
collecting
 181:20
collectively
 68:14
college 16:1
combination
 38:6
come 49:4 57:6
 79:8 82:22,23
 86:15 88:8
 105:16,23
 120:16 130:4
 165:23 169:2
 229:2,7 237:3
 252:21,22
 280:3 284:4
 288:22 289:17
 289:22 330:9
 360:24 375:22
 377:20 390:21
 393:14
comes 102:4,10
 115:4 131:1
 172:15 174:8
 186:1 196:6
 200:24 207:9
 210:4 211:12
 225:4 236:18
 257:2 284:6
 328:8
comfortable
 78:13 256:15
coming 215:9
 367:4
command 76:19
 77:2 79:12
 82:6 87:11
 88:20 93:1
 95:4
commander
 40:17,21,24
 41:2,4,7,12
 42:9 43:13,18

44:17,18 46:4
 46:15,23 47:3
 47:7,11,24
 49:24 56:9
 57:1,21 58:18
 61:11 65:5,16
 86:10 88:12,24
 95:10 96:6
 100:19 101:11
 144:9 145:11
 152:20 177:16
 370:13
commanders
 43:15,21
comment 201:4
 389:19
commit 88:1
 128:14
committed
 187:11 376:4
committing
 76:20
common 210:6
 210:12,14,16
 210:22 211:3
 211:15 212:8
 212:12,14,22
 213:16,23
 270:8 376:3
 378:3 390:3,8
communication
 298:13
communicatio...
 7:19 298:10
 300:2,4,4,8
Company 5:23
compared
 122:21
competing
 259:7
complain
 170:24 171:3
complaint 11:16
 11:17,20 86:21
 87:9 92:2

222:11,11
complaints
 86:23 87:7
 91:13 261:24
complete 204:22
completed 16:2
 232:15
completely
 289:7 292:9
completion
 306:14
complied 108:17
 223:5 295:22
comply 107:10
 109:11 117:14
 347:17
comport 106:17
 114:21 212:15
 276:8 321:8
comported
 223:5 295:22
 301:5 302:21
comports 81:19
 296:22
comprehend
 395:3,19
comprehension
 394:19
comprised
 66:14
compromised
 121:7
computer 40:18
 58:19 59:7,20
 59:23
conceivable
 212:16
conceivably
 375:22
concept 206:5
 207:9 213:9
concern 152:22
 300:2,7
concerned 44:16
 291:16 334:3

concerns 31:11
 60:19,22
 140:11,15
 144:7 152:18
 301:3
conclude 173:21
conclusion
 106:15 123:21
 194:9 207:21
 241:6 312:13
 312:22 335:14
 339:10,16,19
 340:3,6 342:18
 367:12 397:19
conclusions
 124:9 198:8
 250:24
conduct 17:23
 24:8 25:21
 42:18 44:3
 45:19 46:16,21
 50:13 70:15
 74:20 81:17
 166:9 181:24
 186:16 189:17
 202:7,16
 204:22 297:4
 301:3
conducted 81:18
 92:10,24
 201:15 208:21
 265:8 375:4
conducting
 21:18,24 27:5
 42:1 45:11
 74:23 75:18
 159:16
confess 98:17
 123:17 203:2
 305:7
confessed 99:24
 118:16 119:5
 120:5 122:21
 131:21,24
 132:6 144:6,8

144:11,19
 260:19 332:21
confesses 98:20
 131:1 149:19
confessing 127:9
 210:21 212:10
 213:8 345:11
 346:13
confession 14:6
 98:17 99:3,5
 99:15 100:3
 101:12,23
 102:21,24
 103:19 104:18
 106:4 109:21
 110:20 117:16
 119:10 129:3,4
 129:19 130:17
 130:19 144:16
 145:6,8,9,19
 145:22 146:9
 146:22 147:4
 147:19 148:16
 148:22,23
 149:10,13,18
 186:21 199:11
 204:20 212:9
 346:16,18
 347:12 361:2,3
 366:12 368:24
 377:17,21
 391:20 394:22
 408:13 409:9
 410:14,20
confessions 15:4
 88:10 95:12
 99:10 101:12
 102:5,10,13
 104:10,23
 105:8,16
 108:24 110:23
 111:18,24
 112:14 119:21
 121:5 122:14
 123:19 126:15

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 424

129:17 132:9
146:14,16
147:2,13
148:18 152:18
152:21 153:1,3
153:16 372:2
391:23
**confirm** 149:10
329:13,15
384:14
**confirmation**
229:1
**conflicting**
233:8 260:4,7
394:12
**conflicts** 233:10
235:1
**conformed**
105:10 201:5
212:4
**conforms** 115:2
**confused** 201:21
**confusing** 6:18
279:15 391:4
**conjunction**
223:14 347:12
348:1
**connected**
313:19
**connections**
142:5,12,23
**CONNELLY**
2:6
**consent** 266:2
289:3,6,8
379:17,21,24
**consequences**
91:3,21 98:12
**consider** 118:2
186:17 193:20
231:4 324:3,11
345:9 355:10
375:7 403:13
406:10 407:8
407:12

**consideration**
247:19
**considered**
247:24 336:18
358:24 380:4
386:12 411:4
**considering**
259:22,23
**consistent**
224:20 229:10
348:6
**constitute**
155:24 157:4,5
158:12 159:6
**constitutes**
70:20 113:3
127:15 129:2
159:10,11
161:21
**Constitution**
115:5
**constitutional**
373:5
**constraint** 93:8
**contact** 352:5,10
358:15
**contacted**
337:21
**contacting**
19:17
**contacts** 370:4
370:16 371:9
**contained**
102:22 112:9
113:12 218:24
364:15 415:9
**containing** 19:4
**contains** 129:8
**contemporane...**
60:4,13
**contemporane...**
59:13
**contents** 139:15
**context** 14:19
71:21 88:7

168:7 207:10
345:16 383:18
**continue** 143:16
196:23 197:11
**continued** 22:2
**contradict**
270:18 296:9
**contradicted**
257:4,14
366:13
**contradictory**
202:2 205:8
263:17 270:17
**contradicts**
156:24 259:9,9
263:10
**contrary** 255:7
309:2 319:13
338:23 408:7
**contributing**
137:17,19
140:6,13
143:21,22
**conversation**
59:9,13 60:6
60:14 61:24
65:9 68:13
251:23 280:3
344:4 346:2
360:4,6 408:21
**conversations**
54:19 56:22
60:10 64:5,9
65:13 138:13
139:1,3,12,16
139:23 141:6
141:15 142:18
146:19 253:20
261:3 297:19
298:2 299:14
299:19 301:11
372:18 406:6
**conversely**
302:11
**convert** 58:16

58:21
**convey** 82:16
**convict** 184:2,15
**convicted**
122:20 123:5
127:15 132:5
144:4 370:18
**conviction** 128:5
128:20
**convictions**
128:13 137:20
138:20 139:8
140:8 141:2
142:6,13 143:1
177:4
**Cook** 1:14 183:6
183:7 187:23
**cooperate** 91:21
**coordinating**
19:15
**Cop** 390:2
**cops** 229:21
**copy** 17:2,8,11
**correct** 7:8 10:1
11:11,18 12:9
16:4,18 17:10
17:21,22 23:15
24:6,16 27:13
42:17 43:12
45:8 46:6,19
47:4 50:21
51:6 53:16
72:20 75:11
78:20 81:6,9
95:4,5 106:5
109:23 110:16
110:17 124:5,7
125:2 130:9
134:9 172:11
174:21,22,23
184:2 188:13
188:22 189:1,9
189:14 198:6
199:17 200:19
203:7,23 204:5

204:5 207:8,17
208:12 210:1
212:7 218:17
219:23 230:2,8
237:4 273:9
275:1 281:8
285:17 288:19
295:24 303:21
313:10 317:22
328:10 333:12
338:11 343:7,8
349:11 368:18
386:14 387:8,9
391:24 393:10
396:10 397:22
413:16,24
415:8
**corrected**
404:22
**corrections**
415:6
**correlates** 114:9
222:15
**corresponds**
311:8,9
**corroborate**
97:18,20
100:14 101:5,8
315:10 334:24
**corroborated**
99:11 100:4
130:20 146:17
146:23 147:14
148:18,22
228:20 243:4
**corroborates**
99:8
**corroborating**
99:4,21 100:11
149:9,22,24
155:16,24
157:5 158:13
159:6,18 161:1
161:11,16,22
**corroboration**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 425

147:3
**corroborative**
157:14
**couch** 275:20
**counsel** 10:17,20
135:2 137:9
138:1,14 139:3
261:3,16,18
300:21 301:9
301:12 355:16
409:24
**counter** 258:12
**counterpoint**
245:20
**counterpoints**
258:18
**country** 70:3
117:8 212:17
231:7 276:21
363:8 394:21
**County** 1:14
183:6,7 187:23
415:23
**couple** 53:10
104:7 121:16
161:24 191:17
212:1 252:22
403:9,22 407:7
**course** 28:1 63:2
76:21 90:7
98:22 105:3
135:16,20
199:2 205:3
222:23 224:24
271:8
**courses** 33:15
**court** 1:1 3:23
4:16 5:19,22
18:17 41:9
88:13 103:14
103:14 123:14
123:22 144:20
184:2 196:22
197:8,9 222:2
306:13 311:20

335:15 339:11
340:9,12
351:10 353:1
357:1 415:1
**courts** 1:12
394:21
**cousin** 241:13
315:3,5
**cousins** 315:22
**cover** 45:1
115:18 361:24
**covered** 199:12
**CPD** 30:12 31:4
31:10 87:1
292:6 293:8
349:7 390:19
391:8 401:18
**Craig** 1:9 3:2
4:12,23 6:1
9:14 113:7
240:16 395:16
415:16
**credence** 342:12
342:13,14
**credibility**
198:15,18,24
216:4 217:2
233:10 235:2
249:14 268:13
274:6,8 283:17
311:2,4,18
382:7
**credible** 178:13
249:11 310:22
408:13 410:13
**credit** 301:21
303:10 324:17
324:18 358:5
391:10 392:8
399:15
**credited** 198:22
341:19
**crediting** 325:3
342:7 347:14
348:13 408:3

**crime** 22:5 27:2
28:10 32:12,15
42:24 77:16
88:1 97:4
128:14 131:1
149:19 182:18
187:12 212:11
279:24 283:8
293:14 366:14
376:5 380:5,8
386:9,13
390:22 394:7
**crimes** 92:12,13
94:18 95:24
96:7 306:17,18
306:21,24
370:17 401:17
**criminal** 14:19
16:11 21:13
27:5 40:18
43:7 61:5 83:6
91:3,21 126:8
144:21 168:2
204:23 221:20
243:12,23
245:4 343:21
343:24 357:19
369:22 371:13
371:20 373:11
373:24 374:5
375:22,23
383:23 398:23
**criteria** 106:10
124:14 146:6
**critical** 163:6
190:15 276:23
**critically** 143:11
**CSI** 96:3
**CSR** 1:13 413:2
**culpable** 22:5
**currently**
333:20
**curriculum** 9:4
**cursed** 91:18
**cursor** 275:9

341:18
**cursory** 220:4
**custodial** 123:15
**custody** 37:20
175:16 322:14
**cut** 23:19 289:12
**cut-off** 28:24
**cutoff** 80:6
**cutting** 53:3
**CV** 10:1,5,9
15:19 17:3,8
40:8,9,14

———————
**D**
**D** 2:7 3:1 272:15
**DA's** 82:10
**Dallas** 16:19
17:14 18:1
24:8 25:12
26:18 34:2,3,3
34:4,14 40:19
52:19 53:4
54:24 77:5
87:3 93:24
96:3 101:16
145:17 148:14
149:8 152:19
153:1,10
157:12 189:5
192:20 363:1
364:6 365:18
**Danaher** 39:5
39:16 304:4
306:2 307:12
309:9,11,13
310:5 381:4,4
381:10,24
382:22,23
385:6 386:23
**Danaher's**
392:14
**Darren** 190:7,8
190:9,14,17,21
190:22 191:2,7
191:9 192:9,11

192:22 195:2,4
196:10,12
228:9 329:16
376:12
**Darren's** 196:6
**data** 176:13
**date** 4:18 77:11
135:19 154:8
352:6 354:2,6
**dated** 130:8
414:1
**day** 1:15 12:24
13:21 53:2
54:11 61:11
157:19 159:13
160:14 168:15
193:14 228:16
228:17 248:7
248:23 266:4
317:9 367:5
411:20 414:1
415:10,18
**Day's** 13:2,8,14
14:1 156:8,11
200:13
**day-to-day**
56:10
**days** 8:15 44:19
74:2
**DC** 5:18
**deal** 61:15 194:5
252:1 282:11
376:5
**dealer** 41:21
**dealing** 27:18
33:16 64:12
99:18
**dealt** 42:23 94:9
282:7 362:24
**death** 64:20
**decades** 123:14
157:10
**deceased** 19:4
47:20 49:11
376:6

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 426

351:19,22
**decide** 63:8
101:22 112:7
120:1 144:18
144:21 188:12
188:21 194:10
198:9 199:8
203:3 217:17
220:2 239:18
239:20 240:2,3
253:13 255:4
256:20 257:2
257:13 258:6
258:15 260:5
263:5,16
266:19 319:12
**decided** 63:17
221:8 223:12
239:16,21,22
255:23 263:9
263:15 274:10
274:19
**decides** 182:16
**deciding** 143:3
186:1 259:5,15
262:23 267:16
268:6
**decision** 14:7
28:9 103:5,7
103:15,21
107:16 108:11
111:7 185:24
185:24 187:20
187:23 245:3
257:9,10 259:3
259:4 263:5
265:2 270:10
270:13 319:11
321:23 340:12
400:1
**decision-maki...**
246:1 251:21
259:14
**decisions** 69:7
144:20 246:6

252:4 269:5
398:4
**declare** 413:22
415:4
**defendant** 2:16
5:3,4,14,16
88:21 168:4,21
169:14
**defendants** 1:7
2:11 5:10
141:11 234:4
234:16
**defense** 76:5
220:12 243:23
245:4
**definitely**
385:20
**definition** 70:19
70:22 157:5
160:23,24
161:11,16
**degree** 16:2,11
184:21
**degrees** 14:22
81:14
**DeLacy** 2:11
227:17 277:14
277:18 278:17
285:6 367:5
369:8 380:6
388:1 393:1
**DeLacy's**
379:20
**deletions** 415:7
**demonstrate**
151:3
**denial** 223:2
**denied** 316:18
338:22
**Denise** 157:18
159:14 165:6
247:21 255:10
257:19 272:14
315:2 317:7,18
319:24 325:6

329:19 338:22
**Denise's** 319:6
**dep** 8:14 154:11
154:11 326:18
405:5,12
**department**
18:1 25:8
26:19,23,24
28:21 29:6
32:18 34:3,5
35:6 36:12,14
38:14 53:20
77:5 86:21,23
96:4 115:1,8
116:9,18
139:21 157:12
177:17 183:7
224:7 228:7
234:12 294:11
320:19 332:15
364:6 377:10
388:14
**department's**
189:21
**departments**
29:13
**departments'**
34:23
**depend** 225:8
**dependent**
378:11,23
**depending**
103:4 165:8
269:22
**depends** 393:21
**deployed** 47:21
**deponent**
291:11
**deposed** 18:10
318:19
**deposition** 1:9
4:5,8,12 5:1
10:4 38:8 39:7
121:20 151:10
151:11,16

154:10,17
155:19 162:6,9
197:21 224:14
229:15 236:9
237:4,6,6,12
237:14,21
238:19 239:15
239:24 240:19
242:3 244:8
291:5,7 321:12
325:11,15,23
326:6,14,23
327:3 339:2
349:12 351:9
354:8,13
355:10,11,20
356:9 358:1
359:12 383:11
394:8 398:24
399:15 403:10
405:10 406:12
412:5,7
**depositions** 1:12
6:10,23 222:1
222:16 228:1
232:9 309:12
**deprived** 228:23
**deputy** 44:1
47:8 95:23,24
101:18
**describe** 71:4
236:16 343:13
397:14 408:14
**described** 23:3
231:22 276:7
297:5 377:13
398:7
**describes**
279:18 378:10
**describing**
310:5
**description**
68:16 73:2
315:4,6
**designated**

272:18
**designed** 208:22
**desire** 82:22
311:24 312:17
350:18
**desirous** 415:7
**despite** 317:24
**detail** 69:1
366:13
**detailed** 372:1
372:24
**detailing** 30:22
**details** 36:10
65:2
**detain** 27:24
28:8 29:16
**detained** 26:16
26:21 27:16
28:20 31:12,21
32:7,13,23
33:2 44:22
**detaining** 30:23
**detective** 33:12
47:22,23 48:6
48:24 49:4,16
51:1,19 63:18
67:17 73:20,21
73:23 75:18,21
75:22,24 77:2
77:9,16,18,20
79:11 82:11
85:10,17,17,21
89:21 91:8
93:20 97:3,9
97:16 139:20
149:8 166:3,6
166:14 167:13
168:1,12 172:3
186:11,16
192:9,23 200:4
204:8 205:23
207:19 234:12
234:13 265:5
309:9 323:20
324:3,19 325:3

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 427

337:3,3 338:6
351:1 353:17
353:18 370:1
372:3,3 373:3
373:4,14 374:9
383:22 392:19
392:19 402:2
403:10 407:15
**detective's**
83:12 188:10
188:17 189:22
197:10
**detectives** 21:22
33:14 39:8,18
49:13,23 50:6
54:17 56:10
58:17 59:19
63:4 64:7 65:3
65:18 66:22
68:18 69:2
71:22 73:20
74:20 76:6,18
77:7 82:6 86:8
87:10,18,24
88:11,20 89:9
90:13,22 91:6
91:14 92:10,24
93:19 96:13
97:24 98:6,7
99:18 100:3
103:7,13
106:16 153:2
164:17 178:5
181:20,23
182:3,9,21
191:24 192:23
204:18,22
207:13,16
208:14 226:1
227:18 240:13
248:3 280:19
282:10,24
283:12 287:14
306:17,23
313:6 320:6,8

323:13,19
328:3,13
329:18 330:14
330:24 331:19
332:17,18
333:14 335:19
336:16 338:21
346:1,23
348:19,23
376:17 387:3
391:18 392:3
405:15,18
406:3,4,5,7
**detectives'**
36:18 107:9
**determination**
103:21 111:8
182:23 185:17
185:19 186:5
198:19,24
216:4 217:2
220:6 221:10
232:13 240:6
240:15 241:6
249:16 268:13
274:6,9 311:3
311:4,18
**determinations**
198:15
**determine** 72:13
146:8 190:14
192:22 193:1
213:5 220:16
256:20 269:2
339:21 340:9
368:7 373:12
373:15,17
374:1
**determined**
123:10 349:5
375:5 392:17
**determining**
128:5
**develop** 87:21
90:4 374:14

375:18
**developed** 80:17
329:15
**developing**
334:18
**development**
80:19
**device** 4:4
**dictated** 391:14
**differ** 228:2
**difference** 32:6
70:21 282:16
**differences**
26:11
**different** 34:10
44:18 76:11
80:15,20 83:24
84:6 95:3
96:18 132:14
151:11 175:20
193:5 198:22
216:6,10
217:21 248:19
249:1 264:20
265:20 269:14
269:15 272:16
299:6 300:9
302:4,7 349:13
385:9
**differently**
83:19 401:7
**differing** 263:24
**difficult** 147:15
149:16 190:17
252:11 286:13
**difficulty** 410:16
**diligence** 149:11
192:21
**dire** 91:20 98:12
**direct** 21:5,10
**directed** 125:10
**directing** 63:2
65:23
**direction** 21:14
200:6 201:1

256:23 301:24
**directly** 133:24
259:9 284:4
**disagree** 51:12
171:15 254:1
292:9 345:21
389:19
**disagreeing**
187:8 296:8
**disclaimer**
235:14
**disclose** 10:14
10:19 137:7
139:23 141:5
141:15,23
142:18 223:18
261:2 297:18
298:2 299:14
299:18 372:18
**disclosed** 10:17
10:21 96:13
130:6 137:8
251:1,4,18
263:21 298:6
299:22 364:12
**disclosing**
139:15 253:19
300:11
**disclosure** 247:8
261:5
**discounted**
254:20 317:13
**discounting**
158:7
**discover** 224:24
**discovered**
329:23
**discrepancies**
397:20
**discrepancy**
169:21 174:10
238:24
**discrete** 116:3
**discuss** 12:23
75:20 102:14

108:8 110:9
129:21
**discussed** 59:16
65:17 344:8
**discussing**
210:13 333:21
**discussions** 63:6
65:2 69:2
223:18 300:20
**dispatch** 280:4,4
284:2,3,11
286:4,4,5,19
286:21 384:5
**dispute** 233:14
243:1 247:11
249:4 255:19
285:22 286:3
385:11
**disputed** 255:7
**disputes** 233:21
234:1,4,15
235:16 250:15
**disputing**
406:19
**disregard** 347:5
**disrespectfully**
220:21
**dissimilar** 55:23
**distance** 90:1
**distinction** 20:2
20:6 26:14
31:21 365:24
366:5,9
**distinguishes**
20:16
**distracted**
285:10
**distributed**
118:5
**district** 1:1,1,11
4:16,16 74:12
284:5,23 285:4
285:5,8 415:1
415:1
**diverging**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 428

264:20
**division** 1:2 4:17
 17:17 23:17
 26:18 27:3,4,9
 33:14 40:24
 41:15 42:6
 43:11,14 44:2
 44:9 92:14
 94:9 229:9
 341:12 346:6
 411:7 415:2
**document** 8:7
 8:14,19 11:4,8
 56:22 59:8
 60:9 61:24
 63:6,10,12,16
 63:24 64:5
 65:1,16 69:1,4
 69:6 73:15,18
 74:5 114:9,13
 114:17 124:23
 124:24 126:5
 128:9 129:22
 130:10 131:12
 140:9,13 154:7
 172:19 180:15
 244:14,20,23
 250:2 256:10
 279:1,6,12,17
 282:21 287:4
 287:10,11
 308:23 314:17
 315:17 316:24
 320:10 322:6
 350:8,9 355:24
 356:21 357:11
 361:8 382:23
 384:23 385:17
 386:16 387:2
 387:14 394:4
 395:8
**documentation**
 64:11,11
 277:10 304:4
 307:5,21

308:15,18
309:4,7 310:4
310:12,13
364:3
**documented**
 58:2 64:24
 73:16 75:23
 278:9 279:10
 280:7 282:14
 282:18 307:7
 309:15,18
 316:7 328:23
 360:4,7,16
 363:24 364:5
 381:2,12 382:7
 382:24 383:1
 385:20 397:13
 407:17
**documenting**
 362:1 385:7
**documents**
 35:21 114:23
 152:1,2 153:22
 154:6 155:13
 174:7 218:24
 219:6 232:7
 238:3 260:2
 273:21 308:8
 315:14 337:10
 344:3,7 366:21
 367:16,24
 379:5,8,16
**dogs** 46:10,10
**doing** 10:11 53:2
 54:5 56:10,11
 73:20 76:12
 79:16 106:2
 119:18 134:22
 176:15,18
 211:11 224:9
 224:14 226:2,3
 236:13 268:17
 298:15 334:19
 335:12 389:17
 402:4,4

**DOJ** 115:13
 117:1 118:3
**door** 242:22
**dotted** 145:6
**doubt** 98:16
 183:17,24
 184:7,12
**downtown** 394:3
**dozen** 370:16
**draft** 123:4
**drafted** 246:7,23
 247:3 300:22
**drafting** 179:13
 179:22 180:9
 223:19 246:5
 246:21 250:22
 298:3,20
 299:17
**drank** 230:9
**draw** 20:2,6
 198:7 207:22
**drawing** 367:12
**drawn** 397:19
**drew** 127:1
 129:9
**drink** 113:13
 175:18 228:18
 228:22 409:7
**drinking** 24:16
**drive** 2:8 266:18
 307:16 389:2
**drives** 158:1
**driving** 169:8
 376:10
**Drizin** 137:20
 137:23 138:2
 141:1
**Drizin's** 138:7
**drop** 71:11
**drove** 72:9
**drug** 41:17,20
 306:10 390:14
**drugs** 39:4
 265:17 266:15
 266:21 290:19

306:6,7 380:23
388:6
**dry** 49:14,15
**Duckhorn** 39:16
 168:9,11
 225:16 306:24
 320:6
**dude** 366:19
 368:16
**due** 149:11
 192:21
**duly** 6:2
**dump** 101:2,3
**duress** 103:11
**duty** 19:19
**dynamic** 170:24
 171:4

---

### E

**E** 3:1,9
**earlier** 67:10
 147:5,17 148:5
 168:15 177:9
 192:17 230:17
 238:18 255:23
 260:1 303:7
 316:16 318:10
 318:12 322:6
 323:24 328:5
 342:10 373:13
 373:16
**early** 57:15
 367:3
**ease** 78:17
**easier** 40:5
 60:17
**easiest** 257:16
**Eastern** 1:2 4:17
 415:2
**easy** 82:18 244:1
 245:21 361:15
**eat** 175:18
 228:18,22
 360:24 377:18
 409:7

**eaten** 145:4
**eats** 61:6
**edge** 53:3
**editorialize**
 170:9
**education** 33:18
 34:14 295:3
 389:24
**educational**
 9:20
**effect** 107:20
 177:15 245:10
 293:8,16 383:6
 398:6
**effective** 130:7
 302:15
**effectively** 72:2
**effort** 190:13
 193:1 238:9
 243:6
**efforts** 402:11
**egregious**
 262:14
**either** 28:15
 44:4 45:20,24
 85:17 118:11
 184:6 229:24
 235:24 247:20
 289:5 334:24
 363:18
**elect** 301:16
 302:14
**elected** 239:10
 240:17,22
 256:13 262:15
 301:14,24
 327:21 399:5
**element** 19:3
**elements** 341:14
**elicit** 384:17
**eliminated**
 341:16
**else's** 199:19
 317:20
**emphasis** 341:4

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 429

86:8 98:8
221:14
**employed** 69:7
91:15 98:14
255:4 256:19
257:8 258:6
262:21 263:5
263:16 267:16
268:6,24
319:12
**employee**
413:19
**employing**
87:18 252:4
**encourage**
326:17
**endorse** 79:2,18
80:7
**ends** 99:14
**enforce** 116:8
**enforcement**
16:10 29:20
32:24 115:2,4
115:19 117:7
118:4 135:17
135:18,21
146:12 153:2
211:8 229:18
229:19 292:10
295:6 364:4
377:9 380:1
**enforcing** 24:15
**ensure** 351:1
**entails** 264:12
**enter** 288:18
289:9
**entire** 42:10
44:2 249:21
254:12 271:21
**entirely** 297:12
**entirety** 75:7
93:10
**entitled** 252:8
**equal** 160:10
**equivalent**

93:24 184:12
189:18
**erase** 49:14,15
**err** 402:4
**especially** 155:6
384:23 386:16
**essence** 302:17
**essential** 190:10
191:10 195:18
389:15
**establish** 78:9
87:20
**established**
184:15 365:2
366:23
**establishes**
187:12 193:7
**estimate** 352:14
**estimation**
216:1 341:16
**et** 1:6 4:14
**evaluated**
405:16
**evening** 318:10
318:12 320:14
**event** 53:12 67:2
94:23 375:17
**events** 104:5
162:21 163:19
198:21 223:9
223:12 227:4
230:1 235:17
257:15 276:5
292:18 295:17
295:18 314:23
348:14 375:9
378:12,24
**eventually**
236:22
**everybody**
194:3 324:7
326:17 408:24
**everyone's**
159:15 216:8
217:7

**evidence** 35:1,17
36:2 69:19
70:15,21 71:23
97:21 99:12,22
100:5,11,20
101:13 130:21
140:17 147:18
148:15,20,23
149:9,13 150:5
155:17,24
156:17,20
157:6,14
158:13 159:7
161:1,12,16,22
163:3 165:16
170:3,5 172:7
174:13 181:21
182:11,16
184:15,20
186:17 188:6,7
188:19,19
189:7 190:19
195:2,13
208:13 257:4
259:7,8 262:22
262:24 263:9
273:6 275:15
281:10,16
285:13 292:19
296:14 306:2
318:4 326:16
327:7 334:10
338:7 341:19
342:7 345:8
347:15 348:4
356:13 357:11
357:23 366:14
371:1 375:18
375:19 376:19
399:3 400:23
408:7
**exact** 93:5
245:11 278:6
318:8 406:17
**exactly** 28:17

35:24 78:8
179:19 180:23
256:22 276:24
280:2 369:19
371:17 407:1
**examination** 3:3
6:4 413:12
**examined** 6:3
**example** 60:6,15
63:6 64:15
71:23 82:1
89:19 96:24
97:5,6 100:21
111:18 115:22
117:15 182:10
190:7 192:16
198:18,19,23
209:8,19 221:7
222:20 223:1
263:8 310:24
334:6 338:21
376:21
**examples** 199:7
199:10 209:4
**exception**
153:13
**exchanged** 7:10
**exclude** 195:15
259:5 377:24
**excluded** 300:1
324:14,15
**exculpatory**
195:2,9,12,13
**excuse** 39:16
127:11 252:12
253:14 279:9
**execute** 63:18
**EXECUTED**
415:10
**executive**
157:12
**Executive's**
130:6 136:6
**exhibit** 3:22
8:13,14 10:3,4

11:6 12:6 30:5
35:3 108:6
134:15 140:18
144:13 167:18
167:20,21
172:16 175:2
181:11,17
231:3 232:18
235:20 239:4
263:22 284:14
284:17,18
287:4,17 314:4
324:23 338:15
342:2 343:4
344:12 354:14
357:11 361:13
368:13 382:18
396:14 401:24
403:1 404:3,9
404:13 405:7,9
405:13 406:11
407:16
**exhibits** 16:22
154:10,11
**exist** 177:24
242:15 259:12
297:13 397:21
398:8
**existed** 150:5
390:19
**exists** 87:1
183:21 355:17
399:17
**exonerated**
127:19 128:4
**expect** 62:18
276:24 288:14
370:2,20
390:14
**expectation**
277:8 294:15
295:2 370:12
390:13
**expected** 60:23
192:6

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 430

| | | | | |
|---|---|---|---|---|
| **experience** 6:10 | 312:7 337:2 | **extricate** 252:11 | 216:16,17,17 | 102:1 117:17 |
| 9:20 33:11,15 | 338:5,10,18 | **eye** 193:8 206:9 | 216:22 217:5 | 180:2 186:14 |
| 33:19 34:15 | 341:21 343:15 | **eyes** 362:10 | 217:17,23 | 205:9,10,13 |
| 61:3,7 71:18 | 359:5 361:6,9 | **eyewitness's** | 219:12,14 | 219:16 291:14 |
| 80:22 95:13 | 361:16 396:8 | 150:1 | 220:2 223:22 | 291:15 317:14 |
| 107:3 145:10 | 396:19,23 | | 233:14 234:17 | 352:5 |
| 157:11 177:16 | **experts** 114:18 | _____ | 236:1 239:6 | **fairgrounds** |
| 222:5 233:17 | 116:21 137:18 | **F** | 240:14 241:1 | 46:11 |
| 235:9 258:22 | 198:1 269:9 | **face** 89:12 | 246:9 250:21 | **fall** 87:7 113:17 |
| 267:5 269:18 | 270:4 | 265:11 272:7 | 250:23 251:4 | **fallen** 395:15 |
| 295:4 322:9 | **explain** 105:23 | **facets** 175:13 | 251:16 252:6 | **falls** 110:20 |
| 362:4 369:23 | 107:1 183:18 | 176:13 228:6 | 253:22 256:10 | 133:16 153:11 |
| 389:24 400:12 | 210:7 211:7,17 | **facility** 33:6 | 256:10,14,20 | **false** 15:3 82:7 |
| **experienced** | 232:3 245:14 | 35:11 322:14 | 256:22,24 | 86:7 102:12,22 |
| 144:14 146:20 | 400:14 | **fact** 7:5 101:7,8 | 259:5,8,10,11 | 102:24 104:10 |
| **expert** 7:3,15,20 | **explained** | 111:1 118:24 | 259:15 260:5 | 104:23 105:8 |
| 8:18,18 9:23 | 117:14 211:13 | 157:8 164:10 | 263:6,17,21 | 105:16 106:4 |
| 10:16,22 12:20 | **explanation** | 167:4 172:4 | 267:16 268:4,8 | 108:24 110:23 |
| 13:3,4 14:4 | 245:23 345:3 | 189:3 197:23 | 269:6 270:10 | 111:18,24 |
| 15:3,6,14 81:4 | 402:16 | 198:20 217:9 | 270:15,16,17 | 112:14 117:17 |
| 81:16,17,22,23 | **explosive** 46:4 | 218:7 233:12 | 270:17,18,21 | 119:10,20 |
| 104:20 105:20 | **explosives** 46:23 | 235:4 237:7 | 271:4,7,12,13 | 120:6 121:4 |
| 106:24 108:15 | **expound** 204:16 | 239:19 242:1,8 | 271:17 274:2 | 122:14 123:19 |
| 111:13 113:21 | 406:22 | 242:14 243:1 | 274:10,18,20 | 126:15,16 |
| 116:22 124:4 | **expounded** | 245:13 246:2 | 275:1,4,6 | 127:9 129:3,4 |
| 135:3 137:1 | 277:17 | 248:12 251:8 | 299:16,21 | 129:17,19 |
| 197:5,22 209:6 | **extended** 175:17 | 251:22 264:4 | 319:19 320:2 | 130:17,19 |
| 210:7,12 211:7 | **extensively** | 272:11 275:11 | 363:14,17 | 132:9 144:15 |
| 216:12 218:1 | 206:5 | 275:19 278:6 | 371:8 377:24 | 145:7,18,22 |
| 218:15 219:22 | **extent** 7:18 | 279:8 288:13 | 379:4,7 399:24 | 146:9,14,22 |
| 220:18 222:5 | 10:14 122:7 | 297:21 298:4 | 401:3 | 147:6 148:24 |
| 224:13 229:14 | 124:22 126:4 | 298:24 304:10 | **factual** 11:20 | 152:21 153:16 |
| 235:5 260:11 | 128:8 129:20 | 305:4 323:17 | 33:9 54:22 | 391:23 411:1,2 |
| 268:17,23 | 131:11 132:18 | 326:7 327:1 | 233:21,24 | **falsely** 122:21 |
| 269:13 282:7 | 138:10,23 | 339:14 343:22 | 234:3,15 | 123:17 131:20 |
| 312:20,24 | 139:11 170:1 | 344:6 358:16 | 235:16 360:5 | 131:24 132:6 |
| 335:16 339:12 | 223:17 244:12 | 360:8,23 | 374:12 | 144:6,11,19 |
| 340:10 359:2 | 244:19 249:24 | 363:24 369:3 | **factually** 185:13 | 260:19 305:7 |
| 391:22,23 | 261:1 268:12 | 385:17 392:20 | 302:1 | **familiar** 137:13 |
| 397:7 398:2 | 273:20 274:5 | 409:11 | **failed** 204:22 | **familiarity** |
| **expert's** 104:15 | 291:18 297:18 | **factor** 98:24 | **failure** 106:16 | 370:2 |
| 205:14 213:4,8 | 298:1,14,23 | **factors** 128:3,4 | 107:9 109:10 | **family** 91:9 |
| 240:24 | 311:1 372:18 | **facts** 79:13 | 117:13 | 368:9 369:5 |
| **expertise** 15:12 | **extenuating** | 96:13,13 110:5 | **fair** 42:2 46:11 | **fancy** 9:5 |
| 137:17 143:21 | 101:6 | 181:20 201:8 | 86:2 94:21 | **far** 13:4 44:15 |
| | | 215:12,13,23 | | |

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 431

82:9 205:18
206:12 278:8
291:15 334:3
360:13 361:7
**fast** 58:10 72:10
**faster** 9:10
347:9
**father** 92:18,19
**father's** 315:3
**fault** 90:11
393:4 400:4
**favor** 234:6
**favorable** 12:7
**FBI** 116:9
**fearful** 388:24
**February** 25:11
**federal** 4:9
11:16 205:15
**feel** 36:22 37:9
76:14 78:13
80:10 90:6
110:6,6,7,11
148:17 220:16
220:17 228:5
231:12 258:21
260:11 266:23
269:20 271:4
290:18 292:13
302:15 303:1
313:5 389:15
398:1
**feeling** 76:13
**feels** 110:5
**feet** 190:11
**felony** 182:18,24
375:11
**felt** 36:19 85:21
85:22 169:4
226:24 227:13
256:14 262:13
262:13 268:9
303:8 401:12
**female** 278:7
279:19,19
334:16 384:3,7

**field** 15:3 19:11
20:18 21:19
59:20 166:9
225:20 323:15
332:11,14
373:10,24
389:22 390:16
391:5
**fields** 116:21
**Fifth** 151:18
155:20
**fight** 168:16
**figure** 256:18
270:12
**file** 36:18 56:23
57:11 58:20
66:14 67:4,4
68:7,8 86:19
87:9 88:4
91:13 222:6
277:2,13
**filed** 11:17 12:4
12:5
**files** 66:21
**final** 193:16
**financial** 7:9
**financially**
413:20
**find** 8:10 32:14
71:13 72:22
73:1 149:11
163:11,13
164:12,15
165:23 168:21
169:19 173:10
190:17 191:9
191:11 192:10
192:12 225:18
226:3 242:20
243:24 244:1
244:11 245:15
245:21,24
265:16 283:5
329:19 340:9
374:6 376:4

377:6 384:20
388:6 404:17
**finding** 193:14
249:14
**fine** 133:1
152:10 252:14
259:13 283:10
294:18
**finger** 150:2
154:20 155:18
**finish** 156:10
211:22 216:23
230:14 291:4
365:14 393:24
394:1
**finished** 185:21
**firm** 2:13 7:6
8:17 9:2 142:7
142:14,24
226:12
**first** 6:2 19:2
20:24 22:15
48:2 52:24
70:11,17
129:14 168:8
173:24 174:24
187:2 190:21
196:5,15
204:13 222:4
225:9 264:7
265:17 270:2
271:1 277:8
285:13 321:14
328:4 352:21
353:1 376:23
384:24 386:18
387:15 392:2
407:7 410:4
**fit** 111:2 157:5
271:17
**fits** 106:9 112:1
112:6 160:23
160:24 161:11
**five** 43:17,23
55:21 75:14

98:24 252:16
268:22
**fix** 6:20
**flawed** 260:18
262:4
**flee** 363:8
**floor** 2:3,8 71:11
71:14 247:14
306:11 323:14
324:9 331:13
**fly** 409:15
**focus** 223:12
240:4 264:11
269:24 271:2
336:24 337:5
338:7
**focused** 64:19
195:24 206:7
271:7 336:17
**focuses** 223:8
**focusing** 66:1
207:11 262:20
**folks** 377:10
**follow** 29:14
69:23 70:1,4
71:1,6,15
171:21 196:2
242:8,14
269:10 270:5
280:1,12
281:19 286:14
288:9 328:3
334:2,5 411:8
**follow-up**
411:23
**followed** 69:21
70:8 330:2,15
333:14
**following** 53:1
178:6 236:12
287:7 314:23
**follows** 6:3
184:19
**food** 113:13
**footnote** 30:11

125:7,9,13,13
130:3 135:4
136:8 238:10
**footnotes** 238:7
238:13
**FOP** 405:19
406:16
**forcefully** 323:7
**Ford** 72:9,11
**forefront** 52:23
**foregoing** 413:5
413:15,24
415:5,8
**forget** 211:12
**forgot** 285:9
**form** 11:23
12:10 13:6,16
15:9,16 18:2
20:21 22:12
23:4 25:2
31:13 36:15
37:1 39:1 42:3
44:6 46:18
47:13 50:9
51:5 53:7
54:14 61:21
62:13 63:11,20
69:13 71:7
72:5 75:10
78:21 79:4,21
81:2 83:7,14
83:22 86:12
91:4,16,23
96:17 98:18
100:6 101:14
102:7 105:13
106:6,22
107:12 108:1
109:5,12
110:24 114:4
115:23 116:14
119:14 120:8
123:24 128:16
128:22 130:23
132:1 141:21

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 432

142:16 143:5
143:13 144:12
145:13 146:11
147:9 149:1
150:5,7,23
151:8 152:5,15
153:6,14
154:18,22
155:5 156:2,19
156:19 157:16
163:23 164:21
165:2 166:2
172:6 173:16
174:12 176:10
177:11 183:1
183:10 185:1
185:11 186:7
186:12 188:14
188:23 189:13
190:5,23
192:13 194:12
194:21 195:10
197:2,15
199:21 201:17
202:19 203:4
204:11 206:3
206:22 207:24
208:7,24 209:9
209:23 210:10
210:24 212:18
213:12 214:15
215:15 216:2
216:18,24
217:18 218:10
218:18 219:2
219:18 221:11
223:23 225:6
226:16 227:10
230:6 231:1
232:5 234:7,22
241:4 242:4,11
242:16 247:23
250:24 251:17
257:5 258:9
259:18 263:19

266:2 268:11
270:24 273:19
274:4,13,23
276:10 278:14
279:14 281:1
281:11 282:3
282:22 283:19
289:3,10
293:17 303:17
304:19 305:8
307:22 308:15
308:21 310:6
313:4 314:4
316:21 319:1
320:15 321:10
323:3,9 327:8
327:13 328:16
332:23 333:8
333:22 334:11
337:8 338:13
339:8 340:20
341:24 343:4
344:12 345:20
346:18 348:11
349:10,21
350:23 353:2
356:12 357:12
357:23 359:8
361:13,19
362:13 363:20
366:3 370:6
371:2 374:2
375:13 376:1
379:17 383:9
386:21 387:18
390:23 397:10
397:23 398:10
399:4,21
400:21 401:23
406:23 407:21
408:10,17
**formation** 298:5
**formed** 156:16
177:20 252:7
**forming** 220:3

260:8
**formulated**
262:3
**forth** 160:18
200:22 261:23
271:18 319:15
413:7
**forward** 79:8
82:23 86:15
88:8 131:1
**found** 39:4,4
97:6,19,20
101:3,7 119:20
122:20,22
129:17 132:5
143:23 144:4
191:15 266:21
272:21 288:5
306:6 369:14
370:19 372:21
373:4
**foundation** 13:7
39:2 62:14
83:8,15 117:10
183:11 184:3
186:8,13
188:24 197:3
197:16 207:6
211:1 212:19
213:12 216:3
216:19,24
241:4 242:11
242:17 281:2
310:7 337:7
338:14 340:21
342:1 343:4
399:22
**foundational**
118:3
**founded** 261:10
274:1 378:23
**four** 7:7 28:15
28:18 29:14
43:17,23 74:3
75:13 98:23

123:14 321:3
**four-** 29:4
**frankly** 270:7
**Fred** 2:12
**free** 346:17
**frequently**
74:14
**freshman**
395:14
**friend** 350:5
**frighteningly**
123:16
**front** 17:11 38:3
49:15 99:6
118:10 125:4
166:21 254:12
307:17 312:4
314:10,24
316:12 337:21
338:23 367:19
368:12 369:18
**fulfills** 186:22
**full** 400:15
**fully** 375:18
394:17
**function** 96:3
335:15
**functional**
245:17 364:4
**further** 172:24
315:4,5 401:14
406:7 413:18
**FUSCO** 2:6

---
**G**
**gain** 21:15
**Garcia** 13:15
151:7,23
155:22 169:6
208:16 288:4
329:7,9 330:8
**Garcia's** 208:21
**gatekeeping**
335:15 339:11
**general** 95:16

96:14 104:24
117:8 207:10
**generally** 20:19
48:18 99:10
175:9 177:7
181:3,8 217:15
221:13,15
288:23
**George** 2:13
5:15
**germane** 116:11
**gestae** 22:18
**getting** 20:11
41:10 61:4,18
89:12 99:14
166:13 184:22
201:21 320:9
323:17 410:7
**girls** 312:2 314:8
315:21
**give** 6:11 19:17
33:8 72:7 73:5
84:5 102:12
111:18 132:22
158:20 159:17
169:5 228:17
238:4,13,14
240:24 266:9
282:13 286:6
289:8 290:4
312:13 327:15
341:2 342:12
342:13,14
404:24 405:1
409:9
**given** 6:23
101:24 102:5
126:16 153:20
185:16 221:3
233:11 235:3
256:12 262:18
262:23 273:6
279:20 346:17
357:16 371:14
400:9

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 433

**gives** 149:10
168:13
**giving** 99:17
107:19 120:3
175:18 275:22
291:23 301:21
302:16 303:10
303:14 339:5
342:20,24
410:8
**glad** 84:17 86:4
161:23 258:13
**glass** 52:3
162:23,24
236:21 238:21
240:2 241:14
255:17 258:5
263:13 318:21
**gleaned** 372:13
**global** 76:15
**go** 9:10 10:22
11:3,23 20:20
23:19,20 27:11
28:11 29:9
31:16 40:4
41:18 47:24
48:4 49:7,16
49:18 50:13,17
50:24 51:15,20
55:19 56:23
57:10,17 58:4
59:6,7 64:2,2
66:22 67:24
71:5 80:8,16
82:17 83:18,23
83:24 84:13,21
84:22,24 85:23
86:3 90:9 97:1
97:22 99:7
108:3 111:3
113:4 120:17
121:11 126:21
132:23 137:12
138:14 139:3
147:11 149:23

150:13 151:10
152:2 154:9
166:15,19
167:24 168:13
168:21 169:7
169:17 172:12
174:2,15
178:16,18
189:6 196:16
200:6 204:4,17
204:21 213:14
217:2 221:4
222:6,6,7,9
224:2 225:19
232:23 242:17
246:12,13
258:10 264:7
266:3 271:9
272:2,22 287:1
289:2 290:9
292:2 293:5,13
299:9 301:21
301:24 304:2
304:24 305:5
306:17 307:15
307:16 310:24
311:23 329:19
332:14 333:6
334:17,22
336:8 338:20
341:17 343:9
351:18 352:19
352:22 353:16
354:18 357:24
360:23,24
362:6 368:22
369:11 380:24
381:3,23 394:1
402:3 404:6
406:20 409:10
**goal** 373:11,24
374:4,6,8
**goes** 30:20 90:2
160:17 192:15
199:23 208:9

209:11 236:16
239:5,17,18
240:14 241:17
259:24 306:9
352:4 364:20
385:6 387:22
410:8
**going** 6:8 8:13
9:13 10:13
11:5 21:1,5,14
22:18,19 23:11
27:7 28:10
32:11,12 39:22
41:20 44:21,22
56:20 57:10
58:5,10 61:11
64:7,20 65:10
68:12 71:12,15
72:22 74:3
76:7,10 82:13
83:23 85:13
91:1,1 98:23
100:13 103:4
107:15 108:7
108:10 109:20
110:12 112:10
112:15 120:18
121:15,21
122:24,24
127:18 133:6
133:10,13,21
134:3 135:24
136:1,17,20
143:15 147:3
151:14,15
162:22 167:15
167:15,23,24
170:13,17,20
170:21 171:6
171:21 174:24
175:23 178:1
179:11 180:7
181:13 187:9
193:5 195:2,4
195:14 200:20

201:13 203:9
203:13 204:2,6
204:24 205:1
206:13 208:3
208:19 210:8
210:13 211:9
211:21 215:3
219:12 220:3
221:1,6,13,16
222:2 224:13
228:21,24
229:14,14,16
229:20 238:12
238:13,14,16
240:9 244:22
246:3 250:9,19
251:14 252:19
252:21 253:1,6
253:15 256:20
257:3 258:11
258:15,17
259:21 260:14
262:24 263:6
265:14,15
266:14,19
268:8 269:3
274:19 287:2
288:12,24
290:19 292:12
293:2 295:7,9
295:18 299:18
301:19 306:20
306:22 309:6
317:6 320:1
330:11 335:24
338:7 341:13
342:17 347:9
351:23 352:3
354:17 355:3
355:14 363:8
367:4,6 379:17
383:4 388:5,21
389:1,3 390:9
393:17 394:3,6
394:10 400:10

401:4 402:3,9
404:6,17
405:10 408:23
408:24 409:3
409:14 411:12
411:22
**gold** 226:2
**good** 40:12
64:15 193:8
206:8 225:12
225:22 280:11
309:14 317:6
398:21
**gosh** 155:2
**Gotcha** 6:16
**gotta** 170:6
**gotten** 112:23
319:17
**grab** 67:22
**grade** 80:20
394:18
**grandma** 348:22
360:21 377:19
408:23
**grandmother**
265:24 307:17
322:19 341:11
346:8 348:16
348:22 349:2
363:9
**graphic** 90:17
**great** 40:1 53:23
61:15 123:19
**Green** 344:5
**grew** 217:23
**Grill** 2:7 3:4 5:8
5:8 6:5 7:24
8:1 11:2 12:2
12:15 13:9,19
15:11,18 17:2
17:7,12 18:8
18:17,21 21:8
23:1,6 25:5
27:14 28:22
31:18 36:21

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 434

37:10,21 39:11
40:3 42:14
44:13 46:20
47:15 50:15
51:7 53:11
54:23 55:11
57:22 59:11
60:1 62:2,16
63:15 64:4
67:1,24 68:3
68:22 69:16
71:17 72:15
75:16 79:1,10
80:1 81:3 83:9
84:8 85:8
86:18 91:12,19
92:3 96:23
100:1,17
101:20 102:18
106:1,13 107:5
107:17 108:2
109:6,8,16
111:9 112:22
113:19 114:11
115:17 116:1
117:12,20
118:7 119:3,9
119:12 120:2
120:13,23
122:5,10,11
124:1,8 125:2
125:8,15,22
126:6,13,20
127:1,6,14
128:1,11,18
129:1,7,13
130:1 131:5,18
132:12,20,23
133:3,8,18,23
134:6,10,18,21
134:24 136:4
136:22 137:11
138:6,17 139:6
139:18 140:4
140:23 141:9

141:18 142:3
142:10,22
143:9,19
144:17 145:20
146:5 147:1,16
147:22 148:3
148:10 149:4
150:8,20 151:1
151:13 152:7
152:16 153:8
153:19 154:19
154:24 155:3,8
155:15 156:3
157:2 158:10
158:18 159:2
159:21 160:6
161:5,7,10,19
163:8 164:2,22
165:3 166:12
167:3,9,19,21
167:22 170:6
170:13,20
171:1,8,11,17
171:20,23
172:8 173:18
174:18 176:11
177:12,19
179:8,15 180:1
180:12 181:6
181:12,18
183:4,12 184:5
184:10 185:3
185:15 186:9
187:14 188:4
188:15 189:2
189:15 190:18
191:16 192:18
194:13,18,24
195:11 197:6
197:19 198:13
200:7 202:3,21
203:8,19,22
204:1 205:12
206:16 207:1
207:14 208:2,8

209:3,10,16,18
210:2,15,19
211:2,21,23
213:3 214:1,4
214:11,18,21
215:1,8,21
216:13,20
217:12 218:12
218:19 219:10
219:19 221:12
224:1 226:5
227:1 229:22
230:7,15
231:21 232:17
234:14 235:12
235:21 237:18
238:5,12
239:12 241:10
242:6,12
243:10 244:15
245:1,12
246:11,16
247:1,9 249:3
249:10,19
250:3,14 251:6
251:19 252:15
252:19 253:10
253:23 254:6
256:16 257:7
257:17 259:1
260:13,23
261:7,14
263:23 267:7
268:14 269:23
271:15 272:1
273:12,14,23
274:7,16 275:2
276:13 278:15
279:7,13
280:13 281:3
281:12 282:5
283:13,22
284:9,15,22
285:1,3,20
287:7,13,18

289:11,13
291:1,7,22
293:19 295:1
295:13 296:5
297:22 298:7
298:16 299:2,9
299:23 300:6
300:18 303:20
304:1 305:3,12
305:21 307:23
308:5,13 309:1
310:1,10,20
311:5,22
312:14 313:2
313:16 314:5
314:19 316:2
317:17 318:5
319:4 320:17
321:20 323:4
323:11 325:1
325:19 326:17
326:22 327:10
327:17 328:20
331:18 333:1,9
333:23 335:5
335:10,17
336:7,14 338:2
338:3,16
339:13,18
340:14,23
342:5 343:6
344:14 346:10
348:12 349:15
349:23 351:5
354:15 355:3,8
355:18 356:1,4
356:17 357:14
358:4,12
359:10,19
361:14,22
362:15 363:22
365:19 366:4
370:10 371:6
372:22 373:22
374:7 375:14

376:20 379:6
380:18,20
381:17 382:13
382:20 383:14
386:2,6 387:4
387:12,20
389:5 390:17
390:24 394:13
395:9 396:1,6
396:17 397:3
397:17 398:5
398:13,19
399:7,13 400:2
401:13 403:2
404:3,5,11,18
404:24 405:3,8
408:1,11
409:17 410:18
411:17,24
412:2
**Grossman** 85:11
183:2 186:20
336:1 410:9
**ground** 366:19
368:16
**group** 313:19
**guardian** 236:23
265:7 290:4
350:5,19 392:3
**guess** 9:5,19
23:7 30:14,18
40:13,18 62:4
63:1 65:15
67:6 69:22
70:5 71:3 73:4
95:20,21 96:10
101:24 123:12
136:1 175:1
201:20 215:2
225:7 240:4
252:1 254:2
260:24 279:3
284:18 285:15
287:8 307:6
309:17 328:1

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 435

333:20 335:2
354:16 358:22
359:16,21
361:7 362:11
367:1 368:12
390:3 405:6
410:22
**guessing** 54:12
377:3,12
**Guide** 130:7
136:6
**guilty** 62:21
370:19
**gun** 22:16,17
97:19,20 99:6
99:9 292:15
**Gurgid** 328:13
329:6 333:6
334:6
**Gus** 150:6 151:3
153:20 158:5
158:12 159:4
160:15,21
193:6 195:19
195:20 196:8
200:9 341:5
344:6
**Gus's** 157:4
**guy** 71:10 72:21
76:13 77:15
196:19 220:19
337:13,14
346:24 376:9
376:12 383:4
**guys** 87:5 97:23
277:14,22
282:11 336:4
360:20 411:10
**gyamin@jsot...**
2:16

---

**H**

**H** 3:9
**H-e-a-t-h** 4:24
**hairs** 309:6,17

309:20
**hall** 306:18
**hallway** 65:9
306:11
**hand** 9:10
172:24 297:23
306:8 401:9
**handbook**
405:20
**handcuffed**
30:16,17 31:23
32:11 35:19,22
35:23 36:2,8,9
36:11,12 37:5
38:13,16,19,21
39:5,9,15
275:14 287:22
313:21 323:24
379:13
**handcuffs** 35:4
35:9,10,11
**handle** 29:23,24
**handled** 92:13
92:13 95:2
262:14
**handwriting**
59:3
**handwritten**
58:14,15,22
68:6,10,17,24
201:10 282:17
307:19 309:19
310:4 311:7
366:16 401:15
**hang** 8:3 83:10
109:6 172:21
210:20 214:5
252:15 277:5
286:7 339:19
339:19 351:20
**happen** 6:21
21:3 23:2
27:21 48:22
78:16 82:15
97:1,2,12

99:20 100:16
147:24 199:4,5
211:14 239:8
255:12,13
257:23
**happened** 35:13
51:18 56:20
57:4 59:16
77:3,4,6 93:3
96:21 97:17
104:21 107:2
110:2,14
199:24 200:3
203:19,21
222:20,24
223:2,3 225:18
230:5 236:2,4
239:7,10 240:5
240:11,12,13
240:20 244:9
247:17 248:9
250:18 254:15
264:21 275:16
277:24 279:24
280:3 302:2,3
303:13 317:21
325:23 328:15
345:6,7 348:21
367:22 375:17
393:19 401:5
**happening**
54:13 58:9
77:7 147:5
236:15
**happens** 6:19
72:4 119:22
**happy** 405:1
**hard** 16:23 17:4
163:13 242:19
**harder** 101:4
**Hargrove** 331:9
**Hargrove's**
328:9 329:2
**harm** 266:24
**Harris** 165:6

247:21 248:3
248:15 249:5
249:20 250:10
250:15 251:9
254:9,23 255:6
255:10,20
256:2 257:18
315:1,2,2
316:17 317:7,7
338:22 342:11
343:22 344:16
344:19,21
345:18,22
**Harris's** 247:20
248:1 341:19
341:23 342:7
342:20,24
343:11,17
**Harrises** 317:2
324:7
**he'll** 361:3
409:10
**head** 71:12
292:16 396:21
**heading** 394:15
**headquarters**
166:5 290:24
293:1 294:17
295:11 296:17
304:13,23
390:15
**hear** 6:15,17
78:19 90:19
120:24
**heard** 6:7 91:5,8
91:11 97:23
138:7 146:17
171:19 263:14
353:11,15
354:3
**hearing** 60:21
61:4 62:9,20
259:2 410:17
**hearings** 162:12
**Heath** 4:24

**heavily** 259:22
**held** 40:15 41:24
**help** 31:20 83:6
98:10 104:20
112:7,19
165:22 173:19
220:17 243:21
268:5 313:18
313:23 387:2
398:4
**helped** 101:7
281:7
**helpful** 40:7
82:23 91:7
111:14 198:2
210:4,8 220:7
220:18 245:17
311:24 312:17
313:7,10
400:14
**helping** 231:15
**helps** 90:7
111:16,19
218:3
**hey** 65:10 77:15
77:17 83:23
84:1 96:19
170:16 196:18
242:9 243:20
249:1 265:4
277:2,18
282:11 296:2
335:12 336:4
377:17 408:22
**hiding** 242:21
**high** 57:6 95:15
123:16 395:14
**higher** 102:11
104:23 105:15
111:23 112:13
119:21
**highest** 53:19,20
**highlighted**
339:15
**highly** 166:8,10

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 436

**hindsight**
  176:22
**hired** 7:5 10:21
  12:17 13:2
  107:1 211:10
  217:13 219:24
  225:2 226:12
  229:18
**hiring** 105:22
**history** 53:19
  87:6 220:10
  292:11 369:23
**hit** 89:15 255:21
  255:22 367:9
**hold** 14:22 15:2
  15:6,13 360:20
  391:22 407:5
**holding** 81:10
**home** 59:6 83:18
  83:23 84:14,21
  126:22 204:4
  236:23 255:11
  272:6,8,9,20
  273:7,16
  288:18,22
  289:17,22
  292:22 295:19
  306:16,20,22
  307:15 310:24
  314:24 322:19
  323:7 360:23
  363:7 366:17
  367:4,4,6,9,10
  367:10 368:14
  368:22 377:19
  380:24 381:3
  381:23 387:24
  409:10
**homicide** 13:15
  14:11,15 17:24
  18:4,6,23
  19:13,17 20:13
  20:24 22:7,7
  23:10 24:2,19
  24:24 33:12

42:1,12,13
44:3 45:10,12
45:24 46:16
47:3,7,8,11,12
47:17,19 48:1
48:2 50:1
51:10 52:7,20
53:6,17,21
54:7,17 55:2
55:14 56:2,23
57:11,15 58:11
58:18,20 62:18
65:4 66:14
67:4 68:7,8,19
69:3,17 70:12
71:19,22 72:17
74:14 76:22
79:14,20 82:8
83:4 86:9
87:18 88:23
89:10 90:14
92:11,22 95:1
95:8,8,22 96:6
96:7,9,14,15
98:8 100:21,23
107:4 144:9
145:11,23
146:13 148:15
152:20 155:22
181:19,21,23
182:3,9,12
183:15,22
184:23 186:2
186:11,15
188:17 189:22
192:3,8,12
193:21 196:23
197:1,10,12
208:6 210:21
213:7 222:8
226:1 227:4
228:8 241:22
276:18 277:2
277:12 280:8
289:24 290:7

345:17 348:10
350:16 357:18
370:13 373:14
374:9,14,17
383:8,18
392:18 409:21
**homicides** 42:6
42:16 48:1,5
53:20,24 55:24
95:16 96:2
282:8
**Homie** 196:12
**Homies** 190:9
**honest** 79:8
220:15 368:10
**honestly** 129:23
159:19 178:2
180:20 243:13
324:1 325:24
358:9
**hope** 178:17
216:8
**hopefully** 44:21
**hoping** 72:19
**horses** 46:10
**hour** 29:15
**hourly** 29:15
**hours** 26:2,20
27:16,19,21,22
28:8,15,16,18
29:9,18 33:3
36:19 37:6,8,9
37:19 38:7
74:2,3 76:13
98:24 113:12
250:18 314:24
320:23 321:3,4
321:12,13,21
322:7 323:7
362:9 363:6
364:8 365:16
386:22 402:8
409:6 412:7
**house** 99:7,8
168:19 254:13

254:21 255:18
255:20 265:19
265:22 266:1,3
266:16 273:16
276:6 278:3,13
278:23 288:3
288:12 293:3
307:15 313:19
313:20 317:20
366:24 367:20
368:2,20,23
369:1,12
378:20 379:24
387:24 389:16
393:2,13
394:11
**housed** 37:4
46:11
**houses** 30:16
36:8 247:13
367:18 368:6,7
369:6,18
**human** 15:7,12
81:4 113:21
**hundred** 184:21
**hundreds** 66:15
74:16 75:4,8
95:8,11
**hurdles** 111:11
**hurried** 335:7
**hurry** 194:4,9
322:21 335:3,4
360:19 378:4
402:10 409:12
**hurt** 91:7
**hypotheses**
375:19,21
**hypothetically**
97:7

─────────
        I
─────────
**I's** 145:6
**I-ROC** 193:4
**IAC** 395:8
**IACP** 115:13

118:3 134:1
136:8 143:12
143:16 174:19
177:20 178:4
178:11 179:1
179:17 180:3,4
180:19 395:8
**idea** 55:17 56:15
109:24 110:19
114:12 123:6
140:24 168:23
207:15 229:24
230:4,11 270:6
342:6 351:11
360:15
**ideally** 78:17
**identification**
3:10 151:5
**identified**
233:15 330:6
392:17
**identifies** 137:19
343:21
**identify** 4:20
248:13 343:13
**identifying**
190:20
**ignore** 400:8
**ignored** 343:11
344:9
**Illinois** 1:1,15
2:4,9,15 4:7,17
5:9,13 137:22
138:21 413:23
414:6 415:1
**imagine** 218:14
**immediately**
19:4
**impact** 64:14
106:16 109:4,9
113:15 273:17
274:21
**impacted**
106:11
**impactful** 112:4

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 437

impacts 81:23
83:19
impetus 82:22
278:12 337:23
346:24
impinge 298:9
implicating
410:12
implications
351:4
implies 360:10
import 54:4
57:15
important 36:20
36:22 64:21
99:22 111:22
112:2 193:24
211:16 215:11
215:19,22
216:17 241:16
241:18 245:19
245:21 248:10
259:16 268:3
273:24 274:3,9
274:14 326:2
326:12 327:11
327:19 343:20
344:17 345:7,8
349:17 357:15
358:21 360:8
366:9 369:4
importantly
163:5
impossible
264:2 286:13
impression 26:9
improper 159:1
in-house 402:8
in-service 33:15
in-the-field
20:12
inaccurate
309:3 310:23
311:13 318:15
inappropriate

269:21
inasmuch 12:7
212:12
incarcerated
113:12 402:7,7
inception
177:21
incidence
110:22 111:24
112:14
incidences 263:8
incident 60:9
62:1 108:13
173:10 216:7
232:20 255:12
255:12 262:14
263:9 284:23
406:5
incidents 104:10
105:7 108:24
231:7 362:22
include 36:6,10
36:20,23 98:9
105:19 150:1
192:7 199:10
209:6 221:8,9
240:18 246:1
251:7 257:3
259:5 267:16
267:17 268:6,7
270:11,12,15
275:18 298:23
299:15 301:1,7
301:14,16
310:14 313:1
319:12 324:16
326:7 327:19
327:21,23
334:7 341:2
369:4 379:8,16
included 62:23
68:16 89:5
153:17 154:11
219:13 250:12
250:21,21

251:8 271:14
298:21 315:1
326:9,9 327:22
360:9 406:12
includes 111:13
115:21 118:23
366:12
including
104:14 106:15
107:7 108:22
109:2 118:9,15
118:18,21
325:9 365:21
398:6 407:18
income 7:15
inconsistent
258:3
incorporating
219:8
incorrect 174:10
187:21
increase 53:23
53:24
increased
204:19 391:19
increasingly
394:21
indentation
129:14
independent
157:24
indicate 237:13
indicates 110:21
indicating 353:1
indication
237:19
indicators 97:22
individual 5:10
5:14
individuals
66:16 122:23
129:18 141:20
168:16,18
Inexplicably
343:10

infantry 78:6,7
inference
207:21 304:12
inflammatory
171:9
information
7:10,13,14
19:7,16,18,20
20:12,23 21:1
21:15,21 22:20
30:12 32:14
58:10 66:21
70:23 71:10
72:1,8 76:24
82:15,24 84:6
85:11 286:12
94:14 99:4,18
101:6 102:22
102:24 103:10
104:9,15 105:4
106:5,15
107:19 108:12
108:22,23
109:1,2 112:3
112:9 113:4
115:10 117:5,6
117:9 118:5
119:1,19 120:3
120:12 121:24
122:12 130:15
131:3 135:20
136:20 138:5
138:11 140:22
141:23 146:18
149:22 150:1
150:11 151:24
152:11 158:3
159:18 160:21
161:21 164:3
166:18 168:5
169:5 172:13
174:4,16 187:4
190:21 191:13
196:15,16
201:9 206:6

215:18 217:10
217:19,20
218:8 220:5
221:21,23
222:17 224:3
233:8 248:10
250:8,11 269:2
269:3 271:22
276:19,23
278:21 279:2,9
279:10,21,22
280:14,16,22
281:5,18,22
282:12,24
283:6,7,8,10
283:11 286:6
286:19,21
288:11 289:2
291:3 299:24
304:9 311:9
312:3 313:7,13
314:9 316:11
317:12 319:13
329:5,17 334:4
334:14,18,24
336:21 337:13
337:14,16,20
338:24 344:17
345:8 346:22
369:9,10 371:7
372:12 376:7
378:14 380:8
381:23 384:6
384:14,15,18
386:3 392:12
393:7,19 397:4
397:18 398:3
399:24 401:4
402:19
informed 304:5
306:2 343:22
406:5
initial 21:15
156:14 228:3
279:5

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 438

initially 48:1
220:4 243:5
injunction 41:16
inner 224:7
innocence
128:21
insert 291:2
inside 13:18
36:11,13 38:1
39:10 162:23
272:7 288:1
289:21 329:9
330:10,12
396:21
instance 5:2
instances 50:11
50:22,23 100:9
100:18 101:10
147:4 217:24
Instanter 4:3
instruct 10:18
133:21 134:4
136:20 138:3
179:11 246:24
250:20 251:15
261:6
instructed
272:22
instructing
158:23 179:20
223:20 247:5
instruction 26:4
33:13
integral 228:10
243:8
intelligence
280:11
intelligent
394:16
intend 13:12,20
13:24 103:17
109:19 194:19
194:22 339:2
intended 328:7
337:17 343:17

intending
361:24
intent 60:8
302:23
intention 83:3
interacting
39:18
interactions
199:15
interest 32:16
50:4 55:15
56:7 73:10
85:23
interested
413:20
interject 48:18
50:12 51:20
57:3
interjecting
51:3 60:23
Internal 87:5
International
114:24 115:8
116:17 117:2
130:4 135:9
140:21 143:7
397:13
interpret 83:5
interprets 78:3
interrogate
24:23 26:12
92:15 370:21
interrogated
13:22 27:8
35:14 123:20
351:8 354:24
392:5 409:21
interrogating
43:6 86:9
178:5 222:21
370:1
interrogation
20:4,17 21:4
21:10 22:1
28:1 74:20

75:18,20 76:1
76:6,8 77:10
79:20 89:10
90:10,15,23
91:15 93:14
94:7 98:23
106:19 130:8
136:7 146:7
175:5 179:3
223:5 350:20
362:18 364:19
364:21 365:6
365:20 370:15
370:22
interrogations
14:14,18 21:7
25:14,21 26:5
35:5,19 45:20
46:22 50:3
52:13 53:6,13
55:2 73:4,11
73:17 74:17
75:5,8 87:19
92:7,9,24
93:11 94:1,21
95:2,8,11 98:8
98:15 123:16
145:12 176:2
179:4 180:6
370:3
interrupted
90:11
interview 20:3
20:11,16,22
21:2,11,17,21
24:18 26:11
28:2 29:20
38:13,23 39:12
49:2 50:13,14
52:2 62:18
73:21,24 74:20
74:23 75:1,19
75:20 76:1,7,8
76:11 92:15
98:22 130:7

136:7 172:20
175:5 196:17
229:5 265:9
307:2 323:16
324:10 326:5
327:4
interviewed
13:22 25:15
27:7 35:14
48:9 59:4
75:13 306:16
306:19,22
318:18 338:22
interviewing
19:15 53:18
56:21 57:19
59:10 94:17
320:13,20
interviews 24:9
25:9,22 26:5
35:5,19 42:19
45:19 48:10
50:2 52:7 53:5
53:13,18 54:8
54:21 55:2
56:11 73:11
74:1,16,17
75:4,8 145:12
166:10 180:6
181:24
introduce 5:5,20
invade 90:5
invaded 253:17
investigate
42:15 114:20
197:11 228:8
242:1 372:4
investigated
12:14 13:14
105:10 214:8
228:7
investigating
45:6 68:19
196:23
investigation

14:19 18:23
21:13,14 22:8
22:22 23:11,15
27:6 28:1 45:9
45:11,12 48:19
49:11 51:11
55:14 58:11
60:24 63:9
64:7 65:4
67:16 69:3,20
70:15,24 71:22
76:17 79:14
81:18,19 82:8
86:9 89:24
90:2,8 95:1
144:21 145:23
159:12,17
160:10 163:7
176:16 182:12
186:5,16 188:9
188:18 189:12
189:17,18
192:24 193:10
193:12 200:22
201:15 202:8
202:16 204:23
206:9 208:21
210:21 222:8
227:5 228:11
232:15 243:9
260:18 262:5
267:21 271:8
337:19 343:21
344:1 345:17
347:7 350:16
366:23 373:11
374:1,5 375:5
375:23 383:8
383:19 397:21
398:8 405:17
investigations
14:12,15 17:24
18:7 24:2,24
42:2,12 43:7
44:4,16,20

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 439

45:24 46:16
47:11 49:21
52:7 53:6 55:3
63:2 64:17
69:17 71:19
76:22 88:23
96:10 115:5
213:7 221:20
362:5,23
**investigative**
30:13 31:11
36:18 67:4
69:8 81:24
**investigator**
18:3 42:13
71:5 72:17
79:12,19 204:8
280:8
**investigators**
19:7 71:23
95:3 153:2
233:9 362:18
373:15 375:16
**investigatory**
22:10
**involuntary**
204:20 391:20
**involve** 57:7
**involved** 21:6
42:1 43:4,6
48:10,11 49:21
53:17 64:13,17
66:16 92:21
94:11 96:9
118:23 129:18
145:15,18
151:6,23
154:21 156:5
156:13 176:16
183:3 186:20
193:17 208:5
221:19 227:18
262:22 288:4
329:7 344:24
362:5,22

371:19
**involvement**
13:14 22:7
23:15 24:2
48:17 157:10
157:15 160:23
341:10 392:18
**involves** 233:10
**involving** 235:1
363:5 372:2,3
372:8
**IROC-Z** 158:1
337:13 376:10
**issue** 156:21
163:14 175:4
235:24 239:6
253:8 255:9
256:12 257:2
311:20 363:1
**issues** 198:8
199:7 410:21
**items** 233:4

──────── **J** ────────

**J** 2:7,13
**Jackson** 2:14
**jail** 30:17 36:9
91:2 228:15
267:2
**Jakes** 1:3 4:14
5:18 7:6 11:14
12:7 35:4,7,8
35:18 36:2,4
36:11,24 37:12
37:17,19 38:1
38:12,21 39:15
83:17 84:9,12
85:4,16,20,22
103:6,9 106:9
112:1,6,17,18
113:18 118:16
118:24 119:5
119:23,24
142:15 150:21
151:5,22

154:20 155:18
160:12 162:22
164:18 165:10
165:13,19,22
166:4,7 168:10
168:10 169:2,3
169:23 172:3
172:17,21
173:3,4,9,11
173:15,23
193:7,9 195:3
195:9,23
196:10,17
200:1 203:2,11
203:15 204:4
207:20 208:15
222:19 225:15
225:17 226:21
227:22 232:1
238:20 239:6
240:1,4,11
242:22,24
243:19 244:9
247:16 254:18
258:3 260:18
260:19 261:21
262:2,7 264:21
266:11,14
272:5,13 273:1
273:7 278:17
278:22 279:2,9
279:23 285:1
288:10 292:7
292:21,22
295:18 296:21
297:3,5,7
300:5 301:3
303:11 304:5
304:12 305:6
306:3,5,9,15
306:20 307:1
309:4 310:23
312:1,16
314:13,21,22
315:7,9 316:4

316:9,18 317:6
317:19,23,24
317:24 318:9
318:16,20,23
319:7,13 320:7
320:14 321:7
322:22 323:13
323:14,19
324:5 325:4,10
325:15,22
326:3,4,5,11
327:2 331:9,12
332:8,19,20
333:4 335:19
336:18,21
337:1,11,21
341:6,7,20
342:8,21 344:2
344:23 345:10
345:23,24
346:7,13,19
347:9 348:10
351:6,24 354:8
354:20 356:19
357:16 358:14
358:22 359:6
359:22 360:1,1
360:3 362:2,3
366:14,16,23
367:17,24
369:5,9,17,20
370:2 371:21
378:1,8,19
379:11 380:3
380:10,22
381:2,23
385:12,21
386:11,18
387:6,23 388:9
391:10 392:9
392:10,11
393:5,11,15,23
395:2,13,19
396:20 397:6
398:22 400:6

400:15 401:20
402:20 403:4
404:6,10,19
405:17 406:1
406:14,16
407:10 408:5
408:21 410:11
410:20,23,24
**Jakes's** 10:6
11:9 12:18
38:8 102:21,24
103:18,24
104:4,18
107:22 109:21
110:1,13,19
113:2 114:2
134:2 142:7,24
150:5 155:24
157:10,15
160:22 162:8
162:11,14,17
162:21 163:19
196:6 199:11
199:15 204:14
206:7 223:8,12
227:24 239:1
239:14 241:12
245:4 247:4
250:16 257:4
257:15 261:23
264:8 266:6
271:5 303:4
314:21 315:10
324:19 325:3
325:11 338:24
347:12 348:2
348:16 351:19
351:21 354:11
356:8 366:12
368:11 369:22
371:9 378:6,12
378:17,24
392:18 393:1
399:15 401:15
408:3,4,12

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 440

**James** 139:19
**January** 175:12
**Javier** 72:22,22
**Jay** 328:6
**jeopardizing**
 363:3
**Jessie** 236:24
 292:22
**job** 56:11 57:20
 61:13 65:15
 112:8 212:1
 224:9 225:24
 226:3 229:11
 229:21 231:14
 231:18 256:8,9
 377:11
**jobs** 115:6 226:2
**Joe** 4:2
**Johnson** 2:7
 5:12,12 63:23
 72:22,23 73:1
**joined** 16:6 25:7
**Jones** 35:9 229:2
 229:2,6 236:24
 272:6,10,16
 275:22 287:23
 297:8 301:20
 302:11 303:11
 379:18 387:23
 392:4,15 394:2
 394:5
**Jones's** 272:9
 276:6 394:8
**Joseph** 2:19
**Joshua** 139:7,10
**JR** 2:13
**jumped** 33:22
**June** 25:11
 414:1
**juror** 210:6
**jurors** 211:18
**jury** 103:4
 104:20 105:20
 105:21 106:3
 107:1,8,8,15

108:16 109:3
110:4,5 111:14
111:16,22
112:3,7,8,19
119:2 120:1,4
177:13,18
184:1,14
188:12 194:10
198:2,9 199:8
199:23 202:14
203:3 205:2,24
207:21,22
210:5,23 211:6
212:12,23
213:4,8,17,22
235:24 240:23
249:18 339:20
397:5,12 398:4
399:24 400:14
401:3
**jury's** 14:7
 103:20 108:11
 111:7 199:1
 235:9 373:17
**justice** 16:11
 115:1,8 116:9
 116:18
**juvenile** 14:18
 24:9,18,23
 25:9,13,21
 26:12,12 27:1
 27:16,18,24
 28:8,10,23
 29:16,21 30:16
 30:23 32:18
 33:1,3 36:7
 37:4,7 42:19
 43:3,6 46:21
 81:7 83:19
 92:6,9,13,14
 92:21 93:11,24
 94:4,12,13,20
 95:1 102:4
 105:16 110:23
 111:2 113:3,9

113:16 118:17
118:24 119:5
119:23 120:5
121:4 122:14
123:20 130:7
136:7 144:15
144:19 145:2,3
145:5 175:5,16
175:18 176:2
176:16 179:4
180:6 265:6
292:2 304:22
306:13 322:13
365:17 366:1
370:14,20
391:20,23
402:6,22 403:5
403:16,18
406:15,23
407:11 410:22
**juvenile's** 80:19
 81:24 94:6
 265:7
**juveniles** 26:4
 26:14 29:23
 31:6,11 33:16
 46:1 92:16
 102:5,10,13
 104:11,24
 111:17,21,24
 112:14 113:17
 117:16 119:22
 121:7 122:1,21
 123:1 127:9
 131:20,23
 132:5 144:5,8
 152:19 153:1
 178:6 204:20
 349:13 365:9
 397:16 400:11
 401:21 407:19
 409:19

---
**K**
---
**keep** 33:3,5

86:23 87:4
170:20 171:6
171:17,20
195:24 239:20
240:3 245:16
246:2 322:12
364:7 365:17
**keeping** 175:15
**Kema** 4:3
**Ken** 2:11
**Kenneth** 1:6
 2:11 4:14
**kept** 30:22 37:5
 39:13
**kicked** 264:22
 265:10
**kid** 228:14,22
 229:8 334:22
 348:19 362:8
 364:7 365:23
 380:7 383:3
 409:5 411:6
**kids** 94:17
 106:10 175:19
 245:8
**Kill** 39:18 84:20
 85:12,17,21
 164:17 166:6
 166:14 168:8
 168:13 169:22
 172:3 173:5,22
 222:20,23
 223:1,7 225:19
 227:16 229:4
 234:12 264:22
 264:22,24,24
 302:12 320:8
 323:13 325:5
 326:4 329:19
 330:14 332:22
 334:13 335:24
 336:16 337:3
 337:10 341:18
 341:19,23
 342:3,20,23

343:11,16
344:7 345:12
346:13 348:2
350:9 353:17
372:3,9 373:1
373:3 392:19
399:19 410:5
410:13,20
411:4
**Kill's** 167:13
 168:1 192:24
**killed** 22:17 44:8
 44:15,24 64:16
 92:17,19,19
 94:13 208:16
 208:23
**killing** 151:6,23
 208:16 329:7
 385:14
**kind** 8:6,22 9:17
 15:23,24 33:22
 40:14 48:14
 52:22 53:2,22
 60:23 187:17
 197:21 201:20
 218:13 234:24
 238:17 275:8
 275:20 278:9
 286:12 342:12
 391:3
**knew** 26:13,14
 96:15 98:2,2
 164:19 165:1,5
 175:13,15,17
 175:19,21
 176:19 228:4
 280:22 286:15
 293:14 329:21
 333:16 337:12
 362:23 370:15
 385:13,22
 392:11 393:7
 393:15,18
**knocked** 163:15
**know** 6:19 8:23

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 441

| | | | | |
|---|---|---|---|---|
| 10:19 11:4 | 163:13,17 | 315:22 316:15 | **language** 90:17 | 334:4,5 345:4 |
| 29:5,12,24 | 164:16 165:6 | 318:9,11,14 | 151:11 245:11 | 374:16 |
| 32:1,3,11,14 | 165:13,19 | 322:2,4,5,13 | 268:20 406:17 | **leads** 69:23 70:7 |
| 33:13,23 34:2 | 166:3 169:17 | 325:14 328:12 | **large** 34:3,8 | 70:9 276:20 |
| 34:10,15,20,22 | 169:18 171:3 | 330:3,20,22 | 175:12 221:20 | 328:3 329:16 |
| 34:24 35:23 | 173:1 174:1,15 | 331:20 332:7 | 224:7 234:17 | 330:15 334:2 |
| 36:23 39:22 | 175:16,24 | 332:18 334:20 | 295:17,21 | 376:7 377:13 |
| 52:21,22 53:1 | 177:21 178:9 | 335:23 336:2 | 377:9 | **learn** 208:22 |
| 55:6,9,13 57:4 | 180:21,23 | 338:1 342:8,23 | **larger** 364:6 | **learned** 25:23 |
| 57:17 58:5 | 183:2 186:19 | 343:19 346:4,8 | **largest** 34:5,6 | 70:11 105:2 |
| 60:22 64:15,18 | 191:3,5 193:15 | 347:5,19 350:4 | **LaSalle** 4:7 | 248:22 271:8 |
| 64:19,19 70:9 | 195:4,12,13,16 | 359:16,17 | **lasted** 47:5 | 332:9,13 |
| 70:13 71:12 | 195:18 196:11 | 360:13 363:2,7 | **Laura** 138:18,22 | 405:16 |
| 72:11 73:12 | 197:13 207:4 | 364:23 367:23 | **law** 2:13 7:6 | **leave** 244:5 |
| 74:4,18 76:5 | 208:10 210:23 | 368:4 373:3,7 | 8:10,17 9:1 | 304:5,14,17 |
| 77:3,5,18 78:7 | 211:11 215:17 | 375:16 377:10 | 16:10 29:19 | 306:3 309:5 |
| 78:10 80:23 | 216:10 217:6 | 377:15 385:15 | 32:24 88:13 | 321:18 331:22 |
| 82:13,17,18,21 | 217:15,24 | 385:18 386:8 | 115:2,3,19 | 332:20 380:24 |
| 82:21 84:19 | 218:13 221:4 | 390:22 398:14 | 116:8 117:7 | **leaving** 33:7 |
| 85:12 88:19 | 221:14,16 | 400:11 402:3 | 118:4 135:17 | **led** 69:7 213:20 |
| 91:2,20 93:5,8 | 222:12 223:11 | 404:14 406:8 | 135:17,21 | 214:2,7 |
| 95:6,19,20 | 224:8,9 225:17 | 408:24 409:21 | 137:21 138:21 | **left** 26:9 27:8 |
| 96:21 97:4,4,5 | 228:21,23,23 | 411:18 | 139:9 142:7,14 | 59:6 70:3 77:5 |
| 98:13 100:8 | 229:4 230:10 | **knowing** 241:12 | 142:24 146:12 | 95:22 96:5 |
| 101:4 102:15 | 235:13,13 | 244:9 349:4 | 153:1 184:2 | 101:16 186:2 |
| 105:22 110:10 | 238:6 240:9 | 392:4 | 189:10 197:5 | 285:10 318:8 |
| 111:4,6,20,22 | 241:8 242:7,9 | **knowingly** | 206:15 211:8 | 329:19 330:16 |
| 112:3 120:12 | 243:19,23 | 101:24 | 226:12 229:17 | 330:24 331:7 |
| 121:6,10,13 | 244:3,7,11 | **knowledge** 13:7 | 229:18 292:10 | 331:10,12,19 |
| 123:9,13,13 | 248:2,4,6 | 76:20 79:15 | 295:6 312:24 | 332:1,3 333:2 |
| 124:12,16,19 | 252:8 253:7 | 88:12 168:17 | 364:4 377:9 | 333:15,16 |
| 125:24 126:7,8 | 255:21 257:10 | 175:8 233:16 | 380:1 | 334:1,12,13 |
| 126:14 127:8 | 257:18 259:6 | 276:17 279:23 | **laws** 413:23 | 393:16 |
| 127:20,23 | 259:13 264:6 | 296:23 362:21 | **lawsuit** 11:16 | **legal** 41:2,6 |
| 128:17,24 | 264:16 265:12 | **known** 94:14 | 88:21,22 89:3 | 123:21 124:5,9 |
| 129:24 131:7 | 265:14 267:5 | 96:14 151:4 | 89:7 | 183:22 241:6 |
| 134:22 135:11 | 267:12 275:14 | 154:15 163:18 | **lawsuits** 89:5 | 312:13,22 |
| 137:22 138:18 | 276:12,20 | 244:10 317:4 | 141:12 | 335:14 339:10 |
| 138:22 139:10 | 277:19,20,20 | 375:3 386:24 | **lawyer** 145:2 | 339:16 340:3,6 |
| 139:21 142:11 | 279:22 280:2,8 | **knows** 281:4 | 322:20 361:1 | 409:24 |
| 143:2 144:23 | 280:20 282:24 | 347:1 | **lead** 47:23 70:16 | **legally** 28:24 |
| 145:21 147:12 | 283:9 286:4,9 | | 70:20,22 71:1 | **length** 25:14 |
| 152:8,9,10 | 293:15 295:15 | **L** | 71:16 98:1,2 | 321:8 364:19 |
| 158:19 159:18 | 298:19 306:20 | **lack** 46:7 71:3 | 281:20 330:23 | 365:8 412:7 |
| 160:11 162:2 | 313:10,13 | **landscape** 175:6 | 333:13,15 | **lengthy** 113:11 |

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 442

leniency 82:7
86:7 126:17
lens 222:13
let's 11:3 15:19
29:1 40:4
49:10 67:24
71:20 75:3
97:1 114:3
120:13,17
121:14 125:23
132:23 137:12
161:24 172:14
187:16 194:6
214:21,23
252:15 272:2
277:6 284:12
287:1 293:5
298:16 299:9
304:2 311:23
317:18 336:8
349:1 352:19
352:22 360:20
360:21,21,22
360:22,23
361:1 363:4,8
377:18,18,19
377:20 379:15
403:8,22
405:12 411:5,6
411:8
letters 81:14
117:4
letting 82:21
level 80:20
184:21 394:19
liable 373:4
license 72:10
lie 77:9,19,21,22
78:1,3,12
87:14
lied 77:2,13
210:3 347:6
lies 87:13,17
lieutenant 17:20
48:21 55:21

175:12
lieutenants
43:17,23
life 193:23
light 171:24
255:23 265:11
297:4 307:4
311:6,11 329:4
344:6
likelihood 62:19
106:4
likewise 163:18
limit 27:15,19
29:4,15 30:21
31:5 32:21
limitation 26:20
29:6
limitations
365:16
limited 22:8
23:12 24:3
line 36:7 75:1
124:21 167:23
167:24 211:22
246:4 253:16
351:24 352:23
352:23,24
353:16 354:17
354:18,18
356:6 359:20
405:10,11
lines 90:24
355:4
lineup 191:19
248:14 329:12
330:7 333:7
334:6
liquor 24:15
list 9:22 10:9
62:7 98:13
154:5,6 155:11
218:21 233:4
243:11,16
328:2,2
listed 105:18

138:18 153:23
154:8 166:16
230:4
listen 267:9,24
listening 49:2,3
lists 40:14 62:8
62:24 137:18
literally 256:22
282:10
little 34:9 53:22
75:4 129:14
196:10 201:21
216:15 221:2
262:9 315:2
328:5 329:10
329:21 330:4,9
330:21,22
332:7,10 334:7
380:16 394:12
live 41:19 243:7
lived 163:12
173:9 242:22
254:24 272:9
272:14,15,18
367:18 368:1
lives 363:7
369:10,14
LLC 2:6
locate 376:22
location 4:22 5:7
41:18 49:17,19
272:17 367:11
369:10,11
locked 30:18
32:2,3 36:5
37:7,12,22
38:1,6 39:10
323:14 325:10
326:4,18 327:3
Loevy 2:2,2 7:6
8:9,9,16 9:1
142:14
log 30:22
long 27:23 37:13
61:24 113:11

130:18 214:22
219:7 245:18
323:1 411:20
longer 29:19,20
37:5 57:18
61:3 321:3
336:18 362:18
363:2 364:7,20
365:5
look 8:22 29:9
29:11 84:15,17
85:19 98:21
99:2 101:22
102:16 103:8
103:14 114:23
121:11,14
132:13 143:10
151:10 156:6,7
156:11,13,18
157:18,18,19
157:19,20,21
157:23 159:22
160:14 166:21
172:14 179:9
179:17 215:16
217:4 218:3
219:5 220:10
220:16 221:21
222:1,2,3,9,11
222:14 224:4
224:10,11
226:18 232:8,9
244:22 256:9
262:1 264:5,6
264:7 265:3,4
269:1,17 271:1
284:13 302:23
306:4 325:6
396:21 405:5
405:12 408:22
looked 156:17
168:24 179:13
179:16,22,22
180:19 222:10
224:18 227:15

227:16,16,17
227:19,21,22
231:10 254:17
254:17 255:14
292:21 317:11
366:18 368:14
403:15
looking 19:5
158:3,8 165:16
216:12 222:16
224:22 229:20
266:9 288:3
324:6 367:1
lookout 193:7
206:8
looks 9:22 30:11
43:10 227:4
259:4
lot 35:21 42:23
55:23 58:10
61:10,19 64:9
64:18 101:4,5
102:13 106:11
150:10 158:2,2
166:20 193:1
220:11,11
224:3 232:7
236:24 241:16
247:24 271:24
280:8 345:23
376:16 377:10
lots 40:14
Louis 2:11
lower 161:8
183:17 184:19
Lunch 120:20

————————

M

machine 84:3
193:22
Mae 236:24
292:22
magnitude
48:16
major 177:16

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 443

**making** 42:23
49:21 63:3
67:18 90:22
119:1 179:2
185:17 186:4
252:4 340:4
365:24 377:16
382:4,5 415:8
**male** 278:21,22
**man** 22:15
157:24
**mandated** 346:5
**manner** 224:13
281:20 302:15
378:9
**mantra** 374:17
**manual** 30:13
31:11
**mark** 8:13 10:3
11:3,5 136:1
172:16 284:13
**marked** 9:9
134:15 305:18
405:6
**marking** 167:17
**marks** 125:14
237:24
**massive** 115:13
**masthead**
177:22
**material** 36:1
233:2,3,7
364:17
**materials** 35:2
35:17 37:11,24
84:12 85:16
151:3 154:15
155:12 170:3
233:21 250:4
261:20 262:22
262:24 273:6
364:12,15
372:7,8 384:16
**matter** 4:13
14:11 33:1

39:17 137:16
137:18 143:21
175:4 207:4
340:16 345:16
360:23 392:20
**maximize** 363:4
**McIntosh** 18:10
**mean** 18:24
22:14 45:5
58:3 61:8 70:2
80:2,9,16
97:21,23
121:18 130:16
149:18 166:19
184:7 187:9
191:4 195:12
199:18 206:13
215:16 220:21
225:7,9 226:21
228:9 235:5
236:6 240:21
261:22 272:8
298:22 307:6
309:9,20
310:12 326:3
362:8 369:12
371:17 385:6
403:1
**meaning** 131:22
218:20 286:1
310:13 395:13
**means** 79:7
127:18 185:7
347:4 402:14
**meant** 131:7
310:3
**meet** 161:15
187:6 271:4
**meeting** 75:17
332:10
**meetings** 63:3
64:6 65:4,14
65:17
**member** 116:8,8
140:20

**members** 369:5
**memorialized**
69:10 277:1,9
277:10
**memory** 58:7
**Memphis** 16:1
**mention** 29:8
108:6 112:12
239:22,23
245:13 257:13
258:7 259:11
275:18 301:2
327:1
**mentioned**
55:12 101:21
104:8 118:8
121:5,19 138:8
161:23 187:17
187:18 202:5
242:2 247:10
275:11 316:1
328:4
**mentioning**
202:1
**mentions** 315:23
**merely** 45:1
110:9 199:22
406:20
**met** 111:11
183:14 184:1
292:22 359:22
**methodology**
255:3 256:19
257:8,12 258:5
258:22 259:3
262:17,21
263:2,15,18
264:18 267:15
268:5,19,21,24
269:1,11,12,17
270:4 303:7
319:11
**Mexican** 366:19
368:16
**Michael** 2:11

4:2 344:4
**middle** 48:4
145:23 195:21
**midnight** 409:22
**midst** 75:24
**mile** 192:10,11
**military** 77:15
77:17,18 78:5
78:11 87:15,16
**Miller** 1:10 3:2
4:13,23 6:1,6
7:22 8:3,5,14
9:14 10:4,14
10:18 27:12
113:7 120:24
132:19 133:24
134:5 136:21
137:6 139:22
141:4,13,22
142:17 148:12
158:17 159:9
171:24 175:1
212:1 213:14
215:9 217:3
223:16 240:16
240:17 250:20
252:13,20
253:14,18
299:14 300:10
300:19 310:18
351:21 380:15
395:16 411:17
415:16
**Miller's** 253:11
**mind** 20:16,20
27:17 32:7
130:19 155:23
207:3 208:10
209:12,21
254:7 337:4
360:11,13
361:6,21
**mindful** 171:11
**minds** 338:6,11
338:19 342:4

343:19 346:24
**mindset** 80:17
113:5,8,15
114:2 214:17
312:8 313:9,11
338:1,1
**mine** 291:8,9
**minimize**
322:18 363:4
402:2,11 407:4
**minimum** 26:1
50:19
**minor** 25:19
290:3,5
**minor's** 290:4
**minute** 104:8
187:17 209:15
286:23 289:12
300:23 368:17
**minute.'** 366:20
**minutes** 56:14
98:4 120:14
214:23 236:17
252:22 320:7,9
336:5,7 359:24
359:24 366:17
368:14 402:15
411:11 412:8
**Miranda** 21:16
22:2 113:10
341:8 349:4,8
349:20 350:10
350:11,17
351:2,3,7,11
352:11 353:2
356:20,22
357:3,21 358:2
358:10,23
359:7 370:3
394:15,18,23
395:3,20
396:20,22
397:7 398:24
399:18 400:6
400:12 401:18

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 444

402:13,14,21
403:6,24
406:14,23
407:6,11,18
408:14 409:5
**mirror** 346:1
**mischaracteri...**
27:11 28:14
37:2 55:5
56:18 59:1,18
66:10 67:14
79:5,22 85:7
86:12 91:24
100:7 106:21
114:5 116:15
117:19,23
118:20 119:15
120:9 127:22
131:10 140:17
144:13 146:2
146:11 147:8
147:21 148:2,7
149:2 153:6
160:3 163:2
170:2 172:7
174:13 181:11
181:17 186:8
186:13 188:3
190:24 201:18
202:19 203:4
204:11 206:3
206:21 226:17
227:11 231:2
234:8,20
235:19 237:23
239:3 249:7,13
256:5 257:6
263:20 271:20
273:11 282:3
282:21 283:20
294:13 310:7
314:2,3 316:22
318:4 324:22
326:16 327:7
328:17 333:19

334:10,11
335:13,22
338:13,14
340:20 343:3
344:11 356:13
357:23 358:8
359:14 361:12
361:12 362:14
363:21 371:1
373:20 379:2
380:14 381:15
382:11,17
386:1,5 387:19
388:17 390:6
396:12 397:10
397:24 398:11
398:16 399:3
400:22,23
401:24 402:24
407:21,22
408:17
**Mischaracteri...**
309:23
**misconduct**
76:21 88:5
122:15 362:1
**misdemeanor**
84:4,5
**misleading**
170:4 279:4,15
281:10 282:22
326:20 333:21
**misrepresent**
79:12
**missed** 307:6
316:1
**missing** 269:9
270:3
**misstates** 198:11
207:23 209:1
209:24 211:5
212:20 213:13
281:9,10
285:18 339:8
342:1 343:5

357:10
**misstating** 287:3
**missteps** 397:20
398:7
**mistake** 174:11
**mistreated**
260:17
**mistruths** 98:9
**misunderstand**
310:12
**misunderstood**
18:18
**modified** 299:2
**moment** 55:12
101:21 118:8
202:4 226:14
247:10
**money** 8:16 9:1
**months** 16:8
96:8
**morning** 37:18
187:1 228:17
334:23 377:16
408:19,20
409:14,22
**motion** 324:4
351:13,18,22
352:1 354:11
356:8 357:1
358:6
**motivation**
209:7
**mounted** 46:9
**mouth** 297:23
**move** 121:15
**moved** 43:10
47:2 84:3
237:20 299:3
**moving** 64:18
366:19 368:16
**multiple** 48:5
73:19 120:8
161:4 287:11
370:17 400:19
404:21

**municipal** 30:17
36:8
**murder** 45:7,20
48:16 57:6
79:16 97:5
101:1,9 131:3
183:15 193:18
197:13 208:22
248:13 250:18
288:4 289:2
312:3,4 314:9
314:11,15
316:11,13
317:10 336:19
336:23 343:14
343:23 344:16
348:20 362:5
362:22 376:16
383:4 384:24
386:17 387:1
392:5,12 393:7
393:19 407:2
**murdered** 45:16
**myriad** 113:14

_____
**N**

**N** 3:1
**name** 4:2,21 5:6
9:14 73:1
100:12 138:8
162:2 164:5,5
165:20 190:21
191:3 196:6
206:8 243:16
278:22 329:21
330:4 332:7
384:13
**named** 72:21
158:1 162:1
190:8 315:5
328:7 337:14
376:8,9,12
**names** 62:10
81:14 117:4
272:16 376:23

**narcotics** 33:12
41:15 43:11,16
43:19 44:2,9
45:2,4,5 89:24
304:7
**narrowed** 191:7
**national** 29:12
34:21 57:23
110:22 111:23
117:1 118:2
119:6 224:21
270:3,7 322:5
**nationally** 34:1
34:12,16,20
95:14 102:9
104:11,22
105:8,15 106:8
108:13 112:13
114:21 120:5
131:22,23
132:8
**nature** 76:15
149:16 364:9
**Nawoichyk**
139:19
**near** 40:13
312:4 314:10
316:12
**nearly** 37:18,19
80:21 100:13
164:12 362:9
**necessarily**
61:14 63:13
66:18 105:21
131:7 176:7
177:8 202:10
219:3 240:7
384:12
**necessary** 57:12
389:16
**necessitate**
253:9
**need** 49:18
76:14 107:20
171:8,11

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 445

184:20 189:6,7
189:20,24
190:16 191:11
194:7 205:21
210:7,11
228:21 253:10
268:22 285:9
289:5 290:18
290:21 295:9
334:23 336:5
350:4 389:20
401:21 411:11
**needed** 23:12
24:3 26:10
84:13 194:6
195:5 295:15
**needing** 401:3
**needs** 6:21
183:14,21
184:1,14 188:6
190:16 211:7
212:24 213:4,8
213:22
**negative** 30:24
**neighborhood**
169:9 312:2
314:8
**Neither** 379:20
**neutral** 229:20
**never** 51:8 78:4
78:10 89:16,18
91:8,10 92:1
101:3 138:16
144:14 150:17
151:4,21
152:12 154:17
163:5 165:9
242:2 243:8,18
264:24 266:3
275:16 277:24
302:13 304:16
317:24 325:22
327:3 343:12
374:14 375:16
376:10,13

384:19 394:9
**new** 139:21
149:8 334:4
**nickname**
164:13 165:12
169:1
**nicknamed**
315:4
**nicknames**
376:23
**night** 48:4 59:7
163:20 236:15
247:16 249:23
255:8 279:24
316:19 318:1
328:14 329:24
330:11 331:4
331:14,15
332:3,11,19
345:11 392:13
392:16 393:20
**nights** 44:19
**Nikia** 315:2
**Nikita** 165:7
**Nirider** 138:18
138:22 141:1
**non-threatening**
293:10,23
390:20
**non-violent**
293:10 390:20
**noon** 37:17
187:2 228:15
367:5
**norm** 147:23
211:16
**normal** 406:23
**normally** 22:22
94:10
**North** 2:3 4:6
414:5
**Northern** 1:1
4:16 415:1
**Northwestern**
137:21 138:20

139:8 140:8
141:3 142:6,14
177:4
**Notary** 415:22
**notation** 29:8
344:18 384:19
**note** 39:24 57:10
58:19 61:23
63:13,14 65:11
66:4 73:23
95:22 220:10
233:2 277:1
279:18 282:17
282:17 307:11
307:14,20
309:19 310:5
311:7 362:7
381:9,11
382:23 383:2
385:7 407:14
**note-taking**
57:14,24 58:5
**noted** 29:7 55:15
74:19 75:12
116:20 161:2
212:1 234:4
**notes** 48:20
55:18 56:15,22
57:1,16,19
58:12,14,15,22
59:12,21 60:4
60:13 66:7,15
66:15 67:2,6,7
67:11,15 68:5
68:6,11,15,17
68:24 282:14
383:7,17
413:16
**notice** 1:10
**notified** 47:19
**noting** 123:18
**notion** 208:15
**notions** 208:5
**number** 3:10
7:11 10:11

18:6 26:20
27:16,19 29:18
32:1 42:6,11
43:17 51:13
53:19,20,23
64:17 74:15
86:14 87:6,22
93:6 95:16,17
107:24 111:5,5
118:10 119:7
126:2 135:14
175:21 178:7
178:18 181:1
191:13 284:21
307:3 315:1
334:3 365:16
372:1
**numbers** 374:18

**O**

**o'clock** 186:20
228:16 318:9
333:3 347:22
**O'Riley** 39:17
168:10,11
306:24 320:6
**oath** 168:1
357:20 413:8
**object** 10:13
30:18 32:3
36:3,9,13
136:18 171:6
180:7 216:24
246:4 250:19
291:18 297:17
299:7 310:19
339:24 355:14
355:22
**objected** 253:16
301:9
**objecting** 152:4
171:12 179:20
180:10 242:11
244:18 298:8
**objection** 7:17

11:23 12:10
13:6,16 15:9
15:16 18:2
20:21 22:12
23:4 25:2
27:10 28:13
31:13 36:15
37:1,14 39:1
39:20 42:3
44:6 46:18
47:13 50:9
51:5 53:7
54:14 55:4
56:17 58:24
59:17 61:21
62:13 63:11,20
66:9 67:13
68:21 69:13
71:7 72:5
75:10 78:21
79:4,21 81:2
83:7,14 85:6
86:11 91:4,16
91:23 96:17
98:18 100:6
101:14 102:7
105:13 106:6
106:20 107:12
107:24 109:5
109:12 110:24
112:20 113:1
114:4 115:23
116:14 117:18
117:22 118:19
119:8,11,14
120:7 122:3,10
123:24 124:6
124:21 126:3
126:10,11,18
126:23 127:4
127:12,21
128:7,16,22
129:20 130:23
131:9 132:1,18
132:21 133:15

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 446

| | | | | |
|---|---|---|---|---|
| 136:17 138:3 | 218:10,18 | 323:3,9 324:21 | 231:23 232:4 | 173:3 |
| 138:10,23 | 219:2,18 | 325:17 326:15 | 232:13 264:19 | **offense** 66:12,19 |
| 139:11 140:16 | 221:11 223:17 | 326:21 327:6 | **objectively** | 67:19 306:10 |
| 141:21 142:16 | 225:6 226:16 | 327:13 328:16 | 231:10 | 306:11,13 |
| 143:5,13 | 227:10 230:6 | 331:17 332:23 | **obligation** 202:7 | 334:21 |
| 144:12 145:13 | 231:1 232:5 | 333:8,18 334:9 | **observations** | **offenses** 371:18 |
| 146:1,10 147:7 | 234:7,19,19 | 335:9,13,21 | 75:22 | 374:19 |
| 147:20 148:1,6 | 235:18 237:16 | 337:7 338:12 | **observe** 74:18 | **offer** 13:12 |
| 149:1 150:7,19 | 237:22 239:2 | 339:7,8,15 | 75:5,6,7 77:9 | 103:17 109:20 |
| 150:23 151:8 | 241:3,3 242:4 | 340:2,13,19 | 79:11 89:22 | 109:24 110:13 |
| 152:14 153:5 | 242:16 244:12 | 341:24 343:2 | 90:12,21 92:4 | 111:12 114:1 |
| 153:14 154:18 | 245:6 246:3,14 | 344:10 345:20 | 92:23 93:1,10 | 116:10 181:7 |
| 154:22 155:2,5 | 246:20,20 | 348:11 349:10 | 96:12 304:4 | 194:19,22 |
| 156:2 157:16 | 247:23 249:6 | 349:21 350:23 | 307:5,20 | 195:2 198:16 |
| 158:14 159:8 | 249:12,24 | 356:3,12 | 308:18 | 199:9,14 200:8 |
| 160:2 161:2,13 | 250:13 251:12 | 357:10,22 | **observed** 88:5 | 200:12,16,20 |
| 163:1,22,23 | 251:13 253:7 | 358:7 359:8,13 | 89:8 98:6 | 200:21 201:7 |
| 164:21 165:2 | 254:7 256:4 | 361:11,19 | **observing** 48:12 | 201:14 202:14 |
| 166:2 167:1,6 | 257:5 258:9 | 362:13 363:20 | 50:5 74:19 | 203:1,10,13,14 |
| 170:1,16 172:6 | 259:18 261:1,8 | 366:3 370:6,24 | 93:14 | 204:2,6,7 |
| 173:16 174:12 | 263:19 268:11 | 372:17,17 | **obtain** 71:23 | 205:23 206:18 |
| 176:9 177:10 | 270:23 271:19 | 373:19 374:2 | **obtained** 88:11 | 207:19 208:3 |
| 179:6,10 | 273:10,19 | 375:13,24 | 95:12 152:21 | 208:20 212:3 |
| 180:15 181:10 | 274:4,13,23 | 379:1 380:13 | **obvious** 218:14 | 215:23 225:4 |
| 181:16 183:1 | 276:10 278:14 | 380:16 381:14 | 244:6 | 226:6,13 234:5 |
| 183:10 184:3 | 279:3,14 281:1 | 382:10,16 | **obviously** 19:10 | 234:10 235:15 |
| 185:1,11 186:7 | 281:9 282:2,20 | 383:9 385:24 | 22:14 25:24 | 245:23 274:22 |
| 186:12 188:2 | 283:19 284:7 | 386:4,21 | 42:22 44:21 | 275:24 276:3,9 |
| 188:14,23 | 285:18 287:3 | 387:10,18 | 149:7,18 | 296:1,3,5,24 |
| 189:13 190:5 | 289:10 293:17 | 388:16 390:5 | 172:11 216:7 | 297:2 312:7 |
| 190:23 192:13 | 294:12 295:5 | 390:23 395:4 | 219:7 224:11 | 335:7 338:5,10 |
| 194:12,16,21 | 297:15,24 | 395:21 396:3 | **occur** 88:6 | 339:2,3 345:3 |
| 195:10 197:2 | 298:11,18 | 396:11 397:2,9 | 213:24 | 359:3 361:9 |
| 197:15 198:11 | 299:3,5,7,11 | 397:10,23 | **occurred** 21:3 | 396:23 400:10 |
| 199:21 201:17 | 303:17,22,23 | 398:10,15 | 88:23 92:7 | **offered** 198:21 |
| 202:18 203:17 | 304:19 305:8 | 399:2,10,21 | 95:9 223:14 | 227:13 228:20 |
| 204:10 206:2 | 307:22 308:21 | 400:21 401:23 | 276:6 288:6 | 233:13 235:20 |
| 206:20 207:6 | 309:22 310:6 | 402:23 407:20 | 297:5 312:5 | 246:10 261:18 |
| 207:23 208:7 | 310:17 311:1 | 407:21 408:10 | 314:11 327:2 | 273:18 362:8 |
| 208:24 209:9 | 311:15,16 | 408:16 | 343:14 357:18 | **offering** 104:17 |
| 209:23 210:10 | 312:11,12,21 | **objections** | 379:22,22 | 110:18 114:19 |
| 210:24 212:18 | 314:1,16 | 171:13 413:11 | 406:9 | 124:3 148:4 |
| 213:10 214:10 | 315:15 316:21 | **objective** 12:13 | **off-the-cuff** 65:8 | 209:6,20 |
| 214:15 215:15 | 318:3 319:1 | 70:10 108:21 | 65:12 | 312:15 361:5 |
| 216:2,18 | 320:15 321:10 | 227:14 231:5 | **offenders** 169:6 | 382:6 407:9 |

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 447

**offhand** 254:10
**office** 20:18 48:7
  52:14 59:22
  61:14 62:6
  68:6 74:13
  82:10 96:19
  100:10 182:13
  182:15 183:8
  183:21 186:3
  188:8 189:5
  306:18,21
  307:1 323:21
  324:9 336:1,3
  347:16,19
  348:9
**officer** 5:10
  16:10 18:4
  19:1,23 20:8
  21:6 22:6,15
  23:8 26:13
  39:16 52:16
  58:7 62:5,8
  63:23 64:2,16
  156:14 157:11
  197:10 206:18
  212:15 217:22
  221:19 224:5
  262:8 265:5,8
  269:18 277:1
  295:7 304:4
  306:2,23
  307:11 328:8,8
  348:17 350:19
  359:21,24
  360:3,17 361:5
  361:17,21,24
  370:1,13
  373:14 381:4
  383:23 385:16
  386:23 389:9
  390:9 391:9
  392:14 409:24
  410:22
**officer's** 83:11
  188:5 207:3

  208:9 224:4
  292:20 303:5
**officer-involved**
  52:17 135:18
**officers** 5:14 6:8
  19:10,14 25:16
  41:9,9,11 42:7
  43:1,1 44:8,10
  44:14,19 45:2
  45:4,6,7,16,21
  64:22 68:18
  86:24 91:14
  93:23 104:2
  110:7 114:19
  146:15 150:12
  165:23 177:8
  178:5 191:23
  221:24 224:8
  225:9 228:19
  231:15,18
  275:13 276:20
  280:16 283:17
  285:5,6 286:14
  287:21 288:2,6
  288:9 293:9
  301:23 302:3
  302:20 303:15
  313:8,18,20
  320:21 328:6
  328:19 331:11
  334:21 352:6
  352:10 378:4
  383:17,20
  384:23 386:16
  393:1 394:4
  406:18
**officers'** 107:21
  108:16 109:10
  200:22 275:15
  276:4 297:4
  301:2 378:17
  379:8 391:11
**oh** 20:5 74:10
  125:15 135:7
  155:2 272:4

  273:5 393:3
  405:4
**okay** 6:13,14,15
  8:4 13:12 14:9
  14:9 15:2
  16:13,16 17:13
  18:9,13 24:14
  26:22 28:23
  29:11 30:13
  31:9 34:9
  38:20 39:12
  40:4 43:20
  45:3,13 47:10
  47:16 52:12
  54:24 55:12
  58:21 60:19
  63:16 68:14,19
  68:23 73:15
  77:24 80:12,13
  86:1 87:3
  88:19 96:11
  109:9,17
  122:18 132:13
  133:8 135:7,23
  147:17 151:19
  154:1 155:14
  166:23 167:13
  171:14,22
  173:19 178:22
  178:23 181:14
  185:2,22
  187:16 188:1
  189:10 191:17
  191:21 195:17
  196:4 201:13
  205:19 209:4
  214:9 217:15
  220:24 225:2
  232:18 236:8
  236:14 238:22
  244:4 258:1
  261:11 263:4
  265:19 267:11
  267:18 268:1
  269:24 270:14

  272:8 273:5,12
  273:15 274:17
  275:8 279:18
  285:4 286:1,23
  289:14 291:17
  295:15 304:2
  305:17,17
  311:23 316:9
  316:15 317:18
  320:2,5,8
  321:21 322:8
  325:10,14
  326:1 327:5,9
  328:11 332:5
  333:2 338:20
  340:24 343:9
  346:12,15,24
  347:11 349:1
  349:16 351:21
  358:13 361:23
  363:23 364:11
  365:5 366:8,11
  367:16 372:23
  380:2,9 382:2
  386:15 387:5
  393:3 396:7
  398:20 402:13
  403:8,22 405:2
  405:4,12
  406:10 407:14
  408:2
**old** 278:23
**older** 80:3
**omit** 263:9,16
**once** 19:21 24:4
  25:23 42:4,7
  48:18 99:15
  143:23 176:17
  193:2,6 196:24
  197:12 206:7
  213:15 249:16
  258:10 260:15
  272:5 286:18
  294:10 302:9
  307:10 319:16

  327:20 347:24
  380:3,22
  386:11 387:22
  388:3 392:16
**one-way** 52:3
  170:14
**ones** 27:4 45:6
  73:9 94:8
  117:4 182:22
  185:17 259:16
  267:17 268:9
  270:11,19
  285:6 335:19
  377:13
**ongoing** 49:11
  193:11 347:7
**open** 78:18
  405:13
**operating**
  391:13,14
**operations**
  56:11
**operators** 4:4
**opine** 201:22
  205:1,6 265:12
  341:22 343:16
  361:16 371:5
  392:1 400:4
**opined** 262:12
**opines** 276:4
**opining** 400:5
**opinion** 12:13
  13:3,20,24
  14:5 31:10
  32:21 33:8,9
  33:10,19
  102:20 103:12
  103:17,23
  104:16,17
  106:17 107:11
  109:10,20
  110:1,13,19
  111:12 117:13
  119:4 124:3
  132:14 148:21

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 448

149:5 158:6,7
175:23 181:7
188:7 192:3,5
200:17 202:6
204:13,14,18
204:21 205:23
206:18 208:3
208:20 215:12
216:16,21
217:14,18
218:23 219:14
219:15 220:1,3
223:24 225:4
226:13 229:24
230:23 232:14
233:16,20
239:19 241:11
244:2 245:20
247:15 252:7
256:2 259:10
261:10 262:19
263:1 264:8,12
264:17 265:1,3
267:13 268:3,3
271:2,4,9
274:18,19
275:4,5,24
276:3,9 277:23
296:1,4,5,6,11
296:24 304:15
308:2 311:12
312:8 313:17
319:23 321:1,7
321:22 333:19
335:7 338:5,11
340:24 341:4
341:16 358:22
359:2,3 361:5
361:10,23
371:4,21 373:2
373:9 374:23
377:2 378:5,7
378:11,16,23
379:18 380:3,9
381:12 382:6

385:4 391:18
395:2,19 396:2
396:8,23 398:8
399:9 400:11
401:20 402:20
403:4,23
406:13 407:9
408:12 410:10
410:19,24
**opinion's** 264:10
**opinions** 12:19
13:13 104:1
114:2,19
116:11 119:16
120:10 124:5
156:16,19,20
198:16 199:9
199:14 200:9
200:13,21
201:7,14,20,23
202:1,14 203:1
203:10,13,14
204:3,7 205:4
207:19 209:6
209:20 212:3
215:13,23,24
218:24 226:7
231:11 233:5
233:13,23
234:5,11,16,21
235:15,20
238:4,14 246:9
251:1,17
259:20,21
260:8,9,10
261:17 262:3
262:11,11,16
263:21 264:1
264:15,20
265:20 266:10
267:4 269:3
270:21 271:3
271:11,11,18
271:23 273:18
274:1,22 298:5

299:22 302:13
302:16,18,24
302:24 312:15
319:18,20
320:3 327:16
334:11 339:3
359:16 363:12
363:14,17
**opportunity**
333:5 384:11
406:22
**opposed** 21:10
21:14 25:22
41:20 69:9
70:20 76:16
179:1 207:11
223:13 241:1
247:3 255:6
270:17
**opposing** 10:17
10:20 137:9
**opposite** 256:23
400:10
**option** 16:12
226:22 302:22
380:24
**options** 193:4
**Orangetown**
139:20
**order** 35:2 51:19
78:12,14 79:13
79:14 84:13
86:14 96:16
97:8 102:20
111:11 183:14
183:22 184:1
184:15 192:12
223:23 250:24
293:7 305:6
330:9 368:6
383:16
**ordinance** 46:5
46:24
**organizations**
115:13

**originally**
128:15
**ostensible**
109:10
**outset** 176:1
233:20
**outside** 52:2
133:16 153:11
237:20 241:21
247:22 249:21
253:10 254:12
312:18 324:9
345:19
**overall** 67:16
159:11
**oversaw** 69:18
96:7
**overseeing** 65:5
**owned** 41:19
368:7,9 369:6
**owner** 328:6,13
330:6,20 333:6
**owners** 41:16

_____
**P**
**P.C** 2:13
**p.m** 59:5,5,6
120:19,22
133:11,14
215:4,7 253:2
253:5 346:14
411:13,16
412:6,11
**Pack** 39:4,17
227:17 277:13
277:18 278:17
280:5,5 284:4
284:10,16
285:6 286:20
286:21 287:15
367:5 369:8
379:20 380:6
384:6,16
385:16 388:1
393:1

**Pack's** 383:22
383:23
**page** 3:1 9:19
30:5 40:14
122:17 123:13
127:16 129:8
137:14 152:2
153:12 154:5
167:15 172:17
174:24 204:13
204:17,21
214:20 264:7
264:14 271:2
319:22 351:24
352:19,23
354:9,18 356:5
359:21 362:16
373:8 380:22
382:22 394:14
404:12,23
405:10,14,20
406:13
**pages** 9:21
166:20 219:6,7
219:8 222:8
232:10 238:13
245:18 404:21
**paid** 8:17 9:2
**paint** 229:12
**paragraph**
30:10,10 32:20
129:7,11,15
154:7,10
232:22 233:19
236:19 237:7
237:13,19
238:6,10
239:13 260:1
272:2,24 273:1
275:8 287:20
304:2 328:1
333:20,24
336:15 343:10
371:24 373:9
378:5 380:2

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 449

| | | | | |
|---|---|---|---|---|
| 384:22 386:11 | 47:10,16 | 389:18,22 | 91:6 93:15,17 | 129:17 131:20 |
| 391:17 392:2 | 160:12 182:6 | 390:19 | 102:12 106:11 | 131:23 132:5 |
| **parallel** 249:17 | 241:22 337:22 | **patrol** 17:19 | 116:19,20 | 135:6 144:5 |
| **parameters** | **participated** | 18:4,5 19:1,10 | 117:3 119:19 | 176:14 177:23 |
| 110:20 115:3 | 208:16 385:13 | 19:22,24 20:8 | 119:20 122:20 | 184:7,13 185:8 |
| **parent** 94:19 | 385:22 | 21:6 22:6 23:8 | 123:6,7,10,17 | **percentage** |
| 145:1 265:7 | **particular** 7:2 | 23:9,21,22 | 124:13,16 | 100:12 102:11 |
| 350:5,19 | 16:9 50:3 | 24:2,10 25:16 | 126:9 127:18 | 102:12 104:22 |
| 409:24 410:22 | 62:11 63:8,18 | 26:13 27:2 | 128:13 132:4 | 104:23 105:15 |
| **parents** 94:6 | 63:19 65:4 | 40:21 42:5,5,7 | 135:21 143:17 | 118:13 119:21 |
| 245:9 | 66:2 69:8 | 42:22,24 43:1 | 144:4 151:6,23 | 121:4,12,13 |
| **Park** 46:11 | 81:23 93:19 | 46:10 47:18 | 156:24 158:2 | 123:17 144:10 |
| **part** 21:13 22:22 | 104:10 106:18 | 156:14 328:6 | 164:19 165:10 | **perfect** 145:5,12 |
| 31:3,7,10 | 143:3 156:4 | 328:19 334:21 | 169:17 173:1,2 | 146:8 189:11 |
| 33:23 44:12 | 158:20,24 | 391:12,13 | 173:8 176:21 | 189:18 190:6 |
| 50:10 63:19 | 162:22 196:3 | **patted** 293:2 | 191:2,7 193:6 | **perfectly** 172:2 |
| 65:15 66:13,18 | 198:20 223:9 | 294:15 296:6,8 | 216:6 220:18 | **perform** 115:6 |
| 67:3,15 68:7 | 235:17 240:5 | 296:12 306:6 | 228:10 229:1 | 189:11 |
| 74:5 89:24 | 242:1 256:24 | 388:4 | 231:8 244:11 | **period** 23:10 |
| 90:6 92:17 | 261:8 345:4 | **pattern** 139:9 | 245:10 248:14 | 24:24 25:7 |
| 93:9 125:9,12 | 375:17 377:24 | **patting** 388:9,20 | 288:18,20 | 26:4 30:19 |
| 134:14,19 | **particularly** | 389:8 | 289:16 310:11 | 33:24 34:11 |
| 151:24 156:4 | 113:16 123:19 | **pause** 67:22 | 310:13 313:6 | 42:1,20 48:3 |
| 156:18 159:11 | 304:20 | 163:23 310:19 | 313:24 314:14 | 50:1 52:8 |
| 160:9 166:13 | **parties** 7:10 | 380:15 | 315:9,11,21 | 90:13 175:17 |
| 169:20 180:8 | 413:20 | **PD** 16:19 17:15 | 316:6,11 317:9 | 176:15 178:14 |
| 180:10 190:10 | **partner** 225:16 | 24:8 40:19 | 317:15 329:24 | 178:19 180:14 |
| 190:15 192:8 | **parts** 16:21,22 | 52:19 53:5 | 330:7,11 | 322:14 |
| 193:10 195:18 | 64:18 193:13 | 55:1 101:16 | 332:10 362:21 | **perjury** 413:23 |
| 221:20 232:19 | 227:23 228:10 | 145:17 148:14 | 369:5 376:14 | 415:5 |
| 243:9 250:22 | 232:14 267:21 | 152:19 153:1 | 376:23 377:6,7 | **Perkovich** 1:13 |
| 262:5 263:1 | 355:19 356:19 | 153:10 322:6 | 389:13 | 5:22 413:2 |
| 268:18 302:16 | **passing** 19:16 | 346:6 348:18 | **people's** 159:24 | 414:4 |
| 304:11 305:5 | **passionate** | 377:6 411:7 | 216:6 | **permissible** |
| 319:21 320:2 | 262:13 | **penalty** 64:20 | **perceive** 83:21 | 340:10 349:3 |
| 349:1 352:21 | **pat** 265:15,15 | 413:22 415:5 | **perceived** 78:1 | **permission** |
| 355:2,10,15,16 | 266:14,19,24 | **pending** 82:12 | 83:2 231:17 | 288:17 290:5 |
| 361:9 365:2 | 292:13,14 | 307:2 357:19 | **percent** 95:15 | **permitted** |
| 391:17 398:23 | 293:2,3,9 | **people** 20:13 | 95:18,18 | 205:22 350:6 |
| 400:18 | 294:2,6,9 | 21:2 43:4,16 | 100:13 111:5 | **perpetrator** |
| **partial** 72:7 | 388:12 389:3 | 48:7 53:23 | 111:17,20 | 343:13 |
| **participant** 18:6 | 389:16,20 | 54:4 57:19 | 117:16 118:9 | **perpetrators** |
| 18:22 75:1 | 390:11 391:15 | 64:12 72:7 | 119:7 120:6 | 45:23 |
| **participants** 5:4 | **pat-down** | 79:7 81:13 | 121:8 122:20 | **person** 9:9 19:4 |
| **participate** | 389:10,12,12 | 87:21 90:1 | 122:22,22 | 22:14 32:16 |

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 450

41:17,18,21
47:20 51:9,14
59:10,14 62:21
74:6,12,23
77:20 78:2
88:8 98:20
99:6,15,23
100:15,24
101:9,13
123:20 127:16
130:24 149:10
162:1 164:13
165:14 182:24
184:22 187:10
187:11 190:8,8
191:11,12
192:12 193:3
195:5 196:11
196:13 207:11
207:12 229:20
231:5,23
255:16 277:3
277:19 279:20
280:10 282:12
286:15 289:7
289:21 290:9
290:17 292:12
293:11,12,21
294:3 322:13
323:8 328:7
330:10 341:7,9
351:2 353:2
370:21 374:19
374:20,21,24
376:4,8 384:12
389:7
**person's** 82:3
90:5
**personal** 70:18
89:20
**personally**
42:15,21 48:17
91:9 270:6
**persons** 31:24
96:1,8 315:1,8

**perspective**
103:9,24 104:2
104:4 195:20
224:11,16,19
226:15,21
227:8,14
229:17 230:18
230:20,21
302:20 303:4,5
**pertain** 104:11
**pertaining** 1:12
181:21
**pertains** 162:22
**philosophy**
269:14,15
**phone** 149:15
286:5,22
**photo** 191:6,20
329:12 333:7
334:6
**photograph**
247:12 254:19
**photographs**
163:16 165:18
**phrase** 18:16
127:16 129:3
130:17
**phrased** 326:20
**phraseology**
202:12
**physical** 17:8,11
89:17 97:21
99:12 100:5
101:1 127:7,10
148:19,23
149:13 211:12
366:13 372:2
**physically** 89:11
89:14 127:2,9
203:11 212:10
222:23
**pick** 123:7
270:16,19
295:18
**picked** 124:12

124:13,16,19
271:17 367:14
**picking** 296:21
301:3
**pickup** 72:9,11
**picture** 334:7
400:15
**pictures** 332:15
**piece** 170:4
218:7 239:23
250:8,11
256:17 357:5
394:24 406:12
**pieces** 89:14
221:6 262:23
263:10 357:6
376:16
**Pitts** 157:18
159:14 248:7
248:11,11
343:12,21
344:4,9 345:5
**place** 18:12
54:18 55:8
58:8 59:4
73:24 74:1
85:11,22
103:15 119:1
140:14 160:13
187:1 190:12
193:12 218:5
225:3 249:2
273:3 275:23
302:4 303:9
308:9 309:10
313:14 321:17
343:23 346:3,9
368:1 389:4
392:12 398:21
399:16 407:1
413:6
**placed** 306:10
**plaintiff** 1:4 2:5
5:18 227:6
230:18 231:12

**plaintiff's** 135:2
138:1,14
220:13 224:19
226:12,15,20
230:20 234:17
251:24 261:16
261:18 300:21
301:12
**plaintiffs** 231:19
**plaintiffs'** 231:9
**plan** 13:17
**plays** 193:20
**please** 4:20,22
5:5,7,20 31:17
66:3 108:4
214:24 284:14
**pled** 62:21
**plenty** 54:17
**plus** 176:22
**pockets** 388:5
**point** 8:24 24:19
59:14 60:7,16
62:4 67:18
82:16 84:20
98:20 104:14
106:5,19
119:13 121:18
122:8 154:16
158:9 169:3
184:21 194:5
202:10 213:21
213:23 226:11
227:5 232:4
235:14 236:19
240:5 244:6
245:19 256:1,3
257:11 258:8
259:17 260:21
261:9 278:10
278:10 280:10
285:11,12
286:9,24
287:20 294:2
294:10 295:20
297:14 304:13

310:23 311:14
316:3,5 318:1
323:13 324:20
326:2,12
327:12 328:2
329:22 330:3,4
330:8,13,17
334:2 336:5,6
337:9 339:15
341:8 342:22
347:19 348:3,5
348:8 349:6
357:15 362:9
364:18 367:18
386:24 391:21
397:4,6,22
398:21 400:3
403:8,22
**pointed** 130:3
140:5 189:3
238:17 256:21
263:7 318:17
**pointing** 91:2
123:2 150:2
154:20 155:18
218:13
**points** 262:18,19
262:20
**police** 5:10,14
6:8 7:3 8:18
12:19 13:3,13
13:22 14:4
16:7,17 18:1
25:8,10,12,12
26:18 27:23
28:7,20 29:5
29:13,16 32:18
33:6 34:5 35:5
35:15,20 36:3
36:12,13 37:13
37:19 38:14,22
38:24 44:7,14
45:21 62:5,7
62:10,11 63:7
63:13 64:16

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 451

65:2,20,22,24
66:4 67:12
68:14,23 72:2
73:16 75:23
77:5 81:16,17
81:19,22 83:10
83:11 86:21,22
86:24 89:5
96:4,15 104:15
104:19 105:9,9
105:11,20
106:17,24
107:10 108:14
108:17 109:11
111:12 114:16
114:18,19,24
115:9 116:4,18
117:3 122:14
124:4 130:5
135:10 136:24
139:20 140:21
143:8 157:11
157:12 160:17
160:22 163:9
163:10 164:4
164:18 165:9
168:9 169:9
175:4,12,16
176:7,23 177:8
177:16 178:5
181:8 183:7
185:16,19,23
186:3 187:5,9
187:19 189:11
189:16,21
190:20 192:3,6
192:6 196:1,2
196:23 197:22
199:16 200:10
200:13,18,21
201:5,14 202:6
202:7,15 203:1
203:10,15
204:3 208:4
209:8 212:4,5

212:15,16
213:6,18 214:8
217:14,22
218:1 219:21
220:1 221:18
221:19,21,22
222:4,5,6,7,7
222:14 223:6
223:10,13,15
224:4,5,7,15
225:5,13,15,22
226:8,13
227:15 228:7
229:11 231:7
231:17 232:9
233:9 234:6,12
234:18 241:18
241:24 242:7
242:14,20
243:2,6 245:14
245:21,24
248:17,17,20
249:4,9 258:24
260:17 262:8
262:15 265:5
265:18 266:2,4
269:18 272:17
272:21 273:3
275:15 276:8
276:15,16,16
276:20 277:12
278:9 280:15
281:17 285:14
287:23 288:1,6
288:9,17,17,21
289:8,15,17,20
289:21,23
290:1,4,6,10
290:10,24
291:24 292:1,2
292:7,18,19,20
292:24 293:4,9
293:11,14,21
293:22,22,24
294:9,11,17,22

295:7,10,16,17
295:19,20,21
295:23 296:2
296:17,20,22
296:22 297:4
297:11,12
301:2,4,6
302:12,20,21
303:1,1 304:13
304:23 307:12
308:8 309:8,19
310:14,22
311:13 313:8
313:20,22
316:4,9,17
317:19 318:18
319:6,14
320:19 322:14
322:22 323:6
331:11 332:6
332:15 333:10
333:17 339:4
342:14 344:20
344:22 345:1,2
345:8 346:5
347:13,15,17
347:24 348:4,7
348:7 350:17
352:6,10
358:15 359:2
362:1,17,21
364:5 365:21
366:22 369:20
369:23,24
370:3,5,13
371:10,12
373:14 374:5
374:22,23
375:3,4,8,20
376:22 377:4
378:4,17
379:12 380:4
380:10,11
381:2 382:8,22
383:5,7,17,20

384:22 385:1,5
386:12,16,18
386:20 387:7
387:14 388:12
388:13,22
389:2 390:9,21
391:6,9,10,11
392:7,9,9,24
393:12,14,16
393:23 397:6
397:14 398:1
400:19 406:18
410:11
**police's** 230:21
345:15 347:14
348:13
**policing** 117:11
373:10,24
**policy** 55:1,7,9
**poor** 404:9
**porch** 99:7
312:4 314:10
316:12
**portions** 12:23
399:15
**position** 41:7
57:13 61:1
104:16 109:18
408:5
**positions** 40:15
41:24
**possessing** 304:7
**possession**
136:15 228:15
**possibility** 378:1
**possible** 26:3
82:19 83:13
86:14 128:12
166:23 167:4
206:11 213:24
264:1 288:3
289:6 307:6
310:11 336:4
369:19 375:6
375:19,21

376:7 380:4
386:13 395:24
396:5,9,19
397:5 400:4,6
**possibly** 32:15
155:21 289:1
299:14 329:15
375:22
**post-conviction**
162:18
**potential** 48:7
64:14 70:16
75:12 77:16
181:24 336:23
341:15
**Pound** 162:2
164:6,20
238:21 245:22
254:18,24
255:4,24
318:16,18,22
319:2 324:7
329:20 334:14
**Pound's** 165:20
239:14 245:23
250:16 258:7
319:7
**Pounder** 157:20
168:14,15,17
168:22,24
169:18 173:1,6
173:11 236:10
236:21 240:12
254:22 255:17
257:21 258:2
315:4 317:5,16
**Pounder's**
243:16
**practical** 26:19
**practice** 58:6
60:3,3 106:24
192:6,7 213:6
276:16 288:9
288:17 289:15
289:21 292:1

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 452

293:22 294:2,9
370:11 383:5
388:12
**practices** 7:3
8:18 12:19
13:4 14:4
81:16,22
104:15 105:11
105:20 106:18
107:10 108:14
108:17 109:11
111:12 114:16
114:18 116:4
124:4 137:1
175:10 176:7
176:20,23
181:4,8 196:1
197:22 201:6
212:5 217:14
219:21 220:1
222:5 223:6
226:13 276:8
295:23 296:23
297:13 301:6
302:21 347:17
348:7 359:2
397:7 398:2
**preceding**
386:11
**precise** 64:23
392:23
**preconceived**
208:5,15
**preface** 161:3
297:6
**prefacing**
303:12
**preference**
303:14
**preferenced**
318:11
**preparation**
297:20
**prepare** 35:3
**prepared** 117:5

**preparing**
224:22
**presence** 253:11
**present** 2:19
19:19 45:2,5
73:23 75:15
85:4 93:15,17
93:18,24 94:7
94:20 145:1,2
146:20 235:5
248:14 265:8
271:12 333:5,7
346:8 347:15
347:18 348:8
350:19 360:2
375:9 407:3
410:23
**presented**
231:11 244:14
244:21
**presenting**
170:4
**pressure** 305:5
**pressures**
123:15
**presume** 24:22
43:5 46:14
52:12 121:1
130:10 385:3
**presumes**
376:22
**presumption**
296:13
**presupposes**
377:23
**pretty** 16:6
50:19 165:16
211:3 322:11
323:18
**previous** 396:12
**primarily** 6:9
**primary** 57:20
262:19
**principle** 128:19
**prior** 137:1

178:8 180:18
236:13 352:6
354:2,6 358:16
371:9
**privilege** 253:18
**privileged**
133:21 134:5
136:19 138:4
138:11,24
139:12 246:15
300:7
**probable** 182:23
183:14,20
184:18 185:18
185:20,24
187:6,12
196:24 197:12
346:19 348:24
375:9
**probably** 11:4
12:4 34:4,6
40:1 48:21
53:9 55:16
56:5 65:10
72:24 74:5
93:7,12 352:21
**problem** 171:22
177:13,18
252:9 404:15
**procedure** 1:11
4:10 346:5
383:16 391:13
391:14
**procedures**
204:18 391:19
411:8
**proceed** 64:8
**proceedings**
398:23 413:5
**process** 25:15
63:17,22 69:6
123:7 221:3,14
221:17 223:19
225:1 246:1,22
250:22 251:21
**prosecuted**

252:5,11
259:14 263:5
299:17
**processed** 304:6
306:7,12
380:22
**processing**
306:15
**product** 7:18
247:7 253:18
261:4,8 298:12
298:17 299:11
299:20 300:8
**professional**
9:20
**professionally**
142:12,24
**profile** 57:6
**progressive**
135:16
**prohibits** 409:19
**prologue** 257:1
**promise** 82:20
83:2,5,18,22
**promised** 83:17
204:4
**promises** 82:7
86:7 126:16
**promoted** 95:23
**prompted** 57:17
**proof** 183:23
304:15,16
**proper** 403:4,24
406:14 407:11
407:17 408:6
**property** 41:16
41:20 42:24
43:3 368:5
**proposed** 281:8
281:20
**proposing**
253:24
**propounded**
413:10

405:22,23
**prosecution**
66:20 67:20
**prosecutor** 68:8
82:10,12,14
149:21
**prosecutor's**
68:6 100:9
**prosecutors**
146:19
**protected**
246:23 247:7
261:4 299:20
**protection** 389:9
389:9
**protective**
389:12
**prove** 184:20
185:13
**proved** 146:18
304:20
**proven** 103:11
129:2,4,17,19
130:17,19,19
131:15,17
176:17 195:22
**proves** 99:12
100:15
**provide** 12:18
13:3,20,24
14:5 135:3
217:13 219:24
339:9 347:14
352:11 398:3
**provided** 3:23
8:14 9:4 10:6,9
11:9 144:15
151:3,24
218:16 219:21
233:21 261:12
261:15,17
353:2 368:5
371:7,12,15
372:15 381:22
391:12 401:17

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 453

**Psychiatry**
14:24
**psychological**
81:23
**psychologist**
80:24 81:1
113:6 114:8
116:12
**psychologists**
114:7 397:15
**psychology**
14:22 115:22
116:22,23
**public** 96:14
104:24 415:22
**published** 14:10
14:10,16,20
**pull** 292:15
**pulling** 354:10
**purports** 8:15
**purpose** 104:19
108:15 360:18
361:18
**purposefully**
360:4,6
**purposefulness**
360:10,14
**purposely**
361:10
**purposes** 143:4
**pursuant** 1:10
1:10 4:9
**push** 170:17
**put** 15:19 20:10
30:2 36:16
39:7 57:12
58:20 65:24
70:12 78:17
99:6 130:15
143:8 166:7
168:7 192:24
201:9 226:11
240:21 258:16
266:17 290:22

401:19,22

292:12,14
294:7,16 295:7
295:12 301:13
304:6 319:3
323:23 324:13
363:1 376:17
388:21 389:1
389:17 390:9
391:15,21
399:5 406:12
407:23 413:8
**putting** 62:6
109:1 256:15
292:8 294:22
358:17 391:10
410:21

**Q**

**qualified** 340:11
340:15 341:1,1
**qualifies** 116:10
340:6
**quantify** 73:5
93:4 95:6
**Quarter** 157:19
162:1 164:6,20
165:19 168:14
168:14,17,22
168:24 169:18
173:1,6,11
236:10,21
238:21 239:14
240:12 243:15
245:21,22
250:16 254:18
254:21,24
255:4,17,24
257:21 258:2,7
315:4 317:4,15
318:16,18,22
319:2,6 324:7
329:20 334:14
**question** 6:18,20
7:15,22,23 8:7
13:5,10 20:15

24:1 25:19
31:15 34:9,19
35:12,13,17
37:22 50:16,18
50:24 51:20
53:4 55:19
60:11 65:1
66:3 69:24
70:6 76:10
84:10 107:24
108:3 109:15
110:10 112:16
112:24 132:2
132:19 133:16
133:19,22
134:4,8 136:13
136:21 138:12
139:2,14 140:2
141:5,14,22
142:9,17 146:4
148:11 152:5
156:9 157:3
158:11 161:3
161:14 168:4
168:20 169:11
169:14 170:2
170:10 179:12
179:21 180:8
180:11 185:21
187:15 205:24
209:17 210:3
213:12 223:17
223:21 227:2
230:18 236:14
237:17 238:23
242:13 244:19
246:18,24
247:6 249:18
251:14,15
252:10 253:19
254:3,8 258:13
261:5 267:10
267:22,24
268:15 270:1,8
275:5 277:7

279:5 281:15
282:8 286:7
289:14 290:15
291:4,16,20
293:6 296:18
298:9 299:5,8
299:13 300:12
300:14,16,17
300:19,24
301:10,10
314:6 319:5
325:18 326:20
327:16 333:21
338:4 339:11
339:17 340:1,4
346:12,12
349:18,18
351:17 352:9
352:13,16,24
353:5,8,11,14
353:17,21,23
354:2,5 356:24
360:12 361:4
363:23 372:20
374:10 378:22
382:6 383:15
387:5 392:23
393:5 395:18
401:10,11
402:17,18,19
405:11 407:8
410:16
**questioned** 83:4
321:7
**questioner** 51:4
**questioning**
22:2 75:2
122:9 124:22
199:3 246:4
253:16 256:18
278:24 279:2
321:2 365:8
411:18
**questions** 6:9,12
21:5,9 48:13

48:15 49:6,8
50:7 51:3,11
51:14 55:15
75:22 76:16,16
83:11,12 104:7
113:11 121:16
124:24 125:24
205:7 239:17
246:8 251:16
251:20 253:22
283:1 285:14
286:24 290:6
291:6,12,21
314:17 352:2
355:23 384:12
384:17 393:17
403:15 411:19
411:23 413:10
**quick** 120:14
380:19
**quite** 31:14 57:5
74:14 267:13
**quotation**
125:14 237:24
**quote** 226:15
357:4
**quoted** 130:11
**quotes** 394:16

**R**

**R** 9:14
**Racine** 225:21
**radio** 286:20
**radius** 72:18
192:10,11
**Rafael** 151:6
**raise** 140:15
144:7
**raised** 91:17
**raising** 90:14
242:10
**ramping** 347:8
**ran** 236:22
318:23
**range** 113:17,18

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 454

121:7 122:1
153:17 404:16
404:20
**rapes** 370:17
**rapport** 78:15
87:17
**rare** 50:11,19,23
51:17
**rarely** 48:14
**rate** 121:4
**RD** 307:2
**RDs** 173:4,4,9
**re-interviewed**
405:17
**reach** 184:14
**reached** 270:22
**read** 12:13
18:18,20 21:16
22:1 29:7 58:3
77:6 80:18
103:3 110:21
113:6 116:16
164:10,13
167:10 173:12
173:21 174:1,4
217:20 221:23
224:24 225:8
228:19 230:12
232:9,24 233:2
233:17 235:8
237:5 243:17
254:3,5 269:19
271:21 272:13
304:11,14
305:23 308:23
310:2 315:20
317:1 320:11
322:6 326:23
341:8 342:3
351:9,11,13,16
352:21 357:3
359:9,11 360:9
361:20 379:16
399:19 400:20
401:20 402:21

402:22 403:4,6
403:9,24
406:14,15,16
407:10,10,12
407:17,19
408:6 415:5
**reader** 324:18
**reading** 125:3
152:11 206:14
242:18 250:5
258:23 309:12
325:9 337:10
351:2 354:10
355:19
**reads** 36:7 272:5
**real** 20:12 72:10
162:2 164:5
165:20 193:24
322:1 384:10
**reality** 394:20
**realize** 150:10
392:23
**realizing** 152:11
**really** 21:6,12
33:1 58:9
64:11,21 76:15
94:17 99:2
102:15 129:23
143:24 182:10
191:9 220:13
222:3 230:22
232:11 248:9
256:8 266:12
280:11 305:15
319:23 323:21
334:16 385:15
385:16 404:9
407:5
**rear** 168:19
236:24 272:10
278:23 367:7
368:19,23
369:1,11 388:1
**reask** 142:8
410:15

**reason** 16:9
68:15 105:17
145:7 211:14
251:22 255:18
278:2,4 324:14
357:7 360:16
400:18 408:2,4
**reasonable**
62:19 72:16
114:21 178:13
179:3 183:17
183:24 184:7
184:12 192:6
193:9,10
204:15 212:24
213:16,19
264:9 265:4,9
265:14 266:11
266:14,21,22
271:6 288:20
294:2,6 347:17
348:6 362:6
369:24 378:7,8
390:8,12
**reasonably**
176:6 196:1
310:14 333:5
**reasons** 66:1
102:14 105:17
128:20 299:24
**recall** 12:24
24:21 25:3
26:6,8 27:20
28:16 31:9
35:18,24 36:1
36:4 37:24
39:14 45:18
58:7,12 62:1
64:3 66:23
69:18 76:23
77:4,7 86:8
87:14,23,24
88:16,17 89:6
93:7 94:9,22
101:11,16,19

130:14 132:16
137:10 145:14
148:9 152:11
152:13 165:5
173:7 180:19
180:20 236:14
249:20 250:4,6
257:19,20,23
258:1 316:24
321:5 323:19
324:1 328:24
329:4 332:9,11
364:17 368:3
369:21 371:16
372:11 384:1,9
392:16
**recalling** 54:19
**receive** 19:2,10
25:6,20 76:24
147:13 276:16
366:21 405:23
**received** 141:24
146:15 158:23
278:21 279:1,9
287:10 385:18
**receiving** 78:2
**recitation** 274:2
**recognize**
162:20 182:21
235:15 254:23
259:8 302:6,7
314:12 325:21
335:18 385:8
385:21
**recognized**
187:22
**recognizes**
176:1 197:9
233:20,23
**recollection**
38:5,21 40:1
85:3,9 148:12
155:9
**recollections**
66:17

**recommendat...**
179:2
**recommended**
29:14
**record** 4:1,21
5:6 18:20 40:8
52:6,6 55:1
68:1 117:24
120:17,19,22
122:16 132:23
133:6,9,11,14
174:13 208:13
215:4,7 252:18
253:2,5 254:5
281:10,16
314:2 315:13
318:4 326:16
327:7 336:8,10
336:13 342:2
343:5 356:13
371:1,18,20
386:1,5 399:3
400:23 407:22
408:7 411:13
411:16 412:9
**recorded** 4:9 5:2
49:1 52:13,16
54:8 77:12
281:6 413:12
**recording** 4:4
52:22,23 53:5
53:12,16 54:2
54:6,20
**records** 62:10
182:3 368:5
**red** 71:10,15
**redirect** 35:16
**reduce** 59:23
**reducing** 130:6
136:6 262:17
**refer** 68:12
**reference** 83:17
84:23 114:8
123:11 140:19
178:12,14

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 455

181:2 324:2
328:18
**referenced** 38:3
132:10 135:15
262:2 364:24
**references** 36:19
81:12 117:1
178:19 322:7
**referencing**
16:23 31:7
39:6 81:15
118:1 138:13
301:18 381:10
**referred** 190:9,9
196:11,12
306:13
**referring** 77:21
104:5 125:8,9
129:6 139:2
233:4 287:16
364:14 365:7
**refers** 279:17
**refill** 120:15
**reflect** 379:21
**reflected** 394:20
**refresh** 38:20
155:9
**refusing** 247:2
**regard** 14:20
15:14 269:10
**regarding** 7:11
7:14 13:13,21
13:21 14:1,5
14:11 25:8
31:5 45:20
104:9 107:20
109:20 144:3
180:5 197:10
209:4 217:14
220:1 236:12
307:2 336:22
337:4 371:13
**regardless**
121:17 134:12
160:20,23

188:5 348:3
392:8 393:12
**regards** 26:5
38:12 57:24
160:12 231:8
403:15
**registers** 86:22
**regulation**
409:18
**reinterview**
333:6
**relate** 10:8
106:18
**related** 168:5
233:14 235:16
306:20 314:22
314:23 315:7
406:7
**relates** 335:16
339:12
**relation** 155:22
**relationship**
78:9 90:4
142:5 277:21
**relationships**
87:21
**relative** 61:17
342:21 413:19
**relay** 19:20
20:13 22:19
283:10 284:3
286:4,19,21
**relayed** 280:4
283:8
**released** 28:4
**relevance**
180:22
**relevant** 120:11
158:6 175:14
337:18 343:24
**reliability**
204:19 382:7
**reliable** 256:2
381:13 384:14
408:13 410:13

**relied** 115:9
143:6 150:12
223:23 233:8
246:9 250:24
251:5,17
253:22 255:5
298:4 299:21
307:8 364:12
**relies** 223:21
259:10
**rely** 114:18
117:5,8 118:4
136:23 140:7
143:3,15 217:5
217:17,22
218:4,22 219:4
220:3 221:2,6
234:17 239:19
256:21 263:10
268:8 274:11
276:21 298:24
299:16
**relying** 33:17
140:12 143:11
219:14 256:23
259:7 274:2
**remain** 354:21
355:12
**remember** 18:9
18:12 25:17,24
29:1 38:11,15
38:18 39:3
52:20 59:15
86:1,16 87:18
92:5 94:19
104:12 137:4
145:18 147:15
148:4,17 155:7
165:24 166:17
173:19 244:8
244:16 245:2,7
245:11 254:10
290:16 316:23
318:7 329:1
339:5 354:10

355:19,21
374:13 384:4
403:21 405:6
**remembered**
60:5,14
**remembers**
356:2
**remind** 57:8
**remote** 1:9 2:1
4:8
**removed** 145:16
**render** 269:4
**rendering** 269:5
**Renee** 2:2 5:17
**renew** 287:2
**repeat** 6:20 7:21
**repeatedly**
223:13 267:15
400:16
**rephrase** 71:20
92:8 211:24
212:13 276:2
348:5 359:4
**report** 8:10 11:9
12:3,5,7,12,16
12:18,22 13:18
13:23 14:2
29:8,9 30:3,24
31:4 33:23
35:3 36:6,10
36:20,23 37:23
38:4 39:23,24
58:3,22 60:20
61:4,18 62:17
63:7,13 65:2
65:20,22 66:1
66:5,7,11,12
66:13,19,19,20
67:7,7,12,19
67:20 75:23
83:16 84:15,22
84:24 85:2,19
86:4 88:4
102:8,14,17
104:9,15

105:18 108:5,7
108:8 111:4
112:9,11,12
113:5,6,7
114:6 116:24
117:15 118:14
119:16 120:10
121:5,10,17,18
122:17 123:4
125:7,10,12
129:4,5 130:12
130:15 132:10
134:1,15,20,23
135:2,8,13,23
136:5,8,9,11
136:14,23
137:4,5,13
143:4,6,18
144:3 150:13
153:10,12
154:6 166:15
166:22 169:20
172:2,12,15,20
174:3,8,9
175:9 178:8,17
178:20,22
179:14,23
180:10 181:9
186:24 188:19
194:23 204:13
205:1,3,10
206:4 217:9
218:6,9,15
219:7,13,21
220:24 221:8
222:14 223:1,8
224:12,12,22
225:4,8 226:7
226:18 227:3,9
227:12,14
229:12,15
230:16 233:1
234:6,9,21,21
235:6 237:23
238:1,3,12,24

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 456

239:11,18,23
240:3,7,9
245:14,17
246:2,5,6,19
246:22,22
247:3 249:9
250:12,22
251:2,4,9,18
251:23 252:7
252:12 255:5
256:13 258:8
258:11,20,24
260:8,16,24
262:1 263:7,11
263:24 267:17
267:18 268:7
269:4,20
270:11,12,16
270:19,20,22
271:10,18
274:11,24
276:4,11,12
278:7,16 280:7
282:14,18
285:4,7 292:19
296:19 297:11
297:20 298:3
298:21 299:16
300:1,22 301:2
301:8,12 302:8
302:14,19
303:8,16 304:9
305:11,16,23
306:1,9 307:8
307:9 308:7,14
309:3,8,19
310:3,7,9,22
311:10,13,13
314:20 316:10
319:15 324:18
324:23 325:8,9
325:21 326:7
326:24 327:21
328:9,21 329:2
330:14 334:21

341:2 342:18
344:3,7 356:7
356:11 357:9
357:16 358:17
359:21 366:6
366:10 369:4
379:3,20
380:15 381:16
382:9,12,19,22
383:1 387:6
394:4,14 398:7
398:22 399:12
399:14 400:4
403:14 404:4
404:12 405:14
406:13 407:16
407:24 408:5
408:15
**report's** 166:24
**reported** 223:15
**reporter** 1:14
3:23 5:20,22
18:17 413:3
**REPORTER'S**
413:1
**reporting** 5:23
405:15,18
406:3,4,5,7
**reports** 62:11
67:3 68:12,14
68:23,24 69:1
69:12 73:16
74:8 136:24
137:7 140:12
180:22 200:23
201:9 215:17
218:21 221:22
221:24 223:15
229:13 232:10
258:15,24
276:7 278:9
310:15 314:13
317:12 371:8
371:12,15
381:2,13

406:21
**represent** 5:7,9
5:13,15 141:11
151:14,15
181:13 231:6,8
238:16 250:9
**representation**
152:5 284:8
287:5
**representing** 6:8
355:16
**represents** 7:6
142:15 319:23
**request** 267:24
**requested** 18:20
254:5
**require** 189:11
394:18
**required** 26:1
48:19 56:21
57:16 189:17
209:20 292:7
293:9 375:21
383:7,11,16
390:19 391:9
402:22
**requirement**
186:22 293:7
**requires** 141:23
**res** 22:18
**research** 105:3
143:23 222:7
**reserved** 412:3
**residence** 35:8
366:15
**resolve** 234:15
**resolved** 234:3
**Resolving** 233:9
235:1
**resources**
179:13,21
**respect** 49:20
206:10 231:13
266:7 302:5
320:1 327:24

**respectfully**
267:23
**respectively**
372:10 373:6
**respond** 7:23
19:12 125:19
170:9,9,11
171:5 225:10
402:18
**responded**
19:22 24:4
42:11 156:15
227:19
**responding** 19:2
22:15 23:13
42:8,9 44:11
56:3 125:17,21
230:14 285:5
**response** 20:24
21:15 22:9
97:9 175:1
364:13 365:4
**responsibilities**
196:22 374:8
**responsibility**
186:4,10,15
187:6 188:10
188:17 189:22
192:8 196:21
197:11 199:2
233:12 235:3
235:10,23
373:17 398:2
**responsible**
181:20 212:23
**responsive**
171:4 291:23
**restating** 242:13
299:4
**restaurant**
330:12
**result** 107:9
392:2 401:6
**résumé** 9:6 10:7
**retained** 10:15

134:23 135:1
135:12 136:15
140:1 141:7,16
142:1,20
**retired** 16:13
96:9 139:20
**retirement**
220:12
**retrieved** 367:11
**returned** 306:16
**reveals** 233:3,7
**reversed** 128:13
128:20
**review** 35:18
37:11 38:8
74:8 152:1
154:14 162:8
162:11,14,17
164:3 180:4
182:3 190:19
192:23 218:21
219:5,9 220:5
243:11 260:16
325:11 329:17
355:24 366:21
367:16,23
369:16 372:7
383:22 384:16
**reviewed** 11:15
35:2 84:12
85:16 130:10
134:12,14
153:23 154:8
156:21 172:1
182:13 208:14
218:8,22 219:1
233:5 250:5
260:3 261:20
292:20 307:8
315:14 368:11
375:10 378:15
379:5,16
**reviewing** 36:1
37:24 105:3
329:1,5 356:2

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 457

**reviews** 162:5
182:16
**right** 6:6,17,21
6:24 7:3,7 8:4
9:13,15 10:12
11:10,17,22
12:20 16:3,7
16:16,17 17:7
17:13,15 18:1
19:22 21:9
23:18,24,24
24:17 25:1,18
27:9 28:5,12
30:3,8 33:21
35:1 37:22
40:4,9,16,22
40:24 42:16
43:8,11 44:5
45:15,17 46:3
46:17 47:3,6
50:8,16,20
51:4,11 53:14
54:13 56:13
58:13,14 59:12
59:16 60:2,7
60:16 61:20
62:11,22 66:8
67:2,5,9,12
68:2,4 72:4,16
72:19 73:3
75:3,9 78:3
79:3 80:3,24
81:5,8,11,16
81:20 82:1,3
82:19 83:12
86:2 105:12
106:4,19 107:6
107:11,18,22
108:18,20
109:11,22
110:3,12,23
111:14 112:16
113:22 114:2
114:12,14
115:12,14,19

115:22 116:5
118:17 119:13
120:13,16
121:3,12,13
123:22 124:5
124:10,11
130:8,12 136:9
137:16 138:9
140:9 144:2
145:22,24
150:9,16,22
152:8 153:13
160:8,19 161:1
161:20 162:2,3
163:12,20,21
164:8,11,20,23
165:1,4,20,24
166:17,21
167:11 168:23
172:4,23,24
173:12 174:20
175:3,24 176:1
176:3,12,24
177:5 180:14
181:9,19,21
182:1,4,7,13
182:19,24
183:8,17 184:6
184:8,16,24
185:10 186:6
187:15,24
188:12 189:8
189:12,19
190:3 191:18
194:1,2,10,15
194:20 195:21
196:7 197:18
198:2,5,9,15
198:24 199:4,6
199:12,16,20
200:2,5,10,14
200:18,23
201:2,3,4,11
201:16 202:17
203:2,11,15

205:13 206:1
207:5,16,20,22
208:6,11,17
209:8,12,21
211:4 212:5,17
214:8,12,14,19
215:11 216:14
218:9,16 219:1
219:11,22
220:20 222:19
226:8,15,24
227:6 230:1,5
232:22,24
233:5,17,21
234:1,6,18
235:13,17,22
236:3,5,8,8,20
237:8,21 238:7
238:10 242:22
246:17 250:18
252:9 254:16
254:24 255:1
258:3 259:2
263:1,2 267:1
267:6 271:16
271:18 272:23
273:2,8 274:22
275:3,6,16,19
276:9,22,24
278:10,11,20
279:10 280:6
280:23 281:13
281:21,24
282:6 283:14
283:15,18,23
284:18 285:15
285:23 286:10
286:12,17
287:16,19,19
288:6,11,14,18
288:22 289:9
289:18 290:1,7
290:11 291:15
292:3 293:20
294:11 295:4

295:14,23
296:24 297:5,9
298:22 299:4,6
299:17 302:6,8
303:1,3 304:18
305:7,23 307:9
308:15,20
309:5 312:9,20
315:12 316:3,7
316:13,20
317:21 318:2,6
318:21 319:2
319:20 320:3
323:1,8,12
328:9,15,21,22
330:1,4,13
332:15,21
333:11,17
334:8 335:8,20
336:7 338:4,17
339:14,20,23
340:18 341:2
341:18,23
342:9 343:1,18
344:9,15,21,22
345:1,4,12
346:20 348:10
348:14 349:9
349:20,24
350:7,18,21
351:6,8 354:21
354:22 355:12
355:13 360:11
360:22 361:18
362:11 363:13
363:14,17,18
363:18,19
365:10,22
366:2,11
367:23 368:13
368:17,20
369:1 373:8,18
374:1,20,20
376:24 377:5
377:14 378:2

378:13,18,22
378:24 379:8
379:14 380:21
381:3,7,13,18
382:9,15,21
384:21 385:1,5
385:9,14,23
386:3,7,13,20
387:17,21
389:7 390:1,3
391:23 392:13
393:9,20
396:24 397:8
398:9 399:20
401:22 402:17
402:22 405:12
407:7 409:1
410:3
**rights** 11:16
88:21,22 89:3
89:4,6 141:11
151:18 155:20
349:4,8,20
351:3,4,7,11
353:19,24
354:3,6 356:10
356:20,23
357:21 358:2
358:10,23
359:7 370:3,23
373:5 394:18
394:24 395:3
395:20 396:10
396:20,22
397:8 399:1,18
400:7,17,20
405:19 406:2
**risk** 123:18
204:19 322:18
363:4,5 391:19
402:2 407:4
**Risks** 130:6
136:6
**riveting** 380:18
**road** 91:8

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 458

roam 323:20
robberies 96:2
  370:18
Robinson
  150:11,17
  151:4,16,20
  152:12 154:9
  154:16 155:19
  156:23 157:8
  160:16 193:3,6
  196:9,14 206:7
  336:16 337:6
  337:16,19
  341:5 344:6
  346:22 347:13
  392:17 406:6
Robinson's
  150:6 153:20
  155:17 158:5
  158:12 159:5
  160:21 195:20
  195:20 200:9
  348:1
rock 2:6 190:15
  242:21
rocks 189:20,23
  190:2 227:20
role 23:11 41:13
  41:15 108:20
rolling 226:4
Ronnie 344:5
room 20:10
  30:18 32:2
  36:5 37:7,12
  37:23 38:1,6
  38:13 39:8,10
  39:12,12 48:24
  49:1 50:7,13
  50:24 51:14,19
  52:2 73:22
  85:13 94:3
  323:14,20,23
  324:10 325:11
  326:5 327:4
  348:17 370:15

rooms 38:23
  52:15,15
ROs 278:20
round 225:21
route 20:14
Royal 5:23
rule 133:16
  246:23 247:8
  349:7 409:18
rules 1:10 4:9,11
  171:21 205:15
  205:22 206:13
  206:14
run 15:23 192:9
  256:22
run-ins 400:19
running 32:19
  321:19 412:7

___S___

S 3:9
sake 68:12
sample 123:9
  124:13,17
  126:1,9
save 355:4
saved 123:3
saw 20:9 71:11
  72:8 88:1,7
  135:13 155:21
  163:16 165:17
  173:20 224:19
  231:17 248:8
  254:19 255:11
  262:4 277:12
  277:16 311:8
  317:24 318:10
  318:11,24
  319:7,24
  328:14 329:6
  330:8 343:23
  344:16 345:7
  366:19 368:15
  369:20 376:15
  384:19

saying 12:12
  17:9 23:8 28:6
  52:2 54:10
  58:23 68:15
  78:14 99:13
  100:15 111:21
  113:8 116:7
  119:23 125:19
  125:20 133:7
  158:22,22
  159:23 160:5,7
  160:15 170:23
  171:4,19
  177:18 201:6
  214:6 238:11
  239:9 245:8
  248:18 255:16
  255:19 256:7
  257:22,22
  258:19 296:10
  297:6,9 298:7
  298:14 299:12
  300:13 302:21
  303:11,12
  307:14,20
  315:9 316:4
  317:8,24 322:9
  326:3,10
  330:19 335:1,2
  342:16,21
  344:23 347:6
  348:2 354:23
  356:15 361:8
  381:19 390:4
  395:16 401:19
  402:1 404:21
  406:20
says 15:22 30:10
  30:14 31:24
  40:17 72:8
  77:14,17 78:6
  87:15 97:16,19
  99:6 103:14
  123:14 130:19
  131:2,4 137:16

140:9 154:7
  156:5,12
  169:21 172:21
  172:23,24
  175:3,5 196:10
  197:8 208:14
  222:22 232:20
  236:8,20
  237:12 239:6
  240:11 241:17
  248:15 264:21
  264:24 265:20
  265:24 266:6
  266:10 268:21
  275:12,16
  278:20 287:4
  287:10 306:1
  307:12 309:9
  314:21 315:20
  323:5 327:2,3
  336:15 345:5
  348:22 356:22
  356:23 368:13
  368:17,21
  379:11,15
  381:23,24
  383:11 391:18
  392:14 394:9
  394:15 400:10
  403:16 405:14
scan 9:13,17
scenario 23:3
scene 18:5 19:5
  19:15,22 20:8
  20:10,14,24
  22:11 23:13
  24:4 35:13
  72:10 164:17
  169:23 172:4
  192:12 225:10
  236:22 332:3
  366:14 376:13
scenes 44:11
scheme 240:7
school 137:21

138:21 139:9
  395:15
science 114:13
scope 133:16
  197:22 205:14
  241:7 312:18
  312:23 335:14
  339:10 340:10
screen 17:1,6
  154:3 272:3
scroll 16:21
search 166:6
  204:15 264:8
  264:10 266:2
  266:20 271:5
  288:2 289:3,6
  290:18 292:7
  295:9,10,11
  326:18 378:6
  379:11,22
  389:12 390:15
  390:16
searched 266:1
  266:3 288:3
  295:20
searching 295:9
  301:5 379:24
seat 294:22
  389:1
second 7:17 9:19
  16:15 29:11
  40:14 68:1
  104:12 125:4
  129:16 132:22
  163:22 172:20
  196:18 216:23
  223:16 230:13
  247:14 252:15
  271:10 284:12
  290:14 391:18
second-to-last
  30:15
secondarily
  294:18
seconds 67:22

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 459

74:22 231:24
412:8
**section** 30:8
40:18 127:17
303:9 319:17
327:14 373:9
**sections** 43:18
**secure** 294:21
**secured** 294:1
294:10 388:13
**security** 389:18
389:21
**see** 8:7,10 9:9,11
11:6 15:19
16:23 21:3
29:10 30:6
31:1,20 35:18
40:5 74:22
84:16,18 85:20
90:1,18,21
94:18 97:11,14
102:17 104:3
114:9 122:8
124:23 135:7
152:3 154:2
156:15 163:4,5
165:17 172:12
174:16 178:18
179:17 190:13
192:23 215:1
219:6 221:22
221:22 222:12
222:12,13,15
224:23 232:19
237:1 238:2
243:15,22
248:5,12
255:12 265:23
266:1 267:3
271:10 272:3
275:9 277:4,9
277:17,21
278:16,18
281:22 293:20
304:7 307:11

307:12,13,18
309:10 313:12
315:22,24
343:12 344:18
344:21 348:9
362:10 366:14
369:19 376:14
381:9 392:5
394:24 406:21
**seeing** 174:6
316:18 392:15
**seen** 7:12 8:19
9:18 35:1 77:6
78:16,22 79:6
82:15 89:16,18
97:2 98:3
99:19,23
134:11,13,17
135:4 137:14
169:8 235:8
243:2 292:17
292:19 312:3
314:10 315:12
316:12
**seized** 378:9,9
**seizure** 204:14
264:8,9 271:5
378:6 379:11
**selection** 123:6
**self-incrimina...**
155:20
**send** 322:18
363:7 377:18
**sense** 210:6,12
210:14,16,22
211:4,15 212:9
212:12,14,22
213:16,23
228:13 270:9
323:21 376:3
378:3 380:1
390:3,8
**sent** 272:7 323:7
**sentence** 30:15
343:10 371:14

375:15 392:2
405:23
**sentenced**
370:19
**separate** 116:2
221:6 350:14
**September** 35:6
110:2,2,14,15
151:7 167:14
204:15 236:15
292:23 344:3
346:15 359:22
401:15 403:14
404:4
**sergeant** 17:14
17:17 18:5
19:9,24 21:23
23:9,21,22
47:24 49:18
74:11 93:21
306:19
**sergeants** 19:11
42:8 43:2
55:22
**series** 98:5,7
**serious** 370:17
371:18
**services** 8:18
41:2,6 46:4,15
46:23
**set** 95:3 103:22
115:3 117:10
200:22 256:24
261:23 271:18
319:14 377:24
413:7
**settled** 126:1
**setup** 52:4
**seven** 321:12,13
**sex** 96:2
**sexual** 371:13
**share** 105:4
232:18 397:11
**sharing** 16:24
17:5,6

**Shawn** 236:21
238:20
**shift** 386:23
**shirt** 71:11,15
**shoes** 287:23
**shoot** 292:16
**shooter** 160:15
160:16
**shooting** 52:17
155:23 190:12
254:15 258:4
288:4 316:5
318:2 337:15
**shootings**
135:18 236:13
**shop** 366:18
368:15
**short** 33:17
345:5
**short-circuit** 8:6
**shorthand** 1:13
413:3,16
**shot** 44:8,15,20
44:24 64:16
131:4 169:6
**show** 8:5 9:8
11:5 18:13
52:24 95:15
106:9 121:11
151:15 174:2,5
191:22 287:14
305:22 334:6
351:17,23
376:6 403:24
**showed** 12:6
54:4 278:3
279:6 282:18
287:11 308:8
356:21 379:12
381:5
**showing** 40:8
155:8,10,11
279:11 305:18
355:2 356:18
**shown** 57:14

125:1 126:5
128:9 129:22
131:13 191:6
191:19 250:2
273:21 282:21
314:18 315:18
330:7 355:7,15
357:11
**sic** 284:18
291:17 334:15
392:10 393:5
393:11,15
**side** 96:22 201:1
217:6,10 224:4
224:14 225:5
230:22,23
235:24 266:5,6
315:3 379:19
387:22 402:4
**side's** 230:1
265:1
**sides** 217:21
222:14 256:13
265:23
**sidetracked**
285:11
**sign** 74:9,11,12
83:24 84:22
289:3 350:11
377:17
**Signature** 412:3
**signed** 85:4
151:21 379:17
**significant**
19:12 144:9
**silent** 354:21
355:12
**similar** 29:6
87:3
**simple** 165:16
350:1
**simply** 158:11
289:16 395:18
399:18 407:10
**Singh** 156:13

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 460

| | | | | |
|---|---|---|---|---|
| 191:5,17,24 | 123:8 125:24 | 313:10 316:8 | 269:22 288:23 | 241:21 250:17 |
| 192:1 225:11 | 127:23 129:12 | 320:24 321:4 | **situations** | 276:17 289:6 |
| 328:14 329:6 | 129:24 130:13 | 322:1,11 | 397:12 | 290:1 295:8 |
| 333:7 334:6 | 131:14 137:15 | 323:10 325:24 | **six** 27:20,21,22 | 317:20 330:21 |
| **single** 74:5,6 | 146:4 147:10 | 327:16 331:7 | 28:8,16,18 | 332:13 370:4 |
| 156:18,21 | 147:11 148:11 | 331:16,24 | 29:9,15 33:3 | 411:5,6 |
| 218:23 258:12 | 152:23 154:4 | 332:4 337:2 | 36:19 37:6,8,8 | **somebody's** |
| **sir** 6:16 7:4 8:12 | 156:7 159:4 | 338:19 339:20 | 76:12 321:4,6 | 288:22 |
| 9:3,7,16,24 | 160:4 161:12 | 340:18,22 | 321:21 322:7 | **someone's** 71:12 |
| 10:7 11:7 12:1 | 162:4 172:11 | 342:4 343:20 | 323:7 363:6 | 91:9 193:23 |
| 12:21 13:23 | 173:13 174:1 | 355:9 356:14 | 364:8 | 312:8 |
| 14:2,8,13,17 | 174:15 178:2 | 359:15 361:15 | **six-hour** 29:4 | **somewhat** 123:1 |
| 14:21,23 15:1 | 180:24 182:2,5 | 362:12 363:15 | 30:20 31:5 | 356:23 358:3 |
| 15:17,21 16:15 | 182:14,20 | 364:16 366:7 | 32:19,21 33:24 | **son** 92:18,18 |
| 17:16 18:12 | 183:9,19 | 369:2 370:9 | 34:11 362:24 | 328:6 |
| 19:24 21:19 | 184:17 185:5 | 372:14 373:7 | **size** 123:9 | **soon** 26:19 |
| 22:13 23:16 | 194:11 198:3 | 374:3 383:21 | 124:13 126:1,9 | 30:15 36:7 |
| 24:10 25:4,18 | 198:10,17 | 385:2,7 388:15 | **slam** 266:11 | **sorry** 16:20 |
| 30:7 31:2,8 | 199:13 200:11 | 388:18 395:1 | **slammed** 265:21 | 23:19 31:14,16 |
| 34:22,23 36:4 | 200:15 201:12 | 396:15 401:1 | **slanted** 231:12 | 38:17 43:20 |
| 40:11,20,23 | 202:9 203:6,12 | 403:20 | 231:19 | 51:15,22 55:8 |
| 41:1,3,5 43:9 | 204:12 205:16 | **sister** 157:20 | **slanting** 108:9 | 67:21 90:9,10 |
| 44:12 45:8,18 | 206:15,23 | 238:19 239:7 | **slapped** 272:7 | 109:7 114:4 |
| 45:22 46:2 | 207:7 208:1,18 | 245:23 254:9 | 273:1,7,17 | 121:9 129:12 |
| 47:1,14 50:11 | 209:2 212:22 | **sisters** 247:21 | 367:3,10 | 134:16 142:8 |
| 51:17 52:9 | 215:10,20 | 249:21 250:10 | 368:21 | 147:10,11 |
| 53:15 55:6 | 216:5 219:17 | 250:15 251:9 | **sleep** 145:4 | 148:8 151:17 |
| 56:19 60:17 | 232:21 233:6 | 254:23 255:6 | 228:23 363:10 | 155:3 180:18 |
| 62:15,24 63:14 | 233:18 234:24 | 257:18 316:18 | **Sloan** 344:5,5 | 183:18 185:22 |
| 65:11,13,19,21 | 235:23 236:11 | 334:15 | **Smith** 63:23 | 220:20 231:20 |
| 68:9,20 69:5 | 237:2 241:9 | **sisters'** 255:10 | **Snake** 150:11 | 261:11,11 |
| 69:14 76:23 | 244:24 246:19 | 256:3 | 151:4 160:15 | 268:14 269:11 |
| 78:16,23 79:24 | 247:18 250:6 | **sit** 58:18 59:14 | 196:9,9 328:7 | 278:14 279:16 |
| 80:4,10 81:21 | 261:19 270:2 | 61:9 86:16 | 337:16 | 281:14 284:12 |
| 82:2,4 84:17 | 272:4 273:4,22 | 87:23 101:15 | **solved** 95:16 | 284:20 289:11 |
| 86:5 87:2,8,12 | 274:15 275:7 | 121:9 123:12 | **somebody** 31:22 | 297:22,24 |
| 88:14 89:1,7 | 275:10 276:12 | 257:23 | 32:8,17,22,23 | 300:23 315:19 |
| 93:2 95:21 | 281:23 282:15 | **site** 81:12 | 51:23 59:5 | 315:24 323:3 |
| 101:16 102:2 | 283:24 285:12 | **sitting** 32:1 | 63:8 65:9 80:2 | 330:5 332:11 |
| 104:6,13 | 286:18 288:15 | 84:19 243:14 | 88:1 89:20 | 338:2 353:14 |
| 107:14 108:19 | 290:12 291:2 | 248:8 348:16 | 184:2,16 | 353:21 362:13 |
| 108:21 110:17 | 297:1 302:9 | 348:22 | 185:18 186:1 | 365:13 374:3 |
| 111:15 113:24 | 304:8 305:11 | **situation** 48:23 | 187:21 188:22 | 375:24 380:17 |
| 114:15 115:24 | 305:16,24 | 49:9 51:1,8 | 197:1,13 | 382:17 393:3 |
| 119:17 121:2 | 308:1,16 310:9 | 91:3 92:20 | 199:19 213:1 | 397:10 403:20 |

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 461

| | | | | |
|---|---|---|---|---|
| 405:4 407:21 | 409:20 | 91:23 96:17 | 163:1,22 | 241:3 242:4,9 |
| 410:15 | **specifically** 26:7 | 98:18 100:6 | 164:21 165:2 | 242:16 244:12 |
| **sort** 29:15 31:5 | 26:15 49:23 | 101:14 102:7 | 166:2 167:1,6 | 244:18 245:6 |
| 76:21 96:22 | 65:13 84:16 | 105:13 106:6 | 167:17,20 | 246:3,13,20 |
| 99:11 122:15 | 85:14 94:10 | 106:20 107:12 | 170:1,8,14,19 | 247:5,23 249:6 |
| 148:19 149:9 | 179:2 261:15 | 107:23 109:5,7 | 170:22 171:1,3 | 249:12,24 |
| 149:22,24 | **specifics** 368:4 | 109:12 110:24 | 171:9,12,15,18 | 250:13,19 |
| 150:4 191:4 | 384:13 | 112:20 113:1 | 172:6 173:16 | 251:12 252:9 |
| 309:15 329:12 | **speculate** 198:5 | 114:4 115:16 | 174:12 176:9 | 252:17,24 |
| **sorts** 86:24 | **speculating** | 115:23 116:14 | 177:10 179:6 | 253:6,12 256:4 |
| 141:20 172:20 | 281:24 | 117:18,22 | 179:10,19 | 257:5 258:9 |
| 267:13,20 | **speculation** | 118:19 119:8 | 180:7,15 | 259:18 260:21 |
| **SOTOS** 2:13 | 83:15 128:23 | 119:11,14 | 181:10,16 | 261:1,9,11 |
| **sought** 338:6 | 131:6 167:2,7 | 120:7,17 122:3 | 183:1,10 184:3 | 263:19 268:11 |
| **sounds** 50:1,18 | 209:4,19 211:1 | 122:7 123:24 | 184:9 185:1,11 | 270:23 271:19 |
| 50:22 79:2 | 212:19 213:13 | 124:6,21 125:6 | 186:7,12 188:2 | 273:10,19 |
| 271:16 338:9 | 217:1 241:4 | 125:12,17 | 188:14,23 | 274:4,13,23 |
| 342:13 | 310:18 370:7 | 126:3,10,18,23 | 189:13 190:5 | 276:10 278:14 |
| **source** 77:1 | **speed** 15:24 | 127:4,12,21 | 190:23 192:13 | 279:3,11,14 |
| 122:8 276:19 | **Spence** 2:2 5:17 | 128:7,16,22 | 194:12,16,21 | 281:1,9 282:2 |
| 276:19 280:15 | 5:17 7:17 | 129:5,10,20 | 195:10 197:2 | 282:20 283:19 |
| 329:21 364:17 | 10:13 11:23 | 130:3,23 131:9 | 197:15 198:11 | 284:7,12,20,24 |
| 369:9 378:21 | 12:10 13:6,16 | 132:1,18,22 | 199:21 201:17 | 285:2,18 287:2 |
| 395:7,17 | 15:9,16 16:20 | 133:1,5,15,20 | 202:18 203:4 | 287:9,16 |
| **sources** 117:9 | 17:4,10 18:2 | 134:3,7,16,19 | 203:16,20 | 289:10 290:14 |
| **southwest** 40:21 | 20:21 22:12 | 136:3,17 137:6 | 204:10 206:2 | 291:18 293:17 |
| 42:5,22 | 23:4 25:2 | 138:3,10,23 | 206:20 207:6 | 294:12 295:5 |
| **space** 89:20 90:5 | 27:10 28:13 | 139:11,22 | 207:23 208:7 | 297:15,17,24 |
| **span** 75:14 | 31:13 36:15 | 140:16 141:4 | 208:24 209:9 | 298:12,20 |
| **speak** 63:23 | 37:1,14 39:1 | 141:13,21 | 209:14,23 | 299:4,12 300:3 |
| 165:11 354:22 | 39:20 42:3 | 142:8,15,16 | 210:10,18,24 | 300:10 303:17 |
| 355:13 384:7 | 44:6 46:18 | 143:5,13 | 211:5,19 | 303:22 304:19 |
| 406:4 | 47:13 50:9 | 144:12 145:13 | 212:18 213:10 | 305:8,20 |
| **speaking** 20:19 | 51:5 53:7 | 146:1,10 147:7 | 214:3,10,15,22 | 307:22 308:3 |
| 99:11 111:23 | 54:14 55:4 | 147:20 148:1,6 | 214:23 215:15 | 308:11,21 |
| 170:15 171:13 | 56:17 58:24 | 149:1 150:7,19 | 216:2,18,23 | 309:22 310:6 |
| 320:5 331:1 | 59:17 61:21 | 150:23 151:8 | 218:10,18 | 310:17 311:1 |
| 336:15 337:6 | 62:13 63:11,20 | 152:4,14 153:5 | 219:2,18 | 311:15 312:11 |
| **speaks** 180:16 | 66:9 67:13,21 | 153:14 154:18 | 221:11 223:16 | 312:21 313:4 |
| 369:15 | 68:2,21 69:13 | 154:22 155:2,5 | 225:6 226:16 | 314:1,16 |
| **specific** 29:18 | 71:7 72:5 | 155:10 156:2 | 227:10 230:6 | 315:15 316:21 |
| 32:9 35:13 | 75:10 78:21 | 156:10 157:16 | 230:13 231:1 | 318:3 319:1 |
| 76:16 87:23 | 79:4,21 81:2 | 158:14,21 | 232:5 234:7,19 | 320:15 321:10 |
| 94:17 216:15 | 83:7,14 85:6 | 159:8 160:2 | 235:18 237:16 | 323:2,9 324:21 |
| 259:7 268:20 | 86:11 91:4,16 | 161:2,6,8,13 | 237:22 239:2 | 325:17 326:15 |

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 462

326:19 327:6
327:13 328:16
331:17 332:23
333:8,18 334:9
335:9,12,21
337:7 338:12
339:7,14,17,24
340:19 341:24
343:2 344:10
345:20 348:11
349:10,21
350:23 354:14
355:2,6,14,22
356:3,12
357:10,22
358:7 359:8,13
361:11,19
362:13 363:20
365:13 366:3
370:6,24
372:17 373:19
374:2 375:13
375:24 379:1
380:13 381:14
382:10,16
383:9 385:24
386:4,21
387:10,18
388:16 390:5
390:23 393:24
395:4,21 396:3
396:11 397:2,9
397:23 398:10
398:15 399:2
399:10,21
400:21 401:23
402:23 404:2,8
404:14,20
405:7 407:20
408:10,16
410:15 411:18
411:22 412:1
**Spence's** 254:7
**spence@loevy...**
2:5

**spent** 30:23
320:13,20
321:22 365:21
**split** 309:6
**splitting** 309:17
309:20
**spoke** 39:19
248:21 320:7
324:5,8 325:5
343:12 359:23
**spoken** 38:23
163:6 165:9
195:6
**sports** 12:8
**squad** 46:8,9
93:20 266:18
307:16
**squads** 56:4
**square** 18:15
**stamp** 284:21,24
**stance** 34:23
37:4
**stand** 49:14
113:1
**standard** 29:13
33:24 34:8,10
34:11,21 102:3
118:2 183:13
183:16,20,23
183:24 184:11
184:13,19
198:12 201:18
202:19 203:5
204:11 206:3
206:21 207:24
209:1,24 211:5
212:16,20
213:14 269:9
270:3 292:6,10
293:7,15 321:9
322:2,5 323:5
375:20 376:2
383:6,16
386:15 390:18
391:1,3,4,5,8

391:12,14
401:18 403:5
409:19
**standards** 57:23
81:20 114:22
117:14 177:3,7
178:4 179:4
196:2 197:8,24
212:5 224:21
270:7 295:23
339:8
**standing** 22:16
190:11
**star** 226:2
**start** 19:4 48:19
52:19 69:4
90:1 114:3
167:16,23
188:10 193:13
193:14 221:13
222:10,16
224:22,22
237:11 264:15
306:8 321:14
334:17
**started** 16:16
24:11 134:21
197:21 220:13
226:4 260:23
332:7,18
337:11 341:8,9
347:2 356:18
**starting** 16:6
90:4 172:23
351:24 352:24
354:17 395:14
**starts** 30:15
129:15 321:15
321:19
**state** 1:14 16:1
46:11 184:20
207:3 208:9
209:11,21
276:1 337:4
360:10,13

361:6 415:13
415:23
**state's** 62:6 76:4
85:5 182:12,15
183:7,21 186:2
187:21 188:8
188:20,20
189:5 347:16
347:18 348:9
353:3,9 375:10
410:2
**stated** 123:15
172:24 236:12
263:21 366:16
406:1
**statement** 14:1
22:18 39:6
72:2 83:5
84:23 85:5
100:10,22
107:22 150:1,6
150:18 153:20
155:11,18
156:1,4,8
157:4 158:12
159:5,5 160:11
160:21 174:9
186:21 195:21
196:7 200:9,13
200:17 202:8
234:24 237:3
237:10 240:20
257:20,20
264:4 301:18
304:3 307:4
308:20 319:6
341:19,23
342:7,21,24
343:4,11,18
347:21,23
348:1,2 350:11
357:1 366:16
368:11 369:2
374:12 381:5
392:14 401:15

410:10,19,24
**statements**
71:24 85:24
90:22 151:21
154:12 156:12
158:7 159:5,12
159:13,15,24
160:17 161:17
218:2 227:24
227:24 239:4
248:17 314:3
315:17 338:14
342:1 344:12
344:23 361:13
379:2 380:14
381:15 382:12
382:17,18
392:21 396:13
401:24 403:1
403:13 413:11
**States** 1:1,11
4:15 196:21
415:1
**stating** 4:21 5:6
379:18
**station** 35:15,20
36:3 37:13
38:22 164:19
168:9 223:10
225:16 265:18
289:23 290:6
292:3 293:4,11
293:24 295:19
295:21 296:22
301:4 313:22
323:6 329:19
333:11,17
365:22 380:4
380:11 386:12
386:18,20
387:7 389:2
390:21 391:6
**stationary** 30:17
32:3 36:3,9,13
**statistic** 112:19

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 463

118:16 121:22
129:8 131:19
131:21 144:3,7
144:10 153:11
**statistical**
108:24 110:20
113:17
**statistically**
104:22 111:22
117:21
**statistics** 95:14
102:9,19 104:9
106:9 107:7
108:6 112:13
119:6 130:2
**stay** 20:9 169:13
323:1,6
**stayed** 96:6
166:4 236:23
**staying** 272:19
367:22
**stenographica...**
413:13
**step** 194:1
360:22 377:15
402:11 407:4
409:12
**steps** 22:10 99:7
**Steve** 137:19,22
138:2,7
**stick** 257:10
305:15
**stop** 21:21 74:22
125:23 161:7
377:18 411:5
**store** 328:5,13
330:6,20 333:6
337:22
**stories** 248:20
**story** 79:15
96:16,22
151:22 152:12
154:17 157:9
173:22 193:15
216:11 217:21

224:5 241:13
243:5 249:1
250:16,16
265:24 317:8
379:19 410:7,8
**straight** 16:5
**strategizing**
50:6
**strategy** 63:19
64:6 65:3,14
65:17,23 69:1
75:21 79:19
80:7
**strategy-wise**
63:5
**street** 2:3 4:7
169:3 170:15
237:1 247:13
254:14 278:23
315:8 324:6
338:23 366:18
367:19 368:1,6
368:8,8,15
369:6,7,19
414:5
**stress** 29:23,24
99:16 228:24
**stressful** 29:21
365:23
**strike** 84:10
92:7 136:12
192:3 373:15
374:9
**strikes** 188:11
**striking** 89:11
**strong** 157:14
**struck** 264:22
**studied** 131:20
132:6
**studies** 116:20
132:14
**study** 110:21
114:7 121:8,22
122:1,19 125:3
129:15,16

132:3,7,11,17
144:4,5
**stuff** 56:16 63:4
201:24 210:12
218:20 219:5
221:1,7,9
236:17 241:17
309:15
**sub** 366:18
368:15
**subject** 88:21
137:16,18
143:20 278:21
293:8 306:9,15
405:17,18
406:1
**subjective** 78:1
83:2
**submission**
213:2
**submit** 187:10
188:7
**submitted** 12:6
**submitting**
182:11
**subpoena** 175:1
364:13
**subpoenaed**
61:12
**subpoenas** 41:9
41:10
**Subscribed**
415:18
**sued** 89:2
**suffering** 339:4
339:21 340:17
**suffice** 41:23
**sufficient** 145:3
275:6
**suggest** 107:7,8
157:13 180:24
190:1 207:12
281:17 367:24
397:5
**suggested** 99:1

168:13 312:1
314:8 329:5
**suggesting**
98:10 106:14
109:3 112:1
156:22 186:23
198:20 388:4
397:19
**suggestions**
168:6
**suggests** 110:22
164:4 190:20
321:2 399:17
**suicide** 47:20
**Suite** 2:14 4:7
414:5
**sum** 23:7 348:3
**summarize** 8:16
303:8
**summary**
232:20 302:17
314:22 319:16
327:14 359:18
363:12,13
**summation**
267:20
**summoned**
306:23
**supervisors** 56:4
**supp** 305:23
307:8 308:14
311:9 314:20
344:3 404:4,11
405:13 407:16
**supplement**
403:14
**supplemental**
172:15,19
174:7 310:14
310:21 311:12
314:12 382:8
**supplied** 7:14
150:12 206:7
220:5 271:22
336:21 346:22

**supplies** 70:23
71:9 196:15
**supply** 82:14
112:8 313:12
**supplying**
108:11 119:18
**support** 102:20
162:21 163:19
406:13
**supported**
270:21 271:17
**supports** 175:22
**suppose** 297:16
**supposed** 124:3
191:21 196:2
197:4 198:2,4
198:7,14,16
199:9,14 200:8
200:12,16
202:14,24
203:10 209:5
209:22 242:1,8
242:14 269:10
294:4 324:17
324:18 411:9
**supposedly**
195:19 329:10
**suppress** 324:4
351:18,22
352:1 354:11
356:8 357:1
358:6
**suppressed**
88:12,18
**suppression**
162:12 351:13
**Supreme** 123:14
123:22 196:22
197:8,9
**sure** 6:10 9:18
20:5 22:5
25:13 29:2
31:23 42:24
54:10 64:9
67:24 73:2

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 464

78:4 79:23
86:13 93:16
95:19 96:24
146:7 177:23
187:7 193:24
197:17 201:24
209:13 214:19
215:1,19
232:10 243:13
263:3 286:11
289:5 292:17
294:3 310:16
331:23 351:15
362:10 365:23
383:21 402:6
402:12 405:9
**suspect** 20:4
24:23 26:12
27:1 44:24
49:12 50:8
51:2,10 52:13
53:6,13 55:2
55:14 59:9
62:18 70:2,16
75:13 77:2,10
77:16 78:5,12
79:13,20 82:8
82:17 83:3
86:15 87:19
88:1 89:10,21
94:13,24 96:16
96:20 97:4,9
97:15 98:8
100:20 147:19
148:15 150:2
182:18 183:16
210:20 213:17
322:13 336:19
337:12 348:21
350:16 370:14
370:14,16
374:15,16
380:10 384:24
385:8 386:17
386:19 387:1,7

387:17 391:16
**suspect's** 14:5
79:15 96:16
98:17 100:22
101:12 148:22
**suspected** 306:6
**suspects** 14:14
24:23 25:22
43:3,7 44:21
44:22 45:23
48:8 50:3 86:9
90:14,23 95:9
96:19 97:24
98:9 105:16
182:1,6 206:11
213:7 336:23
341:15 375:6
376:8 402:22
**suspicious**
390:10
**SWAT** 277:14
**sway** 77:20 79:7
**swear** 5:20
90:18
**switched** 40:9
**sworn** 5:24 6:3
174:7 415:18
**system** 86:22
87:1,3,4 286:5

_____
**T**
**T** 3:9
**table** 361:2,3
**tabs** 40:9
**tactic** 78:23 79:3
**tactical** 46:4,15
46:23 284:23
**tactics** 91:15
98:7 99:13
**tag** 72:10
**take** 55:18 56:7
56:22 57:12
58:12 60:4,12
61:10,15,23
74:1 89:14

92:20 103:12
120:13 166:8
193:12 194:1
209:14,17
211:19 214:21
220:4,13
226:22,23
228:14 232:6
246:18 247:19
249:2 252:16
252:20,21
290:5,10,13
293:23 294:16
307:14 336:7
343:23 346:9
360:20,22
377:21 383:7
383:17 405:12
411:11
**taken** 1:12 4:13
5:3 35:7 101:2
120:20 133:12
187:2 215:5
226:19 253:3
306:11 336:11
357:6 377:15
387:24 411:14
413:6,17
**takes** 61:3,18,19
61:23 190:12
**talk** 19:6,7 29:3
43:3 49:5,6,18
49:23 70:4
82:13,19 86:4
89:24 98:11
102:9 112:15
113:5,8 150:14
155:16 161:24
168:14 186:24
196:17 199:3
199:24 206:4
212:2 249:5
252:13,17
264:9 265:13
268:19 277:13

279:13 289:1
289:23 293:13
301:22 319:22
322:19 337:11
349:1 353:8
359:17 361:1
363:8 365:12
371:24 390:21
393:6 394:7
401:4 403:8
409:16
**talked** 25:13
74:14 75:24
76:6 164:1
165:6 168:9,10
173:23 174:19
176:14 191:5
191:18,23,24
192:16 196:8
202:5 243:3
248:16,18
260:1 279:19
303:7 316:17
323:24 328:13
328:19 330:19
331:8,9,14
341:5 344:19
363:16 367:3
376:10,13
394:5
**talking** 23:13,18
30:3,4 31:3
32:13,17 34:1
34:12 53:15
56:1 58:13
68:10,11,24
76:12 77:13,19
78:8 84:19
91:22 99:17
104:12 118:13
121:23 125:6,7
135:21 143:20
144:19,20
155:12 158:4
164:18 176:20

176:22 177:2
178:9 193:6,14
193:22 197:21
216:14,15
217:15 225:11
225:12,17
237:11,14
241:20 245:9
264:13,15
267:4 272:24
277:5,8 287:9
301:19 302:17
308:12,24
320:18,19
321:14 329:24
330:5 331:2,3
331:5,24 332:2
332:8,19 333:4
345:23 347:2
348:20 353:18
365:9,10 378:3
392:24 393:23
403:21 410:5
**talks** 260:3
305:16 306:5
**tape** 52:6
**target** 41:16
158:9 328:7
336:22 337:17
**targeted** 207:20
**task** 63:9
**tasked** 182:11
186:4 240:8
**tat** 256:11
**taught** 33:11
70:17,19
**teach** 33:14
135:17
**teaching** 135:20
**team** 245:5
**techniques**
81:24 179:3
**teenagers**
394:17
**teeny** 187:18

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 465

| | | | | |
|---|---|---|---|---|
| **television** 52:24 | 168:2 223:13 | 135:3 146:2,11 | 356:8 357:8,16 | 85:22 86:14 |
| **tell** 18:23 20:19 | 238:20 243:18 | 147:8,21 148:2 | 358:8 359:14 | 87:22,23 90:18 |
| 21:20 28:6 | 249:21 254:11 | 148:4,7 149:2 | 362:14 363:21 | 97:24 98:5,14 |
| 78:18 83:10 | 284:16 285:7 | 153:6 154:12 | 369:16 373:20 | 99:1 101:6 |
| 90:24 91:6,10 | 287:15 297:21 | 160:3 162:11 | 382:11,18 | 104:21 107:2 |
| 93:6 96:21 | 312:6 318:23 | 162:15,18 | 383:23 384:8 | 112:11 113:10 |
| 107:8 108:16 | 335:6 352:1 | 163:2 166:1 | 387:19 388:17 | 113:14 150:10 |
| 111:17 145:21 | 354:9,13,20 | 167:10,14 | 390:6 396:12 | 156:24 175:9 |
| 153:18 169:19 | 357:20 358:14 | 168:1 174:7,8 | 396:13 397:24 | 175:21 177:6 |
| 177:5 178:2 | 360:1 381:1 | 186:8,13 188:3 | 398:11,16 | 181:1,2 186:24 |
| 189:6 220:1,18 | 384:2 398:22 | 190:24 194:20 | 399:16 400:9 | 191:17 193:5 |
| 221:15 225:3 | 400:16 | 194:23 197:23 | 400:22 402:24 | 193:19 194:6,7 |
| 233:1 243:14 | **testifies** 352:20 | 198:1 205:14 | 406:11 407:9 | 201:23 204:24 |
| 247:2 267:15 | **testify** 12:19 | 207:8 208:4 | 407:12,13,16 | 205:4,5 210:7 |
| 295:22 299:10 | 13:17 38:4 | 210:4,5,13 | 408:17 412:6 | 211:14 213:21 |
| 306:18 320:11 | 39:23 58:5 | 222:2 226:17 | 413:9 415:9 | 214:2,5,6,7 |
| 325:24 337:3 | 61:4,19,20 | 227:11 231:2 | **Texas** 4:24 26:1 | 219:9 222:22 |
| 340:15,16 | 85:1 108:7 | 232:8 233:11 | 28:7,24 29:2 | 223:6,9,14 |
| 358:9 367:17 | 112:10 131:12 | 234:8,20 235:3 | 64:20 80:12,15 | 224:20,23 |
| 392:10 396:9 | 138:24 166:22 | 235:19 239:1,3 | **texts** 258:23 | 227:20 228:11 |
| 396:19 | 205:5 214:16 | 239:24 240:24 | **thank** 45:13 | 229:13 230:3,5 |
| **telling** 88:1 | 223:22 235:6 | 241:7 245:22 | 68:2 285:2 | 235:6,8,11 |
| 96:20 97:3,9 | 236:1 243:21 | 247:20 248:1 | **Thanks** 123:2,4 | 238:15 239:20 |
| 98:9 106:2 | 250:10,23 | 249:7,13 255:5 | 129:10 411:20 | 240:13 258:17 |
| 107:18 173:22 | 251:3 260:12 | 255:10,24 | **theft** 42:23 43:3 | 259:20,22,23 |
| 188:11 230:24 | 298:1,4 299:20 | 256:1,3,5 | **they'd** 224:15 | 260:11 262:3,6 |
| 291:19 300:10 | 311:19 312:19 | 257:4,6 258:2 | **thing** 30:4 37:6 | 262:9,12,12 |
| 300:13 316:9 | 340:7 359:5 | 258:7 260:4,7 | 48:21 52:18 | 264:14,16 |
| 317:9 342:13 | **testifying** 56:14 | 263:12,20 | 66:4 70:11 | 265:12,13 |
| 345:18 347:1 | 177:13 212:3 | 271:20 273:11 | 86:20 96:22 | 267:3,5,14 |
| **tells** 72:20 | 401:2 | 282:3 283:21 | 191:4 195:22 | 268:22 269:16 |
| 193:15 248:7 | **testimony** 27:11 | 285:19 287:14 | 218:23 222:4 | 269:20 271:24 |
| 309:9 348:23 | 28:14 37:2 | 292:20 294:13 | 241:17 248:8 | 280:19 304:14 |
| **tenure** 47:5 | 39:14,15 54:24 | 307:24 309:23 | 255:15 258:12 | 312:16 326:8 |
| 152:19 | 55:5 56:18 | 311:7,11 312:9 | 263:11 264:5 | 327:22,23 |
| **Tepfer** 139:7,10 | 59:1,18 66:10 | 312:23,24 | 265:4 266:4,8 | 328:2 330:18 |
| 141:1 | 67:14 79:5,22 | 316:22 319:7 | 290:1 301:22 | 341:13 345:24 |
| **term** 304:20 | 85:7 86:12 | 324:4,11,14,22 | 326:2,12 | 365:1 403:9,23 |
| **terms** 171:10 | 91:24 100:2,7 | 325:12 328:17 | 327:11,19 | 407:7 |
| **test** 79:14 96:16 | 106:21 107:16 | 335:13,16,22 | 346:4 347:8 | **think** 11:4 18:15 |
| 375:18,21 | 111:13 114:5 | 338:13 339:6 | **things** 9:9 24:16 | 28:5 29:3,7,22 |
| 376:18 | 116:15 117:23 | 339:12 340:10 | 48:20 56:6 | 30:2,4,19 |
| **testified** 6:3 7:12 | 118:20,23 | 340:20 343:3 | 58:2,9 61:6 | 31:15,23 32:24 |
| 66:6 68:17 | 119:15 120:9 | 344:11 351:10 | 64:13 66:23 | 33:2 34:10 |
| 147:9 151:20 | 127:22 131:10 | 351:14,19,22 | 68:13 70:10,17 | 37:18 39:5 |

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 466

43:17 44:23
52:22 53:2
54:3 55:16
58:2 73:6,12
76:3,9 80:11
80:13,17 83:16
83:18,20 84:23
85:10,12,14
87:13,20,22
89:4,23 90:6
93:3 95:14
98:1,2 99:22
100:18 102:8
102:23 103:9
104:19 105:4
109:14,21
111:16,18,21
112:2,19
114:23 115:1,7
115:10 117:7
117:10 118:9
118:12 121:22
131:15,17
135:11 143:16
145:7 146:3
148:13 149:7
150:13,13
151:9,10 156:6
157:17,21
160:17,20,24
163:10 166:15
167:8 169:20
169:23 174:8
175:13,15
177:22 178:12
178:13 185:19
186:22,23
187:5,11,12
192:15,19,21
195:8,14 196:8
196:14 204:12
206:5 207:8
211:6,14,15,16
212:23 213:4,8
213:16 214:5

214:13 220:7,9
222:4,7 224:6
224:8 225:14
225:19,22,24
226:2,20 228:9
228:13 230:22
233:3 234:23
238:1 239:5
241:16,24
242:21,21,22
244:6 245:7,16
248:20 249:15
249:17 250:12
253:12,23
254:16 256:6,8
257:16 259:24
260:8 278:7
282:7 288:24
290:16 291:9,9
292:10 294:20
294:21 295:8
297:23 304:11
304:21 305:1
305:10,19
309:7 310:11
313:11 315:19
316:15 317:14
318:7 319:17
319:21,23
321:11,13,15
321:17,18
322:7,11 326:1
326:11,19
327:11,15,18
328:18 329:10
329:11,23
334:12 343:20
343:24 345:22
345:22 347:4,6
351:10 356:21
357:15 359:1
362:23 364:22
364:24 365:3
366:8 367:6,21
368:9 369:8,15

369:22 370:12
371:20 374:6
375:4 376:3
383:10,12
388:19 389:21
392:20 395:7
398:20 399:8
399:16 400:13
403:20 406:16
408:18 409:2
411:2,3,4
412:2
**thinking** 214:13
214:14 384:5
**thinks** 217:10
**third** 71:11,14
190:8 191:11
196:11,13
213:11 271:11
306:11 323:14
396:4
**Thomas** 158:1
193:3 337:15
376:9
**thorough**
186:16 189:17
201:15 202:7
202:16 204:23
375:5
**thoroughly**
394:5
**thought** 22:4
48:16 51:16
63:17,21 67:10
69:6 155:3
227:7 232:1
252:5 253:17
253:24 262:4
273:12 280:19
308:6 318:13
330:17 341:23
342:9 343:17
369:3 389:14
**thoughts** 238:15
267:20

**thousand**
124:20 262:10
**thousands**
166:20 232:10
**threat** 170:19
171:7 290:17
290:22,23
292:21 294:20
296:13,16
389:7,14
**threaten** 91:8,9
170:16
**threatened** 89:9
89:11,13,17
91:20 98:12
127:7,10,10
170:23 203:15
264:23 292:13
**threatening**
89:21,23
**three** 9:21 46:12
67:22 74:2
75:13 80:21
140:6 143:22
165:10 168:16
168:18 204:21
260:9 262:11
262:12,19,20
268:22 312:2
314:8 315:21
352:15 357:3
**threshold** 187:7
**threw** 249:22
250:17 275:13
287:21 313:20
318:21 319:8
379:12
**throw** 394:22
**throwing** 236:16
263:8
**thrown** 165:15
251:10 254:13
255:8 264:23
317:1,3 318:22
**time** 4:19 16:15

16:24 17:5
20:12 24:24
25:7,14 26:15
28:16,19 29:4
29:15 30:20,22
31:5 32:2,19
32:21 33:24
34:4,11 42:1
42:19,21 48:3
50:1,4,23 52:8
55:10 56:24
57:2,12 58:1
60:18 61:6,10
61:15,17,19
73:9,9 74:6
77:4 79:16
84:20 89:6
90:13 91:2
93:8 95:2
100:23 120:21
123:3 130:14
135:11,15
137:3 145:17
146:13 159:19
169:12 170:13
173:24 175:17
176:15 178:14
178:19 179:5
180:5,13,23
196:6,17,18
213:11 215:6
241:14 247:22
249:22 253:4
254:12 277:3
278:6 292:11
299:7 302:9
312:4 313:14
314:10,14
315:8 316:13
318:8,24 319:7
320:13,18,20
320:22 321:8
321:22 322:1
322:15 329:18
330:22 331:7

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 467

| | | | | |
|---|---|---|---|---|
| 331:19 333:16 | 229:23 238:18 | 15:14 150:16 | transpired 59:8 | 103:22 104:1 |
| 334:1,8,20 | 268:2 312:7,9 | 178:11 352:20 | transport 292:1 | 110:3,15 |
| 336:12 341:10 | 316:16 328:5 | topics 210:5 | 293:11 | 158:21 185:7,9 |
| 341:12 345:5 | 328:12 373:13 | total 8:16,23 9:1 | transported | 185:10,13,14 |
| 347:3 350:12 | 373:16 381:1 | 37:16 43:22 | 293:12 | 185:14 186:6 |
| 352:12,17 | 388:11 400:5 | 320:20 321:3 | transporting | 230:8,21 231:9 |
| 353:19 354:24 | 401:2 403:16 | totality 33:18 | 27:3 | 240:16 248:12 |
| 355:4 357:5,18 | 411:21 | 98:21 99:3 | treat 349:13 | 261:24 262:8 |
| 364:10 365:21 | today's 4:18 | 101:22 156:7 | treated 349:13 | 335:1 345:14 |
| 366:24 370:12 | 149:14 412:5 | 157:22 158:8 | tree 259:4 | 345:15 373:1 |
| 374:17 387:17 | told 22:14 37:11 | 159:23 226:19 | 319:12 | 378:13 379:9 |
| 390:13 396:4 | 64:1 70:12 | 233:16 235:7 | trial 13:13,18 | 382:15 389:11 |
| 405:15,18 | 84:13,21 85:17 | 255:15 264:6 | 60:21 61:5,9 | 413:15,24 |
| 411:15,21 | 108:15 113:20 | 295:3 349:6 | 61:12,12,19 | 415:8 |
| 412:6,11 413:6 | 126:21 147:5 | 389:23 | 62:9,21 64:14 | trust 87:21 |
| 413:7,11 | 147:17 168:10 | totally 116:2 | 103:18 108:7 | truth 88:2 90:24 |
| timeline 80:18 | 169:7,17 173:4 | 210:23 | 109:20 110:13 | 91:10 188:11 |
| 260:22 | 220:24 226:14 | touch 300:1 | 111:13 149:23 | 208:22 217:7 |
| times 6:23 7:7 | 227:7 229:23 | touching 300:20 | 162:14 164:10 | 230:24 342:22 |
| 7:11 9:18 | 230:17 231:23 | 301:11 | 167:10 168:3 | 345:18 373:12 |
| 19:18 20:13 | 243:17,20 | town 409:15 | 184:11 194:20 | 373:17 374:1,6 |
| 35:10,22,23 | 248:3,3,11 | track 71:5 72:18 | 194:23 208:20 | 375:16 406:8 |
| 48:15 50:17 | 249:1 261:21 | 86:23 87:4 | 232:8 240:15 | truthful 14:6 |
| 51:13 60:3,12 | 268:2 277:3 | 192:10 254:4 | 243:12 383:23 | 109:22 153:3 |
| 69:19 72:7 | 295:14 304:18 | 281:7 | 402:3 | 199:11,16,18 |
| 73:19 74:1 | 305:4 306:15 | Traffic 40:24 | trials 41:9 | 200:10,14,18 |
| 75:14 92:16 | 309:4 310:23 | trained 26:8 | Tribune 372:13 | 201:10 216:1,9 |
| 107:24 120:8 | 314:13 317:19 | 384:23 386:16 | 372:15 | 216:17,22 |
| 147:18 161:4 | 319:14 328:6 | training 25:6,20 | trick 376:5 | 217:6,11 230:1 |
| 189:4 212:2 | 328:12 329:18 | 26:2 33:15,18 | trickery 77:14 | 256:1,7,9 |
| 264:19 287:12 | 339:1 342:10 | 34:14 36:18 | tried 243:24 | 268:4,10 |
| 352:7,9,13,15 | 342:11 344:9 | 233:17 295:3 | 244:10 265:11 | 410:14 |
| 357:2,3 358:16 | 345:2,6 356:18 | 322:10 389:24 | trier 110:4 | truthfulness |
| 383:18 401:2 | 357:1 362:3 | Transactions | 198:20 233:12 | 14:1 98:16 |
| 403:15 | 369:20 373:13 | 8:10 | 235:4 239:6 | 103:5,6,18 |
| tip 276:17 | 373:16 374:13 | transcribed | 240:14 260:4 | 104:17 107:21 |
| 277:15 288:10 | 376:9 381:5 | 413:14 | 264:3 399:23 | try 15:24 20:9 |
| tit 256:11 | 383:2 388:11 | transcript 38:9 | 401:3 | 32:13 41:15 |
| titled 8:9 30:9 | 392:3 393:5,16 | 172:1,9,10 | tries 77:20 | 71:13 72:13,17 |
| 130:6 136:5 | 394:3,6,9 | 356:19 403:11 | Troy 158:1 | 72:22,24 79:6 |
| today 6:9 68:13 | tomorrow 74:3 | 413:16 415:6,9 | 337:13 376:9 | 82:18 97:24 |
| 74:2 87:23 | 361:1 363:9 | transcripts | truck 72:9,11,18 | 187:16 192:21 |
| 100:2 113:20 | 409:16 | 164:11 | 72:21 | 220:15,16 |
| 147:5,17 148:5 | top 9:15 175:3 | Transfers 30:9 | true 17:23 22:13 | 224:4 244:5 |
| 189:4 212:2 | topic 14:16 | translated 66:7 | 33:20 80:23 | 264:18 267:9 |

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 468

384:17
**trying** 20:23
21:1,15 41:21
62:1 64:19
77:14 78:5,9
87:16,20 88:8
106:23,24
107:6,8 123:11
125:15,18,19
147:14 180:23
193:1 202:2
205:7,8 225:17
225:21 229:2
231:14 245:16
256:18 258:13
259:17 260:10
269:7 291:13
307:10 331:23
384:19 397:11
407:2
**tunnel** 204:9
205:23 206:6
206:19 207:9
207:10,16
338:21 339:5
339:22 340:2,5
340:17
**turn** 27:4 189:22
220:8
**turned** 68:5
189:21,24
190:2,16 206:9
341:6
**turning** 193:8
**turns** 72:19
**turrets** 193:8
**Tweety** 157:21
163:17,24
238:19 242:24
245:8 254:17
254:21,24
255:16 257:21
315:5 317:5,16
319:3 334:15
**Tweety's** 255:4

256:1
**twice** 123:15
**two** 26:2 44:19
45:7,15 46:17
61:13 70:21
74:4 84:6
96:18 169:4
173:7 174:6
204:18 254:21
265:23 277:14
315:22 328:19
334:21 348:19
**type** 23:2 58:17
59:3,15 60:5
60:13 93:23
108:13 114:17
212:14 361:24
370:19
**typed** 58:19,22
59:23 66:7
67:7,7,8,11
201:10 309:19
311:13
**typed-up** 67:11
68:11,24
**types** 86:7 87:13
87:17
**typewritten**
67:3 172:20
381:12 382:8
**typically** 22:8
23:12 62:7
114:18
**typing** 61:3
**Tyrone** 157:18
159:14 248:7
248:10,11,22
344:4

___
**U**
___
**U.S** 197:9
**Uh-huh** 353:7
**ultimate** 198:8
199:7
**ultimately** 44:1

193:16
**um** 166:17
232:18
**Um-hmm**
108:14 110:12
175:24 226:6
275:24 313:17
378:22 380:2
403:19
**unaware** 146:13
268:19
**underage** 24:15
**undergo** 26:1
**undergoing**
175:6
**underlying**
371:8
**underpins** 11:21
114:13
**undersigned**
415:4
**understand** 6:11
11:19 13:10
23:7 31:15
34:13 69:22
87:1,2 104:20
105:1 108:11
113:9,11 132:2
150:4,16,21
151:7 171:18
180:22 183:5
186:23 189:10
191:18 197:7
202:8 205:6
212:24 213:5,9
213:22 217:20
224:6 227:23
228:1,3 268:16
291:13 300:14
314:15 315:13
316:6,20
331:24 353:5
354:5 356:20
356:22 357:21
358:1 359:6

370:22 394:17
396:10,22
397:7 398:24
399:18 400:6
400:12,17
402:13 407:5
409:10
**understanding**
11:13 26:10
32:22 61:16
62:3,12 84:9
84:11 85:15
128:2 130:14
141:10,19
142:4 196:20
258:18 273:5
320:12,21
350:15 406:24
409:5
**understands**
402:8
**understood**
56:13 130:16
297:13 301:6
351:3,7 352:16
354:21,23
355:12 356:9
357:4 358:10
358:22 396:20
406:2
**undertook**
22:10
**unit** 19:17 40:24
41:2,6 42:23
43:16 45:10
46:5,15,24
47:3,12,17
48:2 49:24
50:1 53:21,24
54:17 56:3,9
56:12 57:1,21
61:11 65:5,15
74:14 86:10
88:11,24 92:11
93:22 95:9

96:6 100:19
101:11 144:9
145:11 146:13
152:20 370:14
**United** 1:1,11
4:15 196:21
415:1
**units** 44:18
46:12 47:9
96:8
**University** 16:1
137:21 138:21
139:8
**unnecessarily**
234:11
**unpack** 75:3
**unprecedented**
175:6
**unravel** 232:11
**unreasonable**
379:10,23
**unreliable**
391:19
**untruth** 77:22
78:2
**untruthful**
311:14 341:20
342:8
**unusual** 48:9
71:21 73:19,22
74:21 164:15
166:8,10
262:10
**updates** 10:5,8
**upheaval** 175:7
**use** 34:8 41:16
57:2 89:19
120:15 129:3
146:8 171:9
212:21 213:16
221:17 226:13
276:20 381:8
381:20 390:7
**useful** 245:17
**uses** 86:23

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 469

| | | | | |
|---|---|---|---|---|
| **V** | **Videographer** | 409:13 | 285:12 294:17 | 96:9 125:6 |
| **Vague** 247:23 | 2:19 4:1 5:1,19 | **waiting** 307:1 | 298:18 306:4,8 | 146:23 147:3 |
| **validly** 394:23 | 120:18,21 | **waive** 349:4,8 | 307:15 322:12 | 163:13 164:1 |
| **valuable** 115:11 | 133:10,13 | 349:19 394:23 | 322:16,17,17 | 181:5 191:5,19 |
| 283:12 | 215:3,6 253:1 | 411:24 | 322:20 333:10 | 232:12 248:4 |
| **value** 224:6 | 253:4 336:9,12 | **waived** 350:10 | 350:4,18 351:1 | 248:16 307:19 |
| **varied** 248:1 | 411:12,15 | **waiving** 350:17 | 353:16 363:4 | 317:8,12 |
| **various** 11:21 | 412:4 | 350:18 | 364:7 376:3,4 | 323:24 324:10 |
| **vase** 71:12 | **videos** 101:6 | **walk** 65:9 74:24 | 380:19 387:1 | 324:15 334:3 |
| **vastly** 178:21 | 149:14 | 402:14 407:6 | 390:7 405:5 | 342:11 347:6 |
| **verbally** 289:8 | **VIDEOTAPED** | **walked** 265:22 | 407:4 | 360:8 371:5 |
| 289:16 | 1:9 | **walking** 370:21 | **wanted** 16:9 | 380:10 381:24 |
| **verbatim** 69:12 | **view** 8:24 180:9 | **wall** 265:21 | 34:24 48:17 | 387:17 391:12 |
| 314:22 | 227:5 229:13 | 266:12 275:13 | 49:6,23 95:22 | 392:23 394:3 |
| **version** 162:21 | 232:4 397:6 | 287:21 313:21 | 100:10,11 | 403:23 409:3 |
| 163:19 193:16 | **violating** 373:4 | 379:12 | 145:5 149:21 | **watch** 40:21 |
| 217:7 222:19 | **violations** 24:15 | **want** 9:8 10:5 | 169:1 278:24 | 42:9,10 44:17 |
| 223:8,12 230:1 | 408:14 | 15:23 18:13 | 279:2 313:7,18 | 73:10 75:7 |
| 234:18 235:17 | **violence** 89:17 | 26:23 49:16,17 | 313:23 322:24 | 82:5 |
| 239:8,14,15 | 127:8,10 | 57:5,7,11 67:5 | 337:22 348:9 | **watched** 73:6,7 |
| 257:15 275:23 | **violent** 306:16 | 70:13,15 76:5 | 360:2 365:17 | 73:13 77:11 |
| 276:4 292:18 | 306:18,21,24 | 78:19 84:1,17 | **wanting** 291:2 | 317:10 |
| 295:16,17 | 401:17 | 97:18,20,22 | **wants** 149:8 | **watching** 52:1 |
| 302:4,7 307:12 | **vision** 204:9 | 99:16 121:15 | 158:19 323:1 | 73:17,22 74:7 |
| 348:14 375:8 | 205:24 206:6 | 123:12 135:19 | 366:1 | 77:11 |
| 378:24 406:17 | 206:19 207:9 | 143:2,10 169:7 | **warning** 401:18 | **water** 399:8 |
| **versions** 193:15 | 207:10,16 | 169:8 170:8,11 | **warnings** 21:17 | **way** 8:2 12:17 |
| 216:11 234:17 | 338:21 339:5 | 171:5 195:24 | 22:2 352:11,17 | 13:13 26:9 |
| **versus** 4:14 | 339:22 340:3,5 | 201:22,22 | 353:3,6,11 | 47:18 54:10 |
| 26:12 31:12,21 | 340:17 | 205:9,13 | 357:4 394:15 | 56:6 58:11,12 |
| 32:7 185:9 | **vitae** 9:5 | 212:21 213:15 | 400:13 401:21 | 61:2,17 65:24 |
| 221:9 282:17 | **voice** 90:14 | 214:19,22 | 402:21 403:5,6 | 70:5 71:4,20 |
| 309:19 | 91:17 161:9 | 217:5 221:4,14 | 403:17,18,24 | 81:18 83:21 |
| **vice** 23:17,23 | 242:10 278:8 | 221:16,22,22 | 406:15 407:11 | 84:16 89:21,23 |
| 24:10,11 | 384:2,3 | 222:1,3 223:11 | 407:18,18 | 100:16 104:21 |
| **vicinity** 168:19 | **voluntarily** | 232:18,23,24 | 408:6 | 105:5,9 106:11 |
| 173:10 | 101:24 346:17 | 245:9 251:19 | **warrant** 66:20 | 107:2 108:9 |
| **video** 4:3,3,8 5:2 | **voluntary** 349:5 | 251:20 252:12 | 288:2 289:17 | 110:6,6,7,8,11 |
| 52:4,5,6,21,23 | **vs** 1:5 | 252:17 253:14 | **Washington** | 112:18 127:3 |
| 53:3,5,16 54:5 | | 257:9 259:13 | 5:18 | 136:19 145:9 |
| 74:7 77:12 | **W** | 259:20 260:12 | **wasn't** 21:6 39:9 | 158:20,24 |
| 218:2 | **Wacker** 2:8 | 270:1 274:24 | 42:12 48:9,21 | 171:2,12 180:2 |
| **videoconference** | **wager** 391:13 | 279:24 280:2,8 | 54:6 55:10 | 190:1 194:1,2 |
| 5:5 | **wait** 21:21 267:1 | 280:11,19 | 57:2 74:24 | 195:22 199:4,5 |
| | 290:14 307:17 | 282:23 285:11 | 77:18 88:2 | 199:23 200:1,4 |

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 470

| | | | | |
|---|---|---|---|---|
| 223:7 228:7 | 352:2 364:23 | 342:24 | 338:23 369:7 | 46:19 47:14 |
| 229:10 231:16 | 384:22 404:6 | well-documen... | whatnot 50:5 | 49:17 50:7,10 |
| 231:17 232:15 | 404:17 405:10 | 364:14 | 154:13 371:8 | 51:2,6,10 52:7 |
| 236:2,4,6,22 | 408:24 411:9 | well-documen... | 383:6 | 52:16 53:8,13 |
| 239:9 240:8,12 | we've 56:9 98:4 | 362:17,20 | whatsoever | 54:16 55:1,6 |
| 240:12,14,22 | 174:19 192:21 | 364:1,2,18 | 258:8 280:15 | 55:13 56:19 |
| 241:18 245:14 | 193:3,4,4,5 | 367:7 | 372:8 384:16 | 59:2,19 60:7 |
| 250:10 257:16 | 212:1 237:20 | well-established | wheel 194:5 | 60:15,21 61:22 |
| 258:21 270:5 | 264:19 284:2 | 365:3 | whereabouts | 62:6,15,20,24 |
| 270:14 276:6 | 301:19 307:15 | well-known | 319:14 | 63:12,21,23 |
| 289:5 295:21 | 319:17 347:5 | 322:12 365:1,3 | White 328:8 | 66:2,11 67:15 |
| 305:2 310:8 | 363:16 376:8 | well-settled | 329:1 331:8 | 69:14 70:3 |
| 314:7 325:2,20 | 376:13 388:23 | 373:10,23 | whiteboard 63:5 | 71:8 72:6 |
| 326:19 331:13 | 403:14 | went 15:22,24 | who've 87:6 | 73:11 75:8,11 |
| 332:4 348:21 | weapon 97:6,10 | 23:17,23 29:20 | wife 22:17 | 78:22 79:6,23 |
| 352:19 359:18 | 131:3 266:24 | 33:11 48:1,2 | willing 394:22 | 83:16 86:13 |
| 361:15 390:4 | 288:4,5 388:24 | 52:20 61:8,12 | window 163:14 | 91:5,17 92:1 |
| 392:4 398:17 | weapons 266:15 | 68:8 70:11 | 163:14,15 | 96:18 98:19 |
| 399:12,14 | 290:19 388:20 | 101:8 128:5 | 165:14,17 | 100:8 101:15 |
| 401:5,10,11,11 | 389:13 391:16 | 145:9 164:17 | 236:18 242:23 | 102:8 105:14 |
| 402:12 | wearing 71:15 | 166:5 173:9 | 247:11,13,15 | 106:8,23 |
| we'll 6:20 11:5 | Webster's | 223:6,9 226:7 | 249:22 250:17 | 107:14 109:14 |
| 29:11 30:2 | 360:12 | 243:8 272:17 | 251:11 254:14 | 111:1 113:2 |
| 69:3 74:2 | week 61:10,13 | 272:19 277:15 | 255:8,21,22 | 114:6 115:24 |
| 120:16 121:14 | week-long 61:9 | 292:21 307:1 | 257:3,11 | 116:16 118:1 |
| 150:14 152:9 | weeks 61:13 | 309:14 316:17 | 264:23 319:9 | 118:21 119:17 |
| 172:16 246:18 | 74:4 75:14 | 319:9 323:15 | 366:15 367:1 | 120:11 122:8 |
| 254:4 257:10 | weigh 159:16 | 324:6 325:6 | wish 23:5 | 124:7,22 |
| 286:23 354:16 | 160:13 218:5 | 331:5 336:20 | wished 306:19 | 125:16 126:4 |
| 354:18 359:17 | 219:9 221:1,5 | 337:23 344:18 | 306:22 | 126:12,16,19 |
| we're 9:11 26:1 | 222:3 254:20 | 362:19 363:3 | withdraw 314:6 | 126:24 127:5 |
| 30:3 32:13,17 | 258:16,16 | 364:9 365:6 | 351:16 | 127:13,23 |
| 33:22,24 34:11 | 259:15 266:8 | 367:6,14 | witness 3:1 4:20 | 128:8,10,17,24 |
| 53:15 58:13 | 269:19 | 368:22 378:19 | 4:23 5:21,24 | 129:11,21,23 |
| 64:20 68:10,11 | weighed 159:12 | 388:2 | 6:2 7:16 10:24 | 130:24 131:11 |
| 68:23 74:3 | 160:8 254:16 | weren't 19:19 | 12:1,11 13:17 | 131:14 132:3 |
| 82:13 84:19 | 255:14 262:7 | 19:19 28:11 | 14:4 15:10,17 | 134:9 137:10 |
| 99:17 118:13 | 271:13 | 59:12 66:18 | 18:3 20:3,7,22 | 138:16 139:5 |
| 150:15 167:15 | weighing 221:3 | 70:3 147:13 | 22:13 23:5 | 139:17 140:3 |
| 167:23,24 | 259:16 262:22 | 228:6,11 | 24:19 25:3,9 | 140:19 141:8 |
| 193:5,8,22 | 264:16,16 | 232:15 245:15 | 27:13 28:15 | 141:17 142:2 |
| 214:20 237:14 | weight 233:11 | 285:16 316:19 | 31:14 36:16 | 142:21 143:6 |
| 277:5 288:24 | 235:2,10 | 399:19 | 37:3,16 39:3 | 143:15 144:14 |
| 300:15 302:16 | 240:24 259:21 | West 2:8,14 | 39:22 42:4,19 | 145:14 146:3 |
| 309:6 347:8 | 327:15 342:19 | 236:24 278:23 | 44:7 45:19 | 146:12 147:10 |

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 471

148:8,19 149:3
151:9 153:7,15
155:6,14
156:11,14
157:17 159:10
160:4 161:15
163:4,6,24
166:3,9 167:8
173:17 174:14
177:12 180:17
183:2 184:4
185:2,12
186:14 189:1
189:14 190:6
191:1,1 192:15
194:17,22
197:4,17
198:21 199:22
201:19 202:20
203:6,23
204:12 206:4
206:23 207:7
208:1 209:2
210:1,11 211:6
212:9,21
213:15 214:16
215:16 216:3,5
217:1,4 218:4
218:11 219:3
224:23 225:7
226:18 227:13
227:24 231:4
232:6 233:10
234:10,23
235:2 238:1
239:5 241:5,8
242:18 243:11
243:16 244:13
244:19,22
245:7 247:24
248:13 249:8
249:14,15
250:1 256:6
258:10 259:19
263:23 266:13

268:12,14,17
271:1,21
273:20,22
274:5,14,24
276:11 279:16
281:7 282:7,22
282:23 283:7
287:6 289:11
290:16,17
291:19 292:12
293:10,18,23
293:24 294:14
295:6 297:16
303:19 304:21
305:10 308:23
310:8 311:2,4
311:16,17,19
312:12,22
313:5 314:18
315:16,17,19
316:23 319:2
320:16 321:11
322:13 323:6
323:10 327:9
327:14 328:18
334:12 335:23
336:19 337:9
339:9 340:8,11
340:22 342:3
343:23 345:21
347:5 349:11
349:22 350:24
355:15,23
356:14 357:13
357:24 358:9
359:9,15
361:20 365:15
369:13,17
370:8 371:3
372:21 373:21
374:3 376:2
378:19,20
379:4 380:5,7
380:11,18
383:10 385:9

386:13,22
388:4,7,10,13
388:18 390:7
391:16 394:2
395:6,23 396:5
396:15 397:11
398:1,12,17
399:5,11,23
401:1 402:1
407:23 408:18
411:10 413:7
413:10
**witness's** 13:7
198:22 200:17
209:7,11,21
**witnesses** 14:15
19:5,16 23:13
24:9 48:8
49:22 50:3
52:10 62:8,8
64:13 71:24
92:15 98:1
149:15 157:24
161:18,24
165:8 181:24
191:14 225:12
225:22 257:14
317:6 323:16
336:22,24
390:20
**word** 9:5 12:4
46:7 146:8
212:22 326:18
326:18 381:8
381:20 390:8
**words** 56:7
74:24 90:18
226:14 309:14
**work** 7:18 19:21
84:1 116:4
134:14,19,22
141:20 171:1
220:11,12,14
225:13,23
247:7 253:17

261:4,8 268:18
298:12,17
299:11,20
300:8 364:5
**worked** 41:14
43:1,2 44:18
46:12 55:22
56:5 78:6,7,11
93:22 107:4
135:15 139:13
269:13
**working** 8:4
45:14 76:18
82:11 93:9
142:5 148:14
**workings** 224:7
**works** 15:13
80:11 81:7
113:22 142:15
305:1
**world** 149:14
218:20
**worried** 404:16
**worse** 91:1
**worthwhile**
400:13
**wouldn't** 20:10
40:1 43:4
45:11 61:13
64:10 73:18,18
73:22 74:5,21
75:15 118:5
144:23 145:6
165:22 177:17
226:19 266:12
286:16 293:1
322:16,20
323:21 330:1
345:16 388:7
390:15
**wow** 262:9
**write** 48:20
56:24 57:10
59:21 61:18
63:4 65:11,22

134:14,22
135:2 180:21
205:3 218:5
220:23 227:3
229:13,15
230:17,19
238:12 239:10
240:7,22
246:19 256:13
258:14,20,24
269:4 280:23
302:14,19
303:3,4 360:18
377:17
**writing** 56:16
61:17 69:10
116:19 134:20
134:22 140:12
172:1 217:8
224:15 229:16
229:19 240:8
252:12 258:20
260:7,23
263:24 264:17
271:3 300:21
303:6 307:9
325:8
**written** 66:17
68:18 114:7
137:8 174:20
177:6 180:5
181:5 219:13
221:8 262:10
271:23 282:17
309:18 344:7
362:7 401:16
**wrong** 12:4 28:6
128:6 166:24
167:5 169:24
175:17,19
199:5,6 200:2
200:6 201:2,3
233:2 236:3,6
303:2 374:23
**Wrongful**

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 472

137:20 138:19
139:7 140:8
141:2 142:6,13
143:1 177:4
**wrongfully**
122:19 123:5
127:15 132:4
144:4
**wrote** 60:20
62:11,17 84:16
86:4 108:5
136:24 174:3
201:19 224:12
231:16 260:9
260:16 310:8
311:21 326:24
328:21 342:17
399:12,14

---

**X**

**X** 3:1,9 87:6
97:4 99:7,8
237:12 270:4

---

**Y**

**Y** 270:4
**Yamin** 2:13 5:15
5:15
**yeah** 13:4 16:16
18:15 20:5
33:20 38:2
61:22 63:1
69:3 70:4 72:6
73:8 74:10
86:3 91:5
96:24 97:16
99:19 103:2
115:7 118:11
123:2,23
134:18 135:11
148:3 150:3,10
153:24 163:17
166:17 167:19
172:14 181:15
184:18 185:14

188:16 190:4
192:19 194:8
194:14 203:22
207:18 209:16
210:11 211:21
214:19,21
217:4,5 221:18
230:10 232:2
237:9 240:18
243:19 244:4
248:7,18
254:10 261:15
266:16 276:14
278:12,19
283:4 286:3
288:23 300:23
301:1 308:17
309:2,14 321:6
330:5 332:22
333:2 350:4
352:8,18
353:10,13
354:4,7,16,17
355:3 361:23
362:7 366:8
373:23 378:16
383:2 404:11
410:4
**year** 18:11
177:21 395:14
**years** 7:7 9:24
26:2 46:17
53:10 80:22
101:17 145:16
145:16 157:9
157:13 176:22
177:9 221:19
228:1 268:18
278:22 400:9
**yell** 161:8
**yelled** 98:11
**yelling** 90:13
**yellow** 72:8,11
72:18,21
192:16,20

**yep** 164:14
202:20 204:2
396:21
**York** 139:21
149:8
**you-all** 282:11
**young** 94:17
**youth** 26:17,23
26:24 27:3,4,8
28:19 33:14
92:14 93:23
94:9 137:21
138:20 139:8
140:8 141:2
142:7,13 143:1
229:9 265:7
306:12,12,23
341:12 346:6
348:17 350:19
409:23 411:7

---

**Z**

**Z** 193:4 270:4

---

**0**

**07** 52:21 53:9
58:16 100:4

---

**1**

**1** 3:11 8:13,14
271:4 354:17
354:18 355:4
**1:15** 321:14
**1:30** 408:20
**10** 3:12,20 74:22
96:10 145:16
214:23 215:1
236:17 268:18
368:13
**10-mile** 72:18
**10,000** 124:20
**10:00** 1:15 318:9
**10:01** 4:19
**10:30** 196:16
229:5 318:8

331:3,14,21,22
332:3,19
345:11 347:2
392:16 410:6
**10:45** 229:5
331:14 332:19
345:11 346:14
347:3,24
392:16
**100** 100:13
135:6 177:23
184:7,12 185:8
**101** 295:7 390:2
**10th** 80:20
394:18
**11** 3:13,21 30:5
101:17 125:13
130:3 135:4
136:8 145:16
154:7 359:21
405:7,9 412:8
**11:55** 330:10
**12** 362:16
**12:15** 120:19
**12:30** 228:16
**12:31** 120:21
**12:43** 133:11,14
**1210** 254:12
368:8 369:6
**1212** 169:17
254:13 278:23
338:23 368:8
369:7
**1240A** 2:14
**125** 129:16
**129,062.50** 8:24
**13** 122:21
314:21 352:7,9
357:2 358:15
370:4 371:9
372:9 373:5
404:10 405:11
**130** 43:16
**134** 4:6
**136** 3:14

**14** 96:8 172:17
**1400** 4:7
**141** 2:14
**15** 122:17
123:13 127:16
129:8 153:12
237:11 238:6
239:13 278:22
344:2 395:14
412:8
**15-year-old**
228:14 336:17
348:19 349:3,8
349:19 350:3
350:15,21
409:20
**150** 245:18
**15th** 110:2,14
236:15
**16** 37:19 113:12
204:13 236:19
237:7,13,19
238:10 264:7
264:14 271:2
319:22 362:9
372:3,9 373:6
402:8 404:7,19
409:6
**161** 414:5
**167** 3:15
**16th** 37:17 110:3
110:15 187:3
204:15 292:23
346:14 367:15
**17** 29:2 80:2
272:2,24
380:22 401:16
**17-year-old** 80:5
80:12,13,21
**172** 3:16
**173** 222:8
**17th** 359:23
**18** 80:6,9 122:23
123:1 129:18
204:17 275:8

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 473

352:3,24 356:6
384:22
**18-year-old**
80:21
**180** 354:9,18
**181** 355:4
**184** 354:19
355:5
**18586** 285:1
**19** 167:24
394:14 406:13
**19-CV-02204**
1:5
**19-CV-2204**
4:15
**190** 167:15
**191** 167:24
**1981** 16:3
**1982** 16:6,17
17:24 23:9,10
24:7,20 25:20
266:22
**1986** 17:14
**1988** 23:16
**1990** 53:21
**1991** 17:20,24
23:10 24:7,20
25:20 29:1,6
29:12 34:1
35:6 40:12,15
41:23 42:16,18
43:8 53:14
54:6,7,13,18
55:3 110:3,15
151:7 175:10
175:11,12,14
175:22,23
176:8,17,21
177:15,24
178:3,8,11
179:5,18 180:4
180:5,18 181:4
181:9 196:3
204:16 224:9
228:8,14

229:11,21
231:18 232:16
236:15 242:15
265:5 292:6
293:8,16
295:23 296:23
297:14 301:7
322:3,12 344:3
346:5 349:3,7
349:20 350:3,7
350:15 355:1
359:23 362:17
364:1,23 365:2
366:22 370:1
378:7 380:1
383:6,17
390:19 391:8
391:14 401:16
403:14 404:4
405:19
**1992** 351:19,23
**1993** 167:14
**1997** 40:15
41:24 42:16,18
43:8,10 44:4
**19th** 2:8 403:14
**1st** 25:11

___
**2**
___
**2** 3:12 10:3,4
333:20 405:13
**2:00** 215:2
**2:01** 215:4
**2:13** 215:6
**2:30** 408:19
**2:52** 253:2
**20** 93:6,11 98:4
176:22 177:8
**2002** 266:23
**2004** 43:14 44:4
45:16 46:3,22
53:10
**2005** 53:10
**2006** 46:3,22
53:10

**2007** 47:2 51:9
65:6,16 69:18
73:4 75:9
76:19 77:1
82:6 87:10
88:23 92:11
94:24 95:7
96:11 153:3
**2010** 47:6 51:9
65:6,16 69:18
73:4 75:9
76:19 77:1
82:7 87:10
88:24 92:11
94:24 95:7,23
96:5,12 100:4
153:3
**2011** 101:16
**2012** 130:8
174:20 176:2
177:5,6 178:24
181:3,5 364:22
365:1 395:8
**2019** 8:17 9:2
16:14 220:12
**2021** 242:3
**2022** 1:15 4:18
414:1
**208** 405:10
**209** 405:11
**21** 304:2 311:23
405:10
**22** 323:12
353:16 356:6
**222** 356:5
**225** 356:6
**23** 154:10 328:1
**2330** 314:24
**243-5900** 2:4
**24th** 1:15 4:18
**26** 133:17
204:21 246:23
247:8 336:15
**284** 3:17
**2nd** 351:19,22

___
**3**
___
**3** 3:13 11:6 12:6
30:5 35:4
108:6 134:15
154:5 231:3
232:18 235:20
239:4 263:22
306:12,12
324:23 338:15
342:2 343:4
344:12 354:24
361:13 382:18
396:14 401:16
401:24 403:1
411:11
**3:00** 215:2
**3:05** 253:4
**3:45** 359:22
**30** 95:18 219:7
231:24 238:13
320:7,9
**30-second**
282:11
**30,000** 219:6,8
**3050** 414:5
**30th** 8:17
**311** 2:3
**312** 2:4,9
**32** 122:22
129:17
**333** 2:8
**340** 122:19
123:5,7,9
124:13,16,19
129:15 132:4
144:4
**340-person**
126:1
**35** 366:11
**351** 3:18
**354** 3:19
**368** 3:20
**37-page** 11:8
**38** 221:19 233:4

**39** 371:24
**3rd** 2:3 34:6
324:9 331:13

___
**4**
___
**4** 3:14 73:14
136:1,3 175:2
403:1
**4:00** 37:18
186:20 187:1
228:16 334:23
347:21 377:16
409:13,22
**4:15** 321:15
**4:29** 336:9
**4:30** 321:15
331:2,6 332:1
333:3 334:13
334:13 401:16
**4:43** 336:12
**40** 26:1 95:17,18
**405** 3:21
**41** 373:8,9
**42** 122:20
131:19,22
132:5 144:5
176:14
**43** 111:5,17
117:16 118:9
119:6 120:6
121:8
**43-or-so-odd**
121:4
**45** 378:5
**46** 380:2
**47** 391:17
**48** 52:24
**494-1000** 2:9

___
**5**
___
**5** 3:15 120:14
136:2 151:16
167:20,21
190:11 252:21
336:5,7 354:18

Anthony Jakes v. Kenneth Boudreau; et al.
Deposition of Craig Miller - Taken 5/24/2022

Page 474

355:5 359:23
359:24 405:14
407:16 411:10
**5:00** 59:5,5
333:3
**5:30** 59:6
**50** 352:19,23,23
**500** 73:14
**51st** 225:21
236:24 247:13
254:14 278:23
338:23 366:18
367:19 368:1,6
368:8,8,15
369:6,7,18
**57** 111:20

| 6 |
| --- |

**6** 3:4,16 172:16
284:18 287:4
287:17 305:18
**6-year-old** 92:18
**6:00** 411:10
**6:04** 411:13
**6:13** 411:15
412:6,11
**60** 95:15
**60601** 414:6
**60602** 4:8
**60604** 2:15
**60606** 2:9
**60607** 2:4
**630** 2:15
**6th** 414:1

| 7 |
| --- |

**7** 3:17 30:11
305:20 352:3
404:9 412:7
**735-3300** 2:15
**74** 351:24 352:3
**75** 352:3
**750** 362:5
**79** 405:20

| 8 |
| --- |

**8** 3:11,18 351:21
357:11
**82** 16:19 18:23
19:8 24:1 25:7
25:11,11 26:3
**84-004070** 413:3
414:4
**86** 19:8,9 23:21
23:22 24:12
**88** 23:23 24:11
24:13
**8th** 34:5

| 9 |
| --- |

**9** 3:19,22 167:23
354:14,16
**9-1-1** 286:20
**91** 16:19 18:23
23:22 24:1,13
24:14 25:8
26:3 53:18,21
**911** 19:2,10
**913** 175:2
**92** 266:22
**97** 45:16
**9th** 167:14 284:5
284:23 285:4,5
285:8