# Exhibit 20

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
HON. SARA L. ELLIS
DISTRICT JUDGE
MAGISTRATE JUDGE JEFFREY CUMMINGS
CASE NO. 19-CV-7286

ARNOLD DAY,
Plaintiff

V.

KENNETH BOUDREAU, ET AL.,
Defendants

DEPONENT: MICHAEL DUFFIN
DATE: JUNE 14, 2022
REPORTER: KORTNEY CHASE

Read and Sign Only





APPEARANCES

ON BEHALF OF THE PLAINTIFF, ARNOLD DAY:
Heather Lewis Donnell, Esquire
Loevy & Loevy
311 North Aberdeen Street
Third Floor
Chicago, Illinois 60607
Telephone No.: (312) 243-5900
E-mail: heather@loevy.com
(Appeared via videoconference)

ON BEHALF OF THE DEFENDANTS, KENNETH BOUDREAU, WILLIAM FOLEY, JUDE EVANS, MICHAEL KILL, DAN MCWEENY, JAMES BRENNAN, ANTHONY WATSON AND MARTY RADTKE:
Brittany D. Johnson-Delgado, Esquire
Rock, Fusco & Connolly
333 West Wacker Drive
Nineteenth Floor
Chicago, Illinois 60606
Telephone No.: (312) 494-1000
E-mail: bjohnson@rfclaw.com
(Appeared via videoconference)

Read and Sign Only





APPEARANCES (CONTINUED)

ON BEHALF OF THE DEFENDANT, CITY OF CHICAGO:
George Yamin, Esquire
The Sotos Law Firm, P.C.
141 West Jackson Boulevard
Number 1240A
Chicago, Illinois 60604
Telephone No.: (630) 735-3300
E-mail: gyamin@jsotoslaw.com
(Appeared via videoconference)

Read and Sign Only





INDEX

| | Page |
|---|---|
| PROCEEDINGS | 6 |
| DIRECT EXAMINATION BY MS. DONNELL | 7 |
| CROSS EXAMINATION BY MS. JOHNSON-DELGADO | 48 |

EXHIBITS

| Exhibit | Page |
|---|---|
| *1 - Michael Duffin's GPR | 17 |
| *2 - Handwritten GPR | 24 |
| *3 - Supplementary Report from Jerrod Erving's Murder | 27 |
| *4 - Chicago Police Department Report Prepared by Officer Watson and Officer Radtke | 41 |

*Will forward upon receipt.

Read and Sign Only

STIPULATION

The VIDEO deposition of MICHAEL DUFFIN was taken at KENTUCKIANA REPORTERS, 30 SOUTH WACKER DRIVE, 22ND FLOOR, CHICAGO, ILLINOIS 60606, via videoconference in which all participants attended remotely, on TUESDAY the 14TH day of JUNE, 2022 at 01:09 p.m.; said deposition was taken pursuant to the FEDERAL Rules of Civil Procedure. The oath in this matter was sworn remotely pursuant to FRCP 30.

It is agreed that KORTNEY CHASE, being a Notary Public and Court Reporter for the State of ILLINOIS, may swear the witness and that the reading and signing of the completed transcript by the witness is not waived.

Read and Sign Only





PROCEEDINGS

COURT REPORTER: We're now on the record. My name is Kortney Chase. I'm the online video technician and court reporter today representing Kentuckiana Court Reporters, located at 30 South Wacker Drive 22nd Floor, Chicago, Illinois, 60606. Today is the 14th day of June 2022, and the time is 1:09 p.m. We are convened by video conference to take the deposition of Michael Duffin in the matter of Arnold Day vs Kenneth Boudreau et al, pending in the United States District Court for the Northern District of Illinois Eastern Division, case number 19CV7286. Will everyone, but the witness, please state your appearance, how you are attending and your location, starting with Plaintiff's Counsel.

MS. DONNELL: Good afternoon. Heather Lewis Donnell, I'm appearing via Zoom from our office at 311 North Aberdeen, Chicago, Illinois.

MR. YAMIN: George Yamin on behalf of Defendant City of Chicago. I'm appearing at the Rock, Fusco, Connolly office.

MS. JOHNSON-DELGADO: Brittany Johnson-Delgado appearing at Rock, Fusco, and Connolly offices on behalf of individual defendants in this case.

Read and Sign Only





COURT REPORTER: Mr. Duffin, will you please state your full name for the record?
THE WITNESS: Michael Duffin.
COURT REPORTER: And do all parties agree that the witnesses is in fact, Michael Duffin?
MS. DONNELL: Plaintiff --
MR. YAMIN: Sure do.
MS. DONNELL: Plaintiff will agree.
MS. JOHNSON-DELGADO: Agreed.
COURT REPORTER: Mr. Duffin -- thank you. Mr. Duffin, will you please raise your right hand. Do you solemnly swear or affirm that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?
THE WITNESS: Yes.
COURT REPORTER: Thank you. You may begin.

DIRECT EXAMINATION

BY MS. DONNELL:
**Q Good afternoon, sir. Can you please state and spell your name for the record?**
A Michael Duffin, M-I-C-H-A-E-L D-U-F-F-I-N.
**Q And Mr. Duffin, you don't have to give your specific location, but can you please say where you're appearing from today?**
A I'm in Oak Forest, Illinois.

Read and Sign Only





**Q Okay. And because you're appearing via Zoom, can you tell me, do you just have the device -- electronic device open that you're appearing on the Zoom for, or do you have any other computers or phones with you as well?**
A I have a computer, but it's -- I'm -- you're on my iPhone.
**Q Okay. I'm going to -- what's -- is there anything on your computer or you just have it there by you?**
A Just by me. No, there's nothing on there.
**Q Okay. I'm going to just ask that you don't look at any documents, or information, or e-mail on your computer while we're deposing you on your iPhone, okay?**
A Sure.
**Q And that you also refrain from looking at your cellular device as well, okay?**
A Okay.
**Q Okay. And do you have any documents with you pertaining to this case?**
A I have the GPR that was e-mailed to me.
**Q Okay. So you don't have any -- is that a one-page document or more than one page document that you have in front of you?**
A It's a one-page document.

Read and Sign Only

Q Okay. Other than a one-page GPR that's in -- that your Counsel mailed to you, do you have any other papers, or notes, or documents in front of you?
A No.
Q Okay. Other than the GPR that you have in front of you, have you looked at any other documents or testimony to prepare for today?
A No.
Q Okay. Okay. Sir, do you, as you sit here today, have an actual memory of any of your involvement in -- or participation in the homicide investigation of a Jerrod Erving back in May 1991?
A No.
Q And after you reviewed the GPR that you have in front of you, did it refresh your recollection in any way?
A No.
Q Okay. I'm going to ask you a few background questions, but I anticipate this will be a fairly short deposition, okay?
A Okay.
Q And then have you been deposed over Zoom before, like in this kind of format?
A No, I don't think so. Not that I recall.
Q Okay. The only -- have you been deposed in

Read and Sign Only





person before?
A Yes.
Q Okay. The one main difference is that sometimes it's a little hard to hear where there might be some technology. If there's ever a glitch and you don't hear one of my questions, will you please just let me know?
A Sure.
Q Okay. And also, I think you're doing a great job so far, but can you just do your best not to talk over me and wait until I've completed my entire question before you start answering so Kortney can get a good record, okay?
A Okay.
Q Okay. Sir, when did you become a sworn police officer with the Chicago Police Department?
A February 5, 1968.
Q How long -- well, when did you retire from the Chicago Police Department?
A I think it was May of 2001.
Q Okay. Will you walk me through your ranks and assignments from February 5, 1968 to May 2001.
A First assignment was the 11th District. And then I was in the Area 4 task force. And then I was in the 2nd District. And then I was in the 6th District.

Read and Sign Only





And then I was in the 1st District. And then I made detective and went to Area 3 robbery for three years. And then I went to violent crimes for the remainder of -- in 1992 I left Area 3 and went to Area 4 violent crimes.
Q And did you retire from -- as a detective from Area 4 violent crimes?
A Yes.
Q Did you get transferred from Area 3 to Area 4 when they shut down Area 3?
A Yes.
Q And that was in October 1993 or thereabouts?
A I think it was '92.
Q I'm sorry, October '92. Got it. Okay. Did you retire with the rank of detective?
A Yes.
Q Did you ever work with any other law enforcement agency other than the Chicago Police Department?
A No.
Q And in May 1991 you were assigned as a detective in violent crimes to Area 3; is that right?
A Yes.
Q Did you have a regular partner at that time?
A Yes.

Read and Sign Only





Q Who was that?
A Thomas Ptak.
Q Thomas -- I'm sorry, who?
A Ptak, P-T-A-K.
Q P-E-T --
A No, there's no E, it's P-T-A-K.
Q Oh, Ptak, sorry. How long were you and Detective Ptak regular partners?
A 15 years.
Q Do you know when you started working with Officer Ptak?
A January of -- let's see, '78. I think it was 1980.
Q When did you make detective? I'm sorry, I forgot to ask you that.
A April 1978.
Q Was there a formal classroom education when you got promoted to detective in 1978?
A Yes.
Q How long was the detective training?
A I think it was a month.
Q And CPD conducted it internally; is that right?
A Yes.
Q Did -- okay. So you made detective in 1978.

Read and Sign Only

And where was your first assignment? You said it was robberies in Area 3?
A Yes.
Q Was Detective Ptak with you in robberies in Area 3?
A No.
Q Okay. And then you became a violent crime detective in Area 3, that's right?
A Yes.
Q And then sometime around January 1980 you --
A It might have been '80 or '81, I'm not sure.
Q Okay. '80 or '81 you became regular partners with Detective Ptak?
A Yes.
Q Did you request to work with him?
A Yes.
Q Okay. Had he also been at Area 3?
A Yes.
Q Was he also in violent crimes with you?
A Yes.
Q And he'd also -- had he also been in robbery -- I'm sorry, in robberies -- working robberies with you?
A No, he was in homicides.
Q Okay. Okay. So in the time frame of the

Read and Sign Only





Jerrod Erving homicide, which was in May 1991, you and Detective Ptak had already been partners -- regular partners for some time; is that right?
A Yes.
Q Okay. Would you know what -- or do you remember as you sit here today what shift you and your partner were working back in -- were assigned to work back in May 1991?
A Well, the -- the GPR says third watch, which would've been the third shift, which would've been 4:00 to 12:00, somewhere there. 4:30 to 12:30, something like that.
Q 4:30 p.m. to 12:30 a.m.?
A p.m.
Q I'm sorry, what hours did you think you were working?
A Around 4:00 p.m. to 12:00 a.m.
Q Okay. Do you know if back in May of 1991 detectives at Area 3 were working all three shifts?
A Say that again.
Q Back in May -- if you recall, do you remember if back in May 1991, the detectives assigned to Area 3, were they working all three shifts?
A Yes.
MS. JOHNSON-DELGADO: Objection. Form and

Read and Sign Only





foundation.
Q Do you remember the other detectives who were working third shift with you back in May 1991?
A No.
Q Okay. Did you ever regularly work with the same shift with Detective Ken Boudreau?
A No.
MR. YAMIN: Objection to the form.
Q How about John Halloran?
MR. YAMIN: How -- what do you mean, how about him?
Q Did you also -- sorry. Did you -- thank you, George. Did you ever work the same shift at Area 3 with John Halloran?
A No.
Q Did you ever work the same shift at Area 3 with Detective Foley?
A No.
Q How about Detective McWeeny?
A No.
Q Detective Kill.
A When you say worked the same shift, you mean --
Q Assigned to work the same shift, like the same --

Read and Sign Only





A Well, I -- I -- I -- let me -- can you rephrase those questions? I -- they weren't my partner. They might have been on the same shift, but they were not my partners.
Q Thank you. Okay, I'll re-ask the questions. I wasn't -- I understand your regular partner was Thomas -- Detective Thomas Ptak, right?
A Yes.
Q So I was just asking if you remember the other detectives who were assigned to work the same shift as you?
A No.
Q Not whether they were your regular partner.
A No.
Q Okay. Do -- is that -- is that true, did you work -- were you assigned to work the same shift at Area 3 that Detective Boudreau worked back in the early '90s?
A I don't remember.
Q Okay. How about with respect to Detective Foley? Did you work the same shift as Detective Foley, if you recall?
A I don't recall.
Q Okay. How about Detective Dan McWeeny? Do you know Detective Dan McWeeny?

Read and Sign Only

A I know Dan McWeeny, yeah.
Q Did you -- were you ever assigned to work as a partner with Dan McWeeny?
A No.
Q And did you ever work the same shift as Dan McWeeny when you were both assigned to Area 3?
A I don't recall.
Q Okay. Do you have an estimate of how many homicide investigations you worked on over the course of your career as a detective with the Chicago Police Department?
A Probably 1,000.
Q Okay. I'm going to have you -- I'm going to mark as Exhibit 1, City Day 107. I think that's the document you probably have in front of you, although it might have a different Bates stamp at the bottom. But -- and I actually -- I'm going to show you the document that I have to make sure it's -- or why don't you show me the document you have, I'll make sure it's the same one.
(EXHIBIT 1 MARKED FOR IDENTIFICATION)
A Can you see it?
Q Yeah, just hold it up to the camera. Does it have your signature at the bottom?
A Yes.





Q Okay. And does it have your star number, 13586, I believe?
A It's 13596.
Q Oh, 96, I'm sorry. Okay. Well, this is a good way to anticipate my next question. Would you please read -- well, first of all, you recognize Exhibit 1, that's your handwriting on the GPR; is that right?
A Yes.
Q Okay. And you dated the date at the top -- well, you were familiar with how to fill out a General Progress Reports or GPRs back in May 1991, right?
A Yes.
Q And they'd been in existence for some time, is that right?
MR. YAMIN: Objection, form, foundation.
MS. JOHNSON-DELGADO: Join.
Q You can answer, sir.
A I don't know when they started using GPRs, you know.
Q When you -- when you first became a detective there weren't GPRs though, right?
A That's correct.
Q Okay. And so GPRs came into effect probably in 1982, if -- after some litigation on street files,





right?
MR. YAMIN: Objection, form, foundation. Calls for speculation. You can answer to the best of your ability.
A I don't remember when they started using them.
BY MS. DONNELL:
Q Okay. When you first became a detective though, there were not a GPR format, correct?
MR. YAMIN: Objection, asked and answered.
A Sorry.
Q Okay. Before GPRs, what was your practice with respect to taking -- well, no -- well, strike that. Did you have a notebook that you took notes in prior to GPRs being constituted by the Chicago Police Department?
MR. YAMIN: Objection, form, foundation.
MS. JOHNSON-DELGADO: Join.
Q You can answer, sir.
A I didn't have a notebook. We just used pieces of paper and that was about it, whatever -- whatever paper we had handy and then put it in a file. They referred to it as a street file.
Q Do they refer to as a running file at Area 3?
A Maybe. Yeah. They might've called it a running file or a street file. You know, I don't know. I don't remember. One or the other, or maybe both.





Q So in 1991 -- or in the spring of 1991, did Area 3 still keep running files at the area?
A I don't remember.
Q Okay. Can you read for us your handwriting on Exhibit 1?
A M Duffin.
Q I'm sorry, can you -- the whole GPR is your handwriting, correct? Other than the supervisor signature block?
A That actually is my partner's signature. It's not a supervisor, but --
Q Oh, sorry. Thank you. So the -- under the supervisor signature, that's actually your partner, Detective Pax [sic]?
A Yeah.
Q And that was his star number, 6029?
A 6029. Yeah.
Q Okay. Okay. But the body -- the narrative on the GPR, is that your handwriting?
A Yes.
Q Okay. Can you read it for me?
A Krona --
MR. YAMIN: You want him --
THE WITNESS: I'm sorry. Go ahead.
MR. YAMIN: The entire content of the GPR?



Read and Sign Only

MS. DONNELL: Yes, I do. I want him to read his handwriting. Thank you.
MR. YAMIN: Go ahead, please.
THE WITNESS: "Krona, offender had their hats pulled down. Couldn't get a look at their faces. Heard the conversation. Admits that she provided description in original report. Reported description, but didn't see their faces. Told us that Jacko Johnson, 909 West 54th Street was leaning on a car and the two offenders walked past him. Spoke with Jacko's mother at 909 West 54th Street, phone number, 373-7006. She said Jacko was out in front of the house with his cousin, Mitchell Westin and Mitchell's wife and child. Mitchell's wife is -- name is, might be Sabrina. Jacko might work at a liquor store. He has a maroon car. Jacko told Krona that one of the offenders had gold writing on the back of his Bulls jacket."
BY MS. DONNELL:
**Q Okay. And up at the top, the date of this report is May 17, 1991 third watch; is that right?**
A Yes.
**Q Okay. And do you have any memory of filling out Exhibit 1, this GPR?**
A No.





**Q Okay. Do you have any memory as you sit here today to talking to Krona Taylor?**
A No.
**Q Do you know who that is?**
A No.
**Q Okay. How about Jacko's mother? Do you have any memory of speaking to Jacko's mother?**
A No.
**Q Okay. Does this GPR indicate that you called Jacko's mother?**
A From reading, it appears that I spoke with her. It doesn't -- I don't know if I called her or interviewed her in person. It -- it appears that I interviewed her in person from what I'm reading.
**Q Do you know where you were when you interviewed Krona Taylor?**
A No.
MR. YAMIN: Objection to form.
**Q Does your GPR indicate the location?**
A No.
**Q Okay. Did you bring GPR pads or sheets of GPRs out with you out on the street?**
A Yes.
MR. YAMIN: Form.
**Q Okay. Is there any way for us to tell from**





**the face of this GPR where you were when you filled it out?**
MR. YAMIN: Objection, asked and answered. You can answer it, please.
A No.
**Q And is there any way to tell from this form where you were when you spoke to Krona Taylor?**
A No.
**Q Is there any way to tell from this form where you spoke to Jacko's mother?**
A From reading -- what I read here, it appears that I spoke to her at 909 West 54th Street. Well, it says I spoke to her at 909 West 54th Street.
**Q Okay. So does that indicate to you that you went out and spoke to her at that address?**
A Yes.
**Q Okay. And as you sit here, do you know who Jacko Johnson is?**
A No.
MR. YAMIN: Object to form.
**Q Do you know the name of Jacko's mother?**
A No. It doesn't say it in this GPR. I don't see it.
**Q Okay. Did you answer the question?**
A Oh, what -- you asked me if I knew the name of





Jacko's mother?
**Q Yeah.**
A I said no, no.
MR. YAMIN: I don't think that was the question.
THE WITNESS: Oh, what was the question?
MS. DONNELL: That was the question, George.
MR. YAMIN: I don't -- I think the court reporter is better able to tell.
BY MS. DONNELL:
**Q Okay. I'm going to show you what I've designated as Exhibit 2 to your deposition and I'm going to share my screen to show it to you. Okay? Okay. I'm showing you, now, what I've designated as Exhibit 2 to your deposition. Can you see it on your phone screen? It has a Bates stamp of City Day 108.**
(EXHIBIT 2 MARKED FOR IDENTIFICATION)
A You want me to look at that?
**Q Can you see it okay on your screen?**
A Yeah, let me enlarge it. Yeah.
**Q Okay. I'll give you a chance to look at it and I can scroll whenever you tell me you need me to scroll.**
A I don't know what this is.
**Q That's all right. I'm just asking you to look**



Read and Sign Only

at it and see if you --
A Okay.
Q Just look at it first and I'm going to ask you a question.
A Okay.
Q Okay. Is -- so this -- I'll just represent you that The City produced this as part of the investigative file and it's the page after your GPR we just looked at, Exhibit 1. And I wanted to ask you if you recognize any of this handwriting on the handwritten page, that was produced just subsequent -- just after your GPR?
A No.
Q None of this is your writing?
A I don't know.
Q Are you -- you're saying -- your testimony is that you can't tell me one way or the other whether any of the --
A Yeah. I don't -- yeah. Yes.
Q I'm sorry. Just so the record's clear, you -- it's your testimony that, after looking at what I've designated as Exhibit 2 to your deposition, you're unable to tell me one way or the other whether any of this is your handwriting?
A Yes.





Q Okay. Do you recognize the signature at the bottom of the page that I'm enlarging?
A Yes.
Q Well, whose signature is that?
A Fred Bonki (phonetic).
Q And that was -- he was a sergeant at Area 3 in the detective unit?
A Yes.
Q And did you work under Sergeant Bonkie when you were at Area 3 from -- on occasion?
A On occasion. Yes.
Q Okay. Do you know what shift he was the Sergeant of in May of 1991?
A No.
MS. DELGADO-JOHNSON: Object to foundation.
Q Do you have any understanding about how you came to be involved in the homicide investigation of Jerrod Erving on May 17, 1991?
A No.
MR. YAMIN: Objection, form foundation.
MS. DELGADO-JOHNSON: Join.
Q You can answer, sir.
A No. I answered no. I don't know if you heard me.
Q I did. I'm sorry. Thank you. I'm just





pulling up another document for you. Have seen any supplementary reports pertaining to the Jerrod Erving homicide investigation to prepare for your deposition today?
A No.
MR. YAMIN: Objection to form.
Q Okay. I'm going to share -- I want to share my screen and show you what I'm designating as Exhibit 3 to your deposition, okay?
(EXHIBIT 3 MARKED FOR IDENTIFICATION)
A Yeah.
Q Okay. So I'm marking as Exhibit 3 to your deposition the GPR that's dated May 17, 1991.
MR. YAMIN: That's not a GPR.
Q I'm sorry. Thank you, George. Thank you. I'm sorry. I'm showing you -- I've designated as Exhibit 3 to your deposition, the May 17, 1991 supplementary report prepared by Detective Dan McWeeny and James Brennan in the Jerrod Erving homicide investigation. And it's Bates stamped City Day 62 consecutive through 65. And I'm going to show -- you can look at as much of this document as you'd like, because as I understand it, you've never seen this document -- or not recently, right?
A Right.





Q Okay. So I'm just going to scroll through, but you recognize this as the front page of a Chicago Police Department supplementary report?
A Yes.
Q And you see here on page one that it's for the victim, Jerrod Erving, a black male of 16 years old.
A Yes.
Q And that at this time there was two unknown suspects, correct?
A Yes.
Q And then down here, there is some information about the location of and the circumstances pertaining to the homicide of Mr. Erving, correct?
A Yes.
Q Do you know if you went out to the scene 927 West 54th Street?
A I don't know.
Q Meaning you may have, or you may not have, you just don't recall either way?
A Yes.
MR. YAMIN: Object to form.
MS. DELGADO-JOHNSON: And foundation.
Q Do you see here on the -- on this supplementary report on the personnel assigned from the -- there were some patrol officers and then there was



Read and Sign Only

**some gang south specialists assigned and then there were three detectives assigned, Detective Brennan, McWeeny -- I'm sorry. Yeah. Detective Brennan and McWeeny. Do you see that?**

A Yes.

MS. DELGADO-JOHNSON: Object to form and foundation.

**Q Does the fact that your name is not here indicate that you were not out at the scene?**

MR. YAMIN: Objection --

A Yeah.

MR. YAMIN: Well, excuse me, sir. A form, foundation, calls for speculation.

**Q You can answer, sir.**

A Oh, I have no knowledge of if I was there or not. I don't remember anything about it.

**Q But was it the practice of the Chicago Police Department that if any detectives went out to a homicide scene that whoever wrote up the sup reports would indicate all the personnel who appeared on the scene?**

MR. YAMIN: Objection, form, foundation, calls for speculation.

MS. DELGADO-JOHNSON: Incomplete hypothetical.

MR. YAMIN: You can answer, Mr. Duffin.

THE WITNESS: Yes.





BY MS. DONNELL:

**Q Okay. You hear -- see here though that the witness was -- that one of the witnesses listed was Krona Taylor. Do you see that?**

A Yes.

**Q Okay. Do you know who assigned you to go talk to Krona Taylor on May 17, 1991?**

A No.

MR. YAMIN: Objection, foundation.

THE WITNESS: Sorry.

MR. YAMIN: That's okay. Thank you.

BY MS. DONNELL:

**Q Was your answer no, Mr. Duffin?**

A Yes.

**Q Okay. And that's because you just don't have a recollection as you sit here today of who assigned you to do that?**

A Yes.

MS. DELGADO-JOHNSON: Object to form.

**Q You see here there's a short -- I'm going to call your attention. Can you read on the screen, there's a portion of the supplementary report that indicates information obtained from Miss Krona Taylor. Do you see that?**

A Yes.





**Q I'm going to give you the opportunity to review that paragraph. So just let me know when you had an opportunity to review it. Okay, sir?**

A Okay. I read it.

**Q Okay. Does reviewing what I've designated Exhibit 3, this portion that pertains to Krona Taylor, refresh your recollection in any way of your interaction and -- with Ms. Taylor on May 17, 1991?**

A No.

**Q Is it fair to say that you spoke to Ms. Taylor after she was initially spoken to on the scene, if you were not at the scene?**

MR. YAMIN: Objection. Form, foundation. Calls for speculation.

**Q You can answer.**

A Well, just from reading the GPR, it appears that way.

**Q And why is that? Because of the timing of your GPR?**

A I don't know. Does it have the date and time of occurrence? Let me go scroll down.

**Q Sure.**

A So this happened on -- well, it's going by so fast. Let me see here.

**Q Yeah, I'll show you. It says, "Day, date, and**





**time is Friday, May 17, 1991, at 0005 hours."**

A Okay. So this would occurred on the midnight shift, and I was working -- what -- when did this occur? On the 16th or -- no. I -- I was working the third watch, and this occurred on the first watch.

**Q Okay. So based on the timing of the incident and the timing of your GPR, it's fair to say you would have spoken to Ms. Taylor sometime after folks spoke to her at the scene, right?**

A Yes.

MR. YAMIN: Objection. Form, foundation.

MS. JOHNSON-DELGADO: Join.

**Q And I know you --**

MR. YAMIN: Calls for speculation.

**Q -- I know you don't recall your interview of Ms. Taylor, but is it -- would it have been your practice to find out what information she had provided to any detectives or officers before you went to go speak with her to follow up?**

MR. YAMIN: Objection. Form, foundation. Calls for speculation.

**Q You can answer, sir.**

A Yes.

**Q And that's because that would have been good detective work? You would want to know what your fellow**



Read and Sign Only

detectives had learned from a witness before you were going to find out any follow-up information, right?
MR. YAMIN: Objections. Form, foundation.
MS. JOHNSON-DELGADO: Calls for speculation.
Q You can answer, sir.
A Yes.
Q And it -- is it also fair to say that you would rely on your fellow detectives to convey to you any of the information that was pertinent to the investigation that this witness had provided, if you were going to go speak to the witness a subsequent time, right?
MR. YAMIN: Same objection.
MS. JOHNSON-DELGADO: Join.
A Well, I mean, these two detectives were working midnights, so I -- what I had was probably a copy of their report, at the most. And that's if they did the report right away, you know, so I don't know. I would just be guessing, you know. I -- I -- I may not have even spoken to them because they were -- I was two shifts apart from them.
Q Their report -- I'm showing you page 1 of Exhibit 3 of their report. It's dated May 17, 1991 at 9:00 a.m.
A Oh, okay.





Q That means that the report would've been completed before your shift, correct?
A Yes. Yes.
MS. JOHNSON-DELGADO: Object to form and foundation.
MR. YAMIN: Yeah, same objections.
Q Sir, can you answer again? I'm sorry.
A Well, I mean I -- I may have had a copy of this report. I don't know. I mean, I don't know if I spoke to these two detective because there was eight hours' difference between my shifts and theirs.
Q Is it fair to say that whether the -- whether you spoke directly to Detective Dan McWeeny and Detective James Brennan, before you had their report, somehow you would've been -- received information about why you were going out to talk to this witness, right?
A Yes.
MR. YAMIN: Object to form, foundation. Calls for speculation. Incomplete hypothetical and mischaracterizes testimony.
MS. JOHNSON-DELGADO: Join.
Q Sir, as a homicide detective, you would want to know why you were going to talk to a certain witness before you talked to the witness, right?
MS. JOHNSON-DELGADO: Object to --





MR. YAMIN: Same -- go ahead.
MS. JOHNSON-DELGADO: Object to form, foundation. Calls for speculation. Also incomplete hypothetical.
THE WITNESS: Yes.
BY MS. DONNELL:
Q Sir, you can answer.
A Yes.
Q For example, you'd want to know whether they're a witness or a possible suspect, right?
A Yes.
MS. JOHNSON-DELGADO: Object to form and foundation.
Q You would want to know if they were giving consistent or inconsistent information from the first information they provided, right?
MS. JOHNSON-DELGADO: Object to form, foundation. Calls for speculation. It's an incomplete hypothetical.
MR. YAMIN: Join those objections.
BY MS. DONNELL:
Q Sir, you can answer.
A Yes.
Q Okay.
COURT REPORTER: Mr. Duffin? I'm sorry. Do





you mind putting your phone upright? Thank you.
Q Sir, you -- did you -- do you have any memory of driving Ms. Krona Taylor around the neighborhood to see if she could identify the suspects?
A No.
MS. JOHNSON-DELGADO: Form and foundation.
MR. YAMIN: Join.
MS. DONNELL: Is that -- go ahead, George.
MR. YAMIN: We'll leave it at that. We'll join those.
BY MS. DONNELL:
Q Okay. Back when you were a homicide detective, did you -- was that something you ever did, had a witness in your police vehicle or unmarked vehicle and drove them around a geographic area to see if they could identify an assailant?
MS. JOHNSON-DELGADO: Object to form, foundation. Calls for speculation. Incomplete hypothetical.
MR. YAMIN: Join those.
A Yes.
BY MS. DONNELL:
Q Okay. Was that something you did, or you recall doing -- I'll strike that. Do you have any memory of how often you did that, as you sit here today?



Read and Sign Only

MR. YAMIN: Objection. Form. Foundation.
MS. JOHNSON-DELGADO: Join.
A No.
**Q But was it -- was it -- would it be something you would do with some regularity, if it was -- if it seemed like a relevant investigatory step to take?**
MR. YAMIN: Same objections.
MS. JOHNSON-DELGADO: Join.
A Yes.
**Q Okay. Did you conduct line-ups back when you were a detective assigned to Area 3 violent crimes in the 19 -- early 1990s?**
MR. YAMIN: Objection. Form. Foundation.
MS. JOHNSON-DELGADO: Join.
A Yes.
**Q Okay. Did you do line-ups at the Area?**
A Sometimes.
**Q Did you also do them down at State Street, at the main headquarters?**
A No.
**Q Where else did you do them?**
A Could've been in the district station or could've been Area 1.
**Q If -- well, did you do -- conduct any line-ups in the Jarrod Erving homicide investigation?**





A I don't recall.
MR. YAMIN: Object to form, foundation.
**Q If you did, would there be paperwork documenting it?**
MR. YAMIN: Same objections.
MS. JOHNSON-DELGADO: Join.
MR. YAMIN: Calls for speculation.
THE WITNESS: Yes.
BY MS. DONNELL:
**Q Thank you. Let's see. Let me show you -- well, let me show you -- I'm going to show you the GPR again and see if it refreshes your recollection. Hold on one second. Okay. I'm showing you -- can you see page 1 of Exhibit 3, where it has two unknown suspects listed?**
A Yes.
**Q And -- okay. Does that refresh your recollection in any way of the information you were trying to get from Ms. Krona Taylor?**
A No.
MR. YAMIN: Objection. Excuse me. Form. Foundation.
MS. JOHNSON-DELGADO: Join.
MS. DONNELL: Okay. Put that one down, again. I want to show to another document. Go ahead and -





- you know, let me just take a break because I have to e-mail it to you. So we could just take, like, a two-minute break, or you can hold and wait. Whatever you want.
THE WITNESS: Yeah, I'll just hold.
MS. DONNELL: Okay. Just hold on one second.
THE WITNESS: So you're e-mailing me a document?
MS. DONNELL: No, I'm going to show it to you on my screen, but I have to e-mail it to your Counsel. So just give me one second. Okay. You guys should have it. Sorry for that. I thought I had it in the folder already.
MS. JOHNSON-DELGADO: It's not up on the computer.
MR. YAMIN: Right.
MS. DONNELL: What's that? Oh, I'll just -- oh, sorry. Then I'll just share it.
MS. JOHNSON-DELGADO: Yeah, I haven't gotten the e-mail yet, but I'm waiting.
MS. DONNELL: Okay. I think it twisted it around. That's not good.
MS. JOHNSON-DELGADO: I can't -- I can't see what's on the screen, so just let me know which one it is.





MR. YAMIN: It's -- no, it's --
MS. JOHNSON-DELGADO: Oh, here it is. I got it. I just got it.
MS. DONNELL: You got it, but it's, like, rotated. So it's kind of weird. That's odd. Sorry, Mr. Duffin. It's going to take me just a moment to rotate it. I don't know why it's not -- does anybody know how these things rotate on Adobe?
MS. JOHNSON-DELGADO: I think there's a view button.
MS. DONNELL: Yeah. I'm not seeing it.
MS. JOHNSON-DELGADO: And that's the only thing I can use. This is -- this is just -- okay. Hold on. Let me look. Oh, this is just Watson's report, right?
MS. DONNELL: Yeah.
MS. JOHNSON-DELGADO: Oh, okay.
MS. DONNELL: I just want to flip it, but I don't know why it -- when I saved it, it flipped it around. Oh. Hmm. You guys can -- Kortney, do you know how to flip it around?
COURT REPORTER: I do not, not on Adobe.
MS. DONNELL: I'm so sorry, Mr. Duffin. Just one second.
MS. JOHNSON-DELGADO: (Inaudible) button or



Read and Sign Only

something like a -- it'll -- that'll just easily rotate the view.
MS. DONNELL: Yeah. Usually, I can do it, but for some reason it wasn't --
MS. JOHNSON-DELGADO: That's weird.
MR. YAMIN: Yeah.
MS. DONNELL: I can do it.
COURT REPORTER: Do we want to go off the record while we figure this out?
MS. DONNELL: Yeah, just go off the record. That's fine. I'm so sorry.
COURT REPORTER: Okay. We're off the record at 1:51 p.m.
(OFF THE RECORD)
COURT REPORTER: We are back on the record for the deposition of Michael Duffin being conducted by video conference. My name is Kortney Chase. Today is January -- June 14, 2022, and the time is 1:53 p.m.
BY MS. DONNELL:
**Q Okay. Mr. Duffin, I'm showing you what I've designated as Exhibit 4 to your deposition. It has a Bates stamp City Day 5 and 6, and it is a Chicago Police Department report that was prepared by Officer Watson and Radtke in the Jerrod Erving homicide. I -- have you**

Read and Sign Only





**seen this document before?**
(EXHIBIT 4 MARKED FOR IDENTIFICATION)
A No. I mean, I don't remember seeing it.
**Q Okay. Don't remember seeing it. I'm going to let you scroll through it, so you get a chance to look at it, and then I'll ask you a few questions. Okay?**
A Okay.
**Q You just let me know when you're ready for me to scroll.**
A Okay. I'm ready.
**Q Okay. Also, did you read here the descriptions of offender name and/or describe clothing, et cetera, box?**
A Yes.
**Q Okay. Do you want me to scroll?**
A I don't know. What do you want me to do? I don't recognize that --
**Q I'm having you just read the narrative, I think. Can you read the narrative, sir?**
A Yeah.
**Q Let know when you're for me to scroll to the next page.**
A Okay. I'm ready. Okay.
**Q Okay. Do you see here that there's two witnesses listed on the report? One is Krona Taylor,**

Read and Sign Only





**and the other is Brian Gaston.**
A I don't see where that's at. The --
**Q Can you see over on the -- it's box number 31, I believe.**
A Where?
**Q Over on the left-hand side. So there's the victim's name in box number --**
A Oh yeah. Yes, yes. I see it now. Yeah.
**Q Okay. And then you see that there's two witnesses listed, Krona Taylor and Brian Gaston?**
A Yes.
**Q Okay. And then you read in the narrative -- and Krona Taylor was listed as witness 1, right?**
A Yes.
**Q And that -- there's a narrative included that "witness 1 stated to the ROs that above date and time, the above offenders walked past her"?**
A Yes.
**Q "Shook the victim's hand while he was sitting on the steps in front of the above location. Offender said --"**
A Yes.
**Q -- "to victim, 'Did you have any money? Any work here?' Victim replied, 'I don't work over here.' At this time, witness 1 related to reporting officers**

Read and Sign Only





**that she heard two shots. Witness 1 discovered victim lying face up on front steps." Do you see that?**
A Yes.
**Q Okay. And then there's a -- descriptions of the offenders in the box. "One has a dark baseball hat, red silk Bulls starter jacket with white lettering on front, and then the other has dark baseball cap, black silk starter jacket." Right?**
A Yes.
**Q And it's listed as "a male, a Black male, 16 to 20 years old, 5'3" to 5'6", medium weight, complex -- complexion dark, unknown hair color, and unknown eye color." Right?**
A Yes.
**Q And then the other offender is "a male, Black male, 16 to 20, 5'3" to 5'6", medium weight, unknown eyes, unknown hair, and a dark complexion." Right?**
A Yes.
**Q Okay. Does looking at what I've marked as Exhibit 4 refresh your recollection to any of your interactions with Ms. Taylor?**
A No.
**Q Does it refresh your recollection about why you were going out to talk to Ms. Taylor on the third watch on May 17, 1991?**

Read and Sign Only

MR. YAMIN: Objection. That mischaracterizes his testimony. It -- witness never said he went out to be -- to interview Krona Taylor.
BY MS. DONNELL:
**Q Okay. Thanks, George. I'll clarify. Does it refresh your recollection, sir, as to why you were speaking to Ms. Taylor on May 17, 1991?**
A No.
**Q Your GPR indicates -- words to the -- words to the effect that Ms. Taylor admitted that she'd given a description, but she hadn't seen their faces. Do you see that part of your GPR?**
A Yeah.
**Q Do you know -- you -- I guess you wrote, "Admits that she provided description in original report. Repeated the descriptions, but didn't see their," -- or report -- is that repeated their descriptions, but didn't see their faces?**
A Yes.
**Q Okay. You didn't include in here the descriptions that she repeated, did you?**
A No.
**Q Why not?**
A I --
MS. JOHNSON-DELGADO: Object to form and

Read and Sign Only





foundation.
MR. YAMIN: It calls for speculation.
A Would've been redundant.
BY MS. DONNELL:
**Q Okay. But as you sit here today, you have no idea what description she provided to you, correct?**
MS. JOHNSON-DELGADO: Object to --
A Correct.
**Q I'm sorry, I couldn't hear your answer.**
A I don't any recollection of this at all, period. Just -- all I know is from what I'm reading here on the GPR.
**Q Okay. I think I asked you this already, but is that your partner's signature at the bottom of your GPR? Did he actually sign it?**
A Yes.
**Q Did you and your partner, Thomas Pack, have a practice where if you were both present for an interview and prepared a GPR, you'd both sign it? One of you would write it up, but you'd both sign it?**
MS. JOHNSON-DELGADO: Object to form. Heather, it mischaracterizes who his partner is. It's Ptak, not Tom Pack.
MS. DONNELL: Sorry. I'm saying -- you're right. Ptak, I meant to say Ptak. My apologies.

Read and Sign Only





A Typically, whose ever signature was first was the person who typed it and wrote it.
BY MS. DONNELL:
**Q But was it your practice with you and Ptak that you would both actually sign the GPR if you were present for the interview?**
A Sometimes.
MR. YAMIN: Objection to form and foundation.
**Q Meaning, sometimes you would sign it and sometimes you wouldn't, depending on --**
A I don't remember. To be honest with you, I don't remember. It does -- I don't know if he signed it or I signed his name. I don't -- I don't know. I can't tell.
**Q I see. So you can't tell if, on the GPR, it's your signature?**
A It looks like his signature. I didn't -- for the T, I didn't -- I didn't write T like that, and I didn't cross T in the last name. So he probably signed it, because it doesn't look like my signature -- my writing.
MS. DONNELL: Okay. I don't have any questions for you, sir. I'm all done.
THE WITNESS: Thank you.
MR. YAMIN: You want to take -- one second,

Read and Sign Only





please. Take a break? You want to take a short break? And we may have some questions for Mr. Duffin as well.
COURT REPORTER: Okay. We are off the record. The time is 2:01 p.m.
(OFF THE RECORD)
COURT REPORTER: We are back on the record for the deposition of Michael Duffin being conducted by video conference. My name is Kortney Chase. Today is June 14, 2022. The time is 2:11 p.m.
CROSS EXAMINATION
BY MS. JOHNSON-DELGADO:
**Q Okay. Can you hear me?**
A Yes.
**Q Okay. I just have a couple of questions, and then -- and then I'll let you go.**
A Sure.
**Q I just want to go over -- earlier you referred to, I guess, notes that you -- that were taken that you called a "street file" or a "running file." Was that prior to the implementation of GPRs?**
A Yes, because -- when they referred to it as a street file, before GPRs, the detectives would take the file out on the street and work it. That's why it was called a street file. And then when they implemented

Read and Sign Only

GPRs, they were not allowed to take the file out of the state -- of the area. So maybe that's why they called it a running file. I'm just --

**Q Okay.**

A -- (Inaudible) on that.

**Q Okay. But when you -- when you talk about a running file, that's just -- is that where you're talking about that notes were taken, correct?**

A Yeah.

MS. DONNELL: Objection to form.

A Well, it would've been everything.

**Q Okay. And then those -- that file, that running file or street file that you referred to, does that become part of the official investigative file that's eventually provided to the state's attorney's office?**

A Yes.

MS. DONNELL: Objection to form and foundation, and calls incomplete hypothetical.

**Q I'm sorry, what did you say?**

A Yes.

**Q Okay. But in this case, since we have GPRs, there would've been -- there -- that -- there would've been no street file or running file associated, correct?**

A Correct.





MS. DONNELL: Objection to form and foundation, and calls for speculation.

**Q Okay. And you then --**

MS. DONNELL: Can you give me just a second to object, sir, before you answer? It'll make the record a little cleaner.

THE WITNESS: You know, can I say something?

MS. JOHNSON-DELGADO: Sure.

THE WITNESS: I don't think it would've been a street file or a running file after they had GPRs, because they couldn't take it out of the office. It would've been all part of the files. You know, the -- everything was included.

BY MS. JOHNSON-DELGADO:

**Q Right. So then -- that's what I'm getting at, so that's my question. So since you took your notes on a GP -- on a GPR form, does that indicate to you that there were no longer what you were referring to as "street files" or "running files" at that time?**

A Yes.

MS. DONNELL: Objection, foundation.

**Q Okay. But regardless, if a street file or a running file was used, that would become part of the investigative file that would then be given to the state's attorney's office, correct?**





MS. DONNELL: Objection, foundation, incomplete hypothetical, and calls for speculation.

**Q Go ahead.**

A Yes.

**Q Okay. I want to ask you a couple of questions about -- I think it's Exhibit 2, that GPR. Do you have that in front of you again?**

MR. YAMIN: It might be Exhibit --

A Yeah.

**Q Or it might be Exhibit 1, I apologize.**

A I have it in front of me.

**Q I think it's Exhibit 1. I apologize. So if you take a look at that document, and you testified that that's your signature at the bottom, correct?**

A Yes.

**Q Okay. And at the time that you created this document, would you have had knowledge of its contents?**

A Yes.

**Q Was it your pattern and practice to accurately document information in a GPR that you were given by a witness?**

A Yes.

MS. DONNELL: Objection -- I'm sorry. Objection, foundation, calls for speculation, incomplete hypothetical.





BY MS. JOHNSON-DELGADO:

**Q Based upon that pattern and practice that -- of your accurately documenting information in GPRs, would the -- would the GPR that you see in Exhibit 1 be an accurate summary of what Jacko Johnson's mother and Krona Taylor would've told you back on May 17, 1991 when you interviewed them?**

MS. DONNELL: Objection. Form, foundation, and calls for speculation.

A Yes.

MS. JOHNSON-DELGADO: Nothing else.

MR. YAMIN: No questions from The City.

MS. DONNELL: I don't have any other questions for you, Mr. Duffin. Thanks for your time

COURT REPORTER: All We're now off the record. The time is 2:15 p.m.

(DEPOSITION CONCLUDED AT 2:15 P.M.)



Read and Sign Only

CERTIFICATE OF REPORTER

STATE OF ILLINOIS

I do hereby certify that the witness in the foregoing transcript was taken on the date, and at the time and place set out on the Title page here of by me after first being duly sworn to testify the truth, the whole truth, and nothing but the truth; and that the said matter was recorded digitally by me and then reduced to typewritten form under my direction, and constitutes a true record of the transcript as taken, all to the best of my skill and ability. I certify that I am not a relative or employee of either counsel, and that I am in no way interested financially, directly or indirectly, in this action.

KORTNEY CHASE,
COURT REPORTER/NOTARY
COMMISSION EXPIRES: 09/24/2025
SUBMITTED ON: 06/23/2022

Read and Sign Only





0

0005 32:1

1

1 17:14,21 18:7 20:5 21:24 25:9 33:22 37:23 38:14 43:13,16, 25 44:1 51:10, 12 52:4
1,000 17:12
107 17:14
108 24:16
11th 10:23
12:00 14:11,17
12:30 14:11,13
13586 18:2
13596 18:3
14 41:18 48:10
14th 6:8
15 12:9
16 28:6 44:10, 16
16th 32:4
17 21:21 26:18 27:13,17 30:7 31:8 32:1 33:23 44:25 45:7 52:6
19 37:12
1968 10:17,22
1978 12:16,18, 25
1980 12:13 13:10
1982 18:25
1990s 37:12
1991 9:12 11:21 14:1,8, 18,22 15:3 18:12 20:1 21:21 26:13,18 27:13,17 30:7 31:8 32:1 33:23 44:25 45:7 52:6
1992 11:4
1993 11:12
19CV7286 6:14
1:09 6:9
1:51 41:13
1:53 41:19
1st 11:1

2

2 24:12,14,17 25:22 51:6
20 44:11,16
2001 10:20,22
2022 6:8 41:18 48:10
22nd 6:7
2:01 48:5
2:11 48:10
2:15 52:16,17
2nd 10:25

3

3 11:2,4,9,10,22 13:2,5,8,17 14:19,22 15:13, 16 16:17 17:6 19:22 20:2 26:6,10 27:8, 10,12,16 31:6 33:23 37:11 38:14
30 6:6
31 43:3
311 6:19
373-7006 21:12

4

4 10:24 11:4,7,9 41:22 42:2 44:20
4:00 14:10,17
4:30 14:11,13

5

5 10:17,22 41:23
5'3" 44:11,16
5'6" 44:11,16
54th 21:9,11 23:12,13 28:16

6

6 41:23
6029 20:16,17
60606 6:7
62 27:20
65 27:21
6th 10:25

7

78 12:12

8

80 13:11,12
81 13:11,12

9

909 21:9,11 23:12,13
90s 16:18
92 11:13,14
927 28:15
96 18:4
9:00 33:24

A

a.m. 14:13,17 33:24
Aberdeen 6:19
ability 19:4
accurate 52:5
accurately 51:19 52:3
actual 9:10
address 23:15
Admits 21:6 45:15
admitted 45:10
Adobe 40:8,22
affirm 7:12
afternoon 6:17 7:19
agency 11:18
agree 7:4,8
Agreed 7:9
ahead 20:24 21:3 35:1 36:8 38:25 51:3
allowed 49:1
and/or 42:12
answering 10:12
anticipate 9:19 18:5
apologies 46:25
apologize 51:10,12
appearance 6:15
appeared 29:20
appearing 6:18,21,24 7:24 8:1,3
appears 22:11, 13 23:11 31:16
April 12:16
area 10:24 11:2,4,7,9,10, 22 13:2,5,8,17 14:19,22 15:13, 16 16:17 17:6 19:22 20:2 26:6,10 36:15 37:11,16,23 49:2
Arnold 6:11
assailant 36:16
assigned 11:21 14:7,22 15:24 16:10,16 17:2,6 28:24 29:1,2 30:6,16 37:11
assignment 10:23 13:1
assignments 10:22
attending 6:15
attention 30:21
attorney's 49:15 50:25

B

back 9:12 14:7, 8,18,21,22 15:3 16:17 18:12 21:18 36:12 37:10 41:15 48:7 52:6
background 9:18
baseball 44:5, 7
based 32:6 52:2

Read and Sign Only





Bates 17:16 24:16 27:20 41:23
begin 7:16
behalf 6:20,25
black 28:6 44:7,10,15
block 20:9
body 20:18
Bonki 26:5
Bonkie 26:9
bottom 17:16, 24 26:2 46:14 51:14
Boudreau 6:11 15:6 16:17
box 42:13 43:3, 7 44:5
break 39:1,3 48:1,2
Brennan 27:19 29:2,3 34:14
Brian 43:1,10
bring 22:21
Brittany 6:23
Bulls 21:18 44:6
button 40:10, 25

C

call 30:21
called 19:23 22:9,12 48:20, 25 49:2
calls 19:2 29:13,21 31:14 32:14,21 33:4 34:18 35:3,18 36:18 38:7 46:2 49:19 50:2 51:2,24 52:9
camera 17:23
cap 44:7
car 21:10,16
career 17:10
case 6:13,25 8:20 49:22
cellular 8:17
cetera 42:13
chance 24:21 42:5
Chase 6:4 41:17 48:9
Chicago 6:7, 19,21 10:16,19 11:18 17:10 19:14 28:2 29:17 41:23
child 21:14
circumstance s 28:12
City 6:21 17:14 24:16 25:7 27:20 41:23 52:12
clarify 45:5
classroom 12:17
cleaner 50:6
clear 25:20
clothing 42:12
color 44:12,13
completed 10:11 34:2
complex 44:11
complexion 44:12,17
computer 8:6, 9,14 39:15
computers 8:4
CONCLUDED 52:17
conduct 37:10, 24
conducted 12:22 41:16 48:8
conference 6:9 41:17 48:9
Connolly 6:22, 24
consecutive 27:20
consistent 35:15
constituted 19:14
content 20:25
contents 51:17
convened 6:9
conversation 21:6
convey 33:8
copy 33:17 34:8
correct 18:23 19:8 20:8 28:9, 13 34:2 46:6,8 49:8,24,25 50:25 51:14
could've 37:22,23
Counsel 6:16 9:2 39:11
couple 48:15 51:5
court 6:3,5,6, 12 7:1,4,10,16 24:8 35:25 40:22 41:8,12, 15 48:4,7 52:15
cousin 21:13
CPD 12:22
created 51:16
crime 13:7
crimes 11:3,5, 7,22 13:19 37:11
cross 47:19 48:11

D

D-U-F-F-I-N 7:21
Dan 16:24,25 17:1,3,5 27:18 34:13
dark 44:5,7,12, 17
date 18:10 21:20 31:20,25 43:16
dated 18:10 27:13 33:23
day 6:8,11 17:14 24:16 27:20 31:25 41:23
Defendant 6:21
defendants 6:25
DELGADO-JOHNSON 26:15,21 28:22 29:6,23 30:19
Department 10:16,19 11:19 17:11 19:14 28:3 29:18 41:24
depending 47:10
deposed 9:22, 25
deposing 8:14
deposition 6:10 9:20 24:12,15 25:22 27:3,9,13,17 41:16,22 48:8 52:17
describe 42:12
description 21:7,8 45:11,15 46:6
descriptions 42:12 44:4 45:16,18,21
designated 24:12,14 25:22 27:16 31:5 41:22
designating 27:8
detective 11:2, 6,15,22 12:8, 14,18,20,25 13:4,8,13 14:2 15:6,17,19,21 16:7,17,20,21, 24,25 17:10 18:21 19:7 20:14 26:7 27:18 29:2,3 32:25 34:10,13, 14,22 36:13 37:11
detectives 14:19,22 15:2 16:10 29:2,18 32:18 33:1,8,15 48:23
device 8:2,3,17
difference 10:3 34:11
DIRECT 7:17
directly 34:13
discovered 44:1
district 6:12,13 10:23,25 11:1 37:22
Division 6:13
document 8:23,25 17:15, 17,19 27:1,22, 23 38:25 39:8 42:1 51:13,17, 20
documenting 38:4 52:3

Read and Sign Only





documents 8:13,19 9:3,6
Donnell 6:17, 18 7:6,8,18 19:6 21:1,19 24:7,10 30:1,12 35:6,21 36:8, 11,22 38:9,24 39:6,9,17,21 40:4,11,16,18, 23 41:3,7,10,20 45:4 46:4,24 47:3,22 49:10, 18 50:1,4,21 51:1,23 52:8,13
Drive 6:7
driving 36:3
drove 36:15
Duffin 6:10 7:1, 3,5,10,11,21,22 20:6 29:24 30:13 35:25 40:6,23 41:16, 21 48:3,8 52:14

E

e-mail 8:13 39:2,10,20
e-mailed 8:21
e-mailing 39:7
earlier 48:18
early 16:17 37:12
easily 41:1
Eastern 6:13
education 12:17
effect 18:24 45:10
electronic 8:3
enforcement 11:18
enlarge 24:20
enlarging 26:2
entire 10:11 20:25
Erving 9:12 14:1 26:18 27:2,19 28:6,13 37:25 41:25
estimate 17:8
et al 6:11
eventually 49:15
EXAMINATIO N 7:17 48:11
excuse 29:12 38:21
exhibit 17:14, 21 18:7 20:5 21:24 24:12,14, 17 25:9,22 27:8,10,12,16 31:6 33:23 38:14 41:22 42:2 44:20 51:6,8,10,12 52:4
existence 18:14
eye 44:12
eyes 44:17

F

face 23:1 44:2
faces 21:5,8 45:11,18
fact 7:5 29:8
fair 31:10 32:7 33:7 34:12
fairly 9:19
familiar 18:11
fast 31:24
February 10:17,22
fellow 32:25 33:8
figure 41:9
file 19:20,21, 22,24 25:8 48:20,23,24,25 49:1,3,7,12,13, 14,24 50:10,22, 23,24
files 18:25 20:2 50:12,19
fill 18:11
filled 23:1
filling 21:23
find 32:17 33:2
fine 41:11
flip 40:18,21
flipped 40:19
Floor 6:7
folder 39:13
Foley 15:17 16:21
folks 32:8
follow 32:19
follow-up 33:2
force 10:24
Forest 7:25
forgot 12:15
form 14:25 15:8 18:16 19:2,15 22:18, 24 23:6,9,20 26:20 27:6 28:21 29:6,12, 21 30:19 31:13 32:11,20 33:3 34:4,18 35:2, 12,17 36:6,17 37:1,13 38:2,21 45:25 46:21 47:8 49:10,18 50:1,17 52:8
formal 12:17
format 9:23 19:8
foundation 15:1 18:16 19:2,15 26:15, 20 28:22 29:7, 13,21 30:9 31:13 32:11,20 33:3 34:5,18 35:3,13,18 36:6,18 37:1,13 38:2,22 46:1 47:8 49:19 50:2,21 51:1,24 52:8
frame 13:25
Fred 26:5
Friday 32:1
front 8:24 9:3, 6,15 17:15 21:13 28:2 43:20 44:2,7 51:7,11
full 7:2
Fusco 6:22,24

G

gang 29:1
Gaston 43:1, 10
General 18:11
geographic 36:15
George 6:20 15:13 24:7 27:15 36:8 45:5
give 7:13,22 24:21 31:1 39:11 50:4
giving 35:14
glitch 10:5
gold 21:17
good 6:17 7:19 10:12 18:5 32:24 39:22
GP 50:17
GPR 8:21 9:1, 5,14 14:9 18:7 19:8 20:7,19,25 21:24 22:9,19, 21 23:1,22 25:8,12 27:13, 14 31:16,19 32:7 38:11 45:9,12 46:12, 15,19 47:5,15 50:17 51:6,20 52:4
GPRS 18:12, 19,22,24 19:11, 14 22:22 48:21, 23 49:1,22 50:10 52:3
great 10:9
guess 45:14 48:19
guessing 33:19
guys 39:12 40:20

H

hair 44:12,17
Halloran 15:9, 14
hand 7:11 43:19
handwriting 18:7 20:4,8,19 21:2 25:10,24
handwritten 25:10
handy 19:20
happened 31:23
hard 10:4
hat 44:5
hats 21:4
headquarters 37:19
hear 10:4,6 30:2 46:9 48:13
heard 21:6

Read and Sign Only

26:23 44:1
Heather 6:17 46:21
here?' 43:24
Hmm 40:20
hold 17:23 38:12 39:3,5,6 40:14
homicide 9:11 14:1 17:9 26:17 27:3,19 28:13 29:18 34:22 36:12 37:25 41:25
homicides 13:24
honest 47:11
hours 14:15 32:1
hours' 34:11
house 21:13
hypothetical 29:23 34:19 35:4,19 36:19 49:19 51:2,25

I

idea 46:6
IDENTIFICATION 17:21 24:17 27:10 42:2
identify 36:4,16
Illinois 6:7,13, 19 7:25
implementation 48:21
implemented 48:25
inaudible 40:25 49:5
incident 32:6
include 45:20
included 43:15 50:13
incomplete 29:23 34:19 35:4,19 36:18 49:19 51:2,25
inconsistent 35:15
individual 6:25
information 8:13 28:11 30:23 32:17 33:2,9 34:15 35:15,16 38:18 51:20 52:3
initially 31:11
interaction 31:7
interactions 44:21
internally 12:22
interview 32:15 45:3 46:18 47:6
interviewed 22:13,14,16 52:7
investigation 9:11 26:17 27:3,19 33:10 37:25
investigations 17:9
investigative 25:8 49:14 50:24
investigatory 37:6
involved 26:17
involvement 9:10
iphone 8:7,14

J

jacket 21:18 44:6,8
Jacko 21:9,12, 15,17 23:18 52:5
Jacko's 21:11 22:6,7,10 23:10,21 24:1
James 27:18 34:14
January 12:12 13:10 41:18
Jarrod 37:25
Jerrod 9:12 14:1 26:18 27:2,19 28:6 41:25
job 10:10
John 15:9,14
Johnson 21:9 23:18
Johnson's 52:5
Johnson-delgado 6:23 7:9 14:25 18:17 19:16 32:12 33:4,14 34:4, 21,25 35:2,12, 17 36:6,17 37:2,8,14 38:6, 23 39:14,19,23 40:2,9,12,17,25 41:5 45:25 46:7,21 48:12 50:8,14 52:1,11
join 18:17 19:16 26:21 32:12 33:14 34:21 35:20 36:7,10,20 37:2,8,14 38:6, 23
June 6:8 41:18 48:10

K

Ken 15:6
Kenneth 6:11
Kentuckiana 6:6
Kill 15:21
kind 9:23 40:5
knew 23:25
knowledge 29:15 51:17
Kortney 6:4 10:12 40:20 41:17 48:9
Krona 20:22 21:4,17 22:2,16 23:7 30:4,7,23 31:6 36:3 38:19 42:25 43:10,13 45:3 52:6

L

law 11:17
leaning 21:10
learned 33:1
leave 36:9
left 11:4
left-hand 43:6
lettering 44:6
Lewis 6:17
line-ups 37:10, 16,24
liquor 21:16
listed 30:3 38:15 42:25 43:10,13 44:10
litigation 18:25
located 6:6
location 6:16 7:23 22:19 28:12 43:20
long 10:18 12:7,20
longer 50:18
looked 9:6 25:9
lying 44:2

M

M-I-C-H-A-E-L 7:21
made 11:1 12:25
mailed 9:2
main 10:3 37:19
make 12:14 17:18,19 50:5
male 28:6 44:10,15,16
mark 17:14
marked 17:21 24:17 27:10 42:2 44:19
marking 27:12
maroon 21:16
matter 6:10
Mcweeny 15:19 16:24,25 17:1,3,6 27:18 29:2,3 34:13
Meaning 28:18 47:9
means 34:1
meant 46:25
medium 44:11, 16
memory 9:10 21:23 22:1,7 36:2,25
Michael 6:10 7:3,5,21 41:16 48:8







midnight 32:2
midnights 33:16
might've 19:23
mind 36:1
mischaracterizes 34:20 45:1 46:22
Mitchell 21:13
Mitchell's 21:14
moment 40:7
money 43:23
month 12:21
mother 21:11 22:6,7,10 23:10,21 24:1 52:5

N

narrative 20:18 42:18,19 43:12,15
neighborhood 36:3
North 6:19
Northern 6:12
notebook 19:13,18
notes 9:3 19:13 48:19 49:8 50:16
number 6:13 18:1 20:16 21:12 43:3,7

O

Oak 7:25
object 23:20 26:15 28:21 29:6 30:19 34:4,18,25 35:2,12,17 36:17 38:2 45:25 46:7,21 50:5
objection 14:25 15:8 18:16 19:2,9,15 22:18 23:3 26:20 27:6 29:10,21 30:9 31:13 32:11,20 33:13 37:1,13 38:21 45:1 47:8 49:10,18 50:1, 21 51:1,23,24 52:8
objections 33:3 34:6 35:20 37:7 38:5
obtained 30:23
occasion 26:10,11
occur 32:3
occurred 32:2, 5
occurrence 31:21
October 11:12, 14
odd 40:5
offender 21:4 42:12 43:20 44:15
offenders 21:10,17 43:17 44:5
office 6:18,22 49:16 50:11,25
officer 10:16 12:11 41:24
officers 28:25 32:18 43:25
offices 6:24
official 49:14
one- 8:22
one-page 8:25 9:1
online 6:4
open 8:3
opportunity 31:1,3
original 21:7 45:15

P

P-E-T 12:5
P-T-A-K 12:4,6
p.m. 6:9 14:13, 14,17 41:13,19 48:5,10 52:16, 17
Pack 46:17,23
pads 22:21
paper 19:19,20
papers 9:3
paperwork 38:3
paragraph 31:2
part 25:7 45:12 49:14 50:12,23
participation 9:11
parties 7:4
partner 11:24 14:7 16:2,6,13 17:3 20:13 46:17,22
partner's 20:10 46:14
partners 12:8 13:12 14:2,3 16:4
past 21:10 43:17
patrol 28:25
pattern 51:19 52:2
Pax 20:14
pending 6:11
period 46:11
person 10:1 22:13,14 47:2
personnel 28:24 29:20
pertaining 8:20 27:2 28:12
pertains 31:6
pertinent 33:9
phone 21:12 24:15 36:1
phones 8:4
phonetic 26:5
pieces 19:18
Plaintiff 7:6,8
Plaintiff's 6:16
police 10:15, 16,19 11:18 17:10 19:14 28:3 29:17 36:14 41:23
portion 30:22 31:6
practice 19:11 29:17 32:17 46:18 47:4 51:19 52:2
prepare 9:7 27:3
prepared 27:18 41:24 46:19
present 46:18 47:6
prior 19:13 48:21
PROCEEDINGS 6:1
produced 25:7,11
Progress 18:12
promoted 12:18
provided 21:6 32:17 33:10 35:16 45:15 46:6 49:15
Ptak 12:2,4,7,8, 11 13:4,13 14:2 16:7 46:22,25 47:4
pulled 21:5
pulling 27:1
put 19:20 38:24
putting 36:1

Q

question 10:11 18:5 23:24 24:5,6,7 25:4 50:16
questions 9:19 10:6 16:2, 5 42:6 47:23 48:2,15 51:5 52:12,13

R

Radtke 41:25
raise 7:11
rank 11:15
ranks 10:21
re-ask 16:5
read 18:6 20:4, 21 21:1 23:11 30:21 31:4 42:11,18,19 43:12
reading 22:11, 14 23:11 31:16 46:11
ready 42:8,10, 23
reason 41:4







recall 9:24 14:21 16:22,23 17:7 28:19 32:15 36:24 38:1
received 34:15
recently 27:23
recognize 18:6 25:10 26:1 28:2 42:17
recollection 9:15 30:16 31:7 38:12,18 44:20, 23 45:6 46:10
record 6:3 7:2, 20 10:13 41:9, 10,12,14,15 48:4,6,7 50:6 52:16
record's 25:20
red 44:6
redundant 46:3
refer 19:22
referred 19:21 48:18,22 49:13
referring 50:18
refrain 8:16
refresh 9:15 31:7 38:17 44:20,23 45:6
refreshes 38:12
regular 11:24 12:8 13:12 14:2 16:6,13
regularity 37:5
regularly 15:5
related 43:25
relevant 37:6
rely 33:8
remainder 11:3
remember 14:6,21 15:2 16:9,19 19:5,25 20:3 29:16 42:3,4 47:11,12
repeated 45:16,17,21
rephrase 16:2
replied 43:24
report 21:7,21 27:18 28:3,24 30:22 33:17,18, 22,23 34:1,9,14 40:15 41:24 42:25 45:16,17
Reported 21:7
reporter 6:3,5 7:1,4,10,16 24:9 35:25 40:22 41:8,12, 15 48:4,7 52:15
Reporters 6:6
reporting 43:25
reports 18:12 27:2 29:19
represent 25:6
representing 6:5
request 13:15
respect 16:20 19:12
retire 10:18 11:6,15
review 31:2,3
reviewed 9:14
reviewing 31:5
robberies 13:2,4,22
robbery 11:2 13:21
Rock 6:22,24
ROS 43:16
rotate 40:7,8 41:2
rotated 40:5
running 19:22, 24 20:2 48:20 49:3,7,13,24 50:10,19,23

S

Sabrina 21:15
saved 40:19
scene 28:15 29:9,19,20 31:11,12 32:9
screen 24:13, 15,19 27:8 30:21 39:10,24
scroll 24:22,23 28:1 31:21 42:5,9,15,21
sergeant 26:6, 9,13
share 24:13 27:7 39:18
she'd 45:10
sheets 22:21
shift 14:6,10 15:3,6,13,16, 22,24 16:3,10, 16,21 17:5 26:12 32:3 34:2
shifts 14:19,23 33:21 34:11
Shook 43:19
short 9:19 30:20 48:1
shots 44:1
show 17:17,18 24:11,13 27:8, 21 31:25 38:10, 11,25 39:9
showing 24:14 27:16 33:22 38:13 41:21
shut 11:10
sic 20:14
side 43:6
sign 46:15,19, 20 47:5,9
signature 17:24 20:9,10, 13 26:1,4 46:14 47:1,16,17,20 51:14
signed 47:12, 13,19
silk 44:6,8
sir 7:19 9:9 10:15 18:18 19:17 26:22 29:12,14 31:3 32:22 33:5 34:7,22 35:7,22 36:2 42:19 45:6 47:23 50:5
sit 9:9 14:6 22:1 23:17 30:16 36:25 46:5
sitting 43:19
solemnly 7:12
south 6:6 29:1
speak 32:19 33:11
speaking 22:7 45:7
specialists 29:1
specific 7:23
speculation 19:3 29:13,22 31:14 32:14,21 33:4 34:19 35:3,18 36:18 38:7 46:2 50:2 51:2,24 52:9
spell 7:20
spoke 21:11 22:11 23:7,10, 12,13,15 31:10 32:8 34:10,13
spoken 31:11 32:8 33:20
spring 20:1
stamp 17:16 24:16 41:23
stamped 27:20
star 18:1 20:16
start 10:12
started 12:10 18:19 19:5
starter 44:6,8
starting 6:16
state 6:15 7:2, 19 37:18 49:2
state's 49:15 50:25
stated 43:16
States 6:12
station 37:22
step 37:6
steps 43:20 44:2
store 21:16
street 18:25 19:21,24 21:9, 12 22:22 23:12, 13 28:16 37:18 48:20,23,24,25 49:13,24 50:10, 19,22
strike 19:12 36:24
subsequent 25:11 33:11
summary 52:5
supervisor 20:8,11,13
supplementary 27:2,17 28:3, 24 30:22
suspect 35:10
suspects 28:9 36:4 38:14
swear 7:12







sworn 10:15

T

taking 19:12
talk 10:10 30:6 34:16,23 44:24 49:6
talked 34:24
talking 22:2 49:8
task 10:24
Taylor 22:2,16 23:7 30:4,7,23 31:6,8,10 32:8, 16 36:3 38:19 42:25 43:10,13 44:21,24 45:3, 7,10 52:6
technician 6:5
technology 10:5
testified 51:13
testimony 7:12 9:7 25:16, 21 34:20 45:2
that'll 41:1
thereabouts 11:12
thing 40:13
things 40:8
Thomas 12:2,3 16:6,7 46:17
thought 39:12
time 6:8 11:24 13:25 14:3 18:14 28:8 31:20 32:1 33:11 41:18 43:16,25 48:5, 10 50:19 51:16 52:14,16
timing 31:18 32:6,7
today 6:5,8 7:24 9:7,10 14:6 22:2 27:4 30:16 36:25 41:17 46:5 48:9
told 21:8,17 52:6
Tom 46:23
top 18:10 21:20
training 12:20
transferred 11:9
true 16:15
truth 7:13,14
twisted 39:21
two-minute 39:3
typed 47:2
Typically 47:1

U

unable 25:23
understand 16:6 27:22
understanding 26:16
unit 26:7
United 6:12
unknown 28:8 38:14 44:12,16, 17
unmarked 36:14
upright 36:1

V

vehicle 36:14
victim 28:6 43:23,24 44:1
victim's 43:7, 19
video 6:4,9 41:17 48:9
view 40:9 41:2
violent 11:3,4, 7,22 13:7,19 37:11

W

Wacker 6:7
wait 10:11 39:3
waiting 39:20
walk 10:21
walked 21:10 43:17
wanted 25:9
watch 14:9 21:21 32:5 44:25
Watson 41:24
Watson's 40:14
weight 44:11, 16
weird 40:5 41:5
West 21:9,11 23:12,13 28:16
Westin 21:14
white 44:6
wife 21:14,15
witnesses 7:5 30:3 42:25 43:10
words 45:9
work 11:17 13:15 14:7 15:5,13,16,24 16:10,16,21 17:2,5 21:16 26:9 32:25 43:24 48:24
worked 15:22 16:17 17:9
working 12:10 13:22 14:7,16, 19,23 15:3 32:3,4 33:16
would've 14:10 34:1,15 46:3 49:11,23 50:9,12 52:6
write 46:20 47:18
writing 21:18 25:14 47:21
wrote 29:19 45:14 47:2

Y

Yamin 6:20 7:7 15:8,10 18:16 19:2,9,15 20:23,25 21:3 22:18,24 23:3, 20 24:4,8 26:20 27:6,14 28:21 29:10,12,21,24 30:9,11 31:13 32:11,14,20 33:3,13 34:6,18 35:1,20 36:7,9, 20 37:1,7,13 38:2,5,7,21 39:16 40:1 41:6 45:1 46:2 47:8, 25 51:8 52:12
years 11:2 12:9 28:6 44:11

Z

Zoom 6:18 8:1, 3 9:22