# Exhibit 145



| | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| **GENERAL ORDER** | 30 October 1987 | 31 October 1987 | 87-7 |

| SUBJECT | DISTRI-BUTION | AMENDS |
|---|---|---|
| INTERROGATIONS: FIELD AND CUSTODIAL | B | |

| RELATED DIRECTIVES | RESCINDS |
|---|---|
| General Orders: Complaint And Disciplinary Procedures; Processing Persons Under Department Control; Arrestee's Communications And Visitors; Handicapped And Impaired Persons. Department Special Orders: Processing Of Juveniles; Processing Juveniles As Adults. | General Order 82-3 |

I. PURPOSE

   This order:

   A. defines field interrogations.

   B. defines custodial interrogations.

   C. states provisions of the Illinois Revised Statutes relating to the stopping and temporary questioning of individuals.

   D. continues guidelines for field interrogations.

   E. indicates the sole justification for the search of a person whom a police officer has no grounds to arrest.

   F. specifies the extremely limited scope of a search of a person undergoing a field interrogation.

   G. continues guidelines for custodial interrogations to ensure conformance with the United States Supreme Court decision in <u>Miranda</u> v. <u>Arizona</u>, 384 U.S. 436 (1966).

II. DEFINITIONS

   A. A <u>field interrogation</u> is general on-the-scene questioning of a person about a crime or other general questioning of witnesses in the fact-finding process; providing that the person being questioned has <u>not</u> been taken into custody nor has been deprived of his freedom of action in any significant way.

   B. <u>Custodial interrogation</u> has been interpreted by the United States Supreme Court as "questioning initiated by law enforcement officers after a person has been taken into custody or has otherwise been deprived of his freedom of action by the authorities in any significant way."

      NOTE: Interrogation encompasses not only questioning, but also any remarks, psychological tactics or patient maneuvering designed to elicit a response or to undermine a suspect's will to resist further questioning.

   C. The term deprived of "freedom of action" can include, but is not limited to, such police actions as not allowing a person to leave the presence of the officer(s) or the immediate area of a field interrogation.

III. GENERAL INFORMATION

   Like other aspects of the law, interrogation guidelines and techniques undergo continual review in courts throughout the nation. For this reason, professional law enforcement officers should endeavor to keep informed of contemporary issues and court decisions relative not only to interrogations but to arrest, search, and seizure as well. A sound, working knowledge of the law and techniques of interrogations will result in successful case presentation in court while ensuring the rights of arrestees.

IV. FIELD INTERROGATIONS-AUTHORITY TO STOP A PERSON FOR QUESTIONING

   A. "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102-15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped" (Ch. 38, Sec. 107-14, Illinois Revised Statutes). This authority is also granted under City ordinance (Ch.11.3-1 M.C.C.).

   B. "Offense" means a violation of any penal statute of this State (Ch. 38, Sec. 102-15, Illinois Revised Statutes).

CITY_JAKES 00922

V. GUIDELINES FOR FIELD INTERROGATIONS

   A. Miranda warnings are not necessary when police conduct general, on-the-scene questioning regarding facts of a crime.

   B. A police officer, in light of his experience, confronted with suspicious circumstances, is permitted to make inquiries of an investigative nature without first giving the Miranda warnings. In court, the officer may be asked to articulate those conditions which aroused his suspicion. The standard against which the suspicion will be judged is reasonableness.

   C. A police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.

   D. On grounds short of arrest, a police officer may "stop" a person under suspicious circumstances and ask the person's name and reason for being in the area. If the person refuses to answer, the police officer must evaluate whether or not valid grounds for arrest exist and proceed accordingly.

   E. The person stopped is not obliged to answer; answers may not be compelled, and a refusal to answer furnishes no basis for arrest, although it may alert the police officer to the need for continued observation or additional investigation of the person.

VI. AUTHORITY TO SEARCH A PERSON STOPPED FOR TEMPORARY QUESTIONING

   "When a peace officer has stopped a person for temporary questioning pursuant to Section 107-14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned." (Ch. 38, Sec. 108-1.01, Illinois Revised Statutes) and (Ch. 11.3-2, Municipal Code of Chicago)

VII. SOLE JUSTIFICATION FOR SEARCH OF A PERSON

   A. When a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity is present or imminent and that the person with whom he is dealing may be armed and dangerous; when in the course of investigating his behavior he identifies himself as a peace officer and makes reasonable inquiries; and when nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled, for the protection of himself and others in the area, to conduct <u>a carefully limited search of the outer clothing</u> of such person in an attempt to discover weapons which might be used to commit an assault upon him. Purses of females, attache cases, etc., may be given a very carefully limited examination solely to discover weapons.

   B. The sole justification of an officer's <u>search of a person whom he has no cause to arrest</u> is the protection of the officer and others nearby, and it must, therefore, be confined to a search reasonably designed to discover guns, knives, clubs, or other hidden instruments which could be used to assault the officer. An officer does not exceed a reasonable scope of search by patting down outer clothing. He must refrain from placing his hands in the pockets or under the outer surface of garments until he feels weapon(s). At that time, the officer should merely reach for and remove the weapon(s). If the weapon is not lawfully possessed, the person searched should then be immediately placed under arrest and a more thorough search conducted.

VIII. LIMITED SCOPE OF A SEARCH OF A PERSON

   Police officers will exercise extreme propriety when patting down pockets of outer garments of persons of the opposite sex. Any necessary further search of such person will be conducted by a member of the same sex as the person being searched and in accordance with existing Department policy on conducting body/strip searches.

IX. CUSTODIAL INTERROGATION-ADVISING THE INDIVIDUAL OF HIS RIGHTS

   A. Before the interrogation of an individual who is in custody anywhere or who is in any way being deprived of his freedom of movement and action, the person must be expressly warned of his constitutional rights in clear and unequivocal words as follows:

      1. <u>YOU HAVE A RIGHT TO REMAIN SILENT.</u>
      2. <u>IF YOU CHOOSE NOT TO REMAIN SILENT, ANYTHING YOU SAY CAN AND WILL BE USED AGAINST YOU IN A COURT OF LAW.</u>
      3. <u>YOU HAVE A RIGHT TO CONSULT A LAWYER BEFORE ANY QUESTIONING AND YOU HAVE A RIGHT TO HAVE THE LAWYER PRESENT WITH YOU DURING ANY QUESTIONING.</u>
      4. <u>YOU NOT ONLY HAVE A RIGHT TO CONSULT WITH A LAWYER BEFORE ANY QUESTIONING BUT, IF YOU LACK THE FINANCIAL ABILITY TO RETAIN A LAWYER, A LAWYER WILL BE APPOINTED TO REPRESENT YOU BEFORE ANY QUESTIONING, AND YOU MAY HAVE THE APPOINTED LAWYER PRESENT WITH YOU DURING ANY QUESTIONING.</u>
      5. <u>IF YOU CHOOSE NOT TO REMAIN SILENT AND DO NOT WISH TO CONSULT WITH A LAWYER OR HAVE THE LAWYER PRESENT, YOU STILL HAVE THE RIGHT TO REMAIN SILENT AND THE RIGHT TO CONSULT WITH A LAWYER AT ANY TIME DURING THE QUESTIONING.</u>

CITY_JAKES 00923

B. After ALL of the warnings have been orally recited, the person to be questioned will be asked:

<u>DO YOU UNDERSTAND EACH OF THESE RIGHTS</u>?
<u>DO YOU WISH TO ANSWER QUESTIONS AT THIS TIME</u>?

An EXPRESS STATEMENT by the person to be questioned that he UNDERSTANDS THE MEANING of what has been said and that he nonetheless WISHES TO ANSWER questions without speaking to a lawyer and without having a lawyer present is also ABSOLUTELY REQUIRED. Another acceptable practice is to phrase each of the warnings in the form of a question. In this way, the person to be questioned will indicate after each of the warnings whether or not he understands what has been said.

C. The warnings must be expressed prior to any questioning by law enforcement personnel, whether or not the answers by the person to be questioned are incriminating.

D. These warnings must be stated orally by the police officer and not merely read by the person to be questioned.

E. If a question-answer statement is being typed, <u>EACH</u> of the warnings and the response of the person to <u>EACH</u> warning must also be included in the statement.

F. In addition to the above warnings, before accepting any admission or statement of a juvenile, the juvenile will be advised that his case might be transferred to Criminal Court where he will be prosecuted as an adult. An EXPRESS STATEMENT by the juvenile that he UNDERSTANDS THE MEANING of this advice is REQUIRED. A JUVENILE <u>SHOULD</u> BE WARNED AND QUESTIONED ONLY IN THE PRESENCE OF AN ADULT (parent, other relative, friend) <u>IF</u> SUCH AN ADULT CAN BE LOCATED.

G. It is not enough that the person to be questioned is warned and decides nonetheless to answer questions. Any circumstances of lengthy incommunicado custody, deception, promises or suggestions of benefits, or other forms of psychological pressure will invalidate the acceptability of anything the person questioned states or writes.

H. If the person requests advice as to whether or not he should decide to answer questions, a police officer is not permitted to advise the person.

X. WAIVER OF RIGHTS

A. An individual may waive these rights, provided the waiver is made voluntarily, knowingly and intelligently. In order to show such waiver, establish and incorporate in the statement the individual's age, education, employment, and the fact that he understands the English language.

B. A waiver is not to be presumed from the fact that the individual remains silent after having been given the warning, nor is it to be presumed from the fact that the individual confessed after having heard the warnings. An express statement by the individual, after hearing the warnings, that he is willing to make a statement and that he does not want a lawyer, followed closely by a confession, should constitute a waiver.

C. Any indication that the person was tricked, threatened or cajoled into a waiver of these rights will establish that the waiver was not voluntary.

XI. INTERROGATION PROCEDURE

A. Warning of the individual's rights must be given before <u>any</u> in custody interrogation can commence. If the individual indicates in any manner that he does not wish to be interrogated, he will not be interrogated.

B. An individual who wishes to consult a lawyer will not be interrogated until he has an opportunity to do so.

C. The person to be questioned will be informed if at any time a lawyer appears (or a parent appears in cases involving a juvenile) and requests to see him, regardless of the fact that rights have been waived. In addition, the person to be questioned shall have an opportunity to have the lawyer or parent present during any subsequent questioning, if he so desires.

D. If the person to be questioned states or in any manner indicates that he wishes to remain silent, <u>but has a lawyer present</u>, the police officer may state questions. However, no form of physical or psychological pressure may be exerted on the individual.

E. If the person to be questioned at first states that he understands the meaning of the warnings and that he nonetheless wishes to answer questions without speaking to a lawyer and without having a lawyer present, and later changes his mind, the questioning will immediately cease. On the other hand, if the person to be questioned at first refuses to answer questions, and later changes his mind, officers must take care to show that this change of mind was initiated by the person to be questioned, that it was made voluntarily and intelligently and that the rights enumerated in paragraph IX-A were given again.

F. If the person to be questioned, after fully being warned of his rights under Miranda, agrees to talk to the police about the crime but specifies that he will not sign any written statement outside the presence of his lawyer and there is no evidence that the person was threatened, tricked or cajoled into this waiver, the oral statement made to the police is admissible as evidence at his subsequent trial. The reservation about not wanting to make a written statement does not amount to an invocation of his right to the presence of counsel at the interrogation.

XII. WHEN WARNINGS ARE NOT REQUIRED

A. The warnings need not be given to any person who spontaneously volunteers information without any questioning by anyone.

B. There is no requirement that the police stop and warn a person who enters a police facility and states that he wishes to confess a crime, nor that they stop and warn a person who telephones the police or approaches any police officer on duty to offer a confession or any statement about some crime and his part in it.

C. A person need not be advised of his rights if the police are engaged in general on-the-scene questioning about a crime or other general questioning of witnesses in the fact-finding process, as long as the questioned person has not been taken into custody and is not in any way restrained from exercising full freedom of movement and action, such as a person who can leave the scene at any time he so desires.

D. Warnings need not be given on the scene immediately to a person in custody when the urgency of a situation poses a threat to the "public safety" or the safety of the officer. However, any further questions designed solely to elicit testimonial evidence from the person in custody must be preceded by the Miranda warnings. (For example, a person believed to be armed runs into an open supermarket whereupon he is taken into custody. A search of the person reveals an empty holster. Since there is a need to find the gun, as it poses a threat to the public safety, the officer is permitted to ask only those questions necessary to locate the gun, before advising the person of his Miranda rights.)

*Fred Rice*
Superintendent of Police

Indicates new or revised item.

86-134 FGP

CITY_JAKES 00925