Exhibit 148

ARNOLD DAY,

                    Plaintiff,

        v.

THE CITY OF CHICAGO, *et al.*,

                  Defendants.

Case No. 19-cv-7286

Hon. Sara L. Ellis

Magistrate Judge Jeffrey Cummings

**PLAINTIFF'S SECOND SUPPLEMENTAL RESPONSE TO**
**DEFENDANT MARTY RADTKE'S FIRST SET OF INTERROGATORIES**

Plaintiff ARNOLD DAY by his undersigned attorneys, LOEVY & LOEVY, pursuant to Federal Rule of Civil Procedure 33, and the applicable local rules, supplements his response to Defendant Marty Radtke's First Set of Interrogatories to Plaintiff, stating as follows:

**STATEMENTS AND GENERAL OBJECTIONS**

Plaintiff objects to each of the requests below to the extent the information sought is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to these requests to the extent they are not limited temporally to the time period relevant to this lawsuit. In addition, Plaintiff objects to these requests to the extent they seek the disclosure of information or material subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Plaintiff reserves the right to amend or supplement these objections and responses, and any omission of an objection is not to

be deemed a waiver of that objection.

## **INTERROGATORIES**

1.     Identify each physically coercive tactic each Officer Defendant used with you, and for each one, provide the following information:

   (a)     a detailed description of each discrete physically coercive tactic and its effect on you;
   (b)     the identity of each Officer Defendant who employed the physically coercive tactic;
   (c)     the identities of any Officer Defendants or any other person who witnessed the physically coercive tactic;
   (d)     the date, time and location of each physically coercive tactic; and
   (e)     a description of each injury you claim to have suffered as a result of the coercive tactic.

**ANSWER**: Plaintiff objects to this interrogatory as it being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants or any of the relevant witnesses, and before Defendants have provided complete versions of their own investigative files in the Garcia and Erving homicide. Plaintiff objects further because information relevant to this inquiry is principally in the possession, custody, or control of the Defendants. Plaintiff also objects because this interrogatory is unduly burdensome. Additionally, Plaintiff objects to the extent this request seeks information protected by attorney-client, work-product, and other applicable privileges.

Subject to these and the general objections, Plaintiff states that in May 1991, Jerrod Erving was murdered, and Plaintiff had nothing to do with Erving's homicide. In September 1991, Rafael Garcia was murdered, and again, Plaintiff had nothing to do with the Garcia murder. Nevertheless, the Officer Defendants and other Chicago

police officers framed Plaintiff for murder and/or failed to intervene to prevent Plaintiff's rights from being violated.

As part of the investigation into the Erving homicide, Officer Defendants Watson, Radtke, and McWeeny interviewed eyewitness Krona Taylor and interrogated her for hours. During Taylor's contact with the Officer Defendants, Taylor stated that she could identify the perpetrators. Notably, Taylor never identified Plaintiff as being involved in the Erving homicide. The Officer Defendants did not disclose their notes memorializing Taylor's interrogation to the prosecutor – notes that would have demonstrated that Taylor, an eyewitness who knew Plaintiff at the time of her interrogation, did not identify Plaintiff as being a participant Erving's murder. The Officer Defendants covered up the suppression and/or destruction of the notes from the Taylor interview.

The Officer Defendants continued their investigation after speaking to Taylor, and spoke to individuals who identified alternative suspects, including suspects named Spook and Mark/Marcus. Defendants investigated these leads but suppressed information identifying the witnesses who had knowledge of Spook's and Marcus'/Mark's involvement in the Erving murder, and they suppressed documents showing the steps they took to investigate this lead. Defendants suppressed this exculpatory information from the prosecutor, Plaintiff, and Plaintiff's counsel.

Months later, during the Garcia investigation, the Officer Defendants interrogated a fifteen-year-old teenager named Anthony Jakes. Despite Jakes' repeated statements that he was not involved in Garcia's homicide and had no knowledge about the Garcia murder, Officer Defendants Boudreau and Kill used

physical and psychologically abusive tactics during Jakes' interrogation to force Jakes to fabricate evidence against Plaintiff. Specifically, Officer Defendants Kill and Boudreau used threats and violence to coerce Jakes into signing a false statement falsely identifying Plaintiff as the person who attempted to rob and murder Rafael Garcia. These Officer Defendants knew Jakes did not know what happened during the Garcia homicide and thus, knew this statement was false. These Officer Defendants did not disclose to prosecutors the unlawful manner by which they obtained Jakes' false statement, nor did they disclose that they knew the statement was untruthful. As a result of Officer Defendants Kill's and Boudreau's decision to cover-up their misdeeds, Plaintiff was unable to present this exculpatory information to his juries to demonstrate the dishonest and unconstitutional methods the Officer Defendants used to both arrest Plaintiff and build their case. Further, Officer Defendants Kill and Boudreau fabricated reports indicating that Jakes provided a voluntary and truthful statement about the Garcia murder.

Prior to Plaintiff's arrest in February 1992, Officer Defendant Boudreau and other Chicago police officers interrogated Ralph Watson about the Erving murder. Watson told these officers and Defendant Boudreau that he had no knowledge about the homicide. Nevertheless, Defendants Boudreau unlawfully coerced and induced Watson into writing a false statement identifying Plaintiff as Erving's murderer. The Officer Defendants knew Watson did not know what happened during the Erving murder, and thus, knew his statement was false. Indeed, in order to obtain a statement from Watson, Defendant Boudreau gave Watson the information to put into the statement.

Further, to ensure that evidence demonstrating the falsity of Watson's statement did not come to light, the Officer Defendants did not attempt to corroborate Watson's statement. Had Officer Defendants tried to corroborate Watson's statement they would have learned that two individuals, Tennelle and Darren, who were named in Watson's statement as accomplices in Erving's murder were incarcerated at the time of the shooting. This evidence would have demonstrated that Watson's statement was unreliable.

The Officer Defendants did not disclose to prosecutors the unlawful manner by which they obtained Watson's false statement, nor did they disclose that they knew the statement was untruthful. Moreover, when Watson recanted his statement, the Officer Defendants never admitted to prosecutors that Watson's statement was false and the result of Defendant Boudreau's unconstitutional conduct. As a result of the Officer Defendants' decision to cover-up their misdeeds, Plaintiff was unable to present this exculpatory information to the jury to rebut the State's assertion that someone with knowledge identified Plaintiff as a participant in Erving's murder, and to show the unconstitutional methods the Officer Defendants used to build their case against Plaintiff. Additionally, the Officer Defendants fabricated reports indicating that Watson had provided a voluntary and truthful statement about the Erving murder. The Officer Defendants suppressed that Defendant Boudreau and his partner, Area 3 detective John Halloran, also attempted to coerce Edward Robinson into falsely accusing Plaintiff. The Officer Defendants suppressed these attempts and Plaintiff was unable to present this evidence of a pattern of misconduct to his jury.

On February 4, 1992, the Officer Defendants arrested Plaintiff. In the course

of arresting Plaintiff, Officer Defendant Evans kicked Plaintiff in the head. When Plaintiff was transported to the station, he was placed in an interrogation room where Defendants Boudreau, Defendant Evans, and Defendant Foley participated in his interrogation. During an interrogation that spanned hours, the Officer Defendants yelled at Plaintiff, ignored and shouted down Plaintiff's assertions of innocence, and handcuffed Plaintiff to the wall, and fed him information about the Garcia and Erving homicides. The Officer Defendants called the prosecutor to take Plaintiff's statement even though Plaintiff stated he was innocent. When Plaintiff did not confess to the ASA, Officer Defendant Foley threatened to throw Plaintiff out of the window, slammed Plaintiff against the wall, and choked Plaintiff. No Officer Defendants intervened to stop the abusive conduct or protect Plaintiff. As a result of the Officer Defendants' continuing abuse, Plaintiff agreed to sign false confessions for both the Garcia and Erving murders. The Officer Defendants knew Plaintiff had no knowledge about the Garcia and Erving homicides because they had to supply him with all the pertinent facts of these murders. Plaintiff did not provide information to Defendants that they did not already know, and thus, knew the confessions were false. The Officer Defendants did not disclose to prosecutors the unlawful manner by which they obtained Plaintiff's false confessions, nor did they disclose that they knew the statements were untruthful. As a result of the Officer Defendants' decision to cover-up their misdeeds, Plaintiff was unable to credibly present this exculpatory information to the jury in the Erving homicide trial and rebut the State's assertion that Plaintiff gave a voluntary and truthful statement about the Erving murder. Further, the Officer Defendants fabricated reports

indicating that Plaintiff had provided voluntary and truthful statements about the Erving and Garcia murders.

Moreover, prior to Plaintiff's interrogation, the Officer Defendants knew that the gun used to kill Jerrod Erving had been linked to another violent crime that resulted in the arrests of Antonio Thomas and Andre Thomas. Plaintiff was not suspected of being involved in this crime, nor was he ever arrested or charged with this crime. The Officer Defendants chose not to investigate Antonio's and Andre's connection to the Erving homicide because they knew that the investigation would show that Plaintiff's written statement was false and that the evidence against Plaintiff was fabricated.

The Officer Defendants' unconstitutional conduct caused Plaintiff's wrongful prosecution, conviction, and incarceration. As a result, Plaintiff was separated from his family, forced to live in a cage for decades, and suffered and continues to suffer from psychological and emotional distress. Plaintiff was not able to obtain evidence of the Defendants' misconduct until after he was convicted for the Erving homicide. Plaintiff used this evidence to prove his innocence and, as a result of his efforts, the court granted Plaintiff's petition for a certificate of innocence for crimes relating to the Erving homicide.

As part of his response, Plaintiff incorporates by reference herein the deposition testimony of Krona Taylor, Ralph Watson, Denardo Triplett, Tennelle Jones, the Officer Defendants, Anthony Jakes, Kevin Noonan, Jason Danielian, John Dillon, Neil Goodfriend, Brian Grossman, David O'Connor, Edward Robinson, Plaintiff testimony in *Jakes* and in this matter, and documents relating to the arrest

of Antonio Thomas and Andre Thomas, Jones' arrest on May 16, 1991, and records pertaining to Darren Triplett's incarceration in 1991. Plaintiff's investigation into this matter continues, and he reserves his right to supplement this response as the litigation proceeds.

2.      Identify each mentally coercive tactic each Officer Defendant used with you, and for each one, provide the following information:

  (a)    a detailed description of each discrete mentally coercive tactic and its effect on you;
  (b)    the identity of each Officer Defendant who employed the mentally coercive tactic;
  (c)    the identities of any Officer Defendants or any other person who witnessed the mentally coercive tactic;
  (d)    the date, time and location of each mentally coercive tactic; and
  (e)    a description of each injury you claim to have suffered as a result of the coercive tactic

**ANSWER**: Please see Plaintiff's response to Interrogatory No. 1.

3.      State the full factual basis for the claims in your Complaint that the Officer Defendants fabricated evidence, including but not limited to:

  (a)    a detailed description of each discrete piece of fabricated evidence;
  (b)    the identity of each Officer who you believe fabricated the evidence;
  (c)    the reason(s) you believe the evidence is fabricated; and
  (d)    each fact supporting your belief that the evidence is fabricated.

**ANSWER**: Please see Plaintiff's response to Interrogatory No. 1.

4.      Describe each instance in which any Officer Defendant failed to intervene on your behalf, including but not limited to:

  (a)    the identity of the Officer Defendant who failed to intervene;
  (b)    a description of each discrete instance in which an Officer Defendant failed to intervene;
  (c)    the date, time and location of each failure to intervene;

8

(d)  the identities of anyone who witnessed an Officer Defendant's failure to intervene.

**ANSWER**: Please see Plaintiff's response to Interrogatory No. 1.

5.  Do you contend that any Officer Defendant generated false documentation related to any event alleged or described in the Complaint? If your answer is in the affirmative, state the full factual basis for your contention, including but not limited to:

(a)  a description of each document that contains false information, including the date, author and (if applicable) report number;
(b)  the specific substance of all falsified information in each document;
(c)  the reason(s) you believe the information in each document is false; and
(d)  each fact supporting your contention the document was purposely falsified.

**ANSWER**: Please see Plaintiff's response to Interrogatory No. 1.

6.  Identify and describe, with specificity, what conduct you attribute to each Officer Defendant, which you claim led to your arrest, prosecution, and conviction for the murder of Jerrod Erving.

**ANSWER**: Please see Plaintiff's response to Interrogatory No. 1.

7.  Identify and describe, with specificity, what conduct you attribute to each Officer Defendant, which you claim led to your arrest and prosecution for the murder of Rafael Garcia.

**ANSWER**: Please see Plaintiff's response to Interrogatory No. 1.

8.  Identify all persons, if any, you may call to testify as to each Officer Defendant pursuant to Fed. R. Evid. 404(b), and for each person, provide the following

information:

> (a)    the person's name, last known address, and phone number
> (b)    the name of the Officer Defendant the witness will be called to testify about;
> (c)    the nature of the claim or incident involving the person and the Officer Defendant; and
> (d)    any witnesses, documents, or other evidence you possess, or are aware of, that corroborate Officer Defendant's involvement in the incident alleged by the person.

**ANSWER**: Plaintiff objects to the extent this request seeks information protected by attorney-client, work-product, and other applicable privileges. Plaintiff directs Defendants to identified 404(b) witnesses disclosed in *Jakes v. City of Chicago, et al.*, Case No. 19-cv-2204 (N.D. Ill.) ("*Jakes*"). Plaintiff reserves his right to supplement this response as the litigation proceeds.

9.    Please provide each and every electronic mail address (AKA "e-mail address") and identify any cellular telephone you have used and maintained since your incarceration in the Illinois Department of Corrections as a result of the murder of Jerrod Erving until today, and whether you have sent, received, drafted or saved any e-mails or text messages with regard to the incidents alleged in your Complaint. With regard to any and all cellular telephones used by you, identify the telephone number and service provider. **This interrogatory also serves as a request that Plaintiff preserve all of said e-mails and text messages during the above referenced time period. Any destruction thereof may result in a request for an instruction regarding spoliation**.

**ANSWER:** Plaintiff objects to this Interrogatory on the ground that it is overbroad as it covers a 31-year time span and is not limited to a specific class of people. Objecting

further, Plaintiff states that this Interrogatory is unduly burdensome as it would require Plaintiff to comb through years of correspondence with family and friends to determine if any documents are responsive. Plaintiff therefore limits his response to any non-privileged correspondence, if any exists, with Jerome Craft, Krona Taylor, Ralph Watson, Dorothea Robinson, Anthony Jakes, and Carl Murray. Plaintiff also objects on the basis that the Interrogatory is vague, particularly as the term "incidents" is undefined. Plaintiff interprets this term to mean Plaintiff's arrest, interrogation, and wrongful prosecution for the murder of Jerrod Erving. Plaintiff further objects to this Interrogatory because it seeks information that is not relevant to the parties' claims or defenses. Additionally, Plaintiff objects to the extent this Interrogatory seeks information protected by attorney-client, work-product, and other applicable privileges. Plaintiff further objects to the extent that this Interrogatory seeks information that is equally accessible to the parties. Subject to these and the general objections, Plaintiff responds as follows: With regard to non-privileged communications, Plaintiff refers Defendants to the documents produced at DAY 052803-051804.

10. Identify all internet photo and video sharing service and social media accounts, including but not limited Facebook, Instagram, YouTube, Snapchat, Vine, Twitter, Linkedin, Myspace, GooglePlus, Blogspot, Livejournal, Blogger, Flickr, Xanga, Tumblr, Wordpress, Reddit, maintained by you for the past five years and for each account, identify your user name and email address associated with that account. If such profile or site is password protected, please either provide your password or a printout of said profile and all activity thereon that relates in any way to the incidents or damages alleged in your Complaint. **This interrogatory also serves as a request**

that Plaintiff preserve all of said profiles and accounts and all postings or other activity thereon during the time period referenced in Interrogatory No. 26 through the present. Any destruction thereof may result in a request for an instruction regarding spoliation.

**ANSWER:** Plaintiff objects to this Interrogatory on the ground that it is overbroad. Plaintiff also objects on the basis that the Interrogatory is vague, particularly as the term "incidents" is undefined. Plaintiff interprets this term to mean Plaintiff's arrest, interrogation, and wrongful prosecution of the murder of Jerrod Erving. Plaintiff further objects to this Interrogatory because it seeks information that is not relevant to the parties' claims or defenses. Additionally, Plaintiff objects to the extent this request seeks information protected by attorney-client, work-product, and other applicable privileges. Subject to these and the general objections, Plaintiff states as follows: He has a Facebook account but has not posted or written anything related to the incidents or damages alleged in the Complaint.

11. Identify the steps and methods taken or attempted by you to prove your innocence after your arrest for the murder of Rafael Garcia, including but not limited to all facts, documents, and/or witnesses you relied on in support of your efforts to prove your innocence.

**ANSWER**: Plaintiff objects to this request on the grounds that is vague, overbroad, and unduly burdensome. Plaintiff objects to the extent this request seeks information protected by attorney-client, work-product, and other applicable privileges. Subject to these and the general objections, Plaintiff states that the Officer Defendants arrested Plaintiff without probable cause for the murder of Rafael

Garcia – a crime for which he is wholly innocent. Prior to Plaintiff's arrest, the Defendants Kill and Boudreau coerced a 15-year-old teenager named Anthony Jakes into falsely identifying Plaintiff as a participant in the Garcia homicide – an identification the Officer Defendants knew was false. Once the Officer Defendants arrested Plaintiff without probable cause, Plaintiff informed them that he was not involved in the Garcia homicide and had no knowledge about the murder. Nevertheless, the Officer Defendants ignored Plaintiff's assertions of innocence and used threats and acts of violence to coerce Plaintiff into falsely confessing to being involved in Garcia's murder.

Plaintiff was then prosecuted by the Cook County State's Attorney's Office and the court appointed an attorney, Stuart Katz, to defend Plaintiff. Plaintiff refused to take any pleas in his case and decided to go to trial to prove his innocence. Plaintiff's attorney filed various motions on his behalf in an effort to prove Plaintiff's innocence. Plaintiff also testified at a motion to suppress. At trial, Plaintiff testified again and presented alibi witnesses. Plaintiff's ability to demonstrate his innocence was made all the more difficult due to the Officer Defendants' misconduct and the Officer Defendants' decision to suppress the unconstitutional manner by which they obtained false statements from Plaintiff and Jakes. Fortunately, despite the Officer Defendants' cover-up, a jury found that Plaintiff's false confession was not believable and that Plaintiff was not guilty of the armed robbery and murder of Rafael Garcia.

Plaintiff incorporates by reference hereinthe deposition of Anthony Jakes in *Jakes*; Plaintiff's deposition in *Jakes* and this matter, and the depositions of Carl Murray, Brian Grossman, David O'Connor, John Dillon, and Neil Goodfriend.

13

Plaintiff's investigation into this matter continues, and he reserves his right to supplement this response as the litigation proceeds.

12.     Identify the steps and methods taken or attempted by you to prove your innocence after your arrest for the murder of Jerrod Erving, including but not limited to all facts, documents, and/or witnesses you relied on in support your efforts to prove your innocence.

**ANSWER**: Plaintiff objects to this request on the grounds that it is vague, overbroad, and unduly burdensome. Specifically, Plaintiff spent over two decades fighting to prove his innocence and Plaintiff cannot reasonably be expected to remember every step he took to fight his wrongful conviction. Plaintiff also objects to the extent this request seeks information protected by attorney-client, work-product, and other applicable privileges. Subject to these and the general objections, Plaintiff states that to the best of his memory the Officer Defendants arrested Plaintiff without probable cause for the murder of Rafael Garcia – a crime for which he is wholly innocent. Prior to Plaintiff's arrest, the Defendants Kill and Boudreau coerced a 15-year-old teenager named Anthony Jakes into falsely identifying Plaintiff as a participant in the Garcia homicide – an identification the Defendants Boudreau and Kill knew was false. Further, the Defendant Boudreau also coerced a pre-trial detainee named Ralph Watson into falsely identifying Plaintiff as a participant in Jerrod Erving's murder – an identification the Officer Defendants knew was false. Additionally, the Defendant Boudreau attempted to coerce Edward Robinson into falsely identifying Plaintiff as a participant in the Erving murder. Officer Defendants also suppressed evidence relating to alternative suspects who were

14

known to Defendants prior to Plaintiff's arrest.

Once the Officer Defendants arrested Plaintiff without probable cause, Plaintiff informed them that he was not involved in the Erving homicide and had no knowledge about the murder. Nevertheless, the Officer Defendants ignored Plaintiff's assertions of innocence and used threats and acts of violence to coerce Plaintiff into falsely confessing to being involved in the Erving murder – a confession the Officer Defendants knew was false.

Plaintiff was then prosecuted by the Cook County State's Attorney's Office and the court appointed an attorney, Stuart Katz, to defend Plaintiff. Plaintiff refused to take any pleas in his case and decided to go to trial to prove his innocence. Plaintiff's attorney filed various motions on his behalf to aid Plaintiff's efforts. Plaintiff testified at trial and at the hearing on the motion to suppress. Plaintiff's ability to demonstrate his innocence was made all the more difficult due to the Officer Defendants' misconduct, the suppression of documents containing exculpatory information, and the Officer Defendants' decision to suppress the unconstitutional manner by which they obtained false statements from Plaintiff, Jakes, and Watson, and their attempt to obtain false statements from others, as well as Officer Defendants' suppression of evidence relating to alternative suspects. Further, due to the Officer Defendants' suppression, Plaintiff was unable to present evidence about Krona Taylor's exculpating statements made during her hours-long interrogation.  In accordance with the false evidence used to accuse Plaintiff, Plaintiff was convicted of the attempted armed robbery and murder of Jerrod Erving.

Nevertheless, Plaintiff's fight to prove his innocence continued. Following his

wrongful conviction, Plaintiff filed appeals for which Plaintiff represented himself and was represented by the Office of the State Appellate Defender, and post-conviction motions for which Plaintiff represented himself and was represented by the Exoneration Project and Steve Greenberg. Plaintiff also reached out to individuals with knowledge of the Officer Defendants' misconduct to obtain affidavits to present to the court in Plaintiff's *pro se* post-conviction filing. These affidavits demonstrated that the Officer Defendants fabricated evidence and/or demonstrated the falsity of Watson's statement. Additionally, Plaintiff's fiancée Cassandra Taylor and friend Jerome Craft  contacted Krona Taylor and put her in contact with Plaintiff's post-conviction attorney.

Plaintiff and his attorneys also wrote letters to Aldermen Issac Carothers, JoAnn Thompson, and Ed Smith, Maurice Possley, Hal Dardick, Steve Schmadeke, and other members of the media to alert them of his wrongful conviction. Plaintiff and his attorneys requested the Erving homicide file through the Freedom of Information Act. Further, Plaintiff filed a complaint form with the Office of Professional Standards to complain about the Officer Defendants' abusive conduct.

Finally, Plaintiff and his attorneys filed a claim before the Torture Inquiry and Relief Commission ("TIRC") and matters pertaining to Plaintiff's certificate of innocence. Cassandra Taylor also sent documents on Plaintiff's behalf to the TIRC. Finally, over two decades after Plaintiff's wrongful conviction, the Torture Inquiry and Relief Commission concluded that Plaintiff had provided sufficient credible evidence of torture to merit judicial review under the TIRC Act. This finding led to Plaintiff's convictions being vacated. The court issued Plaintiff a certificate of

innocence based on a finding that Plaintiff was innocent of the crimes relating to the attempted robbery and murder of Jerrod Erving. The Cook County State's Attorney's Office was a party in Plaintiff's criminal prosecution, appeals, and post-conviction litigation. Plaintiff also refers Defendants to his response to Plaintiff's Response to Defendant Watson's Interrogatory No. 7.

Plaintiff also incorporates by reference herein the deposition testimony of Krona Taylor, Ralph Watson, Denardo Triplett, Edward Robinson, Tennelle Jones, Plaintiff's deposition in this matter, and Stuart Katz. Plaintiff's investigation into this matter continues, and he reserves his right to supplement this response as the litigation proceeds.

13. State whether you, or anyone acting on your behalf, has made a complaint, allegation, or other statement about any of the named defendants you have sued in this litigation to the Office of Professional Standards, the Independent Police Review Authority, the Illinois Torture Inquiry and Relief Commission, the Illinois Prisoner Review Board, the Office of the Governor of the State of Illinois, the Cook County State's Attorney, the Illinois Attorney General, the Federal Bureau of Investigation, the United States Department of Justice, any other local, state or federal governmental or quasi-governmental agency (other than the United States District Court in which you have filed your lawsuit), or to any private entity (e.g., the Center for Wrongful Convictions, the Exoneration Project, Medill Innocence Project, Medill Justice Project, Medill School of Journalism). If so, please state:

      (a)    the governmental or private entity to which you have made your complaint or allegation,

      (b)    the date on which you made the complaint or allegation,

      (c)     the named defendant(s) against whom you made your complaint or allegation, and,

      (d)     if you did not make the complaint or allegation personally, the person(s) who made the complaint or allegation on your behalf.

**ANSWER**: Plaintiff objects to this Interrogatory to the extent it calls for communications that are protected by attorney-client privilege, the work product doctrine, and another common law or statutory privileges. Plaintiff also objects on the grounds that this Interrogatory is overbroad as it is not limited by time or subject matter. Subject to these and the general objections, Plaintiff directs Defendants to Plaintiff's response to Interrogatory Nos. 11 and 12.

14.    Identify any and all past or present communications with any government entity or agent, including but not limited to, e.g., former Governor Pat Quinn or his office, the Office of the Governor, the Prisoner Review Board, or with any private entity, including but not limited to, e.g., the Center for Wrongful Convictions, the Exoneration Project, Medill Innocence Project, Medill Justice Project, Medill School of Journalism, David Protess, Chicago Innocent Program, regarding your claims of innocence and your efforts to reverse your conviction.

**ANSWER**: Plaintiff objects to this Interrogatory to the extent it calls for communications that are protected by attorney-client privilege, the work product doctrine, and another common law or statutory privileges. Plaintiff also objects on the grounds that this Interrogatory is overbroad as it is not limited by time. Subject to these and the general objections Plaintiff directs Defendants to Plaintiff's response to Interrogatory Nos. 11 and 12.

15.    Have you ever been a member of (or affiliated with) any street gang? If so,

identify the nature of such street gang and/or organization, the dates of each membership and/or affiliation, your rank(s) or position(s) within the gang and/or organization, your duties and/or responsibilities relative to the street gang and/or organization, and alias or nicknames by which you were known within the gang, the name of any rival gangs, the date (if any) when you left the gang, and the reasons (if any) that you left the gang.

**ANSWER**: Plaintiff objects to this request on the ground that it is vague in its use of the undefined terms "member" and "affiliated with." Plaintiff further objects to this request because it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and is instead intended to embarrass and harass. Subject to these and the general objections, Plaintiff states as follows: Plaintiff joined the Blackstones when he was 15 years old. The Blackstones' rivals were the Jet Blackstones, Gangster Disciples, and the Vice Lords. Since Plaintiff was a child, he has been known by the nickname "Little A" – this is not a nickname specific to the Blackstones. Plaintiff's investigation into this matter continues, and he reserves his right to supplement this response as the litigation proceeds.

16.     Have you ever had a tattoo or other permanent marking on your body? If your answer is in the affirmative, describe each tattoo and/or other permanent marking on your body (such as scars and/or birthmarks), the location of it on your physical person, the date, manner and geographical location in which you received it, and, if applicable, when and why it was removed or altered from its original format, including whether or not is has been removed or partially removed.

**ANSWER**: Plaintiff objects to this request because it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence, and is instead intended to embarrass and harass. Subject to these and the general objections, Plaintiff states that he has five tattoos that he received during the 1990s either in Chicago or while he was incarcerated. Plaintiff has the following tattoos: (1) a star on his chest; (2) a star on his left arm; (3) the letters "APS" on his right arm; (4) a portrait of a Native American on his right arm; and (5) a panther on his left arm. Plaintiff's investigation into this matter continues, and he reserves his right to supplement this response as the litigation proceeds.

17.     Identify each person with whom you discussed your criminal cases regarding the murders of Rafael Garcia and Jerrod Erving, including the facts and circumstances of your arrest, prosecution, conviction, and/or your innocence. For each person and discussion, provide the person's identifying contact information, the dates of your discussion, and whether they were written or oral.

**ANSWER**: Plaintiff objects to this Interrogatory on the grounds that it is vague and overbroad, and unduly burdensome, particularly because Plaintiff spent over two decades fighting to prove his innocence and over the course of this multi-decade fight, Plaintiff has spoken to numerous people about his innocence including attorneys, family members, friends, community members, and members of the press. Plaintiff cannot reasonably be expected to recall and list each and every person and each and every time he has talked about his innocence since 1991. Additionally, Plaintiff objects to the extent this Interrogatory seeks information protected by attorney-client, work-product, and other applicable privileges. Subject to these and the general objections, Plaintiff refers

Defendants to his and Defendants' Mandatory Initial Disclosures, and any supplements thereto, the parties' Rule 26(a)(1) disclosures in this case and in *Jakes,* the depositions in this case and in *Jakes*, and the jail calls that have been produced in this case. Plaintiff's investigation into this matter continues, and he reserves his right to supplement this response as the litigation proceeds.

18.     Identify all newspaper articles, magazine articles, memoirs, journals, articles, on- line or social media posts, including, but not limited to Facebook or Twitter posts, that you  authored, posted or were interviewed for that relate to the homicide investigations of Rafael Garcia and Jerrod Erving, your convictions, your post-conviction proceedings, and vacating of the conviction for the murder of Jerrod Erving, and relating to your Complaint.

**ANSWER**: Plaintiff objects to this request on the ground that it is vague and overbroad, and unduly burdensome. Plaintiff objects to this request because it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent this request seeks information protected by attorney-client, work-product, and other applicable privileges. Plaintiff further objects to the extent that news articles and other information requested are readily available and accessible by Defendants. Subject to these and the general objections, Plaintiff states that he has not authored or posted anything responsive to this request, and further responding, Plaintiff refers Defendants to articles that quoted statements Plaintiff made at a press conference on November 5, 2019:

- https://news.wttw.com/2019/11/05/chicago-man-suing-city-police-officers-says-he-was-tortured-false-confession

- https://chicago.suntimes.com/2019/11/5/20950334/arnold-day-wrongfully-convicted-jon-burge-lawsuit-chicago-police-department

Plaintiff's investigation into this matter continues, and he reserves his right to supplement this response as the litigation proceeds.

19.     Identify all Illinois Department of Corrections facilities in which you were incarcerated after your arrest for the homicides of Jerrod Erving and Rafael Garcia and conviction for the murder of Jerrod Erving, and the period of time you were at each facility.

**ANSWER**: Plaintiff objects to this request because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these and the general objections, Plaintiff states that between 1994 and 2018, he was incarcerated at Pontiac Correctional Center, Stateville Correctional Center, Menard Correctional Center, Western Illinois Correctional Center, and Danville Correctional Center. Plaintiff also refers Defendants to his records from the Illinois Department of Corrections, which he incorporates by reference here. Plaintiff's investigation into this matter continues, and he reserves his right to supplement this response as the litigation proceeds.

20.     State the precise date that you were released from the Illinois Department of Corrections, whether there were any conditions of your release (e.g., probation, mandatory supervised release, half-way house, electronically monitored home confinement, etc.), , and the time period for each condition of your release.

**ANSWER**: Plaintiff objects to this request to the extent portions of it seek information that is not relevant or reasonably calculated to lead to the discovery of

admissible evidence. Subject to the general objections, Plaintiff was released on or about December 20, 2018, after his convictions were vacated. Plaintiff was on GPS monitoring for about a month, and was initially required to live at a halfway house but there was no room at the halfway house. Plaintiff's investigation into this matter continues, and he reserves his right to supplement this response as the litigation proceeds.

21.    Identify each and every attorney who has represented you at any stage of the court or other proceedings stemming from your arrest and charging for the murders of Rafael Garcia and Jerrod Erving, (e.g., probable cause to detain hearing, bond hearing, arraignment, preliminary hearing, pre-trial motions, trial, post-trial, appeal, post-conviction, habeas petition, Illinois Prisoner Review Board, certificate of innocence), and the dates of each attorney's representation of you.

**ANSWER**: Please refer to Plaintiff's response to Interrogatory No. 12, and the court filings produced as part of Plaintiff's Mandatory Initial Disclosures.

Respectfully Submitted,

**Arnold Day**

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 12/19/2022                    Signed:    *Arnold A. Day*

Objections by: Renee Spence

Arthur Loevy
Jon Loevy
Gayle Horn
Sam Heppell
Renee Spence
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900 (phone)
spence@loevy.com


/s/ Steve Greenberg
Greenberg Trial Lawyers
53 W. Jackson Blvd, Suite 1260
Chicago, IL 60604
(312) 879-9500
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that she served the foregoing

document upon all parties of record by electronic mail on December 19, 2022.


/s/        Renee Spence
*One of Plaintiff's Attorneys*